**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd. Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd. Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* *Pro hac vice pending.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Ste. 300
Santa Monica, California 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, and TYLER GOTHIER,**<br><br>       Plaintiffs,<br><br>  v.<br><br>**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**<br><br>       Defendants. | Case No. 2:21-cv-04405<br><br>**PLAINTIFFS' COMPLAINT FOR RETURN OF PROPERTY AND CLASS-WIDE DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION** |

**INTRODUCTION**

1

2        This civil-rights lawsuit seeks to vindicate the constitutional rights of

3   hundreds of people whose property was illegally seized and subjected to a criminal

4   search by the Federal Bureau of Investigation (FBI). These property owners rented

5   safe deposit boxes from U.S. Private Vaults (USPV) to secure their prized

6   possessions, including family heirlooms, copies of their wills and other important

7   legal documents, and money needed for savings and for everyday expenses. On

8   March 22, 2021, the FBI raided USPV and seized the contents of hundreds of

9   deposit boxes from USPV's customers, like Plaintiffs Paul and Jennifer Snitko,

10  Joseph Ruiz, and Tyler Gothier. Although the government has indicted USPV, the

11  government has not accused USPV's customers—like the Snitkos, Ruiz, and

12  Gothier—of violating any law. And while a warrant authorized the government to

13  seize *USPV's* property, the warrant did not authorize the government to conduct a

14  criminal search or seizure of *USPV's customers'* property. But the government did

15  just that and, two months later, the government is still holding many of those

16  customers' property even though the warrant explicitly contemplated that

17  customers' property would be returned.

18       The government's behavior is shocking, unconscionable, and

19  unconstitutional. First, the government's initial search and seizure of Plaintiffs'

20  property violates the Fourth Amendment: the government exceeded both the

21  justification for the inventory search doctrine and the limited scope of its warrant by

22  opening owners' safe deposit boxes, running any currency found in front of drug-

23  sniffing dogs, and failing to do any proper inventory of those boxes' contents.

24  Indeed, the simplest way to have secured peoples' possessions for their return

25  would have been to leave the nest of safe deposit boxes intact. Second, the

26  government's continued retention of Plaintiffs' property violates the Fourth and

27  Fifth Amendments: the government must provide owners with a basis for the

28  continued retention of property and a prompt and meaningful way to secure its

PLAINTIFFS' COMPLAINT FOR RETURN OF PROPERTY AND CLASS-WIDE DECLARATORY AND
INJUNCTIVE RELIEF

return. And third, the government's use of owners' property as leverage to extract information from those owners also violates the Fifth Amendment.

To correct these constitutional violations, this Complaint raises both class and individual claims. On behalf of a class of individuals who came forward to identify themselves to the FBI after losing their property in the March 22, 2021 raid—and who have not been notified that their property is the subject of a pending administrative or judicial civil forfeiture proceeding—the Complaint seeks declaratory and injunctive relief barring the government from improperly retaining and/or using records created through its unconstitutional inventory search. On behalf of a further subclass of individuals whose property is still being retained by the government, the Complaint seeks declaratory and injunctive relief that would compel the government to either provide notice of the legal basis of the continued detention of the property or else give the property back. And, finally, the Complaint brings individual claims on behalf of Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier seeking the return of their property.

## JURISDICTION AND VENUE

1.     Plaintiffs bring their class-action Fourth and Fifth Amendment claims under the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, as well as directly under the U.S. Constitution. Plaintiffs seek declaratory and injunctive relief against the government's unconstitutional search, retention, and use of their property.

2.     Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier bring their individual claims for return of seized property under Federal Rule of Criminal Procedure 41(g). They are entitled to the immediate return of their property as they are not targets of any criminal investigation and the government's continued detention of their property both violates the Fourth Amendment and works a hardship on Plaintiffs.

PLAINTIFFS' COMPLAINT FOR RETURN OF PROPERTY AND CLASS-WIDE DECLARATORY AND INJUNCTIVE RELIEF

1    3.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, as

2    Plaintiffs' claims arise under federal law.

3    4.    Venue is proper in the United States District Court for the Central

4    District of California under 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1), as well as

5    Federal Rule of Criminal Procedure 41(g), because the seizure of Plaintiffs'

6    property occurred in Beverly Hills, CA. Beverly Hills is in the Western Division of

7    the Central District of California.

8    **PARTIES**

9    **Plaintiffs**

10    5.    Plaintiffs Paul and Jennifer Snitko are a married couple and adult

11    residents of Los Angeles County, California. Paul is an aeronautics engineer, and

12    Jennifer is an entertainment lawyer. At USPV's Beverly Hills facility, they rented a

13    safe deposit box in which they placed jewelry, back-up hard drives, legal

14    documents, Paul's pilot flight log, and other personal effects. After the government

15    seized this property on March 22, 2021, they filed a claim with the FBI to retrieve

16    it. However, the government continues to retain their property without giving them

17    any justification for doing so.

18    6.    Plaintiff Joseph Ruiz is an adult resident of Los Angeles County,

19    California. At USPV's Beverly Hills facility, he rented a safe deposit box in which

20    he placed over $50,000 in cash, money that Joseph relies on to pay his living and

21    medical expenses. After the government seized this property on March 22, 2021, he

22    filed a claim with the FBI to retrieve it. However, the government continues to

23    retain his property without giving him any justification for doing so.

