1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd. Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd. Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* *Pro hac vice pending.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Ste. 300
Santa Monica, California 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, and TYLER GOTHIER,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**<br><br>Defendants. | Case No. 2:21-cv-04405<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: June 28, 2021<br>Time: 9:00 A.M.<br>Courtroom: 850<br>Judge: Hon. R. Gary Klausner<br>Trial Date: TBD<br>Action Filed: May 27, 2021 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION.................................................................. 5

II.    BACKGROUND .................................................................. 6

    A.   Plaintiffs' Security Deposit Boxes. ........................................... 6

    B.   The Government's Search And Seizure. .................................... 6

    C.   The Government's Continued Retention Of The Property. ............ 8

III.   LEGAL STANDARD.......................................................... 9

IV.    ARGUMENT ..................................................................... 9

    A.   Plaintiffs Are Likely To Prevail On Their Claim That The Government Must State The Legal Basis For Its Continued Retention Of Their Property........................................................ 10

        1.   Due Process Requires Notice Of The Government's Basis For The Continued Deprivation Of The Property........ 10

        2.   If The Government Cannot State A Legal Basis For The Retention Of The Property, The Property Must Be Returned................................................................ 12

    B.   The Remaining Factors Favor Grant Of A Preliminary Injunction............................................................................. 15

        1.   A Preliminary Injunction Is Necessary To Prevent Irreparable Harm........................................................... 16

        2.   The Balance Of Equities Favors Injunctive Relief, And An Injunction Would Be In The Public Interest. .......... 16

    C.   To The Extent Necessary To Provide The Requested Injunctive Relief, The Court Should Certify A Provisional Class. ................. 17

        1.   This Is An Appropriate Case For Class-Wide Injunctive Relief Under Rule 23(b)(2)................................................ 19

        2.   This Case Satisfies The Prerequisites For Certification Under Rule 23(a)................................................................ 21

V.     CONCLUSION ................................................................. 22

2

1

**TABLE OF AUTHORITES**

Page

2

**CASES**

3

*Ahlman v. Barnes*,
   445 F. Supp. 3d 671 (C.D. Cal. 2020)..........................................................18

4

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
   686 F.3d 965 (9th Cir. 2012)............................................................ 10, 11, 12

5

6

*Boyd v. United States*,
   116 U.S. 616 (1886)....................................................................................15

7

*Brewster v. Beck*,
   859 F.3d 1194 (9th Cir. 2017)..........................................................9, 10, 12, 13

8

9

*Clement v. Cal. Dep't of Corr.*,
   364 F.3d 1148 (9th Cir. 2004)......................................................................17

10

*Cooper v. Fed. Rsrv. Bank of Richmond*,
   467 U.S. 867 (1984)....................................................................................20

11

12

*Davis v. Astrue*,
   874 F. Supp. 2d 856 (N.D. Cal. 2012)..........................................................17

13

*Davis v. Mississippi*,
   394 U.S. 721 (1969)....................................................................................14

14

15

*E. Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021).........................................................................9

16

*Elrod v. Burns*,
   427 U.S. 347 (1976)....................................................................................16

17

18

*Florida v. Royer*,
   460 U.S. 491 (1983)....................................................................................14

19

*Fraihat v. ICE*,
   445 F. Supp. 3d 709 (C.D. Cal. 2020).........................................18, 20, 21, 22

20

21

*Fraihat v. ICE*,
   No. 19-cv-1546, 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020)........................18

22

*Gete v. INS*,
   121 F.3d 1285 (9th Cir. 1997)..................................................................10, 11

23

24

*Hiser v. Franklin*,
   94 F.3d 1287 (9th Cir. 1996)........................................................................20

25

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*,
   647 F. Supp. 2d 857 (N.D. Ohio 2009).........................................................12

26

27

*Lopez-Valenzuela v. Arpaio*,
   770 F.3d 772 (9th Cir. 2014)........................................................................20

28

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

*Melendres v. Arpaio,*
   695 F.3d 990 (9th Cir. 2012)......................................................... 9, 16

*Meyer v. Portfolio Recovery Assocs., LLC,*
   707 F.3d 1036 (9th Cir. 2012).............................................................18

*Ordonez v. Stanley,*
   495 F. Supp. 3d 855 (C.D. Cal. 2020).................................................10

*Rannis v. Recchia,*
   380 F. App'x 646 (9th Cir. 2010)........................................................21

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010)........................................................20, 21

*Rosen Ent. Sys., LP v. Eiger Vision,*
   343 F. Supp. 2d 908 (C.D. Cal. 2004).................................................7

*Sandoval v. County of Sonoma,*
   912 F.3d 509 (9th Cir. 2018)................................................... 9, 12, 13

*Scholl v. Mnuchin,*
   489 F. Supp. 3d 1008 (N.D. Cal. 2020)...............................................18

*Soldal v. Cook County,*
   506 U.S. 56, 66 (1992)........................................................................15

