**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd. Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd. Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* *Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Ste. 300
Santa Monica, California 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR RETURN OF PROPERTY AND CLASS-WIDE DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION** |

**INTRODUCTION**

This civil-rights lawsuit seeks to vindicate the constitutional rights of hundreds of people whose property was illegally seized and subjected to a criminal search by the Federal Bureau of Investigation (FBI). These property owners rented safe deposit boxes from U.S. Private Vaults (USPV) to secure their prized possessions, including family heirlooms, copies of their wills and other important legal documents, and money needed for savings and for everyday expenses.

On March 22, 2021, the FBI raided USPV and seized the contents of hundreds of deposit boxes from USPV's customers, like Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May. Although the government has indicted USPV, the government has not accused USPV's customers of violating any law. And while a warrant authorized the government to seize *USPV's* property, the warrant did not authorize the government to conduct a criminal search or seizure of *USPV's customers'* property. But the government did just that and, over two months later, the government is still holding many of those customers' property.

Moreover, even though the warrant explicitly contemplated that customers' property would be returned, the government has now filed civil forfeiture notices against hundreds of USPV's customers. These notices do not identify *any* legal basis for the forfeiture: Although they cite the civil forfeiture laws generally, the notices do not identify the *specific* offense that the government believes justifies the forfeiture. Box holders thus do not know whether the government is accusing them of drug crimes, money laundering, structuring, or some other offense altogether (or, indeed, if the government is even accusing them of any crime at all). Nor do the notices include any factual basis to explain why the government believes the property is subject to civil forfeiture. To all appearances, the government is seeking to civilly forfeit the contents of these boxes simply because they held cash or

1  precious metals. But, of course, the fact that a person holds cash (or gold or silver)
2  in a safe deposit box is not an adequate or legal basis for civil forfeiture.

3       The government's behavior is shocking, unconscionable, and
4  unconstitutional. First, the government's initial search and seizure of Plaintiffs'
5  property violates the Fourth Amendment: The government exceeded both the
6  justification for the inventory search doctrine and the limited scope of its warrant by
7  opening owners' safe deposit boxes, running any currency found in front of drug-
8  sniffing dogs, and failing to do any proper inventory of those boxes' contents.
9  Indeed, the simplest way to have secured people's possessions for their return
10 would have been to leave the nest of safe deposit boxes intact. Second, the
11 government's continued retention of Plaintiffs' property violates the Fourth and
12 Fifth Amendments: The government must provide owners with a basis for the
13 continued retention of property and a prompt and meaningful way to secure its
14 return. Third, the government's mass civil forfeiture proceedings violate the Fourth
15 and Fifth Amendments because they do not provide adequate notice of the basis for
16 the forfeiture and have been commenced without any identified factual basis to
17 support a finding of probable cause. And finally, the government's use of owners'
18 property as leverage to extract information from those owners also violates the Fifth
19 Amendment.

20      To correct these constitutional violations, this Complaint raises both class
21 and individual claims. On behalf of a class of individuals who came forward to
22 identify themselves to the FBI after losing their property in the March 22, 2021
23 raid, the Complaint seeks declaratory and injunctive relief barring the government
24 from improperly retaining and/or using records created through its unconstitutional
25 inventory search. On behalf of further subclasses of individuals whose property is
26 still being retained by the government, the Complaint seeks declaratory and
27 injunctive relief that would compel the government to either provide
28 constitutionally adequate notice of the legal and factual basis of the continued

detention of the property or else give the property back. And, finally, the Complaint brings individual claims on behalf of the individual Plaintiffs seeking the return of their property.

## JURISDICTION AND VENUE

1.      Plaintiffs bring their class-action Fourth and Fifth Amendment claims under the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, as well as directly under the U.S. Constitution. Plaintiffs seek declaratory and injunctive relief against the government's unconstitutional search, retention, and use of their property.

2.      Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May bring their individual claims for return of seized property under Federal Rule of Criminal Procedure 41(g) and the Court's inherent equitable power. They are entitled to the immediate return of their property as they are not targets of any criminal investigation and the government's continued detention of their property both violates the Fourth Amendment and works a hardship on Plaintiffs.

3.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, as Plaintiffs' claims arise under federal law.

4.      While the government has issued notices that purport to commence administrative forfeiture proceedings against at least some of the seized property of Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May, those notices do not deprive this Court of subject-matter jurisdiction with respect to the class-wide claims brought by these Plaintiffs because the class-wide claims do not seek an order requiring the return of any particular individual's property and rather seek to vindicate the Fourth and Fifth Amendment rights of the class as a whole.

5.      Additionally, the government's administrative forfeiture notices do not divest the Court of jurisdiction to entertain any of the individual Plaintiffs' Rule 41(g) motions because the notices are procedurally defective and thus incapable of

divesting this Court of subject-matter jurisdiction. The government has not provided Joseph Ruiz with any individual notice of the purported forfeiture of his property, and simply sent the notice to attorneys for USPV. Likewise, the government has not provided Travis May any individual notice of the purported forfeiture of his gold, although it did send him individual notice of the purported forfeiture of his cash. And all the forfeiture notices are procedurally defective insofar as they do not state the legal or factual basis for the attempted forfeiture.

6.  Finally, the forfeiture notices received by Plaintiffs Jeni Verdon-Pearsons and Michael Storc cannot affect this Court's jurisdiction over their class or individual claims because both Jeni and Michael submitted administrative claims in response to their forfeiture notices prior to the filing of Plaintiffs' First Amended Complaint, thereby terminating the purported administrative forfeiture proceeding with respect to their property.

7.  Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1), as well as Federal Rule of Criminal Procedure 41(g), because the seizure of Plaintiffs' property occurred in Beverly Hills, CA. Beverly Hills is in the Western Division of the Central District of California.

## PARTIES

### Plaintiffs

8.  Plaintiffs Paul and Jennifer Snitko are a married couple and adult residents of Los Angeles County, California. Paul is an aeronautics engineer, and Jennifer is an entertainment lawyer. At USPV's Beverly Hills facility, they rented a safe deposit box in which they placed jewelry, back-up hard drives, legal documents, Paul's pilot flight log, and other personal effects. After the government seized this property on March 22, 2021, they filed a claim with the FBI to retrieve it. The FBI held their property for over two months without providing any justification for doing so, but then offered to return the property after the filing of

this Action. At this time, the FBI continues to hold their property, and, even after the property is returned, the FBI will continue to hold records of the contents of their box generated during its unlawful search.

9.   Plaintiff Joseph Ruiz is an adult resident of Los Angeles County, California. At USPV's Beverly Hills facility, he rented a safe deposit box in which he placed approximately $57,000 in cash, money that Joseph relies on to pay his living and medical expenses. After the government seized this property on March 22, 2021, he filed a claim with the FBI to retrieve it. However, the government has informed attorneys for USPV that it intends to civilly forfeit Joseph's property. At this time, the government has not provided Joseph with any notice of the purported civil forfeiture proceeding.

10.   Plaintiff Tyler Gothier is an adult resident of Placer County, California, who maintains an address in Los Angeles County. At USPV's Beverly Hills facility, he rented a safe deposit box in which he placed silver and other personal property. After the government seized his property on March 22, 2021, he filed a claim with the FBI to retrieve it. After the filing of this Action, the government left Tyler a voicemail stating that his property would eventually be returned. But, at this time, the FBI continues to hold Tyler's property without providing any justification for doing so, and, even if the property is eventually returned, the FBI will continue to hold records of the contents of his box generated during its unlawful search.

11.   Plaintiffs Jeni Verdon-Pearsons and Michael Storc are a married couple and adult residents of Los Angeles County, California. Jeni is the Director of Operations for a nonprofit theater and Michael works in the film industry as a transportation coordinator. At USPV's Beverly Hills facility, they rented a safe deposit box in which they placed silver and about $2,000 in cash, as well as various personal documents. After the government seized this property on March 22, 2021, they filed a claim with the FBI to retrieve it. However, the government sent them a

notice stating that it is seeking to civilly forfeit their silver. The notice does not state the factual or legal basis for the purported civil forfeiture proceeding. In addition, while the government is *not* seeking to forfeit their cash or the documents in their box, the FBI continues to hold that property.

12.     Plaintiff Travis May is an adult resident of Los Angeles County, California. Travis is the CEO of TollFreeForwarding.com, a company that provides international call forwarding services. He gives a significant portion of his income to charity, and he sits on the board of trustees of a national nonprofit organization. At USPV's Beverly Hills facility, he rented a safe deposit box in which he placed gold and approximately $63,000 in cash. After the government seized this property on March 22, 2021, he filed a claim with the FBI seeking to retrieve it. The government has notified Travis that it is seeking to forfeit his $63,000 in cash, but the notice does not state the factual or legal basis for the purported civil forfeiture proceeding. In addition, while the government has informed attorneys for USPV that it intends to forfeit Travis's gold, the government has not provided Travis with individual notice of that purported forfeiture action.

13.     Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May represent a putative class of USPV customers who identified themselves to the FBI after the government seized their property from their safe deposit boxes on or around March 22, 2021.

### Defendants

14.     Defendant United States of America is the national federal government established by the U.S. Constitution. As such, it is subject to limitations imposed by the Constitution, including, as relevant here, the Fourth and Fifth Amendments. The constitutional violations at issue involve the actions of federal agencies and employees and are therefore ultimately chargeable to the federal government itself.

15. Defendant Tracy L. Wilkison is the Acting U.S. Attorney for the Central District of California. She is the chief federal law enforcement officer within this jurisdiction, and she is sued in her official capacity.

16. Defendant Kristi Koons Johnson is an Assistant Director of the FBI. She oversees the FBI's Los Angeles Field Office, and she is sued in her official capacity.

17. The Complaint uses the phrase "the government" to refer to the officers, employees, and agents of the United States of America, including officers, employees, and agents acting under the direction and control of Defendants Wilkinson and Johnson.

## FACTUAL ALLEGATIONS

### Plaintiffs Deposited Their Personal Property With USPV

18. USPV is a California corporation that operates a safe-deposit-box facility in Beverly Hills.

19. USPV's Beverly Hills facility houses over 800 safe deposit boxes.

20. USPV safe-deposit-box service provided renters with several advantages over traditional banks. For instance, USPV customers could access the outer vault themselves using biometric data (such as an iris scan or a handprint) rather than having to wait for a USPV employee to assist them.

21. Also unlike traditional banks, USPV could not access its customers' safe deposit boxes without their knowledge. That is because all the keys for USPV's safe deposit boxes are left in customers' hands.

22. In addition, USPV provided customers with better hours of operation than most banks, including weekend hours, and offered clients insurance for the contents of their boxes.

23. Given USPV's differences from other safe-deposit-box facilities, USPV's services were appealing to customers concerned with their financial security and privacy, including Plaintiffs.

24. When Plaintiffs rented safe deposit boxes from USPV, they had every impression USPV was a legitimate, law-abiding business.

25. USPV was a longstanding business in the Beverly Hills area, having opened its doors in 2011.

26. Along with its Twitter and Yelp profiles, USPV operated a business website at usprivatevaults.com.

27. USPV was also a member of the Beverly Hills Chamber of Commerce.

28. Given these features, Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May trusted USPV with their personal property.

29. In April 2017, Plaintiffs Paul and Jennifer Snitko began renting a safe deposit box from USPV's Beverly Hills facility.

30. In their USPV safe deposit box, Paul and Jennifer Snitko left items of sentimental and practical value, including Paul's flight log from his aeronautics career, wristwatches that Paul and his father had obtained from their employers for their years of service, Paul's class ring, as well as some collectible coins from Jennifer's grandfather. Paul and Jennifer also stored backup copies of their home computers' hard drives, gold jewelry, and important legal documents in the box.

31. Plaintiff Joseph Ruiz also rented a safe deposit box from USPV's Beverly Hills facility.

32. In his USPV safe deposit box, Joseph deposited approximately $57,000 in cash that he relies on for his daily living and medical expenses.

33. Plaintiff Tyler Gothier also rented a safe deposit box from USPV's Beverly Hills facility.

34. Tyler put silver and other personal property in his USPV safe deposit box.

35. In September 2017, Plaintiffs Jeni Verdon-Pearsons and Michael Storc also began renting a safe deposit box from USPV's Beverly Hills facility.

36.     In their USPV safe deposit box, Jeni and Michael placed silver that they had purchased as an investment for their retirement savings along with approximately $2,000 in cash.

37.     In July 2017, Plaintiff Travis May also rented a safe deposit box from USPV's Beverly Hills facility.

38.     In his USPV safe deposit box, Travis deposited gold and approximately $63,000 in cash.

39.     Plaintiffs have keys for their USPV safe deposit boxes.

40.     Each Plaintiff would be able to produce their USPV safe-deposit-box key upon request.

## The Government Seized Plaintiffs' Personal Property

41.     On March 9, 2021, the U.S. Attorney's Office for the Central District of California indicted the company U.S. Private Vaults.

42.     The March 9, 2021 indictment alleges various wrongdoing by USPV officials, but it does not indict those officials.

43.     The March 9, 2021 indictment does not specifically allege any wrongdoing by USPV's customers.

44.     On March 17, 2021, the government obtained a warrant to seize certain business property owned by USPV. Critically, however, the warrant did not authorize the criminal seizure or search of USPV's *customers'* property.

45.     Although the warrant authorized the government to seize USPV's "business equipment," including the "nests of safety deposit boxes and keys, the warrant specifically stated that the "warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes."

46.     Despite that limited scope, the warrant envisioned that the government may need to conduct a limited "inventory" search of the contents of the safe deposit boxes.

47.     Normally, an inventory search's purpose is to prevent claims of theft and loss by creating a record of seized property.

48.     In its application for the March 17, 2021 warrant, the government promised that any necessary inventory search would be limited in scope. In the application, the government stated that it would search USPV safe deposit boxes to "look for contact information or something which identifies the owner" and that, under official FBI policies, that search would "extend no further than necessary to determine ownership."

49.     Consistent with the government's warrant application, the March 17, 2021 warrant contemplated that, "in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property."

50.     The government executed the warrant in a March 22, 2021 raid on USPV's Beverly Hills location.

51.     In executing the warrant, however, the government overstepped the March 17, 2021 warrant's limited scope.

52.     On March 22, 2021, the government seized not just USPV's business property, but *all* the personal property in USPV customers' safe deposit boxes.

53.     Every customer's property at USPV on March 22, 2021, was secure against loss and theft due to its placement in a locked nest of safety-deposit boxes within a biometric vault.

54.     Yet despite this, the government broke into every safe deposit box at USPV's Beverly Hills facility and emptied each box of its contents.

55.     On March 22, 2021, the government seized all the personal property in the safe deposit boxes rented by Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May, as well as all the property held in every other USPV customer's safe deposit box.

56.   The government has not accused—let alone charged—Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, or Travis May with any crime.

57.   The government's March 22, 2021 search of the contents of USPV customers' safe deposit boxes was not an "inventory" search.

58.   After all, had the government been conducting an inventory search—to prevent loss and theft—there would have been no reason to forcibly open USPV's locked safe deposit boxes that were otherwise impervious to loss and theft.

59.   Moreover, even though the government's warrant application represented that its safe-deposit-box search would be limited to "look[ing] for contact information or something which identifies the owner," FBI agents searched boxes even after identifying owners.

60.   Per USPV procedures, many safe-deposit-box holders—including Plaintiffs Paul and Jennifer Snitko, Jennifer Verdon-Pearsons, Michael Storc, and Travis May—placed a letter containing their contact information, as well as information identifying their beneficiaries, on top of the interior sleeve of their boxes. All contents of the boxes, other than this letter, were contained within those interior sleeves.

61.   If the government had complied with its representations in its warrant application, it would have stopped its supposed "inventory" search as soon as it found such letters and would not have searched the contents of the interior sleeves.

62.   But even after finding those letters, government agents continued rifling through the contents of the boxes, including opening sealed envelopes to make copies of documents contained within.

63.   On information and belief, the government searched the contents of the Snitkos' box even after finding the letter with their contact information taped to the top of their box's interior sleeve.

64.     The government also searched the contents of other Plaintiffs' boxes—including Plaintiff Jeni Verdon-Pearsons's, Michael Storc's, and Travis May's boxes—despite finding the letter with their contact information taped to the top of their box's interior sleeve.

65.     On information and belief, the FBI generally made copies of documents found in owners' security boxes despite the seizure warrant's admonition that it did not authorize a criminal search.

66.     The FBI also had drug dogs sniff any currency it discovered during this purported "inventory" search.

67.     The inventory sheets created by the FBI in the course of its inventory search fail to provide the requisite level of detail of what was in owners' boxes, instead describing property in vague terms such as "misc. coins."

68.     As these actions show, the government's inventory-search rationale was just a pretext for conducting criminal searches and seizures of USPV customers' safe deposit boxes, even though the government's seizure warrant did not authorize these searches and seizures and the government had not demonstrated individualized probable cause to believe that any USPV customer had done anything wrong.

**The Government Asked Plaintiffs To Submit Claims For Their Property But Then Did Not Honor Those Claims**

69.     The government's warrant application stated that the purpose of its purported inventory search was to identify safe-deposit-box owners so as to reunite them with their property.

70.     The March 17, 2021 warrant did not authorize the government to retain USPV customers' property.

71.     In fact, the March 17, 2021 warrant expressly contemplated that safe-deposit-box holders would be able to "claim their property."

72.     After seizing the contents of the USPV boxes, the government placed a notice on the USPV storefront stating that box holders should file a claim for their property through a FBI website.

73.     The online form is posted at https://forms.fbi.gov/u-s-private-vaults-claim-form and is titled "U.S. Private Vaults Claim Form." It states: "To make a claim for property stored at U.S. Private Vaults in Beverly Hills, California, please provide the following information."

74.     Paul and Jennifer Snitko filed a claim through the FBI's website shortly after the government's March 22, 2021 seizure of their property.

75.     In response to Paul and Jennifer's claim submission, the FBI sent them an email stating that the agency would contact them in 30–60 days, as well as a phone call asking them to provide the number of their safe deposit box. The FBI did not contact Paul and Jennifer to offer to return their property until after the filing of this Action—more than two months after the seizure.

76.     Joseph Ruiz, too, filed a claim through the FBI's website shortly after the government's March 22, 2021 seizure of his property.

77.     The FBI's only response to Joseph was an email stating that the agency would contact him in 30–60 days.

78.     Tyler Gothier has also filed a claim with the FBI through the FBI's website.

79.     At the time of the filing of this Action, no one from the FBI had contacted Tyler about his claim. Subsequent to the filing of this Action, the FBI contacted Tyler to say that his property would eventually be returned, but the FBI has not scheduled a time to return Tyler's property.

80.     Jeni Verdon-Pearsons and Michael Storc filed their claim through the FBI's website shortly after the government's March 22, 2021 seizure of their property.

81.     In response to Jeni Verdon-Pearsons and Michael Storc's claim submission, the FBI sent them an email stating that the agency would contact them in 30–60 days, and the FBI then telephoned Jeni to confirm the box number. During that call, an FBI agent explained that the FBI was "busy" and that Jeni should wait to receive an email from the FBI about the seized property.

82.     Travis May has also filed a claim with the FBI through the FBI's website.

83.     Nobody from the FBI has contacted Travis about his claim.

84.     On information and belief, many other USPV customers submitted claim forms to the FBI through the FBI's website seeking the return of their property.

85.     Nonetheless, the government retained property seized from USPV box holders who submitted such claims for more than two months after its raid on USPV's facility without providing those box holders with any justification for the prolonged seizure of their property, and, in many cases, the government still continues to retain that property without any stated justification.

86.     The government has stated that it intends to conduct an "investigation" to determine if USPV customers came by their property legally, even though the warrant does not authorize or contemplate any such investigation of USPV box holders.

**The Government Has Commenced Mass Forfeiture Proceedings Against Hundreds Of USPV Box Holders, Without Adequate Notice Of The Alleged Basis For The Forfeiture**

87.     On May 20, 2021, the government sent an administrative forfeiture notice to attorneys for USPV. USPV has posted a copy of that notice to its website, at https://usprivatevaults.com. This notice is hereinafter referred to as the "USPV omnibus notice."

88.     The USPV omnibus notice lists the contents of over 400 USPV safe deposit boxes and states that the government is seeking to forfeit all of the listed property. These boxes contain over $85 million in cash, as well as poker chips, jewelry, and an unspecified amount of gold, silver, and other precious metals.

89.     The USPV omnibus notice states that the government is seeking to forfeit the $57,000 in cash seized from Joseph Ruiz's safe deposit box, the gold and over $63,000 in cash seized from Travis May's safe deposit box, and the silver seized from Jeni Verdon-Pearsons's and Michael Storc's safe deposit box.

90.     In addition to sending the USPV omnibus notice, the government has also sent individual forfeiture notices to *some* of the box holders whose property is listed in the USPV omnibus notice. For instance:

   a.  The government sent forfeiture notices to Jeni Verdon-Pearsons and Michael Storc informing Jeni and Michael that it is seeking to forfeit the silver contained in the box that they shared (but not the $2,000 in cash that they stored in the same box).

   b.  The government also sent Travis May a forfeiture notice informing Travis that it is seeking to forfeit the over $63,000 in cash contained in his box.

91.     However, the government has not sent forfeiture notices to *all* of these property owners. For instance:

   a.  Although Joseph Ruiz stepped forward to identify himself to the FBI shortly after the seizure, the government has not notified Joseph that it is seeking to forfeit his $57,000 in cash.

   b.  Although the USPV omnibus notice states that the government is seeking to forfeit the gold contained in Travis May's safe deposit box, the forfeiture notice that the government sent to Travis *only* informs him the government is seeking to forfeit his cash.

16

92.     The forfeiture notices received by Jeni, Michael, and Travis do not articulate any constitutionally adequate legal or factual basis to support the government's entitlement to forfeit their property. Instead, the notices only cite general statutory provisions governing forfeiture actions, which in turn incorporate a broad range of criminal statutes ranging from bribing bank employees, to illegally skimming equity from farm housing backed by certain loans, to violence against maritime platforms. The notices do not identify the *specific* alleged offense that the government believes justifies the civil forfeiture of the property.

93.     The forfeiture notices sent to Jeni, Michael, and Travis also are legally deficient insofar as they fail to comply with regulations requiring any notice of administrative forfeiture to state the specific statutory basis for the seizure. 28 C.F.R. § 8.9(b)(2). Again, the notices do not identify the *specific* alleged offense that the government believes justifies the civil forfeiture of the property.

94.     Like the individual forfeiture notices, the USPV omnibus notice does not cite any specific offense that the government believes justifies the forfeiture. The USPV omnibus notice cites the general forfeiture laws, but those laws authorize forfeiture based on numerous criminal offenses and thus do not provide property owners with notice of the *specific* alleged offense that the government believes justifies forfeiture of their property.

95.     Like the individual forfeiture notices, the USPV omnibus notice also does not identify the factual basis for the forfeiture action. Instead, the government appears to be proceeding based on the presumption that any amount of cash or precious metals in a safe deposit box is subject to forfeiture.

96.     Both the USPV omnibus notice and the individual forfeiture notices sent to Jeni, Michael, and Travis are confusing and misleading in that they inform property owners that "[a] claim must be filed to contest the forfeiture." The notice's reference to a "claim" is naturally confusing given that the government *already* invited property owners to file a "claim" to their property through the FBI's

website. The forfeiture notice letter does not explain the difference (if any) between this "claim" and the "claim" that property owners are required to file to avoid forfeiture. The government has not indicated whether it is treating those previous claims, which it asked property owners to submit, as a nullity, nor has it explained whether or how it will honor those already solicited and received claims.

97.     Upon information and belief, other members of the putative class are in the same situation as Jeni, Michael, and Travis (with respect to his $63,000 in cash): The government has sent them notices about purported administrative forfeiture proceedings that fail to provide any specific legal and factual bases for the purported forfeiture, that are legally deficient, and that are confusing and misleading.

98.     On information and belief, some other members of the putative class are in the same situation as Joseph and Travis (with respect to his gold): The government has listed their property as subject to forfeiture in the USPV omnibus notice, but the government has not provided those individuals with any kind of notice of the purported forfeiture proceeding.

99.     Because Joseph has not received any notice of a forfeiture proceeding, he is unable to confirm whether the government is, in fact, holding his property for civil forfeiture.

100.    The government has Joseph's contact information so as to provide him with individualized notice of any such possible forfeiture proceeding, given that Joseph submitted that information with his claim through the FBI's website.

101.    Likewise, without individualized notice, Travis cannot confirm whether the government is in fact seeking to forfeit his gold.

102.    The government has Travis's contact information and could easily provide him notice of the forfeiture of his gold, given that it has already provided him with notice of the forfeiture of his cash.

103.   In response to the forfeiture notice, Jeni and Michael submitted administrative claims to their property following the directions provided in the forfeiture notice. And, because the government's forfeiture claim form directed them to submit documentary evidence in support of the claim, they attached various receipts and documents to support their claim to their property.

104.   Even if the government ultimately returns Jeni and Michael's property, the government will retain the receipts and other documents that they submitted in support of their claim.

105.   The government has adopted a practice of deciding which USPV customer property to target for forfeiture in an arbitrary manner that fails to include any individualized determination of whether there is evidence the property in question is subject to forfeiture. Instead, the primary basis for the government's decisions seems to come from a presumption that storing property over a certain threshold value in a safe deposit box (which is the point of the box) must make the property subject to forfeiture, even if the government does not know and cannot articulate what the precise basis for forfeiture is.

106.   But storing valuable property in a safe deposit box is not unusual or suspicious. After all, the purpose of a safe deposit box is to secure valuables from theft, fire, or other loss.

**The Government Continues to Hold Significant Amounts Of Property That Is Not Subject To Any Purported Forfeiture Proceedings**

107.   While the USPV omnibus notice indicates that the government seeks to forfeit hundreds of safe deposit boxes, that still leaves hundreds of *other* boxes that the government is not seeking to forfeit.

108.   For instance, the USPV omnibus notice indicates that the government does not intend to forfeit the boxes owned by Tyler Gothier and the Snitkos, and in fact the FBI has contacted both Tyler and the Snitkos to state that their property will eventually be returned.

109.   Nonetheless, more than two months after the seizure, the government continues to hold the property seized from Tyler and the Snitkos, and the government has not identified any legal basis to retain their property.

110.   Moreover, even if the government eventually returns the property seized from Tyler and the Snitkos, the government will continue to retain records of that property that were generated during its unlawful search.

111.   At the same time, although the government sent a forfeiture notice for the silver contained in the box of Jeni Verdon-Pearsons and Michael Storc, the USPV omnibus notice indicates the government is *not* seeking to forfeit the $2,000 in cash or the personal documents contained in their box.

112.   Nevertheless, the FBI continues to retain the $2,000 in cash and the personal documents seized from Jeni and Michael. The FBI has not identified any legal basis to retain that property.

113.   On information and belief, some other members of the putative class are in the same situation as Tyler Gothier and the Snitkos (and Jeni Verdon-Pearsons and Michael Storc with respect to their cash and personal documents): The government has *not* informed USPV's attorneys that it intends to seek to forfeit their boxes, nor has it articulated any other legal basis to continue to retain their property.

114.   Regardless of whether the government has sent them notice of a purported administrative forfeiture or told USPV's attorneys that it intends to forfeit their property, all members of the putative class are ultimately in the same situation: The government has not notified them of any specific legal and factual basis justifying the ongoing detention of their property.

### INJURY TO PLAINTIFFS

115.   Defendants' March 22, 2021 criminal search of named Plaintiffs' personal property and their continued seizure of that property constitutes an

ongoing injury to not just to named Plaintiffs and putative class representatives, but to all USPV customers.

116. Had Defendants simply secured the USPV facility and left the safe deposit boxes intact, Plaintiffs and other USPV customers would have easily been able to go in and reclaim that property. But the government opened up those boxes and subjected them to an unreasonable criminal search.

117. Due to the government's unreasonable criminal search, it currently retains records of the contents of *all* of the boxes at the USPV facility, regardless of whether the contents of those boxes have been returned to their owners or not. The government's continued possession of those records provides it with a window into the contents of an ostensibly private space and constitutes an ongoing Fourth Amendment injury.

118. In addition, the government today still retains much of that property—including the property of Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May. The government's retention of that property constitutes an additional Fourth Amendment injury.

119. Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, Plaintiffs Paul and Jennifer Snitko have been subjected to an unreasonable search and seizure that has deprived them of their jewelry, back-up hard drives, legal documents, Paul's pilot flight log, and other personal effects they had stored in their USPV safe deposit box.

120. Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, it now unreasonably possesses copies of personal documents and other records owned by Plaintiffs Paul and Jennifer Snitko. This deprivation constitutes an ongoing injury to Plaintiffs Paul and Jennifer Snitko.

121.   Because Defendants continue to retain personal property that USPV customers had secured in their safe deposit boxes absent any justification, Plaintiffs Paul and Jennifer Snitko continue to be deprived of their jewelry, back-up hard drives, legal documents, Paul's pilot flight log, and other personal effects they had stored in their USPV safe deposit box. This deprivation constitutes an ongoing injury to Plaintiffs Paul and Jennifer Snitko.

122.   Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, Plaintiff Joseph Ruiz has been subjected to an unreasonable search and seizure that has deprived him of the $57,000 in cash he deposited in his USPV safe deposit box.

123.   Because Defendants continue to retain personal property that USPV customers had secured in their safe deposit boxes absent any justification, Plaintiff Joseph Ruiz continues to be deprived of the $57,000 in cash he placed in his USPV safe deposit box. This deprivation constitutes an ongoing injury to Plaintiff Joseph Ruiz.

124.   Joseph relied on his funds in his USPV safe deposit box for living and medical expenses. After the government seized this money, Joseph has been unable to secure needed medical care or basic staples of life. The seizure has forced Joseph to eat the pile of provisions he had stored at the outset of the COVID-19 pandemic.

125.   Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, Plaintiff Tyler Gothier has been subjected to an unreasonable search and seizure that has deprived him of the silver and other personal property he deposited in his USPV safe deposit box.

126.   Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, it now unreasonably possesses copies of personal documents and other records owned

by Plaintiff Tyler Gothier. This deprivation constitutes an ongoing injury to Plaintiff Tyler Gothier.

127.   Because Defendants continue to retain personal property that USPV customers had secured in their safe deposit boxes absent any justification, Plaintiff Tyler Gothier continues to be deprived of the silver and other personal property he deposited in his USPV safe deposit box. This deprivation constitutes an ongoing injury to Plaintiff Tyler Gothier.

128.   Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, Plaintiffs Jeni Verdon-Pearsons and Michael Storc have been subjected to an unreasonable search and seizure that has deprived them of the silver, the approximately $2,000 of cash, and the personal documents that they deposited in their USPV safe deposit box.

129.   Because Defendants continue to retain personal property that USPV customers had secured in their safe deposit boxes absent any justification, Plaintiffs Jeni Verdon-Pearsons and Michael Storc continue to be deprived of the silver and approximately $2,000 in cash they deposited in their USPV safe deposit box. This deprivation constitutes an ongoing injury to Plaintiffs Jeni Verdon-Pearsons and Michael Storc.

130.   Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, it now unreasonably possesses copies of personal documents and other records owned by Plaintiffs Jeni Verdon-Pearsons and Michael Storc. This deprivation constitutes an ongoing injury to Plaintiffs Jeni Verdon-Pearsons and Michael Storc.

131.   Because the government sent Jeni Verdon-Pearsons and Michael Storc an unlawful forfeiture notice, Jeni and Michael submitted a claim to avoid the forfeiture of their property and provided copies of various documents in support of their claim. The government will continue to retain those documents even if their

property is ultimately returned. That deprivation constitutes an ongoing injury to Plaintiffs Jeni Verdon-Pearsons and Michael Storc.

132.   Because Defendants exceeded the scope of their warrant in their March 22, 2021 criminal search and seizure of USPV customers' safe deposit boxes, Plaintiff Travis May has been subjected to an unreasonable search and seizure that has deprived him of the gold and approximately $63,000 in cash he deposited in his USPV safe deposit box.

133.   Because Defendants continue to retain personal property that USPV customers had secured in their safe deposit boxes absent any justification, Plaintiff Travis May continues to be deprived of the gold and $63,000 in cash he deposited in his USPV safe deposit box. This deprivation constitutes an ongoing injury to Plaintiff Travis May.

134.   Because the government sent Travis May an unlawful forfeiture notice, Travis risks the automatic forfeiture of his property if he does not submit a claim to that property. That claim must be submitted under oath, subject to penalty of perjury. This deprivation constitutes an ongoing injury to Plaintiff Travis May.

135.   Plaintiffs do not want to give Defendants any additional information as a condition of retrieving their property.

136.   Other members of the putative class are also injured by Defendants' violation of their Fourth and Fifth Amendment rights. Every putative class member has had property taken as a result of Defendants' unconstitutional March 22, 2021 search and seizure of USPV customers' safe deposit boxes and is trying to retrieve that property. And because Defendants continue to retain that property, along with copies of records and documents made during Defendants' criminal search, every putative class member is suffering an ongoing injury.

**CLASS ACTION ALLEGATIONS**

137.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 136 above.

138.   Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May seek to maintain this action on behalf of themselves and all others similarly situated under Rule 23(b)(2) of the Federal Rules of Civil Procedure. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

139.   Plaintiffs propose the following class definition: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure."

140.   Within that broader class, Plaintiffs propose two subclasses. First, Plaintiffs propose a subclass of individuals who meet all the requirements for membership in the proposed class, whose property is still in the possession of the federal government, but who have not received notice that the government has purported to commence an administrative forfeiture action with respect to their property (the "No Notice Subclass"). This subclass would be defined as: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) have not been notified that their safe deposit boxes are the subject of a currently ongoing administrative or judicial forfeiture proceeding; and (d) whose property is still in the possession of the federal government."[1]

141.   The No Notice Subclass includes Paul and Jennifer Snitko, Tyler Gothier, and Joseph Ruiz.

---

[1] Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier filed a Motion for Preliminary Injunction on May 27, 2021 (ECF Nos. 10–17), which they re-filed on June 3, 2021 (ECF Nos. 26 to 26-17). That motion also seeks, to the extent the Court deems it necessary to provide the requested injunctive relief, certification of a provisional class. ECF No. 26-1 at 17–22. That proposed provisional class is identical to the No Notice Subclass proposed here. Because the class definition has not changed, the pending motion for a preliminary injection is not mooted by the filing of this Amended Complaint. *JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC*, No. 20-cv-2299, 2020 WL 3963863, at *6 (C.D. Cal. July 13, 2020).

142.   Second, Plaintiffs propose a subclass of individuals who meet all the requirements for membership in the proposed class, whose property is still in the possession of the federal government, and whose property the government has purported to commence an administrative forfeiture action against (the "Forfeiture Subclass"). This subclass would be defined as: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) whose property is now the subject of a purported administrative forfeiture proceeding; and (d) whose property is still in the possession of the federal government."

143.   The Forfeiture Subclass includes Jeni Verdon-Pearsons, Michael Storc, Travis May, and Joseph Ruiz.

144.   Joseph Ruiz is a member of both proposed subclasses because (a) his property is subject to a purported administrative forfeiture proceeding (putting him in the Forfeiture Subclass) and (b) he has not received any notice of that fact (also putting him in the No Notice Subclass).

145.   This action meets all the Rule 23(a) prerequisites for maintaining a class action.

146.   ***Numerosity under Rule 23(a)(1)***: The putative class and subclasses are so numerous that joinder of all members is impracticable.

    a.   The Proposed Class:

        i.   At least 800 people rented safe deposit boxes from USPV, and the government seized all the personal property from those boxes in March 2021.

        ii.   On information and belief, a significant portion of those box holders have filed claims for their property, such that the total number of putative class members would be impracticable to join within a single action.

b. The No Notice Subclass:

    i. The USPV omnibus notice indicates that the government is seeking to forfeit the contents of over 400 boxes and thus, by implication, indicates the government is *not* seeking to forfeit the contents of hundreds of boxes as well.

    ii. An June 9, 2021 article in the Los Angeles Times entitled "FBI wants to keep cash, gold, jewels from Beverly Hills raid. Is it an abuse of power?" reports that the government has yet to return the property of at least 175 USPV safe-deposit-box renters from whom it is not seeking forfeiture, such that the total number of members of the proposed No Notice Subclass would likewise be impracticable to join within a single action.

    iii. In addition, on information and belief, there are additional individuals who (like Joseph Ruiz) are listed in the USPV omnibus notice and yet have not received notice of a forfeiture action. These individuals are also members of the proposed No Notice Subclass.

c. The Forfeiture Subclass:

    i. The USPV omnibus notice indicates that the government is seeking to forfeit the contents of over 400 boxes, including the contents of Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May's safe deposit boxes.

    ii. On information and belief, a significant portion of those box holders have identified themselves to the FBI either by filing claims for their property through the FBI website (like Travis May, Jeni Verdon-Pearsons, and Michael Storc) or by filing claims in response to the forfeiture notice (like Jeni Verdon-

1   Pearsons and Michael Storc).

2   iii.   The total number of members of the proposed Forfeiture

3   Subclass would likewise be impracticable to join within a

4   single action.

5   147.   **Commonality under Rule 23(a)(2)**: This action presents questions of

6   law and fact common to the putative class and subclasses, resolution of which will

7   not require individualized determinations of the circumstances of any particular

8   plaintiff. Common questions include but are not limited to:

9   a.   The Proposed Class:

10   i.   For the class as a whole, did the government's seizure of all

11   USPV customers' personal property and subsequent criminal

12   search of that property exceed the scope of the warrant and

13   violate the Fourth Amendment?

14   ii.   For the class as a whole, does the government's retention

15   and/or use of copies of documents found in USPV

16   customers' safety-deposit boxes violate the Fourth

17   Amendment?

18   b.   The No Notice Subclass:

19   i.   For the proposed No Notice Subclass, does the government's

20   continued retention of USPV customers' property without

21   providing customers with any notice regarding the basis of

22   that continued retention, or any meaningful process by which

23   they may promptly secure the return of that property, violate

24   the Fifth Amendment?

25   ii.   For the proposed No Notice Subclass, if the government is

26   unable to state a valid legally independent justification for

27   the retention of the property, does the continued retention of

28   the property violate the Fourth Amendment?

iii. For the proposed No Notice Subclass, does the government's requirement that property owners submit to an investigation and demonstrate the legality of their property and their ownership of it to secure its return violate the Fifth Amendment?

c. The Forfeiture Subclass:

i. For the proposed Forfeiture Subclass, does the government's practice of continuing to retain those USPV customers' property, and targeting that property for forfeiture in an arbitrary manner that fails to make any individualized determination of whether there is probable cause that the property in question is subject to forfeiture, violate the Fourth Amendment?

ii. For the proposed Forfeiture Subclass, does the government's practice of continuing to retain those USPV customers' property, and targeting that property for forfeiture without providing the statutory and factual bases for doing so, violate the Fifth Amendment?

iii. For the proposed Forfeiture Subclass, do the government's defective notices purporting to commence administrative forfeiture proceedings violate the Fifth Amendment?

iv. For the proposed Forfeiture Subclass, does the government's requirement that property owners demonstrate the legality of their property and their ownership of it to secure its return violate the Fifth Amendment?

148. ***Typicality under Rule 23(a)(3)***: Plaintiffs' claims are typical of the claims of the putative class and subclasses.

a. The Proposed Class:

i. Plaintiffs' claims and the putative class members' claims arise out of the same course of conduct by Defendants, are based on the same legal theories, and involve the same harms.

ii. Plaintiffs seek the same class-wide declaratory and injunctive relief for both themselves and other members of the putative class.

b. The No Notice Subclass:

i. Plaintiffs Paul Snitko, Jennifer Snitko, Joseph Ruiz, and Tyler Gothier's claims and the putative No Notice Subclass members' claims arise out of the same course of conduct by Defendants, are based on the same legal theories, and involve the same harms.

ii. Plaintiffs Paul Snitko, Jennifer Snitko, Joseph Ruiz, and Tyler Gothier seek the same class-wide declaratory and injunctive relief for both themselves and other members of the putative No Notice Subclass.

c. The Forfeiture Subclass:

i. Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May's claims and the putative Forfeiture Subclass members' claims arise out of the same course of conduct by Defendants, are based on the same legal theories, and involve the same harms.

ii. Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May seek the same class-wide declaratory and injunctive relief for both themselves and other members of the putative Forfeiture Subclass.

149.   ***Adequacy of representation under Rule 23(a)(4)***: The interests of the putative class and subclasses are fairly and adequately protected by Plaintiffs and their attorneys.

    a.  The Proposed Class:

        i.  Plaintiffs adequately represent the putative class because their interests are aligned and there are no conflicts of interest between the Plaintiffs and members of the putative class. Like other members of the class, their property was searched and seized in violation of the Fourth Amendment, and the government continues to retain records generated as a result of that search and seizure.

    b.  The No Notice Subclass:

        i.  Plaintiffs Paul Snitko, Jennifer Snitko, Joseph Ruiz, and Tyler Gothier adequately represent the putative No Notice Subclass because their interests are aligned and there are no conflicts of interest between these Plaintiffs and members of the No Notice Subclass. Like other members of the proposed subclass, they have received no notice of the basis for the ongoing seizure of their property.

    c.  The Forfeiture Subclass:

        i.  Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May adequately represent the putative Forfeiture subclass because their interests are aligned and there are no conflicts of interest between these Plaintiffs and members of the Forfeiture Subclass. Like other members of the proposed subclass, they have been targeted for civil forfeiture by notices that do not provide notice of the legal or factual basis for the forfeiture action.

d. Plaintiffs and the putative class members are ably represented *pro bono* by the Institute for Justice ("the Institute") and local counsel Nilay Vora. The Institute is a nonprofit, public-interest law firm that, since its founding in 1991, has litigated constitutional issues nationwide. The Institute has successfully litigated numerous federal class actions, including against Philadelphia (*Sourovelis v. City of Philadelphia*, No. CV 14-4687, 2021 WL 344598, at *1 (E.D. Pa. Jan. 28, 2021) (appointing the Institute for Justice as Class Counsel and approving federal consent decree in challenge to civil forfeiture procedures)), New York City (*Cho v. City of New York*, No. 1:16-cv-07961, Dkt # 111 (S.D.N.Y. Oct. 2, 2020) (approving settlement of a putative class action, under which New York City agreed not to enforce agreements extracted through coercive property seizures)), and Pagedale, Missouri (*Whitner v. City of Pagedale*, No. 4:15-cv-01655, Dkt. #116 (E.D. Mo. May 21, 2018) (approving federal consent decree prohibiting abusive ticketing practices)). Furthermore, the Institute for Justice has particular expertise litigating issues involving both property rights and Fourth Amendment violations. Meanwhile, local counsel is a recognized trial and appellate lawyer with experience litigating civil-rights cases.

150.   This action also meets the requirements of, and is brought in accordance with, Rule 23(b)(2) of the Federal Rules of Civil Procedure.

a. The Proposed Class:

i.   Defendants have acted, or refused to act, on grounds generally applicable to the putative class. Specifically, on March 22, 2021, the government conducted a search and seizure of each class member's safe deposit box at USPV.

       ii.    Final injunctive and declaratory relief is appropriate with respect to all of the members of the class.

    b.  <u>The No Notice Subclass:</u>

       i.    Defendants also have acted, or refuse to act, on grounds generally applicable to the putative No Notice Subclass. Specifically, the government has failed to explain to any class member why it continues to hold their property and has failed to provide any class member with a prompt, meaningful process to secure the return of the property.

       ii.    Final injunctive and declaratory relief is appropriate with respect to all of the members of the No Notice Subclass.

    c.  <u>The Forfeiture Subclass:</u>

       i.    Defendants also have acted, or refuse to act, on grounds generally applicable to the putative Forfeiture Subclass. Specifically, the government's practice of issuing forfeiture notices without any individualized determination of whether there is probable cause that the property in question is subject to forfeiture applies to each member of the Forfeiture Subclass. Additionally, both the government's omnibus notice and the notices sent to subclass members are materially identical in that they purport to commence administrative forfeiture proceedings while failing to identify the legal and factual bases for the forfeiture.

       ii.    Final injunctive and declaratory relief is appropriate with respect to all of the members of the Forfeiture Subclass.

151.   Finally, insofar as a Rule 23(b)(2) class must be ascertainable, this action satisfies that requirement. The membership of the putative class and subclasses are ascertainable because the FBI maintains records of the identity of

USPV customers who have filed a claim for their property, as well as records of whether those individuals have been notified of a civil forfeiture proceeding with respect to their property. Similarly, while notice is not required for class actions brought under Rule 23(b)(2), the FBI's records contain contact information for all members of the proposed class and subclasses, such that notice could easily be provided should the Court deem it appropriate.

## CLASS CLAIMS

### COUNT I: On Behalf Of The Proposed Class

### Defendants' Criminal Search of USPV Customers' Personal Property Violates the Fourth Amendment

152. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 151 above.

153. This Count seeks to vindicate the Fourth Amendment right of every member of the Proposed Class to be free from unconstitutional searches and seizures under the Fourth Amendment.

154. The U.S. Constitution's Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

155. The Fourth Amendment protects USPV customers' personal property from unreasonable searches and seizures.

156. The Fourth Amendment protects USPV customers' safe deposit boxes from unreasonable searches and seizures.

157. The seizure warrant issued authorized the government to seize USPV's *business* property, but did not authorize any criminal search or seizure of USPV customers' *personal* property.

158.   During Defendants' March 22, 2021 raid on USPV, the government seized USPV customers' personal property—the contents of their safe deposit boxes—without their permission.

159.   On or around March 22, 2021, the government seized USPV customers' personal property—the contents of their safe deposit boxes—without individualized suspicion.

160.   Defendants had no warrant, or other judicial authorization, authorizing a criminal search or seizure of USPV customers' personal property on or around March 22, 2021.

161.   Although the warrant authorized an inventory search of the contents of the USPV safe deposit boxes, that aspect of the warrant violated the Fourth Amendment insofar as it allowed a search of the boxes without individualized probable cause.

162.   The warrant's authorization to conduct a search of the boxes cannot be justified under the inventory search doctrine, as the best way to prevent theft and loss of the contents of the boxes would have been to leave those contents locked inside the safe deposit boxes. The government did not *protect* those contents by removing them from a locked box, and in fact *exposed* them to a greater risk of theft and loss.

163.   In addition, the government far exceeded the scope of the search authorized by the warrant. The warrant authorized only a limited inventory search of the contents of the USPV safe deposit boxes in order to reunite customers with their property, but the government searched USPV customers' personal property even after finding box holders' identifying information.

164.   The government further exceeded the bounds of any permissible inventory search by engaging in conduct that was clearly motivated by an investigative purpose. Among other things, it deployed drug dogs on USPV customers' currency and opened USPV customers' envelopes.

165.   The government conducted this investigative search even though the warrant specifically instructed the government not to conduct a criminal search of customers' property.

166.   The government's March 22, 2021 criminal search and seizure of the personal property customers deposited in USPV safe deposit boxes was therefore unreasonable and in violation of the Fourth Amendment.

167.   Any evidence or records that Defendants obtained through the unauthorized criminal search of the contents of USPV customers' safe deposit boxes were obtained in violation of the Fourth Amendment as the "fruit of the poisonous tree."

168.   Accordingly, named Plaintiffs and putative class representatives ask the Court to declare that Defendants' actions in seizing all USPV customers' property and subjecting that property to a criminal search violated the Fourth Amendment.

169.   Similarly, named Plaintiffs and putative class representatives ask the Court to enter judgment declaring that due to Defendants' Fourth Amendment violation in subjecting Plaintiffs' property to a criminal search, Defendants' retention and/or use of any records or evidence obtained through that search, other than for the limited purpose of reuniting them with their property, violates the Fourth Amendment.

170.   To that end, named Plaintiffs and putative class representatives request that this Court order that all records Defendants created during their criminal search of USPV customers' security deposit boxes, other than those records necessary for reuniting property owners with their property, be destroyed and/or returned to their owners.

171.   As a direct and proximate result of Defendants' March 22, 2021 unreasonable search and seizure of USPV customers' personal property, named Plaintiffs and other members of the putative class have suffered irreparable injury

to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury.

**COUNT II: On Behalf of the Proposed No Notice Subclass**

**Defendants' Ongoing Retention of Property Without Stating a Valid Legal**

**Basis for Its Continued Seizure Violates the Fourth Amendment**

172.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 151 above.

173.    This count seeks to vindicate the Fourth Amendment right of members of the proposed No Notice subclass to have their property returned to the extent that the government is unable to articulate a valid constitutional basis to continue the seizure of that property.

174.    Just as the government's initial seizure of property must withstand Fourth Amendment scrutiny, so does the government's ongoing retention of seized property. *See, e.g.*, *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

175.    Even if the government's actions in seizing Plaintiffs' property and subjecting it to a criminal search passed Fourth Amendment scrutiny, Defendants must separately justify any ongoing retention of seized property once its owner has requested its return.

176.    Named Plaintiffs and putative No Notice Subclass representatives Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier are all seeking return of their property and in response to the FBI's solicitation of claims following the March 22, 2021 seizure have filed claims with the FBI to request its return.

177.    But in response to seeking their property's return, the government has not provided Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier with any justification for the ongoing retention of their seized property.

178.    The government must either state a (valid) basis for retaining USPV customers' property or else return the property to its owners.

179.   The government's ongoing retention of property that it seized from USPV customers' safe deposit boxes, absent any valid basis justifying that ongoing retention, is an unreasonable seizure that violates the Fourth Amendment.

180.   Accordingly, named Plaintiffs and putative No Notice Subclass representatives Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier ask the Court to enter judgment declaring that Defendants' ongoing retention of property seized from USPV customers' safe deposit boxes—without stating a valid legal basis for the continued seizure of that property—violates the Fourth Amendment.

181.   As a direct and proximate result of ongoing seizure of USPV customers' personal property, named Plaintiffs and putative No Notice Subclass members Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier, along with all members of the putative subclass, have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury. Without appropriate declaratory and injunctive relief, this injury will continue.

## COUNT III: On Behalf of the Proposed Forfeiture Subclass
## Defendants' Ongoing Retention of Property Without Determining Whether There Is Individualized Probable Cause that the Property Is Subject to Forfeiture Violates the Fourth Amendment

182.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 151 above.

183.   This count seeks to vindicate the Fourth Amendment right of the proposed Forfeiture Subclass to have the government make an individualized probable cause determination before subjecting them to civil forfeiture proceedings.

184.   To seize property for the purpose of forfeiture, the Fourth Amendment and forfeiture statutes require either that the government has a warrant supported by probable cause or that there is an exception to the warrant requirement combined

with individualized probable cause to believe the property is subject to forfeiture. *See, e.g.*, *Gete v. INS*, 121 F.3d 1285, 1295 (9th Cir. 1997); 18 U.S.C. § 981(b)(2).

185. Just as the government's initial seizure of property must withstand Fourth Amendment scrutiny, so must the government's ongoing retention of seized property. *See, e.g.*, *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

186. The government's ongoing retention of seized property for the purpose of commencing forfeiture proceedings must at a minimum be supported by probable cause to believe that the property is subject to forfeiture under a specific forfeiture statute.

187. Named Plaintiffs and putative Forfeiture Subclass representatives Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May are all seeking the return of their property and, in response to the FBI's solicitation of claims following the March 22, 2021 seizure, have filed claims with the FBI through the FBI's website to request its return.

188. But in response to seeking their property's return, the government has not provided Plaintiffs Joseph, Jeni, Michael, and Travis with any justification for the ongoing retention of their seized property.

189. Instead, the government sent deficient forfeiture notices to Jeni, Michael, and Travis that purported to commence administrative forfeiture proceedings against the silver (but not the cash) that Jeni and Michael stored in their box and the cash (but not the gold) that Travis stored in his box.

190. The forfeiture notices that the government sent to Jeni, Michael, and Travis, however, do not state any legal or factual bases for seeking to forfeit their property, and thus do not disclose any basis, valid or otherwise, for continuing to retain their property.

191. As to Plaintiff Joseph Ruiz, the government has failed to provide him with any individualized notice despite the fact that his property is listed on the

government's omnibus forfeiture notice and Joseph previously provided his contact information to the FBI.

192. As a result, the government has not identified for Jeni, Michael, Travis, or Joseph the specific legal or factual basis to support a determination that the government would have probable cause to forfeit their property. On information and belief, that failure to act is common to the putative Forfeiture Subclass.

193. On information and belief, the government has failed to conduct any individualized determination of whether there is probable cause that Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May's property is subject to forfeiture under any specific forfeiture statute. On information and belief, this failure to act is common to the putative Forfeiture Subclass.

194. On information and belief, the government has presumed that storing property over a certain threshold value in a safe deposit box means that the property must have been involved in illegal activity.

195. The presumption that property over a certain threshold value in a safe deposit box must have been involved in illegal activity is not a valid basis for retaining USPV customers' property. A valid basis requires, at a minimum, invocation of a specific forfeiture statute and evidence that the property is involved in activity implicating that statute.

196. The arbitrary and standardless manner in which the government has determined which property to continue to detain and to seek to forfeit fails to apply constitutionally mandated standards for determining whether probable cause in fact exists.

197. The government's ongoing retention of property that it seized from USPV customers' safe deposit boxes, absent individualized probable cause that the property is subject to forfeiture, is an unreasonable seizure that violates the Fourth Amendment.

198.   Accordingly, named Plaintiffs and putative Forfeiture Subclass representatives Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May ask the Court to enter judgment declaring that Defendants' ongoing retention of property seized from USPV customers' safe deposit boxes—without individualized determinations that there is probable cause that each property is subject to forfeiture and without stating valid, individualized legal and factual bases for the continued seizure of that property—violates the Fourth Amendment.

199.   As a direct and proximate result of ongoing seizure of USPV customers' personal property, named Plaintiffs and putative Forfeiture Subclass members Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May, along with all members of the putative subclass, have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury. Without appropriate declaratory and injunctive relief, this injury will continue.

### COUNT IV: On Behalf of the Proposed No Notice Subclass
### Defendants' Ongoing Retention of Property Without Providing Notice and an Opportunity to be Heard Violates the Fifth Amendment

200.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 151 above.

201.   This count seeks to vindicate the Fifth Amendment right of the No Notice subclass to notice and an opportunity to be heard with respect to the basis for the ongoing seizure of their property.

202.   Under the Due Process Clause of the U.S. Constitution's Fifth Amendment, the federal government must provide owners of property it has seized with notice of the government's basis for seizing that property, as well as a prompt and meaningful opportunity to challenge both the government's initial seizure and its ongoing detention of that property.

203.   The federal government has failed to tell Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier why it is continuing to retain their seized property. On information and belief, that failure to act is common to the putative No Notice Subclass.

204.   The government's failure to provide the Snitkos, Tyler Gothier, Joseph Ruiz, and other members of the putative No Notice Subclass with notice of the basis for the ongoing detention of their property violates their due process right to notice of the basis for the deprivation of their property rights.

205.   The government's failure to articulate to the Snitkos, Tyler Gothier, Joseph Ruiz, and other members of the putative No Notice Subclass any meaningful and prompt means by which they can obtain a hearing to secure the return of their property violates their due process right to a prompt opportunity to be heard with respect to the deprivation of their property rights.

206.   Accordingly, named Plaintiffs and putative No Notice Subclass representatives Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier ask the Court to enter judgment declaring that Defendants' ongoing retention of property seized from their safe deposit boxes without notice or a prompt post-seizure opportunity to be heard violates the Due Process guarantees of the Fifth Amendment.

207.   As a direct and proximate result of Defendants' failure to provide USPV customers notice as to the government's basis for seizing customers' property and a prompt means by which customers may obtain a hearing to secure their property's return, named Plaintiffs and putative No Notice Subclass representatives Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier, as well as all members of the putative subclass, have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury. Without appropriate declaratory and injunctive relief, this injury will continue.

**COUNT V: On Behalf of the Proposed Forfeiture Subclass**

**Defendants' Ongoing Retention of Property Without Providing Notice and an**

**Opportunity to be Heard Violates the Fifth Amendment**

208. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 151 above.

209. This count seeks to vindicate the Fifth Amendment right of the Forfeiture Subclass to a forfeiture notice that informs them of the factual and legal basis for the seizure of their property and that provides them with a prompt opportunity to challenge the basis for the seizure.

210. Under the Due Process Clause of the U.S. Constitution's Fifth Amendment, the federal government must provide owners of property it has seized with notice of the government's basis for seizing that property, as well as a prompt and meaningful opportunity to challenge both the government's initial seizure and its ongoing retention of that property.

211. The government has failed to tell Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May why it is seeking to forfeit their seized property, and, on information and belief, that failure to act is common to the putative Forfeiture Subclass.

212. The government sent Jeni, Michael, and Travis notices that purported to commence administrative forfeiture proceedings against the silver that Jeni and Michael stored in their safe deposit box and the cash that Travis stored in his safe deposit box. The forfeiture notices, however, failed to disclose any legal or factual bases for the continued seizure and forfeiture of their property, and were administratively and constitutionally deficient. On information and belief, these acts and failures to act are common to the putative Forfeiture Subclass.

213. Assuming they were validly commenced, the government's civil forfeiture proceedings do not provide Plaintiffs Jeni, Michael, and Travis a meaningful and fair opportunity to be heard. In the absence of notice of the legal

and factual bases for the seizure and forfeiture, they cannot effectively respond to the forfeiture proceeding. Moreover, the administrative proceeding presumes the property is forfeitable, prohibits consideration of whether the evidence is sufficient to support forfeiture, places the burden on the petitioner not only to prove their ownership interest in the property but also to establish the source of funds used to purchase those assets, fails to provide meaningful criteria establishing whether the decisionmaker should grant or deny the petition, and fails to provide effective avenues for review of erroneous decisions.

214.    The government's failure to provide Plaintiffs Jeni Verdon-Pearsons, Michael Storc, and Travis May, and other members of the putative Forfeiture Subclass with notice of the legal and factual bases for the ongoing detention of their property and the basis for seeking forfeiture of their property violates their due process right to notice of the basis for the deprivation of their property rights.

215.    The government's failure to provide Plaintiff Joseph Ruiz with any individualized notice regarding the legal and factual bases for the ongoing detention of his property and the basis for seeking forfeiture of his property violates his due process right to notice of the basis for the deprivation of his property rights.

216.    The government's failure to provide Plaintiff Travis May with any individualized notice regarding the legal and factual bases for the ongoing detention and attempted forfeiture of his gold violates his due process right to notice of the basis for the deprivation of his property rights.

217.    The government's failure to provide Plaintiffs Joseph, Jeni, Michael, and Travis and other members of the putative Forfeiture Subclass any meaningful, prompt, and fair means by which they can secure the return of their property violates their due process right to a prompt opportunity to be heard with respect to the deprivation of their property rights.

218.    Accordingly, Plaintiffs and putative Forfeiture Subclass representatives Joseph, Jeni, Michael, and Travis ask the Court to enter judgment

declaring that Defendants' ongoing retention of property seized from their safe deposit boxes without constitutionally adequate notice or a prompt, meaningful, and fair post-seizure opportunity to be heard violates the Due Process guarantees of the Fifth Amendment.

219.   As a direct and proximate result of Defendants' failure to provide USPV customers notice as to the government's basis for seizing customers' property and a prompt means by which customers may secure their property's return, named Plaintiffs and putative subclass representatives, as well as all members of the putative subclass, have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury. Without appropriate declaratory and injunctive relief, this injury will continue.

**COUNT VI: On Behalf of the Proposed No Notice and Forfeiture Subclasses**
**Defendants' Coercive Use of Unlawfully Seized Property to Force USPV**
**Customers to Submit to Investigation Violates the Fifth Amendment**

220.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 151 above.

221.   This count seeks to vindicate the Fifth Amendment right of both the No Notice and the Forfeiture subclasses to recover their property without having to provide information to prove their own innocence.

222.   During the time that USPV customers' property has been in Defendants' custody and control, the government has refused to return any seized items until USPV customers come forward and identify themselves to the FBI.

223.   But according to the FBI, once a USPV customer identifies himself or herself to the FBI, the FBI will not immediately release that customer's property. Instead, it has indicated that it will conduct an "investigation" to determine if the customer came by their seized property legally.

224.    In other words, to secure the return of their property, USPV customers must submit to an investigation and prove their own innocence to Defendants' satisfaction.

225.    Under the Fifth Amendment's Due Process Clause, the government may not require that Plaintiffs prove their own innocence in order to retrieve their own property from the government. *See Nelson v. Colorado*, 137 S. Ct. 1249 (2017).

226.    By effectively holding seized property hostage and forcing USPV customers to submit sensitive and potentially incriminating personal financial information to secure its return, the government's procedure violates the Fifth Amendment right against self-incrimination. *See, e.g.*, *Boyd v. United States*, 116 U.S. 616, 630 (1886).

227.    By seizing USPV customers' property until they submit sensitive and potentially incriminating personal financial information to secure its return, the government's procedure forces USPV customers to choose between acquiescing to a seizure of their property in violation of the Fourth Amendment or surrendering their Fifth Amendment right against self-incrimination.

228.    Named Plaintiffs and putative subclass representatives ask the Court to enter judgment declaring that Defendants' use of seized property as leverage to obtain testimony from USPV customers, or to compel them to give or furnish evidence, violates the Fifth Amendment.

229.    As a direct and proximate result of Defendants' coercive use of seized property, named Plaintiffs and putative subclass representatives, along with all other members of the putative subclass, have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property. Declaratory and injunctive relief is necessary to remedy this injury. Without appropriate declaratory and injunctive relief, this injury will continue.

230.   Jeni Verdon-Pearsons and Michael Storc were required to submit documentary evidence to the government along with their claim, in order to support their claim for the return of their property. On information and belief, other members of the putative subclasses have likewise submitted information to the government in order to recover their property. Declaratory and injunctive relief is necessary to remedy this injury. Without appropriate declaratory and injunctive relief, this injury will continue.

## INDIVIDUAL CLAIM

## COUNT VII: Claim for Return of Property Currently Held in Violation of the Fourth and Fifth Amendments

231.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 151 above.

232.   Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May bring this claim for return of seized property against Defendants under Federal Rule of Criminal Procedure 41(g).

233.   Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May are entitled to the immediate return of their property seized from their USPV safe deposit boxes, without any conditions, delay, or investigation.

234.   The property of Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May must be returned because Defendants' criminal search of their property violated the Fourth Amendment.

235.   Separately, the property of Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May must be returned because there are no active criminal proceedings or investigations against these Plaintiffs, and Defendants' ongoing and unjustified retention of their property violates the Fourth Amendment.

236.   The government has not initiated forfeiture proceedings against Paul and Jennifer Snitko or Tyler Gothier.

237.   The government listed Joseph Ruiz's property in the USPV omnibus notice, but the government has not provided Joseph with any notice of any such potential forfeiture proceeding. Because the government has not sent any individualized notice to institute forfeiture proceedings against Joseph, the Court retains jurisdiction to entertain Joseph's Rule 41(g) motion for return of seized property.

238.   The government also has not initiated forfeiture proceedings against Jeni Verdon-Pearsons and Michael Storc with respect to the $2,000 in cash they stored in the box, and the government also did not list that $2,000 in cash in the USPV omnibus notice.

239.   The government did purport to initiate forfeiture proceedings against Jeni Verdon-Pearsons and Michael Storc with respect to the silver they stored in the box, but the notice of those proceedings was procedurally defective. Out of an abundance of caution, Jeni and Michael submitted claims that terminated the administrative forfeiture proceeding, and thus the Court retains jurisdiction to entertain Jeni and Michael's Rule 41(g) motion for return of seized property with respect to the silver.

240.   The government listed Travis May' gold in the USPV omnibus notice, but the government has not provided Travis with any notice of any such potential forfeiture proceeding. Because the government has not sent any individualized notice to institute forfeiture proceedings against Travis' gold, the Court retains jurisdiction to entertain Joseph's Rule 41(g) motion for return of seized property.

241.   The government purported to initiate administrative proceedings with respect to the cash that Travis May stored in his box, but the notice of those proceedings was procedurally defective.

48

# REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

A.      Certify this case as a class action under Federal Rule of Civil Procedure 23(b)(2) on behalf of all renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure.

B.      Certify the No Notice Subclass, also under Federal Rule of Civil Procedure 23(b)(2), consisting of all individuals who meet the criteria for membership in the proposed class, whose property is still in the possession of the federal government, and who have not received notices purporting to commence administrative proceedings against their property.

C.      Certify the Forfeiture Subclass, also under Federal Rule of Civil Procedure 23(b)(2), consisting of all individuals who meet the criteria for membership in the proposed class, whose property is still in the possession of the federal government, and whose property is now the subject of a purported administrative forfeiture proceeding.

D.      Designate Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May as Class Representatives for the proposed class;

E.      Designate Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier as Class Representatives for the proposed No Notice Subclass;

F.      Designate Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May as Class Representatives for the proposed Forfeiture Subclass;

G.      Designate Plaintiffs' counsel of record as Class Counsel for the proposed class and subclasses;

H.      Issue a class-wide declaratory judgment declaring that;

49

i.   With respect to the proposed class, Defendants' March 22, 2021 criminal search of USPV customers' property deposited in safe deposit boxes violated the Fourth Amendment;

ii.  With respect to the proposed class, Defendants' retention and/or use of any records or evidence obtained through its unreasonable criminal search, except for the limited purpose of reuniting property with its owners, violates the Fourth Amendment;

iii. With respect to the proposed No Notice Subclass, Defendants' ongoing retention of property seized from USPV customers' safe deposit boxes—without stating a valid independent basis for its continued detention—violates the Fourth Amendment;

iv.  With respect to the proposed Forfeiture Subclass, Defendants' commencement of civil forfeiture proceedings without an individualized probable cause determination violates the Fourth Amendment;

v.   With respect to the proposed No Notice Subclass, Defendants' ongoing retention of property seized from USPV customers' safe deposit boxes—without notice or a prompt post-seizure opportunity to be heard—violates the Fifth Amendment.

vi.  With respect to the proposed Forfeiture Subclass, Defendants' ongoing retention of property seized from USPV customers' safe deposit boxes—and the issuance of administrative forfeiture notices that fail to provide any legal or factual bases for the seizure or to provide a prompt, meaningful, and fair opportunity to be heard—violates the Fifth Amendment.

vii. With respect to both proposed subclasses, Defendants' use of seized property as leverage to require USPV customers to justify their property's legality violates the Fifth Amendment.

I.      Issue a class-wide permanent injunction enjoining Defendants from retaining records created through their March 22, 2021 criminal search and seizure of property deposited in USPV customers' safe deposit boxes, except for those records necessary for reuniting box holders with their property (which should be held in a manner that ensures they are not available to government officials for any other use).

J.      Issue a class-wide permanent injunction, for the proposed No Notice Subclass, enjoining Defendants from:

i.      Retaining property seized from USPV customers' safe deposit boxes without stating a valid independent basis for its continued detention;

ii.     Retaining property seized from USPV customers without notice or a prompt post-seizure opportunity to be heard;

iii.    Compelling USPV customers to provide testimony, or prove the legality of their seized property, in order to secure its return.

K.      Issue a class-wide preliminary injunction, for the proposed Forfeiture Subclass, enjoining Defendants from:

i.      Proceeding with its purported civil forfeiture of USPV customers' safe deposit boxes without providing notice of the factual or legal basis for the forfeiture;

ii.     Proceeding with its purported civil forfeiture of USPV customers' safe deposit boxes without articulating an adequate basis to conclude that the government has probable cause to believe the individual's property is subject to forfeiture;

iii.    Compelling USPV customers to provide testimony, or prove the legality of their seized property, in order to secure its return;

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR RETURN OF PROPERTY AND CLASS-WIDE DECLARATORY AND INJUNCTIVE RELIEF

1       iv.    Retaining any documentary evidence or other information

2              submitted by property owners in response to the government's

3              facially defective forfeiture notices.

4       L.    Order Defendants to immediately return the seized property of

5   Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-

6   Pearsons, Michael Storc, and Travis May—without any conditions, delay, or

7   investigation—under Federal Rule of Criminal Procedure 41(g) and the Court's

8   inherent equitable authority;

9       M.    Enter an award allowing Plaintiffs to recover their attorney's fees,

10  costs, and expenses under 28 U.S.C. § 2412; and

11      N.    Award any further legal and equitable relief the Court may deem just

12  and proper.

13  Dated: June 9, 2021            Respectfully Submitted,

14

15             /s/ Robert Frommer

16             **INSTITUTE FOR JUSTICE**
           Robert Frommer*

17             rfrommer@ij.org
           901 N. Glebe Rd. Suite 900

18             Arlington, VA 22203
           Tel. (703) 682-9320

19             Robert E. Johnson*

20             16781 Chagrin Blvd. Suite 256
           rjohnson@ij.org

21             Shaker Heights, OH 44120
           Tel. (703) 682-9320

22             * *Admitted Pro hac vice.*

23             **THE VORA LAW FIRM, P.C.**
           Nilay U. Vora (SBN 268339)

24             nvora@voralaw.com
           Jeffrey Atteberry (SBN 266728)

25             jatteberry@voralaw.com
           201 Santa Monica Blvd., Ste. 300

26             Santa Monica, California 90401
           Tel. (424) 258-5190

27

28             *Attorneys for Plaintiffs*