**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd. Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd. Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC,** AND **TRAVIS MAY,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**PLAINTIFFS JENI VERDON-PEARSONS, MICHAEL STORC, TRAVIS MAY, AND JOSEPH RUIZ'S NOTICE OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>(*Filed Concurrently with Declarations and Exhibits of Robert Frommer and Robert E. Johnson; and Proposed Orders*)<br><br>Judge: Hon. R. Gary Klausner<br>Complaint Filed: May 27, 2021<br>Amended Complaint Filed: June 9, 2021 |

**PLEASE TAKE NOTICE** that Plaintiffs Jeni Verdon-Pearsons, Michael Storc, Travis May, and Joseph Ruiz apply, *ex parte*, for a temporary restraining order ("TRO") and an order to show cause regarding the issuance of a preliminary injunction against Defendants the United States of America, Tracy L. Wilkinson (official capacity), and Kristi Koons Johnson (official capacity). Defendants have commenced civil forfeiture proceedings against these Plaintiffs—as well as hundreds of other USPV box holders—without providing notice of the factual or legal basis for the forfeiture. Plaintiffs now face a looming deadline to respond to that forfeiture notice, and, depending on how they respond, they will be at risk of losing their property forever. Plaintiffs urgently require this Court's intervention so that they can know the purported factual and legal basis for the government's forfeiture actions.[1]

The government's failure to provide notice of the factual and legal basis for the forfeitures violates black letter due process principles. A property owner who is targeted for civil forfeiture is entitled to notice of the "particular statutory provisions and regulations they are accused of having violated." *Gete v. INS*, 121 F.3d 1285, 1297 (9th Cir. 1997). The government's notice does not meet that basic requirement: The notice cites a laundry list of general forfeiture statutes, which authorize forfeiture for a broad variety of offenses—including counterfeiting, fraud, smuggling, embezzlement, and many others—but does not identify the *specific* offense that the government believes justifies forfeiture. Box holders are thus left to guess at the basis for the forfeiture action.

---

[1] This TRO application is separate and distinct from Plaintiffs' pending motion for a preliminary injunction. *See* D.E. 26. The motion for a preliminary injunction seeks relief on behalf of USPV box holders whose property is *not* being targeted for civil forfeiture and yet remains in the possession of the federal government. *See* D.E. 26-1 at 17-18. By contrast, this TRO application seeks relief on behalf of USPV box holders whose property *is* being targeted for civil forfeiture.

Emergency relief is necessary to remedy this due process violation. The forfeiture notice sent by the government to attorneys for U.S. Private Vaults gives a deadline of June 24, 2021 to respond to the attempted forfeiture, and individual forfeiture notices sent by the government likewise give a deadline of either June 24 or June 25. If property owners do not respond before that deadline—or if the agency decides they have not responded correctly—they are at risk of losing their property forever. In light of that looming deadline, property owners need to know the basis for the forfeiture in order to "understand the true nature of the [government's] charges and afford them a fair opportunity to prepare a proper defense to the threatened forfeiture." *Gete*, 121 F.3d at 1298.

The proposed temporary restraining order would bar the federal government from forfeiting property based on notices that do not identify the factual and legal basis for the forfeiture. The order would not finally determine whether *any* property is subject to forfeiture, but it would bar the government from forfeiting property based on constitutionally deficient civil forfeiture notices.

To the extent necessary to provide broad injunctive relief covering other USPV box holders, Plaintiffs also move for certification of a putative class comprising all renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) whose property is now the subject of a purported administrative forfeiture proceeding; and (d) whose property is still in the possession of the federal government. *See* First Am. Compl. ¶ 142 (defining this proposed class as a subclass of the broader putative class). This is a paradigmatic case for certification under Federal Rule of Civil Procedure 23(b)(2), as Plaintiffs seek injunctive relief that is common to the proposed class and all other requirements for certification are also satisfied. Certification would be granted only for the limited purpose of providing preliminary relief.

1    Because Plaintiffs take the position that the Court can enter broad injunctive

2    relief *without* provisionally certifying a class, Plaintiffs have prepared two proposed

3    orders to submit along with this application. The first proposed order provides relief

4    without certifying a class, and the second provides relief while also provisionally

5    certifying a class.

6    On June 15, 2021, I contacted the Office of the United States Attorney for the

7    Central District of California to provide notice of this *ex parte* application pursuant

8    to Local Rule 7-19. Specifically, as requested by the website for the U.S Attorney's

9    Office, I emailed notice of this application to usacac.civil-tronotice@usdoj.gov. In

10   addition, I orally advised Assistant United States Attorney Andrew Brown of this

11   application and asked if the government acceded to the application.  Following such

12   advice, AUSA Brown stated the government's opposition. At Mr. Brown's request,

13   I also provided an advance copy of this Notice and Memorandum to Mr. Brown at

14   2:13 p.m. PST so that he could begin work on the government's opposition brief.

15   This *ex parte* application for a temporary restraining order is based on this

16   application, the attached Memorandum of Points and Authorities, the Declaration of

17   Robert Frommer, the Declaration of Robert E. Johnson and exhibits thereto, the two

18   proposed *ex parte* orders lodged here, the pleadings and papers on file with the

19   Court, and any further briefing and arguments of counsel.

20   Dated: June 15, 2021                            Respectfully Submitted,

21

22                                                   /s/ Robert Frommer

23                                                   **THE INSTITUTE FOR JUSTICE**
                                                     Robert Frommer*
24                                                   rfrommer@ij.org
                                                     901 N. Glebe Rd., Suite 900
25                                                   Arlington, VA 22203
                                                     Tel. (703) 682-9320
26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

NOTICE ...................................................................................... 2

TABLE OF AUTHORITIES ...................................................... 8

I.    INTRODUCTION ................................................................ 10

II.   BACKGROUND .................................................................. 11

     A.   Plaintiffs' Safe Deposit Boxes. ...................................... 11

     B.   The USPV Seizure. ......................................................... 11

     C.   The FBI's First Claim Process. ...................................... 12

     D.   The Government's Forfeiture Proceedings. ..................... 13

III.  LEGAL STANDARD ........................................................... 14

IV.   ARGUMENT ....................................................................... 15

     A.   Plaintiffs Are Likely To Prevail On Their Claim That The Forfeiture Notices Violate Due Process. ........................... 15

     B.   The Remaining Factors Favor Grant Of A Temporary Restraining Order. ........................................................... 17

          1.   Equitable Relief Is Necessary To Prevent Irreparable Harm. ......................................... 17

          2.   The Balance Of Equities Favors Injunctive Relief, And An Injunction Would Be In The Public Interest. ........................................................... 19

     C.   To The Extent Necessary To Provide The Requested Injunctive Relief, The Court Should Certify A Provisional Class. ........ 19

          1.   This Is An Appropriate Case For Class-Wide Injunctive Relief Under Rule 23(b)(2). ........... 20

          2.   This Case Satisfies The Prerequisites For Certification Under Rule 23(a). ..................... 21

               a.   Numerosity ....................................... 21

               b.   Commonality ..................................... 22

               c.   Typicality .......................................... 22

               d.   Adequacy .......................................... 22

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

**V.     CONCLUSION**............................................................................ 23

# TABLE OF AUTHORITES

**CASES**

*Ahlman v. Barnes*,
445 F. Supp. 3d 671 (C.D. Cal. 2020)..........................................................20

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
686 F.3d 965 (9th Cir. 2012)..............................................................15, 16

*Alcantara v. Archambeault*,
No. 20CV0756 DMS (AHG), 2020 WL 2315777,
(S.D. Cal. May 1, 2020)...............................................................................20

*Clement v. Cal. Dep't of Corr.*,
364 F.3d 1148 (9th Cir. 2004).....................................................................19

*Davis v. Astrue*,
874 F. Supp. 2d 856 (N.D. Cal. 2012)........................................................19

*E. Bay Sanctuary Covenant v. Biden,*
993 F.3d 640 (9th Cir. 2021). .....................................................................15

*Elrod v. Burns*,
427 U.S. 347 (1976)......................................................................................17

*Gete v. INS*,
121 F.3d 1285 (9th Cir. 1997)............................................................ *passim*

*Gete v. INS*,
No. C94-881Z, 1999 U.S. Dist. LEXIS 11806 (W.D. Wash. July 22, 1999)......18

*Fraihat v ICE*,
445 F. Supp. 3d 709 (C.D. Cal. 2020)..........................................21, 22, 23

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*,
647 F. Supp. 2d 857 (N.D. Ohio 2009) .....................................................16

*Leonard v. Texas*,
137 S. Ct. 847 (2017)....................................................................................13

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012)....................................................................20

*Niu v. United States*,
821 F. Supp. 2d 1164 (C.D. Cal. 2011) .....................................................14

*Ordonez v. Stanley*,
495 F. Supp. 3d 855 (C.D. Cal. 2020)........................................................15

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010)..........................................................21, 22

Page

*Six v. Newsom*,
  462 F. Supp. 3d 1060 (C.D. Cal. 2020) ....................................................... 14

*Zepeda Rivas v. Jennings*,
  445 F. Supp. 3d 36 (N.D. Cal. 2020) ........................................................... 20

**STATUTES AND REGULATIONS**

18 U.S.C. § 981(a)(1)(C) ................................................................................ 14

18 U.S.C. § 983 ............................................................................................... 14

19 U.S.C. §§ 1602–1619 ................................................................................ 14

28 C.F.R. Parts 8 and 9 .................................................................................. 14

**RULES**

Fed. R. Civ. P. 23(a) ...................................................................................... 21

Fed. R. Civ. P. 23(b)(2) .............................................................................. 3, 20

**OTHER AUTHORITIES**

Lisa Knepper et al., Institute for Justice, *Policing for Profit: The Abuse of Civil Asset Forfeiture* (3d. ed. 2020), https://ij.org/report/policing-for-profit-3/ ......... 13

## I.  INTRODUCTION

After breaking open hundreds of safe deposit boxes at U.S. Private Vaults ("USPV"), the government has now commenced administrative civil forfeiture proceedings against the contents of over 400 of those boxes. That includes the boxes of Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May.

The forfeiture notices sent to these USPV box holders all suffer from a single overarching defect: None states the legal or factual basis for the government's forfeiture action. The notices cite a laundry list of forfeiture laws, but those laws authorize forfeiture for a broad variety of offenses, including counterfeiting, fraud, smuggling, embezzlement, and many others. The notices do not inform box holders of the *specific* alleged offense underlying the forfeiture action. Box holders are thus left to guess what the government is accusing them of having done.

The government's slapdash civil forfeiture proceedings do not comport with basic requirements of due process. As a matter of due process, property owners targeted for forfeiture are entitled to notice of the "particular statutory provisions and regulations they are accused of having violated." *Gete v. INS*, 121 F.3d 1285, 1297 (9th Cir. 1997). Because the government's forfeiture notices to USPV customers do not meet that basic requirement, they are invalid on their face.

This Court's intervention is required, on an emergency basis, to end these invalid civil forfeiture proceedings. The government has set a deadline of June 24, 2021, to respond to its invalid forfeiture notice. Property owners who do not respond in time may lose their property forever. And even property owners who *do* respond are at risk of losing their property, either because they file a petition for remission or mitigation that is denied by the seizing agency (a decision that is not subject to appeal) or because they file a claim that is in some way defective (for instance, because it does not include language stating that it is submitted under oath). Property owners should not be put in that position without the government

first meeting its threshold obligation to articulate the factual and legal basis for the forfeiture.

To be clear, the requested temporary restraining order would not necessarily bar the government from forfeiting the contents of *any* USPV box. The order would simply bar the government from forfeiting the contents of USPV boxes based on civil forfeiture notices that fail to state the factual or legal basis for the forfeiture. To the extent that the government has a factual and legal basis to subject these boxes to civil forfeiture, the government could perhaps seek to pursue forfeiture on that basis. But, as a matter of due process, the government cannot be allowed to press forward with civil forfeiture proceedings without first articulating the factual and legal basis supposedly supporting the forfeiture.

## II.  BACKGROUND

### A.  Plaintiffs' Safe Deposit Boxes.

Plaintiff Joseph Ruiz is currently unemployed following a significant injury. He stored $57,000 in cash in his safe deposit box, including money that he received as proceeds of a settlement following his injury.

Plaintiff Jeni Verdon-Pearsons works at a nonprofit theater in Los Angeles, and Michael Storc works as a transportation coordinator in the film industry. They are a married couple. Jeni and Michael stored approximately $20,000 worth of silver in their box, which they purchased as an investment and were saving for retirement.

Plaintiff Travis May is the Founder and CEO of TollFreeForwarding.com, which is a successful telecommunications business that generates millions of dollars in annual profits. Travis stored both gold and approximately $63,000 in cash in his box, which he viewed as a rainy-day fund in case of emergencies.

### B.  The USPV Seizure.

The seizure warrant for the USPV raid authorized the FBI to seize USPV's "business equipment," including the "nests of safety deposit boxes and keys," but

1  specifically stated that the "warrant *does not authorize* a criminal search or seizure

2  of the contents of the safety deposit boxes." Ex. A at 7 (emphasis added).[2]

3       The warrant application did state that the government would conduct a limited

4  search of the boxes to "look for contact information or something which identifies

5  the owner," and stated that, under official FBI policies, the inspection "should

6  extend no further than necessary to determine ownership." Ex. B at 10 n.1. The

7  warrant likewise contemplated that, "in accordance with their written policies,

8  agents shall inspect the contents of the boxes in an effort to identify their owners in

9  order to notify them so that they can claim their property." Ex. A at 7.

10       **C.   The FBI's First Claim Process.**

11       Following the seizure, the FBI posted a notice on the window at the USPV

12  facility directing box holders to "go to the following link to initiate a claim for your

13  US Private Vaults box." Ex. C at 12. The link provided on the notice directed

14  property owners to a website with a form—asking for identifying information and

15  contact details—and stated that box holders should "provide the following

16  information" in order to "make a claim for property stored at U.S. Private Vaults in

17  Beverly Hills, California." Ex. D at 14.

18       Plaintiffs have cooperated with the FBI's request. Joseph Ruiz received an

19  email on April 8, 2021, which stated, "Thank you for submitting your claim with

20  regard to property at U.S. Private Vaults." Ex. E at 17. The email assured Joseph

21  that "FBI agents and staff are working diligently, in a methodical and systematic

22  way, to process all claims." *Id.* And it stated that, "[w]ithin the next 30 to 60 days,

23  someone from the FBI will contact you either to make arrangements to return your

24  property, or to request additional information." *Id.* Jeni Verdon-Pearsons received

25  the same email on April 19, 2021. Ex. F at 19.

26

27  ───────────────

28      [2] Citations to "Ex." refer to the exhibits to the Declaration of Robert E.
Johnson filed contemporaneously with this application.

### D.   The Government's Forfeiture Proceedings.

Rather than returning the contents of the boxes—or even contacting box holders, as promised by the emails sent in response to the claims—the government is now seeking to take the contents of over 400 boxes using civil forfeiture. As Justice Thomas has explained, civil forfeiture allows law enforcement to "seize property with limited judicial oversight and retain it for their own use" and has "led to egregious and well-chronicled abuses." *Leonard v. Texas*, 137 S. Ct. 847, 848 (2017) (Thomas, J., respecting the denial of certiorari).[3]

The government sent attorneys for USPV a single forfeiture notice that lists the boxes that the government intends to forfeit, and USPV subsequently posted a copy of that notice to its website. Ex. G at 22–39. In addition, the government sent individualized forfeiture notices to at least some of the box holders whose property has been targeted for civil forfeiture. *See* Ex. H at 42–44 (notice sent to Jeni Verdon-Pearsons); Ex. I at 47-49 (notice sent to Michael Storc); Ex. J at 51-52 (notice sent to Travis May). These individualized notices differ from the USPV omnibus notice only insofar as they are limited to the property of the specific individual receiving the notice and do not list the other boxes targeted for civil forfeiture.

The notices sent by the government to USPV box holders do not identify the factual or legal basis for the forfeiture proceedings. The notices do not state *any* factual basis for the forfeiture, except that the assets "were seized on March 22, 2021 by the FBI at U.S. Private Vaults in Beverly Hills, California." Ex. G at 24; Ex. H at 44; Ex. I at 49; Ex. J at 51. And, as legal authority, the notices all cite the same laundry list of provisions:

---

[3] For a broader overview of the federal government's use of civil forfeiture, see Lisa Knepper et al., Institute for Justice, *Policing for Profit: The Abuse of Civil Asset Forfeiture* (3d. ed. 2020), https://ij.org/report/policing-for-profit-3/.

- 18 U.S.C. § 981(a)(1)(C): This provision authorizes civil forfeiture for a broad variety of federal criminal laws, including corruptly influencing a loan officer, forgery, counterfeiting, uttering counterfeit obligations, smuggling, embezzlement, theft of medical products, loan fraud, computer fraud, and bank fraud (among others). The citation in the letter does not indicate which of those crimes—if any—form the basis for the forfeiture.

- 19 U.S.C. §§ 1602–1619: These provisions of the customs laws set out procedures to be followed in all civil forfeiture proceedings.

- 18 U.S.C. § 983: This provision codifies the Civil Asset Forfeiture Reform Act of 2000 and sets out deadlines and other procedures to be followed in all civil forfeiture proceedings.

- 28 C.F.R. Parts 8 and 9: These regulations set out procedures to be followed by the Department of Justice in all forfeiture cases.

Ex. G at 24; Ex. H at 44; Ex. I at 49; Ex. J at 51. The notices thus do not specify either the factual or legal basis underpinning the government's determination to subject the property to civil forfeiture proceedings. Box holders are simply left to guess at the government's basis—if any—for commencing these civil forfeiture proceedings.

## III.  LEGAL STANDARD

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (marks and citation omitted). "Therefore, a plaintiff seeking a TRO must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Niu v. United States*, 821 F. Supp. 2d 1164, 1167 (C.D. Cal. 2011) (marks and citation omitted). "When the government is a party, the last two factors (equities

1  and public interest) merge." *E. Bay Sanctuary Covenant v. Biden,* 993 F.3d 640,

2  668 (9th Cir. 2021).

3  **IV.  ARGUMENT**

4       This application seeks a TRO barring the government from proceeding with

5  administrative civil forfeiture proceedings against USPV box holders without first

6  articulating the factual and legal basis for the forfeiture. Part A explains that

7  Plaintiffs are likely to prevail on their claim that the government's civil forfeiture

8  notices violate due process insofar as they fail to state the factual or legal basis for

9  the civil forfeiture. Part B explains that the other factors favor a grant of a

10  temporary restraining order. And Part C explains that the Court can—if

11  necessary—certify a provisional class in order to provide the requested classwide

12  injunctive relief.

13       **A.      Plaintiffs Are Likely To Prevail On Their Claim That The**

14               **Forfeiture Notices Violate Due Process.**

15       The constitutional requirement of notice, as a matter of due process, includes

16  the right to "sufficient notice concerning the factual and legal bases for"

17  deprivations of property rights. *Gete v. INS*, 121 F.3d 1285, 1297 (9th Cir. 1997);

18  *see also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965,

19  987 (9th Cir. 2012); *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 864 (C.D. Cal. 2020).

20  The forfeiture notices sent by the government to USPV box holders, however, fall

21  short of that basic requirement.

22       The Ninth Circuit's decision in *Gete* shows that, as a matter of due process,

23  the government must notify Plaintiffs of the basis for the forfeiture actions. In that

24  case, plaintiffs sued to challenge administrative forfeiture notices sent by INS to

25  property owners. 121 F.3d at 1287. The plaintiffs claimed the barebones notice sent

26  by INS did not "give sufficient notice concerning the factual and legal bases" for

27  the forfeiture actions. *Id.* at 1297. The Ninth Circuit agreed, explaining that

28  "ambiguous factual circumstances may in many cases cause [property] owners to

guess incorrectly why their [property] has been seized, thus preventing them from responding effectively to the unspecified accusations of criminal wrongdoing that underlie a forfeiture." *Id.* at 1298. The Ninth Circuit thus held that due process requires the government to disclose "the factual bases for seizures" as well as "the specific statutory provision allegedly violated." *Id.*

The Ninth Circuit's decision in *Al Haramain* also applies that due process requirement. In that case, the Office of Foreign Assets Control ("OFAC") froze the plaintiff's assets, apparently because OFAC believed the plaintiff was funding terrorists. 686 F.3d at 970. The plaintiff had notice that its assets were frozen; among other things, OFAC put out a press release and also sent the plaintiff a letter. *Id.* at 973–74. But the plaintiff nonetheless argued that it had not received sufficient notice, as a matter of due process, because the government had "refused to disclose its reasons for investigating and designating [the plaintiff], leaving [the plaintiff] unable to respond adequately." *Id.* at 984–85. Notwithstanding the government's national security interests in the anti-terrorism context, the Ninth Circuit agreed that the plaintiff was entitled to, "at a minimum, a terse and complete statement of reasons." *Id.* at 986. And, while the government argued in response that the plaintiff could likely guess the reasons for the designation, the Ninth Circuit also stated that "the opportunity to guess at the factual and legal bases for a government action does not substitute for actual notice of the government's intentions." *Id.* at 986–87; *see also KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 906 (N.D. Ohio 2009) (likewise concluding that OFAC's failure to provide notice of the basis for an asset freeze violated due process). If the alleged terrorists in *Al Haramain* were entitled to notice of the factual and legal basis for the government's actions, surely the same is true of USPV box holders.

The forfeiture notices sent by the government to USPV box holders fall well short of what is required by *Gete* and *Al Haramain*. First, the forfeiture notices do not set forth the "factual bases" for the seizure of the property or the attempted

1   forfeiture. *Gete*, 121 F.3d at 1298. Indeed, the *only* fact the notice sets forth is that

2   the FBI seized the property from the USPV facility. *See* Ex. G at 24; Ex. H at 44;

3   Ex. I at 49; Ex. J at 51. And while the notices cite a long laundry list of statutes and

4   regulations, *none* actually identify "the specific statutory provision allegedly

5   violated." 121 F.3d at 1298. Instead, they point to general statutes that authorize

6   civil forfeiture for a whole host of criminal offenses (including counterfeiting,

7   uttering counterfeit obligations, bank fraud, and computer fraud—among others)

8   and to other provisions that merely set out procedures to be followed in civil

9   forfeiture cases. *See* Ex. G at 24; Ex. H at 44; Ex. I at 49; Ex. J at 51.

10      Defendants' deficient notices fail to provide property owners with due

11   process. They leave owners in the dark about the specific legal or factual bases for

12   the government's attempted forfeiture, forcing owners to guess at what criminal

13   offense the government is accusing their property of being involved in. Under *Gete*

14   and *Al Haramain*, Defendants' hundreds of faulty forfeiture notices cannot stand.

15      **B.    The Remaining Factors Favor Grant Of A Temporary Restraining**

16           **Order.**

17      1.   Equitable Relief Is Necessary To Prevent Irreparable Harm.

18      A temporary restraining order preventing the government from civilly

19   forfeiting the property of U.S. Private Vaults customers through the use of these

20   constitutionally defective notices is necessary to prevent irreparable harm. As

21   explained above, the government's notices violate due process by failing to apprise

22   box holders of the specific factual or legal basis for the attempted forfeiture. "[T]he

23   deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"

24   *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*,

25   427 U.S. 347, 373 (1976)).

26      Here, the government is threatening to take away box holders' property

27   forever. Yet the deficient notices fail to provide the factual and legal basis behind

28   that threat, thereby making it impossible for box holders to appropriately respond.

As the Ninth Circuit explained in *Gete*, property owners need to know the basis for the forfeiture in order to "understand the true nature of the [government's] charges and afford them a fair opportunity to prepare a proper defense to the threatened forfeiture," including to "prepare reasonably informed petitions for remission, mitigation, and reconsideration." 121 F.3d at 1298. If the Court does not grant a temporary restraining order, property owners will face a looming deadline to make a decision whether to file a claim, submit a petition, or else simply walk away from their property. And if property owners make a wrong step when navigating that process, they risk losing their property forever.[4]

Other courts in this circuit have enjoined similarly deficient notices. Upon remand in *Gete*, for instance, the district court issued a preliminary injunction requiring that the government provide owners with "notice of the factual and legal bases for a forfeiture." *Gete v. INS*, No. C94-881Z, 1999 U.S. Dist. LEXIS 11806, at *17 (W.D. Wash. July 22, 1999). It did so after holding that "the irreparable harm that presumably flows from any constitutional violation" required immediate equitable relief. *Id*. The same is true here. Before deciding how to proceed, property owners are, at a minimum, entitled to know the basis for the government's decision to commence civil forfeiture proceedings. Equitable relief will therefore prevent the government from depriving property owners of that basic due process right.

---

[4] If property owners do not respond at all to the notice, their property will be automatically forfeited without any involvement by a judge. Or, if property owners decide to submit a petition for remission or mitigation—and the petition is denied by the agency in full or in part—the decision denying the petition generally will not be subject to judicial review. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). And even if property owners opt to contest the forfeiture by filing a claim, the agency may still reject the claim if it determines that it was not submitted in the proper form or is otherwise deficient. *See* Ex. K at 54 (email from government explaining that "[c]laims are reviewed for validity and timeliness by the seizing agency's legal staff" and that "[s]uccessful filing of your claim does not ensure your claim is valid.").

2. <u>The Balance Of Equities Favors Injunctive Relief, And An Injunction Would Be In The Public Interest.</u>

An injunction would be in the public interest, as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. An injunction also would ensure the government's compliance with the narrow scope of the magistrate's seizure warrant and therefore respect for the judiciary's role under the Fourth Amendment. An injunction also would cause no possible harm to the government: If the government believes there is a specific legal and factual basis to commence civil forfeiture proceedings against a particular property owner, the government could issue a revised notice stating those bases.

**C.    To The Extent Necessary To Provide The Requested Injunctive Relief, The Court Should Certify A Provisional Class.**

The Court can grant the requested injunctive relief without certifying a class, as the relief this motion seeks is "no broader than the constitutional violation." *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1152 (9th Cir. 2004); *see also Davis v. Astrue*, 874 F. Supp. 2d 856, 868 (N.D. Cal. 2012). In *Clement*, for example, the Ninth Circuit upheld a statewide injunction enjoining enforcement of a particular prison policy, reasoning that, although Clement was a single inmate at a single prison, "it would be inefficient and unnecessary for prisoners in each California state prison to separately challenge the same [prison] policy." 364 F.3d at 1153. Because the Ninth Circuit in *Clement* said the district court could provide broad equitable relief without certifying a class, this Court may do the same.

However, if the Court concludes that it should certify a provisional class so as to provide U.S. Private Vaults' owners with the requested injunctive relief, Plaintiffs propose the following provisional class, which is a subclass of the broader putative class proposed by the Complaint:

**All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or**

**around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) whose property is now the subject of a purported administrative forfeiture proceeding; and (d) whose property is still in the possession of the federal government.**

*See* First Am. Compl. ¶ 142 (seeking certification of this subclass).

Provisional class certification allows a district court to certify a class for the narrow and limited purpose of issuing preliminary injunctive relief. *See, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also Ahlman v. Barnes*, 445 F. Supp. 3d 671, 682 (C.D. Cal. 2020) (explaining that "[c]ourts in the Ninth Circuit routinely grant provisional class certification for purposes of entering injunctive relief." (marks omitted)). Where necessary to prevent constitutional injury, courts have granted provisional class certification for the limited purpose of entering a temporary restraining order. *See, e.g.*, *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 38 (N.D. Cal. 2020) (granting provisional class certification and entering a TRO); *Alcantara v. Archambeault*, No. 20CV0756 DMS (AHG), 2020 WL 2315777, at *10 (S.D. Cal. May 1, 2020) (same). Such provisional relief, moreover, is appropriate here because this is a straightforward case for certification under Rule 23(b)(2).

    1.   This Is An Appropriate Case For Class-Wide Injunctive Relief Under Rule 23(b)(2).

This is an appropriate case for certification under Rule 23(b)(2) because the government "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The class as defined includes USPV box holders who have come forward in their own names to retrieve their property and who are now subject to administrative forfeiture proceedings. And the proposed preliminary injunctive relief would benefit that entire class in the

same way: by forcing the government to state the specific factual and legal basis that it believes justifies the forfeiture of the owner's property.

It is critical to note that this motion does not actually seek an order compelling the return of *any* particular property; instead, it only asks that the government provide owners with the specific factual and legal bases that undergird the government's decision to commence forfeiture proceedings. Therefore, any argument by the government that this claim cannot be adjudicated on a class-wide basis is ill-conceived. After all, if the government thinks that it has a sufficient legal and factual basis to begin forfeiture proceedings as to a specific property owner, then the proposed relief would not bar the government from attempting to pursue forfeiture on that factual basis.

But at this stage, class-wide relief is appropriate since none of the forfeiture notices the government sent to U.S. Private Vaults owners provide *any* individualized notice of the factual or legal bases for the government's actions. That overarching failure is common to the class as a whole, although the individual circumstances of class members' cases may differ in other respects. "Plaintiffs do not seek any individualized determination by this Court of whether they are entitled to release, and do not request a different injunction for each class member" and instead "ask the Court to determine whether [the government's] systematic actions, or failures to act, . . . amount to violations of the class members' constitutional or statutory rights." *Fraihat v ICE*, 445 F. Supp. 3d 709, 741 (C.D. Cal. 2020). This is therefore a paradigmatic 23(b)(2) class.

　　　　2.　This Case Satisfies The Prerequisites For Certification Under Rule 23(a).

In addition to all the foregoing, this case also satisfies the necessary prerequisites for class certification under Rule 23(a).

*a. Numerosity:* "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members," and the Ninth Circuit has found the requirement satisfied for a class with just 20 members. *Rannis v. Recchia*, 380 F.

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

App'x 646, 651 (9th Cir. 2010). In this case, the government has commenced forfeiture proceedings against over 400 safe deposit boxes at USPV, leaving no doubt that this prerequisite is met.

    *b. Commonality:* The requirement of commonality is also satisfied because "the constitutional issue at the heart of each class member's claim for relief is common." *Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010). Here, the common constitutional question for all proposed class members is whether due process requires the government to provide owners with notice regarding the specific factual and legal basis for commencing forfeiture proceedings against their property. And, as explained above, the motion properly does not seek to adjudicate any individualized issues beyond that common constitutional claim. "Each class member claims entitlement to a minimally adequate" procedure to secure return of their property, and, as a result, any "factual differences [within the class] are not of the sort that likely affect entitlement to relief." *Fraihat*, 445 F. Supp. 3d at 738.

    *c. Typicality:* The typicality requirement "requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez*, 591 F.3d at 1124 (marks omitted). That requirement is satisfied here, as both movants and other members of the class all raise "similar constitutionally-based arguments and are alleged victims of the same practice of prolonged detention." *Id.* The movants and proposed class representatives all had their property seized by the government; all filed claims with the government to recover their property; and are all now confronted with constitutionally-deficient administrative forfeiture notices. As a result, they "have the same claims and face the same or similar harms arising from the same course of conduct" as the other members of the proposed class. *Fraihat*, 445 F. Supp. 3d at 738–39.

    *d. Adequacy:* Finally, to determine adequacy of representation, "the Court asks whether the proposed class representatives and their counsel have any conflicts of

interest with any class members and whether the proposed class representatives and
their counsel will prosecute the action vigorously on behalf of the class." *Fraihat*,
445 F. Supp. 3d at 739. There is no conflict here: The proposed class
representatives here seek the exact same relief that they are requesting on behalf of
the class as a whole—namely, an order that the government state the basis for its
continued detention of their property or, failing that, give the property back. And
the proposed class counsel have extensive experience litigating class actions,
including a major class action involving the adequacy of government procedures
following property seizures. *See* Declaration of Robert Frommer in Support of *Ex
Parte* Application for a Temporary Restraining Order. The requirement of adequacy
is therefore satisfied.

## V.   CONCLUSION

For the foregoing reasons, the Court should issue a temporary restraining order
barring the government from proceeding with administrative civil forfeiture
proceedings against USPV box holders without providing constitutionally-adequate
notice of the asserted legal and factual basis for the forfeiture.

Dated: June 15, 2021                          Respectfully Submitted,

                                              /s/ Robert Frommer

                                              **THE INSTITUTE FOR JUSTICE**
                                              Robert Frommer*
                                              rfrommer@ij.org
                                              901 N. Glebe Rd., Suite 900
                                              Arlington, VA 22203
                                              Tel. (703) 682-9320

                                              Robert E. Johnson*
                                              rjohnson@ij.org
                                              16781 Chagrin Blvd.. Suite 256
                                              Shaker Heights, OH 44120
                                              Tel. (703) 682-9320

                                              * *Admitted pro hac vice.*

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

**PROOF OF SERVICE**

I am admitted *pro hac vice* for purposes of this action. I am over the age of 18 and not a party to this action. My business address is 901 N. Glebe Rd., Suite 900, Arlington, VA 22203. My electronic service address is rfrommer@ij.org. On the execution date below and in the manner stated herein, I caused service of a true and correct copy of **PLAINTIFFS JENI VERDON-PEARSONS, MICHAEL STORC, TRAVIS MAY, AND JOSEPH RUIZ'S *EX PARTE* APPLICATION FOR TEMPORARY RESTAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES,** with supporting Declarations, exhibits, and proposed orders on all interested parties in this action as follows:

[ X ]    BY MAIL. By depositing in a sealed envelope in the United States mail with postage thereon fully prepaid to the following address:

Tracy L. Wilkison                          United States of America
Civil Process Clerk                        c/o U.S. Attorney General
United States Attorney's Office            Merrick Garland
Federal Building                           U.S. Department of Justice
300 N. Los Angeles Street, Suite 7516      950 Pennsylvania Avenue NW
Los Angeles, CA 90012                      Washington, DC 20530-0001

Kristi Koons Johnson
Federal Bureau of Investigation
Assistant Director in Charge
11000 Wilshire Boulevard, Suite 1700
Los Angeles, CA 90024

[ X ]    BY E-MAIL. By electronic mail transmission to the offices of the following addressee(s):

**andrew.brown@usdoj.gov**

**usacac.civil-tronotice@usdoj.gov**

[ X ]    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 15, 2021, at Arlington, Virginia.

/s/ Robert Frommer