TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
      1100/1400/1200 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0102/2569/1785
      Facsimile: (213) 894-6269/0142/0141
      E-mail: Andrew.Brown@usdoj.gov
              Victor.Rodgers@usdoj.gov
              Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, AND TRAVIS MAY,<br><br>          Plaintiffs,<br><br>               v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br><br>          Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS JENI VERDON-PERSONS, MICHAEL STORC, TRAVIS MAY AND JOSEPH RUIZ'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION AND DECLARATIONS OF JESSIE MURRAY AND AUSA VICTOR A. RODGERS** |

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.   INTRODUCTION...................................................1

II.  STATEMENT OF FACTS.............................................2

     A.   General Background The Government Has Previously
          Discussed.................................................2

     B.   Pertinent Facts Relative To Plaintiffs' TRO Appliction.. 3

     C.   Procedural Posture of This Case ..........................5

III. THE STANDARDS FOR ISSUING TEMPORARY RESTRAINING ORDERS AND
     PRELIMINARY INJUNCTIONS. ......................................6

IV.  MOVING PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF
     SUCCESS.......................................................6

     A.   Seizing Agency Administrative Forfeiture Proceedings
          Are In Rem Proceedings That Were Commenced In This Matter
          By The FBI's May 20, 2021 Personal Notice Letter To
          USPV As To The Property (Including The Property Moving
          Plaintiffs Assert Is Their Property) Identified In The
          FBI's Letter..............................................7

     B.   The Additional Laws Concerning Administrative Forfeiture
          Proceedings Show Why Plaintiffs' Arguments Are Incorrect..9

     C.   In Light Of The Specific Civil Asset Forfeiture
          Laws, Plaintiffs' Cases Involving Different Laws Are
          Inapposite ..............................................12

     D.   Applicable Caselaw Confirms That The FBI's
          Administrative Notice Satisfies Due Process..............16

V.   MOVING PLAINTIFFS FAIL TO MEET THEIR BURDEN FOR PROVISIONAL
     CLASS CERTIFICATION. .........................................18

VI.  MOVING PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM .......20

DECLARATIOB OF AUSA VICTOR A. RODGERS AND EXHIBITS

DECLARATION OF SSA JESSIE MURRAY

i

**TABLE OF AUTHORITIES**

**SUPREME COURT OPINIONS**                                         **PAGE(S)**

*Califano v. Yamasaki,*
   442 U.S. 682 (1979)  ........................................... 18

*eBay Inc. v. MercExchange, LLC,*
   547 U.S. 388 (2006)  ........................................... 20

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997)  ...........................................  5

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950)  ...................................... 13, 17

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011)  ........................................... 18

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)  .............................................  5

**FEDERAL COURT OPINIONS**

*Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury,*
   686 F.3d 965 (9th Cir. 2012)  .................................. 15

*Brewster v. Beck,*
   859 F.3d 1194 (9th Cir. 2017)................................... 15

*Brown v. District of Columbia,*
   115 F. Supp. 3d 57 (D.D.C. 2015)  ......................... 15, 16

*Easyriders Freedom F.I.G.H.T. v. Hannigan,*
   92 F.3d 1486-02 (9th Cir. 1996)  .............................. 18

*Gete v. INS,*
   121 F.3d 1285 (9th Cir. 1997)  ............................ 12, 13

*Juda v. Nerney,*
   149 F.3d 1190, 1998 WL 317474 (10th Cir. 1998)  .............. 16

*KindHearts for Charitable Humanitarian Dev. Inc. v. Geithner,*
   647 F. Supp. 2d 857 (N.D. Ohio 2009)  ........................ 15

*Melendres v. Arpaio,*
   695 F.3d 990 (9th Cir. 2012)  ................................ 19

*Mohammad v. U.S.,*
   169 Fed. Appx. 475 (7th Cir. 2006)  ......................... 16

*Nat'l Ctr. for Immigrants Rights, Inc. v. INS,*
   743 F.2d 1365 (9th Cir. 1984)  .............................. 18

*Ordonez v. Stanley,*
   495 F. Supp. 3d 855 (C.D. Cal. 2020) ........................ 14

ii

### TABLE OF AUTHORITIES (CONTINUED)

**FEDERAL COURT OPINIONS**                                      **PAGE(S)**

*Patriot Contract Servs. v. United States*,
    388 F. Supp. 2d 1010 (N.D. Cal. 2005) ......................... 20

*Ramos v. Wolf,*
    975 F.3d 872 (9th Cir. 2020) ................................. 18

*Sandavol v. County of Sanoma*,
    912 F.3d 509 (9th Cir. 2018) ................................. 14

*Sociedad Anonima Vina Santa Rita v. U.S. Dep't of the Treasury*,
    193 F. Supp. 2d 6 (D.D.C. 2001) ............................... 5

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) .................................. 5

*United States v. $38,000.00 in U.S. Currency*,
    816 F.2d 1538 (11th Cir. 1987) ................................ 6

*U.S. v. Pickett,*
    2012 WL 694712 (E.D.N.Y. Mar. 1, 2012) ................... 16, 17

*United States v. All Funds in Account Nos. 747.034/278*
    (Banco Espanol de Credito), 295 F.3d 23 (D.C. Cir. 2002) ....... 6

*United States v. One-Sixth Share*,
    326 F.3d 36 (1st Cir. 2003) ................................... 6

*Sandavol v. County of Sanoma*,
    912 F.3d 509 (9th Cir. 2018) ................................. 15

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) ................................. 5

**STATUTES AND REGULATIONS**

18 U.S.C. § 981 ................................................ 8

18 U.S.C. § 983................................................ passim

18 U.S.C. § 1956 ............................................... 8

18 U.S.C. § 1961 ............................................... 8

19 U.S.C. § 1609 .............................................. 11

21 C.F.R. § 8.10 .............................................. 11

28 C.F.R. § 8.2............................................... 7

28 C.F.R. § 8.8 ............................................... 7

28 C.F.R. § 8.9 ........................................... passim

**TABLE OF AUTHORITIES (CONTINUED)**

**STATUTES AND REGULATIONS**                                    **PAGE(S)**

28 C.F.R. § 8.10 ......................................... 10, 11

28 C.F.R. § 8.12 ......................................... 10, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Moving plaintiffs seek a temporary restraining order to enjoin the government from civilly forfeiting property (i) based on the forfeiture notice sent by the FBI on May 20, 2021 to the attorneys for U.S. Private Vaults ("USPV"); (ii) based on May 20 and 21, 2021 letters sent to the moving plaintiffs (except for plaintiff Joseph Ruiz); and (iii) from the moving plaintiffs or anyone else who is subject to the pending *in rem* civil asset forfeiture proceedings, without the government sending a notice letter to those persons that identifies the specific factual and legal basis for the government's decision to commence civil administrative forfeiture proceedings against specific assets claimed by particular persons.

The temporary restraining order should be denied.  The cases upon which moving plaintiffs rely to show that the government must send the notice they say is required are based upon laws that are substantially different from those governing the seizing agency administrative forfeiture proceedings involved here.  Moving plaintiffs' cases are therefore inapposite to the situation here.  In addition, caselaw involving forfeiture notices in the type of case involved here show that the FBI's forfeiture notice fully complies with due process.  In addition, moving plaintiffs have not met their burden for provisional class certification to entitle them to relief.

Accordingly, for these and the other reasons set forth below, moving plaintiffs have not shown that they are likely to succeed on the merits and that they will suffer irreparable harm if a temporary restraining order is not granted.  The government respectfully requests that moving plaintiffs' application be denied.

## II.   STATEMENT OF FACTS

**A.   General Background The Government Has Previously Discussed.**

USPV offers a unique service in California:  the anonymous rental of safety deposit boxes.  While banks and other private vault companies offer similar services at much lower prices, none permit their customers to remain anonymous.  It is this anonymity that USPV advertises on its website to attract customers: "Complete Privacy; Biometric Identification; No ID Required."  www.usprivatevaults.com.  By providing and promoting total anonymity, USPV caters to and attracts criminals, who seek to keep their identities and the source of their cash beyond the reach of law enforcement and the IRS.

A grand jury indicted USPV for conspiring with its customers to launder money, distribute drugs, and structure financial transactions to avoid currency reporting requirements.  The government obtained a sealed criminal seizure warrant for "[t]he nests of safety deposit boxes and keys" located at USPV, and the warrant provides that it "does not authorize a criminal search or seizure of the contents of the safety boxes[,]" that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes" and that "agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property[.]"  Docket No. 44-2 (Johnson Decl. Ex. A).  The inventory of the contents of the boxes revealed, among other items, firearms, illegal drugs, and anonymous stores of wealth, mostly cash.  *See* previously-submitted Palmerton Decl.

Between March 22 and 26, 2021, federal agents executed the seizure warrant and removed the nests of safe deposit boxes,

2

inventorying their contents in the process, as authorized in the seizure warrant and discussed in the affidavit supporting it. *Id.* at ¶ 2.  The inventory of the boxes' contents revealed, among other items, firearms, illegal drugs, and anonymous stores of wealth, mostly cash.  *Id.*  Drug detecting dogs alerted to most, but not all of the cash stashes.  *Id.*

The government provided box holders the opportunity to request the return of seized property (which procedure does not involve the asset forfeiture proceedings discussed below) with a voluntary additional remedy that the government is not required to supply when executing a warrant.  USPV, which has been closed since March 26, 2021, as of the closing had a sign affixed to the door that instructed box holders to go to a FBI website which provides that, to make a claim for property stored at USPV, a box holder should provide his or her first, middle and last names and best contact number so that a FBI agent could contact the box holder for additional details.

**B.   Pertinent Facts Relative To Plaintiffs' TRO Application.**

On May 20, 2021, the FBI initiated administrative forfeiture proceedings as to particular identified boxes' contents, including the boxes containing currency like moving plaintiffs, by sending a written personal notice letter to USPV and other persons the FBI could identify as having a potential interest in particular boxes. Docket No. 44-8 (Johnson Decl. Ex. G at pages 20-40); Murray Decl. ¶ 2.  The other persons to whom the FBI sent (and who have received) a personal notice letter include moving plaintiffs Jeni Verdon-Pearsons (apparently also known as Jennifer Pearson) on May 21, 2021, Michael Storc on May 21, 2021 and Travis May on May 20, 2021.  Docket Nos. 44-9, 44-10 and 44-11 (Johnson Decl. Exs. H, I, J).  Page 2 of

each of the above-referenced notice letters explains to the letter recipient how to submit a claim to the FBI to contest the FBI's administrative forfeiture of the property, provides a link where a person can find a standard claim form they can download to use to submit a claim [Rodgers Decl. Ex. A], explains that the claim can be submitted electronically to the FBI, and provides that the deadline for submitting the claim to the FBI is June 24 (*see* USPV and moving plaintiff May letters) or June 25, 2021 (*see* moving plaintiff Pearson and Store letters).[1]

However, the June 24 and 25, 2021 deadlines in the above-referenced letters do not apply to all persons who desire to submit a claim to contest forfeiture.  Indeed, many deadlines for other persons are much later, including for moving plaintiff Joseph Ruiz who argues he has not received a personal notice letter from the FBI.[2]  On June 4, 2021, the FBI commenced posting a notice for the first batch of the USPV seizures on a government forfeiture internet website, meaning that persons who do not receive a notice letter from the FBI (such as Ruiz) and are included in the assets set forth in the internet notice have a deadline for filing a claim no earlier than August 3, 2021 - - about seven weeks from today.  Murray Decl.

---

[1] As discussed below, by submitting a claim, a claimant can stop the administrative forfeiture proceedings and require the government to file a judicial civil forfeiture action within 90 days.

[2] *See* Docket No. 26-1 (plaintiffs' motion for a preliminary injunction at 8:25-28, n. 2 where plaintiffs argue that counsel for plaintiffs had received second-hand information that the government may have told USPV that it intends to seek forfeiture of Joseph Ruiz's property but "the government has not notified Joseph [Ruiz] of any such forfeiture proceeding . . Absent notice, Joseph does not know if the government will seek to forfeit his property . . . and does not have the ability to file a claim challenging the forfeiture"); see also 18:26-28, n. 3.  *Accord*, Docket No. 1 (complaint ¶¶ 82 and 83).

¶ 3.  The deadline will be even later for the following waves of USPV seizure assets because the FBI will publish those assets on the internet website later.  *Id.*  (Furthermore, if a person submits a defective claim, the FBI can extend the deadline to allow a reasonable time for the submitter to fix the deficiencies).

Accordingly, and as explained below, while plaintiffs contend they need relief on behalf of a provisional class because of a rapidly approaching June 24 or 25, 2021 deadline, the fact of the matter is that the claim submission deadlines are quite different depending upon how a person receives notice that administrative forfeiture proceedings have been commenced against particular assets.

**C.   Procedural Posture Of This Case.**

The government respectfully submits that moving plaintiffs have filed an application that should be rejected as entirely improper.  On May 27, 2021, plaintiffs filed a class action complaint (docket no. 1) and a motion for a preliminary injunction on behalf of a proposed subclass of USPV customers who "have not been notified" that their safe deposit boxes are the subject of ongoing administrative or judicial forfeiture proceedings (docket no. 10).[3] The government's opposition to that motion is due June 21, 2021.  On June 9, plaintiffs filed a First Amended Complaint (docket no. 33), but claim in a footnote that their motion for a preliminary injunction is *not* moot.  And now moving plaintiffs demand emergency relief on behalf of a *different* proposed subclass of USPV customers who have been notified that their safe deposit boxes are the subject

---

[3] The Court entered an order striking that motion for a preliminary injunction (docket no. 25), and plaintiffs refiled the motion on June 3, 2021 (docket no. 26).

5

of forfeiture proceedings.  The Court should reject these piecemeal filings, especially where plaintiffs seek emergency relief on behalf of various proposed subclasses without any rigorous class certification analysis.

## III. THE STANDARDS FOR ISSUING TEMPORARY RESTRAINING ORDERS AND PRELIMINARY INJUNCTIONS.

The standard for issuing a temporary restraining order ("TRO") is substantially identical to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Preliminary injunctive relief is "an extraordinary remedy," *Sociedad Anonima Vina Santa Rita v. U.S. Dep't of the Treasury*, 193 F. Supp. 2d 6, 13 (D.D.C. 2001), that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citations omitted).  A plaintiff "must establish that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

## IV. MOVING PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS.

In order to understand why moving plaintiffs' arguments and cases they cite do not support their position, it is necessary for the government to first spend a significant amount of time below to explain in detail the background and statutes and regulations governing seizing agency (such as the FBI here) administrative forfeiture proceedings.

6

A.   **Seizing Agency Administrative Forfeiture Proceedings Are** *In Rem* **Proceedings That Were Commenced In This Matter By The FBI's May 20, 2021 Personal Notice Letter To USPV As To The Property (Including The Property Moving Plaintiffs Assert Is Their Property) Identified In The FBI's Letter.**

Case law and the applicable statute make clear that *civil* asset forfeiture proceedings are *in rem* and not *in personam* proceedings. *See United States v. One-Sixth Share*, 326 F.3d 36, 40 (1st Cir. 2003) ("[b]ecause civil forfeiture is an in rem proceeding, the property subject to forfeiture is the defendant"); *United States v. All Funds in Account Nos. 747.034/278 (Banco Espanol de Credito)*, 295 F.3d 23, 25 (D.C. Cir. 2002) ("[c]ivil forfeiture actions are brought against property, not people")[4]

Similarly, 18 U.S.C. § 983 titled "General rules for civil forfeiture proceedings" governs both administrative (which are always civil proceedings) and civil judicial forfeiture proceedings, and contains particular subsections that apply to administrative as opposed to judicial proceedings.  18 U.S.C. § 983 refers to administrative forfeiture proceedings as "nonjudicial" civil forfeiture proceedings[5] and provides that those proceedings are

---

[4] *See also United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 n. 12 (11th Cir. 1987) ("[a]ppellants claim appears to be grounded on a misunderstanding of the essential nature of a forfeiture action.  A forfeiture proceeding is not an action against the claimant but rather is an *in rem* action against the seized property brought under the fiction that the property itself is guilty of facilitating the crime") (citation omitted).

[5] *See also* 28 C.F.R. § 8.2, titled "Definitions" ("Administrative forfeiture means the process by which property may be forfeited by a seizing agency rather than through a judicial proceeding.  Administrative forfeiture has the same meaning as nonjudicial forfeiture, as that term is used in 18 U.S.C. 983").

commenced by the seizing agency "send[ing] written notice to interested parties in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure."  18 U.S.C. § 983(a)(1)(A)(i).[6]

As to *in rem* administrative forfeiture proceedings' commencement, "[a]n administrative forfeiture proceeding begins when notice is first published in accordance with § 8.9(a), or the first personal written notice is sent in accordance with § 8.9(b), whichever occurs first."  28 C.F.R. § 8.8.  In addition, a seizing agency like the FBI provides notice of the commencement of asset forfeiture proceedings as to property by (1) publication via the internet by "[p]osting a notice on an official government forfeiture [web]site for at least 30 consecutive days" [*see* 28 C.F.R. § 8.9(a)(ii)]; and (2) sending a personal written notice (just like set forth in 18 U.S.C. § 983(a)(1)(A)(i) discussed above) to "each interested party" in the asset [*see* 28 C.F.R. § 8.9(b)(1)].  28 C.F.R. § 8.9.  Persons with an ownership interest in an asset or possessory interest in an asset and provide an explanation therefor (like USPV) are interested parties who the seizing agency notifies with a personal notice letter.  *See United States v. $100,348*, 354 F.3d 1110, 1119 (9th Cir. 2004) ("claimants who assert possessory interests in forfeited property and provide an explanation for their possession have Article III standing to contest the forfeiture").

---

[6] However, if the seizing agency does not learn of a person's identity as to or interest in an asset until after the seizure, the 60-day period to send the notice runs from the date the seizing agency learns of and determines the person's identity or interest. 18 U.S.C. § 983(a)(1)(A)(v).

Because the FBI did not commence notification on the internet as to any of the USPV property before June 4, 2021, which is after the FBI sent its personal notice letter to USPV on May 20, 2021 (Murray Decl. ¶ 3), the *in rem* administrative forfeiture proceedings commenced as to the assets covered by the USPV notice (which included moving plaintiffs' claimed assets) on May 20, 2021.

Finally, the regulations provide the contents of the notice letter and internet publication must, among other things "[s]tate the date, statutory basis, and place of seizure" [*see* 28 C.F.R. § 8.9(a)(2)(ii) and (b)(2)(iii)], which means the FBI's notices (as they do) must set forth the seizure date (March 22, 2021), the place of seizure (USPV in Beverly Hills) and the statutory basis for the forfeiture (18 U.S.C. § 981(a)(1)(C), which is the statute that provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from the proceeds traceable to a violation of [the listed crimes], or constitutes a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7)(A) (which statute refers to 18 U.S.C. § 1961(1) that contains a list of additional crimes).

As explained below, the government must discuss the context of these and additional regulations set forth below, in order to show how the FBI's notice does not run afoul of the Due Process Clause for lack of specificity, as moving plaintiffs argue because, among other things, persons who submit a claim contesting forfeiture to the FBI have the right to have their objections to forfeiture heard by a Court within a reasonable time after their claim is submitted.

**B.     The Additional Laws Concerning Administrative Forfeiture Proceedings Show Why Plaintiffs' Arguments Are Incorrect.**

A seizing agency (here, the FBI) notifies interested parties in two different ways of the seizing agency's commencement of administrative forfeiture proceedings and the manner in which a person can contest the seizing agency's administrative forfeiture of property - - namely, by submitting to the seizing agency a claim to the property that is subject to the administrative forfeiture proceeding.  The two ways are (1) by sending a personal notice letter to those persons that the government can identify as having an interest in the property (*see* 18 U.S.C. § 983(a)(1)(A)(i) and 28 C.F.R. § 8.9(b)(1)); and (2) by publishing a notice at www.forfeiture.gov, which is a government internet website *(see* 28 C.F.R. § 8.9(a)(1)(ii), [the government can give notice by publishing a notice regarding the asset on an official government forfeiture website for at least 30 consecutive days]).  If a person receives a personal notice letter from the government, the deadline to submit a claim is set forth in that letter and "may be not earlier than 35 days after the date the letter is mailed."  18 U.S.C. § 983(a)(2)(B).

By contrast, if a person does not receive the personal notice letter the seizing agency has sent, or is receiving notice solely as a result of the internet publication (either because the person did not receive a personal notice letter the seizing agency sent or the seizing agency sent no notice letter at all to the person), the deadline to file a claim with the seizing agency is fixed by the internet notice and is "30 days after the date of the *final* publication of the notice of seizure."  28 C.F.R. § 8.10(a) (emphasis added); *see also* 18 U.S.C. § 983(a)(2)(B) (where personal notice letter is not received, "a claim may be filed not later than 30 days after the date of *final* publication of notice of seizure") (emphasis

added).  The internet publication notice claim deadline is also contained in 28 C.F.R. § 8.9(a), which provides that the notice the seizing agency publishes on the internet must set forth a claim filing deadline that is "at least 30 days after the date of *final publication of the notice of seizure."* (Emphasis added).  Because the deadline in the internet notice is 30 days after the final publication of the notice, and the internet notice must be published for at least 30 consecutive days, the deadline to file a claim based on the internet notice is typically long after the 35-days-after-mailing deadline for persons who receive a personal notice letter.

For example, because the FBI did not start internet publication on any of the USPV property until the FBI began publishing the first wave of USPV assets on the internet on June 4, 2021, the 30-consecutive day internet publication does not end until about July 4, 2021, which is the "final" publication date referenced in 18 U.S.C. § 983(a)(2)(B), 28 C.F.R. § 8.10(a) and 28 C.F.R. § 8.9(a), discussed above.  Accordingly, the claim deadline is August 3, 2021, which is 30 days after the final July 4, 2021 publication date.  See also Rodgers Decl. Ex. B (containing a downloaded internet publication from June 16, 2021, reflecting a later claim submission deadline).

If no valid claims are submitted to the seizing agency by the deadlines, then "the appropriate official of the seizing agency shall declare the property [administratively] forfeited."  28 C.F.R. § 8.12.  "The declaration of forfeiture shall have the same force and effect as a final decree and order of forfeiture in a federal judicial forfeiture proceeding."  *Id.; see also* 19 U.S.C. § 1609(b) (same).  In addition, if a seizing agency determines that an otherwise timely claim does not meet the requirements for a claim set

11

forth in 28 C.F.R. § 8.10(b), "the seizing agency may notify the claimant of this determination and allow the claimant a reasonable time to cure the defect(s) in the claim." 28 C.F.R. § 8.10(g).

Finally, should a person submit a claim for the asset to the seizing agency (and the seizing agency provides a pre-printed form on the government website that persons can use to submit the claim [Rodgers Decl. ¶ 2 and Ex. A) that complies with 21 C.F.R. § 8.10(a) and (b), then the seizing agency must "return the property . . . or suspend the administrative forfeiture proceeding" as to the property and refer the matter to the United States Attorney's Office (the "USAO"). 21 C.F.R. § 8.10(e). The USAO then must commence, not later than 90 days after the claim was received by the seizing agency, a judicial *in rem* civil forfeiture action by filing a civil forfeiture complaint naming the asset as the defendant. 18 U.S.C. § 983(a)(3)(A). If the USAO does not file the complaint within the 90 day deadline, "the Government shall promptly release the property." 18 U.S.C. § 983(a)(3)(B).

In short, once the seizing agency receives a valid claim, the agency cannot forfeit the asset administratively by a declaration of forfeiture (and in any event the declaration of forfeiture is not issued until *all* claim deadlines have passed without a valid claim having been filed). But more significantly, a judicial civil forfeiture action must be filed once the valid claim is submitted to the FBI, meaning that the Court--and not the seizing agency--decides whether the government is entitled to forfeit the property.

**C.   In Light Of The Specific Civil Asset Forfeiture Laws, Plaintiffs' Cases Involving Different Laws Are Inapposite.**

Based on the background regarding the statutes and regulations

1   concerning administrative asset forfeiture proceedings, moving

2   plaintiffs' cases do not support their argument that the government

3   must provide persons subject to pending asset forfeiture proceedings

4   with a second notice explaining the government's reasons for

5   retaining their property.  Plaintiffs cite *Gete v. INS*, 121 F.3d

6   1285, 1297 (9th Cir. 1997) for the proposition that due process

7   requires that any government notice must contain the specific factual

8   and legal basis for the deprivation of rights (*see* moving papers at

9   15:15-19), yet *Gete* involved a far different administrative

10   forfeiture procedure and regulations.

11      In *Gete*, a split decision with Judge Rheinhardt writing for the

12   majority decision, the Immigration and Naturalization Service (the

13   "INS") seized vehicles because they had allegedly been used to

14   transport unauthorized aliens into the United States in violation of

15   federal law and, in order to contest the forfeiture of the vehicles

16   on that ground, a person had to elect to have their case adjudicated

17   in a judicial proceeding or in an INS administrative forfeiture

18   proceeding.  If the person chose the INS administrative forfeiture

19   proceeding, the person waived the person's right to a judicial

20   proceeding, the INS conducted administrative forfeiture *hearings*, the

21   INS made *final* forfeiture rulings at those hearings without informing

22   the persons claiming the vehicles of the specific facts and bases for

23   INS' rulings, and plaintiffs and the government both "agree[d] that

24   because the [Immigration and Nationability Act] does not provide for

25   review of INS [administrative] forfeiture decisions, the merits of

26   those decisions generally fall within the agency's sphere of

27   *unreviewable* discretion" by a Court. *Id.* at 1291 (citations omitted

28   and emphasis added).

1    That is not the situation here: there are no administrative

2    forfeiture *hearings* once a person submits a claim to the seizing

3    agency to contest the administrative forfeiture of the property;

4    instead, a claimant's submission of a claim to the seizing agency

5    stops the administrative forfeiture proceedings and requires the USAO

6    to file an *in rem* civil judicial forfeiture action where the

7    government must prove by a preponderance of the evidence [*see* 18

8    U.S.C. § 983(c)(1)] before a Court that the property is subject to

9    forfeiture, in order to forfeit the property.  Due process requires

10   only that notice be "reasonably calculated, under all the

11   circumstances, to apprise interested parties of the pendency of the

12   action and afford them an opportunity to present their objections."

13   *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)

14   (citations omitted).  The purpose of the notice in the *Gete* case was

15   to inform the recipient of the factual and legal basis for the INS'

16   claims so that the notice recipient could be apprised how to defend

17   against forfeiture in the administrative proceeding.

18   By contrast, the purpose of the FBI notice in instant case is

19   merely to explain how a person can force the government to file a

20   judicial action (and in that action the facts and bases for

21   forfeiture will be explained). Accordingly, the FBI forfeiture notice

22   explains clearly that, in order to contest the FBI's administrative

23   forfeiture of an asset, a person must submit a claim, which thereby

24   "afford[s] them an opportunity to present their objections" to

25   forfeiture in a judicial proceeding that must be filed no later than

26   90 days after the person's claim is received by the seizing agency.

27   The government respectfully submits that that is all that due process

28   requires.

1      Similarly unavailing are *Sandavol v. County of Sanoma*, 912 F.3d

2  509 (9th Cir. 2018), *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017)

3  and *Ordonez v. Stanley*, 495 F. Supp. 3d 855 (C.D. Cal. 2020, which

4  involve vehicle seizures but involve seizures based on State rather

5  than federal law violations.  Those cases involve a Cal. Veh. Code

6  statute that allowed state police to impound vehicles when the

7  vehicle operator's driver license had been suspended and required the

8  State to maintain custody of vehicles for a fixed thirty-day impound

9  period after seizure, even if a person after the initial seizure

10  provided the State with a valid driver license and proof that the

11  person owned the vehicle.  Accordingly, the courts indicated that,

12  where a person submitted dispositive and uncontested evidence of

13  their right to a vehicle, the State had to provide a more specific

14  notice to justify the State's continued retention of the vehicle,

15  separate from the State's initial justification to seize the vehicle.

16      Moving plaintiffs have not offered any dispositive and

17  uncontested proof showing the assets that are subject to the

18  administrative forfeiture were derived legally.  Moreover, unlike in

19  *Sandavol*, *Brewster* and *Ordonez*, the pertinent civil asset forfeiture

20  laws require the USAO to file a judicial complaint that details the

21  reasons for the forfeiture within 90 days after the seizing agency

22  receives the claim, and provides for a judicial determination on

23  forfeiture.  Plaintiffs remaining cases are inapposite because they

24  involve property retained far longer than the approximately three

25  month delay, between March 2, 2021 and the present, involved here.[7]

26

27      [7] *Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury*, 686 F.3d 965, 985 (9th Cir. 2012) ("AHIF-Oregon challenges

28  the alleged failure to provide adequate notice and a meaningful

**D.   Applicable Caselaw Confirms That The FBI's Administrative Notice Satisfies Due Process.**

Plaintiffs have the burden of proving they are likely to succeed on the merits.  But their cases are inapposite.  Multiple cases, however, show that the FBI's notice of commencement of administrative forfeiture proceedings is sufficient to satisfy due process.  For example, in *Brown v. District of Columbia*, 115 F. Supp. 3d 57 (D.D.C. 2015), the District of Columbia provided a notice of intent to administratively forfeit form that listed the seized property, the statute permitting forfeiture and the laws containing the forfeiture procedures.  In upholding the notice against a due process challenge, the court stated "[t]he notice apprises potential claimants that their property has been seized and is subject to forfeiture, and points them to the statues and regulations outlining the procedures for challenging the forfeiture.  No further notice is required to satisfy due process."  *Id.* at 9 (citation omitted).

Similarly, in *Juda v. Nerney*, 149 F.3d 1190, 1998 WL 317474 (10th Cir. 1998), the United States Customs Service sent administrative forfeiture notices regarding Jada's personal property (1998 WL 317474 at *2) but Jada claimed that the notice violated due process because it failed to "detail the illegal acts authorizing

---

opportunity to respond during the *four-year period* between the freezing of the assets in February 2004 and the redesignation determination in February 2008") (emphasis added); *KindHearts for Charitable Humanitarian Dev. Inc. v. Geithner*, 647 F. Supp. 2d 857 (N.D. Ohio 2009)(after freezing $1 million in KindHearts accounts (*id.* at 904), "KindHearts received no response to its administrative forfeiture for over one year [and] when [the government agency] finally responded, it merely stated it had received KindHearts' challenge" (*id.* at 906) and KindHearts complained about "*the three year delay* in providing the bulk of the materials" after the government agency froze the $1 million (*id.* at 900) (emphasis added).

16

forfeiture." *Id.* at *5.  The court rejected the argument, stating
"we agree with the magistrate judge's finding that Jada received
constitutionally adequate notice." *Id.*

The same result was reached in *Mohammad v. U.S.*, 169 Fed. Appx.
475 (7th Cir. 2006) where, somewhat similar to the arguments raised
here, plaintiff contended that there was a due process violation
because the seized assets were not subject to forfeiture because they
were legitimately derived and the forfeiture notice sent by the
seizing agency (there, the DEA) was confusing and non-specific.  As
to these arguments, the court stated "[c]hallenges to the legality of
a proposed civil forfeiture are made in the district court *after*
filing a claim . . . with the DEA.  The very point of submitting a
claim to the agency is to compel the government to proceed with a
judicial forfeiture action in lieu of the administrative route, and
to prevail in District court the government must prove by a
preponderance of the evidence that the assets are subject to
forfeiture.  *Id.* at 5 (emphasis in original and citation omitted).

Other cases reach the same result.  In *U.S. v. Pickett*, 2012 WL
694712 (E.D.N.Y. Mar. 1, 2012), the court "conclude[d] that the
notice provided [by the seizing agency] was legally adequate [and]
communicated all the necessary information."  The court noted that
the notice, like the FBI's notice, advised Pickett how he could
contest the seizure by submitting a claim, the deadline for
submitting the claim and the specific statute authorizing the
forfeiture (and not the crime).  The court concluded that "Pickett's
notice-based claim is therefore without merit." *Id.* at *2.

Again, due process requires only that notice be "reasonably
calculated, under all the circumstances, to apprise interested

17

parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. 306, 314 (1950) (citations omitted).  The FBI's notice advises a claimant of the identity of the asset, how to file a claim, provides a link to download a claim form, and advises that if a claim is submitted, a judicial forfeiture action must be filed within 90 days for the government to forfeit their property.  A claimant can raise any objections to forfeiture in the judicial proceeding and, if the USAO fails to file a judicial forfeiture complaint within 90 days, the property must be returned.  The government respectfully submits that the notice therefore comports with due process and plaintiffs' request for a TRO should be denied.

**V.  MOVING PLAINTIFFS FAIL TO MEET THEIR BURDEN FOR PROVISIONAL CLASS CERTIFICATION.**

Moving plaintiffs' request for broad injunctive relief also fails because they cannot meet their burden for provisional class certification.

*First*, moving plaintiffs argue that provisional class certification is not necessary for the relief sought.  Moving papers at 19.  Moving plaintiffs are wrong.  "[I]n the absence of class certification, [a] preliminary injunction may properly cover only the named plaintiffs." *Ramos v. Wolf*, 975 F.3d 872, 906 (9th Cir. 2020) (Nelson, J., concurring) (citing *Nat'l Ctr. for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984)).  Here, no class or subclass has been provisionally certified.  So putative class members can only benefit from injunctive relief incidentally, not by design. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996).  Yet moving plaintiffs improperly ask this Court to issue

an injunction that is designed to "forc[e] the government to state the specific factual and legal basis" for each USPV customer in order to continue forfeiture proceedings.  Moving papers at. 20-21.  The requested injunction is not tailored to the named or moving plaintiffs' property or forfeiture.  Instead, moving plaintiffs request a broad emergency order finding that all of the government's notices were improper--regardless of the form of the notice, the stage of the administrative proceedings, or the property at issue for each USPV customer.  This is not necessary to give the named plaintiffs the relief they seek.

*Second*, moving plaintiffs cannot meet their burden for provisional class certification.  "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  Here, individualized inquiries predominate and preclude moving plaintiffs from satisfying the commonality requirement.  The forfeiture proceedings moving plaintiffs seek to enjoin involve property specific to each claimant and different procedures depending on when and how notice was received.  For example, the June 24 and 25, 2021 deadlines in the moving plaintiffs' notice letters do not apply to all persons who desire to submit a claim to contest forfeiture.  And contrary to moving plaintiffs' assertion, the notifications sent to USPV customers were not the same for all putative members of the subclass; some USPV customers received notice via the government's internet forfeiture website, depending on when forfeiture proceedings commenced.  Moreover, the moving plaintiffs are neither typical nor adequate because three of

1   them received notices (while the fourth did not), which is unlike

2   members of the putative subclass who received notice via the

3   government website.  The requested emergency order is not appropriate

4   for provisional class-wide relief.

5   **VI.   MOVING PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM.**

6        Plaintiffs' claim that they are irreparably harmed by the

7   "deprivation of constitutional rights" mischaracterizes the case they

8   cite.  The plaintiffs in *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir.

9   2012), were Latino individuals in a county where the sheriff had

10  adopted a policy of racial profiling.  *Id.* at 994.  They were thus

11  subject to repeated and ongoing violations of their constitutional

12  rights.  This case involves nothing of the sort.

13       Under well-established principles of equity, a plaintiff seeking

14  injunctive relief must show irreparable injury, for which "remedies

15  available at law, such as monetary damages, are inadequate to

16  compensate."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391

17  (2006); *see also Patriot Contract Servs. v. United States*, 388 F.

18  Supp. 2d 1010, 1026 (N.D. Cal. 2005) ("The usual rule is that mere

19  loss of money does not qualify as irreparable harm if the party can

20  be made whole through money damages when the claim is resolved on the

21  merits.")  Moving plaintiffs have made no such showing here.

22       For the reasons set forth above, the government respectfully

23  requests that moving plaintiffs' application be denied.

24  Dated: June 16, 2021        TRACY L. WILKISON
                                Acting United States Attorney
25

                                _____/s/_____
26                              ANDREW BROWN/VICTOR RODGERS/MAXWELL COLL
                                Assistant United States Attorneys
27

                                Attorneys for Defendants
28                              UNITED STATES OF AMERICA, et al.

**DECLARATION OF AUSA VICTOR A. RODGERS**

I, Victor A. Rodgers, declare as follows:

1.    I am one of the AUSAs representing defendants United States of America and Tracy L. Wilkison and Kristi Koons Johnson in their official capacity only (collectively, "the government") in this action.

2.    Attached hereto as Exhibit A is a claim form I downloaded from www.forfeiture.gov on June 16, 2021.

3.    Attached hereto as Exhibit B is a copy of the first three pages of a document I downloaded on June 16, 2021 from the website.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on June 16, 2021.

_____ /s/_____ _
AUSA VICTOR A. RODGERS

# EXHIBIT A



# CLAIM FORM

## YOU MUST COMPLETE <u>ALL</u> PARTS OF THIS FORM FOR THE ASSETS YOU ARE CLAIMING.

**Note**: There is no legal form or format required for filing a claim; this document is provided for your convenience. Please visit https://www.forfeiture.gov/FilingClaim.htm for more specific guidance on filing your claim with the appropriate seizing agency.

**Frivolous Claim Statement**: If a court finds that a claimant's assertion of an interest in property was frivolous, the court may impose a civil fine. Title 18 United States Code, Subsection 983(h). A false statement or claim may subject a person to criminal prosecution under Title 18 United States Code, Sections 1001 and 1621.

**Privacy Act Notice**: The Department of Justice is collecting this information for the purpose of processing your claim. Providing this information is voluntary; however, the information is necessary to process your application. Information collected is covered by Privacy Act System of Records Notice Department of Justice (DOJ), DOJ-002-DOJ Computer Systems Activity & Access Records, Federal Register (71 FR 29170). This information may be disclosed to contractors when necessary to accomplish an agency function, to law enforcement when there is a violation or potential violation of law, or in accordance with other published routine uses. For a complete list of routine uses, see the system of records notice listed above.

## SECTION I – CONTACT INFORMATION

| CLAIMANT INFORMATION | |
|---|---|
| **Claimant/Contact Name:** (Last, First) | |
| **Business/Institution Name:** (if applicable) | **Prisoner ID:** (if applicable) |
| **Address:** (Include Street, City, State, and Zip Code) | |
| **Social Security Number/Tax Identification Number:** (Enter N/A if you do not have one) | |
| **Please provide an explanation why you do not have a Social Security Number, if above is N/A:** | |
| **Phone:** (optional) | **Email:** (optional) |

| ATTORNEY INFORMATION (if applicable) | |
|---|---|
| **Attorney Name:** (Last, First) | |
| **Attorney Title:** | |
| **Firm Name:** (if applicable) | |
| **Attorney Address:** (Include Street, City, State, and Zip Code) | |
| **Are you an attorney filing this claim on behalf of your client?**   ☐ YES   ☐ NO | |
| **Attorney Phone:** (optional) | **Attorney Email:** (optional) |

*If any of this information changes, you are responsible for notifying the agency of the new information.*

## SECTION II – ASSET LIST

*List each asset ID and asset description that you are claiming.*

| # | Asset ID | Asset Description |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

## SECTION III – INTEREST IN PROPERTY

*Identify your interest in each of the assets you are claiming. If you are filing for multiple assets and the responses are not the same for each asset, please print out multiple copies of this page to submit with the claim. If you have documentation that supports your interest in the claimed assets (e.g., bill of sale, retail installment agreements, contracts, titles or mortgages), please include copies of the documents with the submission of the claim.*

| INTEREST IN PROPERTY INFORMATION | |
|---|---|
| Asset ID | Asset Description |
|  |  |
|  |  |

**In the space below, please explain why you have a valid, good faith, and legally recognizable interest in this asset:**

**In the space below, please list any documents you are including in support of your interest in the asset(s). If none are included, please explain why.**

## SECTION IV – RECOVERY OF LOSS

*Complete this section for assets you have recovered all or a portion of your losses either via an insurance claim and/or via some other source of recovery.  If you have more recovery of loss information than may fit on this page, print out multiple copies of this page to attach with the claim and indicate which assets apply to each page. If you have not received any recovery of your losses, then leave this section blank.*

| RECOVERY OF LOSS INFORMATION | |
|---|---|
| Asset ID | Asset Description |
| | |
| | |

| INSURANCE CLAIM INFORMATION (if applicable) | |
|---|---|
| Name of Insured: (Last, First) | |
| Policy Number: | Claim Number: |
| Name of Insurance Company: | Name of Insurance Agent: (Last, First) |
| Insurance Company Address: (Include Street, City, State, and Zip Code) | |
| Phone: (optional) | Email: (optional) |
| Have you received compensation from the insurance company?   ☐ YES      ☐ NO | Amount of Compensation: |

**If other sources of recovery exist (e.g., restitution, returns on investment or other settlements), please list and describe the details below.**

| OTHER SOURCE(S) OF RECOVERY (if applicable) | |
|---|---|
| Source of Recovery 1: | Amount of Recovery: |
| Source of Recovery 2: | Amount of Recovery: |

**In the space below, please list any documents you are including in support of your claim of recovery of loss.  If none are included, please explain why.**

## SECTION V – DECLARATION

*The following declaration must be completed by the claimant.*

I attest and declare under penalty of perjury that my claim is not frivolous and the information provided in support of my claim is true and correct to the best of my knowledge and belief.

_____
**Signature**

_____
**Printed Name**

_____
**Date**

If a court finds that a claimant's assertion of an interest in property was frivolous, the court may impose a civil fine. Title 18 United States Code, Subsection 983(h). A false statement or claim may subject a person to criminal prosecution under Title 18 United States Code, Sections 1001 and 1621.

EXHIBIT B

# FEDERAL BUREAU OF INVESTIGATION

## OFFICIAL NOTIFICATION
## POSTED ON
## JUNE 16, 2021

FBI OFFICIAL NOTIFICATION POSTED ON JUNE 16, 2021

## LEGAL NOTICE
## ATTENTION

The Federal Bureau of Investigation (FBI) gives notice that the property listed below was seized for federal forfeiture for violation of federal law.  Laws and procedures applicable to the forfeiture process can be found at 19 U.S.C. Sections 1602 - 1619, 18 U.S.C. Section 983, and 28 C.F.R. Parts 8 and 9.

**To File a Petition for Remission or Mitigation:**  The government may consider granting petitions for remission or mitigation, which pardons all or part of the property from the forfeiture.  You may file both a claim and a Petition for Remission or Mitigation (Petition).  If you file only a petition and no one else files a claim, your petition will be decided by the seizing agency and will not be heard in U.S. District Court.  The petition must include a description of your interest in the property supported by documentation, include any facts you believe justify the return of the property, and be **signed under oath**, subject to the penalty of perjury or meet the requirements of an unsworn statement under penalty of perjury.  *See* 28 U.S.C. Section 1746.  For the regulations pertaining to remission or mitigation of the forfeiture, see 28 C.F.R. Sections 9.1 – 9.9.  The criteria for remission of the forfeiture are found at 28 C.F.R. Section 9.5(a).  The criteria for mitigation of the forfeiture are found at 28 C.F.R. Section 9.5(b).  The petition need not be made in any particular form and may be filed online or in writing.  You should file a petition not later than **11:59 PM EST 30 days** after the date of final publication of this notice.  *See* 28 C.F.R. Section 9.3(a).  The https://www.forfeiture.gov/FilingPetition.htm website provides access to a standard petition form that may be mailed and the link to file a petition online.  If you cannot find the desired assets online, you must file your petition in writing.  This website also provides information on the agency filing address to use when mailing as well as answers to frequently asked questions (FAQs) about filing a petition.

**To File a Claim:**  You may contest the forfeiture of the property listed below in U.S. District Court by filing a claim not later than **11:59 PM EST 30 days** after the date of final publication of this notice of seizure, unless you received a written notice via personal letter in which case the deadline set forth in the letter shall apply.  A claim must describe the seized property, state your ownership or other interest in the property, and be **made under oath**, subject to penalty of perjury or meet the requirements of an unsworn statement under penalty of perjury.  *See* 18 U.S.C. Section 983(a)(2)(C) and 28 U.S.C. Section 1746.  A claim need not be made in any particular form and may be filed online or in writing.  *See* 18 U.S.C. Section 983(a)(2)(D).  Claims must be sent to the FBI pursuant to the instructions shown in this notice.  The https://www.forfeiture.gov/FilingClaim.htm website provides access to a standard claim form that may be mailed and the link to file a claim online.  If you cannot find the desired assets online, you must file your claim in writing.  This website also provides information on the agency filing address to use when mailing as well as answers to frequently asked questions (FAQs) about filing a claim.

**To Request Release of Property Based on Hardship:**  Upon the filing of a proper claim, a claimant may request release of the seized property during pendency of forfeiture proceedings due to hardship if the claimant is able to meet specific conditions.  *See* 18 U.S.C. Section 983(f).  The hardship request cannot be filed online and must be in writing.  The claimant must establish the following: claimant has a possessory interest in the property, claimant has sufficient ties to the community to assure that the property will be available at the time of trial, and the government's continued possession will cause a substantial hardship to the claimant.  A complete list of the hardship provisions can be reviewed at 18 U.S.C. Section 983(f) and 28 C.F.R. Section 8.15.  Some assets are not eligible for hardship release.

Submit all documents to the nearest FBI Field Office, Attention: Forfeiture Paralegal Specialist.  FBI locations and telephone numbers can be found at www.fbi.gov.  When submitting documentation, please reference the Asset ID Number.

**Legal notices regarding abandoned or unclaimed property in the custody of the FBI can be found at www.fbi.gov/legalnotices.**

## LAST DATE TO FILE:  08/10/2021

## DISTRICT OF ARIZONA
**21-FBI-004442:** $10,031.99 in funds from Bank Account No. U2822599 in the name of Vu Anh Nguyen at Interactive Brokers, Greenwich, CT, seized by the FBI on April 08, 2021 in Phoenix, AZ for forfeiture pursuant to 18 U.S.C. 981(a)(1)(C).
**21-FBI-004443:** $7.87 in funds from Bank Account No. U3764019 in the name of Vu Anh Nguyen at Interactive Brokers, Greenwich, CT, seized by the FBI on April 08, 2021 in Phoenix, AZ for forfeiture pursuant to 18 U.S.C. 981(a)(1)(C).
**21-FBI-004444:** $9,999.20 in funds from Bank Account No. U3739143 in the name of Vu Anh Nguyen at Interactive Brokers, Greenwich, CT, seized by the FBI on April 08, 2021 in Phoenix, AZ for forfeiture pursuant to 18 U.S.C. 981(a)(1)(C).

[The property listed above is NOT for sale.  The FBI does not sell forfeited property and the FBI does not have information on property for sale.]

FBI OFFICIAL NOTIFICATION POSTED ON JUNE 16, 2021

### LEGAL NOTICE
### ATTENTION

The Federal Bureau of Investigation (FBI) gives notice that the property listed below was seized for federal forfeiture for violation of federal law. Laws and procedures applicable to the forfeiture process can be found at 19 U.S.C. Sections 1602 - 1619, 18 U.S.C. Section 983, and 28 C.F.R. Parts 8 and 9.

**To File a Petition for Remission or Mitigation:** The government may consider granting petitions for remission or mitigation, which pardons all or part of the property from the forfeiture. You may file both a claim and a Petition for Remission or Mitigation (Petition). If you file only a petition and no one else files a claim, your petition will be decided by the seizing agency and will not be heard in U.S. District Court. The petition must include a description of your interest in the property supported by documentation, include any facts you believe justify the return of the property, and be **signed under oath**, subject to the penalty of perjury or meet the requirements of an unsworn statement under penalty of perjury. *See* 28 U.S.C. Section 1746. For the regulations pertaining to remission or mitigation of the forfeiture, see 28 C.F.R. Sections 9.1 – 9.9. The criteria for remission of the forfeiture are found at 28 C.F.R. Section 9.5(a). The criteria for mitigation of the forfeiture are found at 28 C.F.R. Section 9.5(b). The petition need not be made in any particular form and may be filed online or in writing. You should file a petition not later than **11:59 PM EST 30 days** after the date of final publication of this notice. *See* 28 C.F.R. Section 9.3(a). The https://www.forfeiture.gov/FilingPetition.htm website provides access to a standard petition form that may be mailed and the link to file a petition online. If you cannot find the desired assets online, you must file your petition in writing. This website also provides information on the agency filing address to use when mailing as well as answers to frequently asked questions (FAQs) about filing a petition.

**To File a Claim:** You may contest the forfeiture of the property listed below in U.S. District Court by filing a claim not later than **11:59 PM EST 30 days** after the date of final publication of this notice of seizure, unless you received a written notice via personal letter in which case the deadline set forth in the letter shall apply. A claim must describe the seized property, state your ownership or other interest in the property, and be **made under oath**, subject to penalty of perjury or meet the requirements of an unsworn statement under penalty of perjury. *See* 18 U.S.C. Section 983(a)(2)(C) and 28 U.S.C. Section 1746. A claim need not be made in any particular form and may be filed online or in writing. *See* 18 U.S.C. Section 983(a)(2)(D). Claims must be sent to the FBI pursuant to the instructions shown in this notice. The https://www.forfeiture.gov/FilingClaim.htm website provides access to a standard claim form that may be mailed and the link to file a claim online. If you cannot find the desired assets online, you must file your claim in writing. This website also provides information on the agency filing address to use when mailing as well as answers to frequently asked questions (FAQs) about filing a claim.

**To Request Release of Property Based on Hardship:** Upon the filing of a proper claim, a claimant may request release of the seized property during pendency of forfeiture proceedings due to hardship if the claimant is able to meet specific conditions. *See* 18 U.S.C. Section 983(f). The hardship request cannot be filed online and must be in writing. The claimant must establish the following: claimant has a possessory interest in the property, claimant has sufficient ties to the community to assure that the property will be available at the time of trial, and the government's continued possession will cause a substantial hardship to the claimant. A complete list of the hardship provisions can be reviewed at 18 U.S.C. Section 983(f) and 28 C.F.R. Section 8.15. Some assets are not eligible for hardship release.

Submit all documents to the nearest FBI Field Office, Attention: Forfeiture Paralegal Specialist. FBI locations and telephone numbers can be found at www.fbi.gov. When submitting documentation, please reference the Asset ID Number.

**Legal notices regarding abandoned or unclaimed property in the custody of the FBI can be found at www.fbi.gov/legalnotices.**

**LAST DATE TO FILE:  08/10/2021**

### CENTRAL DISTRICT OF CALIFORNIA

**21-FBI-003017:** $810,000.00 U.S. Currency from Box #5005, seized by the FBI on March 22, 2021 from U.S. Private Vaults and Eric Cha in Beverly Hills, CA for forfeiture pursuant to 18 U.S.C. 981(a)(1)(C).
**21-FBI-003018:** $45,500.00 U.S. Currency from Box #22, seized by the FBI on March 22, 2021 from U.S. Private Vaults and Tory Freeman in Beverly Hills, CA for forfeiture pursuant to 18 U.S.C. 981(a)(1)(C).
**21-FBI-003019:** $172,000.00 U.S. Currency from Box #117, seized by the FBI on March 22, 2021 from U.S. Private Vaults and Alexander Robert Decastrobasto in Beverly Hills, CA for forfeiture pursuant to 18 U.S.C. 981(a)(1)(C).
**21-FBI-003021:** $13,800.00 U.S. Currency from Box #1205, seized by the FBI on March 22, 2021 from U.S. Private Vaults and Miguel Quintero in Beverly Hills, CA for forfeiture pursuant to 18 U.S.C. 981(a)(1)(C).
**21-FBI-003022:** $50,650.00 U.S. Currency from Box #615, seized by the FBI on March 22, 2021 from U.S. Private Vaults and Jonathan David Mann in Beverly Hills, CA for forfeiture pursuant to 18 U.S.C. 981(a)(1)(C).
**21-FBI-003023:** $121,900.00 U.S. Currency from Box #218, seized by the FBI on March 22, 2021 from U.S. Private

**(Continued on next page)**

[The property listed above is NOT for sale. The FBI does not sell forfeited property and the FBI does not have information on property for sale.]

**DECLARATION OF SUPERVISORY SPECIAL AGENT JESSIE MURRAY**

I, Supervisory Special Agent Jessie Murray, declare as follows:

1.    I am a Supervisory Special Agent with the FBI.

2.    On May 20, 2021, the FBI initiated administrative forfeiture proceedings as to particular identified boxes' contents, including boxes containing currency, by sending a written notice to U.S. Private Vaults and other persons the FBI could identify as having a potential interest in particular boxes.  The notice advised of the FBI's commencement of the administrative forfeiture proceedings for specific boxes' contents and sets forth how interested persons can submit a petition for remission or claim thereto.

3.    On June 4, 2021, the FBI commenced posting a notice for the first wave of the assets seized during the USPV seizure on a government forfeiture internet website at www.forfeiture.gov.  The deadline for persons who do not receive a personal notice letter from the FBI but instead receive notice of the FBI's commencement of administrative forfeiture proceedings based on the notice published on the internet website, with respect to the June 4, 2021 posting, is August 3, 2021 - - about seven weeks from today.  In addition, the deadline will be later than August 3, 2021 relative to assets that are posted on the internet in subsequent waves.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Los Angeles, California, on June 16, 2021.

SSA JESSIE MURRAY