1  **THE INSTITUTE FOR JUSTICE**
   Robert Frommer*
2  rfrommer@ij.org
   901 N. Glebe Rd. Suite 900
3  Arlington, VA 22203
   Tel. (703) 682-9320
4
   Robert E. Johnson*
5  rjohnson@ij.org
   16781 Chagrin Blvd. Suite 256
6  Shaker Heights, OH 44120
   Tel. (703) 682-9320
7
   * *Admitted pro hac vice.*
8
   **THE VORA LAW FIRM, P.C.**
9  Nilay U. Vora (SBN 268339)
   nvora@voralaw.com
10 Jeffrey Atteberry (SBN 266728)
   jatteberry@voralaw.com
11 201 Santa Monica Blvd., Suite 300
   Santa Monica, CA 90401
12 Tel. (424) 258-5190

13 *Attorneys for Plaintiffs*

14              IN THE UNITED STATES DISTRICT COURT
15            FOR THE CENTRAL DISTRICT OF CALIFORNIA
                        WESTERN DIVISION
16
   | | |
   |---|---|
   | **PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF JENI VERDON-PEARSONS, MICHAEL STORC, TRAVIS MAY, AND JOSEPH RUIZ'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>Judge: Hon. R. Gary Klausner<br>Complaint Filed: May 27, 2021<br>Amended Complaint Filed: June 9, 2021 |

Defendants attempt to make the facts and law of this case appear complicated. They are not. *Gete* is black-letter law in the Ninth Circuit, directly binding upon this Court. *See Gete v. INS*, 121 F.3d 1285, 1297 (9th Cir. 1997); *see also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 987 (9th Cir. 2012) (applying *Gete*); *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 864 (C.D. Cal. 2020) (same). A review of *Gete* shows that the law and notices successfully challenged there are on all fours with the notices here. Other cases cited by Defendants, meanwhile, are far afield. And Defendants' claim that its deficient notices do not cause Plaintiffs irreparable harm ignores the most apposite case: *Gete*, where the district court issued a preliminary injunction barring government from forfeiting property under deficient notices just like these.

It is worth pausing to appreciate the audacity of the government's contrary position. In its view, it can take property using civil forfeiture ***without any obligation to identify the alleged criminal offense that it believes justifies the forfeiture***. If an owner makes a misstep responding to a forfeiture notice—either by filing a deficient claim or by filing a remission petition that the seizing agency denies—the government can take the property forever. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (where owner responded to notice by filing a remission petition that agency denied, that decision was unreviewable). And yet the government asserts it can take that dramatic step without even telling the owner what crime it believes occurred. In addition to being contrary to precedent, that view is irreconcilable with the very idea of due process.

Defendants' remaining procedural arguments are beside the point. Defendants argue that this Court cannot certify a provisional class, but, at a minimum, the Court can grant the requested TRO for the individual Plaintiffs here. More broadly, the Court can enter an injunction that applies to all USPV customers without first certifying a class. And even if a class were necessary, the notices received by Plaintiffs and the larger putative class all raise a common legal question—whether

2

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

those notices' failure to identify the specific factual and legal bases for forfeiture violate due process. This Court should decide that question not just for Plaintiffs, but the hundreds of people who must also decide how to respond.[1]

**I.     Plaintiffs are likely to prevail on the merits.**

    A.     <u>The notices do not say what crime supposedly justifies the forfeiture.</u>

The government's brief describes the "statutory basis" for its civil forfeiture proceedings as follows:

> [T]he FBI's notices (as they do) must set forth the . . . statutory basis for the forfeiture (18 U.S.C. § 981(a)(1)(C), which is the statute that provides for the forfeiture of "[a]ny property, real or personal which constitutes or is derived from the proceeds traceable to a violation of [*the listed crimes*], or constitutes a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7)(A), (which statute refers to 18 U.S.C. § 1961(1) that contains *a list of additional crimes*).

Opp. 9 (emphasis added, brackets in original). The government's reference to "[the listed crimes]" replaces *over thirty* different federal criminal provisions that are cross-referenced in Section 981(a)(1)(C). And then the government helpfully notes that Section 981(a)(1)(C) also incorporates by reference a "list of additional crimes" found at 18 U.S.C. § 1961(1)—the federal statute listing about sixty various offenses that can constitute "racketeering activity" under RICO. In other words, the government reassuringly asserts that property owners are accused of committing either one of thirty "listed crimes" or perhaps some of the other sixty "additional crimes." Which crimes exactly? Box holders are left to speculate.

---

[1] Defendants complain that Plaintiffs have filed an amended complaint and an application for a TRO only weeks after the initial filing of their Complaint and Motion for a Preliminary Injunction. *See* Opp. 5–6. However, Plaintiffs recast their Complaint and filed this TRO application in response to **Defendants'** unprecedented decision to seek to forfeit the contents of hundreds of boxes in this constitutionally deficient manner. Upon being contacted by class members who received these deficient forfeiture notices, Plaintiffs moved promptly to amend the pleadings and to bring this issue before the Court.

B. Under *Gete* and *Al Haramain*, the notices violate due process.

The government's notices are contrary to black letter Ninth Circuit law, as they do not "disclose the 'factual bases for seizure[ ]' and 'the specific statutory provision allegedly violated.'" *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 987 (9th Cir. 2012) (quoting *Gete*, 121 F.3d at 1298). As a matter of due process, property owners are entitled to know what law they are accused of violating before the government subjects them to civil forfeiture proceedings. But the government has not met that basic requirement.

The government dismisses the Ninth Circuit's decision in *Gete* as "a split decision with Judge Rheinhardt [sic] writing for the majority." Opp. 13. However, it is beyond debate that, in the Ninth Circuit, a district court must follow the binding precedent of its appellate court. *See, e.g.*, *In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996). There is no exception for opinions written by Judge Reinhardt.[2] And even if *Gete* could somehow be disregarded because of the identity of its author—and, again, it cannot—the same cannot be said for the Ninth Circuit's unanimous panel decision in *Al Haramain*. The Ninth Circuit there applied *Gete* to hold that OFAC violated due process by freezing funds without providing notice of the basis for the seizure. And while the government filed an *en banc* petition in *Al Haramain*, that petition was denied without any judge calling for a vote. 686 F.3d at 970. *Al Haramain* leaves no doubt that *Gete* is good law.[3]

---

[2] As for *Gete* being a "split decision," the dissent in *Gete* argued that the Court lacked jurisdiction because the property had already been administratively forfeited by the government. *See* 121 F.3d at 1300 (Reavley, J., dissenting). That is precisely the concern that Plaintiffs are attempting to avoid by seeking a TRO.

[3] The First Circuit has also cited *Gete* with approval. *See Rodriguez v. Drug Enf't Admin.*, 219 F. App'x 22, 23 (1st Cir. 2007). And district court cases likewise cite and apply *Gete* as good law. *See, e.g.*, *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 864 (C.D. Cal. 2020) (finding notice inadequate under *Gete*); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 905 (N.D. Ohio 2009) (same).

4

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

The government also argues that *Gete* is somehow inapposite because it arose in a different context. But once again *Al Haramain* answers the government's objection. There, too, the government argued that the "decision in *Gete* arose in a different context," but the Ninth Circuit found that the government could not "explain why the different context matters." 686 F.3d at 987. And in any event, the government identifies no meaningful difference between the context in *Gete* and the context here. Defendants note that, in *Gete*, "a person had to elect to have their case adjudicated in a judicial proceeding or in an INS administrative forfeiture proceeding" and that, if the person chose an administrative proceeding, the agency would then make "*final* forfeiture rulings at those hearings." Opp. 13. But those are the precise contours of the forfeiture scheme that Plaintiffs and other USPV customers are being put to here. The FBI's notices tell owners they can contest the forfeiture in two ways. *See, e.g.*, Ex. G at 22–23. First, they may submit a petition for mitigation and remission with the FBI, which triggers administrative review by the agency. Although that review typically does not involve hearings, an agency official reviews the matter to determine if forfeiture would be unfair or inequitable. And like the administrative process in *Gete*, the FBI's decision would be final and unreviewable. *See Conservation Force*, 646 F.3d at 1242. Alternatively, property owners here, as in *Gete*, may file a claim to have their case adjudicated in a judicial proceeding. *See Gete*, 121 F.3d at 1290 n.8.[4]

Because the choice facing property owners is the same, the notices here and in *Gete* serve the same purpose: advising owners why their property is being taken, so they can decide how to respond. Given that, Defendants are simply wrong to

---

[4] The Notice also suggests a third option, which is to file *both* a claim and a remission petition. *See* Ex. G at 22. The Notice suggests, however, that in such case the matter is forwarded to the U.S. Attorney's office for resolution, whereas "[i]f you file only a petition and no one else files a claim, your petition will be decided by the seizing agency." *Id.* In any event, whether there are two possible routes or three, property owners are entitled to notice of the government's asserted factual and legal basis for the forfeiture before deciding what route to take.

5

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

claim that "the purpose of the FBI notice in instant case is merely to explain how a person can force the government to file a judicial action (and in that action the facts and bases for forfeiture will be explained)." Opp. 14. If that were true, the notices would immediately tell owners how to file a judicial claim and would not refer to any administrative process. Instead, they *first* instruct property owners how to file an administrative remission petition. *See*, *e.g.*, Ex. G at 22; Ex. H at 42; Ex. I at 47; Ex. J at 51. Only after that process is fully described do they explain (on the next page) how owners may file a claim to trigger judicial proceedings.

The plain text of the notices undercuts Defendants' position. Just as in *Gete*, the notices force owners to choose whether to walk away from their property or to contest the forfeiture through either administrative or judicial pathways. When that is the choice to be made, owners must be told what the government thinks they or their property did wrong, so that they may decide which path to take.[5]

C.  <u>The government's out-of-circuit cases are inapposite.</u>

The various out-of-circuit decisions the government cites, meanwhile, are far afield. ***None*** hold that the government may subject a property owner to civil forfeiture proceedings without first identifying the alleged criminal offense that supposedly justifies forfeiture.

In *Brown v. District of Columbia*, 115 F. Supp. 3d 57, 69–70 (D.D.C. 2015), the forfeiture notice at issue specifically listed "the statute permitting forfeiture." In fact, the government's notice form listed seven specific criminal offenses, and the government was required to check a box next to the specific criminal offense underlying its "determination that probable cause exists." *Brown*, No. 13-cv-569, Doc. 17-2 (D.D.C. Oct. 28, 2013). The district court rejected the argument that the

---

[5] Plaintiffs Travis May and Joseph Ruiz have not yet made that choice and urgently require notice before they are forced to make it. While Jeni Verdon-Pearsons and Michael Storc have filed claims, the government has not determined whether those claims are valid and continues to hold their property under threat of forfeiture—and they have a due process right to know the basis for that ongoing seizure. *See Al Haramain*, 986 F.3d at 987.

notice had to provide "additional information," 115 F. Supp. 3d at 69–70, but the district court did not suggest the government could commence forfeiture proceedings without identifying the offense that supposedly justified forfeiture. Similarly, the Tenth Circuit's unpublished decision in *Juda v. Nerney*, 149 F.3d 1190, 1998 WL 317474 (10th Cir. 1998), rejected a convicted drug smuggler's "suggestion" that the forfeiture notice should have provided "a ***particularized*** narrative of allegedly illegal acts." *Id.* at *5 (emphasis added). These decisions hold that a forfeiture notice need not provide exhaustive factual detail, but they do not excuse the government from at least informing property owners what crime supposedly justifies forfeiture.

Other cases are even farther afield. In *Mohammad v. United States*, 169 F. App'x 475 (7th Cir. 2006), also unpublished, the plaintiff only argued inadequate notice of how to challenge the forfeiture; notice regarding the asserted basis for the forfeiture was not raised. And in *United States v. Pickett*, No. 07-CR-117, 2012 WL 694712 (E.D.N.Y. Mar. 1, 2012), a convicted criminal challenged a forfeiture because the notice did not adequately detail forfeiture procedures. These cases have nothing to do with the issue now before this Court.

## II. Plaintiffs will be irreparably harmed absent an injunction.

Defendants also tersely claim that this Court should deny relief because Plaintiffs cannot demonstrate irreparable harm. However, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). While Defendants attempt to distinguish *Melendres* as a case about racial discrimination, that black letter principle has been applied in a broad range of cases involving all manner of constitutional rights. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (explaining that "it follows inexorably from our conclusion that the government's current policies are likely unconstitutional . . . that Plaintiffs have also carried their burden as to irreparable harm").

Moreover, Defendants fail to wrestle with the most apposite case: *Gete* itself. As Plaintiffs mentioned in the initial brief, the Ninth Circuit in *Gete* remanded the case to the district court. There, the *Gete* plaintiffs moved for a preliminary injunction requiring the government to provide the specific factual and legal bases it believed justified forfeiture. The district court agreed, holding that the notices were likely unconstitutional and that, as a result, plaintiffs would suffer irreparable harm absent an injunction. It therefore granted the plaintiffs' motion and required the government to "provide notice to the owner of the [seized] vehicle, including (i) a statement of the provisions of law alleged to have been violated and (ii) a description of the specific acts or omissions forming the basis of the alleged violations (including any facts of probable cause to believe that the driver or operator knew or acted in reckless disregard of such violation)." *Gete*, 1999 U.S. Dist. LEXIS 11806, *20–21 (W.D. Wash. July 22, 1999). That is the type of relief that Plaintiffs seek here on behalf of themselves and other USPV customers.

Defendants also claim that irreparable harm cannot exist here because of the potential for monetary damages down the road. This ignores the constitutional injury that Defendants' notices create and the irreparable harm that flows from such injuries. But even if Plaintiffs' only injury were monetary, Defendants' claim misses the mark because the federal government has sovereign immunity. *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), *vacated and remanded sub nom. Douglas v. Indep. Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012) (holding that monetary loss can constitute irreparable harm where any damages remedy would be barred by sovereign immunity). And while the Federal Tort Claims Act creates a cause of action to seek damages in some circumstances, it generally excepts claims arising from the seizure and forfeiture of property.[6] In

---

[6] *See* 28 U.S.C. § 2680(c) (excepting from the FTCA "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer").

8

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

other words, aggrieved owners of seized property generally cannot sue the government for damages incurred.

### III. This Court can enjoin Defendants' actions without certifying a class and, even if class certification was necessary, it is appropriate here.

#### A.  This Court need not certify a class to grant relief.

This Court need not certify a provisional class to offer relief. At a minimum, it can enter a TRO to benefit the specific named Plaintiffs in this case. But more broadly, the Court can enjoin the government from forfeiting property from any USPV box holder based on this inadequate forfeiture notice.

Defendants make no attempt to distinguish or otherwise show why the Ninth Circuit's affirmance of a statewide injunction in *Clement v. Dep't of Corr.*, 364 F.3d 1148, 1152 (9th Cir. 2004), does not authorize this Court to issue an injunction that would apply both to Plaintiffs and to other USPV customers. After all, the Ninth Circuit approved the injunction approving the distribution of mail containing material downloaded from the Internet as to all state prisons given that all the prisons had materially identical policies. Noting that "[t]he scope of injunctive relief is dictated by the extent of the violation established," *Lewis v. Casey*, 518 U.S. 343, 359–60 (1996) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)), the Ninth Circuit held that the systematic constitutional violation warranted systematic relief because "it would be inefficient and unnecessary for prisoners in each California state prison to separately challenge the same [prison] policy." 364 F.3d at 1153.

Here, the same systematic constitutional violation affects Plaintiffs and hundreds of USPV customers. The government is seeking to forfeit *all* this property without identifying the criminal offense that supposedly justifies the forfeiture. Given that, requiring all those customers to apply for and obtain similar injunctive relief would devour judicial resources and raise the grave risk that customers may

be permanently deprived of their property, not because they did anything wrong, but because they didn't ask for this Court's help in time.

### B. If necessary, the Court can certify a provisional class.

Even if this Court needed to certify a provisional class to issue equitable relief both to Plaintiffs and other USPV customers, the prerequisites to do so are met here. Defendants' argument against provisional certification focuses on commonality and typicality by pointing out illusory factual differences between Plaintiffs and other USPV customers. Defendants, for instance, state that while some notices have a due date of June 24, others have a later due date. They also point out that some USPV customers learned of the forfeiture notice against their property via the Internet, while others received notices in the mail.

But that is all completely irrelevant: The key legal issue underlying this TRO application is not about *when* someone must respond by or how they *received* the notice, but what that notice said or failed to say. The common constitutional problem is that no matter how USPV customers learned of the pending forfeiture of their property, or when they must respond by, Defendants' notices all fail to articulate the specific factual and legal bases underlying any forfeiture.[7] That common legal failure means that both Plaintiffs and other USPV customers who have been targeted for forfeiture do not have the information they need to decide *how* to respond. Because the notices all contain the same deficient language, there is a common legal question across the putative class, and Plaintiffs' due process claims differ in no way from those of the broader putative class.

---

[7] The forfeiture.gov notices that the government mentions provide no additional detail concerning the factual or legal basis for the forfeitures. Like the individual notices, they cite Section 981(a)(1)(C), which, in turn, authorizes forfeiture based on a broad and diverse swath of federal criminal laws. *See* Opp. Ex. B at 3 (Doc. 45 at 36).

10

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

Dated: June 17, 2021

Respectfully Submitted,

/s/ Robert Frommer

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd.. Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

11

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

## PROOF OF SERVICE

I am admitted *pro hac vice* for purposes of this action. I am over the age of 18 and not a party to this action. My business address is 901 N. Glebe Rd., Suite 900, Arlington, VA 22203. My electronic service address is rfrommer@ij.org. On the execution date below and in the manner stated herein, I caused service of a true and correct copy of **PLAINTIFFS' REPLY IN SUPPORT OF JENI VERDON-PEARSONS, MICHAEL STORC, TRAVIS MAY, AND JOSEPH RUIZ'S *EX PARTE* APPLICATION FOR TEMPORARY RESTAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** on all interested parties in this action as follows:

[ ]   BY MAIL. By depositing in a sealed envelope in the United States mail with postage thereon fully prepaid to the following address:

[ X ]   BY E-MAIL. By electronic mail transmission to the offices of the following addressee(s):

**andrew.brown@usdoj.gov**

**usacac.civil-tronotice@usdoj.gov**

**Maxwell.Coll@usdoj.gov**

**Victor.Rodgers@usdoj.gov**

Mr. Brown was also served via the Court's ECF/CM e-filing system.

[ X ]   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 17, 2021, at Arlington, Virginia.

/s/ Robert Frommer

12

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION