TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
    1100/1400/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0102/2569/1785
    Facsimile: (213) 894-6269/0142/0141
    E-mail: Andrew.Brown@usdoj.gov
            Victor.Rodgers@usdoj.gov
            Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, AND TRAVIS MAY,<br><br>        Plaintiffs,<br><br>          v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br><br>        Defendants. | Case No. 2:21-CV-04405-RGK-MAR<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION FILED BY MOVING PLAINTIFFS PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ AND TYLER GOTHIER [26]; DECLARATIONS OF LYNNE ZELLHART AND VICTOR A. RODGERS**<br><br>Date:      July 12, 2021<br>Time:      9:00 a.m.<br>Courtroom: 850, the Honorable<br>              R. Gary Klausner |

1    The government hereby opposes the motion for preliminary

2 injunction and for provisional class certification filed by

3 plaintiffs and movants Paul Snitko, Jennifer Snitko, Joseph Ruiz, and

4 Tyler Gothier.

5  Dated: June 21, 2021              Respectfully submitted,

6                                   TRACY L. WILKISON
7                                   Acting United States Attorney

8                                   SCOTT M. GARRINGER
                                    Assistant United States Attorney
9                                   Chief, Criminal Division

10                                  _____
                                            /s/
                                    ANDREW BROWN/VICTOR RODGERS/MAXWELL
11                                  COLL
                                    Assistant United States Attorneys
12
                                    Attorneys for Defendants
13                                  UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

## TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................2

      A.   General Background The Government Has Previously
           Discussed................................................2

      B.   Pertinent Facts Relative To Plaintiffs' Current Motion....4

III.  THE STANDARDS FOR PRELIMINARY INJUNCTIONS.....................7

IV.   PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS............8

      A.   Property Not Subject To *In Rem* Forfeiture Proceedings And
           Earmarked For Return By The FBI..........................9

      B.   Property Subject To The Pending *In Rem* Administrative
           Forfeiture Proceedings That Is Not Being Returned.......10

V.    MOVING PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM.......16

VI.   MOVING PLAINTIFFS FAIL TO MEET THEIR BURDEN FOR PROVISIONAL
      CLASS CERTIFICATION..........................................17

VII.  CONCLUSION...................................................20

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

**CASES**

364 F.3d 1148, 1152 (9th Cir. 2004) ............................. 17

*Alliance for Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .................................. 8

*Comcast Corp. v. Behrend*,
  569 U.S. 27, 33 (2013) ........................................ 18

*Dahl v. HEM Pharms. Corp.*,
  7 F.3d 1399, 1403 (9th Cir. 1993) ............................. 8

*Doninger v. Pacific Northwest Bell, Inc.*,
  564 F.2d 1304, 1308-09 (9th Cir. 1977) ....................... 18

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
  92 F.3d 1486, 1501-02 (9th Cir. 1996) ........................ 17

*Garcia v. Google, Inc.*,
  786 F.3d 733, 740 (9th Cir. 2015) ............................. 8

*Gen. Tel. Co. v. Galcon*,
  457 U.S. 147, 161 (1982) ...................................... 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, 1019 (9th Cir. 1998) .......................... 19

*Karnoski v. Trump*,
  926 F.3d 1180, 1198 (9th Cir. 2019) ........................... 7

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873, 879 (9th Cir. 2009) ............................. 8

*Mazurek v. Armstrong*,
  520 U.S. 968, 972 (1997) ...................................... 7

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ................................. 16

*Nat'l Ctr. for Immigrants Rights, Inc. v. INS*,
  743 F.2d 1365, 1371 (9th Cir. 1984) .......................... 17

*Padilla v. Immigration & Custom Enf't*,
  2020 WL 1482393, *5 (9th Cir. 2020) .......................... 7

*Ramos v. Wolf*,
  975 F.3d 872, 906 (9th Cir. 2020) ............................ 17

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109, 1127 (9th Cir. 2009) ........................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 348, 350, 351 (2011) ................... 18, 19, 20

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7, 22 (2008) ........................................ 7

**RULES**

28 C.F.R. § 8.10 (b) ........................................ 12

28 C.F.R. § 8.10 (g) ........................................ 12

28 C.F.R. § 9.1(b)(1) ....................................... 14

28 C.F.R. § 9.1(b)(2) ....................................... 14

28 C.F.R. § 9.4(a) .......................................... 15

28 C.F.R. § 9.5(a)(1) ....................................... 15

28 C.F.R. § 9.8(f) .......................................... 15

28 C.F.R. § 9.8(g) .......................................... 15

Fed. R. Civ. P. 12 .......................................... 13

Fed. R. Civ. P. 23(a) .................................. 18, 19

Fed. R. Civ. P. 23(b) .................................. 18, 19

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Paul Snitko, Jennifer Snitko, Joseph Ruiz, and Tyler Gothier (collectively, "moving plaintiffs" or "plaintiffs") seek a mandatory injunction altering the status quo that would require the government to take affirmative action by sending a written notice to each boxholder at U.S. Private Vaults ("USPV") and putative class member explaining the factual and legal basis, separate and apart from the factual and legal basis for the initial seizure, for the government's retention of property stored in their USPV safe deposit boxes. The request ignores the facts and the law.

The FBI has attempted to contact every identified USPV boxholder, either to invite them to retrieve their belongings, or to inform them of administrative forfeiture proceedings. Indeed, the government has already returned property to the Snitkos, and has repeatedly attempted to return property to Gothier.

Remaining plaintiff Ruiz has acknowledged in footnotes in May 27 and June 3, 2021 briefs (docket nos. 11 and 26-1 at 8:25-28 n.2 and 18:26-28 n.3, respectively) that he knew on May 27 of pending forfeiture proceedings against his property due to the FBI's May 20 notice letter to USPV commencing those proceedings, which means that his property is not being returned because it is part of the forfeiture proceedings, and the FBI has sent notice letters to Ruiz that he claims he has not received.

So the request for an order mandating that the government "provide an explanation for why it is has not returned property to customers who have come forward" is moot. The government has already done so, or attempted to do so, for every identified boxholder.

Even if the motion for a preliminary injunction were not moot, which it is, plaintiffs are wrong on the law. Plaintiffs have not demonstrated they are likely to prevail on the merits on their claim that the government must notify them of the basis for its continued detention of their property. The government has followed applicable forfeiture procedures, including providing adequate notice to boxholders in the pending in rem (and not in personam as plaintiffs mistakenly believe) administrative forfeiture proceedings, and will pursue in rem (not in personam) judicial forfeiture actions, as required by the law. Moreover, plaintiffs cannot demonstrate irreparable harm--the Snitkos have received their property, the government has attempted repeatedly to contact Gothier to receive his property and a date for return is being scheduled, and Ruiz is aware that his cash is the subject of forfeiture proceedings. Critically, sensing this fatal flaw, plaintiffs improperly ask for a mandatory injunction on behalf of a subclass. But plaintiffs do not come close to meeting their burden for provisional class certification.

Accordingly, as more fully explained below, plaintiffs have not shown they are likely to succeed on the merits and will suffer irreparable harm if a preliminary injunction is not granted. The government respectfully requests that plaintiffs' motion be denied.

**II.  STATEMENT OF FACTS**

**A.   General Background The Government Has Previously Discussed.**

USPV offers a unique service in California: the anonymous rental of safety deposit boxes. While banks and other private vault companies offer similar services at much lower prices, none permit their customers to remain anonymous. It is this anonymity that USPV advertises on its website to attract customers: "Complete Privacy;

1    Biometric Identification; No ID Required." www.usprivatevaults.com.

2    By providing and promoting total anonymity, USPV caters to and

3    attracts criminals, who seek to keep their identities and the source

4    of their cash beyond the reach of law enforcement and the IRS.

5         A grand jury indicted USPV for conspiring with its customers to

6    launder money, distribute drugs, and structure financial

7    transactions to avoid currency reporting requirements.  The

8    government obtained a criminal seizure warrant for "[t]he nests of

9    safety deposit boxes and keys" at USPV which provides that it "does

10   not authorize a criminal search or seizure of the contents of the

11   safety boxes[,]" that "agents shall follow their written inventory

12   policies to protect their agencies and the contents of the boxes"

13   and that "agents shall inspect the contents of the boxes in an

14   effort to identify their owners in order to notify them so that they

15   can claim their property[.]"  The inventory of the boxes' contents

16   revealed firearms, illegal drugs, and anonymous stores of wealth,

17   mostly cash.  *See* previously submitted Palmerton Decl.

18        Between March 22 and 26, 2021, federal agents executed the

19   seizure warrant and removed the nests of safe deposit boxes,

20   inventorying their contents in the process, as authorized in the

21   seizure warrant and discussed in the affidavit supporting it. Id. at

22   ¶ 2.  The inventory of the boxes' contents revealed firearms, illegal

23   drugs, and anonymous stores of wealth, mostly cash.  Id.  Drug

24   detecting dogs alerted to most, but not all of the cash stashes.  Id.

25        The government provided boxholders a procedure to request the

26   return of their property, which procedure does not involve the

27   forfeiture proceedings discussed below and is a voluntary additional

28   remedy the government is not required to provide when executing a

                                      3

warrant.  USPV, which has been closed since March 26, 2021, as of the closing had a sign affixed to the door that instructed boxholders to go to a FBI website which provides that, to make a request for a return of property stored at USPV, a boxholder should provide his contact information so that a FBI agent could contact the boxholder.

**B.    Pertinent Facts Relative To Plaintiffs' Current Motion.**

The FBI has completed its initial determination of which boxes (meaning the contents thereof) will be returned and which boxes (meaning the contents thereof) will not be returned because they are the subject of asset forfeiture proceedings.  Zellhart Decl. ¶ 15. The FBI attempted to contact 100% of the identified boxholders at USPV, either to arrange for the return of the contents for those boxes that it does not seek to forfeit, or to inform them that the FBI seeks to forfeit the property in their box.  The FBI has not been able to reach 100% of the boxholders despite its efforts.  Id.  But the FBI has been able to contact the plaintiffs, except for Ruiz who claims he has not received letters sent to him (id. ¶¶ 16–18) but in any event has acknowledged (as reflected in the Introduction section above) he is aware of forfeiture proceedings as to his property.

The FBI made multiple attempts in May to schedule the return of the Snitkos' box, and they collected their belongings in June.  Id. ¶ 16.  In late May and early June, the FBI made several attempts to contact Gothier to schedule the return, but the FBI was not able to reach him at the phone number he provided.  Id. ¶ 17.  In June the FBI sent a certified letter inviting Gothier to make an appointment to receive his property, his attorney contacted the FBI on June 15, 2021 and an appointment is being scheduled.  Id.  The FBI mailed a notice of forfeiture letter to Ruiz on May 21, 2021, to the address

4

*he* provided to the FBI's online portal and a second notice letter to
the same address to Christine Ramirez as Executor/Conservator because
Ruiz's USPV paperwork identified that address and her as the
Executor/Conservator. <u>Id</u>. ¶ 18. While the letter to Ruiz is being
returned as undeliverable, the letter to Ramirez was received as
shown by the certified return receipt having been signed. <u>Id</u>.

Furthermore, plaintiffs' filings show, as set forth in the
Introduction section above and the exhibits they attach to their June
15 TRO filing (docket no. 44-8 at page 10 of 20 and listing Ruiz's
$57,000 as Asset ID number 21-FBI-003247), that they are aware that
the cash in Ruiz's box is included within the FBI's May 20, 2021
notice letter to USPV, which means that the cash is the subject of
the pending <u>in rem</u> administrative forfeiture proceedings.[1]

As to the other boxholders, it can be difficult to identify a
true boxholder because USPV almost always rented its boxes
anonymously. <u>Id</u>. ¶ 3. The FBI often begins, therefore, with a
person submitting a request for the property's return online. <u>Id</u>.
This, however, is not reliable. <u>Id</u>. Some persons have forgotten or
misremembered their box number, for example. <u>Id</u>. Further, some
persons have made what appear to be fraudulent submissions. <u>Id</u>. ¶ 4.
For example, upon questioning, one person admitted that, in fact, he
had no box at USPV, but had hoped for a windfall. <u>Id</u>.

After verifying the identity of the boxholder, it can
nonetheless be difficult and time consuming to return to that person
the contents. <u>Id</u>. ¶ 9. To return valuables, two special agents (per
FBI policy for handling valuables) have to visit a secure valuables

---

[1] However, as explained below, plaintiffs do not understand the
<u>in rem</u> nature of forfeiture proceedings that are pending against
Ruiz's cash even if he has not received a personal notice letter.

facility, in addition to at least one agent visiting the general
storage facility, before meeting with the person to complete the
return.  Id.  The process also generates substantial paperwork.  Id.
Scheduling the returns has also proven difficult.  Id.  Many times
agents have called to schedule a return, but have gotten no response.
Id.  Other times, persons have scheduled returns, but then cancelled
just before their appointment, shown up late, or simply failed to
show up for their appointment at all.  Id.

Some persons have asked for priority in getting back their
property.  When these requests for priority seem justified, the FBI
has attempted to accommodate them, although such changes in
scheduling necessarily slow the return of other boxes and make
scheduling that much harder.  The FBI does not believe the Snitkos or
Gothier expressed any urgent need for their belongings.  Some persons
have candidly told the FBI that they are in no rush to pick up their
belongings, particularly valuables, because now they are getting safe
storage for free from the FBI, and would have to make alternative
arrangements once they pick up their belongings.  Id. ¶ 10.

About 250 boxes have been designated for return, which means the
FBI has not begun forfeiture proceedings against those boxes'
contents, and wishes to return them to their owners.  Id. ¶ 12.
About 200 of the 250 boxes either have been returned already, or are
awaiting pick up.  Id.  All the remaining boxes designated for
return, somewhat over 40, are waiting because the FBI cannot identify
the boxholder at all, or the boxholder is unreachable.  Id.

Initially the FBI contacted boxholders to arrange the returns as
agents were available to meet with them and complete the process.
However, in late May 2021, the FBI felt that progress returning boxes

was not fast enough, and on the morning of May 27 (before this lawsuit was filed), the FBI directed that all boxholders designated for return be notified of that immediately even though the FBI could not, at that time, schedule all those returns. Id. ¶ 13.

By letter dated May 20, 2021, the FBI initiated administrative forfeiture proceedings as to particular identified boxes' contents, including the $57,000 in Ruiz's box, by sending a written personal notice letter to USPV and other persons the FBI could identify as having a potential interest in particular boxes. Docket No. 44-8 (Johnson Decl. Ex. G at pages 20-40); Zellhart Decl. ¶¶ 14, 18.

**III. THE STANDARDS FOR PRELIMINARY INJUNCTIONS.**

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original and citation and internal quotation marks omitted); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  To obtain a preliminary injunction, the movant must demonstrate (1) that they are likely to succeed on the merits of their claims; (2) that they are likely to suffer irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in their favor; and (4) that the proposed injunction is in the public interest. Karnoski v. Trump, 926 F.3d 1180, 1198 (9th Cir. 2019).  "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." Padilla v. Immigration & Custom Enf't, 2020 WL 1482393, *5 (9th Cir. 2020).

The Ninth Circuit has adopted a "sliding scale" test for issuing preliminary injunctions, under which "serious questions going to the

1   merits and a hardship balance that tips sharply towards the plaintiff
2   can support issuance of an injunction, assuming the other two
3   elements of the <u>Winter</u> test are also met."  <u>Alliance for Wild Rockies
4   v. Cottrell</u>, 632 F.3d 1127, 1131-32 (9th Cir. 2011).  Thus, the
5   movant must show the injunction is in the public interest and there
6   is a likelihood, not merely a possibility, of irreparable injury.
7   <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009).

8        Finally, because the function of a preliminary injunction is to
9   maintain the status quo before the case is adjudicated on the merits,
10  there is "heightened scrutiny" for mandatory preliminary
11  injunctions.  <u>Dahl v. HEM Pharms. Corp.</u>, 7 F.3d 1399, 1403 (9th Cir.
12  1993) (mandatory injunctions are "subject to a heightened scrutiny
13  and should not be issued unless the facts and law clearly favor the
14  moving party").  "A mandatory injunction orders a responsible party
15  to take action," and thus, "goes well beyond simply maintaining the
16  status quo."  <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>,
17  571 F.3d 873, 879 (9th Cir. 2009) (citation and internal quotation
18  marks omitted).  A party seeking a mandatory injunction must
19  establish that the law and facts *clearly favor* her position, not
20  simply that she is likely to succeed."  <u>Garcia v. Google, Inc.</u>, 786
21  F.3d 733, 740 (9th Cir. 2015).  Accordingly, "mandatory injunctions
22  are not granted unless extreme or very serious damage will result and
23  are not issued in doubtful cases."  <u>Marlyn Nutraceuticals, Inc.</u>, 571
24  F.3d at 879 (internal quotation marks omitted).

25  **IV.   PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.**

26       Plaintiffs' seek an injunction compelling the government to send
27  a notice to each boxholder that sets forth a factual and legal basis
28  for the retention of their property, separate from the justification

8

for the initial seizure.  Should the notice be inadequate in plaintiffs' view, the government would be required to immediately return the property.  Plaintiffs are requesting a mandatory injunction because they seek to compel the government to take action. Therefore, plaintiffs' request is subject to "heightened scrutiny," goes beyond preserving the status quo, and requires a showing that extreme or serious damage will result if the injunction is denied.

**A.   Property Not Subject To <u>In Rem</u> Forfeiture Proceedings And Earmarked For Return By The FBI.**

Because the Snitkos have already received their property back and Gothier has been invited to collect his property (Zellhart Decl. ¶¶ 16-17), there is no likelihood of them succeeding on the merits.  While these plaintiffs may contend the FBI should have processed their return requests faster, that overlooks the myriad challenges of inventorying several hundred safety deposit boxes, trying to identify their owners with incomplete and sometimes inconsistent information, vetting fraudulent submissions, and coordinating the physical return of valuables which requires multiple agents to visit multiple storage facilities for each return, and matching their schedules with those of persons seeking returns and often their attorneys--while also attending to sometimes urgent but unrelated criminal investigations.  <u>Id</u>. at ¶¶ 3-15.

Further, many boxholders requested priority for the return of their items, sometimes for good reasons, which the FBI attempted to accommodate.  Naturally some requests for return of property were processed more quickly than others.  The FBI attempted to schedule the return of Gothier's property less than two weeks after he requested its return via the online portal set up in March 2021.  <u>Id</u>.

at ¶ 17.   And while the Snitkos actually received their belongings back less than two months after making a request therefor via the online portal, they did not request priority.   Id. at 16.

**B.   Property Subject To The Pending In Rem Administrative Forfeiture Proceedings That Is Not Being Returned.**

Some of the current plaintiffs (*i.e.*, Jeni Verdon-Persons, Michal Storc and Travis May), who were added as plaintiffs by a first amended complaint filed June 9, 2021, moved for a TRO on June 15, 2021.   Docket nos. 33 and 44.   Only plaintiff Ruiz is a movant in both the TRO application and current motion.   The government opposed the TRO application on June 16, the TRO movants filed a reply June 17, and the government filed an objection to the reply and request to file a sur-reply on June 17, 2021.   Docket nos. 45, 46 and 48.

The government's opposition to the TRO extensively discusses the applicable forfeiture regulations and statutes, and why plaintiffs' cases are irrelevant.   Rather than repeat those arguments, the government incorporates them by reference.   Docket No. 45 (oppo. at 6:21-18:12).   Set forth below are additional arguments applicable to plaintiff Ruiz, as they bear upon aspects of the current motion.

Plaintiffs' arguments illustrate their confusion regarding the fact that civil asset forfeiture proceedings are in rem and not in personam.   They have filed a motion that confusingly seeks the same relief in their TRO application and their current preliminary injunction motion, requiring that the government respond twice.   In explaining their decision to maintain on calendar the instant motion for preliminary injunction, which they filed before filing their first amended complaint and moving for a TRO in conjunction therewith, plaintiffs state:

10

1      This TRO application is separate and distinct from

2      Plaintiffs' pending motion for a preliminary injunction.

3      The motion for a preliminary injunction seeks relief on

4      behalf of USPV box holders whose property is *not* being

5      targeted for civil forfeiture and yet remains in the

6      possession of the federal government.  By contrast, this

7      TRO application seeks relief on behalf of USPV box holders

8      whose property *is* being targeted for civil forfeiture.

9 Docket No. 44 at 2:25-28 n.1 (emphasis in original).

10      But plaintiffs are wrong.  They move to certify a provisional

11 class consisting of persons who "(c) have not been notified that

12 their safe deposit boxes are the subject of currently ongoing

13 administrative or judicial forfeiture proceeding" [docket no. 26-1

14 (motion at 17:22-18:4)], and explain that this means persons who have

15 not received a personal notice forfeiture letter regarding assets

16 within the individual person's box.  *Id.* at 8:25-28 n.2; and 18:26-28

17 n.3.  However, whether a particular boxholder receives a personal

18 notice letter is irrelevant because civil forfeiture proceedings are

19 <u>in rem</u> (not <u>in personam</u>) proceedings, and the $57,000 Ruiz claims is

20 his is the subject of the proceedings because it was included in the

21 May 20, 2021 notice letter sent to USPV.  Docket no. 44-8 at page 10

22 of 20 and listing Ruiz's $57,000 as Asset ID number 21-FBI-003247.

23 Plaintiffs therefore seek the same relief by their TRO and

24 preliminary injunction requests, despite their contention otherwise.

25      In addition, plaintiffs' TRO reply brief (docket no. 46) makes

26 arguments applicable to the instant motion, regarding petitions for

27 remission or mitigation of forfeiture ("petitions for remission"),

28 and state that the petition for remission submission deadline is June

24 for some of them (but that is misleading and untrue if they simply submit a claim by their deadlines) and express confusion about the consequences of submitting both a claim and petition for remission. Plaintiffs do not understand the forfeiture process.

By submitting to the FBI *just* a claim to contest the administrative forfeiture of an asset by the deadline (which is no earlier than August 3, 2021 for persons who receive only internet publication notice (Docket 45 [govt. oppo. at 10:18-11:20]), the submitter preserves the right to *later* file *both* a claim in judicial forfeiture proceedings and submit a petition for remission when the U.S. Attorney's Office ("USAO") files an *in rem* judicial civil forfeiture complaint against the asset.  The judicial forfeiture complaint will set forth the factual and legal basis for the forfeiture, including both the specific criminal statute violated and the forfeiture statute that permits forfeiture of the defendant asset based on the violated criminal statute.  Rodgers Decl. Ex. B (example of a filed complaint).  That complaint provides the details better than any seizing agency notice could ever do.

The government's TRO opposition discusses the pertinent events after the seizing agency receives a valid[2] claim.  Once that occurs, the seizing agency suspends the administrative forfeiture proceeding as to the asset (Docket 45 [govt. oppo. at 12:4-11]), cannot conclude the administrative forfeiture of the asset by issuing a "declaration of administrative forfeiture," which is the equivalent of a court

---

[2] As previously discussed, if a seizing agency determines that an otherwise timely claim does not meet the requirements for a valid claim set forth in 28 C.F.R. § 8.10(b), the seizing agency [pursuant to 28 C.F.R. § 8.10(g)] may notify the submitter of this determination and allow the submitter a reasonable time to cure the defect.  Docket 45 (govt. oppo. at 11:27-12:3).

1    judgment of forfeiture in a judicial case (*id.* at 11:21-27 and 12:4-
2    11) and must refer the matter as to the asset to the USAO (*id.* at
3    12:4-11), and the government must release the property if the USAO
4    does not file a judicial forfeiture complaint naming the asset as the
5    defendant within 90 days after the seizing agency received the claim
6    in the administrative forfeiture proceedings (*id.* at 12:11-17).

7        When the USAO files the in rem civil forfeiture complaint, the
8    USAO provides notice of the action, via a USAO notice letter, to all
9    persons who might potentially have an interest in the defendant
10   asset.  Rodgers Decl. Ex. A (sample USAO notice letter).  The USAO
11   notice letter advises of the deadline to file responsive pleadings to
12   the complaint, which are a claim to the defendant property and an
13   answer or Fed. R. Civ. P. 12 motion.  Id.  In addition, and most
14   significantly, the USAO's notice letter further advises that the
15   recipient *may also* submit a petition for remission relative to the
16   asset to the Department of Justice (the "DOJ").  Id.

17       In other words, submitting a claim in the administrative
18   forfeiture proceedings (and thereby compelling the government to
19   pursue Court action to forfeit an asset) is not, as in Gete and
20   plaintiffs' other cases, an irrevocable waiver of the submitter's
21   right to proceed in the administrative procedure via a petition for
22   remission.  The submitter is not required by the deadline to
23   irrevocably select an administrative or a judicial resolution.
24   Instead, submitting a claim *preserves* the submitter's right to *both* a
25   Court *and* administrative resolution.  And, as mentioned above, the
26   USAO's complaint details the facts and legal basis for forfeiture, so
27   the submitter has that information available if the submitter chooses
28   to submit a petition for remission after a complaint is filed.

These facts are known to asset forfeiture attorneys.  Every judicial civil forfeiture case begins the same way, with the USAO notice letter that includes a copy of the filed in rem civil forfeiture complaint containing the details.  In addition, the government's forfeiture website (www.forfeiture.gov) provides guidance to the public on how to submit and the consequences of submitting claims and petitions for remission to the seizing agency. Moving plaintiffs' reply brief inaccurately describes the process.

The pertinent regulations are as follows.  The seizing agency decides petitions for remission if no timely and valid claim is filed to a particular asset in the seizing agency administrative forfeiture proceedings; these are referred to as "administrative forfeitures" in the regulations.  28 C.F.R. § 9.1(b)(1) ("[r]emission and mitigation functions are performed by the agency seizing the property").  The DOJ's Money Laundering and Asset Recovery Section in the Criminal Division (the "MLARS") decides petitions for remission if a timely and valid claim is submitted to the seizing agency to a particular asset in the administrative forfeiture proceedings (which thereby results in the seizing agency's suspending the proceedings and referring the matter to the USAO) and the USAO then files a judicial forfeiture complaint within 90-days after the seizing agency receives the claim; these are referred to as "judicial forfeitures" in the regulations.  28 C.F.R. § 9.1(b)(2) ("[r]emission and mitigation functions are performed by the Criminal Division of the Department of Justice.  Within the criminal division, authority to grant remission and mitigation is delegated to the Chief, Asset Forfeiture and Money Laundering Section [now known as the MLARS]").

1       Upon the USAO's receipt of a petition for remission in response

2  to the USAO notice letter, the USAO can direct the seizing agency to

3  investigate and provide a report regarding the merits of the petition

4  for remission (Rodgers Decl. Ex. A), which report the USAO sends to

5  the MLARS with the USAO's recommendation as to whether the petition

6  for remission should be granted or denied, so that the MLARS can rule

7  thereon.  28 C.F.R. § 9.8(f) and (g).  But the timing of the USAO's

8  request for the petition investigation, preparation of the USAO's

9  recommendation, and submission of the package to the MLARS for a

10  ruling is after the judicial case is over, for the reasons below.

11      The USAO's notice letter, which encloses the filed complaint,

12  advises recipients to submit any petition for remission to the USAO

13  "promptly."  But the MLARS will not issue a ruling until after the

14  judicial action is completed, and only if the action concludes in the

15  government's favor with a court judgment of forfeiture.  28 C.F.R.

16  § 9.4(a) ("[p]etitions shall be considered any time after notice

17  until such time as the *forfeited* property is placed in official use,

18  sold, or otherwise disposed of according to law") (emphasis added);

19  28 C.F.R. § 9.5(a)(1) ("[t]he ruling official shall not grant

20  remission of a *forfeiture* unless petitioner" establishes certain

21  facts) (emphasis added); *see also* Asset Forfeiture Policy Manual

22  (2021) at 184-85 ("MLARS must eventually adjudicate the petition in a

23  judicial forfeiture, but only after the claim is resolved").  If the

24  USAO loses the case and there is therefore no court judgment of

25  forfeiture, then the court judgment will order the government to

26  return the property to the claimant in the judicial case.  In that

27  circumstance, the MLARS cannot "remit or mitigate *the forfeiture*" by

28  granting a petition for remission.

Indeed, it is a waste of time for the MLARS to consider pre-judgment petitions for remission: if the MLARS grants a petition for someone who is not a party to the judicial action, and a claimant who is a party prevails with the Court ordering the government to return the property to that claimant, the government cannot return the property to the successful petitioner in violation of that order.  In addition, the pertinent facts in a judicial case, which are likely to be relevant for ruling on a petition for remission, are not fleshed out until the judicial case is over.  Therefore, *final* USAO recommendations are concluded only after court proceedings end.

Plaintiffs are not likely to prevail on their claim that the government "must state the legal basis for its continued retention of their property."  For the reasons stated in the government's opposition (Docket No. 45) and the forfeiture law explained herein, plaintiffs' request simply misses the mark.  The government is complying with the applicable laws and forfeiture procedures.  The Court should deny the request for a mandatory injunction on this basis alone.

## V.   MOVING PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM.

The facts set forth above, regarding the Snitkos receipt of their property, arrangements being made for the return of Gothier's property and Ruiz's property not being returned because it is subject to forfeiture proceedings, shows plaintiffs have not established irreparable harm.  Moreover, plaintiffs' claim that they are irreparably harmed by the "deprivation of constitutional rights" mischaracterizes the case they cite.  The plaintiffs in Melendres v. Arpaio, 695 F.3d 990 (9th Cir. 2012), were Latino individuals in a county where the sheriff had adopted a policy of racial

16

1    profiling.  Id. at 994.  They were thus subject to repeated and

2    ongoing constitutional right violations.  This case involves nothing

3    of the sort.  The government has already contacted all identified

4    USPV plaintiffs and is following applicable forfeiture laws.

5    **VI.    MOVING PLAINTIFFS FAIL TO MEET THEIR BURDEN FOR PROVISIONAL**

6    **CLASS CERTIFICATION.**

7        The Court should also deny both plaintiffs' requests for broad

8    injunctive relief without provisional class certification and for

9    provisional class certification.  *First*, plaintiffs erroneously argue

10   that provisional class certification is not necessary for the relief

11   sought on behalf of "all USPV customers who have filed claims."

12   However, "[i]n the absence of class certification, a preliminary

13   injunction may properly cover only the named plaintiffs."  Ramos v.

14   Wolf, 975 F.3d 872, 906 (9th Cir. 2020) (Nelson, J., concurring)

15   (citing Nat'l Ctr. for Immigrants Rights, Inc. v. INS, 743 F.2d 1365,

16   1371 (9th Cir. 1984)).  Because no class has been provisionally

17   certified, putative class members can only benefit from injunctive

18   relief incidentally, not by design.  Easyriders Freedom F.I.G.H.T. v.

19   Hannigan, 92 F.3d 1486, 1501–02 (9th Cir. 1996).  Yet, plaintiffs

20   improperly ask for an injunction that is designed to address the

21   status of every putative class member, not just the named plaintiffs.

22       Plaintiffs erroneously compare the mandatory injunction they

23   seek to a statewide injunction enjoining a common prison policy.  In

24   Clement v. Cal. Dep't of Corrections—the case plaintiffs rely on for

25   their incorrect position—the Ninth Circuit upheld a statewide

26   injunction enjoining a prison policy that prohibited inmates from

27   receiving mail with material downloaded from the internet.  364 F.3d

28   1148, 1152 (9th Cir. 2004).  The Ninth Circuit analyzed the

injunction through the lens of the Prison Litigation Reform Act, and noted it would be inefficient for prisoners across the state to file lawsuits challenging the same common policy.  Id.  Here, plaintiffs seek an order requiring the government to affirmatively state a "basis for its ongoing seizure of property" for each USPV customer that has filed a claim but not received their property back.  Mot. at 17.  Such broad relief is not necessary to give the named moving plaintiffs the relief they seek.  Rather, the proposed injunction stretches well beyond the interests of the named plaintiffs and addresses affirmative relief for all putative class members.  Such a request is improper absent certification, and should be rejected.

*Second*, plaintiffs cannot meet their burden for provisional class certification.  "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (citation and internal quotes omitted).  To qualify for the exception to individual litigation, the party seeking class certification bears the burden of showing by a preponderance of the evidence that class certification is appropriate and must provide facts sufficient to satisfy the requirements of Fed. R. Civ. P. 23(a) and (b).  Dukes, 564 U.S. at 351; Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1308-09 (9th Cir. 1977).  "The Rule 'does not set forth a mere pleading standard.'"  Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (quoting Dukes, 264 U.S. at 350).  "Rather, a party must not only 'be prepared to provide that there are in fact sufficiently numerous parties, common questions of law or fact,' typicality of claims and defenses, and adequacy of representation, as required by Rule 23(a).  The party must also satisfy through

evidentiary proof at least one of the provisions of Rule 23(b)."  <u>Id</u>.

(quoting <u>Dukes</u>, 564 U.S. at 350) (internal citation omitted).

Fed. R. Civ. P. 23(a) sets out four requirements for class certification: numerosity, commonality, typicality, and adequacy of representation.  But these requirements alone do not warrant class certification, as plaintiffs must also satisfy one of the requirements of Rule 23(b).  Rule 23(b)(2) permits class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  If a court is not fully satisfied that the requirements of Rule 23(a) and (b) are met, certification should be refused.  <u>Gen. Tel. Co. v. Galcon</u>, 457 U.S. 147, 161 (1982).

Here, plaintiffs' request for provisional certification is riddled with errors.  First, for the same reasons the preliminary injunction is moot, <u>see supra</u>, class certification is not appropriate.  Second, even if the Court were to conduct a rigorous class certification analysis, individualized inquiries predominate and preclude plaintiffs from satisfying Rule 23(a)(2)'s commonality requirements (existence of common class fact and legal questions). It is insufficient to merely allege any common question [<u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998)], and plaintiffs must allege (as stated by the Supreme Court in <u>Dukes</u>, 564 U.S. at 350), the existence of a "common contention" that is of "such a nature that is capable of classwide resolution[.]"  The court also stated that what matters is "*the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.*  Dissimilarities within the proposed class are what have

the potential to impede the generation of common answers."  Id.
(citation omitted and emphasis added).

Here, each USPV boxholder has unique property seized by the FBI
and the circumstances underlying why the FBI has not yet returned the
property are varied.  The law is clear that class certification is
not appropriate in this context.  Dukes, 564 U.S. at 350.

Recognizing that these individualized inquiries are fatal to
class certification, plaintiffs try to frame their request as
addressing common constitutional violations while ignoring the
reality of their proposed order.  The Court should reject this ploy.
In their motion, plaintiffs ask the Court to order the government "to
state a basis for its ongoing seizure of property from all USPV
customers who have filed claims."  Mot. at 17.  There are simply no
common answers to provide to all of the USPV customers.
Individualized issues predominate, and as such plaintiffs cannot meet
their burden for provisional class certification.

**Third**, the named and moving plaintiffs are neither typical nor
adequate.  Contrary to plaintiffs' assertion that the proposed
subclass representatives "are all still waiting for their property to
be returned," the Snitkos have already collected their belongings, so
they are not even members of the proposed subclass, Gothier's box is
simply awaiting scheduling an appointment to be returned and Ruiz's
property is not being returned.  As such, *none* of the moving
plaintiffs is even a member of the proposed subclass.

**VII. CONCLUSION**

For the reasons set forth above, the government respectfully
requests that plaintiffs' motion be denied.