1  TRACY L. WILKISON
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   ANDREW BROWN (Cal. Bar No. 172009)
4  VICTOR A. RODGERS (Cal. Bar No. 101281)
   MAXWELL COLL (Cal. Bar No. 312651)
5  Assistant United States Attorneys
   Major Frauds/Asset Forfeiture/
6  General Crimes Sections
        1100/1400/1200 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone: (213) 894-0102/2569/1785
        Facsimile: (213) 894-6269/0142/0141
9       E-mail: Andrew.Brown@usdoj.gov
                Victor.Rodgers@usdoj.gov
10              Maxwell.Coll@usdoj.gov

11 Attorneys for Defendants
   UNITED STATES OF AMERICA, et al.

12

13                    UNITED STATES DISTRICT COURT

14                FOR THE CENTRAL DISTRICT OF CALIFORNIA

15                            WESTERN DIVISION

16 PAUL SNITKO, JENNIFER SNITKO,              Case No. 2:21-CV-04405-RGK-MAR
   JOSEPH RUIZ, TYLER GOTHIER, JENI
17 VERDON-PEARSONS, MICHAEL STORC,            **DECLARATION OF LYNNE ZELLHART IN
   AND TRAVIS MAY,                            SUPPORT OF DEFENDANTS' OPPOSITION
18                                            TO MOTION FOR PRELIMINARY
              Plaintiffs,                     INJUNCTION AND FOR PROVISIONAL
19                                            CLASS CERTIFICATION FILED BY
              v.                              MOVING PLAINTIFFS PAUL SNITKO,
20                                            JENNIFER SNITKO, JOSEPH RUIZ AND
   UNITED STATES OF AMERICA, ET               TYLER GOTHIER**
21 AL.,

22            Defendants.                     Date:      July 12, 2021
                                              Time:      9:00 a.m.
23                                            Courtroom: 850, the Honorable
                                                         R. Gary Klausner
24

25

26

27

28

**DECLARATION OF SA LYNNE ZELLHART**

I, SA Lynne Zellhart, declare as follows:

1. I am a Special Agent with the FBI and have been tasked with returning to the boxholders of U.S. Private Vaults the property they lawfully possessed which was stored in their safety deposit boxes.

2. I personally participated in the inventorying of the contents of the safety deposit boxes at U.S. Private Vaults. The inventory was completed on March 26, 2021. While inventorying the contents of the safety deposit boxes, agents recovered drugs including fentanyl and OxyContin, firearms including a Glock, and a variety of ways of storing wealth anonymously, such as gold bullion and especially cash, usually in $100 bills. Most of the boxes which were not empty contained stacks of $100 bills; many of the boxes were filled with such stacks. The largest boxes typically contained hundreds of thousands of dollars in cash each, and some contained over $1 million. Drug detecting dogs alerted to most of the stashes of cash, but not all.

**Challenges Identifying and Verifying Boxholders**

3. It can be difficult to identify the true boxholder because U.S. Private Vaults almost always rented its boxes anonymously. The FBI often begins, therefore, with a claim submitted to it online by a purported boxholder. This, however, is not reliable. Some persons seeking the return of property have forgotten or misremembered their box number, for example. (In an apparent effort to frustrate law enforcement attempts to trace keys back to particular boxes at USPV, USPV did not mark their keys with either a box number or the name of their business.)

4. Further, some individuals have made what appear to be fraudulent requests. For example, upon questioning, one person seeking return of property admitted that, in fact, he had no box at USPV, but had hoped for a windfall. Similarly, another person came to retrieve "his" property, but the keys he brought did not fit the lock to the box he said was his; later, a completely different person, this time a woman, claimed to be the owner of that box.

5. Initially I hoped to use the same iris scanning system employed by USPV to verify the identity of the boxholders. While the FBI has not given up on this possibility, we have not been able to duplicate USPV's iris-scan access system despite considerable effort from our technically trained agents and computer team.

6. Because of the delays recreating USPV's iris-scanning verification system, I elected to begin returning the contents of boxes to individuals without it when I could be sure of the propriety of their requests for the return of property. These returns began in the second half of April, 2021.

7. USPV recommends that boxholders include their contact information and/or that of a designated beneficiary in their box in case they die, become incapacitated (for example, by going to prison), or otherwise fail to pay the rent on the box, thereby enabling USPV to reach out to them after drilling open their box for non-payment of rent. Over half the boxholders included at least some contact information.

8. The contact information included in the boxes ran the gamut from full and current, to old and cryptic. For instance, some boxes included only a first name and telephone numbers. One had a hand-written note which said "George, call me at [phone number]" –

purportedly instructions to USPV manager George Vasquez, from a customer known to Vasquez. While some telephone numbers were correct, others were out of service. Some boxes contained conflicting contact information, or only the contact information of someone who was not the boxholder; in my training and experience, criminals often attempt to put assets in the names of someone else whom they trust because they know, for example, that it would look suspicious for them to own valuable assets if they have no legitimate income. Accordingly, the FBI cannot rely solely on the contact information in a box, but must often do additional investigation to identify or verify the true boxholder.

### Challenges Returning the Contents of Boxes

9. After verifying the identity of the boxholder, it can nonetheless be difficult and time consuming to return to that person the contents. The FBI maintains multiple storage facilities throughout Los Angeles County for items in its custody, including separate ones for valuables. The storage for valuables is especially secure and only specially designated employees may access it, and then only in pairs. Because most of the boxes at USPV contained valuables, this means that they are stored at one facility, while documents and the locking mechanism for the safety deposit box (which agents need to verify that the person seeking the return of property possesses the key) are stored at another, distant facility. Accordingly, to return valuables, two special agents (per FBI policy for handling valuables) have to visit the secure valuables facility, in addition to at least one agent visiting the general storage facility, prior to meeting with the person seeking the return of

property to complete the return.  The process also generates substantial paperwork.

10.  In addition to the logistical problems described above, scheduling the returns has also proven difficult.  Many times agents have called to schedule a return, but have gotten no response.  Other times, persons seeking the return of property have scheduled returns, but then cancelled just before their appointment, shown up late, or simply failed to show up for their appointment at all.  Scheduling returns becomes especially difficult when lawyers for the individuals seeking property insist on being present, which then requires accommodating the lawyer's schedule, which is often busy, as well as the individuals'.  Recently, two persons seeking the return of property who were scheduled to receive their property cancelled their appointments (in one case twenty minutes prior) in order to hire an attorney first.   Some individuals or their attorneys have asked for priority in getting back their property.  When these requests for priority seem justified, the FBI has attempted to accommodate them, although such changes in scheduling necessarily slow the return of other boxes and make scheduling that much harder. So far as I know, neither the Snitko plaintiffs nor plaintiff Gothier expressed any urgent need for their belongings.  Some persons seeking the return of property have candidly told the FBI that they are in no rush to pick up their belongings, particularly valuables, because now they are getting safe storage for free from the FBI, and would have to make alternative arrangements once they pick up their belongings.

11.  Some returns have also been delayed to due staffing shortages at the FBI.  I have had as many as 23 special agents at once conducting returns, in addition to support staff.  However,

these agents have full investigative caseloads as well, and have sometimes been pulled away by more urgent matters. For example, I have at different times lost agents to various criminal cases including a real-time kidnapping.

### The Boxes Initially Designated for Return

12. In round numbers, about 250 boxes have been designated for return. That is, the FBI has not begun administrative forfeiture proceedings against these boxes, and wishes to return them to their rightful owners. About 200 of these 250 boxes either have been returned already, or are awaiting pick up by their owners. All the remaining boxes initially designated for return, somewhat over 40, are waiting because the FBI either cannot identify the boxholder at all, or the boxholders have thus far proven unreachable.

13. Initially the FBI was contacting boxholders to arrange the return of their belongings as agents were available to meet with them and complete the process. However, in late May 2021, I felt that our progress returning boxes was not fast enough. On the morning of May 27 (before this lawsuit was filed), I directed that all holders of boxes designated for return be notified of that immediately even though the FBI could not, at that time, schedule all those returns.

### The Boxes Subject to Administrative Forfeiture Proceedings

14. On or about May 20, 2021, the FBI began sending administrative forfeiture notices to the box holders it could identify of boxes it intended to forfeit. It also sent a forfeiture notices to U.S. Private Vaults, Inc. and initiated administrative forfeiture proceedings as to particular identified boxes' contents. Additionally, on June 4, 2021, the FBI commenced posting a notice for the first wave of the assets seized during the USPV

seizure on a government forfeiture internet website at www.forfeiture.gov

15. The FBI attempted to contact 100% of the identified boxholders at USPV, either with a notice of administrative forfeiture for those the government intends to forfeit, or to arrange for the return of the contents, for those boxes that it does not. Of course for the reasons previously described, the FBI has not been able to reach 100% of the boxholders. The FBI has completed its initial determination of which boxes should be returned, and which are subject to forfeiture. That is not to say that those categories are static, however. The FBI has and will continue to re-evaluate its position in light of new information; the FBI has already terminated forfeiture proceedings against some boxes after evaluating their owners' explanations.

**The Snitko Plaintiffs Have Collected Their Belongings**

16. The FBI made multiple attempts to schedule the return of the box belonging to the Snitkos in May. In June, they collected their belongings.

**Plaintiff Gothier Has Not Responded to Attempts to Return His Box**

17. In late May and early June, the FBI made several attempts to contact Plaintiff Tyler Gothier in order to schedule the return of his property. The FBI was not able to reach him at the phone number he provided. In June the FBI sent a certified letter inviting Gothier to make an appointment to receive his property. On June 15, 2021 his attorney contacted me, and an appointment is being scheduled.

**Plaintiff Ruiz Was Sent Two Forfeiture Notices**

18.  According to our records, the FBI mailed a notice of administrative forfeiture to plaintiff Ruiz on May 21, 2021, to the address he provided to the FBI's online claim portal and a second notice letter to the same address to Christine Ramirez as Executor/Conservator because Ruiz's USPV's paperwork identified that address and her as the Executor/Conservator.  While the letter to Ruiz is being returned as undeliverable, the letter to Ramirez was received because the FBI has a signed return receipt reflecting that the letter was received.

19.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on June 21, 2021.

　　　　　　　　　　　　　　　　　　/s Lynne Zellhart
　　　　　　　　　　　　　　　　　　SA LYNNE ZELLHART