**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**REPLY IN SUPPORT OF PLAINTIFFS PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, AND TYLER GOTHIER'S MOTION FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION**<br><br>Date: July 12, 2021<br>Time: 9:00 A.M.<br>Courtroom: 850<br>Judge: Hon. R. Gary Klausner<br>Trial Date: TBD<br>Complaint Filed: May 27, 2021<br>Amended Complaint Filed: June 9, 2021 |

The Court recently granted a TRO barring the government from forfeiting property "without first sending forfeiture notices that identify the specific factual and legal basis for the Government's determination to commence civil forfeiture proceedings." Doc. 52 ("TRO Order") at 7. The instant preliminary injunction motion was filed before Plaintiffs' TRO application—at an earlier stage of the proceedings, when the full scope of the problems with the civil forfeiture notices were not yet clear—and seeks a related but distinct remedy: If the government *does not* articulate a factual and legal basis for the ongoing detention of property seized from USPV box holders, the government should have to give it back.

As the opening motion papers explained (*see* Doc. 26-1 ("Memo.") at 12:13–15:24), that remedy flows directly from *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017), and *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018). In those cases, plaintiffs did not challenge the initial seizure of their property, but argued that the government could not continue to hold the property without some valid justification. The Ninth Circuit agreed. Because the plaintiffs had come forward to claim their property, the government had to either "cease the seizure or secure a new justification." *Brewster*, 859 F.3d at 1197. So too here: The initial seizure warrant did not authorize any prolonged detention of the contents of the USPV boxes; to the contrary, it expressly contemplated that the property would be returned. *See* Doc. 26-10 at 1 (Exhibit A to Vora Declaration). If the government cannot articulate some lawful basis to continue to hold the property, it must do what the warrant expected and give the property back.

Rather than seriously argue otherwise, the government says intervening events have largely mooted Plaintiffs' Motion. The government has belatedly returned the property it seized from Plaintiffs Paul and Jennifer Snitko, and it has contacted Plaintiff Tyler Gothier to schedule the return of his property. The government also says that it began contacting numerous other box holders the day

this motion was filed, *see* Doc. 51 ("Opp.") at 7:1–4,[1] and that, of the 250 boxes that have been "designated for return," approximately "200 . . . either have been returned already, or are awaiting pick up," *id.* at 6:19–23. Plaintiffs hope that Defendants will report even greater progress towards remedying these ongoing constitutional violations by the July 12 hearing date.

But intervening events have only heightened this motion's significance for Plaintiff Joseph Ruiz, who is *not* getting his property back and yet still has no idea why Defendants are continuing to hold his life savings. The government argues that it adequately justified the seizure of Joseph's property when it mailed him a forfeiture notice, but that notice was "returned as undeliverable," Opp. 5:5, and the government has not even bothered providing Joseph's attorneys with a copy.[2] And even if Joseph *had* received that letter, it would not explain the ongoing seizure of his property: As this Court has held, the government's forfeiture notices "provide[ ] no factual basis for the seizure of Plaintiffs' property whatsoever" and "fall woefully short of the Government's duty to provide 'the specific statutory provision allegedly violated.'" TRO Order at 4–5. Joseph thus continues to be deprived of his property without explanation.[3]

Under *Brewster* and *Sandoval*, that cannot continue. The government must identify some legitimate basis for the ongoing seizure of USPV box holders' property, or else it must give that property back.

---

[1] Plaintiffs initially filed this motion on May 27, 2021, which is the same day the government began calling USPV box holders. *See* Doc. 10. The initial filing was struck because the documents were not filed under a single ECF entry, *see* Doc. 25, and Plaintiffs refiled on June 3, 2011, *see* Doc. 26.

[2] Shortly after filing this action, counsel for Plaintiffs emailed AUSA Andrew Brown and requested that all communications to Plaintiffs be directed to counsel. The government has unaccountably ignored that request.

[3] Plaintiffs Jeni Verdon-Pearsons, Michael Storc, and Travis May are not parties to this motion, which was filed before they were added to the case. But the same is largely true for them as well: Although they received individual forfeiture notices, this Court has held that those notices do not inform them of the factual or legal basis for the seizure of their property.

## I. Moving Plaintiffs' Motion Is Not Moot

The government argues that this motion is moot because it has either notified property owners that their property is subject to civil forfeiture or has taken steps to begin the process of giving the property back. This argument fails twice over.

First, this motion remains very much a live issue for Plaintiff Joseph Ruiz, who is not getting his property back and has no idea why. The government says that the forfeiture notice letter that it mailed to Joseph was returned as undeliverable, *see* Opp. 5:5, but notably did not attach a copy of that letter to its opposition or provide it to Joseph's attorneys. And even if it had, that letter would be worthless: As this Court recently held, the notice letters violate due process by failing to identify the factual or legal basis for the government's forfeiture proceedings. *See* TRO Order at 5, 7. In other words, Defendants have given Joseph no valid explanation for the continued seizure of his property. For him, this motion is in no sense moot.

Second, the government acknowledges that there are still some USPV box holders who are waiting to recover their property even though the government itself now concedes it has no basis to retain it. *See* Opp. 6:19–25. While Paul and Jennifer Snitko have now recovered their property—and Tyler Gothier is scheduling his property's return—Plaintiffs still have standing as class representatives to seek relief on behalf of those USPV box holders. *See, e.g.*, *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014); *Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020); *County of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991).

## II. Moving Plaintiffs Are Likely To Succeed On The Merits

Apart from arguing mootness, the government's Opposition does not seriously engage with the merits. And for good reason. The motion identified two bedrock principles in Ninth Circuit law: First, when the government seizes property, owners are entitled to notice of the factual and legal basis for the seizure. *See Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 987 (9th Cir. 2012);

*see also Gete v. INS*, 121 F.3d 1285, 1297 (9th Cir. 1997). Second, the government must separately justify the initial seizure *and* its continuation. Once the justification for an initial seizure has expired, the government must either identify some new justification or give the property back. *See Brewster*, 859 F.3d at 1197; *Sandoval*, 912 F.3d at 516. Neither principle is open to debate.

The government does not seriously dispute that—applying these principles—it must return property to USPV box holders whose property it has *not* targeted for civil forfeiture. *See* Opp. 9:8–10:3. It offers a litany of excuses about why it is hard to promptly return property, and why that process is still not complete. These excuses all ring hollow, as these are problems of the government's making.[4] And, more fundamentally, the government's arguments do not dispute that the property must be returned. The government apparently concedes that it cannot hold property indefinitely absent some valid justification. As, indeed, it must. *See Brewster*, 859 F.3d at 1197; *Sandoval*, 912 F.3d at 516. Its only response is essentially that it is working as fast as it can to remedy the injury it has caused these property owners.

The government has more to say about Plaintiff Joseph Ruiz, but its arguments do not really address the substance of *this* motion. Instead, they seem focused on issues raised by the TRO. *See* Opp. 10:4–16:18. The government provides a misleading, cherrypicked description of the administrative forfeiture process in an apparent effort to suggest that property owners do not really need to know the

---

[4] The FBI, for example, chose to seize and disable USPV's iris scanning system, which it is now unable to put back together and use to identify box holders. Doc. 51-1 at 3 (Decl. of Lynne Zellhart ¶ 5). And after this lawsuit was filed and while this motion was pending, the government has needlessly delayed returning Tyler Gothier's property by repeatedly trying to contact him directly rather than through his counsel. Opp. at 4:22–27. The government also—after telling box holders generally that "individual inquiries will only slow process" (Doc. 44–6 at 17 (Johnson Decl. Ex. E)) and telling the Snitkos specifically that there was no process or timeframe for receiving their property back (Doc. 26–5 at 3 (Jennifer Snitko Decl. ¶ 10))—now attempts to cast blame for the prolonged seizure on them for failing to "express[] any urgent need for their belongings." Opp. at 6:13–14, 10:1–3.

factual or legal basis for a forfeiture action. *See id.* But this Court rejected the government's "attempt[ ] to sidestep *Gete* and *Al Haramain* by distinguishing the procedural posture of those cases." TRO Order at 5. And while the government here continues its efforts to complicate the facts and the law, it cannot escape the simple truth: Joseph has a right to know the factual and legal basis for the ongoing seizure of his property. As the Court has already held, the government's forfeiture notices fail to provide that necessary information.

The government's speculation about what notice it might provide in *future* judicial forfeiture proceedings (Opp. at 12:12–18) is immaterial, as it does not solve the government's *current* failure to provide constitutionally mandated notice. The plaintiffs in *Gete*, for example, also had the option of "subjecting [themselves] to a judicial forfeiture proceeding with all its attendant delays." 121 F.3d at 1289. But this possibility did not rescue the government in *Gete*, just as it cannot rescue the government here, because "the government must provide reasonable procedures in *all* forfeiture contexts, including administrative proceedings." *Id.* at 1297 (emphasis added). Moreover, *Al Haramain* held that the government must provide notice of the basis for the seizure even in the absence of forfeiture proceedings; in that case, the Ninth Circuit held that property owners were entitled to notice of the basis for an OFAC asset freeze. *See* 686 F.3d at 970. These cases show that the government cannot hold onto property for months without explanation simply because it *might* articulate a basis for the seizure in some future case that might or might not ever be filed. If the government cannot articulate a valid basis for the ongoing seizure of Joseph's property before the July 12 hearing date, then the government should have to give the property back.

The government also complains about the overlap between this Motion and the TRO Application, to the extent that Joseph Ruiz is a party to both. Opp. at 10:20–11:24. And, to be sure, both the constitutional requirement to identify the reason for the government's ongoing seizure (the subject of this Motion) and the

constitutional requirement to identify the bases for an attempted administrative forfeiture (the subject of the TRO Application) serve a common end: Informing owners as to why the government is continuing to hold onto their property.

But that limited overlap does not erase the distinct need for the relief sought *here*. In granting the TRO, the Court enjoined the government from seeking to forfeit Plaintiff Joseph Ruiz's property using the deficient forfeiture notices. TRO Order at 7. But while his property is safe from forfeiture for the time being, that does not change the fact that the government is continuing to hold onto his property without explanation. Under established Ninth Circuit case law, the government must either justify that ongoing seizure or else bring it to an end. *See Brewster*, 859 F.3d at 1197; *Sandoval*, 912 F.3d at 516. Thus, Joseph continues to suffer the same constitutional injury that first prompted his request for a preliminary injunction. If the government cannot justify its continued detention of Joseph's property, then it should give that property back.

### III. The Other Preliminary Injunction Requirements Are Satisfied

The government asserts (Opp. at 16:20–24) that intervening events after the filing of this motion frustrate any finding of irreparable harm. But as discussed above, both the Snitkos and Tyler Gothier can seek relief on behalf of the putative class, and, meanwhile, Joseph Ruiz faces irreparable harm because his due process rights are being violated by the continued unjustified seizure of his property.[5] As this Court explained when it granted a TRO, such "deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" TRO Order at 5 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

As for the remaining factors, the government agrees that "[w]here the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." Opp. at 7:23–25 (internal

---

[5] The government's argument that there is no irreparable harm because it "is following applicable forfeiture laws" (Opp. at 17:3-4) fails because it is not conducting its forfeitures in a lawful manner. TRO Order at 5–7.

quotation marks omitted). Nor does the government anywhere dispute that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002; *see also* Memo. at 16:18–25.[6]

### IV. The Court Should Either Grant The Injunctive Relief Requested by Moving Plaintiffs Or, If Necessary, Grant The Relief On Behalf Of A Provisionally Certified Class

As the Court did in granting the TRO, the Court can resolve this motion by entering an order that is limited to the specific moving plaintiffs. *See* TRO Order at 7. In particular, while the government has returned the Snitkos' property and is scheduling the return to Tyler Gothier, the Court can enter an order directing the government to either state a valid basis for retaining Joseph Ruiz's property or else give that property back without further delay.

In doing so, the Court can also craft its order to sweep up *other* similarly situated USPV box holders. Memo. at 17:3–21. To be sure, the Ninth Circuit has stated that the "scope of the remedy must be no broader and no narrower than necessary to redress the injury." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). But that flexible inquiry depends on the "equities" and "exigencies of the particular case." *Id.* (quoting *Trump v. Int'l Refugee Assistance Project (IRAP)*, 137 S. Ct. 2080, 2087 (2017)). In *IRAP*, for example, the Supreme Court preserved an injunction that prohibited the government from refusing entry to the United States

---

[6] The government argues that some level of heightened scrutiny is required because this motion seeks a mandatory injunction. *See* Opp. 8:8–24. However, the Ninth Circuit has observed that mandatory injunctions "are most likely to be appropriate" in cases like this one, where "the status quo," *i.e.*, the unconstitutional deprivation of due process, "is exactly what will inflict the irreparable injury upon complainant." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). A mandatory injunction is further justified when the remedy, such as the one requested here, is "mild," in that it does not dictate the outcome in any case, only that the government resolve them using a constitutionally adequate process. *Id.* at 999–1000. The requested injunction would *only* order the government to return property in the event that the government is unable to supply a justification for the ongoing seizure, in which case the government surely would not be injured by having to give the property back.

not only to certain foreign nationals related to the plaintiffs, but also "with respect to parties similarly situated to" them. 137 S. Ct. at 2088. By contrast, *IRAP* stayed the injunction as to parties who were not "similarly situated" to the plaintiffs. *Id.* This Supreme Court guidance shows that this Court may likewise grant injunctive relief both to Joseph Ruiz and to other "similarly situated" USPV box holders.[7]

In the alternative, for class representatives Jennifer and Paul Snitko, Tyler Gothier, and Joseph Ruiz, the Court may provisionally certify a class for the purpose of granting preliminary injunctive relief. Memo. at 17:22–22:22. The government's assertion that class certification is inappropriate because each box's contents differ, as do the (undisclosed) reasons why the government has not yet returned those contents (Opp. at 19:17–20:16), misunderstands both the constitutional violation at issue and the requested relief. Moving Plaintiffs do not seek "common answers" (*id.* at 20:14) about *why* the government continues to hold their and class members' property. They simply seek to require that the government answer the question in the first place. *See Gete v. INS*, No. C94-881Z, 1999 U.S. Dist. LEXIS 11806, at *17–18 (W.D. Wash. July 22, 1999) (granting mandatory preliminary injunction on behalf of class of persons whose vehicles were seized and subject to forfeiture proceedings using constitutionally deficient procedures).

The government's typicality and adequacy arguments also miss the mark. Although the Snitkos have received their property back and Tyler Gothier should receive it soon, their ability to adequately represent the class turns on when the

---

[7] The government contends that an injunction may only incidentally benefit non-parties. Opp. at 17:12-19. But both the Ninth Circuit and the Supreme Court have permitted injunctions to cover similarly situated non-parties subject to the same unlawful government conduct. *See IRAP*, 137 S. Ct. at 2085 (noting that Ninth Circuit had concluded that injunction should apply "across the board" because policy was unlawful "in all applications"); *id.* at 2088 (refusing to stay portion of injunction applicable to "similarly situated" parties); *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1152 (9th Cir. 2004). The government distinguishes *Clement* because the authority to issue injunctions there was limited by the provisions of the Prison Litigation Reform Act, but the lack of those limitations here only bolsters the justification for an injunction.

complaint was filed. *Haro*, 747 F.3d at 1109. At that time, they had neither received their property back nor received any explanation for the continued seizure. And the government still has not identified the basis for its continued seizure of Joseph Ruiz's property, which is no longer subject to any ongoing forfeiture proceeding. TRO Order at 7. He thus continues to suffer the same deprivation as the rest of the class. This is therefore an appropriate case for the Court to provisionally certify a class to enjoin the government's ongoing violation of the class members' constitutional rights.

Dated: June 28, 2021                                    Respectfully Submitted,

                                                        /s/ Robert Frommer

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION