TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
    1100/1400/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0102/2569/1785
    Facsimile: (213) 894-6269/0142/0141
    E-mail: Andrew.Brown@usdoj.gov
           Victor.Rodgers@usdoj.gov
           Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, AND TRAVIS MAY,

        Plaintiffs,

        v.

UNITED STATES OF AMERICA, ET AL.,

        Defendants.

Case No. 2:21-CV-04405-RGK-MAR

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION AND DECLARATIONS OF STEPHEN J. JOBE, JESSIE MURRAY AND VICTOR A. RODGERS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      INTRODUCTION .................................................................................................1

II.     PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THE MERITS.................2

        A.      The FBI's May 20, 2021 Notice Of The Commencement Of
                Administrative Forfeiture Proceedings .........................................................2

        B.      Plaintiffs Sought A TRO That They Admitted Had No Immediate
                Impact And Failed To Advise In Their Moving Papers That Two Of
                The Moving Plaintiffs Faced No June 25, 2021 "Looming Deadline"
                As They Claimed To Support Their Emergency Relief Request,
                Because Those Plaintiffs Had Submitted A Claim To The FBI One
                Week Before The June 25, 2021 TRO Application Was Filed....................3

        C.      Gete Does Not Hold That A Single Notice, Such As The FBI
                Forfeiture Commencement Proceeding Notice, Must Include The
                Factual And Legal Bases That Justify The Forfeiture .................................6

                1.      Gete Held That An Administrative Agency Must Provide The
                        Factual And Legal Basis For The Forfeiture During The
                        Administrative Proceedings And Before The Agency Renders A
                        Final Judgment And Decision To Forfeit An Asset............................6

                2.      The Ninth Circuit's Extensive Discussion In Gete Of The Facts
                        And Events In The INS Administrative Forfeiture Proceedings
                        Reveals The Error In Plaintiff's Argument..........................................9

        D.      The INS Regulations Involved in Gete Are Materially Different From
                The Regulations At Issue Here.....................................................................12

        E.      The Pertinent Authorities, Including The United States Supreme
                Court's Decision in City Of West Covina v. Perkins, Show that The
                FBI's Forfeiture Notice Satisfies Due Process ...........................................14

III.    PLAINTIFF'S HAVE NOT SATISFIED THE IRREPARABLE INJURY
        REQUIREMENT FOR PRELIMINARY INJUNCTIVE RELIEF ......................19

IV.     CONCLUSION....................................................................................................20

DECLARATION OF STEPHEN J. JOBE ....................................................................21

# **TABLE OF CONTENTS CONTINUED**

DECLARATION OF SUPERVISORY SPECIAL AGENT JESSIE MURRAY...........21

DECLARATION OF AUSA VICTOR RODGERS .......................................................22

# TABLE OF AUTHORITIES

**Federal Cases**

Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury,
  686 F.3d 965 (9th Cir. 2012) ................................................................. 7, 8, 9

Alliance for Wild Rockies v. Cottrell,
  632 F.3d 1127 (9th Cir. 2011) ....................................................................... 19

Brewster v. Beck,
  859 F.3d 1194 (9th Cir. 2017) ......................................................................... 9

Campbell Soup Co. v. ConAgra, Inc.,
  977 F.2d 86 (3d Cir. 1992) ............................................................................ 20

Caribbean Marine Services Co., Inc. v. Baldridge,
  844 F.2d 668 (9th Cir. 1988) ......................................................................... 19

Church v. City of Huntsville,
  30 F.3d 1332 (11th Cir. 1994) ....................................................................... 20

City of West Covina v. Perkins,
  525 U.S. 234 (1999) ............................................................................... passim

D.T. v. Sumner County Schools,
  942 F.3d 324 (6th Cir. 2019) ......................................................................... 19

Gete v. I.N.S.,
  121 F.3d 1285 (9th Cir. 1997) ................................................................. passim

Gete v. I.N.S.,
  1999 U.S. Dist. LEXIS 11806 (W.D. Wash. Jul. 22, 1999) ............................. 6

Goldberg v. Kelly,
  397 U.S. 254 (1970) .................................................................................. 8, 12

Hernandez v. Sessions,
  872 F.3d 976 (9th Cir. 2017) ......................................................................... 20

In re Search Warrants for 27867 Orchard Lake Rd.,
  553 F. Supp. 2d 879 (E.D. Mich. 2008) ........................................................ 18

Juda v. Nerney,
  149 F.3d 1190, 1998 WL 317474 (10th Cir. 1998) ....................................... 16

## <u>TABLE OF AUTHORITIES CONTINUED</u>

<u>KindHearts for Charitable Humanitarian Dev. Inc. v. Geithner</u>,
   647 F. Supp. 2d 857 (N.D. Ohio 2009) ............................................................9

<u>Melendres v. Arpaio</u>,
   695 F.3d 990 (9th Cir. 2012) .....................................................................20

<u>Midgett v. Tri-County Metropolitan Transp. Dist. Of Oregon</u>,
   254 F.3d 846 (9th Cir. 2001) .....................................................................19

<u>Mohammad v. U.S.</u>,
   169 Fed. Appx. 475 (7th Cir 2006) .............................................................17

<u>Mullane v. Central Hanover Bank & Trust Co.</u>,
   339 U.S. 306 (1950) ........................................................................8, 12, 17

<u>Ordonez v. Stanley</u>,
   495 F. Supp. 3d 855 (C.D. Cal. 2020) ..........................................................9

<u>Sandovol v. County of Sonoma</u>,
   912 F.3d 509 (9th Cir. 2018) .......................................................................9

<u>U.S. v. Pickett</u>,
   2012 WL 694712 (E.D.N.Y. Mar. 1, 2012) ..................................................17

<u>United States v. 24 Firearms From Various Manufacturers</u>,
   2018 WL 4935453 (E.D. Wash. Oct. 11, 2018)..............................15, 16, 17

<u>Winter v. Natural Resources Defense Council, Inc.</u>,
   555 U.S. 7 (2008) ...................................................................................19

**Federal Statutes**

5 U.S.C. § 701(a)(2).................................................................................13

5 U.S.C. § 706(2)(A).................................................................................13

18 U.S.C. § 922(a)(4).................................................................................16

18 U.S.C. § 922(a)(6).................................................................................16

18 U.S.C. § 922(f).....................................................................................16

18 U.S.C. § 922(g).....................................................................................16

## <u>TABLE OF AUTHORITIES CONTINUED</u>

18 U.S.C. § 922(g)(3) ............................................................................................ 16

18 U.S.C. § 922(h) ................................................................................................. 16

18 U.S.C. § 922(i) .................................................................................................. 16

18 U.S.C. § 922(j) .................................................................................................. 16

18 U.S.C. § 922(k) ................................................................................................. 16

18 U.S.C. § 924(c) ................................................................................................. 16

18 U.S.C. § 924(d) ........................................................................................... 15, 16

18 U.S.C. § 924(d)(1) ............................................................................................ 16

18 U.S.C. § 924(d)(3) ............................................................................................ 16

18 U.S.C. § 981(a)(1)(C) ................................................................................... 4, 16

18 U.S.C. § 983 ..................................................................................................... 15

18 U.S.C. § 983(a)(1)(A)(i) .................................................................................... 9

18 U.S.C. § 983(a)(1)(A)(v) ................................................................................... 9

18 U.S.C. § 983(a)(3)(A) ................................................................................ passim

18 U.S.C. § 983(a)(3)(B) ................................................................................ passim

19 U.S.C. § 1609 ................................................................................................... 13

21 U.S.C. § 801 ..................................................................................................... 16

21 U.S.C. § 951 ..................................................................................................... 16

**Federal Regulations**

8 C.F.R. § 274 ....................................................................................................... 13

19 C.F.R. § 1602 ................................................................................................... 15

1

## TABLE OF AUTHORITIES CONTINUED

2

19 C.F.R. § 1603 ................................................................................................15

3

4

19 C.F.R. § 1604 ................................................................................................15

5

19 C.F.R. § 1605 ................................................................................................15

6

19 C.F.R. § 1606 ................................................................................................15

7

19 C.F.R. § 1607 ................................................................................................15

8

9

19 C.F.R. § 1608 ................................................................................................15

10

19 C.F.R. § 1609 ................................................................................................15

11

19 C.F.R. § 1610 ................................................................................................15

12

13

19 C.F.R. § 1611 ................................................................................................15

14

19 C.F.R. § 1612 ................................................................................................15

15

19 C.F.R. § 1613 ................................................................................................15

16

17

19 C.F.R. § 1614 ................................................................................................15

18

19 C.F.R. § 1615 ................................................................................................15

19

19 C.F.R. § 1616 ................................................................................................15

20

21

19 C.F.R. § 1617 ................................................................................................15

22

19 C.F.R. § 1618 ................................................................................................15

23

19 C.F.R. § 1619 ................................................................................................15

24

28 C.F.R. § 8 ..............................................................................................passim

25

28 C.F.R. § 8.10(e) ....................................................................................passim

26

28 C.F.R. § 8.10(g) ..............................................................................................5

27

28 C.F.R. § 8.12 ................................................................................................13

28

1

## <u>TABLE OF AUTHORITIES CONTINUED</u>

2

28 C.F.R. § 9 ..................................................................................................passim

3

4

28 C.F.R. § 9.3(g) ...........................................................................................18

5

28 C.F.R. § 9.3(i) ............................................................................................19

6

28 C.F.R. § 9.3(j)(2)........................................................................................18

7

28 C.F.R. § 9.4(a) ...........................................................................................14

8

28 C.F.R. § 9.5(a)(1)........................................................................................14

9

**Other Authorities**

10

Asset Forfeiture Policy Manual (2021), Chap. 14, Sec II. ..............................19

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants respectfully request that plaintiffs' motion for a preliminary injunction be denied.   Gete v. I.N.S., 121 F.3d 1285 (9th Cir. 1997) and plaintiffs' other cases do not stand for the proposition that due process requires that the FBI's May 2021 notice announcing the commencement of administrative forfeiture proceedings, standing alone, must set forth the factual details and legal basis that support forfeiture.  Instead, the cases hold that these details must be provided before an agency makes a final decision forfeiting an asset, so that a person has a meaningful opportunity to respond to a threatened forfeiture.  Plaintiffs cannot--with the mere flick of a pen--expand Gete's scope when the Ninth Circuit held that due process related to the conduct of an administrative proceeding from beginning to end in its entirety.

Plaintiffs failed to advise in their TRO application that two of the moving plaintiffs had already submitted a claim to the FBI one week before the application was filed and therefore faced no looming June 25, 2021 deadline as they argued to support their emergency relief request, nor had any difficulty in responding to the FBI's notice because they did so before seeking TRO relief.  Regardless of that oversight that resulted in consideration of complex constitutional and asset forfeiture issues on an unnecessarily rapid basis, the point is that submitting a claim ensures that the government must apprise the submitter of all the facts and legal bases for forfeiture, including the criminal statute violated, before civilly forfeiting an asset.  Upon receipt of a claim and by law, the administrative agency must suspend the administrative proceedings (meaning that it cannot issue a final judgment forfeiting an asset) and refer the matter to the United States Attorney's Office (the "USAO").  Pursuant to 18 U.S.C. § 983(a)(3)(A) & (B), if the USAO fails to file a complaint for forfeiture within 90 days after the agency receives the claim, the government must promptly release the property.  As far as due process is concerned, the complaint, and the judicial proceedings after the complaint is filed, provide notice of all the facts and legal bases for forfeiture, including the specific

criminal statute violated, so that persons opposing forfeiture will have a meaningful opportunity to respond before being deprived of their property by a court judgment. The conduct of judicial forfeiture proceedings do not violate due process.

Further, submitting a claim preserves the submitter's right to contest the forfeiture in court and to submit a petition to the administrative agency for agency review, so the recipient of the forfeiture notice has the right to obtain adjudication in both forums on the merits by simply submitting a claim. Moreover, a person contesting forfeiture in the judicial proceeding can obtain in discovery the government's basis for seizing an asset and commencing administrative forfeiture proceedings, and can raise any defenses (such as Fourth and Fifth Amendment defenses) they have to the property's forfeiture.

The FBI forfeiture notice is merely meant to notify recipients of their options to recover property; it is not intended to be an exhaustive list of the facts and details. (Indeed, a more specific FBI notice would confuse matters because the operative judicial complaint necessarily must set forth the key facts and legal details). Accordingly, this case falls more squarely within the facts of the Supreme Court's decision in <u>City of West Covina v. Perkins</u>, 525 U.S. 234 (1999), rather than <u>Gete</u>, where the Supreme Court held due process only requires a notice that informs of the options in seeking the return of property. Also, while no case holds that a forfeiture notice, like the notice here that does not detail the facts or criminal statute violated and is sent pursuant to the 28 C.F.R. Part 8 and 9 regulations involved here violates due process, there are cases that discuss <u>Gete</u> and hold that a forfeiture notice sent under those regulations does satisfy due process.

Plaintiffs have not shown a likelihood of success on the merits or irreparable injury. The government therefore respectfully requests that their motion be denied.

## II.   PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THE MERITS.

### A.   The FBI's May 20, 2021 Notice Of The FBI's Commencement Of Administrative Forfeiture Proceedings.

On May 20, 2021, the FBI initiated <u>in rem</u> administrative forfeiture proceedings as to the contents of particular identified boxes that were seized during March 2021 at U.S.

Private Vaults ("USPV"), including the contents of boxes of plaintiffs Jeni Verdon-Pearsons ("Verdon-Pearsons"), Michael Storc ("Storc") and Travis May ("May"), by sending a notice letter to USPV.  Docket No. 44-8 (Johnson Decl. Ex. G at pages 20-40); Docket No. 45 (gvt.'s oppo. to TRO [FBI Supervisory Special Agent Murray Decl. ¶ 2] at page 37 of 37).  In addition, the FBI sent notice letters on May 20 and 21, 2021 to May, Verdon-Pearsons and Storc, respectively, to notify them that administrative forfeiture proceedings had been initiated on contents of their boxes.  Docket Nos. 44-9, 44-10 and 44-11 (Johnson Decl. Exs. H, I and J); Declaration of Stephen J. Jobe, Unit Chief, Legal Forfeiture Unit, Office of the General Counsel, FBI in Washington, D.C. ¶¶ 7 and 7b (May), 7c (Verdon-Pearsons) and 7e (Storc).  As explained in Section II.E. below, the purpose of the notice a federal agency, like the FBI, sends to recipients informing them of the commencement of <u>in rem</u> administrative forfeiture proceedings is to advise the recipients of the options available to seek the return of their property; it is not a final decision announcing that property has been forfeited, but instead is the beginning of the process, merely initiates forfeiture proceedings, and informs the recipients they may submit claims and petitions to the federal agency (here, the FBI) and advises of the consequences of doing so.

**B.  Plaintiffs Sought A TRO That They Admitted Had No Immediate Impact And Failed To Advise In Their Moving Papers That Two Of The Moving Plaintiffs Faced No June 25, 2021 "Looming Deadline" As They Claimed To Support Their Emergency Relief Request, Because Those Plaintiffs Had Submitted A Claim To The FBI One Week Before The June 15, 2021 TRO Application Was Filed.**

Plaintiffs stated in their TRO application "[t]o be clear, the requested temporary restraining order would not necessarily bar the government from forfeiting the contents of *any* USPV box.  The order would simply bar the government from forfeiting the contents of USPV boxes based on civil forfeiture notices that fail to state the factual or legal basis for the forfeiture."  Docket No. 44 (plaintiffs' June 15, 2021 TRO application

11:3-6) (emphasis in original).  The government has not filed any judicial civil forfeiture actions either as to the plaintiffs covered by the Court's June 22, 2021 ruling (Verdon-Pearson, Storc and May) or property claimed by anyone else (such as Ruiz), nor had the government planned to do so as of the time of plaintiffs' TRO filing.

The reasons are that the 90-day deadline for the government to file a judicial complaint set forth in 18 U.S.C. § 983(a)(3)(A) & (B) does not expire until mid-August 2021 at the earliest (for claims submitted in mid-June), there are no pending administrative petition proceedings underway as to Verdon-Pearson, Storc, May or Ruiz (Jobe Decl. ¶ 10) that would enable the government to civilly forfeit the assets they claimed, and the deadline to file claims (which deadline must pass before civilly forfeiting assets in administrative proceedings when no claim is filed) will not expire at the earliest before August 3, 2021 as to the first wave of USPV seizures the FBI posted on the internet on June 4, 2021 (Docket No. 45 [gvt.'s oppo. to TRO (Murray Decl. ¶ 3) at page 37 of 37]).  In addition, when judicial forfeiture proceedings go forward in the future against property for which a claim has been submitted to the FBI such as Verdon-Pearson, Storc, May and Ruiz (see Jobe Decl. ¶ 8a [May], 8b [Verdon-Pearsons], 8c [Ruiz] and 8d [Storc]), the government must necessarily provide more details regarding the factual and legal basis for forfeiture--the government's complaint would detail all these matters, including the criminal statute violated that supported the forfeiture under the applicable forfeiture trigger statute (e.g., 18 U.S.C. § 981(a)(1)(C)) as the government could not obtain a judgment of forfeiture from a court without doing so.  See Rodgers Decl. ¶¶ 2 and 3 and Exs. A and B.  Thus, plaintiffs' request via their TRO and in their current motion for a preliminary injunction that another notice be sent setting forth details is beside the point.  Plaintiffs' June 15, 2021 TRO application and June 17, 2021 TRO reply reflected a fundamental misunderstanding of asset forfeiture procedure.

In order to justify their request for emergency relief, plaintiffs argued in their June 15, 2021 TRO application that the TRO was necessary because they faced June 24, 2021 (May) and June 25, 2021 (Verdon-Pearsons and Storc) "looming deadlines" to respond

to the forfeiture notices (collectively, "the Forfeiture Commencement Proceeding Notice") that plaintiffs argued violated due process because the notices did not contain factual and legal details required by <u>Gete v. I.N.S.</u>, 121 F.3d 1285 (9th Cir. 1997), and made it impossible for plaintiffs to respond thereto by the June 24 and 25 deadlines. Docket No. 44 (plaintiffs' TRO app. 3:1-8 and 10:20-11:2)  and Docket Nos. 44-9, 44-10 and 44-11 (Johnson Decl. Exs. H, I and J [May 20 and 21, 2021 forfeiture notices]).   In so arguing, however, plaintiffs failed to mention that Verdon-Pearsons and Storc had, in fact, responded to the forfeiture notice by submitting a claim to the FBI one week earlier on June 9, 2021 (Murray Decl. ¶ 3 and Exs. A-D; Jobe Decl. ¶¶ 8b and 8d),[1] which stopped the administrative forfeiture proceeding as to their property (Jobe Decl. ¶ 9 and 28 C.F.R. § 8.10(e)), required the government to file a forfeiture complaint within 90 days from the June 9 submission date if the government wished to forfeit their property or else release the property (<u>see</u> 18 U.S.C. § 983(a)(3)(A) & (B)) and preserved their right to have both a judicial and administrative resolution if a judicial complaint was filed.  In addition, the judicial complaint and the litigation proceedings thereafter would provide all the facts and details required by due process before any final judgment of forfeiture could be entered.  Rodgers Decl. ¶¶ 2 and 3 and Exs. A and B.

The government respectfully submits that the June 9, 2021 claim submission information should have been disclosed because it was pertinent to whether this matter needed to be decided by a TRO, particularly when the regulations authorize the FBI to extend deadlines for claims that are timely submitted but are defective for some reason. 28 C.F.R. § 8.10(g).  The problem with deciding matters on an emergency basis, when there is no actual urgent need to do so, is that it requires the parties and the Court to rapidly resolve and analyze facts and complex legal issues like the due process and asset forfeiture laws and regulations involved here.  Plaintiffs' arguments in their TRO

---

[1] Instead of advising in their moving papers that the June 9, 2021 claims had been filed, plaintiffs instead set forth this information in a footnote in their June 17, 2021 TRO reply brief, and did not disclose therein the date when the claims had been filed. Docket No. 45 (plaintiffs' TRO reply brief 6:26-28 n.5).

application regarding <u>Gete</u> and their other cases' application to the Forfeiture

Commencement Proceeding Notice standing alone are simply wrong.

### C.   <u>Gete</u> Does Not Hold That A Single Notice, Such As The FBI Forfeiture Commencement Proceeding Notice, Must Include The Factual And Legal Bases That Justify The Forfeiture.

#### 1.   <u>Gete</u> Held That An Administrative Agency Must Provide The Factual And Legal Basis For The Forfeiture During The Administrative Proceedings And Before The Agency Renders A Final Judgment And Decision To Forfeit An Asset.

Plaintiffs completely mischaracterized <u>Gete</u>'s holding in their June 15, 2021 TRO application, by falsely arguing that the holding was directed solely to a forfeiture notice. They argued "plaintiffs sued to challenge administrative forfeiture <u>notices</u> sent by INS to property owners" (citing page 1287 in <u>Gete</u>); "[t]he plaintiffs claimed the <u>barebones notice</u> sent by INS did not 'give sufficient notice concerning the factual and legal bases' for the forfeiture" (citing page 1297 in <u>Gete</u>); and that the "[t]he Ninth Circuit agreed" [and] . . . thus held that due process requires the government to disclose 'the factual bases for seizures' as well as 'the specific statutory provision allegedly violated.' " (citing page 1298 in <u>Gete</u>).  Docket No. 44 (plaintiffs' June 15, 2021 TRO app. 15:25-16:5) (emphasis added).  But none of this is true.

None of these statements appear in <u>Gete</u> at the pages plaintiffs' cite or anywhere else in the Ninth Circuit's opinion.[2]  Plaintiffs in <u>Gete</u> did not sue merely to challenge a forfeiture notice; instead, the page of the opinion plaintiffs cite notes that the court was considering "administrative review of forfeitures under procedures lacking all semblance of due process" (<u>id.</u> at 1287), which included the multiple events as described in the opinion and not just a single notice.  Moreover, the plaintiffs in <u>Gete</u> neither argued that

---

[2] The government recognizes that some of the plaintiffs in Gete made an argument regarding the forfeiture notice on remand following the Ninth Circuit's ruling.  <u>See</u> <u>Gete v. INS</u>, 1999 U.S. Dist. LEXIS 11806 (W.D. Wash. Jul. 22, 1999).  However, a district court decision lacks the precedential value of a Ninth Circuit opinion.

1    the forfeiture notice standing alone violated due process, nor characterized the notice as

2    "barebones" at page 1297 of the opinion, and the Ninth Circuit did not agree or hold that

3    the factual bases for seizure and the statute identifying the specific crime violated must

4    be included in a forfeiture notice standing alone that merely commences the

5    administrative forfeiture proceeding, in order to comport with due process.

6         After arguing that Gete "held that due process requires the government to disclose

7    'the factual bases for seizures' as well as 'the specific statutory provision allegedly

8    violated' Id." [docket No. 44 (plaintiffs' June 15, 2021 TRO app. 16:3-5)], which (as

9    explained above) suggested the requirement applied to a forfeiture notice that

10   commences the proceeding standing alone, plaintiffs then argued "[t]he Ninth Circuit's

11   decision in Al Haramain also applies that due process requirement" [docket No. 44

12   (plaintiffs' June 15, 2021 TRO app. 16:6-7)], and later argued in their TRO reply brief

13   that Al Haramain "applied Gete to hold that OFAC [the Office of Foreign Assets

14   Control] violated due process by freezing funds without providing notice of the basis for

15   the seizure" [docket no. 46 (plaintiff's June 17, 2021 TRO reply 4:16-18)], thus again

16   falsely implying that the cases held that due process required that all the factual and legal

17   grounds for a seizure or forfeiture must be contained in a single document sent when an

18   asset is seized or administrative forfeiture proceedings are commenced.  That is not true-

19   -none of plaintiffs' cases hold or imply that due process requires that this information be

20   included in a form forfeiture notice commencing administrative forfeiture proceedings

21   that merely informs recipients of their options for seeking the return of their property.

22        Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury, 686 F.3d 965

23   (9th Cir. 2012), involved OFAC making final decisions in 2004 to designate and then in

24   2008 to redesignate plaintiff as a terrorist organization and block plaintiff's assets,

25   without providing any information during the four year period, resulting in plaintiff

26   being "unable to respond adequately to the agency's unknown suspicions" [id. at 984-85]

27   and the Ninth Circuit in Al Haramain to decide Gete's reasoning was applicable.  Id. at

28   987.  The Ninth Circuit stated "the seven-month period of the original investigation, and

1  certainly the four-year period of the entire redesignation determination, gave OFAC

2  ample time to provide [plaintiff] with, at a minimum, a terse and complete statement of

3  reasons for the investigation.  There is no reason why OFAC could not have given notice

4  in this particular case."  Id. at 986 (footnote omitted).

5       It is in that context--namely the seven-month and four-year periods after the

6  OFAC entered final initial designation and redesignate designations of plaintiff as a

7  terrorist organization (which would be analogous to an administrative agency entering a

8  final judgment forfeiting an asset, which has not occurred here)--that the Ninth Circuit

9  discussed Gete, noting that defendant INS had argued in Gete that the ten plaintiff

10  vehicle owners already had a general idea of why their vehicles were seized, so there

11  was no reason for the INS to provide any factual or legal details during the course of the

12  administrative forfeiture proceedings and before entering administrative final judgments

13  forfeiting the plaintiffs' vehicles.  The Ninth Circuit noted in Al Haramain that the Ninth

14  Circuit in Gete had "disagreed" with that INS' argument in Gete, "and held that the Due

15  Process Clause required the INS 'to give sufficient notice concerning the factual and

16  legal bases for its seizures.' . . . We held that the Due Process Clause required the INS to

17  disclose the 'factual bases for seizure[]' and 'the specific statutory provision allegedly

18  violated.' "  Al Haramain, 686 F.3d at 987 (quoting Gete at 1297-98).

19       The government acknowledges that Gete is good law, and the soundness of Gete

20  and Al Haramain's due process discussions based on quotes from two Supreme Court

21  decisions, i.e., Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) and

22  Goldberg v. Kelly, 397 U.S. 254 (1970), and cited in Gete at 1297.  But what the

23  government contends is that neither Gete, Al Haramain, nor any of plaintiffs' other cases

24  hold, suggest or intimate that the FBI's single forfeiture notice that merely announces the

25  commencement of administrative forfeiture proceedings standing alone determines

26  whether a due process violation has occurred.  That is simply not the law--plaintiffs

27  cases do not hold that, without setting forth all the facts and legal grounds to support

28  commencing an administrative forfeiture proceeding, a two page forfeiture notice

violates due process notice requirements particularly where, as here, the government will be providing all the factual details and legal bases later and long before any final decision to forfeit any property is made or a person must respond on the merits to the government's arguments regarding why the property should be forfeited.

It is the totality of the events from beginning to end, and not a discrete step along the way, that determines whether a due process violation has occurred.  Plaintiffs' argument, made by way of a TRO application expressing an urgent need for immediate relief when none existed, concerning <u>Gete</u>'s scope is breathtaking.

Plaintiffs' argument, relying upon <u>Al Haramain</u> and additional cases that a notice must be sent when an asset is seized is similarly a non-starter.  18 U.S.C. § 983(a)(1)(A)(i), which is part of the Civil Asset Forfeiture Reform Act of 2000 (the "CAFRA"), provides that notice of the commencement of an administrative forfeiture need not be sent until 60 days after an asset is seized.  In addition, if the identity or interest of a party is not determined until after the seizure but before the agency issues a declaration of administrative forfeiture, notice of the commencement of administrative forfeiture must be sent within 60 days after the government determines the identity of the party or that party's interest in an asset.  18 U.S.C. § 983(a)(1)(A)(v).  Plaintiffs' cases dealing with proceedings not governed by the CAFRA are irrelevant.[3]

## 2.    The Ninth Circuit's Extensive Discussion In <u>Gete</u> Of The Facts And Events In The INS Administrative Forfeiture Proceedings Reveals The Error In Plaintiffs' Arguments.

<u>Gete</u> involved the seizure and administrative forfeiture by the INS where the Ninth Circuit was concerned that the INS was making final decisions forfeiting vehicles in

---

[3] Plaintiffs other cases are also unavailing. <u>KindHearts for Charitable Humanitarian Dev. Inc. v. Geithner</u>, 647 F. Supp. 2d 857 (N.D. Ohio 2009), involved the failure to disclose for three years the reasons for blocking assets; the case does involve the contents of a notice of the initiation of administrative forfeiture proceedings under the statutes and regulations at issue here.  As to <u>Sandoval v. County of Sonoma</u>, 912 F.3d 509 (9th Cir. 2018), <u>Brewster v. Beck</u>, 859 F.3d 1194 (9th Cir. 2017) and <u>Ordonez v. Stanley</u>, 495 F. Supp. 3d 855 (C.D. Cal. 2020), the government incorporates here the arguments it set forth in opposing the TRO.  Docket No. 45 (gvt.'s TRO opposition at 15:1-28).

administrative proceedings that lacked any procedural safeguards.  The Ninth Circuit
discussed in detail the entirety of those administrative proceedings from beginning to
end, as set forth below.  The lawsuit was brought by ten plaintiffs whose vehicles were
seized by the INS for allegedly having been used to transport illegal aliens into the
United States in violation of federal law.  Id. at 1287-1289.  After a vehicle was seized,
an INS form letter advised the vehicle owners that they were given the option to either
contest the forfeiture in court or administratively by a "personal interview" with an
immigration officer which was the "heart of the [administrative] forfeiture proceeding."
Id. at 1290.  In other words, by choosing the INS administrative forfeiture procedure
option, the vehicle owner could not have a court decide the forfeiture issue on the merits;
instead, the owner was at the mercy of the INS administrative process because "the
merits of those decisions generally fall within the agency's sphere of unreviewable
discretion."  Id. at 1291.

If the interviewing immigration officer decided during the personal interview that
probable cause did not exist to seize the vehicle or that forfeiture was not warranted
because the vehicle had not been used to transport illegal aliens (i.e., no criminal
violation had occurred), the INS was required to return the vehicle.  Id. at 1290.  If the
officer decided that a criminal violation had occurred but the owner established that the
owner was not privy to the illegal use of the vehicle, the INS Regional Commissioner
had the discretion to either forfeit or return the vehicle to the owner.  Id.  Once the INS
determined that a vehicle was forfeited, the INS issued a declaration to that effect
without providing any explanation or statement of reasons therefor.  Id.

After the vehicle was declared forfeited, the owner could file a petition that the
forfeiture be remitted and the vehicle returned, and a petition for mitigation requesting
that the property be returned upon payment of a fine.  Id.  When denying the petition
request, the INS Regional Commissioner was required to issue a written determination
setting forth the reasons for the denial, but in actual practice provided the petitioner with
nothing more than a form rejection listing standard reasons for denying the petition, with

check marks next to those the Commissioner considered applicable to the case.  Id. at 1291.  In addition, the petitioner could file a single request for reconsideration within ten days of the rejection of the petition, but that request had to be based on evidence not previously considered.  Id.  After the ten days elapsed, there was no further review of the decision in any forum.  Id.

In discussing the deficiencies in the INS administrative procedure, the Ninth Circuit noted that plaintiffs had produced evidence confirming that the INS' failure to give sufficient notice concerning the factual and legal bases for its seizures precluded the vehicle owners from effectively responding at the "personal interview" with the immigration officer who made forfeiture decisions, and the INS' refusal to provide access to seizing officer reports and related documents had a similar effect and also limited the vehicle owners ability to prepare petitions for remission, mitigation and for reconsideration.  Id. at 1297.  Additionally, plaintiffs showed that the INS' failure to provide an explanation of the reasons for its forfeiture decision "even more drastically affects their preparation of post-forfeiture petitions."  Id.

Based on these facts and the evidentiary showing made by the ten plaintiffs in Gete, the Ninth Circuit concluded that a due process violation had occurred and required the INS to provide additional facts, details and other evidence to the vehicle owners before the INS issued a final ruling declaring a vehicle forfeited.  Id. at 1298.  In other words, based on the proffered evidence regarding the proceedings in their entirety, the court concluded that the INS administrative review process occurred "under procedures lacking all semblance of due process."  Gete, 121 F.3d at 1287.  Far from confining the analysis to a single notice letter that informed owners of their options as is involved in the instant case, the Ninth Circuit explained that as part of the administrative process the INS should provide vehicle owners with the evidence to be used against them, including officer reports detailing the facts, and set forth the specific statute allegedly violated, so that the vehicle owners during the course of the INS administrative proceedings would be allowed to clear up simple misunderstandings, rebut erroneous inferences drawn by

11

1   the INS, understand the true nature of the INS charges against them, and be given an

2   opportunity to prepare a proper defense to the threatened forfeiture.  Id. at 1298.

3           In light of these facts concerning how the administrative proceedings had been

4   conducted as to the ten plaintiffs in Gete, and citing Goldberg, 397 U.S. at 267 for the

5   proposition due process requires, at a minimum, the "opportunity to be heard . . . at a

6   meaningful time and in a meaningful manner," and Mullane, 339 U.S. at 314, for the

7   principle that due process requires that notice be "reasonably calculated, under all the

8   circumstances, to apprise interested parties of the pendency of the action and afford them

9   an opportunity to present their objections" (Gete, 121 F.3d at 1297 [internal quotes

10  omitted]), Gete held that the INS administrative proceedings in their totality did not

11  satisfy due process.  However, the Ninth Circuit in Gete did not hold that the initial

12  forfeiture notice that informs the recipient of his options to proceed administratively or

13  judicially must contain all that information to pass constitutional muster.  Unlike in Gete,

14  plaintiffs have neither provided evidence of any administrative proceeding in progress

15  and during which the FBI either was empowered to or rendered a final ruling declaring

16  property forfeited or denied post-forfeiture petitions for remission, mitigation or

17  reconsideration, in violation of due process, and the evidence illustrates there is no such

18  proceeding (Jobe Decl. ¶ 10).  The reason for plaintiffs' evidentiary deficiency makes

19  clear why Gete does not apply to the mere forfeiture notice here--upon the submission of

20  the claims (and plaintiffs have done so here; Murray Decl. ¶ 3 and Exs. A-F and Jobe

21  Decl. ¶ 8a-d), the FBI must stop its activities and is precluded from issuing a declaration

22  administratively forfeiting an asset.  Jobe Decl. ¶ 9 and 28 C.F.R. § 8.10(e).  Plaintiffs'

23  reliance on Gete and its progeny to support their argument that the Forfeiture Proceeding

24  Commencement Notice standing alone violates due process, is thus wholly misplaced.

25      **D.     The INS Regulations Involved In Gete Are Materially Different From**

26      **The Regulations At Issue Here.**

27          There are additional reasons Gete does not aid plaintiffs here.  The regulations

28  pertinent to the instant case are 28 C.F.R. Part 8 and 9, which reflect the following.

Once the agency that issues a notice of the commencement of administrative forfeiture proceedings, like the FBI Commencement Proceeding Notice, receives a valid claim, the agency must "suspend the administrative forfeiture proceeding" as to the asset and refer the matter to the USAO (28 C.F.R. § 8.10(e); see also Jobe Decl. ¶ 9), which means that the agency cannot enter a final decision declaring the asset administratively forfeited under 28 C.F.R. § 8.12, i.e., the equivalent of a court judgment of forfeiture in a judicial case (id. and see also 19 U.S.C. § 1609), and the government must "promptly release" the property if the USAO does not file an in rem judicial civil forfeiture complaint naming the asset as the defendant within 90 days after the agency received the claim in the administrative forfeiture proceedings (see 18 U.S.C. § 983(a)(3)(A) & (B)).

What distinguishes the 8 C.F.R. Part 274 forfeiture regulations at issue in Gete from the 28 C.F.R. Part 8 and 9 regulations involved here and shows that the FBI's notice letter complies with due process, is that under the 28 C.F.R. Part 8 and 9 regulations, the submitter's mere submission of a claim to the administrative agency preserves the submitter's right to, upon receipt of the judicial complaint that outlines all the facts and legal details, contest the forfeiture in Court (by filing a claim contesting forfeiture in the judicial proceedings) and to submit a petition for remission to the agency.  Rodgers Decl. ¶¶ 2 and 3 and Exs. A and B.  This is in sharp contrast to the INS regulations involved in Gete, because the INS regulations involved there prohibited vehicle owners from having a Court decide the forfeiture issue on the merits but instead left the vehicle owners to the mercy of the INS administrative process because "the merits of those decisions generally fall within the agency's sphere of unreviewable discretion" (id. at 1291 [citations omitted]; see also 5 U.S.C. § 701(a)(2)), which is not subject to judicial review unless the vehicle owner could meet the high standard of proving the INS' forfeiture decision on the merits was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. § 706(2)(A)).

The procedures here are different.  By submitting to the FBI just a claim to contest the forfeiture of an asset, the submitter preserves the right to later contest forfeiture in

the judicial forfeiture proceedings and submit a petition for remission when the USAO files an in rem judicial civil forfeiture complaint against the asset.  The judicial forfeiture complaint will set forth the factual and legal basis for the forfeiture, including both the specific criminal statute violated and the forfeiture statute that permits forfeiture of the defendant asset based on the violated criminal statute.  Rodgers Decl. ¶¶ 2 and 3 and Exs. A and B.  In addition, the complaint will be served with a letter that advises the letter recipient that they can file a claim in court and submit a petition for remission or mitigation for decision by a federal agency (id.), and petitions for remission or mitigation are not decided until the property is forfeited, after the judicial action has concluded.[4] Furthermore, providing factual and legal details in a form forfeiture notice would merely confuse the recipient because the forfeiture of the asset will be decided on the facts and laws as set forth in the judicial action, which will likely not be exactly the same as the information contained in a form administrative agency forfeiture commencement notice.

In fact, because adjudication of the forfeiture issue is resolved only after a court proceeding when a claim is submitted to the FBI, and the government must prove its case in Court, plaintiffs argument boils down to an assertion that a future judicial forfeiture proceeding will be unfair and violate due process because the government will not advise them of the facts and law (and the Court will permit the government not to advise them of the same), sufficient to allow them to defend the action.  No judicial case has been commenced, and plaintiffs can obtain whatever discovery they deem necessary in the judicial proceeding to find out the basis for the seizure and the commencement of administrative and judicial forfeiture proceedings; no argument has (or can) be made that plaintiffs should be entitled to injunctive relief where, as here, they offer no evidence and instead proffer speculation about future events that have not even occurred.

---

[4] See 28 C.F.R. § 9.4(a) (noting that petitions are considered any time after notice but before the disposition of "forfeited" property); 28 C.F.R. § 9.5(a)(1)  (remission of a "forfeiture" will occur if the petitioner establishes certain facts); Asset Forfeiture Policy Manual (2021) at pages 164-65, located at https://www.justice.gov/criminal-afmls/file/839521/download (federal agency will "adjudicate the petition in a judicial forfeiture, but only after the claim is resolved").

1    **E.    THE PERTINENT AUTHORITIES, INCLUDING THE UNITED**
2           **STATES SUPREME COURT'S DECISION IN <u>CITY OF WEST</u>**
3           **<u>COVINA v. PERKINS</u>, SHOW THAT THE FBI'S FORFEITURE**
4           **NOTICE SATISFIES DUE PROCESS.**

5           As set forth above, <u>Gete</u> and plaintiffs' other cases do not show that the Forfeiture

6    Commencement Proceeding Notice violates due process.  That is sufficient reason to

7    deny the request for a preliminary injunction.  But that argument does not stand alone--

8    denial of plaintiffs' motion is proper for the additional reason that caselaw upholding

9    similar forfeiture notices proves that no due process violation has occurred here.

10          Plaintiffs have not cited a single case, because there is none, holding that a notice

11   of the commencement of administrative forfeiture under the 28 C.F.R. Part 8 and 9

12   regulations (like the FBI Forfeiture Commencement Proceeding Notice), standing alone,

13   violates due process based on the reasoning of <u>Gete</u>.  No Ninth Circuit or any other case

14   holds that the forfeiture notice initiating administrative forfeiture proceedings under

15   these regulations must include the factual and legal basis for the forfeiture and the

16   underlying criminal statute violated.  However, there are cases holding that 28 C.F.R.

17   Part 8 and 9 forfeiture notices announcing the commencement of administrative

18   forfeiture proceedings, like the FBI Forfeiture Commencement Proceeding Notice, do

19   not run afoul of <u>Gete</u>'s due process ruling.

20          A case directly on point is <u>United States v. 24 Firearms From Various</u>

21   <u>Manufacturers</u>, 2018 WL 4935453 (E.D. Wash. Oct. 11, 2018).  In that case, a claimant

22   filed a motion to dismiss the government's judicial forfeiture complaint because the

23   notice of the commencement of administrative forfeiture sent by the federal Bureau of

24   Alcohol, Tobacco and Firearms and Explosives ("ATF"), like the FBI Forfeiture

25   Commencement Proceeding Notice here, only stated the date of seizure (December 13,

26   2017), the place of seizure (Spokane, Washington) and the statutory basis (18 U.S.C.

27   § 924(d) [which is the forfeiture trigger statute], 19 C.F.R. §§ 1602-1619, 18 U.S.C.

28   § 983 and 28 C.F.R. Part 8 and 9).  (The latter three statutes and regulations are the same

as those cited in the FBI's notice; the only difference between the ATF and FBI notices is that the FBI's notice cites 18 U.S.C. § 981(a)(1)(C) as the forfeiture trigger statute, while 18 U.S.C. § 924(d) was the trigger statute cited in the ATF notice).  After the ATF notice was sent, the government filed within the statutory deadline a judicial forfeiture complaint, which alleged that forfeiture was being sought because of a violation of 18 U.S.C. § 922(g)(3) (i.e., drug user in possession of firearms and possession), which therefore permitted forfeiture under the forfeiture trigger statute 18 U.S.C. § 924(d).

Like here, claimant relied on Gete and argued that the ATF's forfeiture notice violated due process because it did not list the underlying criminal statute violated (18 U.S.C. § 922(g)(3)) .  Id. at *3.  Like here, the forfeiture trigger statute in the ATF notice (18 U.S.C. § 924(d)) allowed for forfeiture based on a long laundry list and broad variety of crimes.[5]  Id.  The court discussed Gete, rejected claimant's argument that Gete required additional disclosures in the ATF notice to comply with due process, and denied claimant's motion to dismiss the government's judicial forfeiture complaint.  The court held "that the absence of an explicit reference to § 922(g)(3) does not render the notice constitutionally deficient. . . . In sum, the Court finds that . . . the notice of administrative forfeiture proceedings was constitutionally sufficient."  Id.

Other decisions stand for the general proposition that due process does not require a notice commencing administrative forfeiture proceedings to include the underlying facts and legal grounds for the forfeiture.  In Juda v. Nerney, 149 F.3d 1190, 1998 WL 317474 (10th Cir. 1998), the U.S. Customs Service sent notices of commencement of administrative forfeiture (id. at *3), and the Tenth Circuit stated "we have found no case law supporting Juda's suggestion that we require a particularized narrative of allegedly illegal acts [in the notice] .  After a review of the record, we agree with the magistrate

---

[5] 18 U.S.C. § 924(d) lists a long list of crimes for which forfeiture is authorized, including 18 U.S.C. §§ 922(a)(4), 922(a)(6), 922(f), 922(g), 922(h), 922(i), 922(j), 922(k) and 924(c), any drug offense under the Controlled Substances Act (21 U.S.C. § 801 et seq.) and any drug offense under the Controlled Substance Import and Export Act (21 U.S.C. § 951 et seq.).  See 18 U.S.C. § 924(d)(1) and (3).

1    judge's finding that Juda received constitutionally adequate notice."  Id. at *5.

2           The facts in the instant case are more closely aligned with those in the United

3    States Supreme Court's decision in City of West Covina v. Perkins, 525 U.S. 234

4    (1999), then the facts in Gete.  In City of West Covina, the Supreme Court rejected

5    plaintiffs' argument that the City of West Covina's notice of the procedure for retrieving

6    their seized property violated due process.  Although the City had "notified [plaintiffs] of

7    the initial seizure and gave them an inventory of the property taken[,]" plaintiffs argued

8    "the City deprived them of due process by failing to provide them notice of the remedies

9    and the factual information necessary to invoke the remedies under California law."  Id.

10   at 240.  Rejecting that argument, the Supreme Court cited Mullane and held that due

11   process does not require "individualized notice of state-law remedies which, like those at

12   issue here, are established by published, generally available state statutes and case law.

13   Once the property owner is informed that his property has been seized, he can turn to

14   these public sources to learn about the remedial procedures available to him.  The City

15   need not take other steps to inform him of his options."  Id. at 240 (citations omitted).

16          The laws and regulations regarding the impact of filings of claims and petitions

17   for remission are clearly set forth in the Forfeiture Commencement Proceeding Notice

18   and in any event are matters of public record.  In addition to the decisions discussed

19   above, which unlike Gete and plaintiffs' other cases actually address forfeiture notices

20   under the 28 C.F.R. Part 8 and 9 regulations involved here, multiple courts have

21   followed City of West Covina's rationale that the recipient need only be advised of their

22   remedies to seek return of the property and concluded that forfeiture notices under 28

23   C.F.R. Part 8 and 9 regulations comply with due process.  See U.S. v. Pickett, 2012 WL

24   694712 (E.D.N.Y. Mar. 1, 2012) (agency's notice of commencement of administrative

25   forfeiture was lawful because it informed claimant of his remedies to recover his

26   property by filing claim or petition for remission); Mohammad v. U.S., 169 Fed. Appx.

27   475, 482 (7th Cir 2006) (plaintiff's argument that the DEA's forfeiture notice was

28   confusing, contradicted the underlying forfeiture statutory scheme and violated

*Mullane*'s due process requirements "lacks merit"); In re Search Warrants for 27867 Orchard Lake Rd., 553 F. Supp. 2d 879, 884-85 (E.D. Mich. 2008) (DEA's notice of commencement of administrative forfeiture proceedings adequately appraised recipient of her choice between submitting a claim or petition and therefore did not violate due process).

The FBI's notice complies with these requirements.  It explains that the government may grant petitions for remission or mitigation and the recipient may submit a claim [see Sections I and II], sets forth the deadlines for submitting claims (the date set forth in the notice) and petitions for remission (30 days after the forfeiture notice is received) [see Sections IB and IIA], advises that both a claim and petition for remission may be filed and explains if only a petition is filed and no one files a claim to an asset, the petition will be decided by the seizing agency [see Section IA and IIG], refers the notice letter recipients to a link where the 28 C.F.R. Part 8 and 9 regulations and a sample petition or claim can be downloaded and explains the link can be used to submit petitions or claims online [see Sections ID, IH and IID] and explicitly states "[a] timely claim stops the administrative forfeiture proceeding.  The seizing agency forwards the timely claims to the U.S. Attorney's Office for further proceedings" [see Sections IIG; see also Jobe Decl. ¶ 9 and 28 C.F.R. § 8.10(e)].  Under the Supreme Court's decision in City of West Covina, the FBI's forfeiture notice does not run afoul of due process.

Finally, and although not germane here because no petition proceedings are underway, where a petition for remission to an asset is submitted for which no claim has been submitted by the notice letter and internet publication deadlines (which is not the case here as plaintiffs have submitted claims and thereby compelled the FBI to stop the administrative proceedings), then steps will be taken that will ultimately result in a final petition decision as to the property.  The FBI will investigate the merits of the petition and submit a written report to the Ruling Official (28 C.F.R. § 9.3(g)), the Ruling Official will then review and consider the report and issue a ruling (id.), and the petitioner is notified of the reasons for the denial of the petition if it is denied and the

right to submit a request for reconsideration which is decided by a different ruling official then the one who ruled on the original petition (28 C.F.R § 9.3(i) and (j)(2)).  But no one has pointed to any wrongful conduct as to any FBI petition proceeding here, for the simple reason that no petitions can even be considered (let alone ruled upon) until all the claim deadlines have passed without a claim being submitted as to an asset.

## III.   PLAINTIFFS HAVE NOT SATISFIED THE IRREPARABLE INJURY REQUIREMENT FOR PRELIMINARY INJUNCTIVE RELIEF.

A preliminary injunction may not be granted based on a mere possibility of irreparable harm, even if a plaintiff demonstrates a strong likelihood of success on the merits or the other factors evaluated when deciding a preliminary injunction motion. D.T. v. Sumner County Schools, 942 F.3d 324, 326-27 (6th Cir. 2019)  ("even the strongest showing on the other three factors [considered in ruling on a preliminary injunction motion] cannot eliminate the irreparable harm requirement.  That factor is indispensable:  If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit") (emphasis in original and internal quotation marks and citations omitted).  This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."   Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008) (citation omitted); see also Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) .  "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."  Caribbean Marine Services Co., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted).

In addition, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."  Id. (citation omitted).  Establishing a risk of irreparable harm in the indefinite future is not enough; the harm must be shown to

be imminent.  <u>Midgett v. Tri-County Metropolitan Transp. Dist. Of Oregon</u>, 254 F.3d 846, 850 (9th Cir. 2001) ("[p]laintiff must make a showing that he faces a real or immediate threat of substantial or irreparable injury") (citation omitted); <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1337 (11th Cir. 1994) (party seeking injunctive relief must show and prove a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury); <u>Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F.2d 86, 91 (3d Cir. 1992) ("a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future.  Rather, the moving party must make a clear showing of <u>immediate</u> irreparable harm") (emphasis in original and citation and internal quotation marks omitted).   While it is true the deprivation of constitutional rights constitutes irreparable injury (<u>see</u> <u>Melendres v. Arpaio</u>, 695 F.3d 990 (9th Cir. 2012) and <u>Hernandez v. Sessions</u>, 872 F.3d 976 (9th Cir. 2017)), no due process violations have occurred here and plaintiffs are not likely to succeed on the merits, for the reasons set forth above.

## IV.   CONCLUSION

For the reasons set forth above, the government respectfully requests that plaintiffs' motion for a preliminary injunction be denied.

Dated: June 29, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____

ANDREW BROWN
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.