```
 1  TRACY L. WILKISON
    Acting United States Attorney
 2  BRANDON D. FOX
    Assistant United States Attorney
 3  Chief, Criminal Division
    STEVEN R. WELK
 4  Assistant United States Attorney
    Chief, Asset Forfeiture Section
 5  VICTOR A. RODGERS
    California Bar No. 101281
 6  Assistant United States Attorney
    Asset Forfeiture Section
 7        Federal Courthouse, 14th Floor
          312 North Spring Street
 8        Los Angeles, California 90012
          Telephone: (213) 894-2569
 9        Facsimile: (213) 894-0142
          E-mail: Victor.Rodgers@usdoj.gov
10
    Attorneys for Plaintiff
11  UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | Case No. 2:21-CV-02028 |
|---|---|---|
| Plaintiff, | ) | COMPLAINT FOR FORFEITURE |
| v. | ) | 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984 |
| $763,533.53 SEIZED FROM ONE BANK OF AMERICA ACCOUNT, | ) | [HSI] |
| Defendant. | ) | |

Plaintiff United States of America brings this claim against defendant $763,533.53 Seized From One Bank Of America Account, and alleges as follows:

JURISDICTION AND VENUE

1.  The government brings this in rem forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

**Exhibit B**
**58**

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $763,533.53 Seized From One Bank Of America Account (the "defendant bank funds") seized pursuant to a federal seizure warrant on or about September 3, 2020 at Bank of America, 5101 East 2nd Street, Long Beach, California from an account at Bank of America in the name of Big Wheel Towing, Inc. with the last four digits ending in 1408 and over which Raghi Khajemtourian has signature authority (the "BofA 1408 Account").

6. The defendant bank funds are currently in the custody of the United States Customs and Border Protection, Department of Homeland Security in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Big Wheel Towing, Inc., Raghi Khajemtourian and Bank of America may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

### Summary Of Raghi Khajemtourian's Fraud Scheme

8. In or about July 2020, Raghi Khajemtourian ("Khajemtourian") submitted a loan application to Bank of America, on behalf of his company Big Wheel Towing, Inc.,

through the Paycheck Protection Program established by the Coronavirus Aid, Relief, and Economic Security Act. As a result of Bank of America's approval of the loan, Bank of America wired a total of $756,515.00 in Paycheck Protection Program loan proceeds into the BofA 1408 Account. In the loan application for the funds that resulted in Bank of America funding the loan, Khajemtourian made a series of false representations about Big Wheel Towing, Inc. and himself, including about the wages paid to Big Wheel Towing, Inc. employees who would be retained if the loan were provided (claiming Big Wheel Towing, Inc. had paid over $3.6 million in wages to 25 employees in 2019 when, in fact, the company paid no wages because the company's sole employee was Khajemtourian) and Khajemtourian's lack of any felony convictions (when in fact Khajemtourian had a 2019 felony identity theft conviction and multiple other convictions and arrests).

<u>Description Of The Paycheck Protection Program</u>

9. The Coronavirus Aid, Relief, and Economic Security Act, which is also known as the CARES Act, is a federal law enacted around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). Around April 2020, Congress authorized over $300 billion in additional PPP funding.

10.     In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business, through its authorized representative, to acknowledge the Program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification requires the applicant, through its authorized representative, to affirm that:

> [t]he [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges.

11.     In addition, the business, through its authorized representative, must state, among other things, the company's number of employees and average monthly payroll expenses, and provide documentation showing the company's payroll expenses.  The employee and payroll expense numbers are used to calculate the amount of money the business is eligible to receive under the PPP.

12.     In the first instance, the company's PPP loan application is received and processed by a participating financial institution, and then the application is transmitted to the Small Business Administration ("SBA") for further review and assessment of the applicant's eligibility.  If a PPP loan application is approved, the participating financial institution funds the PPP loan using the financial institution's own monies.

13. PPP loan proceeds must be used by the business on certain permissible expenses, namely payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses at least 75% of the PPP loan proceeds on payroll expenses.

<u>Khajemtourian's Submission Of A Loan Application Seeking A PPP Loan For His Company Big Wheel Towing, Inc.</u>

14. In or around July 2020, Khajemtourian submitted, on behalf of Big Wheel Towing, Inc., an application for a PPP loan to Bank of America, which as a result of the submission was received by the SBA. Khajemtourian's loan application contained the information set forth below.

15. Khajemtourian's PPP loan application on behalf of Big Wheel Towing, Inc. provided that Big Wheel Towing, Inc. was a towing company that employed 25 employees with combined yearly salaries totaling $3,631,275. Moreover, Khajemtourian provided, as part of the loan application and as proof of Big Wheel Towing, Inc.'s payroll expenses, an Internal Revenue Service ("IRS") Form 940-Employer's Annual Federal Unemployment (FUTA) dated January 15, 2020 and an IRS Form 941-Employer's Quarterly Federal Tax dated January 15, 2020, purporting to show $3,631,275 in wages and payroll taxes for Big Wheel Towing, Inc. for tax year 2019. In addition and as part of the loan application, Khajemtourian certified that Big Wheel Towing, Inc. spent $326,641 in monthly salaries and "had employees for whom

5

**Exhibit B**

**62**

1  the applicant paid salaries and payroll taxes or paid
2  independent contractors." However, the statements in
3  Khajemtourian's PPP loan application were false.
4      16.  In fact, according to California Secretary of State
5  records, Big Wheel Towing, Inc. was incorporated in March 2018
6  (hardly enough time to have ramped up operations to the level of
7  paying over $3.6 million in wages) and is currently suspended.
8  In addition, information from the Department of Transportation –
9  Office of Inspector General reflects that Khajemtourian is the
10 company's owner and sole employee. Furthermore, information
11 received from the California Employment Development Department,
12 which is the California agency responsible for keeping track of
13 wages paid to California employees, revealed that Big Wheel
14 Towing, Inc. has not reported any wages as having been paid by
15 the company in the State of California. Accordingly, Big Wheel
16 Towing, Inc. neither employed 25 employees nor paid $3,631,275
17 in employee salary in 2019, which thereby demonstrates the
18 falsity of Khajemtourian's representations in Big Wheel Towing,
19 Inc.'s loan application.
20     17.  Khajemtourian's PPP loan application contained
21 additional false representations, which included Khajemtourian's
22 statements concerning his criminal history. Khajemtourian has
23 been convicted of at least two felonies, the most recent of
24 which is Khajemtourian's 2019 conviction for violations of
25 California Penal Code § 530.5 (identity theft). In addition,
26 Khajemtourian as of the time of his submission of his loan
27 application was on summary probation with the State of
28 California. Yet, Khajemtourian answered "no" (and confirmed

that response on the loan application by checking an additional box on the application) in response to the question pertaining to the PPP loan applicant's eligibility for the PPP loan. That question asked whether Khajemtourian had been convicted of any felony involving fraud, bribery or embezzlement during the preceding five years or had been on parole or probation during the preceding year. Furthermore, Khajemtourian's criminal history dates back as far as 2003 and includes arrests and convictions for controlled substance violations, receiving stolen property, burglary and grand theft.

18. The SBA requires applicants for PPP loans to make additional certifications and representations with respect to their PPP loan applications. Khajemtourian certified in his Big Wheel Towing, Inc. loan application that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule;" and that "the funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." These certifications were false because, among other things, Big Wheel Towing, Inc. had no workers to retain and did not pay payroll.

<u>Bank Of America's Funding Of The Loan And The Government's Seizure Of The Defendant Bank Funds</u>

19. On or about July 22, 2020, Bank of America funded the Big Wheel Towing, Inc. PPP loan by wiring $756,515.00 in approved PPP loan funds to the BofA 1408 Account. As mentioned above, the BofA 1408 Account is in in the name of Big Wheel Towing, Inc., Khajemtourian has signature authority on the

account, and the government seized $763,533.53 (i.e., the defendant bank funds) from the account pursuant to a federal seizure warrant on or about September 3, 2020.

### The Additional Approximately $10,000.00 In PPP Loan Fraud Proceeds Deposited Into The BofA 1408 Account

20. In addition to the aforementioned $756,515.00 in PPP loan proceeds Bank of America wired to the BofA 1408 Account on or about July 22, 2020, officers have traced an additional $10,190.11 of PPP loan fraud proceeds transferred to the BofA 1408 Account, which brings the total PPP loan fraud proceeds in the account to $766,705.11 ($756,515.00 + $10,190.11), or more than the $763,533.53 the government seized from the BofA 1408 Account. The $10,190.11 was deposited into the BofA 1408 Account by a check dated July 13, 2020 which was drawn on an account from which PPP loan funds were deposited based upon a fraudulent PPP loan application.

### FIRST CLAIM FOR RELIEF

21. Plaintiff incorporates the allegations of paragraphs 1-20 above as though fully set forth herein.

22. Based on the above, plaintiff United States of America alleges that the defendant bank funds constitute or are derived from proceeds traceable to, or a conspiracy to commit violations of 18 U.S.C. §§ 1014 (loan fraud), 1343 (wire fraud) and/or 1344 (bank fraud), each of which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, to the extent that the defendant bank funds are not the actual monies

```
 1  directly traceable to the illegal activity identified herein,
 2  plaintiff United States of America alleges that the defendant
 3  bank funds are identical property found in the same account or
 4  place as the property involved in the specified offense,
 5  rendering the defendant bank funds subject to forfeiture
 6  pursuant to 18 U.S.C. § 984.
```

                        SECOND CLAIM FOR RELIEF

```
 8      23.  Plaintiff incorporates the allegations of paragraphs
 9  1-20 above as though fully set forth herein.
10      24.  Based on the above, plaintiff alleges that the
11  defendant bank funds constitute property involved in multiple
12  transactions or attempted transactions in violation of 18 U.S.C.
13  § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to
14  such property, with the specified unlawful activity being a
15  violation of 18 U.S.C. §§ 1014 (loan fraud), 1343 (wire fraud)
16  and/or 1344 (bank fraud).  The defendant bank funds are
17  therefore subject to forfeiture pursuant to 18 U.S.C.
18  § 981(a)(1)(A).  In addition, to the extent that the defendant
19  bank funds are not the actual monies directly traceable to the
20  illegal activity identified herein, plaintiff United States of
21  America alleges that the defendant bank funds are identical
22  property found in the same account or place as the property
23  involved in the specified offense, rendering the defendant bank
24  funds subject to forfeiture pursuant to 18 U.S.C. § 984.
```

                        THIRD CLAIM FOR RELIEF

```
26      25.  Plaintiff incorporates the allegations of paragraphs
27  1-20 above as though fully set forth herein.
28  / / /
```

**Exhibit B**
**66**

26. Based on the above, plaintiff alleges that the defendant bank funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. §§ 1014 (loan fraud), 1343 (wire fraud) and/or 1344 (bank fraud). The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant bank funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff United States of America alleges that the defendant bank funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant bank funds subject to forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant bank funds;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant bank funds to the United States of America for disposition according to law; and

/ / /
/ / /
/ / /
/ / /
/ / /

    (d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: March 4, 2021

TRACY L. WILKISON
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

*/s/ Victor A. Rodgers*
_____
VICTOR A. RODGERS
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## VERIFICATION

I, Alfredo Rossi, hereby declare that:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations.

2. I have read the above Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on __March 1st___, 2021 at __Los Angeles_, California.

*Alfredo Rossi*
Alfredo Rossi