**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* *Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

**PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,**

Plaintiffs,

**v.**

**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**

Defendants.

Case No. 2:21-cv-04405-RGK-MAR

**PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

Judge: Hon. R. Gary Klausner
Complaint Filed: May 27, 2021
Amended Complaint Filed: June 9, 2021

The Court should enter a preliminary injunction for the same reason that it entered a TRO: Under *Gete v. INS*, 121 F.3d 1285, 1297 (9th Cir. 1997), and *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 987 (9th Cir. 2012), Plaintiffs are entitled to notice of the factual and legal basis for the government's decision to subject them to civil forfeiture proceedings.

The government's arguments for reconsideration are meritless. It once again seeks to distinguish *Gete* and *Al Haramain*, but the Court properly rejected the government's arguments about those cases the first time around. As the Court explained, notwithstanding any difference in "the procedural posture of those cases," they stand for the proposition that "the Due Process Clause require[s] the [Government] to disclose the 'factual bases for seizure[ ]' and 'the specific statutory provision allegedly violated.'" Doc. 52 ("TRO Order") at 5 (alterations in original). Like the notice in *Gete*, the notice here puts property owners to a choice of procedures (including, like in *Gete*, the option to file a claim and force the filing of a complaint); and, like in *Gete*, property owners need to know the purported basis for the forfeiture so they can make an informed choice. The government's "anemic" (*id.*) forfeiture notices do not satisfy that basic requirement.

Nor, as the government contends, is this case controlled by *City of West Covina v. Perkins*, 525 U.S. 234 (1999). That case held that government need not provide "detailed and specific instructions or advice" to property owners regarding legal procedures available to people who are entitled to return of their property, but Plaintiffs are not seeking information about legal procedures. Rather, Plaintiffs need to know what they are accused of doing wrong.

Beyond that, the government argues that Moving Plaintiffs cannot show irreparable harm because there is no imminent risk that the government will administratively forfeit their property. But this misunderstands the nature of Plaintiffs' irreparable harm: Plaintiffs' continuing injury is to their constitutional rights, and, as this Court held, "a deprivation of Fifth Amendment due process

2

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

rights 'inexorably' amounts to an irreparable harm." TRO Order at 6 (citation omitted). Plaintiffs are entitled to constitutionally adequate notice so that they can make a fresh determination—based on that information—what procedure they will follow to contest the forfeiture. And, so long as the government continues to hold Plaintiffs' property under the civil forfeiture laws without providing that notice, the government violates due process again every day.

**A. Plaintiffs Made No Secret Of The Fact That Jeni Verdon-Pearsons And Michael Storc Filed Claims Prior To The Filing Of This Application.**

Before jumping into the merits, Plaintiffs need to briefly respond to the government's suggestion that they omitted critical information from the TRO Application. That is simply not true.

Moving Plaintiffs include three sets of property owners who have been targeted for civil forfeiture: Joseph Ruiz (who had approximately $57,000 seized), Travis May (who had approximately $163,000 in cash and gold seized), and Jeni Verdon-Pearsons and Michael Storc (a married couple who had approximately $20,000 in silver seized). The government makes much of the fact that Jeni and Michael had already filed claims at the time Plaintiffs sought a TRO.

But Plaintiffs made no secret of that fact. The First Amended Complaint specifically alleged that "both Jeni and Michael submitted administrative claims in response to their forfeiture notices." Doc. 33 at 5 ¶ 6.[1] The TRO Application then included, as an exhibit, the email that the government sent acknowledging receipt of Jeni's claim, which warned that "[s]uccessful filing of your claim does not ensure your claim is valid." Doc. 44-12 (Ex. K to Johnson Decl.) at 54; *see also*

[1] In other cases, the government has taken the position that the Court lacks jurisdiction over property owners who have received forfeiture notices. *See* Defendants' Motion to Dismiss, *Coe v. United States*, No. 21-cv-3019 (May 28, 2021), ECF No. 33. Plaintiffs filed claims on behalf of Jeni and Michael (but not Travis and Joseph) before the filing of the First Amended Complaint in order to head off that likely jurisdictional objection.

Doc. 44-1 (Johnson Decl.) at 3 ¶ 12. Citing that email, the TRO Application explained that relief was needed regardless of whether property owners had filed claims, as "the agency may still reject the claim if it determines that it was not submitted in the proper form or is otherwise deficient." Doc. 44 at 18:21–28 n.4. And the reply brief likewise explained that, "[w]hile Jeni Verdon-Pearsons and Michael Storc have filed claims, the government has not determined whether those claims are valid." Doc. 46 at 6:25–28 n.5.

In any event, while the government trumpets the supposed omission of this fact, the government does not explain why it matters. At the time the TRO was entered, Travis and Joseph had not filed claims, so, if it was necessary that Moving Plaintiffs not have filed claims, then two of the four Moving Plaintiffs were in that situation.[2] Moreover, because the government had not yet determined whether the claims filed by Jeni and Michael were valid, *see* Doc. 44–12 at 54, all four Moving Plaintiffs were at risk of losing their property through an administrative forfeiture. If the government thought Jeni and Michael's claims were somehow relevant to the TRO Application, then the government could have said so in its opposition. But it did not, presumably because it recognized that those claims had no real impact on Moving Plaintiffs' entitlement to relief.

**B. Plaintiffs Are Likely To Prevail On The Merits.**

1. <u>The Government's Efforts To Distinguish *Gete* and *Al Haramain* Badly Understate The Legal Significance Of Its Forfeiture Notices.</u>

In an attempt to distinguish *Gete* and *Al Haramain*, the government writes off a civil forfeiture notice as a non-event that "merely informs recipients of their options for seeking the return of their property." Resp. 7:21. But a forfeiture notice is far more than that: A notice initiates civil forfeiture proceedings and requires the

[2] Out of an abundance of caution, Travis and Joseph filed claims after the Court entered its TRO. The significance of those later-filed claims is discussed below.

4

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

owner to make choices about what options to take, with different consequences for each. For instance, if the owner files a claim, they force the government to initiate judicial proceedings. If the owner files a petition, they waive the right to go into court and instead ask the agency itself to decide the matter. If they file *both* a claim and a petition, they must first navigate the judicial forfeiture action, and the agency will only decide the petition after the judicial case has drawn to a close. And if they do nothing at all, then they lose their property by default. Providing property owners with the factual and legal basis for the government's actions does not, in the government's words, "merely confuse the recipient," Resp. 14:10-11, but instead ensures that property owners have essential information that they need to make an informed decision about which of those paths to take.

The government also misappreciates the INS proceedings at issue in *Gete*. It appears to believe that the option here to submit a claim and force the government to file a judicial complaint stands in "sharp contrast" to the INS regulations in *Gete*, which, the government says, "prohibited vehicle owners from having a Court decide the forfeiture issue on the merits." Resp. 13:11–26. But that is quite clearly wrong. As the Ninth Circuit explained in *Gete*, the "INS form letter advises those claiming an interest" that they "may 'commence' judicial forfeiture proceedings in federal district court" if they "file a claim of interest and post a bond." 121 F.3d at 1290. The government's "sharp contrast" is thus actually no contrast at all.

Similarly, the government misses the point of *Gete* when it argues that the necessary notice may perhaps be provided later in the process, in the uncertain event that the government eventually files a forfeiture complaint. Resp. 14:2–5. *Gete* rejects that very argument, explaining that "the government cannot justify unconstitutional administrative forfeiture procedures merely by pointing to the fact that it provides a lawful judicial forfeiture option." 121 F.3d at 1294. To the contrary, "the government must provide reasonable procedures in all forfeiture contexts, including administrative proceedings." *Id.* at 1297; *see also id*. at 1298

(holding that "the disclosure of the factual bases for seizures would go a long way toward preventing some of the erroneous and fundamentally unfair forfeiture decisions that inevitably flow from so haphazard a process").

Nor is there any truth to the government's contention that "the plaintiffs in *Gete* neither argued that the forfeiture notice standing alone violated due process, nor characterized the notice as 'barebones.'" Resp. 6:25–7:2. A cursory review of the *Gete* plaintiffs' brief shows that they specifically argued that the INS "fails to give adequate notice at the time of seizure of the reasons why the vehicle is being seized," that the INS instead provides a "form notice" that "does not explain the statutory provision under which the vehicle is being seized" or the "factual basis for believing that the vehicle is subject to seizure," and that without that information the property owner "is not able to make an intelligent decision whether to waive his right to judicial forfeiture proceedings." Opening Br., *Gete v. INS*, No. 95-35408, 1995 WL 17066298, at *26–27 (9th Cir. Nov. 8, 1995).

Finally, the government attempts to distinguish *Al Haramain* on the ground that the government there had "entered [a] final initial designation" of the plaintiff as a terrorist organization, which the government says would be "analogous to an administrative agency entering a final judgment forfeiting an asset." Resp. 8:5-8. But the decision in *Al Haramain* was not "final" in that sense, as evidenced by the fact that the agency *redesignated* the plaintiffs four years after the initial designation. *See* 686 F.3d at 974. The government must provide notice when it subjects property owners to legal proceedings to take their property—so that they can better navigate those proceedings—not at some point *after* a "final judgment" taking the property.

    2.  <u>This Case Is Completely Unlike *Perkins*, And Other Opinions Cited By The Government Are Similarly Off Point.</u>

The government says this case is controlled by *City of West Covina v. Perkins*, 525 U.S. 234 (1999). It is not, as can be discerned from the Supreme

6

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

Court's opening explanation that it "granted certiorari . . . to consider in this case whether the Constitution requires a State or its local entities to give detailed and specific instructions or advice to owners who seek return of property lawfully seized but no longer needed for police investigation or criminal prosecution." *Id.* at 236. That question presented has nothing to do with the question here.

Everyone agreed the plaintiffs in *Perkins* were entitled to the return of their property, but the plaintiffs were unsure about the legal procedures they could use. So they sued and argued in part that "the City was required to give respondents notice of the state procedures for return of seized property and the information necessary to invoke those procedures." *Id*. at 239. The Ninth Circuit agreed, but the Supreme Court reversed, holding that "due process does not require [the government] to provide the owner with notice of state-law remedies." *Id*. at 240. In so holding, the Supreme Court noted that those "state-law remedies . . . are established by published, generally available state statutes and case law" and that the plaintiffs could "turn to these public sources to learn about the remedial procedures available to [them]." *Id*. at 241.

*Perkins* has no bearing here. Jeni, Michael, Joseph and Travis did not seek a TRO to learn more about legal procedures. They sought this Court's assistance because the government utterly failed to articulate *why* it was thrusting them into civil forfeiture proceedings. And unlike the legal procedures in *Perkins*, Plaintiffs cannot learn these details by turning to public sources. Those details exist only in the government's files, if they even exist at all.[3]

The government also cites additional non-precedential opinions issued by other courts. But these cases, which the government largely recycled from its

[3] The district court rejected similar arguments in *Gete*. Like the government here, the INS cited *Perkins* on remand in *Gete*. But the district court held that *Perkins* was inapplicable because notice "of the bases for the seizure, or of the reasons for not returning seized property, serves a different purpose than notice of available remedies." *Gete v. INS*, No. C94-881Z, 1999 U.S. Dist. LEXIS 11806, at *15 (W.D. Wash. July 22, 1999).

7

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

response to the TRO Application,[4] are either not controlling (unlike *Gete* and *Al Haramain*) or miss the mark. *Juda v. Nerney*, 149 F.3d 1190, 1998 WL 317474 (10th Cir. 1998), concerns whether the forfeiture notice must provide a "***particularized*** narrative of allegedly illegal acts," *id.* at *5 (emphasis added), not whether the notice may forgo identifying the basis for the forfeiture altogether. *United States v. 24 Firearms From Various Manufacturers*, No. 2:18-cv-0142, 2018 WL 4935453 (E.D. Wash. Oct. 11, 2018), arose in a distinct procedural posture and involved a notice that (while hardly forthcoming) at least revealed that the property owner was accused of violating firearms laws—a step above the notice at issue here. *Id.* at *3. And other cases only challenge whether the notice adequately details the procedures for challenging the forfeiture, not the basis for the seizures. *See, e.g.*, *In re Search Warrants for 27867 Orchard Lake Rd.*, 553 F. Supp. 2d 879, 884 (E.D. Mich. 2008) (petitioner "claims that the original letter and the form fail to properly advise her of her options"). These cases do not disturb *Gete*'s express command that the government must give "notice of the specific statutory provision allegedly violated, rather than . . . copies of the entire statute and regulations." 121 F.3d at 1298.

### C. Plaintiffs Will Be Irreparably Harmed In The Absence Of A Preliminary Injunction.

Beyond these fruitless efforts to escape *Gete* and *Al Haramain*, the government also emphasizes the fact that it has now accepted Moving Plaintiffs' claims as valid. *See*, *e.g.*, Resp. 4:5–10. The relevance of these arguments is unclear, but, at bottom, the government appears to be arguing that—now that Plaintiffs are not at imminent risk of losing their property through a default administrative forfeiture—Plaintiffs can no longer show irreparable harm. But that misapprehends the nature of the requirement to show irreparable harm: The

[4] *See* Doc. 45 at 16:3–18:12; *see also* Doc. 46 at 6:15–7:17 (distinguishing cases).

8

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

government's violation of due process "inexorably" establishes irreparable harm, *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017), and Plaintiffs are entitled to an injunction to prevent the violation of their due process rights.

The evolving procedural posture of the case does not change the fact that these Moving Plaintiffs are entitled as a matter of due process to notice of the factual and legal basis for the government's civil forfeiture proceeding. The government's own papers make clear that Moving Plaintiffs are still in the thick of civil forfeiture proceedings: While the FBI has apparently now concluded that Moving Plaintiffs have filed valid claims, the FBI has "referred the claims to the U.S. Attorney, Central District of California." Doc. 55-1 (Jobe Decl.) at 24 ¶ 9. At that stage of the proceedings, federal law authorizes the government to hold property for an additional 90 days pending the filing of a judicial forfeiture complaint. *See* 18 U.S.C. § 983(a)(3). As a result, the government is continuing to hold this property pursuant to the civil forfeiture laws, and the government may *continue* to do so for months before it ever files a forfeiture complaint. Plaintiffs are entitled to be told why they are being subjected to that legal process.

Moreover, the required notice would give Plaintiffs an important opportunity to make informed choices about how to navigate the forfeiture proceedings. Under the terms of this Court's injunction, the government is "enjoined from civilly forfeiting the property of [the Moving Plaintiffs] without first sending forfeiture notices that identify the specific factual and legal basis for the Government's determination to commence civil forfeiture proceedings." TRO Order at 7. If the government decides to continue with these civil forfeiture procedures, and sends a revised notice, the Moving Plaintiffs will then have an opportunity to reevaluate whether to submit a claim or remission petition (or both) based on that additional information. *See Gete*, 121 F.3d at 1298. While the government says it has accepted Moving Plaintiffs' claims as valid, those claims were submitted without the benefit of adequate notice, and Moving Plaintiffs are entitled to an opportunity to decide—

based on constitutionally-sufficient notice—whether they want to submit claims at all or whether they instead want to proceed in some other manner.[5]

Plaintiffs did not waive their right to make that kind of informed choice by submitting claims in response to the invalid notice letters. Even with the TRO in place, Plaintiffs could not simply refuse to respond to the invalid notice letters, as by doing so they would risk losing their property by default in the event the TRO was somehow disturbed. But, while Travis and Joseph submitted claims after the TRO was granted, each included a cover letter stating that he "in no way waives or otherwise abandons his due process objection" and that the claims should only "be given effect in the unlikely event that the District Court's temporary restraining order is somehow disturbed." Decl. of Robert Johnson, Ex. A at 4; Ex. B at 6 (filed contemporaneously with this reply).[6] The cover letters stated that, "in the more likely event that the temporary restraining order is *not* disturbed," then Travis and Joseph were reserving the right to "make a fresh determination . . . whether to respond by filing a claim or a remission petition" based on the information that would need to be provided in a revised notice. *Id.* So long as the government moves forward with these civil forfeiture proceedings, it should be required to honor that due process right.

[5] While the government suggests that Plaintiffs can still file remission petitions after they have filed claims, a remission petition is treated differently depending on whether a property owner also files a claim. Most significantly, if a property owner files a claim, the agency does not decide the remission petition until after judicial forfeiture proceedings are complete—a process that can take years. *See* Resp. 14:26–28 n.4.

[6] These cover letters were included as exhibits to the electronically submitted claims. *See*, *e.g.*, Doc. 55-8 (Ex. F to Murray Declaration) at 49 (listing "May Claim with Cover Letter" as an attachment to the claim).

10

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

Dated: June 30, 2021

Respectfully Submitted,

/s/ Robert Frommer

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd.. Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

**Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

11

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION