

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* Admitted pro hac vice.

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**<br><br>(*Filed Concurrently with the Declaration of Jeni Verdon-Pearsons and Proposed Order Denying Defendants' Motion to Dismiss*)<br><br>Date: August 30, 2021<br>Time: 9:00 A.M.<br>Courtroom: 850<br>Judge: Hon. R. Gary Klausner<br>Trial Date: TBD<br>Complaint Filed: May 27, 2021<br>Amended Complaint Filed: June 9, 2021 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I.   INTRODUCTION ........................................................................................ 1

II.  BACKGROUND ........................................................................................... 2

    A.   U.S. Private Vaults. ............................................................................. 2

    B.   The USPV Raid. .................................................................................. 2

    C.   The FBI's Investigation. ..................................................................... 4

    D.   The Government's Forfeiture Proceedings. ........................................ 5

    E.   Proceedings To Date. .......................................................................... 5

III. LEGAL STANDARD ................................................................................... 7

IV.  AGRUMENT ................................................................................................. 7

    A.   The Complaint Is Not Moot. ............................................................... 8

        1.   Count I Presents A Live Case Or Controversy For All Named Plaintiffs As Well As The Proposed Class. ............... 8

        2.   Counts III, V And VI Present A Live Case Or Controversy As To Plaintiffs Storc And Verdon-Pearsons And The Forfeiture Subclass. ................................................................. 9

        3.   Counts II And IV Present A Live Case Or Controversy With Respect To The Proposed No Notice Subclass. ..................... 10

        4.   Count VII Presents A Live Case Or Controversy With Respect To Plaintiffs Verdon-Pearsons, Storc, Gothier, May, And Ruiz. ...................................................................... 11

    B.   Judicial Forfeiture Proceedings Do Not Provide An Adequate Remedy For The Constitutional Violations Alleged In The Complaint. ......................................................................................... 11

        1.   Count I Seeks Relief On Behalf Of Numerous Plaintiffs Who Are Not Being Targeted For Forfeiture. ....................... 11

        2.   Counts II-VI Address Ongoing Constitutional Violations That Could Not Be Redressed In Any Eventual Forfeiture Case. ................................................................................. 12

        3.   Count VII, Under Rule 41(g), Also Is Not Barred. ............... 14

i

C.   The Court Has The Necessary Authority To Remedy The Alleged Constitutional Violations. .................................................. 15

1.   The Court Has Inherent Equitable Authority To Enjoin Federal Officials From Violating The Fourth And Fifth Amendments. ........................................................... 16

2.   The Court Can Separately Provide Relief Under The Administrative Procedure Act. ................................................ 17

3.   The Court Should Also Exercise Jurisdiction Under The Declaratory Judgment Act. ..................................................... 19

D.   The Complaint States A Claim On The Merits ................................. 20

V.   CONCLUSION ............................................................................ 20

# TABLE OF AUTHORITES

**CASES**

Page

*$8,050.00 in U.S. Currency v. United States*,
  307 F. Supp. 2d 922 (N.D. Ohio 2004) ................................................................. 13

*Abernathy v. Kral*,
  305 F. Supp. 3d 795 (N.D. Ohio 2018) ................................................................. 13

*Advisory In re Email Acct. xxxxxxx gmail.com*,
  33 F. Supp. 3d 386 (S.D.N.Y. 2014) ....................................................................... 8

*Amadei v. Nielsen*,
  348 F. Supp. 3d 145 (E.D.N.Y. 2018) .................................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 7

*Bain v. California Tchrs. Ass'n*,
  891 F.3d 1206 (9th Cir. 2018) .................................................................................. 7

*Baker v. Carr*,
  369 U.S. 186 (1962) ................................................................................................. 7

*Baranski v. Fifteen Unknown Agents of ATF*,
  195 F. Supp. 2d 862 (W.D. Ky. 2002) ................................................................. 14

*Bell v. Hood*,
  327 U.S. 678 (1946) ............................................................................................... 16

*Brewster v. Beck*,
  859 F.3d 1194 (9th Cir. 2017) ............................................................................... 20

*CFK, LLC v. United States*,
  324 F.R.D. 236 (D. Utah 2018) ............................................................................. 13

*Chen v. Allstate Ins. Co.*,
  819 F.3d 1136 (9th Cir. 2016) ............................................................................... 10

*City of Oakland v. Lynch*,
  798 F.3d 1159 (9th Cir. 2015) ............................................................................... 19

*Coe v. United States*,
  21-cv-3019, Doc. 49 (C.D. Cal. July 23, 2021) ................................................... 20

*Demaree v. Pederson*,
  880 F.3d 1066 (9th Cir. 2018) ................................................................................. 8

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
  561 U.S. 477 (2010) ............................................................................................... 16

*Gete v. INS*,
  121 F.3d 1285 (9th Cir. 1997) .......................................................................... 18, 20

*Haltiwanger v. United States*,
494 F. Supp. 2d 927 (N.D. Ill. 2007) ................................................................. 13

*In Re Return of Seized Prop. (BoundlessRise, LLC)*,
17-cv-00771, 2017 WL 4180149 (C.D. Cal. Aug. 30, 2017) ............................. 13

*In Re Return of Seized Prop. (Jordan)*,
625 F. Supp. 2d 949 (C.D. Cal. 2009) .............................................................. 13

*Kidd v. Mayorkas*,
No. 20-cv-03512, 2021 WL 1612087 (C.D. Cal. Apr. 26, 2021) ...................... 18

*Koch v. Lockyer*,
340 F. App'x 372 (9th Cir. 2009) ....................................................................... 9

*Linarez v. U.S. Dep't of Justice*,
2 F.3d 208 (7th Cir. 1993) .......................................................................... 13, 15

*Lycurgan, Inc. v. Jones*,
No. 14-cv-1679, 2016 WL 8983006 (S.D. Cal. Jan. 27, 2016), ...................... 14

*Martin v. Wells Fargo Bank*,
No. 17-CV-03425, 2017 WL 10605965 (C.D. Cal. Dec. 15, 2017) ................... 3

*Mt. Adams Veneer Co. v. United States*,
896 F.2d 339 (9th Cir. 1989) ............................................................................ 18

*Muhammed v. DEA*,
92 F.3d 648 (8th Cir. 1996) .............................................................................. 15

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) .......................................................................... 10

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003) ............................................................................ 9

*Sierra Club v. Trump*,
929 F.3d 670 (9th Cir. 2019) .............................................................. 16, 17, 18

*United States v. 2nd Amendment Guns, LLC*,
917 F. Supp. 2d 1120 (D. Or. 2012) ................................................................. 14

*United States v. Burum*,
639 F. App'x 503 (9th Cir. 2006) ........................................................................ 8

*United States v. Comprehensive Drug Testing, Inc.*,
621 F.3d 1162 (9th Cir. 2010) ........................................................ 8, 12, 17, 20

*United States v. Elias*,
921 F.2d 870 (9th Cir. 1990) ............................................................................ 13

*United States v. One 1987 Jeep Wrangler*,
972 F.2d 472 (2d Cir. 1992) ............................................................................. 13

*United States v. U.S. Currency in the Amount of $146,800,*
    No. 96-cv-4882, 1997 WL 269583 (E.D.N.Y. Apr. 28, 1997) ............................ 14

*United States v. U.S. Currency, $83,310.78,*
    851 F.2d 1231 (9th Cir. 1988) ............................................................................. 13

*United States v. Various Rest. Furniture & Goods of Iranian Origin,*
    No. 15-cv-259, 2016 WL 7496130 (C.D. Cal. Feb. 8, 2016) .............................. 14

*United States v. Voraveth,*
    No. 07-cr-419, 2008 WL 4287293 (D. Minn. July 1, 2008) ................................ 13

*Webster v. Doe,*
    486 U.S. 592 (1988) ............................................................................................ 17

*Whisnant v. United States,*
    400 F.3d 1177 (9th Cir. 2005) .............................................................................. 7

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 7, 9

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 7, 20

Fed. R. Civ. P. 41(g) .............................................................................................. 11, 15

**STATUTES**

5 U.S.C. § 551 (10) ................................................................................................. 16, 19

5 U.S.C. § 551 (13) ................................................................................................. 16, 19

5 U.S.C. § 704 ............................................................................................................ 16

# I.    INTRODUCTION

Defendants (who, for ease of reference, are collectively referred to here as "the government") offer a list of arguments why this case should be dismissed, but, at bottom, almost all these arguments suffer from a single flaw: The government glosses over the specific claims raised and remedies sought by the First Amended Complaint. The government seems to think that all Plaintiffs are really seeking is return of property. *See, e.g.*, Doc. 62 ("Mot.") at 7 ("Plaintiffs' Counts all request their property be returned."). But that is a gross misunderstanding: Count I seeks an order directing the government to destroy records made during its illegal search of Plaintiffs' safe deposit boxes. And Counts II-VI allege violations of the Fourth and Fifth Amendments and seek relief—some of which this Court has already granted on a preliminary basis—directing government officials to follow the Constitution. To the extent that Counts II-VI seek return of property at all, they seek an order (akin to the one entered on behalf of Joseph Ruiz) directing the government to *either* comply with the Constitution *or else* give property back. Only Count VII actually raises a straightforward claim for return of seized property.

The government's inattention leads it into error. The government argues that the case is moot for those Plaintiffs who have recovered their property, but it ignores the fact that those Plaintiffs still have a live claim for destruction of records. The government argues that Plaintiffs have an "adequate remedy" in a hypothetical future judicial forfeiture case, but it ignores the fact that Plaintiffs' claims could not be redressed in such a case. The government argues that the Court lacks jurisdiction under the Administrative Procedure Act and Declaratory Judgment Act but, in doing so, both mischaracterizes the claims and ignores cases holding that courts have broad authority to enjoin federal officials from violating constitutional rights. And the government argues that Plaintiffs do not state a claim on the merits under a theory that Plaintiffs have not pressed. When Plaintiffs' actual claims are considered, the government's arguments are without merit.

## II.   BACKGROUND

### A.   U.S. Private Vaults.

Plaintiffs in this case are all box holders at U.S. Private Vaults ("USPV"), a safe deposit box facility located in Beverly Hills. *See* Doc. 33 ("First. Am. Compl.") ¶¶ 8-12. Paul and Jennifer Snitko stored personal effects in their safe deposit box, including copies of legal documents. *Id.* ¶ 8. Joseph Ruiz stored approximately $57,000 in cash. *Id.* ¶ 9. Tyler Gothier stored personal effects and a small amount of silver. *Id.* ¶ 10. Jeni Verdon-Pearsons and Michael Storc stored silver, approximately $2,000 in cash, and personal documents. *Id.* ¶ 11. And Travis May stored gold and approximately $63,000 in cash. *Id.* ¶ 12.

Plaintiffs chose to hold their valued property at USPV because the business offered several advantages over traditional banks. *Id.* ¶ 18-28. Among other things, the unique design of USPV's vault ensured that vault employees could not access the contents of the boxes, *id.* ¶ 21, and USPV also offered better hours of operation than most banks, *id.* ¶ 22. USPV gave every impression of being a legitimate operation, and it had been in business since 2011. *Id.* ¶ 25.

### B.   The USPV Raid.

On March 9, 2021, the U.S. Attorney's Office for the Central District of California indicted the USPV company. *Id.* ¶ 41. Then, on March 17, 2021, the government obtained a warrant to seize business property owned by USPV. *Id.* ¶ 44. The warrant authorized the FBI to seize USPV's "business equipment," including the "nests of safety deposit boxes and keys," but specifically stated that the "warrant *does not authorize* a criminal search or seizure of the contents of the safety deposit boxes." *Id.* ¶ 45 (emphasis added). The warrant application did say that the government would conduct a limited search of the boxes to "look for contact information or something which identifies the owner," but stated that, under official FBI policies, the inspection should "extend no further than necessary to determine ownership." *Id.* ¶ 48. The warrant likewise contemplated that, "in

2

accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property." *Id.* ¶ 49.

On March 22, 2021, the FBI executed the seizure warrant. *Id.* ¶ 50. In doing so, the government broke open every box at USPV's facility and emptied each box of its contents. *Id.* ¶ 54. The government labelled this search an "inventory," but there was in fact no need to inventory the contents of the boxes; if the government had simply left the boxes in their initial (locked) state, the contents of the boxes would have been totally secure against theft and loss. *Id.* ¶¶ 53, 58.

Although the government had represented in the warrant application that the search would "extend no further than necessary to determine ownership," *id.* ¶ 48, the government continued with its search even after identifying box owners, *id.* ¶ 59. Boxes at USPV consisted of a plastic "sleeve" inside the exterior metal box, and many box holders (including several of the named Plaintiffs) placed a letter just outside the internal sleeve containing their contact information. *Id.* ¶ 60. If the government had complied with the representations in the warrant application, the government would have stopped the search as soon as it found those letters—preserving the internal sleeves in an unopened state. *Id.* ¶ 61. But the government did not do that, and instead the government broke open the internal sleeves and rifled through the contents. *Id.* ¶ 62. In doing so, the government opened sealed envelopes and made copies of personal documents in the boxes. *Id.* ¶¶ 62, 65.[1]

At the same time, the "inventory" created by the government during this search also failed to describe the property with the detail that would be necessary to

---

[1] The scope of the government's search is illustrated by a filing in a related case, which contains stills from the video that agents made during the search. *See* Decl. of Benjamin N. Gluck, *In re Search and Seizure of Box No. 8309 at U.S. Private Vaults*, No. 21-cv-3554, Doc. 16 ¶¶ 11-16, 23-26 (July 9, 2021). The Court can take judicial notice of these and other public filings on a motion to dismiss. *See, e.g., Martin v. Wells Fargo Bank*, No. 17-CV-03425, 2017 WL 10605965, at *1 (C.D. Cal. Dec. 15, 2017).

actually protect against theft and loss. *Id.* ¶ 67. The government's inventory described valuable property only in general terms, such as "misc. coins." *Id.* In other words, the government took detailed records of facts (such as the contents of legal documents) that had no relation to any valid inventory search but did *not* record facts (such as the amount of valuable coins in a box) that would obviously be relevant to a legitimate inventory. *Id.* ¶¶ 65, 67-68. These actions show that the government's inventory-search rationale was nothing more than a pretext for an unauthorized investigatory search. *Id.* ¶ 68.

C.   The FBI's Investigation.

Following the seizure, the FBI posted a notice on the window at the USPV facility directing box holders to file a claim for their property using a form available at the FBI's website. *Id.* ¶¶ 72-73. All of the named Plaintiffs in this litigation submitted claims to the FBI through this website. *Id.* ¶¶ 74, 76, 78, 80, 82.

In response to claims submitted through the website, the FBI sent form emails to several of the named Plaintiffs assuring them that the agency would contact them within 30-60 days. *Id.* ¶¶ 75, 77, 81. The FBI also called several of the named Plaintiffs to ask for the number of their box. *Id.* ¶¶ 75, 81. When Jeni Verdon-Pearsons received a call asking for her box number, the agent placing the call told her the FBI was "busy" and that she should simply wait for an email from the FBI about her seized property. *Id.* ¶ 81.

Rather than return this property, however, the FBI announced that it intended to investigate to determine if the property was legally earned. *Id.* ¶ 86. Specifically, in a filing in a related case, the government stated that, "[t]o distinguish between honest and criminal customers, the government must examine the specific facts of each box and each claim." Gov't Opp'n To *Ex Parte* Appl. for TRO, *Doe v. United States*, No. 21-cv-2803, Doc. 15 at 10 (Apr. 2, 2021). The FBI conducted this investigation even though the warrant specifically stated that it "*does not authorize*

a criminal search or seizure of the contents of the safety deposit boxes." First Am. Compl. ¶¶ 45, 86.

### D.    The Government's Forfeiture Proceedings.

On May 20, 2021, the government sent an administrative forfeiture notice to attorneys for USPV, announcing that the government was commencing civil forfeiture proceedings against the contents of several hundred boxes containing over $85 million in cash along with unspecified amounts of other valuable property. *Id.* ¶¶ 87-88. This omnibus notice listed property from the boxes of Plaintiffs May, Ruiz, Verdon-Pearsons, and Storc. *Id.* ¶ 89. The government also sent individual notice letters to Plaintiffs May, Verdon-Pearsons, and Storc. *Id.* ¶ 90.[2] All of these notices failed to identify the legal or factual basis for the seizure. *Id.* ¶¶ 92-95.

### E.    Proceedings To Date.

Plaintiffs filed this case on May 27, 2021 and filed their First Amended Complaint on June 9, 2021. The First Amended Complaint seeks to represent a proposed class of "[a]ll renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure." First Am. Compl. ¶ 139. The First Amended Complaint also raises claims on behalf of two proposed subclasses, a "No Notice Subclass" consisting of class members who have not received notice that their case is the subject of a civil forfeiture action and a "Forfeiture Subclass" consisting of class members whose property is listed in an administrative forfeiture notice. *Id.* ¶¶ 140, 142.

The Court entered a TRO on June 22, 2021, and converted that TRO to a preliminary injunction on July 16, 2021. Docs. 52, 58. The Court held that Plaintiffs were likely to succeed on their claim that the administrative forfeiture notices

---

[2] The government did not send an individual notice letter to Joseph Ruiz. First Am. Compl. ¶ 91. In addition, although the notice sent to USPV's attorneys indicated that the government was seeking to forfeit Travis May's gold *and* cash, the individual notice letter that he received only listed his cash. *Id.*

1  violated the Fifth Amendment, as the notices failed to state the factual and legal

2  basis for the seizure, Doc. 52 at 4, and preliminarily enjoined the government from

3  forfeiting the property of Plaintiffs Ruiz and May, Doc. 58 at 4-5.[3]

4      Then, on July 23, 2021, the Court granted a second preliminary injunction

5  holding that Joseph Ruiz was likely to prevail on his claim that the continued

6  retention of his property violated the Fourth Amendment. Doc. 60. The Court

7  directed the government to either release Joseph's property or else articulate a basis

8  for its continued retention. *Id.* at 8. The government initially responded with an

9  affidavit that attempted to demonstrate probable cause based on information

10 extracted from Joseph through the unlawful search and forfeiture proceedings. *See*

11 Doc. 64-1. The government subsequently abandoned its attempt to forfeit Joseph's

12 property, but, in doing so, faulted Joseph for his "failure to . . . show that the funds

13 were legitimately derived" after they were seized. Doc. 66 at 2.

14     Notwithstanding the Court's orders holding that the government must provide

15 a factual and legal basis for its ongoing seizure of the property of USPV box

16 holders, the government continues to hold property without articulating any such

17 basis. Among other things, the government is still holding the property seized from

18 Jeni Verdon-Pearsons and Michael Storc, and the government's Motion to Dismiss

19 states that "while [the government] expects to make a decision shortly whether a

20 judicial forfeiture will be filed relative to [Jeni and Michael's property], it has not

21 currently done so." Mot. 4:13-15.

22     The First Amended Complaint alleges that numerous other USPV box holders

23 are in the same situation as Jeni and Michael. First Am. Compl. ¶ 146.c. The

24 government has also agreed to accept discovery relevant to the issue of class

25 certification, and, on July 21, 2021, attorneys for Plaintiffs served the government

26

27 _____

   [3] The Court held that Plaintiffs Verdon-Pearsons and Storc were not entitled

28 to preliminary injunctive relief "at this time" because they made "no showing that
   their property faces any immediate threat of forfeiture." Doc. 58 at 3-4.

1   with discovery designed to more precisely identify the number of USPV box

2   holders whose property is still being held without explanation.

3   **III.   LEGAL STANDARD**

4         On a Rule 12(b)(1) motion to dismiss, the allegations in Plaintiffs' complaint

5   are taken as true. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir.2005).

6   After construing those allegations, the complaint should be dismissed only if: (1)

7   the claim does not "arise under" federal law or the Constitution; (2) there is no case

8   or controversy; or (3) the cause of action is not described in any jurisdictional

9   statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962). Likewise, this Court should reject

10  the motion to dismiss under Rule 12(b)(6) if the complaint contains "sufficient

11  factual matter, accepted as true, to state a claim to relief that is plausible on its

12  face." *Bain v. California Tchrs. Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018)

13  (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (marks omitted)).

14  **IV.   ARGUMENT**

15        Part A explains that this case is not moot given that Plaintiffs and others are

16  still suffering from the government's actions, including its continued retention of

17  private records obtained through an illegal search. Part B explains that judicial

18  forfeiture proceedings cannot provide an adequate remedy at law because no such

19  proceedings exist and, even if they did, they could not afford the declaratory and

20  injunctive relief that Plaintiffs seek here. Part C explains that the government's

21  arguments that this Court lacks jurisdiction under the Administrative Procedure Act

22  ("APA") and Declaratory Judgment Act ("DJA") fail to wrestle with on-point

23  Supreme Court and Ninth Circuit precedent, including cases holding that courts

24  have inherent authority to enjoin federal officials from violating the Constitution.

25  And Part D explains that all the claims in the First Amended Complaint state valid

26  claims for relief under applicable precedent.

27

28

1     **A.     The Complaint Is Not Moot.**

2          The Motion to Dismiss argues that this case is now moot for all Plaintiffs who

3     have recovered their property or been told that their property will be returned. Mot.

4     15-16. However, this argument ignores the specific relief sought with respect to

5     each of the claims. Because mootness necessarily depends on those particulars,

6     Plaintiffs analyze mootness claim-by-claim below.

7          1.     <u>Count I Presents A Live Case Or Controversy For All Named</u>

8                  <u>Plaintiffs As Well As The Proposed Class.</u>

9          Count I challenges the government's search of the contents of the USPV boxes

10    under the Fourth Amendment, First Am. Compl. ¶¶ 152-71, and, as a remedy, seeks

11    an order directing the destruction of records made during the search, *id.* ¶ 170. The

12    Ninth Circuit approved precisely that remedy in *United States v. Comprehensive*

13    *Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) (en banc) ("*CDT*"), which held

14    that, where "the government comes into possession of evidence by circumventing

15    or willfully disregarding limitations in a search warrant, it must not be allowed to

16    benefit from its own wrongdoing by retaining the wrongfully obtained evidence or

17    any fruits thereof," *id.* at 1174[4]; *see also United States v. Burum*, 639 F. App'x 503,

18    504 (9th Cir. 2006) (remanding for consideration of whether copies of seized

19    documents should be ordered returned or destroyed). As noted *infra* p. 20, the

20    Motion to Dismiss does not argue that Count I fails to state a claim for a violation

21    of the Fourth Amendment, and the Motion also does not argue that this remedy

22    should be unavailable in this case.

23         Count I presents a live case or controversy for all of the Plaintiffs—and all

24    members of the proposed class—whether their property has been returned or not.

---

25         [4] *CDT* was later overruled on a completely different issue—involving the
26    jurisdictional nature of appellate deadlines—but remains good law on this point.
      *See Demaree v. Pederson*, 880 F.3d 1066, 1072 (9th Cir. 2018); *see also Advisory*
27    *In re Email Acct. xxxxxxx gmail.com*, 33 F. Supp. 3d 386, 398 (S.D.N.Y. 2014)
      (citing *CDT* for the proposition that "district judges may order the return of any
28    copies of seized evidence" (marks and citation omitted)).

1  The government made a record of all the contents of the boxes, including making

2  copies of personal documents inside the boxes. First Am. Compl. ¶¶ 62, 65. Thus,

3  for instance, although the government has returned the property seized from Paul

4  and Jennifer Snitko, "it now unreasonably possesses copies of personal documents

5  and other records owned by" the Snitkos, and this "deprivation constitutes an

6  ongoing injury." *Id.* ¶ 120; *see also id.* ¶¶ 126, 130. Because Count I seeks

7  destruction of those records, a favorable decision would redress a continuing injury

8  and the claim accordingly is not moot. *See*, *e.g.*, *Koch v. Lockyer*, 340 F. App'x

9  372, 375 (9th Cir. 2009) (holding that Fourth Amendment claim challenging DNA

10  collection was not moot and ordering government to "relinquish or destroy any data

11  or information relating to or derived from [the plaintiff's] DNA").

12                2.    Counts III, V And VI Present A Live Case Or Controversy As To

13                      Plaintiffs Storc And Verdon-Pearsons And The Forfeiture

14                      Subclass.

15        Counts III, V, and VI raise Fourth and Fifth Amendment claims on behalf of

16  Plaintiffs Storc and Verdon-Pearsons, as well as the proposed Forfeiture Subclass.

17  First Am. Compl. ¶¶ 182-99, 208-19, 220-30.

18        The government concedes that Plaintiffs Storc and Verdon-Pearsons continue

19  to present a live case or controversy, *see* Mot. 15-16, and for good reason. Count III

20  alleges that the government has not provided adequate notice of the basis for the

21  ongoing seizure, and the government still has not told Jeni and Michael why it is

22  holding their property. *See* Verdon-Pearsons Decl. ¶ 13.[5] Count V alleges that the

23  ongoing seizure violates the Fourth Amendment, and the government also

24  continues to seize Jeni and Michael's property. *See id.* ¶ 16. And Count VI alleges

25  that the government is using the forfeiture process to extract information from box

26  holders. *See* Doc. 64, 66. These claims are not moot. To the contrary, because the

27        [5] The Court can consider a declaration from a plaintiff when adjudicating a
28  motion to dismiss under Rule 12(b)(1). *See Savage v. Glendale Union High Sch.*,
    343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

9

government continues to hold Jeni and Michael's property without telling them why, they should be entitled to the same relief that this Court recently ordered for Joseph Ruiz—*i.e.*, an order directing the government to either return their property or else give them a reason why.[6]

3.   Counts II And IV Present A Live Case Or Controversy With Respect To The Proposed No Notice Subclass.

Counts II and IV raise Fourth and Fifth Amendment challenges on behalf of the No Notice Subclass—*i.e.*, individuals who have *not* been targeted for civil forfeiture. *See* First Am. Compl. ¶¶ 172-81, 200-07.

While the government has said that it is returning the property of all Named Plaintiffs in the No Notice Subclass, the government cannot moot the claims of the subclass by "'picking off' the named plaintiffs." *Chen v. Allstate Ins. Co.,* 819 F.3d 1136, 1143 (9th Cir. 2016); *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1084 (9th Cir. 2011). Rather, these Named Plaintiffs continue to have standing "to seek certification" on behalf of the proposed subclass. *Chen*, 819 F.3d at 1142. Plaintiffs have diligently pursued certification of the No Notice Subclass, and, while the Court so far has declined to certify absent proof of numerosity, *see* Doc. 60 at 8, Plaintiffs have served the government with discovery to precisely ascertain the number of individuals remaining in the proposed class and subclasses. Plaintiffs expect to file a motion for class certification no later than August 25, 2021, and, if a class is certified, "certification [will] relate back to the filing of the complaint" and "the case may continue despite full satisfaction of the named plaintiff's individual claim." *Pitts*, 653 F.3d at 1091-92.

---

[6] The Court's decision declining to include Jeni and Michael within its first preliminary injunction is not to the contrary. *See* Doc. 58 at 3-4. The Court held that Jeni and Michael had not made a showing that they were in imminent danger of losing their property to forfeiture—and thus did not need an injunction to preserve the status quo—but it remains the case that the government is holding Jeni and Michael's property in a manner that violates their Fourth and Fifth Amendment rights. In other words, even if they would not benefit from the first preliminary injunction, they would benefit from relief identical to that awarded in the second.

4.    <u>Count VII Presents A Live Case Or Controversy With Respect To Plaintiffs Verdon-Pearsons, Storc, Gothier, May, And Ruiz.</u>

Finally, Count VII raises individual claims for return of property under Rule 41(g) on behalf of all the Named Plaintiffs. First Am. Compl. ¶¶ 231-41. This claim is plainly not moot for Plaintiffs Verdon-Pearsons and Storc, as the government concedes. Mot. 15-16. But, beyond that, this claim also remains live for Plaintiffs Gothier, May, and Ruiz, as their property has not yet been returned.[7] The government cannot moot a claim for return of property by saying it will give the property back; the claim remains live until the property is returned.

**B.    Judicial Forfeiture Proceedings Do Not Provide An Adequate Remedy For The Constitutional Violations Alleged In The Complaint.**

The government also argues that this Court should dismiss because, in its view, Plaintiffs "can raise all the claims they assert here in any judicial forfeiture proceeding the government may file and they therefore have an adequate remedy at law." Mot. 1; *see also id.* at 6-13. Like the mootness argument, this argument paints with a broad brush, stating that all of Plaintiffs' claims should be dismissed because they all could be litigated in a hypothetical judicial forfeiture case. But again, a detailed claim-by-claim analysis shows that the government's argument fails.

1.    <u>Count I Seeks Relief On Behalf Of Numerous Plaintiffs Who Are Not Being Targeted For Forfeiture.</u>

Count I—which seeks destruction of records generated during the government's illegal search—seeks relief on behalf of numerous Plaintiffs who will never be party to a judicial forfeiture proceeding. As explained above, *supra* pp. 8-

---

[7] In the case of May and Ruiz, the government has apparently deposited the seized cash into the bank, and it may take significant time for government officials to authorize a wire transfer of substitute funds. In the case of Gothier, meanwhile, the return has been delayed by scheduling difficulties.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

9, this Count continues to present a live case or controversy for all the Named Plaintiffs, including those whose property has been returned.

A judicial forfeiture case clearly cannot provide an adequate remedy for a claim raised on behalf of individuals who will never be parties to such a case; that would be like saying an individual cannot bring a false arrest claim because they could have litigated that issue in a criminal case that was never (and never will be) filed. Nor does the government's conduct escape judicial review simply because the government has declined to seek judicial forfeiture. In *CDT*, the Ninth Circuit held that the government could be ordered to hand over records that it made during an unlawful search, and, unsurprisingly, nobody suggested that relief was somehow barred by some hypothetical nonexistent judicial forfeiture case. *See* 621 F.3d at 1172-74. So too here. A judicial forfeiture proceeding cannot provide an "adequate remedy" for Plaintiffs who will never be parties to such a proceeding and who are seeking destruction of records generated during an unlawful search.

2.  <u>Counts II-VI Address Ongoing Constitutional Violations That Could Not Be Redressed In Any Eventual Forfeiture Case.</u>

Counts II through VI raise claims under the Fourth and Fifth Amendments that seek to remedy the government's conduct following the seizure of USPV box holders' property. Again, this is relief that no forfeiture court could provide.

This Court has already addressed several of these Counts and provided relief under them that could not be obtained in any judicial forfeiture case. *See* Doc. 52 (granting TRO over forfeiture notice issue arising from Count V); Doc. 58 (granting preliminary injunction regarding same); Doc. 60 (ordering government, consistent with Count II, to either return property or articulate independent justification for retention). These orders remedied violations of Plaintiffs' constitutional rights that—by their nature—necessarily *preceded* the filing of any hypothetical future judicial forfeiture complaint. None of this relief would be available in a judicial forfeiture case.

Indeed, Counts II through VI do not "all seek the return of property," Mot. 10, as the government contends, and instead seek relief for ongoing violations of the Fourth and Fifth Amendments arising from the government's raid and subsequent conduct. They seek conditional relief—akin to the conditional relief already granted on behalf of Joseph Ruiz—that would order property returned *only if* the government does not otherwise remedy the alleged constitutional violations. *See* Doc. 60 at 8.[8] In other words, these Counts seek not the return of property, but, rather, a command that the government follow the Constitution when dealing with Plaintiffs and other class members. For that reason, the Court has granted Plaintiffs preliminary relief without directly ordering any property returned.

Given this, the cases that the government cites to suggest that Plaintiffs could secure all the relief that they seek in forfeiture proceedings are specious. The government cites over a dozen cases—including the Ninth Circuit's decisions in *Elias* and *$83,310*, as well as two *In re Return of Seized Property* decisions from the Central District—all of which involved a court refusing to entertain a claimant's motion for return of property where a valid forfeiture proceeding had been initiated.[9] These cases are all off base, as Plaintiffs here do not merely seek return

[8] The prayer for relief therefore seeks an injunction preventing Defendants from "[r]etaining property seized from USPV customers' safe deposit boxes *without stating* a valid independent basis for its continued detention" (emphasis added); "[r]etaining property seized from USPV customers *without notice* or a prompt post-seizure opportunity to be heard" (emphasis added); and "[c]ompelling USPV customers to provide testimony, or prove the legality of their seized property, in order to secure its return."

[9] *See United States v. Elias,* 921 F.2d 870, 875 (9th Cir. 1990); *United States v. U.S. Currency, $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988); *In Re Return of Seized Prop. (Jordan),* 625 F. Supp. 2d 949, 955 (C.D. Cal. 2009); *In Re Return of Seized Prop. (BoundlessRise, LLC)*, 17-cv-00771, 2017 WL 4180149, at *1 (C.D. Cal. Aug. 30, 2017); *see also Linarez v. U.S. Dep't of Justice*, 2 F.3d 208, 213 (7th Cir. 1993); *United States v. One 1987 Jeep Wrangler,* 972 F.2d 472, 479 (2d Cir. 1992); *Abernathy v. Kral*, 305 F. Supp. 3d 795, 797 (N.D. Ohio 2018); *CFK, LLC v. United States*, 324 F.R.D. 236, 238 (D. Utah 2018); *Haltiwanger v. United States*, 494 F. Supp. 2d 927, 930 (N.D. Ill. 2007); *United States v. Voraveth*, No. 07-cr-419, 2008 WL 4287293, at *13 (D. Minn. July 1, 2008); *$8,050.00 in U.S.*

(continued…)

of property and, in any event, there are no valid forfeiture proceedings currently in place for *any* Plaintiff. The government says that it *might* file a judicial forfeiture case as to Jeni Verdon-Pearsons and Michael Storc at some future date, *see* Mot. 4, but for now the government has "suspended administrative forfeiture proceedings" against their property after receiving their claims, Doc. 55-1 at 4:3-6.

And even if there were active and valid forfeiture proceedings underway, those proceedings would not be an "adequate remedy at law" since they could not provide the relief that Plaintiffs seek. A forfeiture court can, at most, order the government to return the *res*; it cannot order the kind of declaratory and injunctive relief that Plaintiffs ask for in Counts II-VI. Nor could Plaintiffs bring these Counts as counterclaims in a hypothetical forfeiture action, as courts in this district have held that a "[c]laimant [in a forfeiture proceeding] is not a defendant, and therefore has no basis to bring a counterclaim." *United States v. Various Rest. Furniture & Goods of Iranian Origin*, No. 15-cv-259, 2016 WL 7496130, at *2 (C.D. Cal. Feb. 8, 2016) (citation omitted). The only way to address these constitutional claims is through a separate action like this case.

The government's suggestion that this Court dismiss because a judicial forfeiture case would provide Plaintiffs with an "adequate remedy at law" is thus wrong twice over. No such case exists and, if it did, Plaintiffs could not obtain in such a case the relief that Counts II-VI seek.

### 3.  Count VII, Under Rule 41(g), Also Is Not Barred.

Finally, the government also asks that this Court dismiss Plaintiffs' individual motions for return of property. As with the other arguments, the government

---

*Currency v. United States*, 307 F. Supp. 2d 922, 926-27 (N.D. Ohio 2004); *United States v. 2nd Amendment Guns, LLC*, 917 F. Supp. 2d 1120, 1122 (D. Or. 2012); *Baranski v. Fifteen Unknown Agents of ATF*, 195 F. Supp. 2d 862, 868 (W.D. Ky. 2002); *United States v. U.S. Currency in the Amount of $146,800,* No. 96-cv-4882, 1997 WL 269583, at *5 (E.D.N.Y. Apr. 28, 1997). The decision in *Lycurgan, Inc. v. Jones*, No. 14-cv-1679, 2016 WL 8983006 (S.D. Cal. Jan. 27, 2016), meanwhile, simply declined to exercise equitable jurisdiction to order return of property the government no longer possessed.

14

1    contends that this Court lacks jurisdiction over these motions because a forfeiture

2    case would provide an adequate remedy at law.

3         But, to again state the point, there is *no* such pending forfeiture case against

4    any of the Plaintiffs' property. Plaintiffs Gothier, May, and Ruiz have live claims

5    under Rule 41(g), and the government says it will not seek to forfeit their property.

6    And unless the government actually files a judicial forfeiture case against Jeni and

7    Michael's property, this Court can entertain their motion for return of property as

8    well. The case law bears this out: In *Linarez v. U.S. Dep't of Justice*, the Seventh

9    Circuit held that once an administrative forfeiture proceeding has commenced, a

10   "district court remains without jurisdiction over the forfeiture *unless an interested*

11   *party files a claim of interest*." 2 F.3d 208, 211 (7th Cir. 1993). And the Eighth

12   Circuit likewise held that an administrative forfeiture proceeding may bar a Rule

13   41(g) motion "unless the citizen complies with the [agency's] administrative

14   procedures to contest the forfeiture." *Muhammed v. DEA*, 92 F.3d 648, 652 (8th

15   Cir. 1996). Here, Jeni and Michael filed a valid claim, and the government thus

16   acknowledges that it has "suspended administrative forfeiture proceedings." Doc.

17   55-1 at 4:3-6. There is accordingly no administrative forfeiture proceeding that

18   could possibly interfere with this Court's equitable jurisdiction.

19        Should the government elect at some future point to file a judicial forfeiture

20   case against Jeni and Michael's property, the government can again argue that this

21   Court should dismiss their 41(g) motion. But until such time, this Court should

22   reject the government's attempt to short circuit its equitable jurisdiction.

23   **C.    The Court Has The Necessary Authority To Remedy The Alleged**

24   **Constitutional Violations.**

25        The government also argues that the Court cannot (or should not) provide a

26   remedy for these constitutional claims under the APA and DJA. *See* Mot. 13-15,

27   17-18. These arguments are ultimately irrelevant, as Ninth Circuit precedent

28   demonstrates that this Court has broad equitable authority (even apart from the

APA) to enjoin federal officials from violating the Constitution. And, regardless, these arguments ignore analogous cases that have proceeded under the APA, which textually provides for judicial review of the government's seizure and retention of property. *See* 5 U.S.C. § 704 (authorizing judicial review of final agency action); 5 U.S.C. § 551(10), (13) (defining "agency action" to include a "sanction" including the "destruction, taking, seizure, or withholding of property"). Indeed, this Court has already implicitly held that Plaintiffs' challenges under the Constitution and the APA are justiciable by granting preliminary injunctive relief.

> 1.   The Court Has Inherent Equitable Authority To Enjoin Federal Officials From Violating The Fourth And Fifth Amendments.

Plaintiffs here have sued responsible federal officials in their official capacities seeking injunctive relief directly under the Constitution, and it is black letter law that courts have inherent equitable authority to adjudicate such claims: "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019) (marks and citation omitted).

The government's contrary arguments here are strongly reminiscent of the ones that the government raised—unsuccessfully—before the Supreme Court in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), where it claimed the Court lacked equitable jurisdiction over petitioners' action because they could raise their challenge by appealing from a Board sanction. The Court rejected the government's argument in no uncertain terms, noting that "it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Id.* at 491 n.2 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).

The Ninth Circuit also rejected similar arguments in *Sierra Club*, 929 F.3d 670. In that case, public-interest organizations sought to enjoin construction of a

1    border wall under both the Constitution's Appropriations Clause and the APA.

2    When the government sought to stay a preliminary injunction on appeal, it argued

3    that neither the Constitution nor the APA gave plaintiffs any sort of cause of action.

4    But the Ninth Circuit disagreed, holding that plaintiffs could "bring their challenge

5    through an equitable action to enjoin unconstitutional official conduct, or under the

6    judicial review provisions of [the APA] as a challenge to a final agency decision

7    that is alleged to violate the Constitution, or both." *Id.* at 694. The Ninth Circuit

8    stated that, while Congress can limit a Court's equitable authority to enjoin

9    constitutional violations, it must "demonstrate its intent by clear and convincing

10   evidence," *id.* at 697-98, and the government here does not even attempt to point to

11   any statute or other legal authority that would demonstrate such intent.

12         Further support for this Court's equitable jurisdiction—in a context

13   remarkably similar to this case—can be seen in *CDT*, 621 F.3d 1162. There, the

14   government executed a search warrant in an overbroad manner, leading to it

15   acquiring hundreds of records not authorized by that warrant. When a drug testing

16   company and baseball players' union brought an equitable Fourth Amendment

17   challenge, the Ninth Circuit exercised its equitable jurisdiction and affirmed the

18   district court's injunction ordering the government to return copies of the

19   improperly seized records, which, as explained above, is the exact relief that

20   Plaintiffs here seek in Count I of the First Amended Complaint. *Sierra Club* and

21   *CDT* both confirm that this Court may act under its own equitable authority in

22   considering Plaintiffs' constitutional challenge.

23              2.    The Court Can Separately Provide Relief Under The

24                    Administrative Procedure Act.

25         Even apart from the above, Plaintiffs may also raise their constitutional

26   challenge via the APA, as *Sierra Club* again demonstrates. 929 F.3d at 698 (citing

27   *Webster v. Doe*, 486 U.S. 592, 602–04 (1988) (holding "that a constitutional claim

28   [under the APA] may be reviewed by the District Court")). In *Sierra Club*, the

Ninth Circuit held that "[p]laintiffs have a cause of action under the APA as long as there has been final agency action, and as long as Congress has not limited review of such actions through other statutes or committed them to agency discretion." 929 F.3d at 698. Here, the search and seizure of Plaintiffs' property is a final agency action, and agencies do not have any discretion to violate the Fourth and Fifth Amendments.

In fact, the Ninth Circuit allowed such claims to proceed under the APA in *Gete v. INS*, 121 F.3d 1285 (9th Cir. 1997), one of the key authorities that Plaintiffs have relied on in this case. Like Plaintiffs here, the plaintiffs in *Gete* invoked the APA to challenge the government's promulgation of anemic forfeiture notices under the Fourth and Fifth Amendments. The government sought to dismiss the APA claims, arguing that the INS' administrative forfeiture decisions were matters generally left to the agency's discretion. But the Ninth Circuit rejected the argument, noting that the plaintiffs were not seeking review "of the *merits* of any particular agency decision; instead, they challenge the INS' forfeiture process itself," and that a long line of authority authorized courts to entertain such challenges under the APA. *Id.* at 1291. So too here.

Other cases likewise hold that searches and seizures constitute "final" agency action reviewable under the APA. *See Kidd v. Mayorkas*, No. 20-cv-03512, 2021 WL 1612087, at *8 (C.D. Cal. Apr. 26, 2021) (holding that use of ruses to gain entry to people's homes, thereby violating the Fourth Amendment, constituted "final agency action"); *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 166 (E.D.N.Y. 2018) (holding that searching plaintiffs disembarking from plane was a "final agency action"). That makes sense, as a search and seizure is a government action that has "a direct and immediate effect on the day-to-day business of the complaining parties." *Mt. Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1989). Indeed, if there could be any doubt on that score, the APA itself

18

1  defines "agency action" to include a "seizure" of property. 5 U.S.C. § 551(10), (13).

2  The text of the statute itself thus refutes the government's contrary view.

3       The government gives no reason to depart from these cases. It cites to cases in

4  which courts rejected APA challenges under either the finality or "committed to

5  agency discretion" criteria, but it never explains how those criteria block the

6  particular claims in this case. In particular, the government repeatedly cites *City of*

7  *Oakland v. Lynch,* in which the Ninth Circuit rejected Oakland's attempt to use the

8  APA to enjoin the government from proceeding with a previously filed judicial

9  forfeiture case. 798 F.3d 1159, 1165 (9th Cir. 2015). But Plaintiffs are not trying to

10  enjoin any validly initiated judicial forfeiture case; as noted above, no such case has

11  been filed. Plaintiffs instead seek to order the government to, among other things,

12  destroy copies of documents and records that it made during its criminal search.

13  That this relief would be unavailable from any forfeiture court is notable: As the

14  Ninth Circuit noted in *City of Oakland*, "[w]hen a statute is not addressed to the

15  type of grievance which the plaintiff seeks to assert, then the statute cannot prevent

16  an APA suit." *Id*. at 1166.

17            3.    The Court Should Also Exercise Jurisdiction Under The

18                  Declaratory Judgment Act.

19       Lastly, there is no basis for the government's argument that this Court should

20  refrain from deciding Plaintiffs' claims under the DJA. The government's argument

21  on this front boils down to the idea that because some of these issues could

22  potentially be raised in a hypothetical forfeiture proceeding, this Court should

23  remain silent. *See* Mot. 18 ("All of plaintiffs' requests for declaratory relief . . . can

24  properly be raised in any civil forfeiture action the government files."). But as

25  Plaintiffs discuss above, this ignores two basic realities: First, the government has

26  not filed (and may never file) such a case. And second, even if Plaintiffs could

27  litigate and prevail in a forfeiture proceeding, they would not receive the full scope

28  of relief that they seek here. After all, the most a forfeiture court could order is that

1    Plaintiffs' property be returned to them; it could not order the government to
2    destroy copies of records made during its raid or provide any of the other
3    declaratory and injunctive relief that Plaintiffs are seeking here.

4         **D.    The Complaint States A Claim On The Merits.**

5         Finally, the government's motion does not really dispute that the First
6    Amended Complaint states a claim on the merits. The motion hardly raises any
7    12(b)(6) arguments at all; the one such argument that the motion does raise is
8    addressed to an argument that Plaintiffs are not actually pursuing.[10]

9         The government's only argument on the merits is that Counts IV and V do not
10   state a claim to the extent that they contend that due process requires a prompt post-
11   seizure hearing. *See* Mot. 16-17. But as this Court recognized in granting a TRO,
12   the thrust of these Counts is that the government's failure to notify Plaintiffs and
13   other class members of the factual and legal bases for why the government
14   continues to retain their property violates procedural due process. Because Counts
15   IV and V both state valid claims as to notice, the government's entire discussion
16   regarding prompt post-seizure hearings is beside the point.

17   **V.    CONCLUSION**

18        For the foregoing reasons, the motion to dismiss should be denied.

19

20

         _____

21        [10] Presumably, the government does not challenge the merits because each of
     the Counts applies established law. Count I states a plausible claim for an illegal
22   search under the Fourth Amendment and seeks a remedy (destruction of records)
     that the Ninth Circuit approved in *CDT*, 621 F.3d at 1174. Counts II and III state a
23   claim under *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), which this Court
     found sufficient to warrant entry of a preliminary injunction for Joseph Ruiz.
24   Counts IV and V state a claim under *Gete*, 121 F.3d 1285, which this Court found
     sufficient to warrant entry of a TRO and preliminary injunction. And Count VI
25   states a claim under the Fifth Amendment right to be free from self-incrimination,
     which this Court recently found applicable in a related case. *See* Order Denying
26   Motion to Dismiss, *Coe v. United States*, 21-cv-3019, Doc. 49 (C.D. Cal. July 23,
     2021) (holding that government's attempt to compel box holders to identify
27   themselves implicates the "right to be free from unreasonable seizures and from
     self-incrimination").
28

1    Dated: August 9, 2021                    Respectfully Submitted,

2
                                              /s/ Robert Frommer
3
                                              **THE INSTITUTE FOR JUSTICE**
4                                             Robert Frommer*
                                              rfrommer@ij.org
5                                             901 N. Glebe Rd., Suite 900
                                              Arlington, VA 22203
6                                             Tel. (703) 682-9320

7                                             Robert E. Johnson*
                                              rjohnson@ij.org
8                                             16781 Chagrin Blvd., Suite 256
                                              Shaker Heights, OH 44120
9                                             Tel. (703) 682-9320

10                                            *Admitted pro hac vice.*

11                                            **THE VORA LAW FIRM, P.C.**
                                              Nilay U. Vora (SBN 268339)
12                                            nvora@voralaw.com
                                              Jeffrey Atteberry (SBN 266728)
13                                            jatteberry@voralaw.com
                                              201 Santa Monica Blvd., Suite 300
14                                            Santa Monica, CA 90401
                                              Tel. (424) 258-5190
15
                                              *Attorneys for Plaintiffs*
16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT