TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
    1100/1400/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0102/2569/1785
    Facsimile: (213) 894-6269/0142/0141
    E-mail: Andrew.Brown@usdoj.gov
          Victor.Rodgers@usdoj.gov
          Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, AND TRAVIS MAY,<br><br>       Plaintiffs,<br><br>       v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br><br>       Defendants. | Case No. 2:21-CV-04405-RGK-MAR<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND DECLARATION OF LYNNE ZELHART**<br><br>Date:      August 30, 2021<br>Time:     9:00 a.m.<br>Courtroom: 850, the Honorable<br>               R. Gary Klausner |

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs have not overcome the reasons that warrant that the motion to dismiss be granted, including but not limited to the following reasons.  They contend Article III standing exists and their case is not moot. despite the return of their property, because they seek the destruction of documents obtained during the inventory search.  But plaintiffs' FAC does not identify the documents in any detail, nor any irreparable injury plaintiffs will suffer absent destruction (unlike the Major League baseball players involved in the case upon which plaintiffs rely whose records showed they used steroids) nor shown (as in that case) that the government clearly ignored the terms of the search warrant.  Moreover, to permit plaintiffs to inquire regarding the details and justification for the search would improperly intrude upon the investigatory decisions committed to the Executive Branch as to particular boxholders for whom a criminal investigation is being conducted.  Plaintiffs' assertion that their claims are live because forfeiture notices setting forth factual and legal details are still required similarly fails because, even if the government still intended to forfeit plaintiffs' property, the judicial complaint would provide those details.  Plaintiffs' arguments regarding equitable jurisdiction as to suits for injunction relief against federal officers fails because the federal officer defendants have not sued in their individual capacities, and plaintiffs arguments regarding APA jurisdiction address only part of the requirements for APA jurisdiction and incorrectly argue that a seizure is "final" agency action when their cases on the point deal with agency policies regarding seizures and not a seizure, like here, in a particular case.

### ARGUMENT

**A.   Plaintiffs' Have Not Discharged Their Burden Of Showing They Satisfy Article III's Case Or Controversy Requirement.**

**1.   Plaintiffs Have Not Shown That Count I Is Not Moot.**

Citing United States v. Comprehensive Drug Testing, Inc., 621 F.2d 1162 (9th Cir. 2010) ("CDT"), plaintiffs argue that Count I presents a live case or controversy solely

1

because plaintiffs request that records secured during the search be destroyed.  Oppo. at 8:9-12.  Plaintiffs note the Ninth Circuit stated where "the government comes into possession of evidence by circumventing or willfully disregarding limitations in a search warrant, it must not be allowed to benefit form its own wronging by retaining the wrongfully obtained evidence or any fruits thereof."  CDT at 1174.

In CDT, the Ninth Circuit held that the warrant procedures were "completely ignored" by the government, and that those violations led to the illegal seizure of evidence outside the scope of the warrant.  CDT involved a federal investigation into the Bay Area Lab Cooperative ("Balco"), which was suspected of providing steroids to professional baseball players.  621 F.3d at 1166. The Major League Baseball Players Association had entered into a collective bargaining agreement with Major League Baseball providing for suspicionless drug testing of all players.  Id.  The players were assured that the results would remain anonymous and confidential; the purpose of the testing was solely to determine whether more than five percent of players tested positive, in which case there would be additional testing in future seasons.  Id.  Comprehensive Drug Testing, Inc. ("CDT, Inc.") collected the specimens from the players.  Id.

During the Balco investigation, federal authorities learned of ten players who had tested positive in the CDT, Inc. program and secured a warrant "limited to the records of the ten players as to whom the government had probable cause."  Id.  However, "[w]hen the warrant was executed, . . . the government seized and promptly reviewed the drug testing records for hundreds of players in Major League Baseball (and a great many other people)."  Id.  Equitable considerations existed to require sequestration and return of the records because the risk of the players associated with the disclosure of these records, or of the Major League players' association to obtain voluntary compliance with drug testing from its members in the future, was very high, and some of the players had already suffered this irreparable harm as a result of the seizure.  Id. at 1174.

These facts are simply not analogous to those here for multiple reasons.  First, plaintiffs have not even identified with any specificity the documents they seek to have

1    destroyed, let alone explained how any inadvertent release of those documents by the

2    government would cause them irreparable harm.  Ramsden v. United States, 2 F.3d 322,

3    324 (9th Cir. 1993) (certain factors should be analyzed to prevent district courts from

4    exercising equitable jurisdiction, including whether the movant would be irreparably

5    harmed by denying return of property and whether the government has displayed a

6    callous disregard for the constitutional rights of the movant).  Second, plaintiffs have not

7    alleged any facts in their FAC to support the notion that the government "completely

8    ignored" the search warrant.  The government, recognizing its "responsib[ility] for the

9    property taken into their custody," opened and cataloged the contents of the seized safe

10   deposit boxes to protect against claims of theft, damage and "any danger . . . that may

11   have been posed by the property."  Colorado v. Bertine, 479 U.S. 367, 373 (1987); see

12   Dakota v. Opperman, 428 U.S. 364, 371 (1976) ("[I]t is reasonable to search the

13   container to itemize the property to be held by the police") (citation omitted).  Critically,

14   this alleged process occurred pursuant to "standardized criteria or established routine,"

15   Florida v. Wells, 495 U.S. 1, 4 (1990), that involved itemizing every box.   United States

16   v. Gaston, 740 F. App'x 576, 577  (9th Cir. 2018) (finding that "routine practice of

17   opening locked containers if they can be readily opened during an inventory search"

18   qualified as standardized practice and therefore validated inventory search).

19        Plaintiff's unadorned claim that the search was in fact a "pretext for conducting an

20   investigatory search" does not alter the result. FAC ¶ 68.  In United States v. Bowhay,

21   992 F.2d 229 (9th Cir. 1993), the plaintiff made a similar argument when an officer

22   admitted that he "viewed [a] search as both an investigative and as an inventory

23   search[.]"  Id. at 231.  However, the court still held that "the presence of an investigative

24   motive [did] not invalidate the inventory search."  Id.  It reasoned that because "the

25   department's policy was to search everything[,] the officer had no discretion" and thus

26   his motive was beside the point.  Id.  This case is no different.  Plaintiffs allege that the

27   inventory procedure required opening all boxes seized (FAC ¶ 49) and thus motive is

28   irrelevant and in any event motive has no bearing under these circumstances.   United

3

1  States v. Lopez, 547 F.3d 364, 372 (2d Cir. 2008) ("the Supreme Court has not required

2  an absence of expectation of finding criminal evidence as a prerequisite to a lawful

3  inventory search. … [M]otivation [] cannot reasonably disqualify an inventory search

4  that is performed under standardized procedures for legitimate custodial purposes")

5  (citations omitted).

6        Therefore, Count I is moot and should be dismissed.  CDT's rationale for

7  destruction of documents, namely, that the warrant procedures were clearly ignored and

8  the release of the seized information would cause irreparable injury, does not apply here,

9  as plaintiffs' FAC does not allege those facts.

10        **2.**      **Plaintiffs Have Not Shown That Counts III, V and VI Are Not Moot.**

11        Plaintiffs allege that a live case or controversy exists relative to these Counts as to

12  Verdon-Pearsons and Storc (oppo. at 9:15-10:4), but that is no longer true as the

13  government is returning their property.  Zellhart Decl. ¶ 4.  As to the remainder of the

14  "forfeiture subclass," the issue of providing a further notice setting forth the reasons the

15  government is retaining property before the government civilly forfeits it is irrelevant

16  because the government cannot forfeit the property without filing a complaint within the

17  90 day period after a claim is filed that sets forth those details.  Docket 58 [July 16, 2021

18  (In Chambers) Order Re: Request for Preliminary Injunction) at 3-4, denying motion for

19  preliminary injunction as to Verdon-Pearsons and Storc].  Plaintiffs' statement that the

20  government is using the forfeiture process to extract information (oppo. at 9:24-26) is

21  neither alleged in their FAC nor explained, but in any event is wrong because merely

22  filing a claim, without providing any information whatsoever, suspends administrative

23  forfeiture proceedings.  Counts III, V and VI should be dismissed.

24        **3.**      **Plaintiffs Have Not Shown That Counts II and IV Are Not Moot.**

25        Plaintiffs first argue that Counts II and IV are raised by the "no notice subclass"

26  which plaintiffs erroneously contend consists of property not targeted for forfeiture.

27  Oppo. at 10: 7-9. But plaintiffs incorrectly assume that if an individual notice letter was

28  not sent or received by a boxholder (which means they are part of the "no notice

subclass" within the "class"), that individual's property is not subject to forfeiture proceedings.[1]  Any property covered by the FBI's global property letter to USPV has been targeted for forfeiture, and therefore plaintiffs "no notice subclass" is essentially identical to their "forfeiture subclass."  Plaintiffs contend that the government is picking off named plaintiffs, notwithstanding the fact that the government must make decisions, within the 90 day statutory period, to either file judicial forfeiture actions or return property of particular boxholders.  Regardless, the government's return of property to the named plaintiffs' moots plaintiffs Count II and IV class and individual claims.  Lusardi v. Xerox Corp., 975 F.2d 964, 974 (9th Cir. 1992) ("Normally, when claims of the named plaintiffs become moot before class certification, dismissal of the action is required") (citations omitted); Richards v. Del Well Communities, Inc., 2013 WL 525471 (D. Ariz. Feb. 11, 2013) (granting motion to dismiss putative class action as moot).  Plaintiffs have the burden of showing that an exception to the mootness doctrine applies, yet plaintiffs offer none here.  Johnson v. Rancho Santago Cmty. Coll. Dist., 623 F.3d 1011, 1021 (9th Cir. 2010).  Therefore, Count II and IV should be dismissed.

### 4.    Plaintiffs Have Not Shown That Count VII  Is Not Moot.

Plaintiffs argue that Count VII, which is the individual Rule 41(g) claim for return of property, is not moot as to Verdon-Pearsons, Storc, Gothier, May and Ruiz, arguing as to Verdon-Pearsons and Storc that the government had not yet declined to pursue judicial forfeiture, but the government has now done so and is returning the property (Zellhart Decl. ¶ 4) which makes their claim moot.  Plaintiffs' argument that Gothier's claim is not moot is at odds with their earlier concession that it is, the Court's July 23, 2021 order recognizing that it is (docket no. 60 at page 1, noting the action is moot as to Gothier) and the facts that show that despite the FBI's numerous requests, Gothier

---

[1] See FAC ¶¶ 9, 140 and 141, noting that Ruiz had not received an individual notice letter, Ruiz's property was included in the USPV global notice letter and Ruiz is a member of the "no notice" subclass within the "class."  The "no notice subclass" include individuals who "have not been notified that their safe deposit boxes are the subject of currently ongoing administrative or judicial forfeiture proceeding[s,]" meaning it is essentially the same as the "forfeiture subclass."  FAC ¶¶ 140, 142 and 143.

1   simply refuses to retrieve the property.  Zellhart Decl. ¶¶ 2 and 3.  As to remaining

2   plaintiffs May and Ruiz, plaintiffs appear to argue that the government should return the

3   actual seized bills, but the bills were deposited into a bank account and the funds, plus

4   interest earned thereon, will be wired to plaintiffs when they provide wire transfer

5   information.  Zellhart Decl. ¶ 5.  Count VII is moot and should therefore be dismissed.

6   **B.    Plaintiffs' Argument That Judicial Forfeiture Proceedings Provide No**

7   **Adequate Remedy At Law Is A Rehash Of Their Assertion That The**

8   **Destruction Of Documents Shows Their Claims Are Not Moot.**

9       Plaintiffs appear to contend that equitable jurisdiction lies for Counts I, II-IV and

10  VII because the remedy at law is inadequate since plaintiffs could not obtain an order for

11  the destruction of documents in any future judicial forfeiture case or if no future judicial

12  forfeiture case is filed.  Oppo. at 11:10-15:1.  The government has already set forth

13  above the reasons why plaintiffs' destruction of documents argument fails - - plaintiffs

14  have neither identified the property they seek to have destroyed in any detail, nor

15  explained the irreparable injury they will suffer (unlike the Major League baseball

16  players in CDT) if the records are somehow leaked.

17      As to plaintiffs' other arguments, plaintiffs again mistakenly claim that Count I

18  seeks relief for persons not being targeted for forfeiture (oppo. at 11:20-21) because

19  plaintiffs' "no notice subclass" and the "forfeiture subclass" of the "class" definitions all

20  involve property subject to the in rem forfeiture proceedings since boxholders' receipt of

21  an individual notice letter is irrelevant if their property was included in the USPV global

22  notice letter.  In addition, if a civil forfeiture case is filed, plaintiffs can move to suppress

23  the evidence by seeking to prove that the inventory search was unlawful.

24      Plaintiffs also argue that because the filing of the claim suspends the

25  administrative forfeiture proceeding, and no judicial forfeiture case has yet been filed

26  (even though the filing must occur within 90 days after claim submission), there is no

27  place for plaintiffs to have their claims heard and the remedy at law is inadequate.

28  However, the government cited numerous cases holding the initiation of administrative

forfeiture proceedings shows that an adequate remedy at law exists (moving papers at 7:11-21, 8:23-9:7 and 9:23-10:2), including <u>United States v. 2nd Amendment Guns, LLC</u>, 917 F. Supp. 2d 1120 (D. Or. 2012), where the court, in denying a Rule 41(g) motion because administrative forfeiture proceedings had been commenced, noted equitable jurisdiction to hear a Rule 41(g) motion did not lie even though administrative forfeiture proceedings had been stopped by the filing of a claim, but the government had not yet filed a judicial forfeiture complaint.  The court noted that it made no difference that claimant had submitted a claim and the government had not yet filed a judicial forfeiture action, because Congress has given the government 90 days under 18 U.S.C. § 983(a)(3)(A) & (B) to decide how to proceed: by filing a judicial complaint or releasing the property.  <u>Id.</u> at 1122.  Further, the court noted that if a claimant asserts he has an immediate need for property, the claimant still has an adequate remedy at law because the claimant may seek immediate return of the property by filing a hardship petition pursuant to 18 U.S.C. § 983(f).  <u>Id.</u> at 1122.

Furthermore, even if no case is ever filed as to particular property, the matters plaintiffs seek to litigate impact the investigation relative to particular boxholders for whom a criminal investigation is being conducted.  By seeking information about the destruction of records and discovery regarding the inventory search plaintiffs would intrude upon criminal investigatory decisions as to particular boxholders, which is an investigatory decision committed to the Executive Branch, and intruding upon the Executive Branch function risks violating the separation of powers.  <u>Ogagues v. Russoniello</u>, 770 F.2d 791, 800 (9th Cir. 1985) (in seeking to enjoin a criminal investigation, the movant "bears an almost insurmountable burden"); <u>United States v. Nixon</u>, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case[.]"); <u>United States v. Olson</u>, 504 F.2d 1222, 1225 (9th Cir. 1974) (separation of powers commands "that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions"); <u>Farah v. Weyker</u>, 926

F.3d 492, 500 (8th Cir. 2019) (the inherent factual complexity of the search risks "burdening and interfering with the executive branch's investigative and prosecutorial functions").  Plaintiffs should not be permitted to interfere with ongoing investigations, particularly because they identify no irreparable injury regarding the documents they seek to have destroyed and do not identify those documents in any detail.  Moreover, even where a judicial forfeiture action is filed, the forfeiture statutes contain a mandatory stay provision providing that the case must be stayed pending the resolution of any criminal investigation or case, because allowing discovery would interfere with the criminal investigation or case.  <u>See</u> 18 U.S.C. § 981(g)(1).  Counts I, II-IV and VII should therefore be dismissed.

## C. Plaintiffs' Arguments Regarding Equitable Jurisdiction In Cases Against Federal Officials And APA Jurisdiction Are Insufficient To Avoid Dismissal Of Their Claims.

Citing <u>Sierra Club v. Trump</u>, 929 F.3d 670 (9th Cir. 2019), plaintiffs argue that courts have inherent equitable authority to enjoin unconstitutional actions of federal and state officers.  Several problems exist with this argument.  First, plaintiffs have not sued any officers in their <u>individual</u> capacities (and they have only sued the United States and officers in their <u>official</u> capacities and therefore sovereign immunity still applies), so their lawsuit does not fall within the purview of the case they cite.  Second, even if plaintiffs had named any federal officers as defendants in their individual capacities, plaintiffs offer no facts to suggest or caselaw similar to the facts asserted here, in order to show why the exercise of equitable jurisdiction would be appropriate.  Third, the FAC does not aver that any of plaintiffs' claims are brought pursuant to the Court's equitable jurisdiction, and the only statute the FAC cites that creates equitable jurisdiction is Rule 41(g).  Fourth, plaintiffs cite the <u>CDT</u> case to support plaintiffs argument, but that case dealt with equitable jurisdiction under Rule 41(g), and not for non-Rule 41(g) claims as plaintiffs assert here and does not address sovereign immunity against the United States and its employees acting in their official capacities.

The government's moving papers noted that the Ninth Circuit has stated "no cause of action under the APA exists if (1) 'statutes preclude judicial review,' 5 U.S.C. § 701(a)(1); (2) the relevant agency action is not a 'final agency action for which there is no other adequate remedy in a court,' 5 U.S.C. § 704; or (3) the 'agency action is committed to agency discretion by law,' 5 U.S.C. § 701(a)(2)." Hyatt v. Office of Management and Budget, 908 F.3d 1165, 1170 (9th Cir. 2018) (citing City of Oakland v. Lynch, 798 F.3d 1159, 1165 (9th Cir. 2015) and emphasis added).  In City of Oakland, the Ninth Circuit found that the City of Oakland's lawsuit was barred for each of these reasons, including that 5 U.S.C. § 704 also "bar[red] [Oakland's] claims" because that statute permits judicial review only for "final agency action for which there is no other adequate remedy in a court."  City of Oakland, 789 F.3d at 1166 (emphasis in original and citing 5 U.S.C. § 704). The Court held the government's "decision to file the forfeiture action is not 'final,' because it is not an action by which rights or obligations have been determined, or from which legal consequences will flow."  Id.  (internal quotes omitted).  In addition, the Court noted "[a] forfeiture action simply makes evident the Government's intention to challenge the status quo; any rights, obligations, and legal consequences are to be determined later by a judge."  Id. at 1166-67.  Further, the court noted "there is another adequate remedy-the forfeiture action."  Id. at 1167.

Plaintiffs do not contest the first two grounds showing that jurisdiction does not lie under the APA (which means on this basis alone, jurisdiction under the APA does not lie).  Instead, plaintiffs argue only that searches and seizures constitute final agency action under the APA.  However, none of plaintiffs cases are applicable, as they involve plaintiffs challenging a seizing agency policy of effecting seizures or other procedures (and not an isolated seizure as is involved here), and each case noted that final agency action exists only when there is an action by which rights or obligations have been determined (Kidd v. Mayorkas, 2021 WL 1612087, *8 (C.D. Cal. Apr. 26, 2021) and Amadei v. Nielsen, 348 F. Supp. 3d 145, 163-65 (E.D.N.Y. 2018) and Gete v. I.N.S., 121 F.3d 1285, 1291 (9th Cir. 1997)), or exactly what the Ninth Circuit ruled was the

1    reason that that jurisdiction did not lie under the APA because even the filing of a

2    judicial forfeiture action does not constitute final agency action.  <u>City of Oakland</u>, 789

3    F.3d at 1166.  In addition, to the extent plaintiffs complain about receiving additional

4    factual and legal details of the forfeiture, any judicial forfeiture action will provide that

5    detail, as previously discussed.  Further, plaintiffs argument that 5 U.S.C. § 551(10)(D)

6    and (13) defines agency action to include the seizure of property is irrelevant because the

7    issue is whether a seizure constitutes <u>final</u> agency action.

8         Plaintiffs have not refuted two of the three reasons APA jurisdiction does not lie

9    and their argument for the third ground is unavailing.  Their claims should be dismissed.

10   **D.    Counts IV and V Should Be Dismissed As It Is Undisputed A Prompt**

11   **       Hearing Was Provided And Plaintiffs Notice Argument Is Unavailing.**

12        Plaintiffs have not refuted government authorities holding 18-month, 3 year and 5

13   year delays between the seizure of property and the commencement of forfeiture

14   proceedings does not violate the due process prompt hearing requirement (moving

15   papers 16:14-17:11), and therefore the period between the March 22, 2021 seizure and

16   May 20, 2021 commencement of administrative forfeiture proceedings (two months) or

17   the filing of any forfeiture complaint against their property (approximately six months if

18   the government was filing, but it is not, a judicial action against plaintiffs' property),

19   does not constitute a due process violation.  Instead, plaintiffs contend they are entitled

20   to a notice describing the factual and legal details regarding the forfeiture (oppo. at 20:9-

21   16), but as mentioned above, the government cannot forfeit the property without filing a

22   complaint with those details.  Accordingly, for this reason as well, Counts IV and V

23   should be dismissed.

24   **III.   CONCLUSION**

25        For the reasons set forth above, the government respectfully renews its request

26   that its motion to dismiss be granted.

27   / / /

28   / / /

10

1

2  Dated: August 16, 2021                          Respectfully submitted,

3                                                   TRACY L. WILKISON
                                                    Acting United States Attorney
4                                                   SCOTT M. GARRINGER
                                                    Assistant United States Attorney
5                                                   Chief, Criminal Division

6                                                          /s/
                                                    _____
7                                                   ANDREW BROWN
                                                    VICTOR A. RODGERS
8                                                   MAXWELL COLL
                                                    Assistant United States Attorneys
9
                                                    Attorneys for Defendants
10                                                  UNITED STATES OF AMERICA, et al.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28