1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd. Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd. Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* Admitted pro hac vice.

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT**<br><br>(*Filed Concurrently with Declarations in Support of Plaintiffs' Motion for Class Certification and Proposed Order*)<br><br>Date: September 27, 2021<br>Time:  9:00 A.M.<br>Courtroom: 850<br>Judge: Hon. R. Gary Klausner<br>Trial Date: TBD<br>Complaint Filed: May 27, 2021<br>Amended Complaint Filed: June 9, 2021 |

**PLEASE TAKE NOTICE** that on September 27, 2021 at 9:00 A.M. or as soon thereafter as this matter may be heard, in Courtroom 850 of this Court located at Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, 8th Floor, Los Angeles, CA 90012, Plaintiffs Paul Snitko, Jennifer Snitko, Tyler Gothier, Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May will and hereby do move to certify the following class under Federal Rule of Civil Procedure 23(b)(2) with respect to the claim raised in Count I of the Amended Complaint, designating Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure."

Plaintiffs further move to certify the following subclass under Federal Rule of Civil Procedure 23(b)(2) with respect to the claims raised in Counts II, IV, and VI of the Amended Complaint, designating Plaintiffs Paul Snitko, Jennifer Snitko, Joseph Ruiz, and Tyler Gothier as class representatives, and appointing Plaintiffs' counsel as class counsel: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) have not been notified that their safe deposit boxes are the subject of a currently ongoing administrative or judicial forfeiture proceeding; and (d) whose property is still in the possession of the federal government."

Plaintiffs also move to certify the following subclass under Federal Rule of Civil Procedure 23(b)(2) with respect to claims raised in Counts III, V, and VI of the Amended Complaint, designating Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May as class representatives, and appointing Plaintiffs' counsel as class counsel: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT

or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) whose property is now the subject of a purported administrative forfeiture proceeding; and (d) whose property is still in the possession of the federal government."

Finally, Plaintiffs move to appoint Plaintiffs' counsel as class counsel for the proposed class and subclasses.

Certification of the proposed class and subclasses is appropriate under Federal Rule of Civil Procedure 23(b)(2), as the claims in this case seek injunctive relief that is common to the class. The class claims do not seek the return of any individual's property; rather, the claims seek class-wide injunctive relief to compel the government to comply with the Constitution—for instance, by providing the constitutionally adequate notice that the government has thus far failed to provide. The claims in this case also satisfy all the requirements for certification under Rule 23(a). The class is numerous: The government has recently disclosed, in response to discovery requests, that of the 283 boxes for which a claim has been filed, just 23 have been marked for return, and just 15 have been returned. Plaintiffs also raise common issues, as Plaintiffs seek to redress constitutional violations that span the entire class. The individual named Plaintiffs' claims are typical, as they filed this case to address those same constitutional violations. And the individual named Plaintiffs are also adequate representatives for the class, as they have no conflicts or other bars that would impede their ability to represent the class.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 19, 2021.

Plaintiffs' motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying declarations in support, other pleadings and papers on file with the Court, and any further briefing and arguments of counsel.

Dated: August 26, 2021                    Respectfully Submitted,

                                          /s/ Robert Frommer

                                          **THE INSTITUTE FOR JUSTICE**
                                          Robert Frommer*
                                          rfrommer@ij.org
                                          901 N. Glebe Rd., Suite 900
                                          Arlington, VA 22203
                                          Tel. (703) 682-9320

                                          Robert E. Johnson*
                                          rjohnson@ij.org
                                          16781 Chagrin Blvd., Suite 256
                                          Shaker Heights, OH 44120
                                          Tel. (703) 682-9320

                                          *Admitted pro hac vice.*

                                          **THE VORA LAW FIRM, P.C.**
                                          Nilay U. Vora (SBN 268339)
                                          nvora@voralaw.com
                                          Jeffrey Atteberry (SBN 266728)
                                          jatteberry@voralaw.com
                                          201 Santa Monica Blvd., Suite 300
                                          Santa Monica, CA 90401
                                          Tel. (424) 258-5190

                                          *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

**NOTICE** ......................................................................................... 2

**TABLE OF AUTHORITIES** ....................................................... ii

**I.    INTRODUCTION** ..................................................................... 1

**II.   STATEMENT OF FACTS** ...................................................... 2

      A.   Named Plaintiffs ........................................................ 2

      B.   The Government Seizes And Conducts A Criminal Search Of USPV Customers' Property ........................................ 3

      C.   The Government Belatedly Returns Some Property ........... 5

      D.   The Government Seeks To Administratively Forfeit The Remaining Boxes Without Stating The Factual And Legal Bases For Doing So ..................................................... 5

      E.   Proposed Class and Subclasses ...................................... 7

**III.  LEGAL STANDARD** ................................................................ 8

**IV.   ARGUMENT** ............................................................................. 8

      A.   Named Plaintiffs' Claims For Class Relief Are Not Moot ..... 8

      B.   This Case Satisfies The Rule 23(a) Prerequisites For Certification ............................................................. 10

            1.   Numerosity .................................................. 11

            2.   Commonality ................................................ 12

            3.   Typicality ................................................... 15

            4.   Adequacy .................................................... 17

      C.   This Case Meets The Requirements For Rule 23(b)(2) Certification ............................................................. 18

**V.    CONCLUSION** ....................................................................... 20

**TABLE OF AUTHORITES**

**Page**

**CASES**

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury,*
   686 F.3d 965 (9th Cir. 2012) ..................................................................13, 16

*Belgau v. Inslee,*
   975 F.3d 940 (9th Cir. 2020) ..........................................................................10

*Boyd v. United States,*
   116 U.S. 616 (1886)........................................................................................14

*Brewster v. Beck,*
   859 F.3d 1194 (9th Cir. 2017).................................................................13, 16

*Chen v. Allstate Ins. Co.,*
   819 F.3d 1136 (9th Cir. 2016)...........................................................................9

*County of Riverside v. McLaughlin,*
   500 U.S. 44 (1991)..........................................................................................10

*Davidson v. O'Reilly Auto Enterprises, LLC,*
   968 F.3d 955 (9th Cir. 2020) .....................................................................11, 12

*Doe v. United States,*
   No. 2:21-cv-02803, Doc. No. 15 (Apr. 2, 2021) ..............................................5

*Fraihat v. ICE,*
   445 F. Supp. 3d 709 (C.D. Cal. 2020)......................................................11, 20

*Franco-Gonzales v. Napolitano,*
   No. 10-cv-02211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ..............16, 17

*Gete v. INS,*
   121 F.3d 1285 (9th Cir. 1997)........................................................ 14, 16, 17

*Gete v. INS,*
   No. 94-cv-881Z, 1999 U.S. Dist. LEXIS 11806 (W.D. Wash. July 21,
   1999)................................................................................................ 14, 17, 20

*Gonzalez v. ICE,*
   975 F.3d 788 (9th Cir. 2020) ..........................................................................14

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998)..........................................................................17

*Haro v. Sebelius,*
   747 F.3d 1099 (9th Cir. 2014)..........................................................................10

*Hickey v. City of Seattle,*
   236 F.R.D. 659 (W.D. Wash. 2006)................................................................15

ii

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) ............................................................... 11

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   246 F.R.D. 621 (C.D. Cal. 2007) .........................................................11, 12

*Olson v. Brown*,
   594 F.3d 577 (7th Cir. 2010) .................................................................... 10

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................................................ *passim*

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) ..................................................................... 9

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ............................................................. 11

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .......................................................... *passim*

*Sourovelis v. City of Philadelphia*,
   320 F.R.D. 12 (E.D. Pa. 2017) ...............................................14, 17, 18, 20

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010)
   (en banc), *overruled on other grounds as stated in Demaree v. Pederson*, 887
   F.3d 870 (9th Cir. 2018) ........................................................................ 9, 13

*United States v. U.S. Private Vaults, Inc.*,
   No. 2:21-cr-106 (C.D. Cal.) ..................................................................... 3, 4

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..........................................................8, 12, 13, 19

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ........................................................ 1, 14, 20

*Wilson v. Gordon*,
   822 F.3d 934 (6th Cir. 2016) .................................................................... 10

**RULES**

Fed. R. Civ. P. 23(a) ....................................................................... 8, 10

Fed. R. Civ. P. 23(a)(1) ......................................................................... 11

Fed. R. Civ. P. 23(a)(2) ......................................................................... 12

Fed. R. Civ. P. 23(a)(4) ......................................................................... 17

Fed. R. Civ. P. 23(b) ............................................................................... 8

Fed. R. Civ. P. 23(b)(2) ................................................................. *passim*

Fed. R. Civ. P. 23(c)(1)(B) ............................................................ 11, 17, 18

Fed. R. Civ. P. 23(g) ...........................................................................17, 18

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................18

Fed. R. Civ. P. 26(d)(1) .............................................................................10

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT

## I.   INTRODUCTION

On March 22, 2021, the government indiscriminately seized the contents of hundreds of safe deposit boxes based on its belief that the company offering the boxes—U.S. Private Vaults, Inc. of Beverly Hills, or USPV—had engaged in wrongdoing.[1] The government continued to detain the seized property for months with no explanation, and many USPV box holders still have not received their property back. For many box holders, the government initiated administrative forfeiture proceedings on what appear to be arbitrary grounds, and without disclosing any factual or legal basis for its action. And the government still retains records that it generated during its criminal search and seizure, including copies of personal documents contained in the boxes.

This civil-rights lawsuit seeks to vindicate Plaintiffs' Fourth and Fifth Amendment rights by putting an end to the government's unconstitutional behavior. The Court has already identified unconstitutional conduct by the government for certain Plaintiffs. *See* Order Re: Pls.' *Ex Parte* Appl. for a Temp. Rest. Order, D.E. 52 (June 22, 2021) ("TRO Order"); Order Re: Pls.' Mot. for Prelim. Inj., D.E. 60 (July 23, 2021) ("PI Order"). But many other similarly situated USPV box holders are still suffering from essentially identical unconstitutional conduct.

Plaintiffs therefore request under Federal Rule of Civil Procedure 23(b)(2) that the Court certify a class and two subclasses of safe deposit box holders who have faced the same acts and refusals to act by the government. The "primary role" of Rule 23(b)(2) is precisely to "permit the prosecution of civil rights actions" such as this one. *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)). Litigating the constitutionality of the government's conduct on a class-wide basis is not only appropriate but crucial for ensuring that any final injunctive relief or corresponding declaratory relief ordered by this Court is broad enough to resolve these disputes fully and efficiently.

---

[1] Plaintiffs refer to Defendants collectively as the "government."

## II.   STATEMENT OF FACTS

### A.   Named Plaintiffs

Plaintiffs and putative class representatives are all holders of safe deposit boxes at USPV whose property was seized and who identified themselves to the government seeking to have their property returned. P. Snitko Decl. ¶ 8; J. Snitko Decl. ¶ 8; Ruiz Decl. ¶ 8; Gothier Decl. ¶ 8; Verdon-Pearsons Decl. ¶ 7; Storc Decl. ¶ 7; May Decl. ¶ 7.[2]

The Snitkos: Plaintiffs Paul and Jennifer Snitko held a box containing jewelry, back-up hard drives, legal documents, Paul's pilot flight log, and other personal effects. P. Snitko Decl. ¶ 5; J. Snitko Decl. ¶ 5. The government returned their property after they filed this lawsuit but continues to maintain records and copies of documents from the search of their USPV box. E.g., id. ¶¶ 10–13.

Tyler Gothier: Tyler held a box at USPV that contained silver and other personal property. Gothier Decl. ¶ 5. The government returned his property after he filed this lawsuit but maintains records and copies of documents from the search of his USPV box. Id. ¶¶ 10–12.

Joseph Ruiz: Joseph held a box at USPV that contained approximately $57,000 in cash that he relies on to pay his living and medical expenses. Ruiz. Decl. ¶¶ 5, 9. After the Court enjoined the government's administrative forfeiture of his property based on the lack of notice (TRO Order at 5) and ordered the government to show cause why it continued to hold Joseph's property (PI Order at 8), the government agreed to return his property, but it continues to maintain records that it created from its investigation into Joseph's personal and financial affairs and its search of his USPV box. Ruiz Decl. ¶¶ 11–13.

Travis May: Travis stored gold and about $63,000 in cash in his USPV box. May Decl. ¶ 5. After the Court enjoined the government's administrative forfeiture of his property based on the lack of notice (TRO Order at 5), the government

---

[2] All Plaintiff declarations have been filed concurrently with this motion.

agreed to return his property, but it continues to maintain records and copies of documents from the search of his USPV box. May Decl. ¶¶ 10–12.

Jeni Verdon-Pearsons and Michael Storc: Jeni and Michael are a married couple who stored about $2,000 in cash and $20,000 in silver in their USPV box. Verdon-Pearsons Decl. ¶ 5; Storc Decl. ¶ 5. After initially pursuing administrative forfeiture, the government has agreed to return Jeni and Michael's property but has not yet done so. Even after that return, however, it will continue to maintain records and copies of documents from the search of their USPV box. *E.g.*, Verdon-Pearsons Decl. ¶¶ 13–17; Storc Decl. ¶¶ 12–16.

**B.   The Government Seizes And Conducts A Criminal Search Of USPV Customers' Property**

USPV is a safe deposit box company that offers customers a safe and secure place to store their valuables. *E.g.*, P. Snitko Decl. ¶ 7; J. Snitko Decl. ¶ 7; Storc ¶ 6. Some customers prefer USPV other over alternatives because its location is convenient, it had boxes available for immediate rental, and it provided customers with better hours than a bank. P. Snitko Decl. ¶ 7; J. Snitko Decl. ¶ 7; Ruiz Decl. ¶ 6; Gothier Decl. ¶ 6. USPV also protects the privacy of its customers by renting boxes to them anonymously and using biometric systems for identification.

The government alleges that USPV's anonymity also is useful for those engaged in criminal activities, and it indicted USPV on money laundering and drug trafficking charges. *See United States v. U.S. Private Vaults, Inc.*, No. 2:21-cr-106 (C.D. Cal.). The government also applied for a warrant to seize certain USPV property, including the "nests of safety deposit boxes." Ex. A at 6.[3] The application, however, stated that the warrant would "authorize the seizure of the nests of the boxes themselves, not their contents." *Id.* But since the government would "necessarily end up with custody of what is inside those boxes initially," the

_____

[3] Citations to "Ex." refer to the exhibits to the declaration of Robert E. Johnson, filed contemporaneously with this memorandum.

application stated that agents would "follow their written inventory policies to protect their agencies from claims of theft or damage" and "ensure that no hazardous items are unknowingly stored in a dangerous manner." *Id.* at 7. And "in accordance with their policies regarding an unknown person's property," the government would "look for contact information or something which identifies the owner." *Id.* The government explained that such inspection "should extend *no further* than necessary to determine ownership." *Id.* at 7 n.40 (emphasis added).

The warrant issued on March 17, 2021. Ex. B. It authorized the government to seize USPV's "business equipment," including the "nests of safety deposit boxes and keys," but explicitly "d[id] not authorize a criminal search or seizure of the contents of the safety deposit boxes." *Id.* at 11. Instead, it stated that in "seizing the nests of safety deposit boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes." *Id.* Finally, the warrant required that "in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property." *Id.*

The government executed its seizure warrant on March 22, 2021. *Id.* at 10. Notwithstanding the warrant, the search of the USPV boxes was not an inventory search. The search involved breaking open otherwise secure boxes, thereby *exposing* the agency to claims of theft or loss rather than protecting it. And the search did not yield a meaningful inventory of what the government seized: The government opened sealed envelopes and made records of the contents of personal documents (which are irrelevant to an inventory), but catalogued the actually valuable property in the boxes only in vague terms—such as describing various types of valuable coins as "Misc. coins." *E.g.*, Ex. C ¶¶ 16-21; Ex. D ¶¶ 8, 10; Ex. E. Tellingly, the government today denies having possession of "an inventory reflecting the contents of all safe deposit boxes held at" USPV at the time of the seizure. Ex. K at 90 (government response to Request for Admission No. 1).

Other evidence confirms that this was an investigatory search. To begin with, the government searched the boxes with drug-sniffing dogs. Zellhart Decl. ¶ 2, D.E. 51-1. And instead of inspecting the contents of boxes "no further than necessary to determine ownership," the government continued to rifle through sealed envelopes and copy the documents inside even after encountering identifying information. Ex. C ¶¶ 6–15. The government also has admitted that it seeks to "examine the specific facts of each box and each claim" to "distinguish between honest and criminal customers," because in its view "the majority of the box holders are criminals." Gov't Opp. to *Ex Parte* Appl. For Temp. Restraining Order at 10, *Doe v. United States*, No. 2:21-cv-02803, Doc. No. 15 at 11 (Apr. 2, 2021).

## C.  The Government Belatedly Returns Some Property

Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, and Tyler Gothier filed this lawsuit because—more than two months after the government seized their property—the government had neither returned their property nor explained why it continued to retain it. P. Snitko Decl. ¶ 9; J. Snitko Decl. ¶ 9; Ruiz Decl. ¶ 10; Gothier Decl. ¶ 9. Shortly after this case began, the government finally contacted the Snitkos and Tyler Gothier and has now returned their property. P. Snitko Decl. ¶¶ 10–11; J. Snitko Decl. ¶¶ 10–11; Gothier Decl. ¶¶ 10–11.

In all, the government has stated that it intends to return the contents of about 250 USPV boxes to their owners. Zellhart Decl. ¶ 12, D.E. 51-1. The government, however, continues to maintain investigative files regarding those owners, including copies of documents that were stored within the boxes. Ex. K at 90–91.

## D.  The Government Seeks To Administratively Forfeit The Remaining
## Boxes Without Stating The Factual And Legal Bases For Doing So

On about May 20, 2021, the government began issuing notices purporting to commence administrative forfeiture proceedings against the remaining USPV boxes. Jobe Decl. ¶ 7, D.E. 55-1. USPV received an omnibus forfeiture notice identifying about 429 boxes for forfeiture, including the boxes rented by Plaintiffs

1    Jeni Verdon-Pearsons, Michael Storc, Travis May, and Joseph Ruiz, all of whom

2    (except for Joseph) also received individual notices. Exs. F–I. These notices, as

3    well as the individual forfeiture notices the government sent to other USPV box

4    holders, were form notices that used materially identical language that this Court

5    previously found to be constitutionally deficient, TRO Order at 4–5. *See* Exs. F–I;

6    Jobe Decl. ¶ 7, D.E. 55-1 (noting that same language was used in other notices).

7       In response, Plaintiffs filed an Amended Complaint that added Jeni Verdon-

8    Pearsons, Michael Storc, and Travis May as plaintiffs and added claims challenging

9    the constitutionality of the government's forfeiture notice and proceedings. First

10   Am. Compl., D.E. 33 (June 9, 2021) ("FAC"). They, along with Joseph Ruiz,

11   sought a temporary restraining order enjoining the government from seeking to

12   administratively forfeit their property without first stating the factual and legal

13   bases for the forfeiture. *Ex Parte* Appl. For TRO, D.E. 44 (June 15, 2021).

14       The Court granted the TRO application, concluding that Plaintiffs had

15   "established a likelihood of success on the merits of their argument that the anemic

16   notices violate their right to due process of law." TRO Order at 5. On July 16, 2021,

17   the Court converted the temporary restraining order into a preliminary injunction

18   for Travis and Joseph. Order Re: Req. for Prelim. Inj. at 3, D.E. 58 (July 16, 2021).[4]

19       On July 21, 2021, the government informed Travis that it would not proceed

20   with forfeiting his property and that it would instead return his property. Ex. J.

21       On July 23, 2021, the Court entered another preliminary injunction, this time

22   requiring the government to either return Joseph Ruiz's property within seven days,

23   or otherwise to show cause to the Court justifying the ongoing seizure. PI Order at

24   8. The government at first did not return Joseph's property, instead responding to

25   the show-cause order by detailing its investigation into Joseph and his box—

26   including the use of a drug-sniffing dog, as well as its examination of employment

27   _____

28       [4] Because Jeni and Michael no longer "face[d] any immediate threat of
     forfeiture," the Court held that *preliminary* relief was no longer warranted. *Id.* at 4.

6

records, insurance claims records, and currency transaction reports. D.E. 64; Zellhart Decl. ¶¶ 3–5, 7, D.E. 64-1. After Plaintiffs pointed to the lack of any facts supporting probable cause and submitted documents corroborating Joseph's claim, the government agreed to return Joseph's property. D.E. 66.

On August 16, 2021, the government stated that it would not seek to forfeit Jeni and Michael's property and would return it. Zellhart Decl. ¶ 4, D.E. 68-1.

### E.   Proposed Class and Subclasses

Plaintiffs filed this lawsuit to vindicate both their own constitutional rights and those of other similarly situated USPV box holders who have identified themselves to the government. Plaintiffs seek to certify the following class and subclasses.

Proposed Class: Plaintiffs seek to certify the following class with respect to the claim raised in Count I of the Amended Complaint: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure." Plaintiffs seek to designate all named Plaintiffs as class representatives for the Proposed Class.

No-Notice Subclass: Plaintiffs also seek to certify the following subclass— represented by the Snitkos, Joseph, and Tyler—for the claims raised in Counts II, IV, and VI of the Amended Complaint: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) have not been notified that their safe deposit boxes are the subject of a currently ongoing administrative or judicial forfeiture proceeding; and (d) whose property is still in the possession of the federal government."

Forfeiture Subclass: Finally, Plaintiffs seek to certify the following subclass —represented by Jeni Verdon-Pearsons, Michael Storc, Travis May, and Joseph Ruiz—for the claims raised in Counts III, V, and VI of the Amended Complaint: "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within

their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) whose property is now the subject of a purported administrative forfeiture proceeding; and (d) whose property is still in the possession of the federal government."

## III.  LEGAL STANDARD

Parties seeking class certification must demonstrate that they satisfy the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the categories under Rule 23(b). *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

## IV.  ARGUMENT

This case presents a quintessential scenario for class certification. As Section A explains, Plaintiffs' claims for class relief are not moot because they have a live claim under Count I and the other counts relate back to the filing of their complaint. Section B explains that Rule 23(a)'s requirements are met for the proposed class and subclasses because the government indiscriminately searched and seized—and now seeks to forfeit—hundreds of USPV customers' safe deposit boxes, raising serious constitutional questions that go to the heart of named Plaintiffs' and class members' claims, which Plaintiffs and their experienced class counsel continue to vigorously pursue. And as explained in Section C, the requirements of Rule 23(b)(2) are met here because—as is common with civil rights actions such as this one—the government's indiscriminate conduct can be enjoined and declared unlawful only as to all class members or none of them.

### A.  Named Plaintiffs' Claims For Class Relief Are Not Moot

Before turning to the requirements of Rule 23, Plaintiffs first address the status of their class claims following the government's moves to return property to the Named Plaintiffs. As explained in Plaintiffs' opposition to the government's motion to dismiss (D.E. 67 at 8–11), none of Plaintiffs' claims are moot.

8

First, Count I is not moot because it seeks the destruction of records generated during the government's unlawful search. The government recorded its search and held documents up to a camera to capture the contents, Ex. K at 90–91. It used that and other information provided by class members to conduct additional unjustified intrusions into their affairs. *See* Zellhart Decl. ¶¶ 3–5, 7, D.E. 64-1; Ruiz Decl. ¶¶ 12–13. To redress this ongoing injury, Count I seeks an order that the government destroy these illegally obtained or generated records. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) (en banc) ("*CDT*"), *overruled on other grounds as stated in Demaree v. Pederson*, 887 F.3d 870 (9th Cir. 2018). This presents a live case or controversy for all Plaintiffs and class members, even if they have received their property back.

Second, for Counts II-VI, the government cannot moot the claims of the two subclasses by "'picking off' the named plaintiffs." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1143 (9th Cir. 2016); *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1084 (9th Cir. 2011). That is precisely what the government is attempting to do here. Although the government is halting its unjustified, unexplained detention of *Plaintiffs'* property and abandoning the administrative forfeitures of *Plaintiffs'* property based on constitutionally deficient notices, the same constitutional violations continue apace for the class members. *Compare supra* at pp. 2–3 (returning property for Plaintiffs subject to forfeiture proceedings), *with* Ex. L at 98 (for 283 boxes where either claim or claim plus petition for remission were filed, only 15 returned and 23 marked for return). Because allowing defendants to moot class actions by providing relief only to the named plaintiffs would undermine the purpose of class actions, courts hold that plaintiffs may pursue class certification even after a defendant provides the requested relief to the individual plaintiffs. *Pitts*, 653 F.3d at 1091–92. Thus, if the Court certifies the proposed subclasses, that "certification [will] relate back to the filing of the complaint" and "the case may continue despite full satisfaction of the named plaintiff's individual claim." *Id.*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT

Third, the class claims at Counts II-VI also are not moot because they are "so inherently transitory" that this Court would "not have enough time to rule on a motion for class certification" before the named Plaintiffs' claims expire. *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (ellipsis omitted in second quote) (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)). The "essence" of this exception to mootness "is uncertainty about whether a claim will remain alive for any given plaintiff long enough for a district court to certify the class," particularly where the duration of the claim is at the discretion of the defendant. *Wilson v. Gordon*, 822 F.3d 934, 946 (6th Cir. 2016) (emphasis omitted) (quoting *Olson v. Brown*, 594 F.3d 577, 582–83 (7th Cir. 2010)). The claims here involve the government's unexplained retention of class members' property and its attempts to forfeit that property using constitutionally deficient notice. But the government has the discretion to explain itself or give the property back at any moment. Indeed, despite serving class-related discovery less than two months after filing this lawsuit (well before discovery is ordinarily permitted under Rule 26(d)(1)) and swiftly moving for class certification just 90 days after the complaint, Plaintiffs' individual claims on Counts II–VI all became moot well before this Court had the opportunity to rule on class certification. *See, e.g.*, *Haro*, 747 F.3d at 1110; *see also Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020) (harm "capped at a period of one year" was inherently transitory). For this reason as well, Plaintiffs' claims at Counts II–VI relate back to the filing of the Complaint and present a live controversy for the Court's resolution.

**B.  This Case Satisfies The Rule 23(a) Prerequisites For Certification**

A party seeking to certify a class must first satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Parsons*, 754 F.3d at 674. All four requirements are satisfied here.[5]

---

[5] Most courts have concluded that the separate, judicially implied requirement of "an identifiable and ascertainable class" does not apply to Rule

(continued…)

1    1.   <u>Numerosity</u>

2        The proposed class and subclasses are "so numerous that joinder of all

3    members is impracticable." Fed. R. Civ. P. 23(a)(1). "To be impracticable, joinder

4    must be difficult or inconvenient but need not be impossible." *Fraihat v. ICE*, 445

5    F. Supp. 3d 709, 736 (C.D. Cal. 2020). "[F]orty or more members will generally

6    satisfy the numerosity requirement." *Id.*; *see also Rannis v. Recchia*, 380 F. App'x

7    646, 651 (9th Cir. 2010) (upholding class with just 20 members).

8        Because information about the membership of the proposed class and

9    subclasses is not public, Plaintiffs served discovery seeking this information on July

10   21, 2021. Decl. of Robert E. Johnson ¶¶ 11–13. The government's response

11   supports a finding of numerosity—as detailed below—but the government refused

12   to provide additional information that Plaintiffs requested to ascertain the precise

13   size of the proposed class and subclasses. Exs. L–M. Plaintiffs will confer with the

14   government in accordance with Local Rule 37; if that proves unfruitful, they will

15   move this Court to compel the government to provide this basic information.

16   Following that motion and receipt of the requested discovery, Plaintiffs will seek

17   leave to file a short supplemental brief. *See Davidson v. O'Reilly Auto Enterprises,*

18   *LLC*, 968 F.3d 955, 964–65 (9th Cir. 2020) (upholding class certification procedure

19   under which court granted "additional discovery and the opportunity to file a

20   supplemental brief"). Still, even pending further discovery, numerosity is evident:

21       <u>Proposed Class</u>: This class consists of USPV box holders whose property the

22   government seized and who have since identified themselves to the government.

23   The government refused to answer Plaintiffs' interrogatory about the number of

24   _____

25   23(b)(2) class actions. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 596–98 (N.D. Cal.
     2015) (collecting cases). In any event, the class here is "definite enough so that it is

26   administratively feasible for the court to ascertain whether an individual is a
     member." *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,

27   246 F.R.D. 621, 629–30 (C.D. Cal. 2007). For similar reasons, the proposed class
     definitions adequately "define the class" as required by Federal Rule of Civil

28   Procedure 23(c)(1)(B).

class members (Ex. L at 94), but a conservative estimate is that it includes at least the approximately 249 customers who submitted a claim, petition, or both in the forfeiture proceedings and whose property has not been returned or marked for return. Ex. L at 98. *See, e.g.*, *Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 631 (Rule 23(b)(2) "does not require a numeric estimate").

No-Notice Subclass: This subclass includes members of the Proposed Class whose property the government still holds and who have not received notice that their property is subject to currently ongoing forfeiture proceedings. Again, the government has not disclosed information about the members of this subclass, but based on the government's discovery responses to date we do know that there are at least 245 USPV customers who have terminated their pending administrative forfeiture proceedings by filing claims and yet who have not received their property or been told that its return is forthcoming. *See* Ex. L at 98. Presumably there are additional property owners who were never subjected to administrative forfeiture proceedings and who nonetheless have not received their property back.

Forfeiture Subclass: This subclass includes members of the Proposed Class whose property is subject to administrative forfeiture proceedings. The government issued materially identical forfeiture notices for about 429 USPV boxes. *Supra* at pp. 5–6. And at least 289 identified themselves to the government by filing a claim, a petition for remission, or both. Ex. L at 98. Additional property owners who contacted the government after the raid but did not file a claim or petition likely exist and will be identified in discovery. *See Davidson*, 968 F.3d at 964–65.

2.   Commonality

The proposed class and subclasses present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions "'depend upon a common contention' such that 'determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Parsons*, 754 F.3d at 675 (quoting *Dukes*, 564 U.S. at 350). If there is "even a

single common question, a would-be class can satisfy the commonality requirement." *Id.* (internal quotation marks omitted). Even if "members of the proposed class do not share every fact in common or completely identical legal issues," commonality exists where "the constitutional issue at the heart of each class member's claim for relief is common." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

<u>Proposed Class</u>: The proposed class claims that the government's search of class members' USPV boxes violated the Fourth Amendment. FAC ¶ 168. Common questions include the scope of the inventory search authorized by the March 17, 2021, seizure warrant; whether the inventory exception to the warrant requirement applied to the government's purported inventory search of the USPV boxes; whether the government exceeded the permissible scope of the inventory search authorized by the seizure warrant and instead conducted a criminal investigatory search; whether the government's search therefore violated the Fourth Amendment, and whether the government's disregard of the limits of the warrant and callous disregard for constitutional rights requires ordering it to destroy its copies of the illegally obtained records, *see CDT*, 621 F.3d at 1174.

<u>No-Notice Subclass</u>: The No-Notice Subclass seeks to vindicate whether the government's failure to justify its continued retention of class members' property violates the Fourth Amendment (FAC ¶¶ 173–81), and whether doing so without notice and an opportunity for class members to be heard violates the Fifth Amendment (*id.* ¶ 206). The common questions at the heart of the claim for relief are whether the Fourth Amendment requires the government to separately justify its continued seizures of class members' property, *see Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017), whether due process requires the government to tell class members why it continues to hold their property, *see Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 987 (9th Cir. 2012), and whether the government may require class members to subject themselves to a

criminal investigation before receiving their property, *see Boyd v. United States*, 116 U.S. 616, 630 (1886). Challenges to government failures to provide adequate notice and other procedural protections present common questions even if there are individual differences that might impact the ultimate outcome of any related proceedings. *See Rodriguez*, 591 F.3d at 1123 (9th Cir. 2010) (whether due process required hearing for detained immigrants was common question); *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998) (whether government provided notice required by due process presented the "same constitutional question").

Forfeiture Subclass: The Forfeiture Subclass challenges the constitutionality of the government's procedures in seeking to forfeit class members' property, namely, without any apparent individualized determinations of probable cause and without disclosing the factual and legal bases for the forfeiture. *See Gete v. INS*, 121 F.3d 1285, 1297 (9th Cir. 1997); TRO Order at 3–5. Common questions include what procedures the government used to determine whether USPV boxes were subject to forfeiture, whether class members received materially identical forfeiture notices, and whether those notices sufficiently disclosed the factual and legal bases for the forfeiture. *See Gonzalez v. ICE*, 975 F.3d 788, 809 (9th Cir. 2020) ("Fourth Amendment claims concerning government policies, practices or procedures for probable cause determinations are plainly suitable for classwide resolution"); *Gete v. INS*, No. 94-cv-881Z, 1999 U.S. Dist. LEXIS 11806, at *4 (W.D. Wash. July 21, 1999) (whether INS complied with probable cause requirements and provided adequate notice during forfeiture proceedings presented common questions). Challenges to forfeiture procedures readily satisfy the commonality requirement even if differences among class members might impact the outcome of individual forfeiture proceedings. *See Sourovelis v. City of Philadelphia*, 320 F.R.D. 12, 21– 22 (E.D. Pa. 2017); *Gete*, 1999 U.S. Dist. LEXIS 11806, at *4.

3. <u>Typicality</u>

Plaintiffs' "claims . . . are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (internal quotation marks omitted). Typicality exists "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez*, 591 F.3d at 1124.

<u>Proposed Class</u>: All seven named plaintiffs seek to represent the proposed class of USPV customers whose property was seized and who identified themselves to the government. Each "claim arises from the same course of events," *id.*: the government's search and seizure of the USPV boxes. And Plaintiffs and class members will each make identical legal arguments to prove the government's liability: that the inventory exception to the Fourth Amendment's warrant requirement did not apply, that the government conducted a criminal search rather than an inventory search, and that the government's indiscriminate search and seizure of class members' property therefore violated the Fourth Amendment. *See id.* Indeed, the typicality requirement is readily satisfied when class members face the same indiscriminate search and seizure. *See, e.g.*, *Hickey v. City of Seattle*, 236 F.R.D. 659, 665–66 (W.D. Wash. 2006) (claims by named plaintiffs arrested during protest without probable cause were typical of others arrested during same protest).

<u>No-Notice Class</u>: Plaintiffs Paul and Jennifer Snitko, Tyler Gothier, and Joseph Ruiz seek to represent the No-Notice Subclass, comprised of USPV box holders who are members of the main proposed class, whose property is being held by the government but who have received no explanation for the continued detention. Their claims arise from "the same course of events," *Rodriguez*, 591 F.3d at 1124, as other members of the subclass: the government's prolonged, unexplained seizure of the contents of the USPV boxes. And named plaintiffs and

1   each class member will make "similar," if not identical, "legal arguments to prove"

2   the government's liability, *id.*: that the government must separately justify its

3   continued seizure of their property, *Brewster*, 859 F.3d at 1197, and that it must

4   provide class members with notice of the reasons for the seizure and a meaningful

5   opportunity to seek the return of their property, *Al Haramain*, 686 F.3d at 987. That

6   the government may have different underlying reasons for any given continued

7   detention is inconsequential, because named plaintiffs all "raise similar

8   constitutionally-based arguments and are alleged victims of the same practice of

9   prolonged detention." *Rodriguez*, 591 F.3d at 1124; *see Franco-Gonzales v.*

10  *Napolitano*, No. 10-cv-02211, 2011 WL 11705815, at *13 (C.D. Cal. Nov. 21,

11  2011) (claims typical because they turned on whether class members had a right to

12  be evaluated for competency, not whether they were in fact incompetent).

13      Forfeiture Class: Plaintiffs Jeni Verdon-Pearsons, Michael Storc, Joseph Ruiz,

14  and Travis May seek to represent the Forfeiture Subclass, comprised of class

15  members whose property the government targeted for administrative forfeiture.

16  This subclass challenges a common "course of events," *Rodriguez*, 591 F.3d at

17  1124: the government used an arbitrary and standardless procedure to determine

18  which USPV boxes to seek to administratively forfeit, FAC ¶¶ 193–96, and it sent

19  class members identical forfeiture notices that did not apprise class members of the

20  legal and factual bases for the forfeiture, *id.* ¶¶ 212–17; Jobe Decl. ¶ 7, D.E. 55-1.

21  Plaintiffs and subclass members in turn will assert identical legal arguments to

22  contend that government's conduct was illegal: first, that the government's

23  "arbitrary and . . . standardless" procedure for determining which property to seek

24  to forfeit "fails as a matter of policy and practice to apply the constitutionally-

25  mandated standards for determining whether probable cause in fact exists," *see*

26  *Gete*, 121 F.3d at 1295, and second, that the failure of the administrative forfeiture

27  notices to apprise class members of the factual and legal bases for the purported

28  forfeitures violates due process, *see id.* at 1297. Courts find the typicality

1  requirement satisfied when, as here, the class representatives are subject to the same

2  unconstitutional procedures as class members. *See Sourovelis*, 320 F.R.D. at 22–23;

3  *Gete*, 1999 U.S. Dist. LEXIS 11806, at *4–5.

4      4.   Adequacy

5      Plaintiffs and their counsel also "will fairly and adequately protect the

6  interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry turns on two

7  questions: "(1) do the named plaintiffs and their counsel have any conflicts of

8  interest with other class members and (2) will the named plaintiffs and their counsel

9  prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*,

10  150 F.3d 1011, 1020 (9th Cir. 1998).

11      Class Representatives: Plaintiffs will fairly and vigorously pursue the classes'

12  claims. There are no conflicts of interest between Plaintiffs and the other class

13  members, who all suffered the same indiscriminate search and seizure of the

14  property stored in their USPV boxes. And Plaintiffs have already demonstrated

15  their vigorous representation of the interests of the class and subclasses that they

16  represent by submitting declarations[6] and securing a preliminary injunction and a

17  separate temporary restraining order that was converted into a preliminary

18  injunction.[7] *See Franco-Gonzales*, 2011 WL 11705815, at *14 (seeking and

19  obtaining injunctive relief "bolsters the adequacy" of named plaintiffs). Even after

20  the return of their property, Plaintiffs remain committed to vigorously representing

21  the class. P. Snitko Decl. ¶ 14; J. Snitko Decl. ¶ 14; Gothier Decl. ¶ 13; Ruiz Decl.

22  ¶ 14; Verdon-Pearsons Decl. ¶ 18; Storc Decl. ¶ 17; May Decl. ¶ 13.

23      Plaintiffs' Counsel: Under Rule 23(a)(4) and Rule 23(g), Plaintiffs' counsel

24  also will vigorously represent the class and subclasses in this litigation. An order

25  certifying a class action must appoint class counsel under Rule 23(g). Fed. R. Civ.

26  ————————————

27  [6] P. Snitko Decl., D.E. 26-2; J. Snitko Decl., D.E. 26-5; Ruiz Decl., D.E. 26-6; Gothier Decl., D.E. 26-8; Ruiz Decl., D.E. 65-1; Verdon-Pearsons Decl., D.E. 67-1.

28  [7] PI Order; TRO Order; Order Re: Req. for Prelim. Inj., D.E. 58.

P. 23(c)(1)(B). Under Rule 23(g), the Court also must consider four factors related to the proposed class counsel's adequacy.[8] Plaintiffs' counsel—the Institute for Justice and local counsel, Nilay Vora and Jeffrey Atteberry of the Vora Law Firm—satisfy each factor.

First, Plaintiffs' counsel have already performed substantial work identifying and investigating potential claims, amending the complaint to account for new unlawful government conduct, filing two separate motions for preliminary relief and several other responsive filings, and serving class-related discovery.

Second, Plaintiffs' counsel has extensive experience litigating class actions, including one involving the adequacy of government procedures following property seizures. *See Sourovelis*, 320 F.R.D. at 23 (finding that the Institute for Justice was qualified to represent class challenging city's civil forfeiture program); Decl. of Robert Frommer ¶ 5. Local counsel also are experienced trial attorneys with extensive experience litigating civil rights cases. *Id.* ¶¶ 10–14.

Third, Plaintiffs' counsel has deep knowledge of the applicable law. The Institute for Justice has a proven record vigorously challenging civil forfeitures and unconstitutional searches. *Id.* ¶¶ 5–9. And lastly, Plaintiffs' counsel will devote sufficient resources to vigorously represent the class and to put an end to the government's unlawful treatment of USPV box holders. *Id.* ¶ 15.

## C.  This Case Meets The Requirements For Rule 23(b)(2) Certification

Certification of the proposed class and subclasses under Rule 23(b)(2) is appropriate because the government "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

---

[8] The four factors are (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

18

23(b)(2). "[T]he primary role" of Rule 23(b)(2) "has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. A Rule 23(b)(2) class is appropriate where "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 687–88 (quoting *Dukes*, 564 U.S. at 360). These criteria are satisfied here.

Proposed Class: Plaintiffs and the members of the proposed class face the same government actions that "apply generally to the class": the search and seizure of USPV boxes based on a single warrant (Ex. B), supported by the same affidavit (Ex. A), and purporting to implement the same inventory procedures (*id.*). Those searches and seizures involved drilling open every class member's box and creating a visual record of the contents of each box. Ex. C; Ex. K at 90–91.

As relief, Plaintiffs seek a class-wide declaration that the search of class members' USPV safe deposit boxes, and the continued retention of records and evidence generated during that search, violate the Fourth Amendment. Plaintiffs also seek a class-wide permanent injunction enjoining Defendants from continuing to retain the records generated and evidence collected during the unlawful search. FAC at 49–51, ¶¶ H.i–.ii, I. A Rule 23(b)(2) class action is appropriate because this "single injunction and declaratory judgment could provide relief to each member of the proposed class." *Parsons*, 754 F.3d at 689.

No-Notice Subclass: The members of the No-Notice Subclass similarly challenge government conduct applicable to the entire subclass: despite the continued detention of class members' property (including documents and precious metals), the government has neither provided a justification for that detention nor provided any process for the prompt return of the property.

For relief, this subclass requests declarations that the continued seizure of class members' property without providing any justification and without providing notice or a prompt post-seizure opportunity to be heard are unlawful, and an injunction enjoining the government from retaining that property without stating a

justification and without providing notice and an opportunity to be heard. FAC at 49–51, ¶¶ H.iii, .v, .vii; J. Certifying this subclass is appropriate because requiring the government to provide notice and an opportunity to be heard "would provide relief to all [sub]class members, or to none of them." *Fraihat*, 445 F. Supp. 3d at 741; *see also Rodriguez*, 591 F.3d at 1126 (challenge to failure to provide bond hearings sought "relief from a single practice"); *Walters*, 145 F.3d at 1046-47 (class appropriate where challenge was to insufficient notice rather than underlying merits of deportation proceedings).

Forfeiture Subclass: The members of the Forfeiture Subclass also challenge government conduct that applied to each member of the subclass: the commencement of administrative forfeiture proceedings without any individualized determination of probable cause, and the use of an identical administrative forfeiture notice that failed to state any legal or factual basis for the forfeiture.

As for relief, this subclass seeks class-wide declaratory relief that this conduct violates the Fourth and Fifth Amendments. Plaintiffs also seek a class-wide injunction enjoining the government from civilly forfeiting class members' property without first determining if there is probable cause to believe the property is subject to forfeiture and providing class members with adequate notice of the factual and legal bases for the forfeiture. *Id.* at 50-51, ¶¶ H.iv, .vi–.vii; K. These requests for declaratory and injunctive relief against generally applicable "policies and procedures used in civil forfeiture proceedings" are "classic examples of the types of claims that should be certified under Rule 23(b)(2)." *Sourovelis*, 320 F.R.D. at 25; *see also Gete*, 1999 U.S. Dist. LEXIS 11806, at *5.

**V.  CONCLUSION**

For these reasons, Plaintiffs respectfully request that this Court certify the proposed classes and subclasses, designate Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel.

Dated: August 26, 2021                    Respectfully Submitted,

                                          /s/ Robert Frommer

                                          **THE INSTITUTE FOR JUSTICE**
                                          Robert Frommer*
                                          rfrommer@ij.org
                                          901 N. Glebe Rd., Suite 900
                                          Arlington, VA 22203
                                          Tel. (703) 682-9320

                                          Robert E. Johnson*
                                          rjohnson@ij.org
                                          16781 Chagrin Blvd.. Suite 256
                                          Shaker Heights, OH 44120
                                          Tel. (703) 682-9320

                                          * *Admitted pro hac vice.*

                                          **THE VORA LAW FIRM, P.C.**
                                          Nilay U. Vora (SBN 268339)
                                          nvora@voralaw.com
                                          Jeffrey Atteberry (SBN 266728)
                                          jatteberry@voralaw.com
                                          201 Santa Monica Blvd., Suite 300
                                          Santa Monica, CA 90401
                                          Tel. (424) 258-5190

                                          *Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT