TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
    1100/1400/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0102/2569/1785
    Facsimile: (213) 894-6269/0142/0141
    E-mail: Andrew.Brown@usdoj.gov
           Victor.Rodgers@usdoj.gov
           Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNIKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA. ET AL,,<br><br>        Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Date:      September 27, 2021<br>Time:     9:00 a.m.<br>Courtroom: 850, the Honorable<br>              R. Gary Klausner |

Defendants United States of America and Tracy L. Wilkison and Kristi Koons Johnson in their official capacities (collectively, "the government") hereby oppose Plaintiffs Paul Snitko, Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May's motion for class certification (Dkt. 71).

Dated: September 7, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____

ANDREW BROWN
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

1

# **TABLE OF CONTENTS**

2  DESCRIPTION                                                                          PAGE

3  I.     INTRODUCTION ................................................................................. 1

4  II.    STATEMENT OF FACTS ..................................................................... 2

5  III.   LEGAL STANDARD ........................................................................... 7

6  IV.    ARGUMENT ........................................................................................ 8

7         A.     Named Plaintiffs Cannot Demonstrate Rule 23(a) Commonality ............... 8

8         B.     Named Plaintiffs Cannot Satisfy Rule 23(a) Typicality ............................ 10

9         C.     Named Plaintiffs Cannot Meet The Remaining Rule 23(a) Factors ........... 10

10        D.     Even if Named Plaintiffs Could Satisfy Rule 23(a), They Fail To
                 Meet The Requirements of Rule 23(b)....................................................... 14
11
          E.     The Court Should Limit Any Decision On The Destruction Of
12               Documents To Named Plaintiffs ................................................................. 16

13        F.     The Court Should Decline to Certify A Class Where Putative Class
                 Members Can Raise Issues In Civil Forfeiture Actions ............................. 18
14
   V.     CONCLUSION ..................................................................................... 18
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

DESCRIPTION                                                                PAGE

## **CASES**

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228, 234 (2013) ................................................................. 7

*Comcast Corp. v. Behrend*,
   569 U.S. at 33 (2013) ...................................................................... 7

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147, 157-58, n.13 (1982) ............................................. 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258, 275 (2014) ........................................................... 14

*Jamie S. v. Milwaukee Pub. Schs.*,
   668 F.3d 481, 499 (7th Cir. 2012) ................................... 8, 14, 16

*Kincade v. Gen. Tire & Rubber Co.*,
   635 F.2d 501, 506 (5th Cir. 1981) ............................................. 13

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581, 588 (9th Cir. 2012) ............................................... 7

*One 1958 Plymouth Sedan v. Pennsylvania*,
   380 U.S. 693, 696 (1965) ........................................................... 18

*Reeb v. Ohio Dep't of Rehab. & Corr.*,
   435 F.3d 639, 645 (6th Cir. 2006) ............................................. 13

*B.K. by next friend Tinsley v. Snyder*,
   922 F.3d 957, 967 (9th Cir. 2019) ......................................... 8, 10

*United States v. $186,416.00 in U.S. Currency*,
   590 F.3d 942, 950 (9th Cir. 2010) ............................................. 18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 345-362 (2011).................................................... passim

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538, 542 (9th Cir. 2013) ............................................... 7

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION PAGE

**STATUTES**

18 U.S.C. § 983(a)(3)(A) ........................................................................ 11

18 U.S.C. § 983(a)(3)(B) ........................................................................ 11

**RULES**

Fed. R. Civ. P. 23 .............................................................................. 7, 14

Fed. R. Civ. P. 23(a).......................................................................... passim

Fed. R. Civ. P. 23(a)(2)............................................................................ 8

Fed. R. Civ. P. 23(b) .......................................................................... passim

Fed. R. Civ. P. 23(b)(2)...................................................................... passim

Fed. R. Civ. P. 23(b)(3)........................................................................ 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs Paul Snitko, Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May (collectively, "Named Plaintiffs") seek to certify a broad mandatory class of every renter of a safe deposit box at U.S. Private Vaults who (1) had property seized and (2) has identified themselves to the FBI.  In addition to this broad mandatory class, the Named Plaintiffs also seek certification of two subclasses.  The motion for class certification fails for several reasons.

***First***, Named Plaintiffs cannot meet the commonality requirement of Rule 23(a).  On the face of the First Amended Complaint ("FAC"), Named Plaintiffs seek relief that is not capable of resolution through common answers.  Instead, Named Plaintiffs improperly attempt to use the class vehicle to force the government to provide a unique answer (*i.e.*, a basis for ongoing retention of property or a showing of probable cause) for every putative class member.  Moreover, the inventory search conducted at U.S. Private Vaults presents individualized issues with respect to each boxholder's particular box, including whether law enforcement officials acted in accordance with the search warrant's requirements.  The Federal Rules prohibit such a class where individual answers – not common answers – drive the resolution of the litigation.

***Second***, Named Plaintiffs fail to satisfy the typicality requirement of Rule 23(a).  The government has already reached out and returned property to each of the Named Plaintiffs (or initiated the wire-transfer process); none has a live claim.  Because Named Plaintiffs no longer have standing, they ask the Court to construe their claims as relating back to the filing of the FAC and argue the doctrine of "inherently transitory claims" applies here.  But Named Plaintiffs miss the mark.  The broad classes they seek to certify now comprise a diverse set of putative class members—many have already received their property, others are or will soon be claimants in civil forfeiture proceedings, and several remain anonymous and seek the return of their property through anonymously-filed lawsuits and motions.  Even if the Court ignored the mootness of the Named

1

Plaintiffs' claims, Named Plaintiffs still are not typical of the broad proposed classes they seek to represent.

*Third*, Named Plaintiffs fail to meet their burden with respect to the remaining Rule 23(a) requirements.  Classes certified under Rule 23(b)(2), as Named Plaintiffs propose, are mandatory—any and every person within the class and subclasses will be bound by this Court's judgment without the opportunity to opt-out, either before or after judgment.  Yet Plaintiffs seek broad relief on behalf of the expansive class, regardless of putative class members' status or the nature of their proceedings.  Many putative class members are or will soon be claimants in civil forfeiture proceedings and can litigate the issue of the lawfulness of the inventory search as to their specific property in that forum. Named Plaintiffs ask the Court to elevate their claims above all others -- this presents irreconcilable conflicts with the broad set of class members they hope to represent.

*Fourth*, Named Plaintiffs cannot meet either requirement of Rule 23(b)(2).  The government has not "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).  Rather, the government has acted in a variety of ways, both during the execution of the search warrant and after, including by returning property to some boxholders and initiating judicial forfeiture proceedings against the contents of other boxes.   Moreover, the relief Named Plaintiffs seek would merely initiate a process through which highly individualized determinations are made.  The law is clear that this type of relief is class-wide in name only.

*Fifth*, Named Plaintiffs recklessly seek class certification for the purpose of obtaining an order that the government must destroy all documents related to every putative class member.  In light of ongoing civil and criminal proceedings, the Court should reject this basis for class certification and limit any relief to the Named Plaintiffs alone.

## II.  STATEMENT OF FACTS

Plaintiffs Paul Snitko, Jennifer Snitko, Joseph Ruiz ("Ruiz"), Tyler Gothier ("Gothier"), Jeni-Verdon-Pearsons ("Verdon-Pearsons"), Michael Storc ("Storc") and

Travis May ("May") seek class certification in relation to their FAC for return of property and class-wide declaratory and injunctive relief arising from the seizure of property from their safety deposit boxes at U.S. Private Vaults, Inc. ("USPV").   Counts I through VI of the FAC are raised as class claims and base jurisdiction under the APA, the Declaratory Judgment Act and the U.S. Constitution (FAC ¶¶ 1 and 3 and at 34:7 [title "Class Claims"]).

Class claim Count I is asserted by the Named Plaintiffs on behalf of the "proposed class"[1] and seeks declaratory relief via a declaration that the government's seizure violated the Fourth Amendment and prohibiting the government from retaining or using any records obtained during the search except for the limited purpose of reuniting plaintiffs with their property.  (FAC ¶¶ 168-170 and prayer for relief ("PFrRlf") ¶ H(i), H(ii) and I.)   Because this claim requests that the government reunite plaintiffs with their property, it also seeks the return of property by the government.  Class claim Count II is asserted by Paul Snitko and Jennifer Snitko (collectively, the "Snitkos"), Ruiz and Gothier on behalf of the "proposed no notice subclass"[2] and seeks to have their property returned, in order to vindicate their Fourth Amendment rights, unless that government can state a valid basis for retaining the property.  (FAC ¶¶ 173 and 176 and PFrRlf H(iii) and J(i).)

Class claim Count III is asserted by Ruiz, Verdon-Pearsons, Storc, and May on

---

[1] Plaintiffs define the "proposed class" as "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or about March 22, 2021; and (b) have identified themselves to the FBI since the seizure."  FAC ¶ 139.

[2] Plaintiffs define the "proposed no notice subclass," for which they assert the Snitkos, Gothier and Ruiz are members, as "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure; (c) have not been notified that their safe deposit boxes are the subject of currently ongoing administrative or judicial forfeiture proceeding [sic]; and (d) whose property is still in the possession of the federal government."  FAC ¶¶ 140 and 141.

behalf of the "proposed forfeiture subclass,"[3] and alleges a violation of the Fourth Amendment based on the ongoing retention of property (which means plaintiffs seek the return of the property), absent individualized probable cause for each seized property and without the government stating a valid legal and factual basis for retaining the property. (FAC ¶¶ 187 and 198 and PFrRlf H(v).)

Class claims Count IV and V allege a violation of the Due Process Clause of the Fifth Amendment due to the failure to provide a prompt hearing to allow plaintiffs to secure their property return and seeks return of the property because plaintiffs allege the hearing is required so they can secure the return of their property, with Count IV asserted by the Snitkos, Ruiz and Gothier (FAC ¶¶ 201, 205 and 207 and PFrRlf H(v) and H(vi)) and Count V asserted by Verdon-Pearsons, Storc, May and Ruiz (FAC ¶¶ 209, 217 and 218). Finally, class claim Count VI is asserted by plaintiffs on behalf of the proposed no notice subclass and proposed forfeiture subclass, and allege a Fifth Amendment violation based on the right against self-incrimination and alleges that the government will not return property unless they identify themselves and, like the other claims, requests the return of property based on the constitutional violation. (FAC ¶¶ 224 and 228.)

This lawsuit is largely moot as to the Named Plaintiffs. (Dkt. No. 60 (July 23, 2021 order re: plaintiffs' motion for preliminary injunction at 1, noting that the Snitkos had recovered their property and Gothier was scheduling his property's return).) The FBI has returned the contents of the Snitkos' box. (See Dkt. 69.) The FBI has returned the contents of Gothier's box, after several attempts to reach Gothier to schedule the return. (Id.; Dkt. 68-1.) The FBI has returned the gold seized from May's box and is in the process of transferring funds equivalent to the cash seized. (Id.) The FBI is in the

---

[3] Plaintiffs define the "proposed forfeiture subclass," for which they assert Verdon-Pearsons, Storc, May and Ruiz are members, as "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure; (c) whose property is now the subject of a purported administrative forfeiture proceeding; and (d) whose property is still in the possession of the federal government." FAC ¶¶ 142 and 143.

process of transferring funds equivalent to the cash seized from Ruiz's box.  (Id.)  And the FBI is in the process of returning the property seized from the box of Verdon-Pearsons and Storc.  (Id.)

As to the remainder of the "forfeiture subclass," the government cannot forfeit the property without filing a complaint within the 90-day period after a claim is filed.  The government has begun filing judicial civil forfeiture complaints.  (See, e.g., United States of America v. $399,000.00 in U.S. Currency, 2:21-cv-06966-RGK-MAR; United States of America v. $600,980.00 in U.S. Currency, 2:21-cv-06965-RGK-MAR; United States of America v. $341,500.00 in U.S. Currency, 2:21-cv-06967-RGK-PLA; United States of America v. $305,000.00 in U.S. Currency, 2:21-cv-06968-RGK-MAR; United States of America v. $462,880.00 in U.S. Currency and Miscellaneous Jewelry, 2:21-cv-07077-E; United States of America v. $599,870.00 in U.S. Currency, $21,000.00 in U.S. Currency and Approximately 59 Miscellaneous Yellow and White Colored Coins and Bars, 2:21-cv-07078-SK; and United States of America v. $400,000.00 in U.S. Currency, 2:21-cv-7153.)   The filing deadlines for these proceedings range from late August to late October and require individualized determinations as to whether the government will seek judicial forfeiture of the contents of a particular box.  The facts underlying each complaint are varied.

For example, with respect to Box No. 5911, the government has made an individualized determination that the boxholder is a drug supplier who provides drugs to others and receives currency in exchange for the drugs he supplies.  (See United States of America v. $399,000.00 in U.S. Currency, 2:21-cv-06966-RGK-MAR, Dkt. 1.)  The boxholder has a significant criminal history, which includes California and Illinois state felony convictions for aggravated criminal sexual assault, robbery, felony drug convictions and convictions for domestic violence.  (Id.)  In addition, the boxholder has a 2010 New Jersey federal district court conviction for bank fraud and felon in possession of a firearm for which he was sentenced to 70 months imprisonment and five years of supervised release.  (Id.)  He also has a 2019 State of California conviction for perjury

5

for which he is on probation.  (Id.)

Inside the box, officers found $399,000.00 in U.S. currency.  (Id.)  The boxholder does not have anywhere near sufficient legal sources of income to justify his acquisition and possession of the $399,000.00 defendant currency; for example, information from the California Employment Development Department reflects no wages having been paid to the boxholder.  (Id.)  Moreover, the currency was bundled, rubber-banded, and in denominations consistent with narcotic trafficking, and a trained, state-certified narcotic detection canine gave a positive alert to the defendant currency, which signifies that the funds had recently been in close proximity with narcotics.  (Id.)  On July 15, 2021, officers executed a federal search warrant at the boxholder's residence.  (Id.)  During the search, officers found evidence of the boxholder engaging in a large credit card scheme, including credit card swipers and logbooks with social security numbers.   (Id.)

With respect to Box No. 4304, the government made an individualized determination that the boxholder has a significant criminal history, which includes a 1996 federal conviction on cocaine trafficking charges for which he was sentenced to over 20 years (or more specifically 247 months) imprisonment followed by 5 years of supervised release.  (See United States of America v. $305,000.00 in U.S. Currency, 2:21-cv-06968-RGK-MAR.)  Officers found $305,000.00 in U.S. currency inside the box.  (Id.)  Law enforcement officers executed a search warrant on the boxholder's residence on July 15, 2021.  (Id.)  Officers found 10 phones in the boxholder's bedroom.  (Id.)  When officers asked why he had 10 phones, the boxholder replied he needs "10 phones to stay 10 steps away from you."  (Id.)

The government has filed civil forfeiture complaints based against the property in other boxes after conducting similar individualized inquiries.  The government also continues to return property to boxholders after making individualized determinations that a civil forfeiture complaint will not be filed.  The numbers of boxes associated with property returned to boxholders changes daily as the deadlines vary for each box.  Moreover, some individuals have filed claims, some have filed petitions, and some have

filed both claims and petitions.

## III.    LEGAL STANDARD

The "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Comcast, 569 U.S. at 33 (citation omitted). "To come within the exception, a party … 'must affirmatively demonstrate his compliance' with Rule 23." Id. (quoting Dukes, 564 U.S. at 350). For this reason, Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 234 (2013).

Rule 23(a) tests whether "the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013), requiring every "party seeking class certification [to carry the] burden of affirmatively demonstrating" (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012). "Under Rule 23(a), the party seeking certification must demonstrate, first, that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Dukes, 564 U.S. at 345. "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Id. "Rule 23 does not set forth a mere pleading standard," id. at 350; rather, Plaintiff is required "to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id.

Plaintiffs seek certification under Rule 23(b)(2), which "allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" Dukes, 564 U.S. at 360. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to

all of the class members or as to none of them"  Id. (internal citation and quotation marks omitted).  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  Id.  It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."  Id.  "If individualized relief is sought—even individual injunctive relief—the named plaintiffs must look elsewhere in Rule 23(b) to obtain certification."  Jamie S. v. Milwaukee Pub. Schs., 668 F.3d 481, 499 (7th Cir. 2012) (citing Dukes, 564 U.S. at 361-362).

## IV.    ARGUMENT

### A.    Named Plaintiffs Cannot Demonstrate Rule 23(a) Commonality.

The differences among the putative class members preclude commonality because there are no common answers that will drive resolution of the litigation.  Instead, the proposed classes would require the government to provide unique, individualized answers regarding the government's retention of property and the basis for probable cause with respect to each boxholder.  Moreover, the inventory search conducted at U.S. Private Vaults was conducted by numerous law enforcement officials and would require individualized inquiries with respect to each box.

"Rule 23(a)(2) provides that class members may sue as representative parties only if 'there are questions of law or fact common to the class.'"  B.K. by next friend Tinsley v. Snyder, 922 F.3d 957, 967 (9th Cir. 2019).  "That language is easy to misread, since **any competently crafted class complaint literally raises common questions**."  Dukes, 564 U.S. at 349 (2011) (alteration and internal quotation marks omitted) (emphasis added).  So, for example, "[m]erely alleging a 'violation of the same provision of law' does not satisfy commonality."  Tinsley, 922 F.3d at 967 (quoting Dukes, 564 U.S. at 350).  Instead, the "claims must depend upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 564 U.S. at 350.  In other words, "[w]hat matters to class certification is not the raising

8

of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. (internal quotation marks omitted).

Here, there are not common answers apt to drive the resolution of the litigation.  A close reading of the FAC makes this clear.  In the Prayer for Relief, the Named Plaintiffs seek certification of a No Notice Subclass for the purpose of obtaining a class-wide permanent injunction enjoining the government from "[r]etaining property seized from USPV customers' safe deposit boxes without stating **a valid independent basis for its continued detention**[.]"  (FAC at 51 ¶ J(i) (emphasis added).)   On the face of the FAC, Named Plaintiffs concede that in order to obtain the "classwide" relief that they seek – i.e., the return of property – the government must make a ***valid independent determination*** regarding the continued detention of any property.   This is not a case where common answers drive resolution of the litigation.  Named Plaintiffs are improperly using the class vehicle for the purpose of seeking individualized answers regarding the contents of each box.   The Federal Rules prohibit this approach.  Dukes, 564 U.S. at 350 ( "[w]hat matters  . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.").

The same flaw is fatal to the proposed Forfeiture Subclass.  There, Named Plaintiffs seek certification to obtain a class-wide injunction enjoining the government from proceeding with its judicial civil forfeiture of any USPV customers' safe deposit box "without articulating **an adequate basis to conclude that the government has probable cause to believe the individual's property is subject to forfeiture**[.]"  (FAC at 51 ¶ K(ii).)  Again, on the face of the FAC, Named Plaintiffs ask the Court to order individualized answers regarding probable cause as to each seized box that is subject to forfeiture, not common answers apt to drive the resolution of the litigation.  A ruling in Named Plaintiffs' favor would lead to no common answers driving resolution of their claims, but rather a series of individualized responses tailored to the facts of each retained box.

The law is clear that it is not enough to simply allege that the government has violated the Constitution—that does not satisfy commonality: "Merely alleging a 'violation of the same provision of law'"—here, the Constitution—"does not satisfy commonality." Tinsley, 922 F.3d at 967 (quoting Dukes, 564 U.S. at 350). What drives the inquiry is whether common answers drive resolution of the litigation. Here, regardless of the validity of Named Plaintiffs' legal theory, the claims depend on individualized factual arguments regarding probable cause and the basis for continued detention of property. The Federal Rules prohibit class certification in this context.

A brief review of the six civil judicial forfeiture complaints the government filed recently highlights the individualized inquiries underlying these proceedings. (See supra, Section II.) The government will continue to file similar complaints in the coming weeks against specific property. Claimants will then be able to challenge the constitutionality of the inventory search with respect to their property in this forum, and the government will respond to such defenses based on the individual circumstances and facts surrounding the search of each box. The responses will differ based on the nature of the search, the type of property reviewed, and other facts. The Court should deny class certification where judicial proceedings are already in place to address what are inherently individualized inquiries.

Named Plaintiffs cannot meet their burden with respect to Rule 23(a) commonality. The motion for class certification should be denied on this basis alone.

**B.   Named Plaintiffs Cannot Satisfy Rule 23(a) Typicality.**

For related reasons, Plaintiffs cannot satisfy the typicality requirement of Rule 23(a). Typicality and commonality "tend to merge," and both ultimately address "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim[s] and the class claim[s] are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Dukes, 564 U.S. at 349 n.5 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157-58, n.13 (1982)).

1      As set forth in the government's motion to dismiss and reply, this lawsuit is moot

2  as to the Named Plaintiffs.  (Dkts. 62 and 68; Dkt. 60 (July 23, 2021 order re: plaintiffs'

3  motion for preliminary injunction at 1, noting that the Snitkos had recovered their

4  property and Gothier was scheduling his property's return).)  These individuals no longer

5  have live claims.  In a creative attempt to work around this reality, Named Plaintiffs

6  accuse the government of "picking off" the named plaintiffs (as if this were a consumer

7  class action) and cite case law protecting the ability to certify a class under Rule

8  23(b)(3).  (See Mot. for Class Certification at 9.)  Named Plaintiffs ask the Court to

9  ignore the mootness of their claims and to construe their individual causes of action as

10  relating back to the FAC, such that they fictionally remain live for the sole purpose of

11  class certification.  (Id at 9.)  Named Plaintiffs miss the mark entirely.

12      The government does not concede that the Named Plaintiffs' claims relate back to

13  the FAC or that the doctrine of inherently transitory claims applies here.  Named

14  Plaintiffs' claims were already moot before they filed the motion for class certification,

15  and this is not a Rule 23(b)(3) class action where "picking off" typically occurs, like a

16  TCPA or consumer class action.  Moreover, the government is simply following the law

17  by resolving Named Plaintiffs' claims and meeting the 90-day deadline set forth in 18

18  U.S.C. § 983(a)(3)(A) & (B) for the government to either file a judicial forfeiture action

19  or release the property.  Regardless, the Court need not address whether the claims relate

20  back to the FAC or the claims are inherently transitory.  Even if the Named Plaintiffs'

21  claims were live, the individuals are still not typical of the class and subclasses they seek

22  to represent.

23      Similar to Rule 23(a) commonality, the individualized facts surrounding each

24  Named Plaintiff demonstrate how their claims are not typical of the putative class

25  members' claims.  The fact that each Named Plaintiff's claim is already moot merely

26  highlights the atypicality.  For example, the Snitkos, Gothier, and Ruiz seek to represent

27  a "No-Notice Subclass," which comprises those boxholders whose property is being held

28  by the government but who "have not received notice that their property is subject to

currently ongoing forfeiture proceedings." (Mot. for Class Certification at 12.)  With respect to the Named Plaintiffs of this proposed subclass:

- The FBI made multiple attempts to contact the ***Snitkos*** in May 2021 to schedule the return of their property, and the Snitkos collected their belongings in June.

- In late May and early June, the FBI made several attempts to contact ***Gothier*** to schedule the return of his property, but the FBI was not able to reach him at the phone number he provided.  In June the FBI sent a certified letter inviting Gothier to make an appointment to receive his property, his attorney contacted the FBI on June 15, 2021 and an appointment was scheduled.  Named Plaintiffs concede his property was returned.  (Mot. for Class Certification at 2.)

- ***Ruiz*** held a box at USPV and after the Court ordered the government to show cause why it continued to hold the property, the government agreed to return property to him after making a determination based on his individualized facts and circumstances.

In this fluid context -- where the government has already attempted to contact every boxholder and the status of property and the number of civil forfeiture complaints changes weekly depending on the deadline to file -- the Named Plaintiffs' claims are not typical of the current class or subclasses they seek to represent.  Today, the classes comprise, among other characteristics:  boxholders who wish to remain anonymous and thus cannot be contacted regarding any continued retention of property; boxholders whose property will be the subject of civil judicial forfeiture proceedings; boxholders who are already claimants in judicial forfeiture proceedings; boxholders who are the subjects of ongoing criminal investigations; boxholders who are not returning calls or responding to the FBI's voicemails despite efforts to return property; boxholders who have set up appointments to receive their property at a future date; boxholders who cannot be located; and boxholders who have seemingly abandoned their property.

In other words, on the one hand Named Plaintiffs acknowledge that the government is already making individualized determinations about certain boxes, such that the Named Plaintiffs' claims are moot because their property has already been returned. Yet on the other hand, they ask the Court to create a fiction that their claims are not moot, and that they are typical of a uniform and static class and subclasses of similarly situated boxholders. Even if the Court created a fiction as to the Named Plaintiffs' claims, the classes they seek to represent are no longer certifiable. Similar to Rule 23(a) commonality, there is no way for Named Plaintiffs to meet their burden with respect to Rule 23(a) typicality because these individuals do not have the same essential characteristics of the now diverse putative members of the proposed classes.

### C.   Named Plaintiffs Cannot Meet The Remaining Rule 23(a) Factors.

Named Plaintiffs also cannot meet their burden with respect to adequacy or numerosity. Classes certified under Rule 23(b)(2), as Named Plaintiffs propose, are mandatory—any and every person within the class and subclasses will be bound by this Court's judgment without the opportunity to opt-out, either before or after judgment. See, e.g., Reeb v. Ohio Dep't of Rehab. & Corr., 435 F.3d 639, 645 (6th Cir. 2006) ("Rule 23(b)(2) authorize[s] 'mandatory' class actions under which potential class members do not have an automatic right to notice or a right to opt out of the class."); Kincade v. Gen. Tire & Rubber Co., 635 F.2d 501, 506 (5th Cir. 1981) ("[I]t is clear that the Federal Rules do not provide objectors a right to opt out of class actions brought under Rule 23(b)(2)."). Despite the mandatory nature of their classes, Named Plaintiffs seek to represent a broad class. Some of the putative class members have filed their own separate lawsuits before this Court or motions for return of property in related criminal proceedings. Several putative class members are now claimants in civil forfeiture proceedings—a number that will continue to increase. Many continue to work with the FBI to retrieve property and receive electronic transfers of funds.

Named Plaintiffs ask the Court to elevate their case above all other proceedings and force all putative class members to be onboard. This is especially problematic where

13

claimants in judicial forfeiture proceedings have the right to raise constitutional issues in their lawsuits.  Again, the civil judicial forfeiture proceedings present boxholders and the Court with a forum to determine constitutional challenges to inventory searches.  Here, the relief Plaintiffs seek in this lawsuit presents an irreconcilable conflict with the class members they hope to represent, and so Plaintiffs therefore do not satisfy the adequacy requirement of Rule 23.[4]

### D.  Even If Named Plaintiffs Could Satisfy Rule 23(a), They Fail To Meet The Requirements of Rule 23(b).

Plaintiffs seek certification under Rule 23(b)(2), which "allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"  <u>Dukes</u>, 564 U.S. at 360.  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them" <u>Id</u>. (internal citation and quotation marks omitted).  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. ***It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant***." <u>Id</u>. (emphasis added).  "If individualized relief is sought—even individual injunctive relief—the named plaintiffs must look elsewhere in Rule 23(b) to obtain certification." <u>See Jamie S. v. Milwaukee Pub. Schs.</u>, 668 F.3d 481, 499 (7th Cir. 2012) (citing <u>Dukes</u>, 564 U.S. at 361-362).

---

[4]  With respect to numerosity, every plaintiff wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23.   <u>Halliburton Co. v. Erica P. John Fund, Inc</u>, 573 U.S. 258, 275 (2014) (citing <u>Dukes</u>, 564 U.S. at 350-51).  Because these proceedings are fluid, the number of putative class members for the proposed subclasses changes on a nearly daily basis.  The government's deadline to file forfeiture proceedings continues through October, and the FBI continues to return property to boxholders after making individualized determinations.  Named Plaintiffs have not met their burden with respect to numerosity of the subclasses.

These principles are independently fatal to the request for class certification.  First, as described throughout this opposition, since the execution of the search warrant the government has not "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).  Rather, the proposed putative class members are now diverse and varied—indeed, even every Named Plaintiff is no longer a member of the proposed subclasses they seek to represent *because the government has acted* in a way that is unique to them as opposed to other putative class members.  The government has sent different notices to various individuals, received claims and petitions for remission from boxholders and other alleged stakeholders, initiated administrative forfeiture proceedings, initiated judicial forfeiture proceedings, returned property to many individuals, transferred funds to many individuals, and responded to several lawsuits associated with these proceedings.  Moreover, the execution of the search warrant involved different law enforcement officials and unique property with respect to each safe deposit box.  Regarding those who have not yet received their property, the grounds for the government's decisions to return property or initiate judicial forfeiture proceedings will vary from box to box—the civil forfeiture complaints lay out the factual bases for each proceeding and show the individualized nature of these proceedings.  Thus, Named Plaintiffs cannot even satisfy Rule 23(b)(2)'s first requirement.

Nor can Plaintiffs satisfy the separate requirement that the proposed declaratory judgment be "appropriate," Fed. R. Civ. P. 23(b)(2), by providing "relief to each member of the class," Dukes, 564 U.S. at 360.  The relief Plaintiffs seek is expansive and formulated in a way that requires the government to affirmatively provide unique answers as to each putative class member.  As described in the FAC, Named Plaintiffs seek an injunction ordering the government to (1) destroy all documents and records obtained during the execution of a search warrant; (2) return property depending on the basis of the government's ongoing detention of property; and (3) stop all civil forfeiture proceedings unless the government makes an individualized determination about probable cause.  (FAC ¶¶ 169, 173; Prayer for Relief J(i), K(ii).)  In other words, if the

Court granted the classwide relief sought in this lawsuit, every putative class member would still need to go through additional, individualized litigation regarding the basis of the government's ongoing detention of property or the probable cause underlying a civil forfeiture action.  This is not a case in which a "single injunction" will "perforce affect the entire class at once." Dukes, 564 U.S. at 360, 361-362.

"That the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final." Jamie S., 668 F.3d at 499.  That is precisely the case here.  Accordingly, Named Plaintiffs' request for class certification should be denied under Rule 23(b)(2).

### E. The Court Should Limit Any Decision On The Destruction Of Documents To Named Plaintiffs.

With respect to the broad proposed class covering all boxholders who had their property seized and notified themselves to the FBI, the Court should not order the destruction of any documents associated with the execution of the search warrant for the reasons stated in the government's Motion to Dismiss (Dkt 62) and Reply (Dkt. 68).

But even if the Court were inclined to issue such an order requiring the government to destroy documents related to the searches of the Named Plaintiffs' boxes, the Court should not broadly require the destruction of documents with respect to every putative class member.  Named Plaintiffs recklessly ask the Court to order destruction of documents without conducting any individualized factual analysis regarding the boxholder, the property seized, or the status of proceedings.  The government has already begun civil forfeiture proceedings against the property of several boxes, and an indiscriminate order broadly requiring the government to destroy documents of could raise discovery issues with respect to civil proceedings and ongoing criminal investigations.

16

1    For example, with respect to Box No. 5911, the government has made an

2    individualized determination that the boxholder is a drug supplier who provides drugs to

3    others and receives currency in exchange for the drugs he supplies.  (See United States

4    of America v. $399,000.00 in U.S. Currency, 2:21-cv-06966-RGK-MAR, Dkt. 1.)   The

5    boxholder has a significant criminal history, which includes California and Illinois state

6    felony convictions for aggravated criminal sexual assault, robbery, felony drug

7    convictions and convictions for domestic violence.  (Id.)  In addition, the boxholder has a

8    2010 New Jersey federal district court conviction for bank fraud and felon in possession

9    of a firearm for which he was sentenced to 70 months imprisonment and five years of

10   supervised release.  (Id.)  He also has a 2019 State of California conviction for perjury

11   for which he is on probation.  (Id.)  Inside the box, officers found $399,000.00 in U.S.

12   currency.  (Id.)  On July 15, 2021, officers executed a federal search warrant at the

13   boxholder's residence.  (Id.)  During the search, officers found evidence of the boxholder

14   engaging in a large credit card scheme, including credit card swipers and logbooks with

15   social security numbers.

16   With respect to Box No. 4304, the government made an individualized

17   determination that the boxholder has a significant criminal history, which includes a

18   1996 federal conviction on cocaine trafficking charges for which he was sentenced to

19   over 20 years (or more specifically 247 months) imprisonment followed by 5 years of

20   supervised release.  (See United States of America v. $305,000.00 in U.S. Currency,

21   2:21-cv-06968-RGK-MAR.)  Officers found $305,000.00 in U.S. currency inside the

22   box.  (Id.)  Law enforcement officers executed a search warrant on the boxholder's

23   residence on July 15, 2021.  (Id.)  Officers found 10 phones in the boxholder's bedroom.

24   (Id.)  When officers asked why he had 10 phones, the boxholder replied he needs "10

25   phones to stay 10 steps away from you."  (Id.)

26   Several other judicial forfeiture complaints have been filed, and the government

27   will file several more in the coming weeks.  In light of these ongoing civil cases and

28   related criminal investigations, the Court should not broadly order destruction of

documents on a classwide basis.  Relief should be limited to the Named Plaintiffs alone.

**F.  The Court Should Decline To Certify A Class Where Putative Class Members Can Raise Issues In Civil Forfeiture Actions.**

The mandatory classes proposed by Named Plaintiffs are also inappropriate where putative class members can raise the constitutional issues related to inventory searches as part of their civil forfeiture actions.

As described in the government's Motion to Dismiss, class claims I through VI seek declaratory relief, and all of plaintiffs' requests for declaratory relief can properly be raised in any civil forfeiture action the government files.  One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696 (1965) (Fourth Amendment exclusionary rule applies in civil forfeiture cases); United States v. $186,416.00 in U.S. Currency, 590 F.3d 942, 950 (9th Cir. 2010) (same); Supplemental Rule G(8)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (party can file motion to suppress evidence in civil forfeiture cases).

Accordingly, the Court should not elevate the present motion for class certification above claimants in judicial forfeiture proceedings, and should instead allow them to proceed on an individual basis.

## V.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the motion for class certification be denied.