**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* *Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

**PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,**

Plaintiffs,

**v.**

**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**

Defendants.

Case No. 2:21-cv-04405-RGK-MAR

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Date: September 27, 2021
Time: 9:00 A.M.
Courtroom: 850
Judge: Hon. R. Gary Klausner
Trial Date: TBD
Complaint Filed: May 27, 2021
Amended Complaint Filed: June 9, 2021

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** .......... ii

**I. Named Plaintiffs' Claims For Class Relief Are Not Moot** .......... 2

**II. This Case Satisfies The Rule 23(a) Requirements For Class Certification** .......... 3

A. Numerosity .......... 3

B. Commonality .......... 4

C. Typicality .......... 6

D. Adequacy .......... 7

**III. This Case Is Appropriate For Rule 23(b)(2) Certification** .......... 8

# TABLE OF AUTHORITIES

**CASES** **Page**

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) .......... 2, 3

*Davidson v. O'Reilly Auto Enterprises, LLC*, 968 F.3d 955 (9th Cir. 2020) .......... 4

*Fraihat v. ICE*, No. 19-cv-1546, 2020 WL 2759848 (C.D. Cal. Apr. 15, 2020) .......... 3

*Franco-Gonzalez v. Napolitano*, No. 10-cv-02211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) .......... 3

*Hardy v. District of Columbia*, 283 F.R.D. 20 (D.D.C. 2012) .......... 6

*Haro v. Sebelius*, 747 F.3d 1099 (9th Cir. 2014) .......... 3

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) .......... 3, 4

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .......... 5, 7

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) .......... 5

*Scholl v. Mnuchin*, 489 F. Supp. 3d 1008 (N.D. Cal. 2020) .......... 6

*Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694 (E.D. Pa. 2015) .......... 3

*Torres v. Milusnic*, 472 F. Supp. 3d 713 (C.D. Cal. 2020) .......... 6, 8

*Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016) .......... 3

**RULES**

Fed. R. Civ. P. 23(a) .......... 3

Fed. R. Civ. P. 23(b)(2) .......... 8

C.D. Cal. Local Rule 37-1 .......... 4

**OTHER AUTHORITIES**

William B. Rubenstein, 2 Newberg on Class Actions § 4:36 (5th ed.) .......... 8

On three occasions, this Court has ruled that the government's treatment of USPV box holders is unconstitutional. First, the Court determined—twice—that the government's "anemic" forfeiture notices violated USPV box holders' right to due process of law. Order re: TRO at 5, D.E. 52 (June 22, 2021); Order re: First Preliminary Injunction at 3, D.E. 58 (July 16, 2021). Second, the Court concluded that the government's continued detention of property without providing any justification violated the Fourth Amendment right against unreasonable seizures. Order re: Second Preliminary Injunction at 6, D.E. 60 (July 23, 2021).

Yet the government has all but ignored this Court's repeated guidance about how to comply with the Constitution. While doing the bare minimum with respect to the named Plaintiffs, the government has continued to grind through the same unconstitutional course of procedure for hundreds of other USPV box holders and putative class members. The government has not supplemented its deficient administrative forfeiture notices to explain the factual and legal bases for the attempted forfeitures. And the government still holds the contents of hundreds of USPV boxes without even attempting to justify those continued seizures.

The Opposition (D.E. 74 ("Opp.")) to Plaintiff's Motion for Class Certification and Memorandum in Support (D.E. 71 ("Memo.")) reveals the strategy behind the government's intransigence. It seeks to run out the clock on its constitutional violations because it is *almost* done ignoring the Court's rulings and violating class members' constitutional rights. Eventually, we are told, the government will have made its belated individualized determinations of probable cause when it decides whether to file judicial forfeiture actions, and—eventually—property owners who are not targeted by forfeiture complaints will receive their property back. And so, the government argues, the Court should deny class certification because, although it's not already too late, it will be eventually.

This Court should reject the government's gambit. What matters is that the government's unconstitutional conduct continues today, as it has for the past 175

days. If anything, the government's strategy underscores the urgent need to certify the No-Notice and Forfeiture Subclasses to address the ongoing harm to hundreds of class members before it is indeed too late to intervene.

Moreover, the government's strategy of intransigence does not affect Count I, which seeks destruction of records on behalf of a broader Proposed Class. This Court recently held that Count I states a plausible claim that the government's indiscriminate search of the USPV boxes was unlawful and that the government may be ordered to destroy the records generated during its unlawful search. *See* Order Re: Motion to Dismiss the First Amended Complaint ("MTD Order") at 5–6, D.E. 75 (Sept. 9, 2021). The Court should certify the Proposed Class so that Plaintiffs can effectively remedy that violation of class members' rights as well.

## I. Named Plaintiffs' Claims For Class Relief Are Not Moot

Plaintiffs bring Count I, which challenges the legality of the government's search of the USPV safe deposit boxes, on their own behalf and on behalf of the Proposed Class. This claim presents a live case or controversy because, as this Court recently concluded, it seeks the destruction of records generated during the government's illegal search. MTD Order at 5–6; *see also* Memo. at 9.

Counts II–VI, which Plaintiffs bring on behalf of the No-Notice and Forfeiture Subclasses, are not moot because they fall within two well-established exceptions to mootness: where defendants pick off the named plaintiffs' claims and where named plaintiffs' claims are inherently transitory. Memo. at 9–10. The government labels this a "creative attempt" (Opp. at 11), but it takes little creativity to invoke directly applicable legal principles based on decades-old caselaw. *See* Memo. at 10 (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)); MTD Order at 7–8. Nor is it relevant, as the government argues, whether the individual claims become moot before or after Plaintiffs moved for class certification. *See*

*McLaughlin*, 500 U.S. at 52 ("That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction.").[1]

The government also offers no support whatsoever for its suggestion that these mootness exceptions should only apply to TCPA claims or consumer class actions. There is no precedent or principle that would justify giving more leeway to the government to violate constitutional rights than is given to private companies to make unauthorized phone calls. Unsurprisingly, therefore, these exceptions are applied to constitutional claims, including claims challenging civil forfeiture procedures. *See*, *e.g.*, *McLaughlin*, 500 U.S. at 52 (Fourth Amendment challenge); *Wilson v. Gordon*, 822 F.3d 934, 944–51 (6th Cir. 2016) (due process challenge); *Fraihat v. ICE*, No. 19-cv-1546, 2020 WL 2759848, at *10 (C.D. Cal. Apr. 15, 2020) (due process challenge); *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 703-04 (E.D. Pa. 2015) (challenge to civil forfeiture procedures).

## II. This Case Satisfies The Rule 23(a) Requirements For Class Certification

### A. Numerosity

As Plaintiffs explained in their opening memorandum, the evidence supports that the members of the Proposed Class and No-Notice and Forfeiture Subclasses number in the hundreds. Memo. at 11–12. The government offers no response to this (and does not even address it for the Proposed Class), except to breezily state in a footnote that the number of subclass members is "fluid." Opp. at 14 n.4. But Plaintiffs "need not allege the exact number or identity of class members to satisfy the numerosity requirement." *Franco-Gonzales v. Napolitano*, No. 10-cv-02211, 2011 WL 11705815, at *8 (C.D. Cal. Nov. 21, 2011) (quotation marks and citation omitted); *see also Multi-Ethnic Immigrant Workers Org. Network v. City of Los*

[1] For example, the class claims were not moot in *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014), even though the lead plaintiff's individual claim became moot on April 13, 2009, *id.* at 1106, and she did not move for class certification until over a year later, *see* Mot. to Certify Class Action, *Haro v. Sebelius*, No. 4:09-cv-00134, Doc. 54 (D. Ariz. May 26, 2010).

*Angeles*, 246 F.R.D. 621, 631 (C.D. Cal. 2007); Memo. at 12. Tellingly, the information needed to quantify the precise number of people in each subclass is known only to the government, yet the government makes no effort to rebut the evidence and arguments showing that that number measures in the hundreds.[2]

The government cites seven forfeiture complaints that it has filed against property seized from USPV boxes, and the government repeatedly highlights two cases where it apparently believes it has a solid factual basis to justify its actions. *See* Opp. at 5–6, 17. But as Plaintiffs explained in the opening memorandum, there are at least 245 USPV customers who received defective administrative forfeiture notices, who filed claims, and who have not yet received their property back or been told that it will be returned. *See* Memo. at 12. The government is continuing to violate the constitutional rights of those hundreds of property owners, along with other members of the proposed class and subclasses.

**B. Commonality**

The Proposed Class readily satisfies the commonality requirement because it challenges—at Count I—the lawfulness of a single, indiscriminate search of hundreds of USPV boxes. Memo. at 13. The government's contrary suggestion (*e.g.*, Opp. at 8) that this turns on how individual agents conducted the inventory search fundamentally misunderstands Plaintiffs' legal claim. Plaintiffs allege, among other things, that the search itself was not an inventory search, that instead it was an investigatory search, and that even if it was an inventory search, the

[2] The existing evidence is sufficient for the Court to conclude that the numerosity requirement is satisfied, but, out of an abundance of caution, Plaintiffs also sought discovery from the government concerning class membership. Memo. at 11. The government, however, largely refused to answer. *Id.* On September 7, 2021, Plaintiffs served a letter on the government and requested a conference pursuant to Local Rule 37-1, and, in the event the parties do not resolve the dispute, Plaintiffs anticipate promptly seeking relief in accordance with Local Rule 37. Should the Court desire more concrete information regarding numerosity, Plaintiffs will be prepared to submit a supplemental brief on the issue following the Court's resolution of the discovery dispute. *See* Memo. at 11 (citing *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 964–65 (9th Cir. 2020)).

inventory search exception to the warrant requirement did not apply. *See* First Amended Complaint ("FAC") ¶¶ 160–62, D.E. 33. This claim revolves around significant common questions such as what the government promised in its warrant application, the scope of the warrant, the procedures applicable to the search of the USPV boxes, and whether those procedures willfully exceeded the limits of the warrant or callously disregarded class members' constitutional rights.

The No-Notice and Forfeiture Subclasses likewise satisfy the commonality requirement because they involve common questions about whether the government may continue to detain property without saying why, and whether it may seek to administratively forfeit property without identifying the factual and legal bases for its actions. Memo. at 13–14. The government argues (Opp. at 9) that these common questions are not actually common because it may have different reasons for holding each box. But even if that were so, "a single common question . . . can satisfy the commonality requirement." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks and citation omitted). More fundamentally, the "constitutional issue at the heart of each class member's claim for relief," *Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010), does not turn on *what* the government will say about why it is continuing to seize or seeking to administratively forfeit property, but rather whether the government must say anything *at all*. The claims here do not seek the return of class members' property, and Plaintiffs do not seek to litigate the validity of any individual explanation the government may offer for holding a particular class member's box. Rather, Plaintiffs seek to vindicate the constitutional right of each class member to receive that explanation in the first place.[3]

---

[3] For that reason, the government's emphasis on the need for "a classwide proceeding to generate common answers" does not actually help its case. Opp. at 9 (quotation marks and citation omitted). The common questions raised by Plaintiffs can be answered with a common answer: The government must justify its ongoing seizure of the property of *every* member of the proposed subclasses.

Numerous cases confirm that commonality is satisfied when challenging failures to provide adequate notice and process, even if the individual content of the notices or outcome of the procedures would vary. *See, e.g.*, *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1044, 1046–47 (N.D. Cal. 2020) (commonality satisfied in challenge to generally applicable policy of denying inmates stimulus payments, even though individual eligibility determinations would still be necessary); *Torres v. Milusnic*, 472 F. Supp. 3d 713, 744–45 & n.63 (C.D. Cal. 2020) (commonality satisfied in challenge to process used to determine which prisoners eligible for compassionate release, even though it would require subsequent individual determinations concerning eligibility for release); *Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012) (commonality satisfied where plaintiffs challenged seizure of their property without adequate notice, despite individual differences with each seizure); *see also* Memo. at 13–14 (citing additional cases).

**C. Typicality**

The named Plaintiffs' claims are typical of the claims of the Proposed Class and Subclasses because they were victims of the same government conduct as the other class and subclass members. Memo. at 15–17. The government primarily argues that the claims are not typical because the government has taken steps to moot Plaintiffs' individual claims. Opp. at 11. This fails for the Proposed Class, which asserts claims under Count I that this Court has concluded are not moot. *See* MTD Order at 5–6. And it fails as to the subclasses because, as described *supra* at 2–3, those claims fall within two mootness exceptions.

The government's remaining argument concerning typicality (Opp. at 12) is a mishmash of supposed differences between class members, none of which matter given the nature of the claims. For example, the government asserts that some class members wish to remain anonymous, even though the Proposed Class and Subclasses only include USPV customers who have identified themselves to the FBI since the seizure and thus by definition are not anonymous. FAC ¶¶ 139–40,

142. Similarly, whether a member of the Proposed Class has property that is or will be the subject of judicial forfeiture proceedings has no bearing on whether the initial search was lawful. Meanwhile, that boxholder would not be a member of either the No-Notice Subclass (which excludes boxholders who have received notice that their property is subject to ongoing judicial forfeiture proceedings) or the Forfeiture Subclass (which includes boxholders who are subject to administrative but not judicial forfeiture proceedings). *Id.* ¶¶ 140, 142. The requirement of typicality ultimately turns on whether Plaintiffs' and class members' claims are "reasonably coextensive," which depends on fundamental facts such as the legality of the government's search and whether it is pursuing administrative forfeitures based on constitutionally defective notices, not on whether some class members have not responded to an FBI voicemail. *See Parsons*, 754 F.3d at 685 (named plaintiff claims "need not be substantially identical" to class claims).

**D. Adequacy**

Plaintiffs satisfy the adequacy requirement because there are no conflicts of interest with the class and because they will prosecute this action vigorously on behalf of the class. Memo. at 17. The government asserts (Opp. at 13–14) that Plaintiffs do not satisfy this requirement, but never really says why. The Opposition does not identify any conflict of interest with the class or provide any reason to believe Plaintiffs will not vigorously prosecute this action.

The government's only complaint seems to be that a small handful of members of the proposed class (seven at this point, nearly six months after the seizures) are claimants in judicial forfeiture proceedings who can challenge the constitutionality of the searches in those proceedings. That argument fails for several reasons. As an initial matter, this argument does not even apply to the No-Notice and Forfeiture Subclasses, which do not challenge the legality of the government's *search* of the USPV boxes and do not include boxholders whose property is part of a judicial forfeiture proceeding. FAC ¶¶ 140, 142.

For the Proposed Class, the fact that a handful of USPV customers may have the opportunity to challenge the legality of the search in a judicial forfeiture proceeding simply has no bearing on whether Plaintiffs will be adequate representatives of the proposed class. More significantly, the small number of USPV customers in those judicial forfeiture proceedings only highlights the pressing need for class-wide relief for the hundreds of other customers who are not and never will be claimants in such a proceeding. That includes over 250 class members who were never subject to forfeiture proceedings (Memo. at 5), plus hundreds of others who were subject to administrative proceedings (*id.* at 5–6, 11–12), but who are not among the handful of class members who are subject to judicial forfeiture proceedings.[4]

**III. This Case Is Appropriate For Rule 23(b)(2) Certification**

Rule 23(b)(2) exists precisely for cases like this. The government indiscriminately searched hundreds of boxes, continues to detain the contents of hundreds of boxes without saying why, and has targeted hundreds of boxes for administrative forfeiture without individually determining and disclosing why the property is forfeitable. This conduct broadly impacts the members of the Proposed Class and Subclasses, and the requested declaratory and injunctive relief will provide relief to the class and subclasses as a whole. Memo. at 18–20.

[4] Even if the Court were concerned about the Proposed Class litigating the lawfulness of the government's USPV search in parallel with the judicial forfeiture claimants, that concern is easily resolved without denying relief to the entire class. First, the Court could simply modify the proposed class definition to only include USPV customers whose property is not the subject of a judicial forfeiture proceeding. *See*, *e.g.*, *Torres*, 472 F. Supp. 3d at 743–44 (C.D. Cal. 2020) (narrowing proposed class definition based on "broad authority" under Rule 23 for district courts to "redefine classes as appropriate" (internal quotation marks and ellipses omitted)). Second, the Court could certify the class as currently proposed, but provide an opportunity to opt out of the class, which is permissible but not required for Rule 23(b)(2) class actions. William B. Rubenstein, 2 Newberg on Class Actions § 4:36 (5th ed.) ("[O]pt out rights are not required in (b)(2) class actions, but they are discretionary, may be permitted, and have been employed.").

The government's arguments to the contrary regurgitate the same mistakes it makes with respect to commonality. The government first suggests that different law enforcement officials may have conducted different types of searches at different times. Opp. at 15. But as described above, *supra* at 4–5, Plaintiffs allege that the entire enterprise of breaking open boxes and rummaging through their contents was inconsistent with the Fourth Amendment, not that agents occasionally crossed the line during an otherwise lawful search. *See, e.g.*, FAC ¶¶ 157–68. Second, the government emphasizes that it may have different undisclosed reasons for holding various class members' property, when what really matters is that those purported reasons are all *undisclosed*. Courts regularly certify Rule 23(b)(2) classes challenging the constitutionality of government notices and procedures even when the individual outcomes of those procedures might differ. *See supra at* 6 (citing cases); *see also* Memo. at 20 (same).

Finally, without really tying it to any class certification standard, the government tacks on an argument that the Proposed Class—challenging the legality of the search of the USPV boxes—should not be certified because some records the class seeks to have destroyed may be relevant to judicial forfeiture actions and because claimants in those actions can seek to suppress evidence obtained from the illegal search. Opp. at 16–18. This mirrors the government's arguments regarding adequacy and suffers the same shortcomings. *See supra* at 7–8. Additionally, this confirms the reasonableness of Plaintiffs' proposed remedy because there is little reason for the government to fear being forced to destroy illegally obtained records (and the fruits thereof) if it cannot use those records in the forfeiture proceedings anyways.[5] More importantly, there are hundreds of other class members who are

[5] And as noted above, if the Court is concerned about any related judicial forfeiture proceedings, the appropriate course is to trim the class definition to exclude those claimants or give them the option to opt out, while permitting the hundreds of remaining class members to seek relief. *See supra* at 8 n.4.

not party to judicial forfeiture cases and who almost certainly will not obtain relief for the violation of their constitutional rights except through this class action.

* * *

The government has had plenty of time and plenty of guidance from this Court about how to comply with its constitutional obligations. The government may wish that this case would just go away with the passage of time, but many pressing issues remain with respect to hundreds of putative class members, whose constitutional rights will only be vindicated, if at all, on a class-wide basis through this action. Plaintiffs therefore respectfully request that this Court certify the Proposed Class, No-Notice Subclass, and Forfeiture Subclass.

Dated: September 13, 2021

Respectfully Submitted,

/s/ Robert Frommer

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* *Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*