**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**LOCAL RULE 37-2 JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES AND ENTER PROTECTIVE ORDER**<br><br>(*Filed Concurrently with Plaintiffs' Notice of Motion to Compel; Declarations of Robert Frommer, Victor A. Rodgers, and Madison MacDonald; Proposed Protective Order; and Proposed Order*)<br><br>DISCOVERY MATTER<br><br>Date: March 30, 2022<br>Time: 10:00 A.M.<br>Courtroom: 790<br>Judge: Hon. Margo A. Rocconi<br>Discovery cutoff date: TBD<br>Pre-Trial Conference Date: TBD<br>Trial Date: July 26, 2022<br>Complaint Filed: May 27, 2021<br>Amended Complaint Filed: June 9, 2021 |

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...................................................................................... i

I.       INTRODUCTORY STATEMENTS .............................................. 1

     A.      Plaintiffs' Introductory Statement ..................................................... 1

     B.      Defendants' Introductory Statement .................................................. 4

II.     ISSUES IN DISPUTE ................................................................ 7

     A.      Entry Of Protective Order Governing The Exchange Of Confidential Information .......................................................................... 7

          1.      Plaintiffs' Proposed Language Regarding Sharing Confidential Information With Class Members .......................... 7

          2.      Defendants' Proposed Language Regarding Sharing Confidential Information With Class Members ...................... 8

          3.      Plaintiffs' Contentions ................................................ 8

                a.      Sharing Inventory Information With Class Members Is Important To This Case And Preserves Important Rights Of Absent Class Members ................................................ 8

                b.      It Is Unreasonable To Prohibit Class Members From Using Inventory Information Supplied By The Government About A Class Member's Box To Assert A Claim Against The Government .................................... 10

                c.      It Is Unreasonable To Require Plaintiffs' Counsel To Tell The Government When They Discuss Inventory Information With Class Members ................................ 12

          4.      Defendants' Contentions ........................................... 13

                a.      Plaintiffs' Arguments In The Title To Section II.A.3.a Of Plaintiffs' Contentions That Sharing Information With Class Members Is Important To This Case And Preserves Important Rights Of Absent Class Members Is Incorrect And In Any Event Is Not Relevant To The Subject Matter Of The Parties' Discovery Dispute, Which Pertains Solely To The Terms Of The Protective Order Governing Discovery For This Case. .................................... 13

                b.      Plaintiffs' Argument That It Is Unreasonable For The Protective Order To Prohibit Class Members From Using Inventories, Designated As Confidential Information Under the Government's Requested Protective Order (Which Is Modeled After the Court's Website Order), To File Claims Against The Government Ignores That Such

## TABLE OF CONTENTS

Page

A Prohibition Is Specifically Provided In The Court's Standard Website Protective Order .............................. 17

   (I)    The Provision Requiring Use Of CONFIDENTIAL Information Solely For Purposes Of The Litigation Is Standard As Is The Provision Permitting A Party Receiving Such Information To Request That The CONFIDENTIAL Designation Be Withdrawn. . 18

   (II)   The Need To Prosecute Future Lawsuits For Monetary Relief For Allegedly Missing Or Lost Property Does Not Warrant Modification Of The Court's Standard Protective Order ..................... 20

   (III)   The USPV Boxes Contain Personal Identifying Information And Other Information Belonging To Third Party's Having No Ownership Interest In The Box. ................................................................ 23

   (IV)   The Privacy Act Bars Requires That The Government Obtain A Protective Order Before Releasing Privacy Act Information And Plaintiffs' Cited Case Does Not Support Deviating From The Standard Protective Order In This Case Based On The Possibility Of Future Lawsuits ..................... 25

   c.   Plaintiffs Incorrectly Assert That It Is Unreasonable To Require Them To Provide The Government With Non-Party Class Members' Executed Exhibit A Acknowledgement's Before Providing CONFIDENTIAL Information To Non-Party Class Members .................. 28

B.   Plaintiffs Seek An Order Requiring Defendants To Respond To Plaintiffs' Pending Discovery Requests Within Three Days Of Entry Of The Protective Order. ................................................................ 30

   1.   Plaintiffs' Contentions ............................................ 30

     a.   The Government Has Delayed Responding To Discovery ................................................................ 30

     b.   The Court Should End The Government's Unjustified Delays By Ordering Responses To The Remaining Discovery Within Three Days After Entry Of The Protective Order ................................................ 34

   2.   Defendants' Contentions - - Plaintiffs' Request For An Order Requiring The Government To Respond To Plaintiffs' Unspecified Discovery Requests Within Three Days Of Entry Of A Protective Order Should Be Denied .............................. 35

ii

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37-2 of the Local Rules of this Court, Plaintiffs and representatives of the certified class Paul Snitko, Jennifer Snitko, Tyler Gothier, Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May (collectively "Plaintiffs") and Defendants the United States of America, Tracy L. Wilkison (in her official capacity as Acting United States Attorney for the Central District of California), and Kristi Koons Johnson (in her official capacity as an Assistant Director of the Federal Bureau of Investigation) (collectively "Defendants" or the "government"), respectfully submit the following Joint Stipulation regarding Plaintiffs' Motion to Compel Discovery Responses and Enter Protective Order. The parties have attempted unsuccessfully to resolve their disputes and therefore respectfully seek the assistance of the Court.

## I.     INTRODUCTORY STATEMENTS

### A.  Plaintiffs' Introductory Statement

On March 22, 2021, the government indiscriminately searched and seized the contents of hundreds of safe deposit boxes based on its belief that the company offering the boxes—U.S. Private Vaults, Inc. of Beverly Hills, or USPV—had engaged in wrongdoing. The government had a warrant that specifically stated that it "does not authorize a criminal search or seizure of the contents of the safety deposit boxes." Declaration of Robert Frommer ("Frommer Decl.") Ex. H at 65.[1] This was consistent with the government's warrant application, which promised that Defendants' search of the safe deposit boxes would "extend no further than necessary to determine ownership." Frommer Decl. Ex. I at 68 n.40. Yet despite these restrictions, the government conducted what can only be described as a criminal investigatory search. Instead of protecting the government from claims of theft or loss, Defendants' breaking open of otherwise secure boxes at USPV's facility exposed the government to such claims. And despite Defendants'

---

[1] The Frommer Declaration is being filed at the same time as Plaintiffs' motion and the parties' Joint Stipulation.

assurances, the government's search continued well after it identified box holders. Fromstein Decl. Ex. J ¶¶ 6–15. It opened sealed envelopes. *Id.* It made copies of personal documents stored in boxes. *Id.* And it subjected all the currency it found to a sniff by a drug dog. Zellhart Decl., D.E. 51-1, at ¶ 2.

This civil-rights lawsuit seeks to vindicate the Fourth Amendment rights of Plaintiffs and members of the certified class who were the victims of the government's unconstitutional search.[2] Plaintiffs seek a declaration that the government's search of Plaintiffs' boxes violated the Fourth Amendment, along with an order requiring Defendants to sequester the evidence they obtained during the unlawful search of Plaintiffs' boxes (except as necessary for the limited purpose of facilitating any claims by class members for lost property) and to otherwise return or destroy the ill-gotten evidence. *See* MTD Order at 5–6. The Court rejected the government's motion to dismiss this claim, *id.*, and certified the following class:

> All renters of U.S. Private Vaults safe deposit boxes who (a) had
> property within their safe-deposit box seized by the federal government
> on or around March 22, 2021; (b) have identified themselves to the FBI
> since the seizure; and [c] have had their property returned to them.

Order Re: Pls.' Mot. for Class Cert., D.E. 78 at 5 (Oct. 12, 2021).

On November 8, 2021, the Court held a scheduling conference. The Court did not enter any specific discovery deadlines, but set the case for trial on July 26, 2022, with the opening trial briefs due on June 21, 2022. Minutes of Scheduling Conference, Fromstein Decl. Ex. A.[3] As a practical matter, then, the parties need to complete discovery by approximately mid-May 2022 to have adequate time to

---

[2] Plaintiffs also asserted additional claims under the Fourth and Fifth Amendments, but after obtaining preliminary relief, those claims were dismissed as moot as the government gradually returned Plaintiffs' property. *See* Order Re: Mot. to Dismiss First Am. Compl. ("MTD Order"), D.E. 75 at 6–8 (Sept. 9, 2021).

[3] Local Rule 37-2.1 requires the parties to include an "order establishing the initial case schedule." Other than the cited Minutes of Scheduling Conference, no other order has established a case schedule.

prepare their opening briefs. That is just over two months from the date of this filing, and only six to seven weeks from the scheduled hearing date.

On November 5, Plaintiffs served their substantive interrogatories and requests for production.[4] Frommer Decl. ¶ 2. Yet over four months later, the government has provided essentially nothing in response, other than the warrant application and warrant (which had already been unsealed in another action). *Id.* ¶¶ 10–11. The deadline to complete discovery is fast approaching, yet Defendants' delay means that discovery itself has barely begun. Plaintiffs cannot prepare for or conduct substantive depositions given that Defendants refuse to disclose who supervised and participated in the search, what guidance they employed in so searching, or even the identities of Plaintiffs' own class members.[5]

As discussed below in Section II.A, the government refuses to respond to Plaintiffs' discovery because it insists that everything—even information relating to government policies and personnel—constitutes confidential information that cannot be disclosed until a protective order is entered. But no protective order can be entered because the government insists on hobbling Plaintiffs' ability to share inventory records with class members relating to that specific class member's box. The government's proposed restrictions are unreasonable, and the Court should enter Plaintiffs' Proposed Protective Order, attached as Exhibit A to this filing.

As discussed below in Section II.B, Defendants' actions have unnecessarily delayed discovery at every turn. Among other things, the government could have raised its desire for a protective order last November or December. But despite Plaintiffs' counsel's repeated statements about expeditiously completing discovery,

---

[4] Plaintiffs previously served limited discovery relating to class certification.
[5] Despite Defendants' failure to provide information relevant to identifying deponents and documents relevant to preparing for the substance of the depositions, Plaintiffs are researching publicly available information that would allow them to begin taking some limited depositions notwithstanding Defendants' refusal to cooperate in discovery.

1   the government waited until the last possible moment to raise the issue. And even

2   once a protective order is finally entered with just six to seven weeks remaining to

3   conduct discovery, the government has suggested that it will still require several

4   weeks to produce documents. This further delay would only further prejudice

5   Plaintiffs' ability to conduct discovery and develop a record in support of their and

6   the certified class's claim. The government has had plenty of time—four months as

7   of this filing, and nearly five months by the time of the hearing—to prepare its

8   response to Plaintiffs' pending discovery requests. Plaintiffs therefore request that

9   the Court order Defendants to promptly respond to all pending discovery within 3

10   days after the protective order is entered.

11   **B.  Defendants' Introductory Statement**

12        This is a class action lawsuit against the government, in which seven named

13   plaintiffs and representatives of the single certified class filed a six count first

14   amended complaint.  As a result of the government's motion to dismiss plaintiffs'

15   class action first amended complaint, five of plaintiffs' six class claims were

16   dismissed.  Plaintiffs' sole surviving claim, which is Count I and is asserted by the

17   plaintiff parties to this case, namely the seven named plaintiffs and class

18   representatives, does not seek monetary relief but instead requests a declaration that

19   the government violated the Fourth Amendment when it inventoried the contents of

20   the boxes at US Private Vaults ("USPV") of boxholders whose property has been

21   returned because the inventorying was allegedly a criminal investigatory search.

22        As part of their sole remaining class claim, plaintiffs seek an order requiring

23   the government to destroy the records the government created during the

24   inventorying of the class member boxholders whose property the government has

25   returned.  In support of their arguments, plaintiffs cite bits and pieces of sentences

26   from the search and seizure warrant and the affidavit in support thereof, but the full

27   language of those documents, which the government discusses below, show clearly

28   that plaintiffs' arguments are flatly refuted by the evidence they have themselves

4

1    submitted.  And finally, while plaintiffs characterize this action as a civil rights

2    class action, this lawsuit is no more a civil rights action then any action where a

3    party contends their Fourth Amendment rights have been violated as a result of a

4    search or seeks to suppress evidence in a criminal case based upon a Fourth

5    Amendment violation.

6           The dispute which is the subject of plaintiffs' discovery motion stems from

7    plaintiffs' request for a substantial deviation from the terms of the standard

8    protective order on the Court's website.  Plaintiffs advised, in this case that has

9    garnered significant media coverage unwanted by many non-party class members,

10   that they want to share CONFIDENTIAL information (namely videos and written

11   documents regarding the inventorying of box contents for boxes that contain

12   personal identifying information of non-owners of USPV boxes),[6] not only with the

13   seven named plaintiff and party class representatives (who are supposed to

14   represent the class), but also with the hundreds of non-party class members.

15   Standing alone, plaintiffs' request would be inappropriate.

16          But plaintiffs' request does not stand alone.  The government advised

17   plaintiffs they could share the CONFIDENTIAL information with non-party class

18   members, but only pursuant to the terms of a protective order which, like the

19   Court's standard protective order on the Court's website, provided that any non-

20   party class members who received CONFIDENTIAL information, like anyone else

21   mentioned in the standard Court protective order, could use that information "only

22   for purposes of prosecuting, defending or attempting to settle this action."

23   However, plaintiffs rejected the government's stipulated protective order that

24   mirrored the Court's standard website protective order.  Further, the government

25   proposed protective order provides, like the Court's standard website order, that a

26

27          [6] The government's production of this information, absent a protective order
     would violate the Privacy Act, thus subjecting the government to civil and criminal
     penalties, and the privacy rights of third persons who are not parties to this case or
28   owners of any USPV box.

PARTIES' LOCAL RULE 37-2 JOINT STIPULATION

1   recipient of CONFIDENTIAL information could seek, either via negotiation or by

2   petitioning the Court, an order that the CONFIDENTIAL information designation

3   be removed.   However, the government's proposal was nevertheless rejected.

4        In this action that does not seek monetary relief, plaintiffs' request that the

5   Court should now decide, in the protective order for this case, that recipients of

6   CONFIDENTIAL information should be entitled to use that information in future

7   lawsuits (none of which have been filed) is entirely inappropriate.  Indeed,

8   plaintiffs' motivation appears to be based not on any legitimate effort to prosecute

9   this case, but instead based on a related, but dismissed case, in which a boxholder

10  sought monetary damages for property the boxholder claimed the government lost

11  during the inventorying process.  However, the request for the inventory, as the

12  government has advised, can be made by any boxholder who seeks monetary relief

13  for allegedly lost or missing property as part of a future administrative tort claim or

14  judicial tort claim against the government.  The government cannot say in advance

15  (as plaintiffs demanded it should), without knowing anything about any future

16  claim, whether production of a inventory containing third party information will be

17  produced and under what type of protection.

18       Finally, plaintiffs appear to attempt to improperly expand their motion to

19  specific interrogatory and document requests.  However, plaintiffs have not

20  bothered to comply with Local Rule 37 as to those requests in that they have failed

21  to specify each interrogatory and document request they claim to be at issue, nor do

22  they bother to set forth their or the government's contentions as to each specific

23  request.  Accordingly, to the extent plaintiffs seek anything other than an order

24  regarding the terms of the protective order to be entered in this case, plaintiffs'

25  motion should be denied.

26

27

28

## II.   ISSUES IN DISPUTE

### A.   Entry Of Protective Order Governing The Exchange Of Confidential Information

The parties' dispute concerns Defendants' desire to keep Plaintiffs from sharing inventories of class members' USPV boxes with those specific class members so that they may press claims for the loss or theft of their property. Plaintiffs' Proposed Protective Order is Exhibit A to this filing, Defendants' Proposed Protective Order is Exhibit B, and a redline between the two is Exhibit C. The language of the provision where the parties disagree follows.

### 1.   Plaintiffs' Proposed Language Regarding Sharing Confidential Information With Class Members

7.1   <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending or attempting to settle this Action. * * *

7.2   <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to: * * *

(j) a class member to this Action who has signed Exhibit A[7], provided that the disclosure of such CONFIDENTIAL Information or Items shall be limited to records reflecting the inventorying of the contents of that specific class member's safe deposit box at US Private Vaults, and further provided that any such class member shall not be prohibited from disclosing to the federal government any CONFIDENTIAL Information received from

---

[7] According to the agreed-upon language of the Protective Order, Exhibit A refers to the "Acknowledgment and Agreement to Be Bound" that is attached to the Protective Order.

Defendants or from using the information to file claims with or otherwise exercise the class member's rights to seek relief from the federal government.

**2. Defendants' Proposed Language Regarding Sharing Confidential Information With Class Members**

7.1    <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending or attempting to settle this Action. * * *

7.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to: * * *

(j) a class member to this Action to whom disclosure is reasonably necessary for this Action and who has signed Exhibit A and for whom the signed Exhibit A has been provided to Counsel for the Producing Party prior to the disclosure, provided that the disclosure of such CONFIDENTIAL Information or Items shall be limited to records reflecting the inventorying of the contents of that specific class member's safe deposit box at US Private Vaults.

**3. Plaintiffs' Contentions**

**a. Sharing Inventory Information With Class Members Is Important To This Case And Preserves Important Rights Of Absent Class Members**

This case centers on the constitutionality of the government's indiscriminate search of the large number of safe deposit boxes rented by Plaintiffs and class members. The government contends that it conducted an inventory search of the hundreds of safe deposit boxes it seized because it needed to "protect their agencies from claims of theft or damage." Frommer Decl. Ex. I at 67. But that explanation

has never made sense, since breaking into *locked* boxes makes them *less* secure and exposes the government to claims of theft of damage. And it is contrary to the government's own statement that it was "examin[ing] the specific facts of each box" to "distinguish between honest and criminal customers." Gov't Opp. to Ex Parte Appl. For Temp. Restraining Order at 10, *Doe v. United States*, No. 2:21-cv-02803, Doc. No. 15 at 11 (Apr. 2, 2021).

It is no surprise then that Defendants' criminal investigatory search, which it conducted under the guise of an inventory search, yielded—at best—highly incomplete inventories of the boxes. Some valuable property, for example, was only catalogued in vague terms such as "Misc. coins." See Frommer Decl. Ex. K ¶ 8; Ex. L at 108. And even now the government tellingly denies having possession of "an inventory reflecting the contents of all safe deposit boxes held at" USPV at the time of the seizure. Frommer Decl. Ex. M at 111 (government response to Request for Admission No. 1). A central topic of discovery therefore will be the nature of the government's search of the boxes: how the search was conducted; what inventory records, if any, were created; and whether those records are legitimate inventories or instead perfunctory notes created in the rush of the government's investigatory search.

In connection with this discovery, Plaintiffs' counsel may seek to share information about the purported inventories with class members for at least two reasons. First, Plaintiffs' counsel needs the discretion to share inventory records from a specific class member's safe deposit box with that class member as part of Plaintiffs' factual investigation. The class member, for example, may be able to help Plaintiffs' counsel understand whether the government's inventory was full and complete. *Cf. Theidon v. Harvard Univ.*, 314 F.R.D. 333, 336 (D. Mass. 2016) (restrictions on disclosure, such as attorneys'-eyes-only designations, should be limited "because it hinders the plaintiff's ability to aid counsel in the review of the evidence and to determine her litigation strategy in light of it").

Second, and more importantly, the few inventories that have been made public have led to credible assertions that property seized by the government has been lost, misplaced, or stolen. For example, a "semi-retired octogenarian" received most of her property back but reported that an estimated $75,000 in gold coins were missing. Frommer Decl. Ex. K ¶¶ 2, 8–9. Plaintiffs Jeni Verdon-Pearsons and Michael Storc have likewise reported to Plaintiffs' counsel that the return of their property failed to include approximately $2,000 they had kept in their box. Frommer Decl. ¶ 15.

Plaintiffs' counsel knows about other class members in similar positions. *Id.* And it is likely that, as the government's inventory records are examined more thoroughly, Plaintiffs and class members will discover additional instances in which property seized by the government has been lost, misplaced, or stolen. When that happens, class members would be severely prejudiced if they cannot use that information to file a claim with the government to seek relief for their missing property.

**b. It Is Unreasonable To Prohibit Class Members From Using Inventory Information Supplied By The Government About A Class Member's Box To Assert A Claim Against The Government**

When discussing the scope of the protective order, Plaintiffs' counsel explained that they "cannot agree to language preventing class members from using those records when making any claim against the government regarding property they allege has gone missing." Frommer Decl. Ex. G at 51. Defendants responded that it was inappropriate to allow a class member to use inventory records produced in discovery here to submit a claim against the government. Instead, the government urged that such class members could instead "mak[e] a claim against the government, should they choose to do so, and seek whatever information, such as the inventory, they deem appropriate as part of that claim process." *Id.* at 50. Plaintiffs' counsel asked Defendants to verify that they would produce inventory

1    records to class members during that claim process, but the government refused. It

2    said that even if such class members did file a claim, the government still might not

3    provide those class members with inventory records for their own boxes, suspecting

4    that "in some cases it would and in others it would not." *Id.* at 49.

5          There is no basis to prohibit a class member for taking information about

6    *their own box* that was provided *by the government* and sharing that information

7    *with the government*. First, Plaintiffs' counsel would only share information with a

8    class member relating to that class member's *own box*. The class member would

9    already know the contents of their box, so nothing personally sensitive or

10   confidential would be revealed. The only new information would be about the

11   *government's* conduct: how the government searched the box and how it recorded

12   what it took. Similarly, because the government itself created and disclosed the

13   inventory records, there can be no harm in a class member using that information to

14   assert a claim against the government or to otherwise exercise his or her rights to

15   seek relief from the government. The only reason to block class members from

16   using information about their own boxes is to shield the government from

17   accountability. That is not an appropriate basis for a protective order. *See, e.g.*,

18   *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 485 (3d Cir. 1995) ("courts should not

19   provide a shield to potential claims by entering broad protective orders that prevent

20   public disclosure of relevant information"); *Marisol A. v. Giuliani*, No. 95-cv-

21   10533, 1997 WL 630183, at *5 (S.D.N.Y. Oct. 10, 1997) (protective orders are not

22   appropriate means to shield government from bad publicity).

23         Second, prohibiting class members from using information about their own

24   boxes to assert claims against the government defies Ninth Circuit guidance that

25   "strongly favors access to discovery materials to meet the needs of parties engaged

26   in collateral litigation." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122,

27   1131 (9th Cir. 2003). Defendants' position would leave class members vulnerable to

28   learning that they have a potential claim, but with no way to assert that claim. And

1    even if they could somehow file a claim without using the government's inventory
2    information, they risk being unable to prove that claim, since the government
3    expects that "in some cases . . . it would not" disclose a box holder's inventory
4    information to the box holder in response to a claim. Frommer Decl. Ex. G at 49.
5    The Court should reject the government's request to protect itself against valid
6    claims of loss or theft by frustrating class members' ability to assert collateral
7    claims. *Foltz*, 331 F.3d at 1131; *Glenmede Tr. Co.*, 56 F.3d at 485.

8                 **c.    It Is Unreasonable To Require Plaintiffs' Counsel To Tell The**
9                 **Government When They Discuss Inventory Information With**
10                **Class Members**

11          Plaintiffs do not object to requiring class members to sign the Protective
12   Order's Exhibit A and to agree to be bound by the Protective Order. But it is not
13   reasonable to require Plaintiffs' counsel to provide signed copies of Exhibit A to the
14   government before disclosing inventory information about a class member's own
15   box with that class member. This essentially asks Plaintiffs' counsel to tell the
16   government which boxes they are targeting for further factual development,
17   revealing details about Plaintiffs' case development and trial preparation strategy.
18   Forcing Plaintiffs' counsel to divulge these details violates basic tenets of the
19   adversarial process. *See, e.g.*, Fed. R. Civ. P. 26(b)(3)(B) (courts "must protect
20   against disclosure of the mental impressions, conclusions, opinions, or legal
21   theories of a party's attorney or other representative concerning the litigation"). It
22   also risks exposing class members—who have already suffered the search and
23   prolonged seizure of their property—from additional unwanted attention after the
24   government has already labelled "the majority" of them to be "criminals." Gov't
25   Opp. to Ex Parte Appl. For Temp. Restraining Order at 10, *Doe v. United States*,
26   No. 2:21-cv-02803, Doc. No. 15 at 11 (Apr. 2, 2021).

27          The government's argument that it needs copies of Exhibit A to "police"
28   potential violations of the protective order (Frommer Decl. Ex. G at 50), only

1  repeats the government's history of unjustifiably assuming class members'

2  lawlessness. The government is happy to permit others, including experts, trial

3  consultants, mock jurors, and other vendors to access confidential information after

4  signing Exhibit A, with no similar requirement to provide a copy of Exhibit A to the

5  government. This difference is telling, especially because these other individuals

6  would have access to a broad range of Confidential Information, while a class

7  member would have access only to a narrow range of information about the

8  inventory of their own box. There is no justification for selectively requiring

9  disclosure to the government about class members (who are only viewing

10  information about their own box) and no one else.

11  **4. Defendants' Contentions**

12  **a. Plaintiffs' Arguments In The Title To Section II.A.3.a Of**

13  **Plaintiffs' Contentions That Sharing Information With Class**

14  **Members Is Important To This Case And Preserves Important**

15  **Rights Of Absent Class Members Is Incorrect And In Any Event**

16  **Is Not Relevant To The Subject Matter Of The Parties' Discovery**

17  **Dispute, Which Pertains Solely To The Terms Of The Protective**

18  **Order Governing Discovery For This Case.**

19  In the title to plaintiffs' contentions Section II.A.3.a., plaintiffs argue that

20  "sharing inventory information with class members is important to this case," yet

21  plaintiffs offer virtually nothing to show this is so, and that "sharing inventory

22  information . . . preserves important rights of absent class members," yet plaintiffs

23  do not bother to explain why preservation of these rights has anything to do with

24  the legitimate prosecution of the instant case.

25  Plaintiffs begin by inaccurately suggesting that the government's search and

26  seizure warrant affidavit relative to USPV provides that the government conducted

27  the inventory of safe deposit boxes at USPV solely because the government needed

28  to "protect their agencies from claims of theft or damage." <u>See</u> Plaintiffs Joint

1    Statement Section II.A.3.a. (citing Frommer Decl. Ex. I at 67).  However, the

2    affidavit on its face plainly provides this is not so and explicitly states that there

3    were multiple reasons for government's inventorying of the safe deposit boxes

4    during the execution of the search and seizure warrants at USPV.  The affidavit

5    provides as follows:

6              Agents will follow their written inventory policies to protect their

7              agencies from claims of theft or damage to the contents of the boxes,

8              and to ensure that no hazardous items are unknowingly stored in a

9              dangerous manner.  Agents will attempt to notify the lawful owners of

10             the property stored in the boxes how to claim their property, such as by

11             posting that information on the internet or at USPV itself, or by

12             contacting the owners directly.  In order to contact the owners directly,

13             agents will, in accordance with their policies regarding an unknown

14             person's property, look for contact information or something which

15             identifies the owner.

16   Frommer Decl. Ex. I at 67-68 (emphasis added and footnote omitted).  Accord,

17   Frommer Decl. Ex. H (attachment to seizure warrant) at 65 ("agents shall follow

18   their written inventory policies to protect their agencies and the contents of the

19   boxes.  Also in accordance with their written policies, agents shall inspect the

20   contents of the boxes in an effort to identify their owners in order to notify them so

21   that they can claim their property") (emphasis added).

22            Before conducting the search, agents considered the possibility that USPV

23   boxes could contain dangerous or hazardous materials such as fentanyl (which they

24   found), loaded weapons (which they found), other drugs (which they found) and

25   explosives (which they did not find).  MacDonald Decl. ¶ 3.  Accordingly,

26   plaintiffs' suggestion that the government contends that the sole reason for the

27   inventory was to protect the agencies from theft or damage to the box contents is

28

1   simply not true and belied by the evidence plaintiffs themselves submit (Frommer
2   Decl. Ex. I) to support their arguments.

3       Starting from the flawed premise that protection of the agents from theft
4   claims was the sole reason for inventorying, plaintiffs next state Plaintiffs' counsel
5   needs the discretion to share inventory records with non-named party class
6   members for two reasons: to help with plaintiffs' factual investigation by
7   ascertaining first, whether the government's inventory was full and complete
8   (because plaintiffs state in Section II.A.3.a. that the government's inventory records
9   are possibly merely "perfunctory notes created in the rush of the government's
10  investigatory search") and second, which plaintiffs say is "more importantly," the
11  few inventories made public have led to credible assertions that the government
12  lost, misplaced or stole property from class members' boxes. Neither argument has
13  anything to do with the matter in dispute relative to this motion, namely the terms
14  of the protective order to be entered in this case.[8] Nevertheless, the government
15  addresses below the arguments plaintiffs raise in plaintiffs' contention Section
16  II.A.3.a.

17      Plaintiffs' first argument does not advance their contention that they need to
18  share inventories with class members to determine whether the inventory is "full
19  and complete." Nowhere do plaintiffs explain how a review of an inventory will
20  show whether the government's inventory of a particular box was accurate. If an
21  item was not returned to a class member, that class member already knows it. In
22  addition to actually having the physical items returned to them, each class member

23

24      [8] Indeed, Section IIA of the Joint Statement, titled "Issues in Dispute - - Entry
    Of Protective Order Governing the Exchange Of Confidential Information," sets
25  forth the parties respective provisions for the joint statement and notes "[t]he
    parties' dispute concerns Defendants' desire to keep Plaintiffs from sharing
26  inventories of class members' USPV boxes with those specific class member so
    that they (i.e., the class members) can press claims for the loss or theft of their
27  property."

28

has a receipt from the FBI detailing the items that the FBI returned and (as explained below) therefore already knows whether the government's inventory was full and complete.

Plaintiffs own evidence shows this is so. Members of the class include only those USPV boxholders whose property has been returned to them.[9] Plaintiffs offer the declaration of an attorney submitted in another case,[10] which notes that Exhibit B thereto was the receipt for the FBI's return of property given to the attorney when the attorney retrieved boxholder Dr. R's property from the FBI, and the attorney declares that "the agents also stated [to the attorney] that the description of the property on the property receipt was copied from the property inventory per FBI policy." Frommer Decl. Ex. K at 103-104 (attorney declaration ¶¶ 8 and 10) and Ex. L at 107-108 (Ex. B to attorney declaration). Because class members whose property has been returned were given an FBI property receipt (MacDonald Decl. ¶ 2) which plaintiffs assert mirrors the inventory, those class members already know whether the inventory was full and complete. Moreover, as plaintiffs own papers advise in Section II.A.3.b. of plaintiffs' contentions) "class member[s] already know the contents of their boxes," so plaintiffs' counsel's contention that the inventories need be shared with non-party class members to determine whether the inventories are complete falls flat.

This is plaintiffs only argument that has any bearing on plaintiffs claim that sharing information is somehow important to this case, as they argue in the heading

---

[9] See Docket No. 78 (Court's Order Re: Plaintiffs' Motion for Class Certification) at page 5 (noting that the modified proposed and certified class consists of "All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; and (3) (sic) have had their property returned to them." (emphasis added).

[10] That case is In re Search and Seizure of Box No. 8309 at U.S. Private Vaults v. United States of America, Case No. 2:21-cv-03554-RGK-MAR.

in Section  II.A.3.a. of Plaintiffs' Contentions.[11]  Plaintiffs second argument, namely that class members will be prejudiced if they must under the protective order use the items the government produces solely for purposes of this case, has to do with the argument plaintiffs raise in Plaintiffs' Contentions section II.A.3.b. and will therefore be addressed below.

> **b.   Plaintiffs' Argument That It Is Unreasonable For The Protective Order To Prohibit Class Members From Using Inventories, Designated As Confidential Information Under the Government's Requested Protective Order (Which Is Modeled After the Court's Website Order), To File Claims Against The Government Ignores That Such A Prohibition Is Specifically Provided In The Court's Standard Website Protective Order.**

The discovery dispute plaintiffs raise pertains to a single matter - - the language of the protective order to be entered in this case.  Plaintiffs argue, contrary to the terms of the Court's standard protective order and the government's proposed protective order provided to plaintiffs, that class members, who receive written and videotapes of the government's inventorying of USPV safe deposit boxes, should be able to ignore the requirement that CONFIDENTIAL information be used solely for purposes of the action.  None of plaintiffs' arguments advance their position in this case.

> **(I)   The Provision Requiring Use Of CONFIDENTIAL Information Solely For Purposes Of The Litigation Is**

---

[11] Plaintiffs make one additional argument, again having nothing to do with the protective order's terms, but nevertheless mischaracterizes the facts. While plaintiffs note that the government denied on August 20, 2021 a request for admission that the government has possession of "an" inventory containing the contents of "all" safe deposit boxes at USPV, the fact is that the government does not have a single inventory of contents of all the boxes, so the request for admission was properly denied, and the government does not have an "inventory" but instead prepared documents as a result of inventorying the contents of individual USPV safe deposit boxes.

**Standard As Is The Provision Permitting A Party**

**Receiving Such Information To Request That The**

**CONFIDENTIAL Designation Be Withdrawn.**

The government provided plaintiffs with a stipulated protective order modeled after the Court's standard protective order on the Court website. Copies of the proposed stipulated protective order provided to plaintiffs by the government and the Court's website standard protective order are attached as Exhibits A and B to the Rodgers Declaration. Both protective orders require that <u>anyone</u>, whether a Party to the Action or a Non-Party to the Action,[12] receiving Protected Material, which is defined to include "any Disclosure or Discovery Material that is designated as 'CONFIDENTIAL' " (<u>see</u> Rodgers Decl. Ex. A, gvt. protective order at ¶ 2.12 and Ex. B, Court protective order at ¶ 2.14) can use the information they receive "only for purposes of prosecuting, defending or attempting to settle this action." Rodgers Decl. Ex. A and B at ¶ 7.1.[13] In addition, while the Court's standard protective order authorizes the providing of CONFIDENTIAL information in certain limited circumstances to third parties, such as <u>mutually</u> acceptable Court mediators and jurors and during the deposition of a deponent, the third party recipients of the CONFIDENTIAL information are required to sign Exhibit A to the

---

[12] The seven named class representative plaintiffs are a Party to the action while anyone else (like the class members who are not plaintiffs) is a Non-Party to the action. Rodgers Decl. Ex. A (gvt's stipulated protective order at ¶¶ 2.8 and 2.9) and Ex. B (Court's stipulated protective order at ¶¶ 2.9 and 2.11).

[13] Paragraph 7.1 refers to the "Receiving Party's", which is defined in paragraph 2.14 (Ex. A) and paragraph 2.15 (Ex. B) as a "<u>Party</u> that receives a Disclosure or Discovery Material from a Producing Party[,] [<u>i.e.</u>, CONFIDENTIAL information" which means the seven named class representative plaintiffs are each a Receiving Party. Non-party class members are also bound by this provision, pursuant to the requirement that the execute Exhibit A to the protective order, discussed below, that requires them to "comply with and be bound by all the terms of [the] Stipulated Protective Order."

PARTIES' LOCAL RULE 37-2 JOINT STIPULATION

1  standard protective order, which is an Acknowledgement and Agreement to be

2  Bound.  Rodgers Decl. Exs. A and B ¶ 7.2.

3       The Exhibit A Acknowledgement specifically provides that the

4  CONFIDENTIAL information recipient/signer has read the stipulated protective

5  order in its entirety, agrees to be bound by the protective order's provisions (which

6  includes that CONFIDENTIAL information can be used solely for purposes of

7  prosecuting, defending or attempting to settle the Action), acknowledges that the

8  failure to comply with the protective order could impose the recipient/signer to

9  sanctions and punishment and contempt, and requires the recipient/signer to appoint

10  a person as the recipient/signer's California agent for service of process pertaining

11  to any proceedings related to the enforcement of the stipulated protective order

12  (because absent that appointment of an agent upon which to serve the contempt

13  papers, the party disclosing the CONFIDENTIAL information has no means to

14  enforce violations of the stipulated protective order).   Accordingly, the clear terms

15  of the Court's standard and the government's proposed stipulated protective order

16  makes clear that recipients of CONFIDENTIAL information can use that

17  information solely for purposes of the instant litigation.

18       Furthermore, plaintiffs completely ignore the fact that, should any class

19  member to whom CONFIDENTIAL information is given dispute whether the

20  information is, in fact, confidential, the Court's standard and the government's

21  stipulated protective order specifically authorizes the recipient to seek relief from

22  the CONFIDENTIAL designation.  The Court's standard (and the government's)

23  stipulated protective order allows "Any Party"  or "Non-Party" to challenge a

24  designation of confidentiality and places "the burden of persuasion in any such

25  challenge proceeding . . on the Designating Party."  Rodgers Decl. Exs. A and B

26  ¶¶ 6.1, 6.2 and 6.3.  In light of the fact that the Court's standard and the

27  government's protective order precludes use of CONFIDENTIAL information for

28  purposes other than the instant proceeding and the ability of a party to seek relief

from a CONFIDENTIAL designation, plaintiffs' request that class members who receive CONFIDENTIAL information be relieved of these restrictions evinces an entirely improper purpose that plaintiffs seek the production of this information - - namely, to assist persons to file future claims against the government.

> **(II)    The Need To Prosecute Future Lawsuits For Monetary Relief For Allegedly Missing Or Lost Property Does Not Warrant Modification Of The Court's Standard Protective Order.**

While plaintiffs first amended complaint alleged six class claims, the only class claim which survived the government's motion to dismiss is Count I.  Docket No. 33 (FAC ¶¶ 152-171) and Docket No. 75 (Court order granting government's motion to dismiss in part, and dismissing plaintiffs' second, third, fourth, fifth and sixth class claims).  In Count I, plaintiffs allege that the government violated class members' Fourth Amendment rights (FAC ¶ 166), seek a declaration that seizure of class members boxes violated the Fourth Amendment (FAC ¶ 168) and seek an order that "all records Defendants created during their criminal search of USPV customers' security deposit boxes, other than those records necessary for reuniting property owners with their property, be destroyed and/or returned to their owners" (FAC ¶ 170).  This is not a class action for monetary damages for property that boxholders allege was lost, missing or stolen, but instead a lawsuit for declaratory relief and destruction of records.

Plaintiffs' expressed intent to use the inventories for purposes of <u>future</u> claims or litigation for monetary damages for lost property (which standing alone is inappropriate) appears to stem not from any genuine effort to prosecute the instant class action lawsuit, but instead to aid in a lawsuit another boxholder filed against the government, and then dismissed after consulting with plaintiffs' counsel.  <u>See</u> <u>Mellein et al. v. United States of America, et al.</u>, Case No. 2:21-cv-06588-RGK-MAR.  In the dismissed lawsuit, the husband and wife plaintiff-boxholders claimed

the government lost coins stored in their USPV box and, on December 20, 2021,

filed a motion for a preliminary injunction (instead of serving a document request)

for an order requiring the government to produce any inventory of their box, and

noted in the moving papers their December 9, 2021 consultation with plaintiffs'

counsel in the instant class action case.  Rodgers Decl. Ex. C (docket no. 35

[preliminary injunction motion] at footnote 2 on page 4 of 6) and Ex. D  (docket no.

35-1 [plaintiffs' attorney in Mellein declaration] in ¶ 7 at page 2 of 2).

On January 27, 2022, the government provided plaintiffs' class counsel with

the government's proposed protective order (Frommer Decl. Ex. G, at 54-55) then,

without waiting for a ruling by the Court on their motion for a preliminary

injunction or the government's motion to dismiss plaintiff Mellein's first amended

complaint (which also sought production of the inventory),[14] plaintiff Mellein filed

a notice of dismissal of the action on February 4, 2022.  Rodgers Decl. Ex. E

(docket no. 54 [notice of dismissal]).  Accordingly, and consistent with the cases

plaintiffs themselves cite (as discussed below), if a claim or lawsuit is filed against

the government for missing property, the plaintiff in that future lawsuit (and not, as

plaintiffs seem to be arguing here to warrant a modification of a standard protective

order in the present case by predicting the course of unknown future events) can

seek to include themselves within the purview of the instant protective order and

seek relief from its terms if appropriate.

Plaintiffs make much of the fact that the government would not agree, in advance of any class member actually asserting a claim or filing a lawsuit for monetary damages for missing, lost or stolen property, that the government would

---

[14] Plaintiff Mellein's initial complaint contained a claim for relief under the Federal Torts Claims Act for monetary damages against the government for coins they asserted the government lost during the inventory of their USPV safe deposit box.  Docket No. 1 in case, Second Cause of Action at page 27.  After the government moved to dismiss the complaint, plaintiff filed no opposition but instead filed a first amended complaint.

1   automatically turnover any inventory relative to the future claimant/litigant's box.

2   Plaintiffs' Contentions Section II.A.3.b. (first paragraph).  The government does

3   not know whom, if anyone, might file any such claim or lawsuit, nor the contents of

4   any such future claim or lawsuit and therefore cannot affirmatively state in advance

5   whether it will produce video and/or written inventories as part of some unknown

6   future claim or lawsuit.  That position is entirely reasonable.

7          Before filing a lawsuit in federal court under the Federal Tort Claims Act

8   (the "FTCA") for monetary damages for missing, lost or stolen property, a party

9   must first submit an administrative tort claim with the appropriate government

10  Federal agency (here, the FBI) for monetary damages for the allegedly lost

11  property.  See 28 U.S.C. § 1346(b) (waiver of government's sovereign immunity

12  for certain tort claims) and 28 U.S.C. § 2675(a) ("[a]n action shall not be instituted

13  against the United States for money damages for injury or loss of property . . .

14  unless the claimant shall have first presented the claim to the appropriate Federal

15  agency and his claim shall have been finally denied by the agency . . .").[15]  The

16  submission of the administrative tort claim is simple, but the standard submission

17  form (Standard Form 95, easily accessible on public websites) warns the submitter

18  of the penalties for submitting false claims, requires the submitter to assert their

19  ownership of the items and provide evidence supporting their submission.[16]  But

20          [15] See also McNeil v. United States, 508 U.S. 106, 111 (1993) (affirming
    district court's dismissal of FTCA action and noting that language in 28 U.S.C.
21  § 2675(a) requiring the exhaustion of administrative remedies "is unambiguous.
    We are not free to rewrite the statutory text"); Vacek v. U.S. Postal Serv., 447 F.3d
22  1248, 1250 (9th Cir. 2006) (affirming the district court's dismissal of a FTCA
    action for lack of subject matter jurisdiction, and noting "[w]e have repeatedly held
23  that the exhaustion requirement is jurisdictional in nature and must be interpreted
    strictly[]").
24

25          [16] Publicly available regulations describe the administrative tort proceedings.
26  See 28 C.F.R. § 14.2(a) ("a claim shall be deemed to have been presented when a
    Federal agency receives from a claimant . . . an executed Standard Form 95 [which
27  warns the claimant about civil and criminal penalties for presenting fraudulent
    claims] or other written notification of an incident, accompanied by a claim for
28                                                                      (continued…)

1   plaintiffs' request that the government acknowledge what it will do in future

2   administrative tort claims or future lawsuits is completely inappropriate, and does

3   not justify deviation from the Court's standard protective order.

4          Plaintiffs other argument, that there is no basis to prohibit a class member

5   from using information produced in discovery by the government, for any future

6   claim or lawsuit that class member may file, similarly fails.  First, this is a class

7   action, for which there are seven named plaintiffs who are representatives for the

8   plaintiff class and are supposed to be in a position to prosecute this case on behalf

9   of the hundreds of class members.  The seven plaintiffs are included as "Parties"

10  under the protective order entitled to review CONFIDENTIAL information but

11  subject to the restrictions of the standard protective order and those class members'

12  individual claims are supposed to be typical of all members of the class.  See Fed.

13  R. Civ. P. 23(a)(3) (requiring that claims of class representatives be typical of the

14  claims of the class they represent).  Those class representative plaintiffs, under the

15  standard protective order, are already subject to the Court's jurisdiction and the

16  government already has the information it needs to file a contempt motion against

17  those plaintiffs should any of them violate the protective order.

18   **(III)   The USPV Boxes Contain Personal Identifying**

19   **Information And Other Information Belonging To Third**

20   **Party's Having No Ownership Interest In The Box.**

21          Significantly, the inventorying of the contents of particular boxes at USPV

22  will often reflect not only personal identifying information of the box owners, but

23  ────────────────────

(…continued)

24  money damages in a sum certain for injury to or loss of property . . ."); 28 C.F.R.
    § 14.4(c) (noting that claimant may be required to submit, among other things, "(1)

25  Proof of ownership [and] (2) A detailed statement of the amount claimed with
    respect to each item of property"); 28 C.F.R. § 14.6(a) (regarding dispute resolution

26  techniques, and noting "The administrative process established pursuant to 28

27  U.S.C. § 2672 and this part 14 is intended to serve as an efficient effective forum
    for rapidly resolving tort claims with low costs to all participants").

28

also personal identifying information of third parties, prohibited from disclosure for that fact alone and also under the Privacy Act absent entry of a protective order (See 5 U.S.C. § 552a(b)(11) and discussion below).

During the inventorying of the contents of the boxes and videotaping of the process, officers sometimes found an Executor/Conservator Notification letter, which provides a section for the box owner to set forth the residence address of the Executor, a different person, whom (according to the document) the boxholder authorized USPV to contact in the event of the boxholder's death or mental incompetence.  MacDonald Decl. ¶ 4 and Ex. A.  In addition, officers found in one box copies of over 25 passports, none of which were in the name of the boxholder, and those copies contained pictures of the passport holders, their dates of birth, places of birth, and the issuance and expiration dates for the passports.  Id. at ¶ 4.  The government cannot release that third party information without a protective order that prohibits the parties and any class member to whom an inventory is shared from disclosing the third party personal identifying information publicly.  Indeed, the Privacy Act allows for criminal penalties for violation of its terms.  See 5 U.S.C. § 552a(i)(1) (officer or employee of an agency who releases information without notice protected by the Privacy Act is subject to criminal penalties) and 5 U.S.C. § 552a(b)(11) (release of Privacy Act information requires entry of protective order).  And, in order to police violations of the protective order provision, as more fully discussed in subsection c. below, the government must have the signed Exhibit A of non-party class members with whom plaintiffs desire to share the inventories.

Accordingly, there is nothing unreasonable in requiring a protective order treating non-party class members, like the named parties and anyone else who is given CONFIDENTIAL information in discovery in this case, from using information solely for purposes of this litigation.  That is exactly what the Court's standard protective order requires.

      **(IV)** **The Privacy Act Bars Requires That The Government Obtain A Protective Order Before Releasing Privacy Act Information And Plaintiffs' Cited Case Does Not Support Deviating From The Standard Protective Order In This Case Based On The Possibility Of Future Lawsuits.**

Plaintiffs argue that the government is only seeking a protective order to "shield the government from accountability."  Not so.  As discussed below, the Privacy Act requires that the government protect records that reflect some quality or characteristic of the individuals involved and are retrievable using identifying particulars in a government system.  The discovery at issue here falls squarely within the restrictions of the Privacy Act and precludes production of the requested information until a protective order is entered in this case.

The Privacy Act, 5 U.S.C. § 552a et seq.,  requires that the government protect personal information related to boxholders at USPV.  In the Ninth Circuit, records protected by the Privacy Act comprise those that "reflect some quality or characteristic" of the individual involved.  Unt v. Aerospace Corp.,765 F.2d 1440, 1449 (9th Cir. 1985).  And the Privacy Act protects records that are retrievable using identifying particulars in a government system.  See Baker v. Navy, 814 F.2d 1381, 1384 (9th Cir. 1987).  The government cannot produce information and documents subject to the Privacy Act without the entry of a protective order [5 U.S.C. § 552a(b)(11)] and violations of the Privacy Act subject the violator and the federal agency to criminal penalties [5 U.S.C. § 552a(i)(1)] and civil actions for damages [5 U.S.C. § 552a(g)(1)(D)].

Here, the records at issue are stored on Sentinel, the FBI's case-management systeml.  MacDonald ¶ 5.  The data comprises personally identifying information.  Id. at ¶¶ 4 and 7.  Specifically, information that is retrievable via Sentinel includes numerous types of information that could either directly identify an individual

1    (such as name, address, Social Security number, telephone number, e-mail address,

2    photograph, or other unique identifying number, code, or characteristic) or that will

3    indirectly identify an individual (such as gender, race, date of birth, place of birth,

4    geographic indicator, license number, vehicle identifier including license plate, and

5    other descriptors).  Id. at ¶ 7.  Other information about individuals that may be in

6    Sentinel includes financial account numbers.  Id.  Information may be about U.S.

7    citizens, legal permanent residents, or foreign nationals.  Id.  Information may also

8    be about living or deceased individuals, and some information may be about

9    minors.  Id.  Regarding the inventories of USPV boxes in Sentinel, those records

10   contain only the identifying information physically housed inside each respective

11   box or provided to the FBI by the boxholder himself or herself.  Id..

12        Once records are inputted into Sentinel, those records can be retrieved by

13   authorized users, and the FBI can determine what retrievable information, if any, it

14   may have in its files on a particular subject matter or individual, by searching

15   Sentinel.  Id. at ¶ 8,  In the instant matter, users can retrieve Sentinel-housed

16   records about USPV boxholders by the identifiers which are most likely present,

17   usually of the boxholder's name and /or box number.  Id.

18        Plaintiffs ask the Court to ignore the Privacy Act implications.  Moreover,

19   plaintiffs obfuscate the issue, as the government is not objecting to counsel's ability

20   to discuss inventories with non-party class members.  Instead, the government is

21   merely requiring that the non-party class member, like anyone else who receives

22   CONFIDENTIAL information, be bound by the standard protective order provision

23   that the information be used "only for prosecuting, defending or attempting to

24   settle" this Action.

25        Plaintiffs also obfuscate the issues by arguing that the government's

26   proposed (and the Court's standard) protective order would "leave class members

27   vulnerable to learning that they have a potential claim, but with no way to assert

28   that claim."  Not so.  As mentioned above, non-party class members who execute

the Exhibit A addendum to the protective order and later wish to assert a claim against the government can seek leave to publicly file protected documents as part of any separate litigation, and as a prerequisite thereto make a request for the inventory when they submit an administrative tort claim for property they claim was lost.  But there is no reason, in the absence of any pending collateral litigation against the government for monetary damages for lost or missing property, for the Court to adjust the Court's standard protective order in anticipation of any such future lawsuits or administrative tort claims asserted against the government.

Indeed, plaintiffs case shows this is so, as they cite Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003) for the proposition that the Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." (Emphasis added).  But Foltz, unlike the current case, involved a actually filed and pending collateral litigation where the parties to that collateral litigation (who were not parties to the litigation in which the protective order was entered) sought to intervene in the litigation and requested that the protective order be modified so that the intervenors (who were parties to the filed collateral litigation) could gain access to discovery material produced pursuant to the protective order.  The Ninth Circuit addressed a  motion to modify the protective order when nonparties sought leave for access to documents related to an already filed collateral lawsuit.[17]

Here, there is no pending filed collateral litigation.  When and if the use of the inventory comes up in future litigation, the issue can and should be resolved at that time, rather than speculate in advance about those future cases.  The

---

[17] See also Hunter Engineering Co. v. Hennessy Industries, Inc., 2010 WL 1186454, *4 (E.D. Mo. Mar. 29, 2010) (discussing Foltz in connection with pending collateral litigation).  Plaintiffs other cases are similarly wide of the mark - - none of them address the terms of the protective order to be entered in a case. Glenmede Tr. Co. v. Thompson, 56 F.3d 476 (3d Cir. 1995) and Marisol A. v. Guiliani, 1997 WL 630183 (S.D.N.Y. Oct. 10, 1997)

1  government respectfully submits that there is no reason to deviate from the terms of

2  the Court's standard protective order here.

3    **c.  Plaintiffs Incorrectly Assert That It Is Unreasonable To Require**

4        **Them To Provide The Government With Non-Party Class**

5        **Members' Executed Exhibit A Acknowledgement's Before**

6        **Providing CONFIDENTIAL Information To Non-Party Class**

7        **Members.**

8        The March 2021 search at USPV has garnered significant news coverage.

9  One videotape of an inventory conducted by the government was leaked to the

10 press, and still photographs from that videotape were filed without full redaction in

11 a case, resulting in the issuance of a <u>sua sponte</u> July 8, 2021 court order requiring

12 that the attorney who filed the still photographs from the videotape as an exhibit to

13 the attorney's declaration redact the faces of the persons appearing in the

14 photographs,[18] yet the full unredacted still photographs remain publicly filed by

15 plaintiffs in the instant case, without any redactions of the faces.  Docket No. 16-4.

16 In addition, government counsel has been informed by at least one boxholder, in

17 light of the press that this USPV case has engendered, that that boxholder does not

18 want the government to reveal that boxholder's identity to plaintiffs' counsel in this

19 case for fear that the press may contact the boxholder or the information will

20 otherwise be leaked.  Rodgers Decl. ¶ 7.

21

22 ──────────────
       [18] <u>See</u> <u>Search and Seizure of Box No. 8309 at U.S. Private Vaults v. United
   States of America,</u> Case No. 2:21-cv-03554-RGK-MAR, docket no. 14 (in

23 chambers Notice to Plaintiff and Order "by Judge R. Gary Klausner.  The Court has
   placed a temporary seal on Docket Entry 13-1.  Plaintiff is instructed to (1) refile

24 Docket Entry 13-1 with the faces of the individuals depicted therein redacted, or (2)
   show cause in writing as to why the faces of the individuals depicted therein should

25 not be redacted.  Plaintiff shall respond to this order by no later than Friday, July 9
   at 2:00 P.M.  Failure to timely and adequately respond may result in an order

26 striking Docket Entry 13-1 without further notice.  THERE IS NO PDF
   DOCUMENT ASSOCIATED WITH THIS ENTRY. (sw)  TEXT ONLY ENTRY

27 (Entered: 07/08/2021)."

28

1    Moreover, as mentioned in the preceding section, the government located

2    information within boxes containing personal identifying information not only of

3    the owner of particular boxes, but of third parties, as well.  Furthermore, in order to

4    support plaintiffs' contention that the video inventory reflects a violation of the

5    search warrant, plaintiffs themselves offer the affidavit of an <u>attorney</u>, and not of a

6    box holder, who argued that the still photographs from the videotape show the

7    government exceeded the scope of the search warrant, so there would be no need to

8    supply information to non-party boxholders.  <u>See</u> first paragraph of Plaintiff's

9    Introductory Statement, citing ¶¶ 6-15 of Exhibit J [attorney declaration] to

10   Frommer Decl.

11   But the point is that the government needs to have the information, as

12   provided in the standard protective order's Exhibit A, to immediately police

13   violations of the protective order, not only as against a class member boxholder

14   who decides to violate the order, but to make clear to any other class members that

15   any misuse of videos by the recipient of the video (which again contains identifying

16   personal identifying information of third parties) will not be tolerated.  The

17   government has that ability, as to the class member plaintiffs because they are

18   parties to the action.  Exhibit A, which requires class members to appoint a

19   California agent for service of process in connection with this action or any

20   proceedings related to enforce the protective order, contains the information the

21   government needs in order to enforce violations of the order as to breaching non-

22   party class members.

23   Plaintiffs point out that the government's protective order does not require

24   Exhibit A to be supplied to the government for experts (but, of course, this would

25   have to be disclosed if plaintiffs decide to offer the testimony of the expert witness

26   at trial) and professional jury or trial consultants, mock jurors, and Professional

27   Vendors [as defined in the standard protective order], as reflected in the Court's

28   standard order.  But plaintiffs have overlooked one key fact - - the standard

protective order does not permit, as the government told plaintiffs it would permit here (even though the government believes that any such disclosure is entirely unnecessary), a Receiving Party (meaning a party to the action who receives CONFIDENTIAL information) to provide CONFIDENTIAL information to third parties (like the non-party class members).  And as to third parties, such as deponents, the standard protective order requires that the deponent sign Exhibit A during their depositions when all parties are present.  Accordingly, if plaintiffs wish to disclose CONFIDENTIAL information to third parties like non-party class members, there is nothing inappropriate in requiring them to provide Exhibit A to the government before doing so.

**B.   Plaintiffs Seek An Order Requiring Defendants To Respond To Plaintiffs' Pending Discovery Requests Within Three Days Of Entry Of The Protective Order**

**1.   Plaintiffs' Contentions**

**a.   The Government Has Delayed Responding To Discovery**

During its November 8, 2021, scheduling conference, the Court set the deadline for the parties' opening trial briefs for June 21, 2022, and scheduled the trial for July 26, 2022. Minutes of Scheduling Conference, Frommer Decl. Ex. A. Plaintiffs have reason to believe this schedule will remain fixed, given that the Court previously denied a joint request by the parties to extend a deadline. (Order Den. Joint Stipulation to Continue Class Cert. Hr'g, D.E. 73 (Sept. 2, 2021)).[19] Plaintiffs' counsel thus re-iterated to counsel for the government after the scheduling hearing that the parties would need to work expeditiously on discovery given the short timeframe. Frommer Decl. ¶ 3 & Ex. B at 10. Indeed, Plaintiffs served their substantive written discovery requests before the scheduling conference

---

[19] Given the government's delays so far, Plaintiffs anticipate requesting additional time for discovery, but they cannot assume that the Court will grant that request.

1   (*id.* ¶ 2), precisely so the parties could quickly complete written discovery with
2   sufficient time to take depositions and then prepare trial briefs by the Court's
3   deadline.

4          The government, however, has dragged its feet. Over four months after
5   Plaintiffs served their written discovery requests in early November, the
6   government has produced essentially nothing. *Id.* ¶ 11.

7          On November 29, 2021, the government requested a 37-day extension of the
8   discovery response due on December 8. Frommer Decl. Ex. B at 13–14. "In light of
9   the holidays and other press of business," the government explained, it was "not
10  possible for the government to respond to the discovery by the current deadline."
11  *Id.* After explaining that it was "imperative the parties keep to the schedule that the
12  Court laid out at the November 8 scheduling conference," Plaintiffs' counsel
13  suggested that the government provide any objections on December 8, so that the
14  parties could begin resolving any discovery disputes while the government
15  completed its substantive responses. *Id.* at 12, 13.

16         Counsel for the government rejected that compromise, explaining that he
17  could not formulate objections until he had "all the documents I intend to produce
18  and other information I have that is responsive and requires a substantive response
19  to the interrogatories." *Id.* at 11. And because "the FBI employees who must
20  assemble the documents necessary to respond to discovery" had been or would be
21  taking vacations, it would be "impossible" for the government to have those
22  documents prepared in time to provide objections by the December 8 deadline. *Id.*
23  at 10-11. Plaintiffs therefore agreed to a thirty-day extension to January 7 (*id.* at 9),
24  understanding that the government also would provide courtesy copies of its
25  responses by email on January 7 (*id.* at 11).

26         On the morning of January 10, 2022, Plaintiffs' counsel emailed the
27  government about the email courtesy copies of the government's discovery
28  responses, which the government provided at the end of that day. Frommer Decl.

¶ 6. Those responses contained boilerplate objections to almost every interrogatory and request for production, other than a cursory response to interrogatory number 12 and an agreement to produce the warrant application and warrant in response to request for production number 11. Frommer Decl. Ex. C at 21, Ex. D at 31; *cf.* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). The response to Request for Production Number 7 is representative of the government's boilerplate objections:

> **REQUEST FOR PRODUCTION NO. 7:**
>
> All internal policy documents applied to guide the conduct of law enforcement officials during the March 2021 search of U.S. Private Vaults, including but not limited to complete and unredacted copies of all pertinent provisions contained in the FBI's 2016 Domestic Investigations and Operations Guide.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**
>
> Defendants objects that this request (1) seeks information protected by the law enforcement evidentiary privilege or the investigatory file privilege; (2) seeks information protected by the deliberative process privilege; (3) fails to identify the documents sought with reasonable particularity; (4) is overly broad; (5) seeks information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; and (6) seeks information protected by the right of privacy and the Privacy Act, which will not be produced until such time as a mutually acceptable protective order is entered in this case.

Frommer Decl. Ex. D at 29. On January 14, the government turned over the sole document it has produced in this litigation: the 246 pages constituting the warrant application materials and warrant, which had been previously unsealed in a related action. Frommer Decl. ¶ 10.

1    Plaintiffs immediately sent a deficiency letter to the government on January
2    12 requesting a discovery conference under Local Rule 37-1 within 10 days.
3    Fromer Decl. Ex. E at 43. Plaintiffs again stressed that "given the schedule in this
4    action, Plaintiffs also respectfully ask that Defendants avoid further unnecessary
5    delay in the future." *Id.* at 35. The government provided available times for the
6    discovery conference on January 24, 2022. Fromer Decl. ¶ 9.

7    During the January 24 conference, the government said for the first time that
8    it would only respond to most of Plaintiffs' discovery after the entry of a protective
9    order. *Id.* ¶ 12. And despite having previously said that the government would
10   compile the relevant documents before objecting, the government further explained
11   that it would take a few more weeks to provide other discovery such as the written
12   inventories. *Id.* Straightforward information such as identifying class members and
13   the agents who searched the boxes would take a week. *Id.* Plaintiffs again stressed
14   the importance of conducting discovery diligently given the looming Court
15   deadlines and reiterated that point in a letter provided later that same day. *Id.*;
16   Fromer Decl. Ex. F at 45.

17   The government provided its proposed protective order on January 27, 2022.
18   Fromer Decl. Ex. G at 54. Plaintiffs largely agreed with the proposed terms, other
19   than to seek clarification and modification of the restrictions on disclosing
20   information to specific class members of the government's inventory of that class
21   member's box. *See* supra § II.A.3. Yet even this process dragged on as the
22   government typically took two to three days to respond to Plaintiffs' inquiries and
23   proposals. *See* Fromer Decl. Ex. G at 49–50, 51–52, 53.

24   Finally, on February 10, the parties agreed to seek assistance from the Court
25   to resolve their dispute over the protective order. Fromer Decl. ¶ 14. The parties
26   emailed the Court pursuant to the Court's standing order on February 11, and on
27   February 14 the Court instructed Plaintiffs to move to compel.

28

**b. The Court Should End The Government's Unjustified Delays By Ordering Responses To The Remaining Discovery Within Three Days After Entry Of The Protective Order**

There is no reason for four months to elapse with no meaningful discovery responses from the government. First, as much as the absence of a protective order is delaying discovery, the government could have raised this before or on the original December 8, 2021 deadline to respond to Plaintiffs' discovery. It was unreasonable for the government to wait until January 27—almost three months after Plaintiffs served their discovery requests—to provide its proposed protective-order language.

Second, it is not clear why the dispute about the protective order should halt all other discovery. Request for Production No. 7, for example, does not seek personally identifying information about anyone, only information about the government's policies. Yet Defendants have withheld that information too.

Third, it is unreasonable for the government to anticipate taking several additional weeks to produce documents following entry of the protective order. The government only requested an extension to respond so that it could first compile all the responsive documents and information before responding. Therefore, the government's own representations show that these discovery materials are already at the government's fingertips. Moreover, because the only current dispute concerns the scope of the protective order (which both parties have agreed will be entered in some form), there is no doubt about what the government will produce once the protective order is entered. There is therefore no reason why the government cannot prepare these productions now and provide them to Plaintiffs immediately after entry of the protective order, and certainly no reason why the government could not do so within 3 days.

Plaintiffs' counsel has emphasized to the government on November 8, November 29 (three times), January 12, January 24 (twice), and February 4 that the

1   parties need to move expeditiously to complete discovery. The time to complete

2   discovery before the impending deadlines is running out quickly, and even if there

3   are no further disputes it will be difficult if not impossible to complete depositions

4   within the allotted time. The danger of prejudice to Plaintiffs and the certified class

5   is significant. Plaintiffs therefore request that the Court enter an order requiring the

6   government to respond to all pending discovery requests within 3 days of entry of

7   the protective order.

8   **2.   Defendants' Contentions - - Plaintiffs' Request For An Order**

9   **Requiring The Government To Respond To Plaintiffs' Unspecified**

10  **Discovery Requests Within Three Days Of Entry Of A Protective**

11  **Order Should Be Denied.**

12  Plaintiffs make a host of false accusations concerning the government's

13  purported delays in discovery, first correctly noting that the government requested

14  an approximately 30 day extension of discovery during the holidays (yet plaintiffs

15  ignore in their brief the fact that they only begrudgingly granted the extension after

16  multiple requests by the government and the government having to threaten to bring

17  the matter to the Court's attention [Frommer Decl. Ex. B page 9]) before the

18  extension was granted.  Then, plaintiffs argue that the government agreed to email

19  discovery responses, but the government never made any such agreement (and

20  plaintiffs exhibits do not reflect any such agreement).  Nevertheless, the

21  government emailed the responses as plaintiffs requested.

22  In addition, plaintiffs contend that during a January 24, 2022 conference the

23  government stated, purportedly for the first time, that it would not produce the

24  discovery until after a protective order was entered, yet none of that is true as the

25  government's discovery responses make plain (and even plaintiffs' own January 24,

26  2022 letter make clear), the government cannot produce the records until the time

27  frames set forth therein pass once a protective order is entered.  Furthermore, while

28  plaintiffs point to statements made by the government before responsive documents

had been assembled, the government cannot make its final objections or stamp the large quantity of documents with the appropriate legend as called for by the protective order, until such time as it knows the terms of the protective order.  As promised by plaintiffs, once the protective order is entered it will produce, and will continue to produce in waves as the documents and items are available, any documents being withheld from discovery solely on grounds that no protective order has yet been entered in this case.

More to the point, plaintiffs' request (assuming that is what plaintiffs are requesting, but it is not entirely clear) that the government produce documents, within three days, in accordance with plaintiffs "pending discovery requests" is in clear violation of Local Rule 37 and should be denied for that reason alone.  Local Rule 37-2.1 provides as follows:

> **L.R. 37.2.1   Form of Joint Stipulation.**  The stipulation must be set forth in one document signed by both counsel.  The stipulation must contain all issues in dispute and, as to each such issue, the contentions and points and authorities of each party.  The stipulation may not refer the Court to any other documents.  <u>For example, if the sufficiency of an answer to an interrogatory is at issue, the stipulation must contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contention as to that particular interrogatory, separately stated</u>. . . . When a party states its contentions on a particular issue, such party must also state how it proposed to resolve the dispute over that issue at the conference of counsel.

(Emphasis added).  Similarly, the Court's website provides "[s]trict compliance with Local Rule 37 is required" relative to the filing of a discovery motion.  Plaintiffs joint statement does not quote any specific interrogatory or document request at all, except for document request number 7, yet plaintiffs papers as to that

request do not comply with Local Rule 37.2.1 because plaintiffs have not set forth their contention or the government's contention as to that discovery request.

For the reasons set forth above, the government requests that plaintiffs request that the government "respond to plaintiffs' pending discovery requests within three days of entry of the protective order" be denied.

Dated: March 9th, 2022

Respectfully Submitted,

/s/ Robert Frommer

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
Joseph Gay^
jgay@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd.. Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.

^Motion for pro hac vice pending.

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

PARTIES' LOCAL RULE 37-2 JOINT STIPULATION

Dated: March 9th, 2022

Respectfully Submitted,

**TRACY L. WILKISON**
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

/s/ Victor A. Rodgers

ANDREW BROWN
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys

Attorneys for Defendants
UNITED STATES OF
AMERICA and
TRACY L. WILKISON and
KRISTI KOONS JOHNSON IN
THEIR OFFICIAL CAPACITY
ONLY

In compliance with Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: March 9th, 2022

By:   /s/ Robert Frommer

Robert Frommer
Attorneys for Plaintiffs

PARTIES' LOCAL RULE 37-2 JOINT STIPULATION