**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES AND ENTER PROTECTIVE ORDER**<br><br>DISCOVERY MATTER<br><br>Date: March 30, 2022<br>Time: 10:00 A.M.<br>Courtroom: 790<br>Judge: Hon. Margo A. Rocconi<br>Discovery cutoff date: TBD<br>Pre-Trial Conference Date: TBD<br>Trial Date: July 26, 2022<br>Complaint Filed: May 27, 2021<br>Amended Complaint Filed: June 9, 2021 |

Over four months into discovery in this certified class action, Defendants have failed to produce a single responsive document (other than one *already* appearing on the public docket in another case) in response to Plaintiffs' discovery requests. Defendants have offered only one explanation for this failure to comply with discovery: There is not yet a protective order in place, and the parties cannot agree on what that order should look like. Both sides agree that an order is appropriate, as discovery will encompass private information concerning the contents of class members' safe deposit boxes; indeed, Plaintiffs' claim in this case is that Defendants *should not have* this private information, as Defendants searched class members' safe deposit boxes in violation of the Fourth Amendment. The parties' dispute centers on Defendants' attempt to limit Plaintiffs' ability to share information with class members about their *own boxes*, as well as Defendants' attempt to limit the ability of class members to use that information to pursue a claim for lost property.

While these issues are discussed at length in the joint stipulation, Plaintiffs submit this supplemental memorandum to provide a concise overview of both this case's background and the issues now under consideration. The Court should reject Defendants' attempt to improperly limit class members' use of their own private information. Moreover, the Court should order Defendants to provide discovery promptly after a protective order is in place. Defendants have indicated that they may interpose additional unspecified objections after a protective order is entered, but the time for such objections has long since passed.

## BACKGROUND

### 1. General Background

This is a certified class action brought on behalf of "[a]ll renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; and [c] have had their property returned to them." The Plaintiff class challenges Defendants' search of their safe deposit boxes

as a violation of the Fourth Amendment and, as relief, seeks an order ensuring Defendants cannot continue to use records and information generated during the search for criminal law enforcement purposes.

Defendants' search of Plaintiffs' safe deposit boxes occurred in March 2021. The government indicted US Private Vaults, the company that operated the vault where the safe deposit boxes were located, and obtained a warrant to seize the company's property—including the relatively worthless metal rack containing Plaintiffs' boxes. That warrant explicitly stated that it "*does not authorize* a criminal search or seizure of the contents of the safety deposit boxes." But Defendants ignored the warrant's limited scope and indiscriminately searched every box in the facility.

Defendants justify their search as an "inventory" of the boxes, but their actions are inconsistent with that justification. Among other things, Defendants had drug-sniffing dogs examine all currency agents found, an act that serves only a criminal investigatory end. And when those dogs alerted, Defendants initiated civil forfeiture proceedings against the currency. Defendants also rifled through sealed envelopes in safe deposit boxes and made copies of documents inside. Moreover, the few "inventories" that Defendants have publicly disclosed are woefully inadequate to actually inventory valuable property; for instance, they do not count or value gold coins, instead simply describing them as "misc. coins." In other words, Defendants took detailed records of facts (such as the contents of legal documents) that had no relation to a valid inventory search but did *not* record facts (such as the amount of valuable coins in a box) that would obviously be relevant to a legitimate inventory.

**2. Discovery**

Because Defendants seek to justify their search as an "inventory" of the boxes, discovery naturally focuses on the procedures Defendants followed during the search and the types of records they made to memorialize the contents of the boxes. Plaintiffs sent interrogatories and requests for production seeking this and other information on November 5, 2021.

On January 10, after requesting a month-long extension, the government served responses that failed to provide any non-public information and that, instead, raised a host of boilerplate objections. Plaintiffs sent a deficiency notice two days later and immediately scheduled a conference. At the conference, Defendants declined to press any of their boilerplate substantive objections to discovery and, instead, stated that they would provide responses following the entry of a protective order. But when Defendants finally sent their proposed protective order on January 27, it became clear that its language was unacceptably restrictive. The parties' conflict concerning the scope of the protective order finally crystalized on February 9, 2022, at which point Plaintiffs' counsel immediately contacted the Court and began the process to file the instant Joint Stipulation and Motion.

## ARGUMENT

### I. Defendants' Restrictions In The Proposed Protective Order Improperly Limit Plaintiffs' Use Of Discoverable Information.

As part of discovery, Plaintiffs' counsel will need to provide class members with information about their own safe deposit boxes, including written inventories and photographic depictions of the contents. Among other things, such consultations will allow Plaintiffs' counsel to verify with class members whether the inventory Defendants created for each member's box was complete and accurate, as required by FBI policy, thus rebutting Defendants' claim of a legitimate inventory search. Defendants' response does not seriously dispute that it would be proper for Plaintiffs' counsel to share information with class members about those class members' *own* boxes, but still seeks to unduly limit such consultation in two critical respects.[1]

---

[1] While Defendants do not seek to completely bar consultation with class members, they seem to question whether it is necessary. But class members are obviously the individuals best situated to provide information about their *own* boxes, and such consultation would be unduly hampered if Plaintiffs could not share information pertaining to those boxes with those individual class members.

*First*, Defendants' proposed protective order would force Plaintiffs to identify which class members have been provided with information about their own safe deposit boxes. This is totally improper, as it would provide Defendants with a window into Plaintiffs' investigation and strategy. It also threatens to deter class members from consulting with Plaintiffs' counsel, as some class members may not want Defendants to know that they are cooperating in the case (and may legitimately fear Defendants' announced intention to use these disclosures to "police" class members). And while Defendants claim they are merely adhering to the Court's standard protective order, that order contains no such requirement. Paradoxically, Defendants seek to impose this invasive identification requirement *only* when Plaintiffs share information with class members about those members' own property.

*Second*, Defendants' proposed protective order would bar class members from using information about the contents of their box to pursue claims against the government for lost or stolen property. This would create an untenable situation: A class member might see information during consultation with Plaintiffs' counsel that would substantiate a claim for lost or stolen property, and yet nonetheless find herself unable to pursue such a claim. While Plaintiffs' counsel are not themselves raising such claims on behalf of the class, they cannot willingly put class members in that situation. Moreover, Defendants offer no reason why such a limitation is needed. Defendants place great emphasis on the fact that such use is not allowed by the Court's standard protective order, but the order can be modified to permit such limited use. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (stating that the law "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation"). Indeed, if this was truly an "inventory" search, as Defendants claim, then the *entire point* of these records would be to resolve such claims.[2]

---

[2] Defendants claim these restrictions are needed because the records *might* contain private information regarding third parties. But it is important to remember
(continued…)

## II. Defendants Should Be Ordered To Produce Discovery Without Further Unnecessary Delay.

Defendants suggest that, once a protective order is entered, they will further delay discovery in two ways. First, they indicate that only then will the government "make its final objections" to Plaintiffs' discovery requests. And second, they state that, even for documents where the entry of a protective order was Defendants' only objection, it will take weeks for the government to begin producing documents.

Defendants' position makes a mockery of the process that led to this Motion. Plaintiffs' requests have been pending since November 2021. When Plaintiffs granted Defendants a month-long discovery extension in December, it was because the government claimed it needed that month to compile the relevant records so it would know what substantive objections to assert. And at the parties' January 24th conference, Plaintiffs' counsel repeatedly asked Defendants to articulate all their substantive objections so that Plaintiffs could present all outstanding discovery disputes to this Court. Yet Defendants declined to do so, instead focusing solely on the need for a protective order. *See*, *e.g.*, Frommer Decl. Ex. F at 45–46.

Given this, Defendants should not be allowed to make their objections piecemeal, thereby running out the clock on discovery and frustrating Plaintiffs' ability to obtain the information that they need to pursue this case. Instead, the Court should put an end to Defendants' dilatory tactics and order Defendants to commence production without further delay.

---

that any such information in a class member's box was put there *by that class member*. Moreover, the class is limited to individuals whose property has already been returned. So, while Defendants highlight a box containing multiple passports, either those passports have been returned to the box holder (in which case the box holder can access them directly) or that box does not belong to a class member (in which case no information sharing is contemplated). In any event, Defendants do not explain how this supposed concern is redressed by their proposed restrictions.

Dated: March 16, 2022

Respectfully Submitted,

/s/ Robert Frommer

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
Joseph Gay^
jgay@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.

^Motion for pro hac vice pending.

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*