```
 1                  UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
 2                  WESTERN DIVISION - LOS ANGELES

 3

 4   PAUL SNITKO, et al.,      )   Case No. CV 21-4405-RGK (MARx)
                               )
 5         Plaintiffs,         )   Los Angeles, California
                               )   Wednesday, March 30, 2022
 6              v.             )   11:07 A.M. to 11:45 A.M.
                               )
 7   UNITED STATES OF AMERICA, )
     et al.,                   )
 8                             )
           Defendants.         )
 9   _____)
```

```
10


11


12               TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MARGO A. ROCCONI
13            UNITED STATES MAGISTRATE JUDGE


14


15   Appearances:              See Page 2

16   Deputy Clerk:             Erica Bustos

17   Court Reporter:           Recorded; CourtSmart

18   Transcription Service:    JAMS Certified Transcription
                               16000 Ventura Boulevard #1010
19                             Encino, California   91436
                               (661) 609-4528
20


21


22


23


24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1    APPEARANCES:

 2

 3    For the Plaintiffs:      Institute for Justice
                               By:  ROBERT P. FROMMER
 4                             901 North Glebe Road, Suite 900
                               Arlington, Virginia  22203
 5                             (703) 682-9320
                               rfrommer@ij.org
 6
                               Institute for Justice
 7                             By:  ROBERT E. JOHNSON
                               16781 Chagrin Boulevard, No. 256
 8                             Shaker Heights, Ohio  44120
                               (703) 682-9320
 9                             rjohnson@ij.org

10

11    For the Defendants:      The United States Attorney's Office
                               Central District of California
12                             Asset Forfeiture Division
                               By:  VICTOR A. RODGERS, JR.
13                             312 North Spring Street, 14th Floor
                               Los Angeles, California  90012
14                             (213) 894-2569
                               victor.rodgers@usdoj.gov
15

16

17

18

19

20

21

22

23

24

25
```

 1   LOS ANGELES, CALIFORNIA, WEDNESDAY, MARCH 30, 2022, 11:07 A.M.

 2          (Call to Order of the Court.)

 3              THE CLERK:  Calling case No. 2:21-CV-04405,

 4   *Paul Snitko, et al. v. United States of America, et al.*

 5              Counsel, starting with plaintiff, please state your

 6   appearances for the record.

 7              ROBERT F. FROMMER:  Hello.  My name is

 8   Robert Frommer, attorney for Institute for Justice and

 9   counsel for plaintiffs.

10              THE COURT:  Good morning.

11              ROBERT E. JOHNSON:  My name is Robert Johnson, also

12   appearing for plaintiffs.

13              THE COURT:  Good morning.

14              VICTOR A. RODGERS, JR.:  Good morning.  My name is

15   AUSA Victor Rodgers (inaudible) on behalf of the defendants.

16              THE COURT:  All right.  Good morning.

17              All right.  I've read your papers and I -- it's an

18   interesting issue, especially with respect to the protective

19   order.  So let's start with that, and I'll go with

20   plaintiffs' counsel to sort of -- so preliminarily I'll say

21   we have an agreement that there's good cause for a protective

22   order; correct?

23              MR. FROMMER:  Yes, that is correct, Your Honor.  We

24   --

25              THE COURT:  So it's just a matter of what this --

1    the parameters of the protective order are.  So let's dive

2    into that.

3             MR. FROMMER:  Yes, Your Honor.

4             As you know, plaintiffs in this Fourth Amendment

5    challenge represent class members who've all had their

6    property returned by the defendants, and plaintiffs really

7    just wish to show class members the inventory for their

8    specific box to check its accuracy, and we further propose a

9    narrow modification so a class member could then take that

10   inventory and share it with the Government for the purpose of

11   pursuing a claim for lost property, and this poses no risk of

12   revealing third-party information since the class member put

13   that information in their box and would simply be returning

14   the inventory to the very entity who created it.

15            So in this situation, we're asking for a narrow

16   modification that allows us to share with class members but

17   not -- the inventories, which, again, are just inventories of

18   the items contained in their own box and then for them to be

19   able to use that should they decide to pursue a claim for

20   lost or misplaced property against the Government.

21            And our proposed order conserves judicial resources

22   and advances justice.  The defendants' position whereby each

23   person would have to individually come to court would prevent

24   class members from filing meritorious claims since the cost

25   of hiring a lawyer and coming before this Court to get

1    permission to use the inventory would often outstrip the

2    value of the missing property.  So we think it's appropriate

3    for this Court to enter that protective order here.

4         And then, lastly, Your Honor, we would ask that

5    defendants produce all outstanding discovery without delay.

6    When defendants requested an extension in December, it was to

7    prepare their responses and objections, but we're now four

8    months later and defendants are proposing weeks, if not

9    months, of more delay even though Judge Klausner set opening

10   briefs in this matter to be due June 21st.  No meaningful --

11   at all -- discovery has been provided to this date, and the

12   additional delay the defendants are proposing would severely

13   prejudice plaintiffs' ability to make their case.

14        THE COURT:  Okay.  And you haven't mentioned

15   anything that I've read a couple of times in your papers

16   about how the requirement -- the Exhibit A requirement that

17   the nonparty class members provide the defendants with a

18   signed copy of Exhibit A would somehow give defendants

19   insight into your investigative and other legal strategy.  I

20   don't -- honestly, the Court does not understand what insight

21   that would be.

22        MR. FROMMER:  Well, it would tell the Government --

23   if we have to -- and it's interesting, Your Honor, because

24   the Exhibit A that we're talking about -- for every other

25   class of person identified in the protective order, there's

1  no requirement that it be turned over to the Government

2  before any information is shared, and the threat here is that

3  by us having to give the Government signed exhibits saying

4  who we're speaking to and -- about the veracity and accuracy

5  of the inventories, that gives the defendants direct insight

6  into our litigation strategies, which is -- that -- and that

7  is impermissible under FRCP 26.

8          THE COURT:  Can I -- let me just interrupt and say

9  I'm not sure what that exact strategy is.  You're -- the --

10  it's not attorney-client privileged information.  It's not

11  some sort of communication.  It's -- what is the -- I don't

12  understand what the work product is exactly that would be

13  revealed.  Presumably -- let me ask you this: You -- do you

14  know the identity of each and every nonparty class member?

15          MR. FROMMER:  No, Your Honor, because that has not

16  -- never been provided to us in discovery even after five

17  months.

18          THE COURT:  Okay.  Okay.  So basically they would

19  know who your -- who is being identified to you?  Is that the

20  --

21          MR. FROMMER:  No.  The defendant --

22          THE COURT:  Is that what you don't want them to

23  know?  Who's talking to you?

24          MR. FROMMER:  Well, what we -- they need -- the

25  defendants need to provide us a list of all the class members

1    in this action.  That was one of our requests for discovery.

2    What we're talking about here is something a little bit

3    different.  We're talking that once we get that list and we

4    have the inventories for each box, we want to be able to

5    reach out to specific class members and to verify -- "Can you

6    look at this inventory?  Can you tell me is this is an

7    accurate and complete inventory?"  But us having to sign --

8    send in the Exhibit A to defendants every single time before

9    we begin that conversation gives the defendants direct

10   insight as to who we're speaking with and what -- and that,

11   in turn, reveals sort of our legal strategies, our legal

12   tactics in this case, and so I think that --

13           THE COURT:  That's what's vague to me but -- it's

14   simply the identification of a class member.

15           MR. FROMMER:  That -- well, not just a class

16   member, Your Honor.  It's a specific class member with whom

17   we have talked about the inventory and the accuracy of the

18   inventory, and class members could well be wary -- even

19   beyond the work product issues, class members could well be

20   wary to talk with us knowing that the defendants are going to

21   get a signed copy identifying them as somebody who's working

22   with us, especially if --

23           THE COURT:  Okay.  There was some allegation of

24   harassment by the Government, but it's not as if the

25   Fifth Amendment is an -- at issue here, any kind of

1    self-incrimination in light of self-identification, right,

2    that the Government would start investigating or harassing

3    them?  I mean, we're beyond that issue from the other

4    litigation that's going on; correct?

5           MR. FROMMER:  I don't believe so, Your Honor.  The

6    Government has said that they need to police this -- police

7    these releases and they need to police the protective order,

8    and we've seen repeated instances, when people have

9    identified themselves, the Government has responded by -- and

10   sort of poked their head up -- the Government has responded

11   by investigating them, by putting -- you know, investigatory

12   resources behind that, and that leads to a situation where

13   class members would feel chilled, feel that they can't come

14   forward and talk with us, lest the Government --

15          THE COURT:  Okay.  Let me talk to Mr. Rodgers.

16          Is -- and I really -- the Court really appreciates

17   it when people just tell -- just tell me what your

18   motivations are.  Is that motivation that plaintiff counsel

19   is ascribing to you -- is that an actual motivation?  To

20   investigate these people?

21          MR. RODGERS:  Absolutely not.  It's completely

22   incorrect.  We already know the identity of these

23   individuals, and if we're going to criminally investigate

24   them, it is not going to be because they provided an

25   Exhibit A to us.  We've already determined who will be

1   criminally investigated and who will not.

2        THE COURT:  And can I ask you -- and I'll let you

3   make your own argument in a second, but is there any reason

4   why you can't immediately just turn over the list of all of

5   these people who have come forward and who have already

6   claimed their property?

7        MR. RODGERS:  Once we have a protective order in

8   place -- and this is why I wanted to get the protective order

9   in place -- we can do a lot of things.  We can provide the

10  list of the people who we believe are owners of the box, and

11  we can also provide information concerning supervisors who

12  were involved in the searches of the particular boxes at

13  issue.  So we can do that, but, you know, I'm dealing with

14  discovery units within the FBI who need the protective order,

15  and I'll get to the terms of the protective order --

16        THE COURT:  Okay.  Just a moment.  I want to finish

17  with plaintiff, but I appreciate that --

18        MR. RODGERS:  Okay.

19        THE COURT:  -- and I feel that I -- you know, we --

20  the Court and everyone should take you at your word.  You

21  know who these people are -- or at least you think you have

22  them -- that information.  Who knows at this point how

23  accurate the actual owners are, right, but if they've come

24  forward to claim their property, then I guess you do know who

25  they are.

1      All right.  So let me get back to Mr. Frommer,

2   then.  Is there anything further you want to say about the

3   protective order?

4            MR. FROMMER:  Well, Your Honor, I think that the --

5   like I said, we are happy to enter into the protective order,

6   but I think the defendants are using the protective order

7   issue as a shield to sort of gloss over their failure to

8   provide discovery.  Like, simply the identity of their own

9   agents and who participated in the raid wouldn't be covered

10  -- would have any Privacy Act implications, but yet it's five

11  months now and we still haven't seen that.  We haven't seen a

12  list of our own class members.  We've seen no discovery in

13  this case whatsoever even though in about 2 1/2 months we

14  need to file briefs with Judge Klausner, and our window to

15  conduct discovery is fading very rapidly, largely because of

16  the protective order issue dragging on and -- throughout this

17  litigation.

18           THE COURT:  Okay.  Well, Mr. Rodgers, I'll hold you

19  to that, that you can get, at a minimum, a list of those who

20  have come forward to claim their property to the plaintiffs'

21  counsel as soon as a protective order is entered, and I'm not

22  making that an order, but it seems like -- it seems like the

23  right thing to do and the minimum that you could do.

24           All right.  Let me hear from you, then,

25  Mr. Rodgers, on your side of this protective order issue.

1          MR. RODGERS:  With respect to the protective order

2    -- and some of this is already in our papers -- we used the

3    Court's website order, and in connection with that website

4    order, we included the provision that any person who receives

5    confidential information can use it solely for purposes of

6    prosecuting, defending, or settling the action.  That's the

7    case with respect to anyone who receives confidential

8    information under a protective order, and that was the

9    objection that the plaintiffs made to the protective order

10   that the Government submitted, which, you know, with respect

11   to this lawsuit, that is a key phrase and that is a key term.

12          Now, what the plaintiffs mistakenly argue is that

13   they say, "Oh, this is all items that the boxholders already

14   have.  It is their property, and the boxholders already had

15   their property back."  I've raised the issue with respect to

16   one case that we found a bunch of passports containing PII.

17   I'm not saying that the person who received the passports

18   back now could go to the press and say, "Here's a passport

19   that shows somebody else's name and date of birth."  That's

20   not the issue.

21          The issue is they want us to produce these tapes.

22   I can't have somebody going to the press with still

23   photographs of the video which reflects the PII of a third

24   party.  That's -- that would be a violation of the

25   Privacy Act for me to do that, and it's not merely the class

1  member who is the boxholder.  It's that third party who has

2  the PII.  If I just -- if I do not have a protective order in

3  place that prohibits the other side from using the documents

4  we produce, as opposed to what they have received back, then

5  there's going to be a violation of Privacy Act.

6          And so the argument that the plaintiffs already

7  know -- or these boxholders already know what was in their

8  box is simply not relevant.  If they want to disclose --

9          THE COURT:  Let me just interrupt you there and

10  ask: Do you know -- you -- so you -- so I understand from the

11  pleadings that you don't have an omnibus list of all the

12  contents of each box; is that correct?

13          MR. RODGERS:  Correct.

14          THE COURT:  But do you have it -- are you able --

15  do you have it specifically notated enough that you would

16  know whether a box contained third-party information?

17          MR. RODGERS:  No.  The only way you can figure that

18  out is to review all the tapes, and that is a time-consuming

19  and an impossible situation to do because there are something

20  like -- if I am -- my best guestimate is that there are

21  something like 420 class members, and probably 50 percent of

22  those may have tapes, all of which may be 20 or 30 minutes

23  long.

24          And if you look at, for example, the declaration of

25  Ben Gluck that was submitted -- Benjamin Gluck, who is an

1   attorney in another case -- if you look at the still

2   photographs from the video in that case, you will see that

3   the still photographs have -- practically every single

4   photograph has redactions.  For the Government to go through

5   all of those tapes and redact all of the potential personal

6   -- PII information, and most importantly the information that

7   is protected by the Privacy Act because all of those tapes

8   come within the purview of the Privacy Act -- it would be

9   impossible to produce all of that material --

10          THE COURT:  Okay.  So there would be no way to sort

11   of excise out these boxes that contain third-party

12   information?

13          MR. RODGERS:  Correct.  It would be --

14          THE COURT:  As not -- as like -- as -- that we

15   would have to do the Exhibit A for -- there's no way to

16   segment this, basically, is what you're arguing?

17          MR. RODGERS:  Correct.  Correct.  It is impossible

18   to do so, which is why we indicated in this protective order

19   that, you know, it would be deemed confidential information

20   and if it was received by an absent class member -- by that,

21   I mean somebody who is not a named party -- that they would

22   have to sign this Exhibit A.

23          And one other statement that counsel made

24   concerning their version of Exhibit A -- counsel indicated

25   that their version of -- excuse me -- their version of a

1  protective order would provide that these inventory could be

2  shared with the Government, but their version of the

3  protective order goes further than that.  It says that these

4  inventories could be utilized to seek relief from the federal

5  Government, meaning that a lawsuit could be filed, somebody

6  could attach those still photographs from the inventory --

7  not, you know, subject to any protective order, they could

8  just file that document, and by doing so, they could reveal

9  information -- third-party information publicly.

10         It's not simply to give the person who submits a

11  claim for lost property.  The manner in which these claims

12  come up with respect to anyone who contends that the

13  Government lost property during the course of the search,

14  somebody would have to submit an administrative tort claim to

15  the FBI for monetary relief.  That is the first step.  Once

16  that is done, the FBI looks at that claim, makes a

17  determination as to whether it has merit or not, sometimes

18  asks for additional information from the boxholder who says

19  particular property is lost and seeking monetary relief.  In

20  conjunction with that, I indicated to counsel that the

21  boxholder in that potential future case could argue, "I need

22  to talk about the inventory in connection with my claim.  Can

23  I do so?"

24         The FBI reviews that, goes through the process,

25  determines whether the case can be settled or not, determines

1   whether the case can be resolved or not by providing monetary

2   relief for the lost property, and once that process is over,

3   which is known as exhausting the administrative remedy, in

4   order to recover monetary damages in federal court, then

5   somebody can file a federal court lawsuit from the lost

6   property for monetary damages in connection with the property

7   they allege that was lost.  Now, if they do that, then

8   submitting this inventory potentially -- video inventory that

9   contains PII information needs to have some protection.

10          But what I argue is that the one case that they

11   cite for that purpose, for purposes of allowing third parties

12   to make some argument concerning the protective order is when

13   a third party has filed a collateral lawsuit separate and

14   apart from the lawsuit in which the protective order was

15   entered and in that collateral lawsuit that third party

16   argues, "I need to obtain documents that were produced in the

17   first lawsuit under the protective order."

18          But what the plaintiffs are trying to do here by

19   taking out the provisions that indicate that a class member

20   -- boxholder -- can only use inventory for purposes of

21   prosecuting the current litigation is they're trying to

22   anticipate future lawsuits with respect to potential

23   inventories that somebody might seek, and my argument is it

24   doesn't make any sense to do that because a third party, in

25   the event they want to use this confidential information, as

1   the plaintiffs' case culled, can make an argument in the next

2   case, but that's not what is involved here.  This is -- this

3   lawsuit --

4           THE COURT:  So -- right.  And I appreciate all

5   those points.  So basically -- and I -- the Court has a lot

6   of prior experience in the protective order area.  I mean,

7   basically protective orders are to secure information in a

8   confidential way for that litigation.

9           Do you see any way -- and plaintiffs' counsel can

10  answer this later as well.  Do you see any way that there

11  could be a -- so in keeping the privacy interests of these

12  potential third -parties in mind, is there any way that we

13  should -- or the Court could or should say something to the

14  extent of, you know, "When using confidential documents

15  secured from this litigation and collateral litigation, the

16  parties shall maintain the documents confidentiality"?  Would

17  that cure your problem, Mr. Rodgers?

18          MR. RODGERS:  If these third-party absent class

19  members agree to be bound by the terms of the standard

20  protective order, I think that's all I've been asking for.

21          THE COURT:  Mr. Frommer, you're --

22          MR. FROMMER: Your --

23          THE COURT:  -- you're shaking your head.

24          MR. FROMMER:  Yeah, Your Honor.  I'm sorry, but

25  that's a bit of a dodge by my opposing counsel saying that

1    the protective order -- the current protective order that

2    defendants are proposing wouldn't allow those people to use

3    those materials whatsoever.  So it's not really an answer to

4    your question.  Like, would a modification that just allowed

5    -- that told them, "If you're going to use this in collateral

6    litigation, you need to keep it confidential," that's not

7    really a response to your question.

8         But I do believe that there is an easy way to deal

9    with this hypothetical situation where someone after having

10   exhausted administrative remedies needs to file a case in

11   court, and that's simply just -- in can be a simple addendum

12   to this protective order telling those people that in that

13   situation you can file your action -- you can file your

14   action in that court, and then you can seek to include those

15   materials under seal, you can ask the court for permission to

16   file that under seal so as to maintain the confidentiality.

17        That seems to be an easy way of resolving the

18   concern that the Court had and -- while still allowing people

19   to have a route to access to justice, where they're -- found

20   that they have lost or misplaced property and they want to

21   pursue it.  Defendants' approach would take a lot of those

22   claims and make them impossible to pursue whatsoever because

23   they would -- it would quickly -- in most instances -- in a

24   good number of instances, the cost of just seeking a

25   modification so as to use the inventory would outstrip the

1    value of the item under dispute, and that's why we think it's

2    better to do this in one fell swoop because that way the

3    class members have a very clear picture from the beginning of

4    what their rights are and how -- also what their obligations

5    are.

6            THE COURT:  Okay.  Mr. Rodgers, do you want to

7    respond to that?

8            MR. RODGERS:  Yeah.  I get -- this is not a class

9    action for monetary damages for people who say that they've

10   lost or misplaced property.  The Government indicated in its

11   papers that it's a very simple process to submit an

12   administrative tort claim.  You just simply go to a website,

13   find a standard form 95, which is a -- about a two-page

14   document.  They can do that now.  They wouldn't have to wait

15   until this law -- our lawsuit proceeds in order to determine

16   to do that.  They can do that now and submit a claim -- an

17   administrative tort claim.  They do not have to, as counsel

18   says, go out and hire a lawyer.  And most people do not with

19   respect to an administrative tort claim that is submitted.

20   They don't have to go out and hire a lawyer in order to do

21   that.

22            The idea of trying to anticipate what somebody may

23   want to do and what might occur in the future is why counsel

24   decided not a single case without this thing.  This is a case

25   that does not seek -- this class action -- it doesn't seek

1    monetary relief.  It's not a class action for lost or

2    misplaced property.  There is another lawsuit that was filed

3    where somebody claimed that they lost or misplaced property

4    -- I -- we discussed that in our papers -- called the *Mellein*

5    case -- where they wanted the inventory.  No one has to hire

6    a lawyer to do that, and quite frankly, if they did hire a

7    lawyer, we would argue, as we did in the other case, that you

8    have to exhaust your administrative remedy.

9        There are too many circumstances that could occur

10   in the future with respect to needing to use the inventory.

11   If for some reason somebody submits an administrative tort

12   claim and says, "I need this inventory to show that I've lost

13   property" -- and let me back up for just a moment.

14       The plaintiffs have already said everybody knows

15   what's already in their box, and so these inventories are not

16   going to aid anyone, in my view, to make it -- to conclude

17   that there are some additional items out there.  The

18   inventory doesn't do anything as to that.  All the inventory

19   will say is "cash," "miscellaneous coins" -- the written

20   inventory, that is.  It's not going to provide any additional

21   details, but if somebody truly thinks that they need those

22   additional details to submit this administrative tort claim,

23   they can deal with the FBI, and the FBI can say either yes or

24   no, and if they say no and deny the claim, they can file a

25   lawsuit a year down the road.

1     But to try and anticipate with respect to 400 class

2  members, we do not know -- at most, to date 2 have asserted a

3  claim for lost property.  You know, those people, again,

4  already know if property has been lost or not because they've

5  already had items returned to them, but to try and anticipate

6  in the future what those class members should do, other than

7  what's already required by this protective order, is going to

8  be very difficult to do.

9     MR. FROMMER:  Your Honor, if I may --

10     THE COURT:  Okay.  I appreciate it.

11     You can respond to that.  I do have another hearing

12  on calendar but -- and I have a couple more questions for

13  both of you.

14     MR. FROMMER:  Just very briefly, Your Honor, I'm --

15  sorry.  I'll keep this very short.

16     But in that situation when -- I expressly asked

17  opposing counsel in that situation where someone files an

18  administrative claim for lost property and they seek the

19  inventory -- I just asked would he commit -- would the

20  defendants commit to providing those to property owners?  If

21  they had said yes -- to the class members.  If they had said

22  yes, we wouldn't be here today, but they refused to say that.

23  And so if they -- if those class members don't get the --

24  that inventory and then they have to come into court to try

25  to seek it after the FBI says no, that's the very kind of

1    harm that I'm talking about, where a lot of people are just

2    going to give up, and that's what we're trying to forestall.

3            He's right that we aren't bringing a case for lost

4    or damaged property, but we are class counsel, and these are

5    our -- we have a fiduciary relationship with class members,

6    and we can't put them in an untenable position, which is why

7    we're here today.

8            THE COURT:  Do you have a response to that,

9    Mr. Rodgers?

10           MR. RODGERS:  Yeah, there's no untenable position.

11   They already have -- they'll have the inventory as part of

12   the production in this case.  So I don't -- not understand

13   counsel's argument that the Government didn't say, "Yes,

14   we'll produce the inventory in connection with the future

15   administrative tort claims."  All I said was -- in

16   conjunction with that was will we allow -- counsel asked,

17   "Will you allow the class member" -- in this future

18   administrative tort claim -- "to argue about the inventory as

19   part of that claim?" and I said to him, "I don't know if they

20   would allow that or not."

21           I mean, there are 400 class (inaudible).  I can't

22   say what will occur in the future case, but the class members

23   already will have the inventory.  So it's not a question of

24   whether they can -- whether they'll have the inventory or

25   not.  It's a question of whether they need to, for purposes

1    of the protective order, take some future step.  I think in

2    most situations the answer will be no, and the FBI will look

3    at, you know, Claim No. 245 for three missing coins worth

4    $500, and the class member says, "Can I use the inventory

5    that you've already produced?"  The answer will probably be

6    yes, but I can't say that in advance because I'd have to

7    evaluate 400 cases.  And I would do so if this was a class

8    action involving monetary relief, but it's not.  That's not

9    the purpose of this case.

10         THE COURT:  All right.  Well, let me -- I want to

11   ask both of you about the Ninth Circuit case *Foltz v.*

12   *State Farm*.  So they explain in that case that to use

13   protected materials in a collateral litigation that

14   collateral litigant must request a modification of the

15   protective order from the issuing court and make a showing of

16   relevance.  I'm a little stuck on that case -- I need to

17   follow the Ninth Circuit -- because we are talking about

18   future collateral litigation.  It doesn't seem to be

19   contemplated when courts enter protective orders in the

20   litigation currently in front of them.

21         So can you address that, Mr. Frommer.

22         MR. FROMMER:  Yes.  I believe in that situation

23   they're saying under that test the document needs to be

24   relevant to the litigation, and here in any claim for --

25         THE COURT:  But how can it be -- how can it -- if

1   there's no collateral litigation currently, wouldn't that be

2   -- I mean, then -- if the collateral litigation was actually

3   happening and in process, then they could come in -- then the

4   litigants could come in and ask for a modification based upon

5   relevance grounds, but we don't have that situation here.

6           MR. FROMMER:  I don't think that's -- I don't think

7   that's a dispositive difference, Your Honor, because in this

8   situation what we're talking about is a broad -- we know that

9   these inventories will be relevant in every case that --

10  involving lost or mislaid property and so the Court -- choice

11  of the Court is one of two things.  One, we can force class

12  members to come in piecemeal, one at a time, at their own

13  expense and to seek a modification of the order, and as I

14  mentioned, in a lot of those instances, they're not going to

15  do that because the cost of, you know, coming in and having

16  to hire an attorney and make that motion is more than the --

17  more than the value of the property.

18          But since we know they're relevant in every given

19  instance, it seems it's a far more efficient use of not only

20  this Court -- of this Court's resources to deal with this at

21  one point by saying that these class members can use it --

22  and, again, not, like my opposing counsel said, to send it to

23  the press or take it to the world but for just the very

24  limited instance of sharing it with the very entity that

25  created that inventory sheet -- the Government -- as part of

1    it's administrative -- their attempting to pursue a claim for

2    loss or -- or lost or misplaced property.  So --

3              THE COURT:  Okay.  Would you -- I appreciate that

4    answer.

5              Mr. Rodgers, do you want to talk about *Foltz*.  I

6    just have a couple more questions.

7              MR. RODGERS:  Yeah.  I think *Foltz* is -- you know,

8    it's collateral litigation.  It's clear.  We also cited a

9    district court case that dealt with that.  It's -- you have

10   to have a collateral litigation in place, and there's no

11   collateral litigation here.

12             THE COURT:  Okay.  So presumably -- as we know, the

13   class is limited to people who have received their -- the

14   property has been returned to them from their safety deposit

15   box.  Presumably, in returning that property to them, they

16   were given an inventory -- it seems like that would be a

17   reasonable thing -- or were they just given the property?

18             MR. RODGERS:  They were given a receipt, and as

19   counsel's papers indicate, the receipt there is the

20   inventory.  So they know -- they have the inventory, in

21   essence.

22             THE COURT:  So they have -- the receipt is an

23   inventory basically?

24             MR. RODGERS:  Correct.

25             THE COURT:  Okay.

1           MR. RODGERS:  Correct.  In substance.

2           THE COURT:  All right.  I -- the Court's going to

3    give a ruling really pretty quickly -- maybe today, tomorrow

4    -- on this issue.

5           And I want to turn quickly to the motion to compel

6    and just ask plaintiffs' counsel: Mr. Frommer, was there an

7    adequate meet-and-confer here regarding that three-day

8    deadline?  I -- it just doesn't seem that there was but --

9           MR. FROMMER:  I'm sorry.  I don't -- I'm not sure I

10   quite understand, Your Honor.  The meet-and-confer with

11   regards to the motion to compel?  We met with them --

12   immediately we scheduled a call with them and had a meet-and-

13   confer to talk through all the objections and -- that were

14   listed in their January 10th responses, all of which are

15   boilerplate, and at that meeting, as our letter indicated,

16   the defendants' counsel walked away from all those

17   substantive objections and said, "No.  We're willing to

18   produce documents.  We're willing to answer these

19   interrogatories.  We just need to get this protective order

20   in place."

21           And that's what we're -- and so that's what we're

22   concerned about here is that following, you know, what -- the

23   resolution of this particular issue that the defendants are

24   saying they're going to take weeks, if not months, to turn

25   over documents, documents which they should have had fully

1   ready in January, and that has a prejudicial effect on our

2   ability to bring the -- to litigate this case, particularly

3   given Judge Klausner's June 21st deadline --

4           THE COURT:  I understand.  Okay.

5           MR. FROMMER:  -- and his reluctance to extend

6   deadlines.

7           THE COURT:  Thank you.

8           I'm also -- the Court is also sort of compelled by

9   the idea that this joint stipulation does not really comply

10  with the Local Rule, that it doesn't include verbatim

11  interrogatory responses, and I'm just wondering why that

12  isn't so.

13          MR. FROMMER:  Why we didn't include all the

14  responses to all the interrogatories?  Because they had

15  waived -- they expressly -- I asked them, "Please tell me

16  every substantive objection you wish to maintain so that we

17  can deal with this in one fell swoop in the joint

18  stipulation," and as my letter -- after January 21st

19  indicates, they walked away from those substantive objections

20  and said, "No.  The only issue is that concerning the

21  protective order."

22          THE COURT:  All right.

23          MR. FROMMER:  So that --

24          THE COURT:  Mr. Rodgers, have all the rules been

25  complied with here with respect to the motion to compel?

1          MR. RODGERS:  No, the rules haven't been complied

2     with at all, and quite to the contrary, the Government

3     indicated that it was maintaining their objections because we

4     had to resolve the protective order.  It is clear that they

5     haven't complied with the Local Rule.  Had they done so, we

6     would have dealt with every single interrogatory and every

7     single document request.  That wasn't done.

8          This issue of three days was never discussed in any

9     meet-and-confer.  We had a meet-and-confer after we submitted

10    to plaintiffs' counsel the final protective order, in our

11    view, and the idea of three days was never discussed.  Had it

12    been discussed, I would have reiterated problems that I have

13    in conjunction with doing it in three days.  As I've

14    indicated, you know, once the protective order is in place,

15    we will produce and continue to produce at all undue speed,

16    but, you know, three days is an impossibility, and that issue

17    was not discussed in any way, shape, or form at all.

18          THE COURT:  Okay.  Thank you.

19          The Court is -- I'm not going to give a tentative

20    right now, but if the Court should deny the motion to compel

21    based upon these grounds, obviously I would -- the Court

22    would entertain a motion on shortened notice, and we could

23    have a hearing rather quickly.  I'm not saying that's exactly

24    what's going to happen here, but I just wanted to say that.

25          Is there anything further that you haven't been

1   able to say that you think the Court should know.

2          MR. FROMMER:  No, Your Honor.  Just that it's been

3   over a year now since the raid and over five months since we

4   promulgated discovery, and we've received nothing in this

5   case, and we'd ask that the Court help move this forward

6   quickly so that we can vindicate our clients' rights.

7          THE COURT:  I think that's a reasonable request.

8          Mr. Rodgers?

9          MR. RODGERS:  No, Your Honor.  I will just add that

10  we have attempted and will continue to attempt to satisfy our

11  discovery obligations once the protective order is in place.

12  We'll be working to produce to counsel, and we'll give

13  counsel updates with respect to where we are.

14         THE COURT:  Okay.  Thank you.  Thank you for your

15  arguments and your papers.  They were very helpful.

16         MR. FROMMER:  Thank you, Your Honor.

17         THE CLERK:  Thank you.  This court's in recess.

18      (Proceedings adjourned at 11:45 a.m.)

19  ///

20  ///

21

22

23

24

25

1

2

3

4

5                              CERTIFICATE

6        I certify that the foregoing is a correct transcript

7   from the electronic sound recording of the proceedings in the

8   above-entitled matter.

9   /s/ Julie Messa                April 9, 2022
    Julie Messa, CET**D-403        Date
10  Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25