

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
Joe Gay^
jgay@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* Admitted pro hac vice.
^Pro hac vice application pending.

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**OPPOSED FIRST PLAINTIFFS' *EX PARTE* APPLICATION FOR ORDER SETTING A SCHEDULE FOR PRODUCTION OF DOCUMENTS AND DISCOVERY MOTIONS**<br><br>(*Memorandum of Points and Authorities Attached Hereto; Filed Concurrently with Declaration of Nilay U. Vora and Supporting Exhibits; Declaration of Robert Frommer; and Proposed Order*)<br><br>DISCOVERY MATTER<br><br>Judge: Hon. Margo A. Rocconi<br>Discovery cutoff date: TBD<br>Pre-Trial Conference Date: TBD<br>Trial Date: July 26, 2022<br>Complaint Filed: May 27, 2021<br>Amended Complaint Filed: June 9, 2021 |

**PLEASE TAKE NOTICE** that Plaintiffs Paul Snitko, Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May, as representatives of a certified class, hereby move for an order to set a schedule for production of documents, as well as for relief establishing a schedule for the parties to expeditiously resolve any dispute regarding the scope of production.

Although Plaintiffs in this case served merits discovery on **November 5, 2021**, Defendants (the United States of America and several federal officials, sued in their official capacities) have produced only a small handful of documents—and almost all of the documents produced so far are *already* publicly available on the dockets in other cases. On **March 30, 2022**, in an Order approving a protective order to allow for production of confidential, non-public materials sought by Plaintiffs, the Court stated that "[t]here is no reason why Defendants cannot *immediately* provide the list of class members and other requested documents to the Plaintiffs." Dkt. 90 at 8 n.3 (emphasis added). Three weeks after that Order, the government finally provided the list of class members but *still* has not produced the requested documents. The most recent email from counsel for the government, sent April 20, 2022, refused to commit to a firm date for production. In other words, the government has indicated that it intends to produce responsive documents but will not say *when* those documents will be produced.

Emergency relief is requested because the government's refusal to commit to a schedule for production of documents in this case creates a significant risk that these Plaintiffs—and the broader class—will be prejudiced in their ability to present the significant constitutional claims at issue in this case. The Court set a deadline of **June 21, 2022** for opening briefs in this case, and the case is scheduled for trial on the briefs on July 26, 2022. Depositions are scheduled to begin as early as April 28, with the bulk of depositions (including the 30(b)(6) deposition) occurring May 16-27. If the government does not produce documents in a timely fashion, Plaintiffs will not have access to documents for depositions and may not even have access to

documents by the time opening briefs are due. And if there are any deficiencies in the government's production, there will be no time to litigate any such issues before depositions occur and briefs are due.

To address this risk of prejudice, this *Ex Parte* Application seeks an order that would  (1) order the government to begin producing documents as soon as they are available and set a firm date of **May 6, 2022** for the government to finish its production, (2) order the government to specifically identify, in writing within 7 days, any categories of responsive documents that it intends to withhold from its upcoming production, (3) order the government to provide a complete privilege log no later than May 6, 2022, and (4) adopt an expedited briefing schedule for any subsequent motion to compel. In the alternative, and at a minimum, the government should be ordered to show cause why relief should not issue on such terms.

Defendants are represented by Assistant United States Attorneys Andrew Brown (Andrew.Brown@usdoj.gov), Victor Rodgers (Victor.Rodgers@usdoj.gov), and Maxwell Coll (Maxwell.Coll@usdoj.gov), 1100/1400/1200 United States Courthouse, 312 North Spring Street, Los Angeles, CA 90012, Telephone: (213) 894-0102/2569/1785. Plaintiffs informed Defendants' counsel of their intent to file this Application via email on April 20, 2022, and Plaintiffs provided the oral notice required by Local Rule 7-19.1 at 10:00 a.m. on April 21, 2022 and served this Application on Defendant's counsel via email later that same day. Plaintiffs informed Defendants' counsel that their response to the Application, if any, would be due no more than 24 hours from the electronic filing of the Application.

When the parties conferred the morning of April 21, AUSA Victor Rodgers stated that the government intends to oppose the Application. Vora Decl. ¶ 12; Frommer Decl. ¶ 3. AUSA Rodgers stated that production of responsive documents is the responsibility of several departments within the FBI, only some of which he is able to communicate with, and that due to the FBI's internal procedures he is unable to provide a firm date for production. Frommer Decl. ¶ 4. AUSA Rodgers

1    reiterated that the government intends to produce documents in response to

2    Plaintiffs' requests, including, in particular, RFPs 6, 7, 8, and 9. *Id.* However, he

3    stated that because of the internal processes of the FBI the government is unable to

4    commit to a firm schedule for production of those documents. *Id.*

5
     Dated: April 21, 2022

6                                                    Respectfully Submitted,

7
                                                     /s/ Robert Frommer
8
                                                     **THE INSTITUTE FOR JUSTICE**
9                                                    Robert Frommer*
                                                     rfrommer@ij.org
10                                                   Joseph Gay^
                                                     jgay@ij.org
11                                                   901 N. Glebe Rd., Suite 900
                                                     Arlington, VA 22203
12                                                   Tel. (703) 682-9320

13                                                   Robert E. Johnson*
                                                     rjohnson@ij.org
14                                                   16781 Chagrin Blvd., Suite 256
                                                     Shaker Heights, OH 44120
15                                                   Tel. (703) 682-9320

16                                                   *Admitted pro hac vice.*

17                                                   ^Motion for pro hac vice pending.*

18
                                                     **THE VORA LAW FIRM, P.C.**
19                                                   Nilay U. Vora (SBN 268339)
                                                     nvora@voralaw.com
20                                                   Jeffrey Atteberry (SBN 266728)
                                                     jatteberry@voralaw.com
21                                                   201 Santa Monica Blvd., Suite 300
                                                     Santa Monica, CA 90401
22                                                   Tel. (424) 258-5190

23                                                   *Attorneys for Plaintiffs*

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE ........................................................................................................ 1

TABLE OF AUTHORITIES .......................................................................... ii

I.      INTRODUCTION ............................................................................. 1

II.     BACKGROUND ............................................................................... 2

      A.    The USPV Search ................................................................ 2

      B.    Initial Decisions .................................................................. 4

      C.    Discovery Prior to the Court's March 30 Order .................. 5

            *i.*   *The November 2021 Requests* ............................. 5

            *ii.*  *The Government's Extension Request* ................ 5

            *iii.* *The Government's Response* ............................ 6

            *iv.* *The Initial Meet-and-Confer* ........................... 7

      D.    Discovery Subsequent to the Court's March 30 Order .......... 8

III.    LEGAL STANDARD ....................................................................... 12

IV.    ARGUMENT .................................................................................. 12

      A.    The Court's Intervention Is Required To Set A Schedule That Will Allow The Parties To Complete Discovery In A Timely Fashion ................................................................ 12

      B.    This Application Meets The Standard For *Ex Parte* Relief ..... 16

            1.   Plaintiffs Are Without Fault In Creating The Need For The Court's Intervention ....................................... 16

            2.   Plaintiffs Will Be Irreparably Prejudiced Absent The Court's Intervention ................................................ 18

V.     CONCLUSION ............................................................................... 19

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Altair Instruments, Inc. v. Telebrands Corp.*,
No. 2:19-CV-08967-PSG-JC,
2020 WL 6106821 (C.D. Cal. July 10, 2020) .........................................12,14, 18

*City of Colton v. Am. Promotional Events, Inc.*,
No. 09-CV-01864, 2011 WL 13224072 (C.D. Cal. May 26, 2011) ..................15

*City of Riverside v. Greyhound Lines, Inc.*,
No. EDCV16796ABSPX, 2017 WL 11632085 (C.D. Cal. May 16, 2017).......19

*Does 1-6 v. United States*,
No. 21-cv-3254 (C.D. Cal.) .................................................................................6

*In re Search and Seizure of Box No. 8309 at U.S. Private Vaults*,
No. 21-cv-3554 (C.D. Cal.)............................................................................3, 11

*Martin v. City of Barstow*,
No. EDCV132193ABSP, 2015 WL 12743593 (C.D. Cal. May 5, 2015)..........19

*Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995)...................................................................12

*Rivas v. Gov't Emps. Ins. Co.*,
No. 20-cv-00306, 2020 WL 8172993 (D. Nev. Apr. 23, 2020)........................15

*Sarieddine v. D&A Distrib., LLC*,
No. 17-cv-2390, 2018 WL 5094937 (C.D. Cal. Apr. 6, 2018) .........................15

*United States v. Johnson*,
889 F.3d 1120 (9th Cir. 2018)............................................................................2

*United States v. W.R. Grace*,
526 F.3d 499 (9th Cir. 2008) ............................................................................14

*Vasquez v. County of Stanislaus*,
No. 19-cv-01610, 2020 WL 6728933 (E.D. Cal. Nov. 16, 2020)....................15

## CONSTITUTIONAL PROVISION

U.S. Const. amend. IV ...............................................................................1, 2, 4, 5

## RULES

Fed. R. Civ. P. 37(a) ......................................................................................14

Fed. R. Civ. P. 83(a) ......................................................................................18

Fed. R. Civ. P. 83(a)(2)...................................................................................18

ii

## I.   INTRODUCTION

On March 30, 2022, after approving a protective order to allow for production of confidential non-public documents, the Court stated that "[t]here is no reason why Defendants cannot *immediately* provide the list of class members and other requested documents to the Plaintiffs" and "urge[d] Defendants to take care to timely provide and respond to all pending discovery requests." Dkt. 90 at 8 n.3 (emphasis added). Three weeks after the Court's Order, the government still has not produced the vast majority of the requested documents.[1]

The Court's March 30 Order directed Plaintiffs to "conduct proper meet and confer sessions addressing the disputed discovery matters," Dkt. 90 at 8, and since that time Plaintiffs have conferred with counsel for the government in an attempt to (1) establish a schedule for production and (2) ascertain whether any categories of responsive documents will be withheld when production occurs. The government has assured Plaintiffs' counsel that documents will be produced. At the same time, however, the government has refused to agree to a firm timeline for production, and, over the course of these communications, the estimated date for production has moved backwards in time. In addition, while the government has assured Plaintiffs that documents will be produced, the government has left open the door to withholding unspecified documents from its eventual production. The government has declined even to commit to a date to provide a privilege log.

As a result, there is a real and significant risk that Plaintiffs and the broader certified class will be prejudiced in their ability to present the important Fourth Amendment claims at issue in this case. Opening briefs in this case are due June 21, 2022, and the case is scheduled for trial on the briefs on July 26, 2022. With the parties only *two months* out from the first briefing deadline, Plaintiffs have no choice but to start taking depositions. Plaintiffs will be forced to take some or all

---

[1] Defendants in this case include the United States of America, as well as federal officers sued in their official capacities. For ease of reference, this memorandum refers to Defendants collectively as "the government."

1   depositions without access to documents, and Plaintiffs may not even have access

2   to the requested documents by the time briefs are due. Moreover, if the

3   government's eventual production is in any way deficient, it increasingly appears

4   that there will not be time to litigate any resulting discovery dispute.

5       In order to address this risk of prejudice, this *Ex Parte* Application asks the

6   Court to (1) order the government to begin producing documents as soon as they

7   are available and set a firm date of May 6, 2022 for the government to finish its

8   document production, (2) order the government to specifically identify, in writing

9   within 7 days, any categories of responsive documents that it intends to withhold

10   from its upcoming production, (3) order the government to provide a complete

11   privilege log no later than May 6, 2022, and (4) adopt an expedited briefing

12   schedule for any subsequent motion to compel.

13   **II.   BACKGROUND**

14       A.   <u>The USPV Search</u>

15       This Application arises out of one of the most significant Fourth Amendment

16   cases being litigated in the country today. On March 17, 2021, the government

17   obtained a warrant that authorized it to seize the "business equipment" of U.S.

18   Private Vaults—a safe deposit company in Beverly Hills. The warrant specifically

19   stated that the "warrant *does not authorize* a criminal search or seizure of the

20   contents of the safety deposit boxes." Yet the government broke open every box in

21   the U.S. Private Vaults facility.

22       The government has attempted to justify its search of these boxes as an

23   inventory search. The usual purpose of an inventory search is to prevent theft and

24   loss by creating a record of seized property, *see United States v. Johnson*, 889 F.3d

25   1120, 1128 (9th Cir. 2018), but this was a curious inventory search insofar as it

26   involved opening locked boxes—thereby *creating* a risk of theft and loss that would

27   not otherwise exist. But, even setting that aside, the government represented that its

28   inventory search would be limited in scope: The warrant application stated that the

government would search the boxes to "look for contact information or something which identifies the owner," and stated that, under official FBI policies, the inspection "should extend no further than necessary to determine ownership."

Documents already in the public record show that the government blazed past these limitations. While many box holders placed an envelope with identifying information outside the inner sleeve of the box, the government continued with its search even after finding that identifying information. *See, e.g.*, Declaration of Benjamin N. Gluck in Support of First Amended Complaint for Relief Under Fed. R. Crim. Pro. 41; Requesting Missing Property and Inventory and Records, *In re Search and Seizure of Box No. 8309 at U.S. Private Vaults*, No. 21-cv-3554, Dkt. 16 (C.D. Cal.). The government also ran currency from the boxes past drug dogs— an act with no connection to any inventory search—and opened sealed envelopes inside the boxes to inspect and copy the contents. *Id*.; Dkt. 45 at 8. The inventories that the government produced did not contain information that would be useful to an actual inventory; quantities of gold coins, for instance, were described only as "misc. coins." *See* Exhibit B to Declaration of Nicole R. Van Dyk in Support of First Amended Complaint, *In re Search and Seizure of Box No. 8309 at U.S. Private Vaults*, No. 21-cv-3554, Dkt. 13-4 (C.D. Cal.). In other words, the government sought out information irrelevant to any inventory while failing to record information that would be useful to protect against theft and loss.

The government followed up its search by commencing civil forfeiture proceedings against the contents of hundreds of boxes containing millions of dollars of property. *See* Dkt. 44-8. The forfeiture notices that the government sent to box holders did not identify the factual or legal basis for the forfeiture proceedings, instead citing a grab-bag of different legal provisions. *See, e.g.*, Dkt. 44-9. Through these notices, the government sought to terminate box holders' property rights.

B.   <u>Initial Decisions</u>

On June 22, 2022, the Court granted several of the individual Plaintiffs a temporary restraining order, entering relief that barred the government from forfeiting those Plaintiffs' property "without first sending forfeiture notices that identify the specific factual and legal basis for the Government's determination to commence civil forfeiture proceedings." Dkt. 52 at 7. The Court found that the "Plaintiffs [had] established a likelihood of success on the merits of their argument that the anemic notices violate their right to due process of law." *Id.* at 5. The Court converted the TRO to a preliminary injunction on July 16, 2021. Dkt. 58.

Then, on July 23, 2021, the Court entered an order that granted additional preliminary injunctive relief to Plaintiff Joseph Ruiz. Dkt. 60. The government was continuing to hold Mr. Ruiz's property without explanation, and the Court found that this ongoing seizure violated the Fourth Amendment insofar as the government had failed to offer "any specific factual or legal justification for the Government's retention of" Ruiz's property. *Id.* at 5; *see also id.* at 6.

The government subsequently terminated its civil forfeiture proceedings with respect to all the individual Plaintiffs, and, on September 9, 2021, the Court entered an order that dismissed several counts of the First Amended Complaint as moot but that allowed the case to proceed as to Count I. *See* Dkt. 75. The Court explained that Count I challenged the legality of the initial search of the U.S. Private Vaults safe deposit boxes and held that "Plaintiffs plausibly allege that the agents that conducted the search of Plaintiffs' boxes did in fact exceed the scope of the inventory search authorized by the warrant." *Id.* at 6. The Court also held that this Fourth Amendment claim was not moot insofar as Plaintiffs sought relief ordering the government to "return or destroy all records that the Government created during the course of its search and seizure." *Id.* at 5–6.

Finally, on October 12, 2021, the Court entered an order certifying the case as a class action in order to allow these individual Plaintiffs to pursue this Fourth

Amendment claim on behalf of a class of all U.S. Private Vaults box holders who identified themselves to the FBI in order to claim their property and ultimately had their property returned. *See* Dkt. 78.

C.   <u>Discovery Prior to the Court's March 30 Order</u>

   *i. The November 2021 Requests*

Following some initial discovery focused on the issue of class certification, Plaintiffs served the government with their first merits-focused discovery on **November 5, 2021**. *See* Vora Decl. Ex. A. Because the sole remaining claim in this case focuses on the legality of the government's search of the U.S. Private Vaults facility—and, specifically, whether that search can be justified as an "inventory"—the requests sought information and documents to establish the manner in which the government conducted its search. Among other things:

- RFP 6 sought all written directions provided to officers who conducted the search.
- RFP 7 sought all internal policy documents applied to guide the conduct of the officers who conducted the search.
- RFP 8 sought all written inventories produced during the search of the boxes of class members.
- RFP 9 sought all video recordings showing the manner in which government officials conducted the search of class members' boxes.
- RFP 10 sought policy documents that will govern the subsequent retention of documents and other records produced during the search.

*See id.*

   *ii. The Government's Extension Request*

On **November 29, 2021**, counsel for the government emailed to request an extension of time to respond to these requests. *See* Vora Decl. Ex. B at 20. While Plaintiffs indicated that they were willing to agree to a limited extension, Plaintiffs suggested that the government at least "stick by the December 8 due date in terms

of providing to Plaintiffs any objections they might have regarding Plaintiffs' discovery requests" so that Plaintiffs could begin the process to ripen any such objections into a motion to compel. *See id*. at 18. Plaintiffs' counsel expressed concern that, if objections were not timely surfaced, there would not be adequate time to litigate any issues concerning the scope of the government's production. *Id.* Counsel for the government rejected this request, stating, "I will not know what objections I will be asserting, until such time as I have all the documents I intend to produce." *Id.* at 17.

Following some additional back-and-forth on this proposed extension, counsel for the government explained that an extension was necessary to accommodate "the FBI employees who must assemble the documents necessary to respond to discovery." *See id*. at 16. Counsel for the government insisted that "this is a good faith request." *Id.* On the understanding that the FBI would use the additional time to assemble the documents, Plaintiffs' counsel agreed to extend the government's response date on these discovery requests to January 7. *Id.* at 15.

*iii. The Government's Response*

Notwithstanding the government's representation that an extension was necessary to allow the FBI to assemble documents, the January 7 production did not include *any* documents in response to Plaintiffs' requests for production of documents. *See* Vora Decl. Ex. C. The response raised a number of objections but did not include a privilege log or state whether documents were withheld pursuant to those objections. *Id.*

On **January 14, 2021**, the government finally produced a document in response to Plaintiffs' discovery requests. The document that the government sent was a full copy of the search and seizure warrants, as well as the underlying applications and affidavits. But this document was of limited utility, given that the warrant and affidavit had already been unsealed in a related action. *See Does 1-6 v. United States*, No. 21-cv-3254, Dkt. 20 (C.D. Cal.).

*iv. The Initial Meet-and-Confer*

The parties met to confer on **January 24, 2022**, and following that meeting Plaintiffs sent a letter to encapsulate the discussion. *See* Vora Decl. Ex. D (letter to government's counsel); Vora Decl. Ex. E at 39–40 (email transmission of letter). The letter sought to confirm Plaintiffs' understanding, based on the meet and confer, that the government had committed to produce documents in response to the various requests for production as soon as a protective order was in place. *See* Vora Decl. Ex. D. Specifically:

- With respect to RFP 6, seeking instructions to guide the search, the letter stated that "[y]ou said Defendants intend to produce documents responsive to this request" and reiterated the relevant date range.

- With respect to RFP 7, seeking policy documents governing the search, the letter stated that "[w]e understand that Defendants intend to produce the documents responsive to this request."

- With respect to RFPs 8 and 9, seeking written inventories and video recordings, the letter stated "[w]e understand that Defendants intend to produce the documents responsive to these requests."

- With respect to RFP 10, seeking policy documents governing retention of documents, the letter stated that "[w]e understand that Defendants intend to produce the documents responsive to this request."

*See id.* Counsel for the government responded to this letter three days later with an email attaching a proposed protective order. *See* Vora Decl. Ex. E at 39. Counsel for the government did not suggest that the understanding expressed in Plaintiffs' letter was in any way incorrect.

It soon became clear that the parties could not agree on the contours of a protective order, and the parties worked to present that issue to the Court. *See id.* at 33–39. In the course of preparing those motion papers, counsel for Plaintiffs emailed again to confirm whether there were any other issues that ought to be

7

briefed. Vora Decl. Ex. F at 49–50. Government's counsel declined to express any further objections beyond the protective order issue, instead stating that his "objections provide[d] that the government will produce information once an appropriate protective order is entered." *Id.* at 48.

D.    Discovery Subsequent to the Court's March 30 Order.

On **March 30, 2022**, the Court entered an order resolving the dispute concerning the protective order. *See* Dkt. 90. In addition, while Plaintiffs had asked the Court to order the government to produce documents promptly following the entry of a protective order, the Court declined that request, explaining that the Court would not order the government to produce documents until the parties had "conduct[ed] proper meet and confer sessions." *Id.* at 8. The Court, however, "urge[d] Defendants to take care to timely provide and respond to all pending discovery requests" and expressed that there was "no reason why Defendants cannot immediately provide the list of class members and other requested documents to the Plaintiffs." *Id.* at 8 n.3.

On **April 11, 2022**, when documents still had not been produced, Plaintiffs' counsel emailed government counsel to ask for a "date certain for production." Vora Decl. Ex. G at 54. Plaintiffs' counsel began scheduling depositions following the entry of the protective order—in anticipation of the upcoming briefing and trial dates—and explained that "we need the documents to move forward." *Id.* Counsel for the government responded that he would send an update on the document production "tomorrow or Wednesday" and that "I need to check a couple of things, again, with the FBI first." *Id.*

On **April 13, 2022**, counsel for Plaintiffs again emailed counsel for the government seeking to establish "a plan to complete both written discovery and depositions in time to meet the deadlines in the current briefing schedule." Vora Decl. Ex. H at 60. Later that day, counsel for the government responded to state that the government would supplement its interrogatory responses on April 19. *Id*. at 59.

With respect to production of documents, the government committed to send one additional policy document on April 19. *Id.* With respect to all other documents, however, the government stated that the FBI's Discovery Unit was just now reviewing the documents and that they still had not been reviewed by the FBI's Office of General Counsel. *Id.* Counsel stated that he would produce documents in "waves" and stated, "I estimate that the full production will be completed within three weeks." *Id.* Three weeks from April 13 would put the government's production at May 4, 2022.

On **April 14, 2022** the parties conferred via telephone to discuss the schedule for production of documents. *See* Vora Decl. ¶ 2. Plaintiffs asked the government to commit to a firm May 6, 2022 deadline to produce documents. *Id.* ¶ 3. In addition, out of concern that Plaintiffs still did not know exactly what documents (if any) the government intended to withhold, Plaintiffs asked the government to commit to providing a privilege log by a date certain. *Id.* ¶ 4. Plaintiffs also pressed the government further about what documents exactly the government was preparing to produce. *Id.* ¶ 6. Notably, although the government had previously committed to produce documents in response to RFP 10, *see supra* pp. 7–8, the government at the meet-and-confer now suggested that it had not actually decided whether it would produce documents in response to that request. *See* Vora Decl. ¶ 7.[2]

On Friday, **April 15, 2022,** the government sent an additional email providing an update on matters discussed at the conference. In this email, the government's counsel stated that the "FBI cannot commit to a May 6, 2022 100% production of everything you request." Vora Decl. Ex. I at 66–67. In response to Plaintiffs' request that the government commit to a time to produce a privilege log,

---

[2] To be clear, this Application does not seek to resolve any dispute with respect to RFP 10, and Plaintiffs will move separately on that question if the parties are unable to resolve that dispute. Plaintiffs mention the government's change of position with respect to RFP 10 to illustrate the need to establish a deadline for the government to specify any categories of documents that will not be produced.

government counsel referenced back to this same statement. *Id*. Contrary to prior representations that the government would respond to RFP 10, the government flatly stated that documents responsive to RFP 10 "will not be produced," and yet, at the same time, invited Plaintiffs to provide "any argument as to their relevancy." *Id.*

Plaintiffs responded to this email on Monday, **April 18, 2022**, asking whether the government could "commit that production will at least be *substantially* complete before the Zellhart deposition on May 6." *Id*. at 64–66. Given the government's commitment to produce documents in "waves," Plaintiffs' counsel also asked when the "first wave of documents" would be produced. *Id.* at 65. Plaintiffs' counsel also once again expressed that "I just want to nail down exactly what documents the government is preparing to produce" and asked questions to that effect. *Id.* As invited by the government, Plaintiffs' counsel also explained the relevance of the documents sought by RFP 10, while also contending that the time for the government to raise any relevancy objection had long since passed. *Id.*

On **April 19, 2022,** the government served updated interrogatory responses, as well as a single policy document.[3] Then, on **April 20, 2022**, counsel for the government again responded to Plaintiffs' counsel to reiterate that its earlier "three week" estimate (which would have had production completed by May 4, 2022) was "an estimate of the production date, and not a firm 100% commitment." Vora Decl. Ex. I at 63. Counsel also reiterated that "I cannot commit 100% to producing the [privilege] log by May 6." *Id.* Counsel also significantly walked back his earlier commitment to provide discovery in "waves," stating: "As to the written documents, and my statement that I hope to produce them in waves, I do not know the exact date when the *first* wave will start, but I believe it will be during the week of May 2." *Id.* (emphasis added). In other words, while the government previously

---

[3] Despite having delayed production ostensibly to secure a protective order, the government did not designate the policy document as confidential.

estimated that production would occur in waves and be *complete* by May 4, the government now estimated these "waves" would *begin* the week of May 2.

For the first time, the government's counsel also drew a distinction between the time for production of written documents and video evidence.[4] *Id.* Counsel stated that "I believe" production of "written documents" would be "substantially complete" by May 6, 2022—a date roughly consistent with the earlier May 4 estimate, but hard to square with the statement that production would occur in "waves" beginning May 2. *Id.* However, counsel stated that "the videos are more complicated in the redaction process[5] and transmission to you." *Id.* Counsel also stated that they were working through technical difficulties "transmitting [the videos] within the FBI," which apparently involves "burning" the videos to CDs or other similar media. *Id.* Counsel did not provide *any* estimate for production of video evidence, even though that evidence is critical to Plaintiffs' claims.

Finally, counsel for the government made clear that the requested documents would not be available in time for depositions in this case, stating: "If you want documents prior to the depositions, then you should probably wait until I can give you additional updates." *Id.*

---

[4] From public filings in other cases, Plaintiffs know that the government produced video recordings of its search of the boxes in this case. *See* Declaration of Benjamin N. Gluck in Support of First Amended Complaint for Relief Under Fed. R. Crim. Pro. 41; Requesting Missing Property and Inventory and Records, *In re Search and Seizure of Box No. 8309 at U.S. Private Vaults*, No. 21-cv-3554, Dkt. 16 (C.D. Cal.). These videos are an extremely important part of the record in this case, insofar as they show the scope of the government's search and the procedures followed therein, and, as such, they are the subject of RFP 9.

[5] Plaintiffs are uncertain what (if anything) would need to be redacted from the videos, given that they will be produced subject to the protective order, and when Plaintiffs asked the government's counsel he was not able to definitively say what was being redacted (though he suggested the government might be redacting references to internal FBI case numbers). *See* Frommer Decl. ¶ 5. Again, however, Plaintiffs mention this not to litigate any question concerning the scope of production but, rather, to highlight the need to establish a deadline for the government to specify in detail what will or will not be produced.

---

11

The parties again conferred telephonically on **April 21, 2022**, and at that conference AUSA Victor Rodgers once again confirmed that the government fully intends to produce documents in response to RFPs 6, 7, 8, and 9. *See* Frommer Decl. ¶ 4. However, AUSA Rodgers explained that production involves cooperation between multiple departments of the FBI, only some of which he is able to communicate with, and that as a result the government is unable to commit to produce by a certain date. *Id.*

## III. LEGAL STANDARD

"A party seeking *ex parte* relief must demonstrate: (1) the moving party is without fault in creating the crisis that requires *ex parte* relief or the crisis occurred as a result of excusable neglect; and (2) the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Altair Instruments, Inc. v. Telebrands Corp.*, No. 2:19-CV-08967-PSG-JC, 2020 WL 6106821, at *2 (C.D. Cal. July 10, 2020) (quoting *Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)).

## IV. ARGUMENT

Part A explains the need for the relief sought by this Application—namely, to set a schedule that will allow for the timely production of documents as well as the timely resolution of any disputes concerning the scope of the government's production. Part B explains that this Application meets the standard for *ex parte* relief, as Plaintiffs are without fault in creating the need for this relief and will be irreparably prejudiced if relief is denied.

### A. The Court's Intervention Is Required To Set A Schedule That Will Allow The Parties To Complete Discovery In A Timely Fashion.

This Application seeks an order that would set a schedule for production of documents and for the timely resolution of any disputes concerning the scope of the government's production. As set out in the proposed order filed concurrently with the Application, the proposed schedule would (1) order the government to begin

producing documents as soon as they are available and set a firm deadline of **May 6, 2022**[6] for the government to finish its production, (2) order the government to specifically identify, in writing within 7 days, any categories of responsive documents that it intends to withhold from its upcoming production, (3) order the government to provide a complete privilege log no later than May 6, 2022, and (4) adopt an expedited briefing schedule for any subsequent motion to compel.

This relief is necessary and appropriate to avoid prejudice to the ability of Plaintiffs and the broader class to litigate the important constitutional issues presented by this case. Opening briefs in this case are due in only *two months*, on **June 21, 2021**. *See* Dkt. 83. Given that impending deadline, Plaintiffs have no choice but to move forward with depositions—with the first deposition set for April 28 and a subsequent deposition set for May 6. Vora Decl. ¶ 9. The bulk of depositions, including the 30(b)(6) deposition, are scheduled to occur May 16–27. *Id.* It already appears that Plaintiffs will need to take some depositions without access to documents, and, absent an order setting firm dates for production, it is possible that Plaintiffs will not have documents for *any* of the depositions in this case. Indeed, there is no guarantee that Plaintiffs will have documents in time to include them with their opening briefs.

The government's recalcitrance also creates a significant risk that Plaintiffs will be deprived of a meaningful opportunity to challenge any deficiency in the government's production. As things currently stand, the government has generally confirmed that it intends to produce documents in response to the Plaintiffs' discovery requests, but, at the same time, it has left the door open to withholding some unspecified documents from that production. *See* Vora Decl. ¶ 8. This appears to be because—five months after the discovery requests were served—the documents *still* have not been reviewed by FBI's Office of General Counsel. *See*

---

[6] The proposed May 6 deadline is reasonable given the government's estimate on April 13 that discovery would be complete by May 4, 2022. *See* Vora Decl. Ex. H at 59.

1  Vora Decl. Ex. H at 59 ("Once coded, the documents will be reviewed by FBI's

2  Office of General Counsel and then produced."). If Plaintiffs learn for the first time

3  in May that the government is withholding important documents, that will leave

4  insufficient time to litigate any dispute in advance of depositions and, potentially,

5  insufficient time to resolve any such dispute in advance of the June 21 deadline for

6  opening briefs.

7      The Court also has authority to provide the requested relief. Plaintiffs are not

8  moving to compel any *specific* categories of documents—as the government has not

9  definitively refused to produce anything in particular—but are bringing this

10  Application pursuant to Federal Rule of Civil Procedure 37(a) insofar as that Rule

11  allows the Court to set hard deadlines for production. *See*, *e.g.*, *Altair Instruments*,

12  2020 WL 6106821, at *2. The Court also has inherent authority to set deadlines for

13  discovery, in order to "effectuat[e] the speedy and orderly administration of

14  justice." *See*, *e.g.*, *United States v. W.R. Grace*, 526 F.3d 499, 508–09 (9th Cir.

15  2008) (en banc). "There is universal acceptance in the federal courts that, in

16  carrying out this mandate, a district court has the authority to enter pretrial case

17  management and discovery orders designed to ensure that . . . the parties have an

18  opportunity to engage in appropriate discovery." *Id.*

19      The decision in *Altair Instruments* is instructive in this regard. In that case, the

20  moving party was seeking production of documents that Walmart, as a defendant,

21  had previously committed to produce. 2020 WL 6106821, at *2. Walmart had not

22  refused to produce the documents, but it also had not produced them either, and the

23  Court noted that "[i]n light of Walmart's ever-shifting position relative to the date

24  of its production of responsive documents, the Court cannot fault Plaintiff for

25  seeking *ex parte* relief, instead of relying on Walmart to stand by its representation

26  to produce documents promptly." *Id.* The Court then set a hard deadline for

27  Walmart to produce the relevant documents, explaining that "Plaintiff would be

28

prejudiced if Walmart did not produce the documents in advance of the Rule 30(b)(6) deposition." *Id.* Plaintiffs seek similar relief here.

The decision in *Sarieddine v. D&A Distribution, LLC*, No. 17-cv-2390, 2018 WL 5094937 (C.D. Cal. Apr. 6, 2018), is also instructive. In that case, the defendant had "failed to specify the time for production," had raised "boilerplate objections and frequently failed to state what responsive documents are being withheld based on a specific objection," and "failed to timely provide a privilege log to detail the documents being withheld based on an asserted privilege." *Id.* at *4. The court observed that a "vague promise to provide such a log at some unspecified time violates the obligation of discovery cooperation." *Id.* In response to these concerns, the Court entered an order directing the recalcitrant party to provide a privilege log and to set a date for final production of documents. *Id.* Facing similar circumstances, Plaintiffs here seek similar relief.

Other cases likewise set firm deadlines for parties to produce documents and privilege logs, in order to ensure the timely completion of discovery. *See*, *e.g.*, *City of Colton v. Am. Promotional Events, Inc.*, No. 09-CV-01864, 2011 WL 13224072, at *2 (C.D. Cal. May 26, 2011) (setting a date for production and requiring a privilege log). And other cases likewise set shortened deadlines for discovery motions under appropriate circumstances. *See*, *e.g.*, *Rivas v. Gov't Emps. Ins. Co.*, No. 20-cv-00306, 2020 WL 8172993, at *2 (D. Nev. Apr. 23, 2020) (directing that the response to any discovery motion shall be filed within four days and replies two days thereafter); *Vasquez v. County of Stanislaus*, No. 19-cv-01610, 2020 WL 6728933, at *2 (E.D. Cal. Nov. 16, 2020) (explaining that the court had granted an *ex parte* motion to set a shortened briefing schedule). The relief sought by this Application is thus within the authority of the Court and necessary to ensure that the parties can meet the deadline for briefs and trial without any prejudice to the ability of Plaintiffs and the broader class to pursue their constitutional claims.

**B.   This Application Meets The Standard For *Ex Parte* Relief.**

Plaintiffs also meet the standard for *ex parte* relief. Plaintiffs played no part in creating the need for this Application, and Plaintiffs will be irreparably harmed if relief is not granted.

    1.   <u>Plaintiffs Are Without Fault In Creating The Need For The Court's Intervention.</u>

Plaintiffs have repeatedly emphasized to the government the need to move quickly to produce documents and to surface any potential disputes over the scope of production. These communications include:

- In correspondence concerning the government's initial request for an extension of time to respond. *See* Vora Decl. Ex. B. at 16–17, 19.
- In correspondence leading up to the initial motion to compel, where Plaintiffs asked the government to surface any additional issues beyond the protective order. *See* Vora Decl. Ex. F at 49–50.
- In the initial motion to compel, where Plaintiffs sought to establish a firm deadline for production. *See* Dkt. 85-1 at 6–7, 33–38.
- In correspondence following the Court's March 30 Order, where Plaintiffs again sought to establish firm deadlines for production and to surface any latent discovery disputes. *See* Vora Decl. Ex. G at 54; Ex. H at 60; Ex. I at 64–66, 67–68.
- At the April 14 meet-and-confer, at which Plaintiffs again sought to establish deadlines for production and to surface any potential disputes with respect to the scope of production. *See* Vora Decl. ¶¶ 2–7.

In response to these repeated communications, the government has consistently maintained that it was planning to produce documents once a protective order was in place. *See*, *e.g.*, Vora Decl. Ex. F at 48; Dkt. 85-1 at 39. The pace of production is, of course, within the government's control, but Plaintiffs have consistently

pushed the government to move expeditiously to produce documents and to surface any possible discovery disputes.

Notwithstanding these consistent requests to the government, Plaintiffs did not learn until **April 13, 2022** that the documents to be produced were still with the FBI Discovery Unit and had not yet been provided for review to the FBI's Office of General Counsel. *See* Vora Decl. Ex. H at 59. Prior to that disclosure, Plaintiffs, like the Court itself, understood that there was "no reason why Defendants cannot *immediately* provide the list of class members and other requested documents to the Plaintiffs." Dkt. 90 at 8 n.3 (emphasis added).[7] And it was not until **April 14, 2022**—when the government for the first time suggested that it was not sure whether it would produce documents in response to RFP 10, despite committing to do so earlier—that it became clear that Plaintiffs were correct to worry the ultimate production might not be as complete as they had previously been led to believe. *See* Vora Decl. ¶ 7. Once these things became clear, Plaintiffs moved promptly to present this dispute to the Court.

Plaintiffs' diligence in this respect is in no way undermined by the Court's conclusion, in the March 30 order, that Plaintiffs had not met and conferred with respect to any "specific discovery disputes" or the "terms of Plaintiffs' Motion to Compel." Dkt. 90 at 7. Plaintiffs have not met and conferred with the government regarding the production of any specific documents because the government at this time has not definitively refused to produce any specific documents, so there is nothing to meet and confer about.[8] Plaintiffs are seeking to comply with the Court's

---

[7] This understanding was reasonable given the government's representation that the initial extension of time to respond to the discovery requests, in November 2021, was necessary to allow FBI officials to collect the relevant documents. *See* Vora Decl. Ex. B at 16.

[8] Plaintiffs are currently negotiating with the government concerning the scope of production under RFP 10. As explained *supra* n.2, this Application does not seek to litigate any substantive issues concerning the production under RFP 10 and instead describes the dispute concerning RFP 10 in order to illustrate the need

(continued...)

1   instruction to "conduct proper meet and confer sessions addressing the disputed

2   discovery matters," *id.* at 8, but Plaintiffs cannot meaningfully confer with the

3   government if the government does not clarify the scope of its anticipated

4   production. But Plaintiffs have *repeatedly* conferred with the government about the

5   need to move expeditiously to produce documents and to raise any possible dispute,

6   so that the parties can timely complete discovery.[9]

7       2.   Plaintiffs Will Be Irreparably Prejudiced Absent The Court's

8            Intervention.

9       Given the June 21 deadline for opening briefs, Plaintiffs will be irreparably

10  prejudiced if the requested relief is not granted.

11      Timely production is required in order to ensure that Plaintiffs have access to

12  documents to use for depositions in this case. *See Altair Instruments*, 2020 WL

13  6106821, at *2 (finding prejudice where otherwise documents would not be

14  available for 30(b)(6) deposition); *see also* Vora Dec. Ex. I at 63 (statement of

15  counsel for the government that "[i]f you want documents prior to the depositions,

16  then you should probably wait until I can give you additional updates"). At this

17  time, Plaintiffs have noticed the first deposition in this case—of an FBI special

18  agent involved in the search—for April 28. Vora Decl. ¶ 9. Plaintiffs have noticed

19  the second deposition—of another FBI agent on the search—for May 6. *Id.* The

20  parties have agreed to schedule additional depositions of government officials—

21  including the 30(b)(6) deposition—to occur between May 16 and 27. *Id.* Under the

22

23  to set a firm deadline for the government to disclose any documents or categories of
    documents that will be withheld from its production.

24      [9] To the extent that the requirements of the local rules could be applied to

25  prevent Plaintiffs from obtaining discovery in this case—despite their timely
    discovery requests and their repeated attempts to secure discovery—such an

26  application of the local rules would be inconsistent with the Federal Rules of Civil
    Procedure and therefore invalid under Federal Rule of Civil Procedure 83(a); *see*

27  *also* Fed. R. Civ. P. 83(a)(2) (stating that a "local rule imposing a requirement of
    form must not be enforced in a way that causes a party to lose any right because of

28  a nonwillful failure to comply").

schedule that Plaintiffs propose in this Application, Plaintiffs would *already* be prejudiced insofar as they would not have the full documents for the April 28 deposition and would not have time to review all the documents prior to the May 6 deposition. But such a schedule would at least minimize the prejudice to Plaintiffs by ensuring that Plaintiffs have access to documents in order to prepare for the 30(b)(6) and other depositions in the case.

The requested relief is also required in order to ensure that Plaintiffs receive documents that they are entitled to receive prior to the close of discovery. *See*, *e.g.*, *City of Riverside v. Greyhound Lines, Inc.*, No. EDCV16796ABSPX, 2017 WL 11632085, at \*3 (C.D. Cal. May 16, 2017) (finding *ex parte* relief justified in light of impending depositions and the upcoming discovery cut off); *Martin v. City of Barstow*, No. EDCV132193ABSP, 2015 WL 12743593, at \*2 (C.D. Cal. May 5, 2015) (finding *ex parte* relief justified given "impending discovery cutoff"). As things currently stand, if the government is allowed to delay its production until sometime in May, and that production is incomplete in any respect, there may not be time to fully litigate that issue in advance of the June 21 briefing deadline. By contrast, the requested relief will surface any issues with the production in a timely fashion, to ensure that those issues can be litigated and the Court's discovery schedule can be kept without any prejudice to the ability of the Plaintiffs and the broader class to litigate the important constitutional issues raised by this case.

## V.   CONCLUSION

For the foregoing reasons, the Court should  (1) order the government to begin producing documents as soon as they are available and set a firm date of **May 6, 2022** for the government to finish its production, (2) order the government to specifically identify, in writing within 7 days, any categories of responsive documents that it intends to withhold from its upcoming production, (3) order the government to provide a complete privilege log no later than May 6, 2022, and (4) adopt an expedited briefing schedule for any subsequent motion to compel.

Dated: April 21, 2022

Respectfully Submitted,

/s/ Robert Frommer

**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
Joseph Gay^
jgay@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.

^Motion for pro hac vice pending.

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*