TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture Sections
     1100/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0102/2569/1785
     Facsimile: (213) 894-6269/0142
     E-mail: Andrew.Brown@usdoj.gov
             Victor.Rodgers@usdoj.gov
             Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA. ET AL,,<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**DEFENDANTS UNITED STATES OF AMERICA, ET. AL'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR ORDER SETTING SCHEDULE FOR PRODUCTION OF DOCUMENTS AND DISCOVERY MOTIONS**<br><br>[DISCOVERY MATTER]<br><br>Judge: The Honorable Margo A. Rocconi<br>Discovery Cutoff date:      None set<br>Pre-Trial Conference date:   None set<br>Trial Date:                July 26, 2022<br>Complaint/FAC Filed: 5/27/21 and 6/9/21 |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF FACTS ........................................................................... 3

        A.      Plaintiffs *Ex Parte* Application Raises Matters Irrelevant To Their
                Requested Relief .............................................................................. 3

        B.      The Matters At Issue Pertaining To The Current Discovery Dispute .......... 4

        C.      The Impact Of Plaintiffs' Decision To Decline To Accept The
                Government's Protective Order ..................................................... 5

        D.      Since The Court's Entry Of The Protective Order On April 8, 2022,
                The Government Has Supplied Multiple Status Reports To Plaintiffs
                Regarding The Status Of Discovery Production ........................... 6

        E.      The Current Status Of The Government's Production Of Discovery .......... 8

III.    ARGUMENT ............................................................................................... 8

IV.     CONCLUSION ......................................................................................... 12

DECLARATION OF SECTION CHIEF KRISTIN ELLIS ......................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Altair Instruments, Inc. v. Telebrands Corp.*,
    2020 WL 6106821 (C.D. Cal. Jul. 10, 2022) ..........................................10, 11

*Aschroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..................................................................................3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................3, 7

*City of Colton v. American Promotional Events, Inc.*,
    2011 WL 13224072 (C.D. Cal. May 26, 2011)..........................................11

*City of Riverside v. Greyhound Lines, Inc.*,
    2017 WL 11632085 (C.D. Cal. May 16, 2017)..........................................10

*DeMichiel v. AEG Live NJ LLC*,
    2016 WL 11519281 (C.D. Cal., Feb. 11, 2016) ...........................................9

*In re Intermagnetics America, Inc.*,
    101 B.R. 191 (C.D. Cal. 1989) ...............................................................9, 10

*Martin v. City of Barstow*,
    2015 WL 12743593 (C.D. Cal. May 5, 2015) ............................................10

*Mission Power Engineering Co. v. Continental Cas. Co.*,
    883 F. Supp. 488 (C.D. Cal 1995)............................................................8, 9

*New Mexico Investment Council v. Ernest & Young*,
    641 F.3d 1089 (9th Cir. 2011) .....................................................................3

*Rainey v. Taylor*,
    2019 WL 4383958 (C.D. Cal., April 11, 2019)............................................9

*Rivas v. Government Employees Insurance Co.*,
    2020 WL 8172993 (D. Nev. Apr. 23, 2020) ..............................................11

*Sarieddine v. D&A Distribution LLC*,
    2018 WL 5094937 (C.D. Cal. Apr. 6, 2018)..............................................11

1

## <u>TABLE OF AUTHORITIES, CONTINUED</u>

2

*United States v. Real Property Located at 22 Santa Barbara Drive,*
3
    264 F.3d 860 (9th Cir. 2001) ............................................................9

4
*United States v. W.R. Grace,*
5
    526 F.3d 499 (9th Cir. 2008) ..........................................................11

6
*Vasquez v. County of Stanislaus,*
7
    2020 WL 6728933 (E.D. Cal. Nov. 16, 2020) .............................11

8
**Federal Rules**

9
Fed. R. Civ. P. 12(b)(6)........................................................................3

10
Fed. R. Civ. P. 34 ...............................................................................11
11
Fed. R. Civ. P. 37(a) ..........................................................................11

12
Fed. R. Civ. P. 45 ...............................................................................11

13
Local Rule 37.2.1 ..................................................................................6

14
Local Rule 37.2.1(a)...........................................................................11

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants United States of America and Tracy L. Wilkison and Kristi Koons Johnson in their official capacities (collectively, "Defendants" or "the government") respectfully submit this memorandum of points and authorities in opposition to plaintiffs' *ex parte* application for order setting a schedule for production of documents and discovery motions.   By their *ex parte* application, plaintiffs seek an order that would (1) order the government to begin producing documents as soon as they are available and set a firm date of May 6, 2022 for the government to finish its production; (2) order the government to specifically identify, in writing within 7 days, any categories of responsive documents that it intends to withhold from its upcoming production; (3) order the government to provide a complete privilege log no later than May 6, 2022; (4) adopt an expedited briefing schedule for any subsequent motion to compel; or, in the alternative to (1)-(4), require the government to show cause why relief should not issue on such terms.  Plaintiffs' *ex parte* application should be denied.  Instead, the government should be ordered to file a status report on Monday, May 9, 2022, as set forth in more detail below.

In ruling on plaintiff's motion regarding the terms of the protective order to be entered in this case, on March 30, 2022, the Court rejected plaintiffs' argument that the protective order should, unlike the model protective order on the Court's website or the protective order the government supplied to plaintiffs on January 24, 2022, allow persons (namely non-party class members) to use CONFIDENTIAL information for purposes not only of prosecuting the instant action, but for purposes of prosecuting any future lawsuit they might decide to file.  Docket No. 90.  On Friday, April 8, 2022, a date which plaintiffs ignore, the Court entered the version of the protective order the government requested in connection with plaintiffs' motion, and the parties jointly submitted that protective order to the Court on April 7, 2022.  Docket Nos. 91 and 92.

1

Plaintiffs' decision to decline to enter into the standard protective order the government supplied to plaintiffs on January 24, 2022, brought the government's ability to ready documents that would be covered by the protective order to a screeching halt.

Nonetheless, as shown below, the government produced supplemental responses to interrogatories on April 19, 2022, identifying approximately 400 class members and providing the inventory policy.  In addition, the government has provided multiple status reports concerning the status of the production of documents since the protective order was entered, including to advise plaintiffs (as they requested) that the government expected that the production of written documents to plaintiffs would be substantially complete by May 6, 2022 while also advising that the government could not then provide a firm date as to production of the videos.  When the government produces documents in response to particular document requests, the government obviously will serve supplemental responses to plaintiffs that, as with the government's supplemental responses to interrogatories served April 19, 2022, state whether it is withholding any documents or additional information (and as to the April 19, 2022 supplemental responses, the government withheld nothing).  In addition, the government has repeatedly stated it has no objection to continuing the deadlines in this case, and plaintiffs' current deadline to file their opening brief in this matter is not until June 21, 2022, or two months away.

Plaintiffs' *ex parte* application suffers from the same infirmity as their earlier discovery motion concerning the terms of the protective order to be entered in this case. They again have not set forth the specific interrogatory or document requests at issue, the government's response thereto, and the parties' respective contentions concerning those specific requests, as required by Local Rule 37-2.1.  But as the government has noted, it will be producing documents, and supplemental responses to some of the interrogatories (those the government understands are at issue) and supplemental responses to the document requests (and the documents) by May 6, 2022.  Accordingly, the government respectfully requests that plaintiffs' *ex parte* application be denied in its entirety, and

1    instead that the government be required to file a status report on Monday, May 9, 2022,

2    concerning the status of the production of documents (including the videos), and its

3    supplemental responses to the document requests and interrogatories (which will

4    disclose whether the government has withheld any documents from production) and the

5    documents it has produced.

6                                            **II.**

7                              **STATEMENT OF FACTS**

8    **A.    Plaintiffs' *Ex Parte* Application Raises Matters Irrelevant To Their**

9           **Requested Relief.**

10          Plaintiffs *ex parte* application begins by raising a number of matters, none of

11   which have any bearing on the instant discovery dispute, and for which the government

12   cannot provide a complete response in order to show the inaccuracy of plaintiffs'

13   arguments within the required 24 hour opposition deadline.  However, the government

14   disagrees with those statements, and notes the following.

15          Plaintiffs have mischaracterized the scope of the language of the search warrant

16   authorizing the search at US Private Vaults ("USPV") and the government's conduct in

17   executing the search warrant (MP at 2:15-3:5), inaccurately characterized Court rulings

18   on administrative civil forfeiture proceedings and injunctions (MP at 3:21-4:15),

19   inaccurately suggested that the Court has found the government exceeded the scope of

20   the warrant when all that the Court ruled in denying the government's Fed. R. Civ. P.

21   12(b)(6) motion to dismiss plaintiffs' sole surviving class claim was that, *assuming*

22   *plaintiffs' allegations in their Complaint are true* (which is the standard in ruling on a

23   Fed. R. Civ. P. 12(b)(6) motion to dismiss a complaint),[1] plaintiffs had stated a plausible

24          _____

25          [1] In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must "take
     all of the factual allegations in the complaint as true," *Aschroft v. Iqbal*, 129 S. Ct. 1937,
     1949 (2009) (citation omitted) and "construe them in the light most favorable to
26   plaintiffs" *New Mexico Investment Council v. Ernest & Young*, 641 F.3d 1089, 1094
     (9th Cir. 2011) (internal quotation marks and citation omitted).  In addition, the
27   resolution of Fed. R. Civ. P. 12(b)(6) motions requires that courts accept a complaint's
     material factual allegations as true "even if doubtful in fact." *Bell Atlantic Corp. v.*
28   *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  As the Supreme Court has
                                            *(footnote cont'd on next page)*

                                              3

1  claim for relief (MP at 4:17-26) and incorrectly argues that the government's January 14,

2  2022 production of the full 100+ page affidavit for the search warrant was "of limited

3  utility" because the full document had been unsealed by virtue of the filing on April 21,

4  2021 in another case.  (MP at 6:23-28, citing *Does 1-6 v. United States*, Case No. 21-cv-

5  3254, Docket 20 [April 21, 2021 filing]).  However, Docket No. 20 in that case filed

6  April 21, 2021 reflects that only one paragraph of the affidavit - - not the full 100+ page

7  search warrant affidavit produced by the government to plaintiffs in discovery in the

8  instant case - - was unsealed.  Accordingly, plaintiffs' statement is simply not correct.

9  **B.    The Matters At Issue Pertaining To The Current Discovery Dispute.**

10  But turning to the relevant issues in this matter, the dispute between the parties

11  boils down to what the government will produce by May 6, 2022.  Plaintiffs raise

12  arguments they claim are supported by various documents and emails, but their own

13  documents show exactly the opposite is true.   For example, citing their January 24, 2022

14  letter confirming a discovery dispute meet and confer, plaintiffs argue that the

15  government committed to produce documents in response to "various" discovery

16  requests (which they do not identify) as soon as a protective order was in place.  MP at

17  7:2-8.  But the January 24, 2022 letter makes no such statement (and in fact the

18  statement is untrue), as the letter merely provides "*Protective Order*: You explained that

19  Defendants will not produce most of their discovery responses until after a protective

20  order is entered in this matter."  Docket 95-5 at page 2 of 4.  That is not a statement that

21  the government would produce documents as soon as a protective order was entered.

22  Other than interrogatory numbers 9-11, in which the letter provides the government

23  planned to respond to those interrogatories "within a week of the Court's entry of a

24  protective order" [docket no. 95-5 at page 3 of 4], there is no statement in the letter

25  regarding the timing of the production once the protective order was entered because no

27  noted, "[a] district court weighing a motion to dismiss asks not whether a plaintiff will
ultimately prevail but whether the claimant is entitled to offer evidence to support the
28  claims." *Id.* at 563 n. 8 (citation omitted).  (internal quotation marks and citation omitted).

4

discussion or agreement was reached as to when the items called for by plaintiffs'
document requests would be produced.  (And as to interrogatory numbers 9 and 11, the
government served supplemental responses identifying class members, which total about
400 (#9) and supervisory personnel (# 11) on April 19, 2022, which was about a week
after the protective order was filed very late in the day on Friday, April 8, 2022 (docket
no. 92).  Plaintiffs ignore the April 8, 2022 date entirely, instead suggesting that March
30, 2022 was the date the protective order was entered.  MP at 8:5-7.

Further, the government complied with plaintiffs' January 24, 2022 request to
"provide a draft [of the protective order] to us as soon as you can[]" [docket no. 95 at
page 2 of 4], and indeed submitted a draft stipulated protective order three days later on
January 27, 2022 [MP at 7:21-23 and docket no. 85-12 at page 7 of 14].  However, for
whatever reason, plaintiffs would not agree to the government's draft, which was
modeled after the Court's website standard protective order.  Plaintiffs' argument was
that non-party class members, unlike any parties such as seven representative plaintiff
party class members and all other third parties, should not be required to use
CONFIDENTIAL information solely for purposes of the instant action for which the
only remedy sought is the destruction of documents created during the inventorying of
their boxes at USPV, but instead should also be permitted to use that information to
prosecute future claims for monetary relief against the government for missing or stolen
items.  That argument, which would essentially render the CONFIDENTIAL
information designation meaningless, was rejected by the Court.  Docket No. 90.

C.     **The Impact Of Plaintiffs' Decision To Decline To Accept The
       Government's Protective Order.**

Plaintiffs' decision to decline to stipulate to the government's protective order,
which was modeled after the Court's standard website protective order and was supplied
to plaintiffs on January 24, 2022, essentially brought the ability of the government to
ready documents requiring a protective order for production to a screeching halt.  The
/ / /

1  reasons that was so are detailed in the declaration of a Federal Bureau of Investigation
2  employee, which is discussed later in this brief.

3        As part of the motion to compel concerning the protective order's terms, the
4  government did not brief the issue of the timing of the production of documents, after the
5  protective order was entered.  Plaintiffs sought an order requiring production in three (3)
6  days after the protective order's entry, but the government did not brief or address that
7  issue because the parties never discussed the issue as part of the meet and confer process
8  (and plaintiffs have never contended otherwise) [*see* docket no. 90 (Court's March 30,
9  2022 order at page 3, fn. 1 and at page 8)], and the government noted that plaintiffs'
10  motion to compel should be denied on the sole ground that plaintiffs violated the Local
11  Rules in failing to set forth in the Joint Stipulation each discovery request at issue, the
12  government's response thereto, and the parties' respective contentions as to why further
13  discovery should be ordered or denied [*id.* at 8].  Plaintiffs' current discovery motion,
14  brought via *ex parte* application, suffers from the same infirmity and again violates
15  Local Rule 37.2.1's joint stipulation requirements, as they again fail to specify what
16  specific document requests or interrogatories are at issue, in order to provide guidance as
17  to what specifically they are demanding.[2]

18  / / /

19  / / /

20  / / /

21
          ───────────────
22        [2] Local Rule 37-2.1 provides as follows:

23        **L.R. 37.2.1  Form of Joint Stipulation.**  The stipulation must be set forth
          in one document signed by both counsel.  The stipulation must contain all
24        issues in dispute and, as to each such issue, the contentions and points and
          authorities of each party.  The stipulation may not refer the Court to any
25        other documents.  *For example, if the sufficiency of an answer to an
          interrogatory is at issue, the stipulation must contain, verbatim, both the
26        interrogatory and the allegedly insufficient answer, followed by each
          party's contention as to that particular interrogatory, separately stated.* . . .
27        When a party states its contentions on a particular issue, such party must
          also state how it proposed to resolve the dispute over that issue at the
28        conference of counsel.

  (Emphasis added).
                                          6

1

2

3

**D.      Since The Court's Entry Of The Protective Order On April 8, 2022, The Government Has Supplied Multiple Status Reports To Plaintiffs Regarding The Status Of Discovery Production.**

4    During the hearing on plaintiffs' motion concerning the protective order, the

5  government advised that it would provide status reports to plaintiffs regrading the status

6  of the production of documents, once the protective order was entered, and expected to

7  be able to produce a list of the class members (at least to the best of its ability to identify

8  them) shortly after the protective order was entered.  As set forth above, the government

9  provided the class member information on April 19, 2022, or within about a week after

10  the protective order was entered on Friday, April 8, 2022,   Thereafter, on April 13,

11  2022, the government provided a status report, in which the government estimated that

12  production of documents would occur within three weeks and that the information called

13  for by interrogatory number 10 would be contained in the produced documents.  Docket

14  No. 95-9 at page 2 of 4.  The April 13, 2022 report also provided that supplemental

15  interrogatory responses to interrogatory numbers 9 and 11 would be emailed to plaintiffs

16  along with the FBI's inventory policy on April 19 (*id.*) and, as set forth above, the

17  government emailed supplemental responses containing this information and the

18  inventory policy on April 19.

19    On April 15, 2022, the government provided another status report, because

20  plaintiffs stated they needed a 100% commitment to provide all the documents by May

21  6, and the government advised that it could not make a 100% commitment or provide a

22  firm date for production of the videos.  *Id.* at page 5 of 7.  In response, plaintiffs asked

23  on April 18, 2022, the government to state whether production would at least be

24  "substantially complete" before May 6, 2022 [*id.* at page 4 of 7], to which the

25  government replied on April 20, 2022 that production of the written documents would be

26  substantially completed by that date [*id.* at page 2 of 7], yet that commitment is

27  apparently not enough as plaintiffs have still sought *ex parte* relief.  In addition, the

28  / / /

1   government reiterated in its April 20, 2022 email that it had no objection to stipulating to

2   continuing all dates in this case [*id.*].

3       Plaintiffs make other arguments regarding what additional redactions are being

4   made, and a declaration of the Federal Bureau of Investigation employee, referenced

5   below, provides information in that regard.  Also, the Protective Order contemplates

6   additional redactions.[3]

7       **E.    The Current Status Of The Government's Production Of Discovery**

8       The declaration of Kristin Ellis, Section Chief of the Litigation and Technology

9   Management Section within the Litigation Branch in the Federal Bureau of

10  Investigation's Office of the General Counsel, situated at FBI Headquarters in

11  Washington, D.C. shows the difficulty with production of the videos and other

12  documents and the belief that written documents will be produced by May 6, 2022.  The

13  government incorporates here by reference the information contained in the declaration.

14      Plaintiffs *ex parte* application should be denied.  Instead, as reflected in the

15  Introduction Section of this Brief, the government should be ordered to file a status

16  report regarding the state of the discovery production and responses to plaintiffs' second

17  set of interrogatories and second requests for production of documents by Monday, May

18  9, 2022.

19                                  **III.**

20                                **ARGUMENT**

21      Plaintiffs have not met the exacting standard for *ex parte* relief, as plaintiffs must

22  show why they will be prejudiced if this matter is heard according to regular noticed

23  _____

24      [3] Paragraph 12.2. of the Protective Order provides:

25          12.2   Right to Assert Other Objections.  This Protective Order is
        intended to provide a mechanism for handling the disclosure or production
26      of Protected Material to which there is no objection to production pursuant
        to the terms of this Order.  *The protection afforded by this Order shall in no*
27      *way affect a Producing Party's right to withhold or redact documents* as:
        (a) privileged under the attorney-client or other privilege, (b) protected by
28      the work product doctrine, or *(c) otherwise exempted from discovery under*
        *Rule 26 of the Federal Rules of Civil Procedure or under any law*.

motion procedures and that they are without fault in creating the crises or that the crisis occurred as a result of excusable neglect. *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal 1995). The *ex parte* application here includes twenty pages of argument, a seven-page declaration of counsel, a three-page declaration of counsel, and approximately 67 pages of exhibits.

Courts in this District have repeatedly and consistently condemned the use of *ex parte* procedures except for extraordinary relief. *Ex parte* applications have been described as "inherently unfair," and characterized as "pos[ing] a threat to the administration of justice . . . [and] debilitat[ing] the adversary system." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal 1995) (citing *In re Intermagnetics America, Inc.,* 101 B.R. 191, 193 (C.D. Cal. 1989)):

> Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship. The opposing party is usually told by telephone when the moving party has completed all preparation of the papers and has a messenger on the way to court with them. The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice.

*Id.* The requirement for "real urgency" in an *ex parte* application is genuine, and the failure to satisfy that requirement is a proper basis for denying a request for emergency relief. *See, e.g., Rainey v. Taylor,* 2019 WL 4383958, *2 (C.D. Cal., April 11, 2019); and *DeMichiel v. AEG Live NJ LLC*, 2016 WL 11519281, *2 (C.D. Cal., Feb. 11, 2016). That *ex parte* proceedings are "appropriate only in a narrow set of circumstances" has been recognized by the Ninth Circuit. *See United States v. Real Property Located at 22 Santa Barbara Drive*, 264 F.3d 860, 870 (9th Cir. 2001).

/ / /

Courts have also pointed out that *ex parte* applications violate the safeguards built into the Federal Rules of Civil Procedure, as well as the Local Rules of this Court.[4]  For these reasons, *ex parte* relief is appropriate only in extraordinary circumstances.

Defendant's papers do not satisfy the exacting *ex parte* standard.   The government provided an appropriate protective order to plaintiffs on January 24, 2022, but plaintiffs found it unacceptable which resulted in the protective order not being entered until April 8, 2022, and they have therefore caused the delay in the production of discovery.  In addition, plaintiffs have suffered no irreparable injury, as the government produced supplemental interrogatory responses on April 19, 2022, multiple status reports concerning the production of documents since April 8, 2022 when the protective order was entered and, as plaintiffs requested, advised that the government's production of written documents will be substantially completed (with supplemental discovery responses served as well) by May 6, 2022.  Plaintiffs are not required to file their opening brief until two months from today (i.e., June 21. 2022), and the government has advised it has no objection to a continuance of the dates in this case.  Furthermore, plaintiffs cases that they cite to show *ex parte* relief should be granted here are readily distinguishable.[5]

Moreover, none of plaintiffs' authorities address any of the matters at issue in their *ex parte* application.  Plaintiffs cite *Altair Instruments, Inc. v. Telebrands Corp.*, 2020

---

[4] *See Intermagnetics,* 101 B.R. at 193 ("Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. *Ex parte* applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason.").

[5] *City of Riverside v. Greyhound Lines, Inc.*, 2017 WL 11632085, *3 (C.D. Cal. May 16, 2017) (application for protective order for May 17 and May 19, 2017 depositions warranted *ex parte* relief because discovery cut off date was 7 days later on May 26, 2017, and no evidence that the party opposing the protective order would stipulate to continue the discovery cut off date, while here plaintiffs' opening brief is not due for two months on June 21, 2022); *Martin v. City of Barstow*, 2015 WL 12743593 (C.D. Cal. May 5, 2015) (*ex parte* application filed April 27, 2015, pro se plaintiff filed no opposition, pro se plaintiff failed to comply with the Local Rule 37 requirements and May 18, 2015 discovery cutoff date was less than 30 days away).

WL 6106821, *2 (C.D. Cal. Jul. 10, 2022) for the proposition that they can bring a motion under Fed. R. Civ. P. 37(a) to allow the Court to set hard deadlines in a case, but *Altair* is a case involving a Fed. R. Civ. P. 45 subpoena, is not a case involving a motion under Fed. R. Civ. P. 37(a) and is silent about the failure to comply with Local Rule 37-2.1(a)'s requirement of listing each specific interrogatory, document request and the parties' respective contentions.  Likewise, *United States v. W.R. Grace*, 526 F.3d 499, 508-09 (9th Cir. 2008), has nothing to do with the issues here, and instead involves whether a district court was empowered to compel the government to provide a witness list in advance of a trial.

Plaintiffs other cases are similarly not relevant to the issue here, namely whether a party must comply with Local Rule 37-2.1(a), so that each party's respective contentions as to each discovery request at issue can be considered and ruled upon.  *Sarieddine v. D&A Distribution LLC*, 2018 WL 5094937 (C.D. Cal. Apr. 6, 2018) (nothing in case discussing or excusing compliance with Local Rule 37-2.1(a)); *City of Colton v. American Promotional Events, Inc.*, 2011 WL 13224072, *2 (C.D. Cal. May 26, 2011) (having nothing to do with Local Rule 37-2.1(a), and noting that parties are not required to produce documents under Fed. R. Civ. P. 34 concurrently with service of the response to a document request, but instead must produce documents within a reasonable time, and ordering production of a privilege log as required by a Case Management Order, but no specific date for the log is discussed in the case); *Rivas v. Government Employees Insurance Co.*, 2020 WL 8172993 (D. Nev. Apr. 23, 2020) (discussing what appears to be a Scheduling Order issued in every case by the Judge in Nevada, and having nothing to do with any issues raised in plaintiffs' *ex parte* application or Central District of California Local Rules); *Vasquez v. County of Stanislaus*, 2020 WL 6728933 (E.D. Cal. Nov. 16, 2020) (actually supporting the government's position, as the Court granted plaintiffs' unopposed motion to extend the discovery deadlines set forth in a Scheduling Order, and the government advised plaintiffs in the instant case it does not oppose a continuance of the deadlines in this case).

11

1

2

**IV.**

**CONCLUSION**

For these reasons, the government respectfully requests that plaintiffs' *ex parte* application be denied, but the government suggests that it be required to provide a status report to the Court on Monday, May 9, 2022, to reflect the status of its production of discovery in this case relative to plaintiffs' second set of interrogatories and second request for production of documents.

Dated: April 22, 2022

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
ANDREW BROWN
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

12