# DECLARATION OF SECTION CHIEF KRISTIN L. ELLIS

I, Kristin L. Ellis, declare:

1. I am the Section Chief of the Litigation and Technology Management Section ("LTMS") within the Litigation Branch in the Federal Bureau of Investigation's ("FBI") Office of the General Counsel ("OGC"), situated at FBI Headquarters in Washington, D.C. I joined the FBI in February 2012, and prior to my current position, I was the Unit Chief of the Freedom of Information Act Litigation Unit ("FLU") from October 2016 to January 2022, and an Assistant General Counsel in FLU from February 2012 to October 2016. Prior to joining the FBI, I was a Trial Attorney and then Deputy Unit Chief of the FOIA and Privacy Act Unit at the Department of Justice, Criminal Division from May 2010 to February 2012. I also served in various attorney positions at the U.S. Office of Special Counsel from February 1998 to May 2010. I am an attorney licensed by the State of Michigan.

2. In my official capacity as LTMS Section Chief, I supervise several litigating units as well as the FBI's civil discovery program. Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to discovery requests in civil litigation.

3. The statements contained in this declaration are based upon my personal knowledge, my review and consideration of documents and information available to me in my official capacity, and on information obtained from other FBI employees.

4. This declaration is submitted in support of Defendants' response to Plaintiffs' *ex parte* motion for an order from the Court on various discovery disputes. *See* ECF No. 95. Plaintiffs request that the Court: (1) require Defendants, within seven days, to specifically identify, in writing, any categories of documents they intend to withhold when responding to Plaintiffs' second set of discovery requests; (2) require Defendants to produce documents and complete interrogatory responses in response to Plaintiffs' second set of discovery requests, with the completion date for production and responses to be on or before May 6, 2022; (3) require that Defendants provide Plaintiffs with a

complete privilege log as to any and all documents being withheld from Plaintiffs' second set of discovery requests no later than May 6, 2022; and (4) establish an expedited procedure by which to resolve any future discovery disputes between the parties. *See id.* at 3.

5. As explained below, a combination of factors hampered the FBI's document processing efforts to date. This declaration attempts to provide a background for what has occurred thus far, as well as a good-faith prediction of anticipated production of documents and videos in the future.

## THE FBI'S DISCOVERY PROCESS

6. The FBI has a thorough, multi-step civil discovery process designed to avoid the inadvertent production of classified or sensitive law enforcement privileged information. Several Litigation Branch units are involved in this process, including the Civil Litigation Units ("CLU"), the Discovery Unit ("DU"), and the Sensitive and Strategic Discovery Unit ("SSDU"). Below, I provide a general overview of this process, which can vary depending on the facts and circumstances of a particular case.

7. One of DU's responsibilities is conducting searches for electronically stored information ("ESI") within the FBI's classified and unclassified enclaves. The process of searching for and collecting potentially relevant emails, reviewing them for relevance and privilege, and classified and/or otherwise sensitive information is labor-intensive and time-consuming. DU's eDiscovery Technical Advisors ("ETAs") conduct the initial searches and ingest their search results into the FBI's eDiscovery Platform ("eDP"). Searches are typically run on both the unclassified ("UNET") network, as well as the Secret ("FBINET") network. FBI attorneys review the search results and, in consultation with DOJ attorneys, conduct a relevancy review to determine which, if any, electronic documents are responsive to a plaintiff's discovery requests.

8. In this case, DU is responsible for conducting the privilege review of responsive documents, which consists of a line-by-line review for privileged information contained within the responsive material before the FBI can release the responsive


material outside of the FBI. A line-by-line review is a burdensome manual task where the assigned DU Paralegal Specialist (PLS) must review every word on every page of a document, looking for any privileged information, which also includes recognizing that information on one page that normally does not qualify as privileged information on its own could be privileged when combined with information from another page of the document. DU also must redact information covered by various government privileges to protect classified information, FBI sources, grand jury material, personal identifiers/information, and other sensitive information. DU's review consists of a first-line review by a PLS and two additional second-line reviews by two different Senior Paralegal Specialists ("SPLS"). The three reviews are standard procedure, and each level of review is conducted by a different employee. After DU's review is complete, the FBI attorney assigned to the case reviews the documents to confirm the proper application of privilege redactions. Only after this careful, multi-stage review with appropriate redactions supporting the assertion of privileges may the FBI release material outside the agency.

9. This careful, multi-layered review is necessary because the consequences of inadvertent disclosure of classified, third party, and/or law enforcement sensitive information are significant because it could intrude upon individuals' privacy interests, cause harm to national security, and/or impede the FBI's ability to perform its law enforcement mission.

10. After the DU paralegals and FBI attorneys complete their review of the documents, the documents with proposed redactions are customarily transmitted to DOJ attorneys for their review. Depending on the content of the documents, the materials are also sometimes shared with other government agencies that may have equities in the information. DOJ coordinates with the FBI attorneys assigned to the case to discuss redactions and identify necessary changes or modifications. After the external DOJ review, DU makes any changes necessary to the redactions and FBI and DOJ attorneys

1  conduct a final review of the documents. The documents are then produced to opposing
2  counsel.
3      11.    While attorneys may sometimes rely upon remotely accessing eDP for
4  reviewing some unclassified materials for relevancy, FBI attorneys and PLSs must use
5  the FBI's classified enclave when reviewing and redacting materials originating from
6  that system. Any materials originating on the classified system, even those originally
7  marked as being unclassified, have the possibility of containing classified information.
8  These materials cannot be removed from this classified system before undergoing
9  redactions during the privilege review. With regard to the FBINET materials, DU PLSs
10 do not currently possess the tools needed to perform the review and redaction process
11 remotely. DU PLSs can, however, review and redact UNET materials remotely.
12     12.    Therefore, telework is not available for significant portions of the FBI's
13 discovery review process because many of the key systems that FBI personnel work on
14 are located on the FBI's classified enclave. Multiple steps in the discovery process,
15 including the ESI searches; DU's three-level privilege review of materials on the
16 classified system; and portions of the FBI attorney review, must occur on the FBI's
17 classified enclave. Similarly, review by DOJ and other government attorneys occurs on
18 classified enclaves when the documents contain classified information, even if that
19 classified information will ultimately be redacted, because their review involves read-
20 through versions of the redacted documents.
21                         THE FBI'S PROGRESS
22     13.    The FBI has worked diligently to respond to Plaintiffs' discovery requests
23 in this case. However, these efforts have been hampered by a number of factors. In
24 particular, the FBI's discovery units -- DU and SSDU -- support approximately 750
25 cases per year, including matters involving civil discovery requests, congressional
26 requests, and criminal discovery requests. The significant number of matters handled by
27 the FBI's discovery units creates challenges under normal circumstances. Moreover,
28 these challenges have been exacerbated by, among other things, a significant backlog of

work resulting from COVID-19-related disruptions and the ongoing workplace-related complications caused by COVID-19 as the discovery units have endeavored to return to a normal operational footing.

14. The FBI's discovery efforts in this case have also been hampered by the delayed entry of a protective order in this case and case-specific technological issues.

15. Broadly speaking, the FBI has identified two categories of documents – in addition to videos – responsive to Plaintiffs' Second Set of Discovery Requests: (1) ESI, including emails; and (2) records retrieved from Sentinel, the FBI's electronic case management system.

16. As to the emails, the FBI began using the eDP discovery platform to collect and review relevant emails in this case shortly after receiving Plaintiffs' discovery requests in late 2021. ETAs began electronic key word searches in custodians' FBINET and UNET email exchange mailboxes in December 2021. From the UNET enclave, there are approximately 1,000 pages of responsive records that will be produced in full or with redactions. From the FBINET enclave, there are approximately 110 pages of responsive records that will be produced in full or with redactions.

17. As to the Sentinel records, in January 2022 FBI Paralegals began retrieving information from Sentinel for the class of boxholders as modified by the Court. There are approximately 2,700 pages of responsive records from Sentinel that will be produced in full or with redactions.

18. The FBI was unable to completely process these documents until a protective order was entered in this case. That protective order was entered only two weeks ago, on April 8, 2022. *See* Docket 92.

19. In cases involving protective orders, DU cannot start a privilege review of documents and begin making redactions until a signed protective order in place. This is because PLSs determine on a case-specific basis what redaction codes to employ and the specific terms of any protective order will necessarily affect what information needs to be redacted and what information can remain unredacted. Beginning the process of

review and redaction before the specific terms of a protective order are in place would be inefficient and unproductive because it would almost certainly require PLSs to re-review and redact or un-redact documents on which they had already worked. As the FBI's discovery resources are limited, LTMS avoids devoting them to work that will almost certainly have to be redone.

20. Here, it is my understanding that government counsel and Plaintiffs' counsel engaged in several weeks of protracted negotiations over the terms of the protective order. While those negotiations occurred, and while handling other pending cases, the FBI made efforts to have documents responsive to Plaintiffs' Second Set of Discovery Requests ready to be redacted so that work could begin expeditiously once a protective order was entered.

21. Despite this delay in the entry of the protective order, the FBI is nearly ready to produce the ESI and Sentinel records outlined above. DU anticipates making a release of the ESI and Sentinel records the week of Monday, April 25, 2022, barring any unforeseen technical difficulties.

## PROCESSING AND PRODUCTION OF VIDEOS

22. Videos are the final category of records responsive to Plaintiffs' Second Set of Discovery Requests.

23. DU has not yet begun the process of viewing, processing, and redacting the 48 videos found to be responsive to Plaintiffs' request. As explained above, DU had to wait until the protective order was in place; after its entry, DU concentrated its efforts on processing ESI and Sentinel records.

24. Technical difficulties have also delayed DU's review of and access to the videos. FBI personnel in Los Angeles had custody and control of the videos, and they were not accessible electronically by DU or other OGC personnel in Washington, D.C. Despite the best efforts of field office staff in Los Angeles, it was difficult to transmit the videos to OGC counsel due to the videos' file size. Ultimately, OGC was able to locate a

file exchange program that could handle the large file size of the videos, allowing counsel to first view them in late March and early April 2022.

25. After production of the ESI and Sentinel records, DU will turn to processing these responsive videos and plans to produce them to Plaintiffs as soon as practicable.

26. The videos in question range in length. Some are a few minutes long, while others are much longer. DU will have to view each second of each video to determine whether they implicate any privacy interests or contain law-enforcement sensitive information. During the U.S. Private Vaults inventory search in March 2021, FBI personnel held up the contents of boxes, which were captured on these videos. Thus, we believe they contain personally-identifying information of individuals, such as social security numbers, dates of birth, phone numbers, and/or other personal information. In order to determine whether these materials fall within the scope of the protective order, or whether information needs to be redacted to protect privacy or law enforcement interests, DU must view each video.

27. The review and processing of the videos will be a time-consuming task, depending on the length of the video and the amount of information that may need to be redacted. While the FBI will make best efforts to have the videos ready to be produced as promptly as possible, it cannot guarantee production of all videos before May 6, 2022.

28. The FBI considers all matters that it handles, including civil and criminal discovery requests and Congressional requests for information, to be important. OGC has finite resources available for these matters and attempts to allocate them across the discovery program to ensure that requesters receive their documents as expeditiously as possible. However, there are times when certain matters require immediate attention, thus necessitating the diversion of resources and personnel. Moreover, there are instances when employees become unexpectedly unavailable due to illness or other matters necessitating their absence from the workplace, thus necessitating the realignment of resources; this has been particularly true throughout this time period.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 22, 2022 in Washington, D.C.

*[signature]*
KRISTIN L. ELLIS
Section Chief
Litigation and Technology Management Section