**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
Joe Gay^
jgay@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

*Admitted pro hac vice.*
^*Pro hac vice application pending.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**REPLY IN SUPPORT OF OPPOSED FIRST PLAINTIFFS'** ***EX PARTE*** **APPLICATION FOR ORDER SETTING A SCHEDULE FOR PRODUCTION OF DOCUMENTS AND DISCOVERY MOTIONS**<br><br>DISCOVERY MATTER<br><br><br>Judge: Hon. Margo A. Rocconi<br>Discovery cutoff date: TBD<br>Pre-Trial Conference Date: TBD<br>Trial Date: July 26, 2022<br>Complaint Filed: May 27, 2021<br>Amended Complaint Filed: June 9, 2021 |

## I. INTRODUCTION

Defendants' Opposition asks the Court to deny all relief sought by Plaintiffs and instead order the government to file a status report by May 9, 2022. But the government does not commit to actually producing all documents by that date, nor would it suffer *any consequence* if it reports that production is still incomplete. The Opposition, therefore, is the government's most recent move in a pattern of behavior meant to obfuscate and delay production until Plaintiffs' presentation on the merits is irreparably prejudiced. The Court should not condone such abusive tactics, particularly given its recognition that "[t]here is no reason why Defendants cannot *immediately* provide the list of class members and other requested documents to the Plaintiffs." Dkt. 90 at 8 n.3 (emphasis added).

This Application merely seeks to set a date by which the government must produce documents in response to discovery requests sent on **November 5, 2021**—five months and twenty days ago. The government has repeatedly said it will produce these documents; indeed, its supporting declaration confirms that the government is preparing to produce, at some future date, (1) "approximately 1,000 pages of responsive records" from the government's "UNET email exchange mailboxes," Dkt. 96-1 ¶ 16; (2) "approximately 110 pages of responsive records" from the "FBINET enclave," *id.*; (3) "approximately 2,700 pages of responsive records from Sentinel," *id.* ¶ 17; and (4) "48 videos found to be responsive to Plaintiffs' request," *id.* ¶ 23. Yet, with the deadline for opening briefs fast approaching, on **June 21, 2022**, the government's delay is forcing Plaintiffs to proceed with depositions without these critical documents, and it is not even clear that Plaintiffs will have the documents in time to use them in their opening briefs.

The government's delay therefore creates an unacceptable risk of prejudice to Plaintiffs and the hundreds of class members they represent. Absent relief from this Court, Plaintiffs will be forced to litigate the Fourth Amendment issue raised in this

1

REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER SETTING A SCHEDULE FOR PRODUCTION OF DOCUMENTS AND DISCOVERY MOTIONS

nationally-recognized case on an incomplete fact record. That risk justifies the relief requested by this Application, which this Court should grant in full.

## A. The Government's Response Confirms The Need For The Requested Relief And Concedes The Irreparable Harm To Plaintiffs.

The government's response confirms the risk that documents will not be produced in time for use in depositions or even potentially briefing in this case—an irreparable harm that obviously justifies the expedited relief sought and suggested by the Court. *See* Dkt. 90 at 8 n.3. As the Application explained, depositions are to begin on April 28, and the parties have agreed to schedule the bulk of depositions— including the 30(b)(6) deposition—for May 16-27. *See* Vora Decl. ¶ 9. Although the government states that *some* production will occur before then, the Court should pay close attention to the details of the government's response—which reveals a significant risk that production will be incomplete in at least two respects.

First, although the government assures the Court that it will likely produce *written* documents in early May, the government makes no such assurance with respect to the video recordings of the challenged search. In fact, the government's declaration now discloses for the very first time that the FBI's Discovery Unit "***has not yet begun the process*** of viewing, processing, and redacting the 48 videos found to be responsive to Plaintiffs' request." Dkt. 96-1 ¶ 23 (emphasis added). The declaration states that production "will be a time-consuming task" and the government "cannot guarantee production of all videos before May 6, 2022." *Id.* ¶ 27. These video recordings are some of the most critical evidence in the case, as they provide direct evidence of the procedures followed in the search, and yet the FBI's Discovery Unit has not even "begun the process" to produce them.

Second, although the government's declaration suggests that the government is making greater progress with respect to other documentary evidence, it also states that these materials will be produced "in full ***or with redactions***." Dkt. 96-1 ¶ 16

2

REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER SETTING A SCHEDULE FOR PRODUCTION OF DOCUMENTS AND DISCOVERY MOTIONS

(emphasis added).[1] Despite Plaintiffs' best efforts to elicit what types of redactions the government will make in the eventual production—which, of course, will occur under the protective order—the government has not identified what it will redact. Although the documents might be produced "in full," the government may so heavily redact the documents as to render them effectively useless. But Plaintiffs cannot know that until the government produces the documents, at which point there will be practically no time to file any type of discovery motion.

These disclosures confirm Plaintiffs' urgent need for the relief requested in the Application, given that they will otherwise suffer irreparable harm. First, the Application seeks to establish a *firm* deadline of May 6, 2022 for the government to finish its production, and the government's supporting declaration confirms that critical video evidence likely will not be produced by that date absent direction from the Court. Second, the Application seeks to establish a mechanism to allow for expedited resolution of any dispute concerning the government's eventual production, and the declaration's vague references to potential, as-of-yet undetermined redactions underscore the need for that relief. Again, Plaintiffs seek this relief for the explicit purpose of avoiding irreparable harm to their presentation of this case on the merits while abiding by the Court's scheduled deadlines.

**B. This Motion Meets The Requirements For *Ex Parte* Relief.**

The government does not dispute that these documents ought to be produced in time to actually be of use in the litigation, and, instead, argues at length that Plaintiffs should be required to pursue that relief through the ordinary motion procedures—rather than via *ex parte* application. But these arguments fail, as Plaintiffs cannot wait to secure access to these documents without suffering

---

[1] With respect to the videos, as well, the declaration states the government has not yet "determin[ed] . . . whether information needs to be redacted to protect privacy or law enforcement interests." Dkt. 96-1 ¶ 26. In other words, even the government does not currently know what it will produce, making it impossible for Plaintiffs to know if there will be further disputes regarding the adequacy of the production.

significant harm to their merits presentation. And perhaps more importantly, Plaintiffs are not responsible for the government's unilateral choices that have delayed production.

       1.   <u>Plaintiffs Will Be Irreparably Prejudiced If *Ex Parte* Relief Is Denied.</u>

As Plaintiffs' moving papers explained, Plaintiffs will be irreparably prejudiced if forced to move forward with depositions—and potentially with briefing—without access to documents. Nothing in the government's response undermines that clear showing of prejudice.

Indeed, if Plaintiffs were forced to litigate these issues under ordinary motion procedures, it would effectively deny Plaintiffs the ability to secure timely access to these documents. Plaintiffs would have to prepare a joint stipulation under Local Rule 37-2.1, which takes at least eight days after the moving party's portion of the stipulation is complete. Even then, Local Rule 37-3 states that any motion to compel would not be heard for "at least twenty-one days after the filing of the motion." So even if Plaintiffs had sent the government their portion of a joint stipulation on April 21, when they filed this *Ex Parte* Application, the motion could not be heard until **May 20, 2022** at the earliest—just a month out from the deadline for opening briefs and almost certainly too late for Plaintiffs to use the documents in the 30(b)(6) deposition, which is to occur between May 16-27. Plaintiffs simply cannot vindicate their right to documents on a non-emergency basis.

The government raises other incorrect arguments for why Plaintiffs will not be prejudiced absent relief from this Court. First, it claims Plaintiffs will not be prejudiced since the government provided them with "supplemental interrogatory responses," as well as "multiple status reports concerning the production of documents." Dkt. 96 at 10. But two interrogatory responses with the names of class members and witnesses are no substitute for documents, and "status reports" about documents obviously are not the same thing as documents themselves. Second, the government claims Plaintiffs will not be prejudiced because its production of

documents "will be substantially completed . . . by May 6." *Id.* Yet the government fails to identify what "substantially" means and, as its declaration makes clear, (1) the video production process ***has not even started*** and likely ***will not*** be complete, and (2) both document and video production may include unspecified redactions requiring additional motion practice. *See* Dkt. 96–1 ¶¶ 16, 23, 26. Given these uncertainties, the fact that "Plaintiffs are not required to file their opening brief until two months from today," Dkt. 96 at 10, is cold comfort.

The government also contends there is no prejudice because it "has no objection to a continuance of the dates in this case." *Id*. But this argument both oversteps the government's authority within this Court and puts the cart before the horse. Judge Klausner's Standing Order provides that "[c]hanges in dates are disfavored" and that "[t]rial dates set by the Court are firm and will rarely be changed." Plaintiffs must pursue every avenue to get the government to produce these documents within the timeframe this Court set for discovery in this case.

    2.   <u>Plaintiffs Did Not Cause This Delay By Contesting The Government's Protective Order.</u>

The government also argues that Plaintiffs are not entitled to *ex parte* relief because they "caused the delay in the production of discovery" by objecting to the contents of the government's proposed protective order. Dkt. 96 at 10. This is simply not true, as nothing about that dispute caused the government to unilaterally stop its efforts to prepare documents for production.

The government discloses in its response that its production came "to a screeching halt" during the dispute over the protective order, Dkt. 96 at 5, but the government could easily have prepared documents for production while that dispute was ongoing. As the Court is aware, the dispute focused on two relatively narrow issues: (1) whether Plaintiffs had to disclose the identities of box holders before providing them with information concerning their own safe deposit boxes, and (2) whether those box holders could use that information to pursue claims against the

5

REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER SETTING A SCHEDULE FOR PRODUCTION OF DOCUMENTS AND DISCOVERY MOTIONS

government for lost or stolen property. *See* Dkt. 85.[2] Apart from those two issues, the parties' two protective orders were identical in all respects. *See* Dkt. 85-4 (providing a redline comparison of the two proposed protective orders). The government does not identify how those two issues would have affected its review of the documents in any way.

Indeed, it is difficult to see how the resolution of those two issues would have made **any** difference to the government's production processes. After all, the parties' dispute was about how one class of documents, once produced, could be disseminated and used. No matter how the Court resolved that dispute, the government would still use the same procedures to review and redact documents and videos yet to be produced. Therefore, it was incumbent on the government not to bring discovery to a "screeching halt," but instead to expeditiously conduct their "line-by-line review, . . . a burdensome manual task where the assigned DU Paralegal Specialist . . . must review every word on every page of a document." Dkt. 96-1 ¶¶ 6-13. Yet the FBI decided not to conduct *any* privilege review or redactions "until a signed protective order [was] in place," *id.* ¶ 19, thereby creating the circumstances necessitating this emergency Application.

In addition, to the extent that the government claims that Plaintiffs should have anticipated that the FBI would bring its production processes "to a screeching halt" during the protective order dispute, *see* Dkt. 96 at 5, Plaintiffs note the following from their January 24, 2022 letter to government's counsel:

> <u>Timing</u>: First, as I noted several times during our call, ***we want to emphasize the necessity of conducting discovery in a timely manner***. The Court has ordered the parties to submit their opening briefs for dispositive

---

[2] The government misleadingly states that Plaintiffs' proposed protective order would have allowed use of documents "for purposes of prosecuting *any* future lawsuit [class members] might decide to file." Dkt. 96 at 1 (emphasis added). But in fact the proposed agreement would have only allowed such use "to file claims with or otherwise exercise the class member's rights to seek relief *from the federal government*." Dkt. 85-4 at 85-86 (emphasis added).

motions by June 21, 2022, *less than five months from now*. (Scheduling Conference Order, ECF No. 83). Yet Plaintiffs still have not received substantive responses to most of the discovery requests they served over two-and-a-half months ago. For the parties to complete written discovery, conduct depositions, and resolve any disputes about the scope of discovery in time to meet the Court's briefing deadline, it is essential that Defendants fully respond to the pending discovery requests as quickly as possible. ***We appreciate your assurances at the end of the call that you will work on your end to "keep the train moving" on Defendants' discovery responses.***

Vora Decl. Ex. D at 29 (emphases added).

If Plaintiffs had known that the government would bring its document production efforts to "a screeching halt" for several months, *see* Dkt. 96 at 5, then they would have filed a motion to protest that development. As the evidence submitted with the Application shows, the government never advised Plaintiffs of any "screeching halt" and instead let Plaintiffs continue to believe a rolling production would occur. Indeed, while the FBI only now states that it "cannot start a privilege review of documents and begin making redactions until a protective order is in place," Dkt. 96-1 ¶ 19, the government failed to advise Plaintiffs of that critical fact when it first sought an extension back in **November 2021**. Had the government disclosed this policy at the outset, the parties could have negotiated the terms of a protective order during the pendency of that extension, thereby resolving any dispute months earlier and avoiding the need for this emergency Application.

But the government did not do that. Instead, Plaintiffs only began to suspect the full extent of the government's internal delay with respect to production when documents were not immediately forthcoming after a protective order was issued, and that suspicion was not actually confirmed until Plaintiffs read the supporting declaration attached to the response to this Application.

    Moreover, the government's own evidence shows that its challenges in tackling simple logistical tasks continue to hamper discovery in this case. Its declaration states, for instance, that the government delayed electronically transmitting digital videos from Los Angeles to Washington, D.C. due to the videos' file size. Dkt. 96-1 ¶¶ 24. But the government never explains why it could not have just overnighted jump drives of 2 terabytes in size to easily solve this problem.[3] By granting Plaintiffs' proposed relief, the Court can require the government to commit greater resources to complying with the previously entered briefing dates in this case. The FBI's choices about how to process discovery are its own, and the Court should not have to reset deadlines for trial briefing merely because the FBI chose to stop its internal review processes for months.

    Plaintiffs also note that the time between the date the government circulated a proposed protective order and the date the Court resolved the parties' dispute was just two months—from January 27 to March 30. *See* Vora Decl. Ex. E at 39; Dkt. 90.[4] Plaintiffs, however, sent their discovery requests on November 5, 2021, ***five months and twenty days*** ago. Even imagining that Plaintiffs could be faulted for the entire two-month period when the protective order dispute was being litigated— and, as explained above, they cannot—then that would still leave the question of why the government could not complete (or even substantially begin[5]) production of the relevant documents in the remaining three months and twenty days.

---

[3] One terabyte jump drives are currently available on Amazon for $19.99.

[4] The government notes the order was not entered until April 8, *see* Dkt. 96 at 5, but as of March 30 it knew all terms of the order that would be entered.

[5] The government misleadingly says it is "simply not correct" that the warrant application (practically the only document produced so far) had already been unsealed in another case. Dkt. 96 at 4. The government points out that Plaintiffs cited the wrong docket entry, *id.*, but the proposition itself remains true. *See United States v. U.S. Private Vaults*, No. 21-cr-106-MCS, Dkt. 60 at 2 (C.D. Cal. Aug. 5, 2021) (providing that a lightly redacted version of the application, substantially identical to the version produced to Plaintiffs, "shall be treated as unsealed"). Indeed, a reporter posted that unsealed application to the internet in August 2021. *See* https://www.documentcloud.org/documents/21037781-uspv-aff-
(continued…)

8

REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER SETTING A SCHEDULE FOR PRODUCTION OF DOCUMENTS AND DISCOVERY MOTIONS

Finally, Plaintiffs note that the government does not even attempt to suggest that Plaintiffs in any way delayed bringing this dispute to the attention of the Court. To the contrary, after the protective order was entered on **April 8**, Plaintiffs moved quickly to ask for documents and (when they were not forthcoming) to file this Application. Plaintiffs' counsel emailed counsel for the government just three days after the protective order was entered, on **April 11**, seeking to set a schedule for production. *See* Vora Decl. Ex. H at 60. Counsel conferred telephonically about the schedule for production on **April 14**, and the parties conferred via email in an attempt to resolve the dispute on Friday, **April 15**, Monday, **April 18**, and Wednesday, **April 20**. *See* Vora Decl. ¶ 2; Vora Decl. Ex. I at 63-67. When those efforts failed, Plaintiffs filed this Application on **April 21**, less than two weeks after the protective order was entered. As soon as Plaintiffs learned that the government was not in a position to commence production following entry of the protective order, Plaintiffs moved to seek appropriate relief.

3. <u>If The Court Believes A Joint Stipulation Or Any Other Filing Is Required, Plaintiffs Respectfully Ask The Court To Set An Expedited Schedule To Produce And Consider One.</u>

Finally, the government repeatedly asserts that the Application should be denied because it does not take the form of a joint stipulation under Local Rule 37-2.1. *See*, *e.g.*, Dkt. 96 at 6. Plaintiffs, however, have not filed these papers under Local Rule 37-2.1, and have instead filed them under the provisions of the Local Rules pertaining to *ex parte* applications.

To the extent that the government suggests that the requirements of Local Rule 37-2.1 somehow override the provisions in the Local Rules pertaining to *ex parte* applications, Plaintiffs note that Local Rule 37-3 specifically states that "no discovery motions may be filed or heard on an *ex parte* basis absent a showing of

---

under-seal_redacted. Plaintiffs apologize for the citation error, but the point remains that, in sending the application, the government did not provide new information.

irreparable injury or prejudice not attributable to the lack of diligence of the moving party." This rule makes clear that discovery motions may be both "filed" and "heard" on an *ex parte* basis so long as the standard for *ex parte* relief is met.

In fact, the Court granted *ex parte* relief on analogous facts in *Altair Instruments, Inc. v. Telebrands Corp.*, No. 2:19-cv-08967-PSG-JC, 2020 WL 6106821 (C.D. Cal. July 10, 2020), without requiring the parties to file a joint stipulation under Rule 37-2.1. The government says the decision in *Altair* is "silent about the failure to comply with Local Rule 37-2.1(a)'s requirement[s]," Resp. 11, but the underlying filings in that case show that the *ex parte* application did not take the form of a joint stipulation. *See* No. 2:19-cv-08967-PSG-JC, Dkt. 169.[6] Authority to grant this *ex parte* application, therefore, is plainly within the Court's discretion and such discretion has been exercised previously within this Court. The Court should use that discretion here.

But should the Court conclude that a joint stipulation is required, Plaintiffs respectfully request that the Court have the parties produce and file one on an expedited basis. The Federal Rules of Civil Procedure make clear that "[a] local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2). With the parties now less than two months out from the briefing deadline, Plaintiffs are simply seeking to secure the documents that the government **has already agreed** ought to be produced. Plaintiffs are willing to file any paper, in any form, that the Court requires to secure that relief in a timely fashion.

## II. CONCLUSION

For the foregoing reasons, the *Ex Parte* Application should be granted.

---

[6] The government's suggestion that a joint stipulation is necessary "so that each party's contentions as to each discovery request at issue can be considered and ruled upon," Dkt. 96 at 11, also misses the point. There is no dispute that the documents at issue in this case need to be produced. The problem is simply that the government is not producing them in time for them to be of use in the litigation.

10

REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER SETTING A SCHEDULE FOR PRODUCTION OF DOCUMENTS AND DISCOVERY MOTIONS

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: April 25, 2022 | Respectfully Submitted, |
| 3 | | |
| 4 | | /s/ Robert Frommer |
| 5 | | **THE INSTITUTE FOR JUSTICE**<br>Robert Frommer*<br>rfrommer@ij.org |
| 6 | | Joseph Gay^<br>jgay@ij.org |
| 7 | | 901 N. Glebe Rd., Suite 900<br>Arlington, VA 22203 |
| 8 | | Tel. (703) 682-9320 |
| 9 | | Robert E. Johnson*<br>rjohnson@ij.org |
| 10 | | 16781 Chagrin Blvd., Suite 256<br>Shaker Heights, OH 44120 |
| 11 | | Tel. (703) 682-9320 |
| 12 | | *Admitted pro hac vice. |
| 13 | | ^Motion for pro hac vice pending. |
| 14 | | |
| 15 | | **THE VORA LAW FIRM, P.C.**<br>Nilay U. Vora (SBN 268339) |
| 16 | | nvora@voralaw.com<br>Jeffrey Atteberry (SBN 266728) |
| 17 | | jatteberry@voralaw.com<br>201 Santa Monica Blvd., Suite 300<br>Santa Monica, CA 90401 |
| 18 | | Tel. (424) 258-5190 |
| 19 | | *Attorneys for Plaintiffs* |

11

REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER SETTING A SCHEDULE FOR PRODUCTION OF DOCUMENTS AND DISCOVERY MOTIONS