**THE INSTITUTE FOR JUSTICE**
Robert Frommer*
rfrommer@ij.org
Michael Greenberg*
mgreenberg@ij.org
Joseph Gay^
jgay@ij.org
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel. (703) 682-9320

Robert E. Johnson*
rjohnson@ij.org
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
Tel. (703) 682-9320

* *Admitted pro hac vice.*
^*Pro hac vice application pending.*

**THE VORA LAW FIRM, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey Atteberry (SBN 266728)
jatteberry@voralaw.com
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Tel. (424) 258-5190

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC, and TRAVIS MAY,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA, TRACY L. WILKISON, in her official capacity as Acting United States Attorney for the Central District of California, and KRISTI KOONS JOHNSON, in her official capacity as an Assistant Director of the Federal Bureau of Investigation,**<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**DECLARATION OF PAUL SNITKO**<br><br>Trial Date: August 23, 2022<br>Time: 9:00 A.M.<br>Courtroom: 850<br>Judge: Hon. R. Gary Klausner<br>Action Filed: May 27, 2021 |

DECLARATION OF PAUL SNITKO

I, Paul Snitko, declare and state as follows:

1. I have knowledge of the facts set forth herein, and if called upon to testify as a witness thereto, I could and would competently do so under oath.

2. I am a citizen of the United States and a resident of Pacific Palisades, California.

3. I am a customer of U.S. Private Vaults, Inc. ("USPV"). When the government raided the U.S. Private Vaults facility, on March 22, 2021, my wife and I were holding our property in Box 7701 at the USPV facility in Beverly Hills.

4. As of March 22, 2021, my security deposit box at USPV contained my flight log book, copies of legal documents, my father's antique Hamilton railroad watch, watches my father and I received from our respective employers in recognition of our years of service, my college class ring, backups of our home PC hard drives, miscellaneous coins from my wife's grandfather, and a few pieces of my wife's gold jewelry.

5. My wife and I also placed two external hard drives and two memory cards in the box. The digital archives placed in the box contained decades' worth of information that would provide a detailed picture of our private lives.

6. We chose to keep our property at USPV because our bank had a waiting list for a safe deposit box, we live in a wildfire prone area that makes our documents (e.g., flight log) vulnerable, and we require a place to store our wedding bands when engaging in sports activities such as skiing and sailing.

7. We chose USPV after finding it to be a safe and secure place to store our property. We found the staff professional and courteous, and the facilities pristine. We also appreciated that USPV's longer Saturday hours gave us more flexibility and convenience.

8. Based on advice given to me by USPV, I placed a letter containing our contact information on top of the plastic interior sleeve within our safe deposit box

1. so that it would be immediately apparent that the box's contents contained our property.

9. I learned of the government's seizure of the USPV security deposit boxes from an April 2, 2021 story published in the Los Angeles Times that I read on or about April 8, 2021. A picture in the April 2, 2021 LA Times article showed a sign on the window of USPV with a link to an FBI website that had a form for people to claim their property.

10. As per the instructions on the FBI's posted notice, my wife and I submitted a claim on or about April 9, 2021 through the FBI's website at https://forms.fbi.gov/u-s-private-vaults-claim-form.

11. After submitting a claim, my wife Jennifer received a form letter from the FBI via email on April 14, 2021 acknowledging the claim and stating that someone from the FBI would contact us within the next 30 to 60 days. Jennifer received a follow up voicemail from special agent "Blair F." requesting our box number. Jennifer spoke to special agent Blair F. on May 7, 2021 and gave her our box number; she (Blair F.) indicated that she was entering our information into a spreadsheet and that someone would be contacting us from the FBI either by phone or email. She (Blair) did not provide a timeframe for a response.

12. On May 27, 2021, my wife and I, along with other Plaintiffs, filed this class action lawsuit. At that point, it had been over two months since the FBI seized my property, and they had neither explained when they would return it or why they were continuing to hold it.

13. On May 27, the FBI called my wife within hours of us filing this action and offered to return the property it had seized from us.

14. My wife and I, along with our attorney, Robert Johnson, went to the FBI headquarters on June 10, 2021 to retrieve our property. We went in person to the Wilshire Federal Building, in Los Angeles, and we were escorted through a metal detector into an interview room.

15. In the interview room, FBI agents produced the door to our safe deposit box, which had been removed from the nest of boxes at the hinges. We brought both keys to our safe deposit box with us to the meeting, as requested by the FBI, and the FBI agents had us test a key in the door to the box in order to verify that it was able to open the lock.

16. After we verified that we possessed the appropriate key, agents brought out our property in plastic bags labeled with the word "EVIDENCE" in large letters. A review of the property showed that FBI agents had opened envelopes that we had placed in our box and removed the documents inside for examination. This occurred even though we had placed a letter containing our contact information on top of the plastic interior sleeve within our safe deposit box so that it would have been immediately apparent to the FBI that the box's contents contained our property.

17. My wife and I place an extraordinarily high value on our privacy, and the contents of our box contain a significant amount of personal information. While the contents of our box were not valuable in any material sense, they are valuable to us, and they provide a window on our lives. Knowing that the government has copies of this very personal information—and seems to want to retain that information forever—is emotionally distressing.

18. The entire process of obtaining the return of my property from the FBI was extremely disturbing to me. In particular, it was disturbing to see my personal property bagged as "evidence" and to see that my personal property had been subjected to examination by the FBI.

19. I understand that the FBI will indefinitely retain the records that it produced in connection with the search of my box, including photographs or videos showing the contents of the box. In addition, I understand that FBI agents will be able to access those documents and use them for investigative purposes. This is a significant invasion of my privacy. I worry both about the use that government

officials may make of this information and that the records could be lost, mishandled, or subject to a cyberbreach. These possibilities cause me severe distress.

20. I want to secure assurance that the government will destroy all physical and digital records that it acquired in searching my box—or else segregate those records, so that they can *only* be used to respond to claims for lost, stolen, or missing property and cannot be used for investigative purposes.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th day of July, 2022.

*/s/ Paul Snitko*

Paul Snitko