KATIE TOWNSEND (SBN 254321)
ktownsend@rcfp.org
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: 202.795.9300
Facsimile: 202.795.9310

JEFFREY GLASSER (SBN 252596)
jeff.glasser@latimes.com
LOS ANGELES TIMES
COMMUNICATIONS LLC
2300 E. Imperial Highway
El Segundo, CA 90245
Telephone: 213.237.7077

*Counsel for Amici Curiae*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Case No. 2:21-CV-04405-RGK-MAR<br><br>**BRIEF OF *AMICI CURIAE* THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND LOS ANGELES TIMES COMMUNICATIONS LLC**<br><br>[Notice of Motion and Motion and Proposed Order Filed Concurrently Herewith] |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ................................................................................................ 1

IDENTITY AND INTEREST OF AMICI CURIAE ........................................... 3

ARGUMENT ........................................................................................................ 3

    I.    The public has a substantial interest in access to judicial records that will inform this Court's disposition of allegations of Government misconduct. ...... 3

    II.    The public has a common law and First Amendment right to access the exhibits to Plaintiffs' briefs, which the Government cannot overcome here. .................. 5

CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*Condit v. Dunne*, 225 F.R.D. 113 (S.D.N.Y. 2004) ...................................................... 7

*Doe Co. v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) ............................................. 5

*Flaherty v. Seroussi*, 209 F.R.D. 295 (N.D.N.Y. 2001) ................................................ 7

*FTC v. Standard Financial Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987) ...................... 5

*Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. 1995) .................................................. 9

*Hawley v. Hall,* 131 F.R.D. 578 (D. Nev. 1990) ........................................................... 7

*In re Application of Nat'l Broad. Co.*, 635 F.2d 945 (2d Cir. 1980) ........................... 2

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 101 F.R.D. 34 (C.D. Cal. 1984) ................................................................................. 4, 5

*In re Copley Press*, 518 F.3d 1022 (9th Cir. 2008) ................................................... 8, 9

*In re Sealed Case*, 971 F.3d 324 (D.C. Cir. 2020) ....................................................... 5

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ........... 2, 6, 8

*Leigh v. Salazar*, 677 F.3d 892 (9th Cir. 2012) ............................................................ 9

*Mendez v. City of Gardena*, 222 F. Supp. 3d 782 (C.D. Cal. 2015) ............................ 7

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017) (Garland, J.) ............................................................................................................. 9

*Morrow v. City of Tenaha*, No. 2-08-cv-288, 2010 WL 3927969 (E.D. Tex. Oct. 5, 2010) ........................................................................................................................ 6

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ............................................... 5

*Oregonian Publishing Co. v. District Court*, 920 F.2d 1462 (9th Cir. 1990) .............. 8

*Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1 (1986) ........................................................ 6

*Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988) .................... 6, 8

*United States v. Custer Battlefield Museum*, 658 F.3d 1188 (9th Cir. 2011) ........... 4, 5

*Wash. Legal Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897 (D.C. Cir. 1996) 2, 5

*Welsh v. City & County of San Francisco*, 887 F. Supp. 1293 (N.D. Cal. 1995) ..... 4, 6

## OTHER AUTHORITIES

Michael Finnegan, *After FBI Seizure of Safe Deposit Boxes in Beverly Hills, Legal Challenges Mount*, L.A. Times (Apr. 8, 2021), https://lat.ms/3bqQTaf ................... 1

Michael Finnegan, *Beverly Hills Store Admits to Using Safe Deposit Boxes to Launder Drug Money*, L.A. Times (March 3, 2022), https://lat.ms/3BuWEOL ...... 1

Michael Finnegan, *FBI Breached Rights of Beverly Hills Safe Deposit Box Holders, Judge Rules* (July 26, 2021), https://lat.ms/3Sq4ZcS ............................................... 1

Michael Finnegan, *FBI Says Fortune Seized in Beverly Hills Raid Was Criminals' Loot. Owners Say: Where's the Proof?*, L.A Times (Sept. 19, 2021), https://lat.ms/3OLCpzD ............................................................................................ 1

Michael Finnegan, *FBI Wants to Keep Fortune in Cash, Gold, Jewels from Beverly Hills Raid. Is It Abuse of Power?*, L.A. Times (June 9, 2021), https://lat.ms/3S8C8tr ................................................................................................ 1

Plaintiffs' Application for Leave to File Documents Under Seal, *Paul Snitko v. United States*, No. 2:21-cv-04405 (C.D. Cal. July 19, 2022) (ECF No. 113) .......... 2

Plaintiffs' Trial Brief, *Paul Snitko v. United States*, No. 2:21-cv-04405 (C.D. Cal. July 19, 2022) (ECF No. 112) ................................................................................. 1

**RULES**

Fed. R. Civ. P. 26(c) ................................................................................................ 6

# INTRODUCTION

In this case, customers of U.S. Private Vaults, Inc., challenge the Federal Bureau of Investigation's seizure of the contents of their safety deposit boxes, a seizure that the Plaintiffs allege "callously disregarded the[ir] Fourth Amendment rights." Plaintiffs' Trial Brief at 1, *Paul Snitko v. United States*, No. 2:21-cv-04405 (C.D. Cal. July 19, 2022) (ECF No. 112). Those charges of government overreach have drawn substantial, legitimate public interest, as the reporting of *amicus* Los Angeles Times Communications LLC has described in the months since the search. *See, e.g.*, Michael Finnegan, *After FBI Seizure of Safe Deposit Boxes in Beverly Hills, Legal Challenges Mount*, L.A. Times (Apr. 8, 2021), https://lat.ms/3bqQTaf; Michael Finnegan, *FBI Wants to Keep Fortune in Cash, Gold, Jewels from Beverly Hills Raid. Is It Abuse of Power?*, L.A. Times (June 9, 2021), https://lat.ms/3S8C8tr.[1]

To substantiate their allegations of official misconduct, Plaintiffs have filed—as Exhibits L–O of their trial brief—transcripts of depositions with government witnesses that they maintain "contain information important to the disposition of this

---

[1] *See also* Michael Finnegan, *FBI Breached Rights of Beverly Hills Safe Deposit Box Holders, Judge Rules* (July 26, 2021), https://lat.ms/3Sq4ZcS; Michael Finnegan, *FBI Says Fortune Seized in Beverly Hills Raid Was Criminals' Loot. Owners Say: Where's the Proof?*, L.A Times (Sept. 19, 2021), https://lat.ms/3OLCpzD; Michael Finnegan, *Beverly Hills Store Admits to Using Safe Deposit Boxes to Launder Drug Money*, L.A. Times (March 3, 2022), https://lat.ms/3BuWEOL.

1
BRIEF OF *AMICI CURIAE* THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND LOS ANGELES TIMES COMMUNICATIONS LLC

case and to the broader public's interest in the conduct of the government." Plaintiffs' Application for Leave to File Documents Under Seal at 7, *Paul Snitko v. United States*, No. 2:21-cv-04405 (C.D. Cal. July 19, 2022) (ECF No. 113).

*Amici* write to explain that the First Amendment and common law entitle the press and public to scrutinize that showing. Not only will access to the transcripts advance the "legitimate and important interest in affording members of the public their own opportunity to see and hear evidence that records the activities of . . . agents of the Federal Bureau of Investigation," *In re Application of Nat'l Broad. Co.*, 635 F.2d 945, 952 (2d Cir. 1980), but it will also provide essential context for this Court's resolution of the merits of the parties' dispute, because "the meaning and legal import of a judicial decision is a function of the record on which it was rendered," *Wash. Legal Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897, 906 (D.C. Cir. 1996). The Government's blanket insistence that the transcripts not be made public because Plaintiffs' trial brief does not cite to each and every line of them is meritless.

The Ninth Circuit has held on many occasions that "those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). The Government cannot make that showing here, where Plaintiffs contend that the Government violated their constitutional rights and public access to the filed transcripts is essential

to understanding both the Government's conduct and the merits of Plaintiffs' claim that the seizure was illegal. For the reasons herein, *amici* respectfully urge this Court to unseal Exhibits L–O.

## IDENTITY AND INTEREST OF AMICI CURIAE[2]

The Reporters Committee for Freedom of the Press ("Reporters Committee") is an unincorporated nonprofit association of reporters and editors that works to safeguard the rights of a free press, including the right of access to judicial records.

Los Angeles Times Communications LLC is one of the largest daily newspapers in the United States. Its popular news and information website, www.latimes.com, attracts audiences throughout California and across the nation. Its reporters regularly report on noteworthy judicial proceedings in the Central District of California and have extensively covered the U.S. Private Vaults controversy, as well as the legal proceedings that followed. *See* sources cited *supra* note 1 and accompanying text. It is wholly owned by NantMedia Holdings, LLC.

## ARGUMENT

**I. The public has a substantial interest in access to judicial records that will inform this Court's disposition of allegations of Government misconduct.**

---

[2] No counsel for a party authored this brief in whole or in part, nor did any person or entity, other than *amici* or their counsel, make a monetary contribution to the preparation or submission of this brief.

As the reporting of *amicus* Los Angeles Times Communications LLC reflects, the Government's seizure of deposit boxes from U.S. Private Vaults spurred extensive media coverage and substantial public interest. That scrutiny should come as no surprise: The warrant process "adjudicate[s] important constitutional rights," *United States v. Custer Battlefield Museum*, 658 F.3d 1188, 1194 (9th Cir. 2011) (quotation omitted), and the public is entitled to understand whether—as Plaintiffs allege—the Government abused that process here. Access to the transcripts will directly advance that understanding, and there should be no question that the need for transparency is at its apex where the public's "strong interest in assessing the truthfulness of allegations of official misconduct" is at stake. *Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1302 (N.D. Cal. 1995); *see also In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 101 F.R.D. 34, 36, 38 (C.D. Cal. 1984) ("The interest in access to court proceedings in general may be asserted more forcefully when the litigation involves matters of significant public concern.").

The public's powerful interest in scrutinizing the conduct of the Government here is sharpened by the role the transcripts will play in this Court's adjudication of the parties' dispute. "The appropriateness of making court files accessible is accentuated in cases where the government is party," because "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *FTC v. Standard Financial Mgmt.*

*Corp.*, 830 F.2d 404, 409 (1st Cir. 1987); *accord Doe Co. v. Public Citizen*, 749 F.3d 246, 271 (4th Cir. 2014); *In re Sealed Case*, 971 F.3d 324, 329 (D.C. Cir. 2020). Just as the public cannot fairly gauge the Government's performance of its duties without access to the transcripts, the public will not be able to evaluate this Court's disposition of Petitioners' allegations without access to the evidence that informed that judgment: "[T]he meaning and legal import of a judicial decision is a function of the record on which it was reached." *Wash. Legal Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897, 906 (D.C. Cir. 1996). Maintaining the transcripts under seal, then, would undermine the public's entitlement to oversee both the judicial and executive branches. *See In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 101 F.R.D. at 43 (noting that transparency furthers "the important interest in contemporaneous review by the public of judicial performance").

**II. The public has a common law and First Amendment right to access the exhibits to Plaintiffs' briefs, which the Government cannot overcome.**

The common law and Constitution entitle the public to inspect the transcripts at issue, which were filed by Plaintiffs with the Court as exhibits to their trial brief. "The law recognizes two qualified rights of access to judicial proceedings and records, a common law right 'to inspect and copy public records and documents, including judicial records and documents,' and 'a First Amendment right of access'" to certain judicial proceedings and documents. *Custer Battlefield Museum*, 658 F.3d at 1192 (first quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978),

then quoting *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8 (1986)). Both presumptions attach to the transcripts; the Government has not overcome them.

The Ninth Circuit has already resolved that a "strong" common law presumption of access "applies fully to dispositive pleadings"—such as the trial brief at issue here—"even if the dispositive motion, or its attachments, were previously filed under seal or protective order." *Kamakana*, 447 F.3d at 1179. Once incorporated into a motion that will "adjudicate[] substantive rights and serve[] as a substitute for trial," these deposition transcripts "los[t] their status of being raw fruits of discovery," *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) (internal quotation omitted), because the "interest in ensuring the public's understanding of the judicial process" is now at stake, *Kamakana*, 447 F.3d at 1179 (internal quotation omitted). As a result, "[t]hose who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy," a showing the Government has not attempted, and that pointing to the protective order will not satisfy. *Id.* at 1180.[3]

---

[3] It is far from clear that the Government can satisfy even a lesser showing of "good cause" to justify the breadth of the protective order in this case. Fed. R. Civ. P. 26(c). Even under that standard, courts have often refused to seal depositions or interview transcripts "merely to spare the defendant embarrassment where, as here, the defendants are public officials and the issues in the case are matters of public concern." *Morrow v. City of Tenaha*, No. 2-08-cv-288, 2010 WL 3927969, at *4 (E.D. Tex. Oct. 5, 2010); *see also Welsh*, 887 F. Supp. at 1302 (interview transcripts from prior Police Commission proceeding); *Condit v. Dunne*, 225 F.R.D. 113, 119

This Court's decision in *Mendez v. City of Gardena*, 222 F. Supp. 3d 782 (C.D. Cal. 2015), is instructive. In that case, the City of Gardena spent $4.7 million to settle a civil rights lawsuit for wrongful death and related claims. The parties had stipulated to a protective order that prevented the plaintiffs from filing on the public docket videos that showed Gardena police shooting unarmed men, one fatally, even though the parties had relied on the videos in their respective summary judgment motions. The videos remained sealed until the *Los Angeles Times* intervened to compel disclosure. The district court promptly recognized that the protective order could not—without more—justify sealing, because "the parties [could not] contractually agree to deprive the public of its strong First Amendment interest in accessing these videos, which were filed in connection with a dispositive motion." *Id.* at 791–792. Applying the "compelling reasons standard" instead, *id.* at 791, the court made clear that the defendants could not "assert a valid compelling interest in sealing the videos to cover up any wrongdoing on their part or to shield themselves from embarrassment," *id.* at 792, and granted the *Times*' motion to unseal the videos.

---

(S.D.N.Y. 2004) (videotaped deposition where "the underlying litigation directly addresse[d] a matter of public interest regarding a Congressman's performance of his official duties"); *Hawley v. Hall,* 131 F.R.D. 578, 585 (D. Nev. 1990) (deposition transcripts and related discovery materials in a civil rights action); *Flaherty v. Seroussi*, 209 F.R.D. 295, 300 (N.D.N.Y. 2001) (videotaped deposition of mayor). But this Court need not address the question because the stricter common law and First Amendment standards govern Plaintiffs' motion to unseal the transcripts here.

Here, the strong common law presumption of public access to the deposition transcripts attached when the Plaintiffs filed them with the Court with their trial brief, regardless whether they were previously subject to a protective order. *See Kamakana*, 447 F.3d at 1179. The public has a right to know if the deposition testimony furthers Plaintiffs' claims that the Government seized hundreds of safety deposit boxes while lacking probable cause to search them. And as in *Mendez*, the Government cannot assert a valid compelling interest in sealing the transcripts to conceal any wrongdoing on its part, or to shield its officials from embarrassment.

And an even stricter standard for sealing judicial records governs where, as here, the First Amendment presumption also attaches to filings that "serve[] as a substitute for trial," *In re Copley Press*, 518 F.3d 1022, 1027 (9th Cir. 2008) (internal quotation omitted) (alteration in original), including discovery material attached to a dispositive motion, *see Rushford*, 846 F.2d at 253. As the Ninth Circuit has emphasized, "the party seeking access is entitled to a presumption of entitlement to disclosure. It is the burden on the party seeking closure . . . to present facts supporting closure and to demonstrate that available alternatives will not protect his rights." *Oregonian Publishing Co. v. District Court*, 920 F.2d 1462, 1466–67 (9th Cir. 1990). In particular, the proponent of sealing must show that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to

8
BRIEF OF *AMICI CURIAE* THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND LOS ANGELES TIMES COMMUNICATIONS LLC

closure that would adequately protect the compelling interest." *In re Copley Press*, 518 F.3d at 1028 (internal quotation omitted); *see also Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012) (denial of access requires demonstrating "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest" (quotation omitted). This is a heavy burden that can only be met with true "evidentiary support," *Hagestad v. Tragesser*, 49 F.3d 1430, 1467 (9th Cir. 1995), not "hypothesis or conjecture," *id.* at 1434.

Here, the only justification the Government offers for maintaining the transcripts under seal is that Plaintiffs have only (so far) cited to specific sections of them. But that objection is irrelevant: This Court will review the record "as a whole" when it ultimately resolves the parties' dispute on the merits, judging for itself which portions are relevant and what they prove. *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 669 (D.C. Cir. 2017) (Garland, J.). But if denied access to the complete record filed with the Court, the public cannot understand "which parts of those materials persuaded the court and which failed to do so (and why)." *Id.* at 668.

The common law and Constitution condemn that result. The press and public have a right to inspect the deposition transcripts filed with the Court as exhibits to Plaintiffs' trial brief. This Court should order that they be promptly unsealed.

# CONCLUSION

For the foregoing reasons, *amici curiae* respectfully urge this Court to unseal the deposition transcripts filed as Exhibits L–O to Plaintiffs' Trial Brief.

Dated: August 2, 2022

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
SBN 254321
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone:  202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org

*Counsel of Record for Amici Curiae*