24    7.    Plaintiff Tyler Gothier is an adult resident of Los Angeles County,

25    California. At USPV's Beverly Hills facility, he rented a safe deposit box in which

26    he placed silver and other personal property. After the government seized this

27    property on March 22, 2021, he filed a claim with the FBI to retrieve it. However,

28

PLAINTIFFS' COMPLAINT FOR RETURN OF PROPERTY AND CLASS-WIDE DECLARATORY AND
INJUNCTIVE RELIEF

1   the government continues to retain his property without giving him any justification

2   for doing so.

3         8.     Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier

4   represent a putative class of USPV customers who identified themselves to the FBI

5   after the government seized their property from their safe deposit boxes on or

6   around March 22, 2021.

7   **Defendants**

8         9.     Defendant United States of America is the national federal government

9   established by the U.S. Constitution. As such, it is subject to limitations imposed by

10  the Constitution, including, as relevant here, the Fourth and Fifth Amendments. The

11  constitutional violations at issue involve the actions of federal agencies and

12  employees and are therefore ultimately chargeable to the federal government itself.

13        10.    Defendant Tracy L. Wilkison is the Acting U.S. Attorney for the

14  Central District of California. She is the chief federal law enforcement officer

15  within this jurisdiction, and she is sued in her official capacity.

16        11.    Defendant Kristi Koons Johnson is an Assistant Director of the FBI.

17  She oversees the FBI's Los Angeles Field Office, and she is sued in her official

18  capacity.

19        12.    The Complaint uses the phrase "the government" to refer to the

20  officers, employees, and agents of the United States of America, including officers,

21  employees, and agents acting under the direction and control of Defendants

22  Wilkinson and Johnson.

23  **FACTUAL ALLEGATIONS**

24  **Plaintiffs Deposited Their Personal Property With USPV**

25        13.    USPV is a California corporation that operates a safe-deposit-box

26  facility in Beverly Hills.

27        14.    USPV's Beverly Hills facility houses over 800 safe deposit boxes.

28

15.     USPV safe-deposit-box service provided renters with several advantages over traditional banks. For instance, USPV customers could access the outer vault themselves using biometric data (such as an iris scan or a handprint) rather than having to wait for a USPV employee to assist them.

16.     Also unlike traditional banks, USPV could not access its customers' safe deposit boxes without their knowledge. That is because all the keys for USPV's safe deposit boxes are left in customers' hands.

17.     In addition, USPV provided customers with better hours of operation than most banks, including weekend hours, and offered clients insurance for the contents of their boxes.

18.     Given USPV's differences from other safe-deposit-box facilities, USPV's services were appealing to customers concerned with their financial security and privacy, including Plaintiffs.

19.     When Plaintiffs rented safe deposit boxes from USPV, they had every impression USPV was a legitimate, law-abiding business.

20.     USPV was a longstanding business in the Beverly Hills area, having opened its doors in 2011.

21.     Along with its Twitter and Yelp profiles, USPV operated a business website at usprivatevaults.com.

22.     USPV was also a member of the Beverly Hills Chamber of Commerce.

23.     Given these features, Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier trusted USPV with their personal property.

24.     In April 2017, Plaintiffs Paul and Jennifer Snitko began renting a safe deposit box from USPV's Beverly Hills facility.

25.     In their USPV safe deposit box, Paul and Jennifer Snitko left items of sentimental and practical value, including Paul's flight log from his aeronautics career, wristwatches that Paul and his father had obtained from their employers for their years of service, Paul's class ring, as well as some collectible coins from

6

Jennifer's grandfather. Paul and Jennifer also stored backup copies of their home computers' hard drives, gold jewelry, and important legal documents in the box.

26.     Plaintiff Joseph Ruiz also rented a safe deposit box from USPV's Beverly Hills facility.

27.     In his USPV safe deposit box, Joseph deposited approximately $57,000 in cash that he relies on for his daily living and medical expenses.

28.     Plaintiff Tyler Gothier also rented a safe deposit box from USPV's Beverly Hills facility.

29.     Tyler put silver and other personal property in his USPV safe deposit box.

30.     Plaintiffs have keys for their USPV safe deposit boxes.

31.     Each Plaintiff would be able to produce their USPV safe-deposit-box key upon request.

## The Government Seized Plaintiffs' Personal Property

32.     On March 9, 2021, the U.S. Attorney's Office for the Central District of California indicted the company U.S. Private Vaults.

33.     The March 9, 2021 indictment alleges various wrongdoing by USPV officials, but it does not indict those officials.

34.     The March 9, 2021 indictment does not specifically allege any wrongdoing by USPV's customers.

35.     On March 17, 2021, the government obtained a warrant to seize certain business property owned by USPV. Critically, however, the warrant did not authorize the criminal seizure or search of USPV's *customers'* property.

36.     Although the warrant authorized the government to seize USPV's "business equipment," including the "nests of safety deposit boxes and keys, the warrant specifically stated that the "warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes."

37.    Despite that limited scope, the warrant envisioned that the government may need to conduct a limited "inventory" search of the contents of the safe deposit boxes.

38.    Normally, an inventory search's purpose is to prevent claims of theft and loss by creating a record of seized property.

39.    In its application for the March 17, 2021 warrant, the government promised that any necessary inventory search would be limited in scope. In the application, the government stated that it would search USPV safe deposit boxes to "look for contact information or something which identifies the owner" and that, under official FBI policies, that search would "extend no further than necessary to determine ownership."

40.    Consistent with the government's warrant application, the March 17, 2021 warrant contemplated that, "in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property."

41.    The government executed the warrant in a March 22, 2021 raid on USPV's Beverly Hills location.

42.    In executing the warrant, however, the government overstepped the March 17, 2021 warrant's limited scope.

43.    On March 22, 2021, the government seized not just USPV's business property, but *all* the personal property in USPV customers' safe deposit boxes.

44.    Every customer's property at USPV on March 22, 2021, was secure against loss and theft due to its placement in a locked nest of safety-deposit boxes within a biometric vault.

45.    Yet despite this, the government broke into every safe deposit box at USPV's Beverly Hills facility and emptied each box of its contents.

46.    On March 22, 2021, the government seized all the personal property in the safe deposit boxes rented by Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz,

and Tyler Gothier, as well as all the property held in every other USPV customer's safe deposit box.

47.    The government has not accused—let alone charged—Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, or Tyler Gothier with any crime.

48.    The government's March 22, 2021 search of the contents of USPV customers' safe deposit boxes was not an "inventory" search.

49.    After all, had the government been conducting an inventory search—to prevent loss and theft—there would have been no reason to forcibly open USPV's locked safe deposit boxes that were otherwise impervious to theft.

50.    Moreover, even though the government's warrant application represented that its safe-deposit-box search would be limited to "look[ing] for contact information or something which identifies the owner," FBI agents searched boxes even after identifying owners.

51.    Per USPV procedures, many safe-deposit-box holders – including Plaintiffs Paul and Jennifer Snitko – placed a letter containing their contact information, as well as information identifying their beneficiaries, on top of the interior sleeve of their boxes. All contents of the boxes, other than this letter, were contained within those interior sleeves.

52.    If the government had complied with its representations in its warrant application, it would have stopped its supposed "inventory" search as soon as it found such letters and would not have searched the contents of the interior sleeves.

53.    But even after finding those letters, government agents continued rifling through the contents of the boxes, including opening sealed envelopes to make copies of documents contained within.

54.    On information and belief, the government searched the contents of the Snitkos' box even after finding the letter with their contact information taped to the top of their box's interior sleeve.

55.     On information and belief, the FBI generally made copies of documents found in owners' security boxes despite the seizure warrant's admonition that it did not authorize a criminal search.

56.     The FBI also had drug dogs sniff any currency it discovered during this purported "inventory" search.

57.     The inventory sheets created by the FBI in the course of its inventory search fail to provide the requisite level of detail of what was in owners' boxes, instead describing property in vague terms such as "misc. coins."

58.     As these actions show, the government's inventory-search rationale was just a pretext for conducting criminal searches and seizures of USPV customers' safe deposit boxes, even though the government's seizure warrant did not authorize these searches and seizures and the government had not demonstrated individualized probable cause to believe that any USPV customer had done anything wrong.

**The Government Has Not Returned the Property It Seized from Plaintiffs**

59.     The government's warrant application stated that the purpose of its purported inventory search was to identify safe-deposit-box owners so as to reunite them with their property.

60.     The March 17, 2021 warrant did not authorize the government to retain USPV customers' property.

61.     In fact, the March 17, 2021 warrant expressly contemplated that safe-deposit-box holders would be able to "claim their property."

62.     After seizing the contents of the USPV boxes, the government placed a notice on the USPV storefront stating that box holders should file a claim to their property through a FBI website.

63.     Each of the named Plaintiffs and putative class representatives has filed a claim for their seized property through the FBI's website.

64.    Paul and Jennifer filed their claims shortly after the government's March 22, 2021 seizure of their property.

65.    Joseph Ruiz, too, filed his claim shortly after the government's March 22, 2021 seizure of his property.

66.    Tyler Gothier has also recently filed a claim with the FBI.

67.    On information and belief, many other USPV customers submitted claim forms to the FBI seeking the return of their property.

68.    Nonetheless, two months after raiding USPV's facility and seizing Plaintiffs' property, the government continues to retain it.

69.    The government now refuses to return any seized items until USPV customers come forward and identify themselves to the FBI.

70.    At that point, the FBI says that it will conduct an "investigation" to determine if the customer came by their property legally.

71.    In response to Paul and Jennifer's claim submission, the FBI sent them an email stating that the agency would contact them in 30–60 days, as well as a phone call asking them to provide the number of their safe deposit box.

72.    The FBI's only response to Joseph was an email stating that the agency would contact him in 30–60 days.

73.    No one from the FBI has contacted Tyler about his claim.

74.    The government has not provided named Plaintiffs and similarly situated owners with further instructions for how to obtain return of their property. On information and belief, this failure to act is common across the proposed class.

75.    The government has also not provided named Plaintiffs and similarly situated owners with any estimate of when their property might be returned. On information and belief, this failure to act is common across the proposed class.

76.    The government has simply cautioned named Plaintiffs and similarly situated owners to be patient and to continue waiting. On information and belief, this failure to act is common across the proposed class.

77.     To date, the government has not offered named Plaintiffs and similarly situated owners any justification or basis for the government's continued retention of Plaintiffs' property. On information and belief, this failure to act is common across the proposed class.

78.     The government also continues to retain other USPV customers' property.

79.     The government has sent forfeiture notices to some property owners, informing them that the government has commenced an administrative forfeiture action with respect to their property. However, the government has not sent forfeiture notices to any of the Plaintiffs or to any other members of the putative class.

80.     Joseph's attorneys have received second-hand information suggesting that the government may have informed attorneys for USPV, the business, that the government intends to seek civil forfeiture of the contents of Joseph's box. However, at this time the government has not published any public notice of any such proceeding and has not provided Joseph with any personalized notice of any forfeiture proceeding.

81.     On information and belief, some other members of the putative class are in the same situation as Joseph: The government has informed USPV's attorneys that they are going to seek to forfeit those individuals' property, but the government has not provided those individuals with any kind of notice of the purported forfeiture proceeding.

82.     Because Joseph has not received any notice of a forfeiture proceeding, he is unable to confirm whether the government is, in fact, holding his property for civil forfeiture. In addition, without individualized notice, he cannot contest any such forfeiture proceeding under the procedures provided in the forfeiture laws.

83.     The government undoubtedly has Joseph's contact information, in order to provide him with individualized notice of any such possible forfeiture

proceeding, as Joseph provided that information when he submitted a claim through the FBI's website.

84.     At the same time, the information received by Plaintiffs' attorneys indicates that the government has not informed USPV's attorneys that it intends to forfeit the boxes owned by Tyler Gothier and the Snitkos.

85.     On information and belief, some other members of the putative class are in the same situation as Tyler Gothier and the Snitkos: The government has *not* informed USPV's attorneys that it intends to seek to forfeit their boxes, and the government also has not articulated any other legal basis to continue to retain their property.

86.     Regardless of whether the government has told USPV's attorneys that it intends to forfeit their property, all members of the putative class are ultimately in the same situation: The government has not informed *them* (as opposed to USPV's attorneys) whether it intends to seek to forfeit their property and has not notified *them* (as opposed to USPV's attorneys) of any asserted basis for the ongoing detention of their property.

**INJURY TO PLAINTIFFS**

87.     Defendants' March 22, 2021 criminal search of named Plaintiffs' personal property and their continued seizure of that property constitutes an ongoing injury to not just to named Plaintiffs and putative class representatives, but to all USPV customers.

88.     Had Defendants simply secured the USPV facility and left the safe deposit boxes intact, Plaintiffs and other USPV customers would have easily been able to go in and reclaim that property. But due to Defendants' unreasonable criminal search, the government opened up those boxes and subjected them to an unconstitutional search.

89.     On information and belief, the government currently retains records of the contents of *all* of the boxes at the USPV facility, regardless of whether the

13

1    contents of those boxes have been returned to their owners or not. The

2    government's continued possession of those records provides it with a window into

3    the contents of an ostensibly private space and constitutes an ongoing Fourth

4    Amendment injury.

5          90.    In addition, the government today still retains much of that property—

6    including the property of Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler

7    Gothier. The government's retention of that property constitutes and additional

8    Fourth Amendment injury.

9          91.    Because Defendants exceeded the scope of their warrant in their March

10   22, 2021 criminal search and seizure of USPV customers' safe deposit boxes,

11   Plaintiffs Paul and Jennifer Snitko have been subjected to an unreasonable search

12   and seizure that has deprived them of their jewelry, back-up hard drives, legal

13   documents, Paul's pilot flight log, and other personal effects they had stored in their

14   USPV safe deposit box.

15         92.    Because Defendants exceeded the scope of their warrant in their

16   March 22, 2021 criminal search and seizure of USPV customers' safe deposit

17   boxes, it now unreasonably possesses copies of personal documents and other

18   records owned by Plaintiffs Paul and Jennifer Snitko. This deprivation constitutes

19   an ongoing injury to Plaintiffs Paul and Jennifer Snitko.

20         93.    Because Defendants continue to retain personal property that USPV

21   customers had secured in their safe deposit boxes absent any justification, Plaintiffs

22   Paul and Jennifer Snitko continue to be deprived of their jewelry, back-up hard

23   drives, legal documents, Paul's pilot flight log, and other personal effects they had

24   stored in their USPV safe deposit box. This deprivation constitutes an ongoing

25   injury to Plaintiffs Paul and Jennifer Snitko.

26         94.    Because Defendants exceeded the scope of their warrant in their March

27   22, 2021 criminal search and seizure of USPV customers' safe deposit boxes,

28   Plaintiff Joseph Ruiz has been subjected to an unreasonable search and seizure that

has deprived him of the over $50,000 of cash he deposited in his USPV safe deposit box.

95.     Because Defendants continue to retain personal property that USPV customers had secured in their safe deposit boxes absent any justification, Plaintiff Joseph Ruiz continues to be deprived of the approximately $57,000 of cash he placed in his USPV safe deposit box. This deprivation constitutes an ongoing injury to Plaintiff Joseph Ruiz.

96.     Joseph relied on his funds in his USPV safe deposit box for living and medical expenses. After the government seized this money, Joseph has been unable to secure needed medical care or basic staples of life. The seizure has forced Joseph to eat the pile of provisions he had stored at the outset of the COVID-19 pandemic.

97.     Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, Plaintiff Tyler Gothier has been subjected to an unreasonable search and seizure that has deprived him of the silver and other personal property he deposited in his USPV safe deposit box.

98.     Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, it now unreasonably possesses copies of personal documents and other records owned by Plaintiff Tyler Gothier. This deprivation constitutes an ongoing injury to Plaintiff Tyler Gothier.

99.     Because Defendants continue to retain personal property that USPV customers had secured in their safe deposit boxes absent any justification, Plaintiff Tyler Gothier continues to be deprived of the silver and other personal property he deposited in his USPV safe deposit box. This deprivation constitutes an ongoing injury to Plaintiff Tyler Gothier.

100.   Plaintiffs do not want to give Defendants any additional information as a condition of retrieving their property.

101.   Other members of the putative class are also injured by Defendants' violation of their Fourth and Fifth Amendment rights. Every putative class member has had property taken as a result of Defendants' unconstitutional March 22, 2021 search and seizure of USPV customers' safe deposit boxes and is now trying to retrieve that property. And because Defendants continue to retain that property, along with copies of records and documents made during Defendants' criminal search of USPV customers' property, every putative class member is suffering an ongoing injury.

## CLASS ACTION ALLEGATIONS

102.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 101 above.

103.   Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier seek to maintain this action on behalf of themselves and all others similarly situated under Rule 23(b)(2) of the Federal Rules of Civil Procedure. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

104.   Plaintiffs propose the following class definition: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; and (c) have not been notified that their safe deposit boxes are the subject of a currently ongoing administrative or judicial forfeiture proceeding."

105.   Within that broader class, Plaintiffs also propose a subclass of individuals who meet all the requirements for membership in the proposed class and whose property is still in the possession of the federal government. This subclass would be defined as: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the

16

seizure; (c) have not been notified that their safe deposit boxes are the subject of a currently ongoing administrative or judicial forfeiture proceeding; and (d) whose property is still in the possession of the federal government."

106.   This action meets all the Rule 23(a) prerequisites for maintaining a class action.

107.   ***Numerosity under Rule 23(a)(1)***: The putative class is so numerous that joinder of all members is impracticable.

   a.   At least 800 people rented safe deposit boxes from USPV, and the government seized all the personal property from those boxes in March 2021.

   b.   On information and belief, while it appears the government has informed attorneys for USPV that it is seeking to forfeit over 400 boxes, that leaves hundreds of boxes that the government apparently is not seeking to forfeit.

   c.   On information and belief, a significant portion of those box holders have filed claims for their property, such that the total number of putative class members would be impracticable to join within a single action.

   d.   Further, on information and belief, a significant portion of those box holders still have not recovered their property, such that the total number of members of the proposed subclass would likewise be impracticable to join within a single action.

108.   ***Commonality under Rule 23(a)(2)***: This action presents questions of law and fact common to the putative class and subclass, resolution of which will not require individualized determinations of the circumstances of any particular plaintiff. Common questions include but are not limited to:

   a.   For the class as a whole, did the government's seizure of all USPV customers' personal property and subsequent criminal search of

that property exceed the scope of the warrant and violate the Fourth Amendment?

    b.  For the class as a whole, does the government's retention and/or use of copies of documents found in USPV customers' safety-deposit boxes violate the Fourth Amendment?

    c.  For the proposed subclass, does the government's continued retention of USPV customers' personal property absent any valid legally independent justification for that retention violate the Fourth and Fifth Amendments?

    d.  For the proposed subclass, does the government's continued retention of USPV customers' personal property without providing customers with any process by which they may promptly secure the return of that property violate the Fifth Amendment?

    e.  For the proposed subclass, does the government's requirement that property owners demonstrate the legality of their property and their ownership of it to secure its return violate the Fifth Amendment?

109. ***Typicality under Rule 23(a)(3)***: Plaintiffs' claims are typical of the claims of the putative class.

    a.  Plaintiffs' claims and the putative class members' claims arise out of the same course of conduct by Defendants, are based on the same legal theories, and involve the same harms.

    b.  Plaintiffs seek the same class-wide declaratory and injunctive relief for both themselves and other members of the putative class and subclass.

110. ***Adequacy of representation under Rule 23(a)(4)***: The interests of the putative class and subclass are fairly and adequately protected by Plaintiffs and their attorneys.

    a.  Plaintiffs adequately represents the putative class and subclass

because their interests are aligned and there are no conflicts of interest between the Plaintiffs and members of the putative class and subclass.

b. Plaintiffs and the putative class members are ably represented *pro bono* by the Institute for Justice ("the Institute") and local counsel Nilay Vora. The Institute is a nonprofit, public-interest law firm that, since its founding in 1991, has litigated constitutional issues nationwide. The Institute has successfully litigated numerous federal class actions, including against the cities of Philadelphia (*Sourovelis v. City of Philadelphia*, No. CV 14-4687, 2021 WL 344598, at *1 (E.D. Pa. Jan. 28, 2021) (appointing the Institute for Justice as Class Counsel and approving federal consent decree in challenge to civil forfeiture procedures)), New York City (*Cho v. City of New York*, No. 1:16-cv-07961, Dkt # 111 (S.D.N.Y. Oct. 2, 2020) (approving settlement of a putative class action, under which New York City agreed not to enforce agreements extracted through coercive property seizures)), and Pagedale, Missouri (*Whitner v. City of Pagedale*, No. 4:15-cv-01655, Dkt. #116 (E.D. Mo. May 21, 2018) (approving federal consent decree prohibiting abusive ticketing practices)). Furthermore, the Institute for Justice has particular expertise litigating issues involving both property rights and Fourth Amendment violations. Meanwhile, local counsel is a recognized trial and appellate lawyer with experience litigating civil-rights cases.

111.   This action also meets the requirements of, and is brought in accordance with, Rule 23(b)(2) of the Federal Rules of Civil Procedure. Defendants have acted, or refused to act, on grounds generally applicable to the putative class.

1  Final injunctive and declaratory relief is appropriate with respect to all of the

2  members of the class.

3      112.   Finally, insofar as a Rule 23(b)(2) class must be ascertainable, this

4  action satisfies that requirement. The membership of the putative class is

5  ascertainable because the FBI maintains records of the identity of USPV customers

6  who have filed a claim for their property, as well as records of whether those

7  individuals have been notified of a civil forfeiture proceeding with respect to their

8  property. Similarly, while notice is not required for class actions brought under

9  Rule 23(b)(2), the FBI's records should contain contact information for all

10 members of the proposed class and subclass, and notice could easily be provided to

11 the extent the Court determines it is appropriate.

**CLASS CLAIMS**

**COUNT I: On Behalf Of The Proposed Class**

**Defendants' Criminal Search of USPV Customers' Personal Property**

**Violates the Fourth Amendment**

16     113.   Plaintiffs re-allege and incorporate by reference each and every

17 allegation set forth in ¶¶ 1 through 112 above.

18     114.   The U.S. Constitution's Fourth Amendment protects "[t]he right of the

19 people to be secure in their persons, houses, papers, and effects, against

20 unreasonable searches and seizures." It further provides that "no Warrants shall

21 issue, but upon probable cause, supported by Oath or affirmation, and particularly

22 describing the place to be searched, and the persons or things to be seized."

23     115.   The Fourth Amendment protects USPV customers' personal property

24 from unreasonable searches and seizures.

25     116.   The Fourth Amendment protects USPV customers' safe deposit boxes

26 from unreasonable searches and seizures.

27

28

117.   The seizure warrant issued authorized the government to seize USPV's *business* property, but did not authorize any criminal search or seizure of USPV customers' *personal* property.

118.   During Defendants' March 22, 2021 raid on USPV, the government seized USPV customers' personal property—the contents of their safe deposit boxes—without their permission.

119.   On or around March 22, 2021, the government seized USPV customers' personal property—the contents of their safe deposit boxes—without individualized suspicion.

120.   Defendants had no warrant, or other judicial authorization, authorizing a criminal search or seizure of USPV customers' personal property on or around March 22, 2021.

121.   Although the warrant authorized an inventory search of the contents of the USPV safe deposit boxes, that aspect of the warrant violated the Fourth Amendment insofar as it allowed a search of the boxes without individualized probable cause.

122.   The warrant's authorization to conduct a search of the boxes cannot be justified under the inventory search doctrine, as the best way to prevent theft and loss of the contents of the boxes would have been to leave those contents locked inside the safe deposit boxes. The government did not *protect* those contents by removing them from a locked box, and in fact *exposed* them to a greater risk of theft and loss.

123.   In addition, the government far exceeded the scope of the search authorized by the warrant. The warrant authorized only a limited inventory search of the contents of the USPV safe deposit boxes, in order to reunite customers with their property, but the government searched USPV customers' personal property even after finding box holders' identifying information.

124.   The government further exceeded the bounds of any permissible inventory search by engaging in conduct that was clearly motivated by an investigative purpose. Among other things, it deployed drug dogs on USPV customers' currency and opened USPV customers' envelopes.

125.   The government conducted this investigative search even though the warrant specifically instructed the government not to conduct a criminal search of customers' property.

126.   The government's March 22, 2021 criminal search and seizure of the personal property customers deposited in USPV safe deposit boxes was therefore unreasonable and in violation of the Fourth Amendment.

127.   Any evidence or records that Defendants obtained through the unauthorized criminal search of the contents of USPV customers' safe deposit boxes were obtained in violation of the Fourth Amendment as the "fruit of the poisonous tree."

128.   Accordingly, named Plaintiffs and putative class representatives ask the Court to declare that Defendants' actions in seizing all USPV customers' property and subjecting that property to a criminal search violated the Fourth Amendment.

129.   Similarly, named Plaintiffs and putative class representatives ask the Court to enter judgment declaring that due to Defendants' Fourth Amendment violation in subjecting Plaintiffs' property to a criminal search, Defendants' retention and/or use of any records or evidence obtained through that search, other than for the limited purpose of reuniting them with their property, violates the Fourth Amendment.

130.   To that end, named Plaintiffs and putative class representatives request that this Court order that all records Defendants created during their criminal search of USPV customers' security deposit boxes, other than those records necessary for

1  reuniting property owners with their property, be destroyed and/or returned to their
2  owners.

3      131.   As a direct and proximate result of Defendants' March 22, 2021
4  unreasonable search and seizure of USPV customers' personal property, named
5  Plaintiffs and other members of the putative class have suffered irreparable injury
6  to their constitutional rights, including but not limited to the unjust deprivation of
7  their property. Declaratory and injunctive relief is necessary to remedy this injury.

8              **COUNT II: On Behalf of the Proposed Subclass**
9  **Defendants' Ongoing Retention of Property Without Stating a Valid Legal**
10             **Basis for Its Continued Seizure Violates the Fourth Amendment**

11     132.   Plaintiffs re-allege and incorporate by reference each and every
12  allegation set forth in ¶¶ 1 through 112 above.

13     133.   Just as the government's initial seizure of property must withstand
14  Fourth Amendment scrutiny, so does the government's ongoing retention of seized
15  property. *See, e.g.*, *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

16     134.   Even if the government's actions in seizing Plaintiffs' property and
17  subjecting it to a criminal search passed Fourth Amendment scrutiny, Defendants
18  must separately justify any ongoing retention of seized property once its owner has
19  requested its return.

20     135.   Named Plaintiffs and putative subclass representatives Paul and
21  Jennifer Snitko, Joseph Ruiz, and Tyler Gothier are all seeking return of their
22  property and have filed claims with the FBI to request its return.

23     136.   But in response to seeking their property's return, the government has
24  not provided Plaintiffs with any justification for the ongoing retention of their
25  seized property.

26     137.   The government must either state a (valid) basis for retaining USPV
27  customers' property or else return the property to its owners.

28

138.   The government's ongoing retention of property that it seized from USPV customers' safe deposit boxes, absent any valid basis justifying that ongoing retention, is an unreasonable seizure that violates the Fourth Amendment.

139.   Accordingly, named Plaintiffs and putative subclass representatives ask the Court to enter judgment declaring that Defendants' ongoing retention of property seized from USPV customers' safe deposit boxes—without stating a valid legal basis for the continued seizure of that property—violates the Fourth Amendment.

140.   As a direct and proximate result of ongoing seizure of USPV customers' personal property, named Plaintiffs and putative subclass members, along with all members of the putative subclass, have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury. Without appropriate declaratory and injunctive relief, this injury will continue.

**COUNT III: On Behalf of the Proposed Subclass**

**Defendants' Ongoing Retention of Property Without Providing Notice and an Opportunity to be Heard Violates the Fifth Amendment**

141.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 112 above.

142.   Under the Due Process Clause of the U.S. Constitution's Fifth Amendment, the federal government must provide owners of property it has seized with notice of the government's basis for seizing that property, as well as a prompt and meaningful opportunity to challenge both the government's initial seizure and its ongoing detention of that property.

143.   The federal government has failed to tell Plaintiffs why it is continuing to retain their seized property, and, on information and belief, that failure to act is common to the putative subclass.

144.   Indeed, the government has failed to tell Plaintiffs how, if at all, they can retrieve their property seized by the government. On information and belief, that failure to act is also common to the putative subclass.

145.   The government has also failed to tell Plaintiffs when, if ever, the government will return customers' seized property to them. Once again, on information and belief, that failure to act is common to the putative subclass.

146.   The government's failure to provide Plaintiffs and other members of the putative class with notice of the basis for the ongoing detention of their property violates their due process right to notice of the basis for the deprivation of their property rights.

147.   The government's failure to articulate to Plaintiffs and other members of the putative subclass any meaningful and prompt means by which they can secure the return of their property violates their due process right to a prompt opportunity to be heard with respect to the deprivation of their property rights.

148.   Accordingly, named Plaintiffs and putative subclass representatives ask the Court to enter judgment declaring that Defendants' ongoing retention of property seized from their safe deposit boxes without notice or a prompt post-seizure opportunity to be heard violates the Due Process guarantees of the Fifth Amendment.

149.   As a direct and proximate result of Defendants' failure to provide USPV customers notice as to the government's basis for seizing customers' property and a prompt means by which customers may secure their property's return, named Plaintiffs and putative subclass representatives, as well as all members of the putative subclass, have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury. Without appropriate declaratory and injunctive relief, this injury will continue.

**COUNT IV: On Behalf of the Proposed Subclass**

**Defendants' Coercive Use of Unlawfully Seized Property to Force USPV**

**Customers to Submit to Investigation Violates the Fifth Amendment**

150.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 112 above.

151.   During the time that USPV customers' property has been in Defendants' custody and control, the government has refused to return any seized items until USPV customers come forward and identify themselves to the FBI.

152.   But according to the FBI, once a USPV customer identifies himself or herself to the FBI, the FBI will not immediately release that customer's property. Instead, it has indicated that it will conduct an "investigation" to determine if the customer came by their seized property legally.

153.   In other words, to secure the return of their property, USPV customers must submit to an investigation and prove their own innocence to Defendants' satisfaction.

154.   Under the Fifth Amendment's Due Process Clause, the government may not require that Plaintiffs prove their own innocence in order to retrieve their own property from the government. *See Nelson v. Colorado*, 137 S. Ct. 1249 (2017).

155.   By effectively holding seized property hostage and forcing USPV customers to submit sensitive and potentially incriminating personal financial information to secure its return, the government's procedure violates the Fifth Amendment right against self-incrimination. *See, e.g.*, *Boyd v. United States*, 116 U.S. 616, 630 (1886).

156.   By seizing USPV customers' property until they submit sensitive and potentially incriminating personal financial information to secure its return, the government's procedure forces USPV customers to choose between acquiescing to

a seizure of their property in violation of the Fourth Amendment or surrendering their Fifth Amendment right against self-incrimination.

157.   Named Plaintiffs and putative subclass representatives ask the Court to enter judgment declaring that Defendants' use of seized property as leverage to obtain testimony from USPV customers, or to compel them to give or furnish evidence, violates the Fifth Amendment.

158.   As a direct and proximate result of Defendants' coercive use of seized property, named Plaintiffs and putative subclass representatives, along with all other members of the putative subclass, have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury. Without appropriate declaratory and injunctive relief, this injury will continue.

**INDIVIDUAL CLAIM**

**COUNT V: Claim for Return of Property Currently Held in Violation of the Fourth and Fifth Amendments**

159.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 101 above.

160.   Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier bring this claim for return of seized property against Defendants under Federal Rule of Criminal Procedure 41(g).

161.   Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier are entitled to the immediate return of their property seized from their USPV safe deposit boxes, without any conditions, delay, or investigation.

162.   The property of Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier must be returned because Defendants' criminal search of their property violated the Fourth Amendment.

163.   Separately, the property of Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier must be returned because there are no active criminal proceedings or

investigations against these Plaintiffs, and Defendants' ongoing and unjustified retention of their property violates the Fourth Amendment.

164.   Although it appears the government may have notified attorneys for USPV that it intends to forfeit Joseph Ruiz's property, the government has not provided Joseph with any notice of any such potential forfeiture proceeding. Because the government has not instituted forfeiture proceedings against Joseph, the Court retains jurisdiction to entertain Joseph's Rule 41(g) motion for return of seized property.

165.   The government also has not initiated forfeiture proceedings against Paul and Jennifer Snitko or Tyler Gothier.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

A.   Certify this case as a class action under Federal Rule of Civil Procedure 23(b)(2) on behalf of all renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; and (c) have not been notified that their safe deposit boxes are the subject of a currently ongoing administrative or judicial forfeiture proceeding.

B.   Certify an additional subclass, also under Federal Rule of Civil Procedure 23(b)(2), consisting of all individuals who meet the criteria for membership in the proposed class and whose property is still in the possession of the federal government.

C.   Designate Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier as Class Representatives for the proposed class and subclass;

D.   Designate Plaintiffs' counsel of record as Class Counsel for the proposed class and subclass;

E.   Issue a class-wide declaratory judgment declaring that;

i.   With respect to the proposed class, Defendants' March 22, 2021 criminal search of USPV customers' property deposited in safe deposit boxes violated the Fourth Amendment;

ii.   With respect to the proposed class, Defendants' retention and/or use of any records or evidence obtained through its unreasonable criminal search, except for the limited purpose of reuniting property with its owners, violates the Fourth Amendment;

iii.   With respect to the proposed subclass, Defendants' ongoing retention of property seized from USPV customers' safe deposit boxes—without stating a valid independent basis for its continued detention—violates the Fourth Amendment;

iv.   With respect to the proposed subclass, Defendants' ongoing retention of property seized from USPV customers' safe deposit boxes—without notice or a prompt post-seizure opportunity to be heard—violates the Fifth Amendment.

v.   With respect to the proposed subclass, Defendants' use of seized property as leverage to require USPV customers to justify their property's legality violates the Fifth Amendment.

F.   Issue a class-wide permanent injunction, for the proposed class, enjoining Defendants from retaining records created through their March 22, 2021 criminal search and seizure of property deposited in USPV customers' safe deposit boxes, except for those records reasonably necessary for reuniting box holders with their property (which should be held in manner that ensures they are not available to government officials for any other use).

G.   Issue a class-wide permanent injunction, for the proposed subclass, enjoining Defendants from:

1
2
3

      i.     Retaining property seized from USPV customers' safe deposit boxes without stating a valid independent basis for its continued detention;

4
5

     ii.     Retaining property seized from USPV customers without notice or a prompt post-seizure opportunity to be heard;

6
7

    iii.     Compelling USPV customers to provide testimony, or prove the legality of their seized property, in order to secure its return.

8
9
10
11

H.     Issue a class-wide preliminary injunction, for the proposed subclass, enjoining Defendants from retaining property seized from USPV customers' safe deposit boxes without notifying those customers of a valid independent basis for its continued detention;

12
13
14
15

I.     Order Defendants to immediately return the seized property of Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier—without any conditions, delay, or investigation—under Federal Rule of Criminal Procedure 41(g) and the Court's inherent equitable authority;

16
17

J.     Enter an award allowing Plaintiffs to recover their attorney's fees, costs, and expenses under 28 U.S.C. § 2412; and

18
19

K.     Award any further legal and equitable relief the Court may deem just and proper.

20
21
22
23
24
25
26
27
28

Dated: May 27, 2021

Respectfully Submitted,

/s/Nilay U. Vora

**INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd. Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
16781 Chagrin Blvd. Suite 256
rjohnson@ij.org
Shaker Heights, OH 44120
Tel. (703) 682-9320

* *Pro hac vice pending.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Ste. 300
Santa Monica, California 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

PLAINTIFFS' COMPLAINT FOR RETURN OF PROPERTY AND CLASS-WIDE DECLARATORY AND INJUNCTIVE RELIEF