*Torres v. Milusnic,*
   472 F. Supp. 3d 713, 746–47 (C.D. Cal. 2020)...................................18

*United States v. Johnson,*
   889 F.3d 1120, 1128 (9th Cir. 2018)............................................ 7, 14

*United States v. Oriho,*
   969 F.3d 917, 926 (9th Cir. 2020)......................................................15

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. V...............................................................................5

**RULES**

Fed. R. Civ. P. 23(a)..............................................................................21

Fed. R. Civ. P. 23(b)(2).....................................................................19, 20

Fed. R. Civ. P. 41(g)..............................................................................20

**OTHER AUTHORITIES**

18A Wright & Miller, Federal Practice & Procedure § 4455.2 ...........20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   INTRODUCTION

This motion seeks to enforce a basic constitutional tenet: When the government deprives a private individual of a property right, the government is required to identify and provide notice of the legal basis for the deprivation. That is an important part of what the Constitution means when it says that "[n]o person shall . . . be deprived of life, liberty, *or property* without due process of law." U.S. Const. amend. V (emphasis added).

The government here has failed to live up to that basic promise. The government seized the property of Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier on March 22, 2021, as part of a raid on U.S. Private Vaults ("USPV"). Nobody has accused these Plaintiffs of any crime. They are ordinary people who wanted a secure place to hold their property. And, as the FBI requested, they came forward in their own names and filed claims for their property through the FBI's website. It would be a simple thing for the FBI to have Plaintiffs come down to their offices, produce their key for their box, and recover their property. Yet two months after their property was seized, the government is continuing to hold it. And the government has offered no explanation for its actions, beyond a directive to wait.

While the government's actions with respect to the USPV seizure raise a host of troubling constitutional issues—some of which may be addressed in later stages of this putative class action—this motion is narrowly targeted to this one ongoing violation of Plaintiffs' constitutional rights. The government owes Plaintiffs an explanation for its continued detention of the property. And, if it cannot provide one, it must give the property back.

Moreover, the same is true for all the other individuals who have filed claims through the FBI's website. The seizure warrant authorized the government to seize the property of USPV—not its customers—and expressly stated that the government would work to return the contents of the boxes to the customers. Some

customers have received their property back, but others, like Plaintiffs, have not. Two months after the seizure, the government must provide an explanation for why it is has not returned property to customers who have come forward to file claims. And, if it cannot, it must give the property back without further delay.

## II.   BACKGROUND

### A.   Plaintiffs' Security Deposit Boxes.

Plaintiffs in this case are all holders of security deposit boxes at USPV's facility in Beverly Hills. Paul and Jennifer Snitko held a box containing jewelry, back-up hard drives, legal documents, Paul's pilot flight log, and other personal effects. P. Snitko Decl. ¶ 5; J. Snitko Decl. ¶ 5. Joseph Ruiz held a box that contained over $50,000 in cash that Joseph relies on to pay his living and medical expenses. Ruiz Decl. ¶¶ 5, 11–12. And Tyler Gothier held a box that contained silver and other personal property. Gothier Decl. ¶ 5.

Plaintiffs decided to open boxes at USPV because it offered a safe and secure place to hold their private property. *See* P. Snitko Decl. ¶ 6; J. Snitko Decl. ¶ 6; Ruiz Decl. ¶ 6; Gothier Decl. ¶ 6. The Snitkos, for instance, chose to use USPV because their bank had a wait list for safety deposit boxes, and given the risk of wildfires at their home it was important to have a safe space to store personal property. P. Snitko Decl. ¶ 6; J. Snitko Decl. ¶ 6. Both Tyler and Joseph chose USPV because its location was convenient. Ruiz Decl. ¶ 6; Gothier Decl. ¶ 6.

### B.   The Government's Search And Seizure.

The government indicted USPV on March 9, 2021. *See United States v. U.S. Private Vaults, Inc.*, No. 21-cr-106 (C.D. Cal.). The indictment alleges wrongdoing by USPV officials, but it does not indict those officials. And the indictment does not specifically allege any wrongdoing by USPV's customers.

Then, on March 17, 2021, the government obtained a warrant to seize USPV's property. *See* Ex. A.[1] In keeping with the indictment's focus on USPV, the warrant authorized the government to seize USPV's "business equipment," including the "nests of safety deposit boxes and keys." *Id.* The warrant specifically stated that the "warrant *does not authorize* a criminal search or seizure of the contents of the safety deposit boxes." *Id.*

Despite that limited scope, the warrant did envision that the government would conduct a limited search of the contents of the security deposit boxes—which the warrant labeled an "inventory" search. *Id.* The usual purpose of an inventory search is to prevent theft and loss, by creating a record of seized property, *see United States v. Johnson*, 889 F.3d 1120, 1128 (9th Cir. 2018), but this was a curious inventory search insofar as it involved opening locked boxes that were otherwise impervious to theft or loss. But, even conceding the premise that this was a proper inventory search, the government represented that it would be limited in scope: The warrant application stated that the government would search the boxes to "look for contact information or something which identifies the owner," and stated that, under official FBI policies, the inspection "should extend no further than necessary to determine ownership." Ex. B. In keeping with these statements, the warrant contemplated that, "in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property." Ex. A.

The government executed the warrant on March 22, 2021. Ex. C. Recently disclosed documents show that, in doing so, the government overstepped the bounds of the inventory search that was proposed in the warrant application. Per USPV procedures, many box holders placed a letter on top of their box with

---

[1] Citations to "Ex." refer to the exhibits to the declaration of Nilay Vora, filed contemporaneously with this memorandum. *See Rosen Ent. Sys., LP v. Eiger Vision*, 343 F. Supp. 2d 908, 912 (C.D. Cal. 2004) (explaining that courts have broad latitude to consider evidence on a motion for preliminary injunction).

7

information on the identity of their beneficiary (should something happen to them) and with their own personal contact information. *See* P. Snitko Decl. ¶ 8. If the government had complied with its statement in the warrant application, that its search would "extend no further than necessary to determine ownership," then it would have stopped its inventory search as soon as it found that letter. Ex. B. But video of the search shows the government did no such thing. *See* Ex. D ¶¶ 6–11.

### C.   The Government's Continued Retention Of The Property.

The government's warrant application stated that the purpose of its inventory search was to identify box holders, so that property could be returned. Ex. B. The warrant thus did not authorize the government to retain property of USPV's customers, and, in fact, expressly contemplated that such property would be returned. Ex. A.

After seizing the contents of the USPV boxes, the government placed a notice on the USPV storefront stating that box holders should file a claim to their property through an FBI website. Ex. F. Each of the Plaintiffs has filed a claim through that website. *See* P. Snitko Decl. ¶ 10; J. Snitko Decl. ¶ 9; Ruiz Decl. ¶ 8; Gothier Decl. ¶ 8. In addition, as noted below, Plaintiffs are seeking relief only on behalf of individuals who have come forward to file such claims.

Nonetheless, two months after the seizure, the government continues to retain Plaintiffs' property. *See* J. Snitko Decl. ¶ 11; P. Snitko Decl. ¶ 12; Ruiz Decl. ¶ 10; Gothier Decl. ¶ 9. Tyler Gothier filed his claim recently, and he has had no subsequent contact from the FBI. *See* Gothier Decl. ¶¶ 8–9. Joseph Ruiz filed his claim shortly after the seizure, and he has received only an email stating that an FBI agent would be in touch at some future date. Ruiz Decl. ¶ 9–10.[2] And Paul and

---

[2] Counsel for Plaintiffs has received second-hand information indicating that the government may have told attorneys for USPV that it intends to seek forfeiture of Joseph's property. *See* Compl. ¶ 80. However, the government has not notified Joseph of any such civil forfeiture proceeding. *See id.* ¶¶ 82-83; *see also* Ruiz Decl. ¶ 10. Absent notice, Joseph does not know if the government will seek to forfeit his property, does not know the basis for any such possible forfeiture proceeding, and does not have the ability to file a claim challenging the forfeiture.

8

1    Jennifer also filed their claims shortly after the seizure, and, in their case, received

2    both an email (again, stating that the FBI would be in touch in 30–60 days) as well

3    as a phone call asking them to provide the number on their box. P. Snitko Decl.

4    ¶ 10–11; J. Snitko Decl. ¶ 9–10. The government has not provided any further

5    instructions and has not provided any estimate of when the property will be

6    returned. *See* P. Snitko Decl. ¶ 12; J. Snitko Decl. ¶ 11; Ruiz Decl. ¶ 10; Gothier

7    Decl. ¶ 9. The government has simply admonished Plaintiffs to be patient and to

8    continue to wait. *See*, *e.g.*, Ex. A to Ruiz Decl. (email from FBI stating that "calling

9    the FBI Field Office to make individual inquiries will only slow the process"). The

10   government has not offered any justification for its retention of the property.

11   **III.  LEGAL STANDARD**

12        "To obtain a preliminary injunction, a plaintiff must establish that he is likely

13   to succeed on the merits, that he is likely to suffer irreparable harm in the absence

14   of preliminary relief, that the balance of equities tips in his favor, and that an

15   injunction is in the public interest." *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th

16   Cir. 2012) (marks and citation omitted). "When the government is a party, the last

17   two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v.*

18   *Biden,* 993 F.3d 640, 668 (9th Cir. 2021).

19   **IV.  ARGUMENT**

20        Plaintiffs have a simple question for the government. Given that the warrant

21   explicitly stated that it "does not authorize a criminal search or seizure of the

22   contents of the safety deposit boxes," and expressly contemplated that the

23   government would "identify [the boxes'] owners in order to notify them so that

24   they can claim their property," Ex. A, why is the government still holding their

25   property? Plaintiffs understand the government's stated basis for the initial seizure

26   (though they dispute that the seizure was proper). But the government must

27   separately justify the initial seizure and its continued retention of the property. *See*

28   *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018); *Brewster v.*

*Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). Given that the warrant contemplated that the contents of the security deposit boxes would be returned, Plaintiffs have filed this motion to demand notice of the government's asserted legal basis for the ongoing detention of their property. And, if the government cannot provide that explanation, it should have to give the property back.

This memorandum proceeds in three parts. Part A explains that Plaintiffs are likely to prevail on the merits of their claim that due process requires the government to state the basis for the ongoing seizure of Plaintiffs' property—which, again, is separate from the basis for the *initial* seizure—and that if the government cannot state a basis for the continued detention of the property it must give it back. Part B explains that Plaintiffs satisfy the other requirements for the issuance of a preliminary injunction. Finally, Part C explains that the Court can enter this injunctive relief without certifying a class, but also moves, in the alternative, for limited and provisional class certification to the extent the Court deems it necessary to provide relief.

**A.  Plaintiffs Are Likely To Prevail On Their Claim That The Government Must State The Legal Basis For Its Continued Retention Of Their Property.**

Plaintiffs are likely to prevail on the merits of their claim that the government must notify them of the basis for its continued detention of their property, or, if it cannot, must release the property without further delay.

1.  Due Process Requires Notice Of The Government's Basis For The Continued Deprivation Of The Property.

The constitutional requirement of notice, as a matter of due process, includes the right to "sufficient notice concerning the factual and legal bases for" deprivations of property rights. *Gete v. INS*, 121 F.3d 1285, 1297 (9th Cir. 1997); *see also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 987 (9th Cir. 2012); *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 864 (C.D. Cal. 2020).

1   That is what Plaintiffs are seeking. Plaintiffs are asking the government to notify

2   them of the basis for the continuing seizure of their property, notwithstanding the

3   warrant's contemplation that their property would be returned.

4       The Ninth Circuit's decision in *Gete* shows that, as a matter of due process,

5   the government must notify Plaintiffs of the basis for the ongoing seizure of their

6   property. In that case, plaintiffs sued to challenge the notice procedures applied by

7   the INS for seizures of cars and other vehicles. 121 F.3d at 1289. The notice

8   provided by the INS did "not inform the owner which statutory provisions are

9   alleged to have been violated" and also did not "contain any statement of the factual

10  basis" for the seizure. *Id.* at 1290. The Ninth Circuit found that notice insufficient.

11  *Id.* at 1299. In doing so, the Ninth Circuit acknowledged that "owners will

12  frequently have at least a general idea of the factual basis for the seizure," but the

13  Court nonetheless held that property owners were entitled to notice of "the exact

14  reasons for the seizure, as well as the particular statutory provisions and

15  regulations" at issue. *Id.* at 1297. The Ninth Circuit also stated that requiring that

16  type of reasonably detailed notice "would not be unduly burdensome" for the

17  government, as "[a]ll that it would be required to do is provide . . . information that

18  is already in its possession." *Id.* at 1298. As a matter of due process, the

19  government could not retain the plaintiffs' property without stating the basis for its

20  action.

21      The Ninth Circuit's decision in *Al Haramain* also applies that due process

22  requirement. In that case, the Office of Foreign Assets Control ("OFAC") froze the

23  plaintiff's assets, apparently because OFAC believed the plaintiff was funding

24  terrorists. 686 F.3d at 970. The plaintiff had notice that its assets were frozen;

25  among other things, OFAC put out a press release and also sent the plaintiff a letter.

26  *Id.* at 973–74. But the plaintiff nonetheless argued that it had not received sufficient

27  notice, as a matter of due process, because the government had "refused to disclose

28  its reasons for investigating and designating [the plaintiff], leaving [the plaintiff]

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    unable to respond adequately." *Id.* at 984–85. Notwithstanding the government's

2    national security interests in the anti-terrorism context, the Ninth Circuit agreed that

3    the plaintiff was entitled to, "at a minimum, a terse and complete statement of

4    reasons." *Id.* at 986. And, while the government argued in response that the plaintiff

5    could likely guess the reasons for the designation, the Ninth Circuit also stated that

6    "the opportunity to guess at the factual and legal bases for a government action

7    does not substitute for actual notice of the government's intentions." *Id.* at 986–87;

8    *see also KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F.

9    Supp. 2d 857, 906 (N.D. Ohio 2009) (likewise concluding that OFAC's failure to

10   provide notice of the basis for an asset freeze violated due process). If the alleged

11   terrorists in *Al Haramain* were entitled to an explanation from the government,

12   surely the same is true of USPV's customers.

13        2.   If The Government Cannot State A Legal Basis For The Retention Of

14             The Property, The Property Must Be Returned.

15        If the government cannot state a legal basis for its continued seizure of

16   Plaintiffs' property, then that property must be returned. After all, under the Fourth

17   Amendment, the government must justify *both* the initial seizure of Plaintiffs'

18   property *and* the ongoing seizure of that property today. And if the government

19   cannot offer a justification, then it follows as a matter of course that the seizure

20   must end. The government, moreover, can return the property following precisely

21   the procedure that it has followed when it has returned property to those fortunate

22   few individuals who have already secured return of their property: It can require

23   claimants to produce the key to their box, to confirm their right to possess the

24   contents.

25        In that respect, this case is just like *Sandoval* and *Brewster*, where the Ninth

26   Circuit held that the government was required to return impounded vehicles to their

27   owners once the owners showed up to claim their property. *Sandoval*, 912 F.3d at

28   516–17; *Brewster*, 912 F.3d at 1194–97. Now that Plaintiffs have identified

1  themselves and claimed their property, the government must either "cease the
2  seizure or secure a new justification" for the continued detention of the property.
3  *Brewster*, 859 F.3d at 1197. The government is free to attempt to establish that it
4  has some legal basis for the continued retention of this property, but, if it cannot, it
5  must give the property back without further delay.

6        As in *Sandoval* and *Brewster*, the government cannot meet this burden by
7  pointing to the initial basis for the seizure. In *Brewster*, for instance, the
8  government had validly impounded property under the community caretaking
9  doctrine, but the "exigency that justified the seizure vanished once the [property]
10 arrived in impound and [the owner] showed up" to claim it. 859 F.3d at 1196; *see*
11 *also Sandoval*, 912 F.3d at 516–17. Similarly, here, the government's only basis for
12 seizing the property was that (as it stated in its warrant application), "[b]y seizing
13 the nests of safety deposit boxes, the government will necessarily end up with what
14 is inside those boxes initially." Ex. B. But the warrant application was clear that
15 agents would then "attempt to notify the lawful owners of the property stored in the
16 boxes how to claim their property." *Id.* Whether that initial justification for the
17 seizure was valid or not—and Plaintiffs intend to argue, elsewhere, that it was
18 not—that justification dissipated as soon as property owners came forward to claim
19 their property.

20       While the government must, of course, be afforded some time to return
21 property to its owners in a safe and orderly fashion, any such period has long
22 passed. The seizure in this case occurred over two months ago—on March 22,
23 2021. *See* Ex. C. The Snitkos, for example, submitted a claim shortly after the
24 seizure, on or about April 9, 2021. *See* J. Snitko Decl. ¶ 9. Since then, the Snitkos
25 have had no contact from the FBI apart from an email telling them to be patient, as
26 well as a phone call asking them for their box number. *See id.* ¶ 10. When the
27 Snitkos asked the FBI when their property would be returned—and what steps they
28 would have to take to get the property back—they were told they would simply

have to wait for a phone call. *Id.* If the government was serious about returning this property, it surely could have set up appointments for claimants to produce their keys and retrieve their property within a matter of weeks—and, at the outset, within a month. *See* Ex. E (declaration describing procedure FBI followed to return property to one property owner). Two months after the seizure, the continued detention of Plaintiffs' property has passed well beyond a mere bureaucratic delay and must be justified under the Fourth Amendment.

The government also cannot meet this burden merely by asserting that it needs time to "investigate" box holders, as the warrant did not authorize any such investigation. The warrant expressly stated: "This warrant *does not authorize* a criminal search or seizure of the contents of the safety deposit boxes." Ex. A (emphasis added). And while the warrant did contemplate that the government would inventory the property in the safety deposit boxes, the Ninth Circuit has made clear that an inventory search "must be non-investigative." *Johnson*, 889 F.3d at 1125. The seizure warrant thus did not authorize the government to hold onto this property to conduct an investigation, and, to the extent the government wants to conduct an investigation, it must articulate some *new* legal basis that would justify holding onto the property pending investigation. The mere fact that the government says it is investigating does not in and of itself justify a seizure; to the contrary, "to argue that the Fourth Amendment does not apply to the investigatory stage is fundamentally to misconceive the purposes of the Fourth Amendment." *Davis v. Mississippi*, 394 U.S. 721, 726 (1969); *see also Florida v. Royer*, 460 U.S. 491, 499 (1983) (explaining that "[d]etentions may be 'investigative' yet violative of the Fourth Amendment absent probable cause"). The government is of course free to investigate whomever it desires, but the government cannot point to the mere existence of an investigation as a reason to seize and hold property.

At a minimum, if the government seeks to hold onto property because it may be connected to a crime, the government must be able to show probable cause. *See*

*Soldal v. Cook County*, 506 U.S. 56, 66 (1992) (explaining that, "in the absence of consent or a warrant permitting the seizure of the items in question, ['plain view' property] seizures can be justified only if they meet the probable-cause standard"). And if the government currently lacks probable cause, the government cannot be allowed to use the property as leverage to ferret out the probable cause that it currently lacks. As the Supreme Court explained in *Boyd v. United States*, 116 U.S. 616, 630 (1886), "any forcible and compulsory extortion of a man's own testimony, or of his private papers to be used as evidence to convict him of crime, or to forfeit his goods, is within the condemnation of" the Fourth and Fifth Amendments, and, "[i]n this regard the fourth and fifth amendments run almost into each other." *See also*, *e.g.*, *United States v. Oriho*, 969 F.3d 917, 926 (9th Cir. 2020) (order directing defendant to repatriate foreign funds violated Fifth Amendment insofar as it would compel defendant to reveal existence of foreign accounts). This much should be axiomatic: The government cannot hold onto property in violation of the Fourth Amendment in the hopes that by prolonging an unlawful seizure it will obtain greater leverage in a criminal investigation. If the government does not have a valid basis to hold property, then it must return it.

To be clear, this motion does not argue that *all* the property held by the government following the USPV seizure must necessarily be returned. The motion is limited to property owners who have filed claims, and, even then, the requested injunction would give the government an opportunity to attempt to articulate a basis to hold property. This motion simply seeks to compel the government to take that first step to articulate the basis for its action. And, if the government cannot take even that first step, then it must give the property back.

**B.  The Remaining Factors Favor Grant Of A Preliminary Injunction.**

The previous section explains that Plaintiffs are likely to prevail on their claim that the government must state the basis for its continued detention of their

property, or, if it cannot, must release the property. Now, this section explains that Plaintiffs meet the remaining requirements for a preliminary injunction.

### 1.   A Preliminary Injunction Is Necessary To Prevent Irreparable Harm.

A preliminary injunction is necessary to prevent irreparable harm because, as explained above, the government is violating due process by holding property without providing notice of the basis for the ongoing seizure. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres*, 695 F.3d at 1002 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, this constitutional harm is compounded further by the real-world harms that individuals are suffering as they are deprived of their property. Joseph Ruiz, for instance, badly needs his property back in order to pay for basic living expenses and necessary medical care, and Joseph has been forced to resort to eating stockpiled canned food while he waits for the property's return. *See* Ruiz Decl. ¶¶ 11–13. This ongoing deprivation of property gives rise to a separate constitutional violation, will cause real concrete injury, and confirms the need to grant immediate relief.

### 2.   The Balance Of Equities Favors Injunctive Relief, And An Injunction Would Be In The Public Interest.

An injunction would be in the public interest, as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. An injunction also would ensure the government's compliance with the narrow scope of the warrant issued to authorize the seizure and would thus ensure respect for the judiciary's role under the Fourth Amendment. An injunction also would cause no possible harm to the government: If the government has a valid justification to retain property, the government would simply have to say what that justification is.

**C.  To The Extent Necessary To Provide The Requested Injunctive Relief, The Court Should Certify A Provisional Class.**

The Court can grant the requested injunctive relief without certifying a class, as the relief that is sought in this motion would be "no broader than the constitutional violation." *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1152 (9th Cir. 2004); *see also Davis v. Astrue*, 874 F. Supp. 2d 856, 868 (N.D. Cal. 2012). In *Clement*, for example, the Ninth Circuit upheld a statewide injunction enjoining enforcement of a particular prison policy, reasoning that, although the plaintiff in that case was an inmate at only one prison, "it would be inefficient and unnecessary for prisoners in each California state prison to separately challenge the same [prison] policy." 364 F.3d at 1153. In doing so, the Ninth Circuit also emphasized the flexibility of the remedy, as the injunction prohibited only the challenged policy and would not prohibit *other* restrictions adopted for a "legitimate penological or security reason." *Id.* The preliminary injunction requested here is both broad and flexible in the same way: The injunction would require the government to state a basis for its ongoing seizure of property from *all* USPV customers who have filed claims and, in doing so, would be "no broader than the constitutional violation," *id.* at 1152, but, as in *Clement*, the injunction would allow the government to attempt to articulate some alternate basis for its conduct. The court in *Clement* was able to provide that type of relief without certifying a class, and the same should be true here.

However, if the Court deems it necessary to provide the requested injunctive relief, the Court also can and should certify the following provisional class, which is a subclass of the broader putative class proposed by the Complaint:

**All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) have not been notified that their safe deposit boxes are the**

**subject of a currently ongoing administrative or judicial forfeiture proceeding; and (d) whose property is still in the possession of the federal government.**

*See* Compl. ¶ 105 (seeking certification of this subclass).[3]

Provisional class certification allows a district court to certify a class for the narrow and limited purpose of issuing preliminary injunctive relief. *See, e.g., Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also Ahlman v. Barnes*, 445 F. Supp. 3d 671, 682 (C.D. Cal. 2020) (explaining that "[c]ourts in the Ninth Circuit routinely grant provisional class certification for purposes of entering injunctive relief." (marks omitted)). The type of flexible preliminary relief that Plaintiffs seek here is precisely the type of relief that courts have awarded through the provisional class certification mechanism: For instance, in *Fraihat v. ICE*, 445 F. Supp. 3d 709, 751 (C.D. Cal. 2020), the court certified a provisional class of detained persons with certain medical conditions and then ordered the government to establish a process to "make timely custody determinations for detainees." The court subsequently clarified that "[b]lanket or cursory" procedures would not suffice to satisfy its injunction, but also made clear that its injunction "does not opine on the lawfulness of conditions faced by any individual detainee" and therefore would not "preclude emergency habeas petitions on either an individual or a group basis." *Fraihat v. ICE*, No. 19-cv-1546, 2020 WL 6541994, at *12, *13 (C.D. Cal. Oct. 7, 2020); *see also Torres v. Milusnic*, 472 F. Supp. 3d 713, 746–47 (C.D. Cal. 2020); *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1047 (N.D. Cal. 2020). The preliminary relief requested here would likewise redress an ongoing violation by affording procedural relief to the class, while

---

[3] Notwithstanding the government's apparent suggestion in communications to USPV that Joseph might be the target of forfeiture proceedings, Joseph falls within the proposed class because nobody from the government has provided Joseph (as opposed to USPV) with any kind of notice of any such forfeiture proceeding. *See supra* n.2.

18

nonetheless preserving the government's flexibility to act within those procedures as well as the ability of class members to seek more individualized relief. Such provisional relief, moreover, is appropriate because this is a straightforward case for certification under Rule 23(b)(2).

1. <u>This Is An Appropriate Case For Class-Wide Injunctive Relief Under Rule 23(b)(2).</u>

This is an appropriate case for certification under Rule 23(b)(2) because the government "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The proposed class is defined to include USPV box holders who have come forward in their own names to file claims with the FBI in order to retrieve their property, who have not been notified that their property is the subject of a civil or administrative forfeiture proceeding, and yet who have not received their property back. And the proposed preliminary injunctive relief would provide a remedy to that entire class, by forcing the government to either provide notice of the legal basis for the ongoing detention or else give the property back.

In this respect, it is of critical importance that this motion does not actually seek an order compelling the return of *any* particular property; the government only needs to return property if it cannot meet its obligation to state a valid basis for the ongoing seizure. The government will presumably argue that this claim cannot be adjudicated on a class-wide basis because, for some property owners, it may have individualized reasons why it believes it cannot give the property back. But the class claims do not seek to adjudicate any such issues, and, instead, seek only to redress constitutional violations that are common to the class. *See* Compl. ¶¶ 113-58. The particular claims at issue in this motion, for instance, seek only to uphold class members' right to notice of the asserted basis for the seizure, as well as the right to return of the property where the government cannot meet that basic

requirement. *Id.* ¶¶ 132-49. That overarching procedural right is common to the class as a whole, although the individual circumstances of class members' cases may differ in other respects. "Plaintiffs do not seek any individualized determination by this Court of whether they are entitled to release, and do not request a different injunction for each class member" and instead "ask the Court to determine whether [the government's] systematic actions, or failures to act, . . . amount to violations of the class members' constitutional or statutory rights." *Fraihat*, 445 F. Supp. 3d at 741. This is therefore a paradigmatic 23(b)(2) class.

In this respect, this putative class is akin to any class action that seeks to redress a systemic violation without necessarily determining the outcome of individual cases subject to that violation. *See, e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1126 (9th Cir. 2010) (finding class appropriate for certification under Rule 23(b)(2) where all class members sought the same procedure, even though the outcome of proceedings might differ); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) (determining that class members are all entitled to certain procedures, although outcome of those procedures might differ case-to-case). As in any such case, this putative class action seeks to remedy systemic violations in the government's conduct, without seeking to adjudicate more individualized issues that may arise with respect to particular individuals. If, notwithstanding this systemic relief, the government still retains property of particular individuals, then those individuals will be able to file separate individual actions under Rule 41(g) for the return of their personal property.[4] But systemic relief is appropriate to address the government's systemic failure to act promptly to either provide notice for the basis of the ongoing seizure or, if it cannot, to give the property back.

---

[4] There should be no concern that proceedings in the class action would somehow preclude subsequent, individualized Rule 41(g) actions. *See, e.g.*, 18A Wright & Miller, Federal Practice & Procedure § 4455.2; *see also Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867 (1984); *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996).

2.   <u>This Case Satisfies The Prerequisites For Certification Under Rule 23(a).</u>

In addition to all the foregoing, this case also satisfies the necessary prerequisites for class certification under Rule 23(a).

*a. Numerosity:* "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members," and the Ninth Circuit has found the requirement satisfied for a class with just 20 members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). In this case, the government knows the exact number of individuals who have come forward to file claims and can readily provide that information in its response or through expedited discovery. The USPV facility held hundreds of boxes, however, and there is no reason to think the proposed class is not numerous.[5]

*b. Commonality:* The requirement of commonality is also satisfied because "the constitutional issue at the heart of each class member's claim for relief is common." *Rodriguez*, 591 F.3d at 1123. The class claims argue that the government is required to provide notice of the basis for the ongoing detention in every case; and, if the government cannot articulate a basis to hold onto the property, apart from the basis for the initial seizure, then the government must give the property back. And, as explained above, the motion properly does not seek to adjudicate any individualized issues beyond those common constitutional claims. "Each class member claims entitlement to a minimally adequate" procedure to secure return of their property, and, as a result, any "factual differences [within the class] are not of the sort that likely affect entitlement to relief." *Fraihat*, 445 F. Supp. 3d at 738.

*c. Typicality:* The typicality requirement "requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez*, 591 F.3d at 1124

---

[5] In the unlikely event that the proposed class contains fewer than 40—or 20—class members, then that would just confirm the propriety of providing broad injunctive relief without necessarily certifying a class, as proposed at the outset of this section.

(marks omitted). Notwithstanding individual differences between members of a proposed class, that requirement is satisfied where, as here, the class representatives and other members of the class all raise "similar constitutionally-based arguments and are alleged victims of the same practice of prolonged detention." *Id.* The proposed class representatives all had their property seized by the government; all filed claims with the government to recover their property; and are all still waiting for their property to be returned. As a result, they "have the same claims and face the same or similar harms arising from the same course of conduct" as the other members of the proposed class. *Fraihat*, 445 F. Supp. 3d at 738–39.

 *d. Adequacy:* Finally, to determine adequacy of representation, "the Court asks whether the proposed class representatives and their counsel have any conflicts of interest with any class members and whether the proposed class representatives and their counsel will prosecute the action vigorously on behalf of the class." *Fraihat*, 445 F. Supp. 3d at 739. There is no conflict here: The proposed class representatives here seek the exact same relief that they are requesting on behalf of the class as a whole—namely, an order that the government state the basis for its continued detention of their property or, failing that, give the property back. And the proposed class counsel have extensive experience litigating class actions, including a major class action involving the adequacy of government procedures following property seizures. *See* Decl. of Robert Frommer in Support of Motion for Preliminary Injunction and Provisional Class Certification. The requirement of adequacy is therefore satisfied.

## V. CONCLUSION

 For the foregoing reasons, the Court should issue a preliminary injunction directing the government to provide notice to all individuals who have come forward in their own names to file claims for the contents of their USPV boxes for the basis for the ongoing seizure of their property and should direct the government

1 | to release the property to the extent that it is unable to satisfy the requirement to
2 | articulate such a basis.

3 | Dated: May 27, 2021                          Respectfully Submitted,

4 |

5 |                                              /s/ Nilay U. Vora

6 |                                              **THE INSTITUTE FOR JUSTICE**
                                                 Robert Frommer*
7 |                                              rfrommer@ij.org
                                                 901 N. Glebe Rd. Suite 900
8 |                                              Arlington, VA 22203
                                                 Tel. (703) 682-9320

9 |                                              Robert E. Johnson*
                                                 rjohnson@ij.org
10 |                                             16781 Chagrin Blvd. Suite 256
                                                 Shaker Heights, OH 44120
11 |                                             Tel. (703) 682-9320

12 |                                             * *Pro hac vice pending.*

13 |                                             **THE VORA LAW FIRM, P.C.**
                                                 Nilay U. Vora (SBN 268339)
14 |                                             nvora@voralaw.com
                                                 Jeffrey Atteberry (SBN 266728)
15 |                                             jatteberry@voralaw.com
                                                 201 Santa Monica Blvd., Ste. 300
16 |                                             Santa Monica, California 90401
                                                 Tel. (424) 258-5190
17 |

18 |                                             *Attorneys for Plaintiffs*

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

## **PROOF OF SERVICE**

2          I am employed in the County of Los Angeles, State of California, and am a member of the bar of the United States District Court for the Central District of
3    California. I am over the age of 18 and not a party to this action. My business address is 201 Santa Monica Blvd., Santa Monica, CA 90401. My electronic
4    service address is nvora@voralaw.com. On the execution date below and in the manner stated herein, I caused service of a true and correct copy of **NOTICE OF**
5    **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION,** on all interested parties in this
6    action as follows:

7    [ X ]     BY MAIL. By depositing in a sealed envelope in the United States mail with postage thereon fully prepaid to the following address:

8

9    Tracy L. Wilkison                          United States of America
     Civil Process Clerk                        c/o U.S. Attorney General
10   United States Attorney's Office            Merrick Garland
     Federal Building                           U.S. Department of Justice
11   300 N. Los Angeles Street, Suite 7516      950 Pennsylvania Avenue NW
     Los Angeles, CA 90012                      Washington, DC 20530-0001

12
     Kristi Koons Johnson (in her official
13   capacity)
     Federal Bureau of Investigation
14   Assistant Director in Charge
     11000 Wilshire Boulevard, Suite 1700
15   Los Angeles, CA 90024

16
     [ X ]     BY E-MAIL. By electronic mail transmission to the offices of the following
17   addressee(s):

18                              **andrew.brown@usdoj.gov**

19   [ X ]     (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20

21          Executed on May 27, 2021, at Los Angeles, California.

22

23                              /s/ Nilay U. Vora

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION