UNCLASSIFIED – FOR OFFICIAL USE ONLY
Domestic Investigations and Operations Guide §18

### 18.6.12.4 (U) DEFINITION OF INVESTIGATIVE METHOD

#### 18.6.12.4.1 *(U) DISTINCTION BETWEEN A TRASH COVER, A SEARCH OF ABANDONED PROPERTY IN A PUBLIC RECEPTACLE, AND ADMINISTRATIVE INVENTORY SEARCH[71] OF A LOST OR MISPLACED ITEM*

A) (U//FOUO) *Trash Cover:* The targeted search of a specific person's or entity's trash (where it is placed for collection and when such search implicates no reasonable expectation of privacy). A trash cover may be from a home or business and is designed to find information relevant to an ongoing investigation. A trash cover is a targeted effort to gather information regarding a particular person or entity by reviewing that person or entity's refuse. Generally, a trash cover is planned in advance based upon information indicating that a specific trash container will contain evidence or intelligence of an investigative interest within a specified period of time.

B) (U//FOUO) *Retrieval of Discarded or Intentionally Abandoned Property from a Public Receptacle:* Retrieval of discarded or abandoned property from a public trash receptacle (e.g. a public trash can) is not a "trash cover" as defined above. If, for example, an FBI employee observes an individual discarding anything of potential evidentiary value in a public trash receptacle or an FBI employee otherwise observes anything of intelligence or investigative value in any public trash receptacle, the FBI employee may recover the item(s) without having an Assessment or predicated investigation open at that time.

C) (U//FOUO) *Administrative Inventory Searches of Lost or Misplaced Items:* In the case of a lost or misplaced item, the owner has not intentionally abandoned his or her property. FBI employees who come across property under circumstances indicating the property is lost or misplaced (as opposed to intentionally abandoned) may inspect the property as necessary to identify the owner and preserve the property for safekeeping. An FBI employee must first have lawful access to the lost or misplaced item to search it for the purpose of identifying its owner. For example, a warrantless search of a presumably lost wallet found on the sidewalk or lost thumb drive found on a commuter train should extend no further than necessary to determine ownership. If, within the scope of the examination necessary to determine ownership, agents discover incriminating evidence or contraband, agents should seek a warrant to continue the search, absent emergency circumstances.

D) (U) *Inventory Searches Generally:* The purpose of an inventory search is to 1) protect the owner's property while it is in FBI custody; 2) protect the FBI against claims of lost or stolen property; or 3) protect FBI personnel from potential danger. As a threshold matter, in order for an inventory search to be valid, agents must first have lawful custody of the property. The justification for an inventory search is the production of an inventory of the property.

(U) As a general rule, after lawfully taking custody of property, FBI employees must conduct a prompt and thorough search of the contents of the property, including searching any locked or unlocked containers and inventorying their contents. A written

---

[71] The types of searches conducted under the inventory search authority are to be distinguished from the types of searches described in DIOG Section 19.7.3. Those searches, described as "Inventory of Personal Property," are conducted after an individual has been arrested and are therefore included in the portion of the DIOG relating to arrest procedures. Although the procedures for conducting an "inventory" of an arrestee's personal property and effects may in fact be similar, their legal justification is different and they must therefore be treated differently. Therefore, DIOG subsection 19.7.3 does not establish agency policy in general for purposes of conducting an "inventory search."

USAO 000247

**EXHIBIT E**
**273**

UNCLASSIFIED – FOR OFFICIAL USE ONLY
Domestic Investigations and Operations Guide                                    §18

summary showing the results of the inventory must be recorded in an FD-302, an FD-597 ("Receipt for Property"), or an FD-653 ("Motor Vehicle Inspection Inventory Record"). The written summary must include, but is not limited to, a description of the property and the items secured for safekeeping. Agents must provide receipts for all items retrieved during inventory searches. Agents should also memorialize facts pertinent to other activities undertaken during the inventory process, such as an interview (i.e., FD-302), or a non-inventory-related search conducted and any evidence collected (i.e., FD-1087, "Collected Evidence Log" [Sentinel]) that are relevant to the investigation.

(U) Where practicable, the inventory search should be conducted by two agents/officers, particularly when dealing with property of significant monetary value (e.g. money, jewelry, electronics, vehicles, etc.). All personal property taken into FBI custody should be treated with reasonable care. Nonevidentiary items of significant value should be removed for safekeeping and afforded adequate security. Contraband or evidence found should be immediately seized and preserved in accordance with existing procedures governing the seizure of physical evidence. See *Field Evidence Management Policy Guide, 0780PG*.

(U) Agents may not perform inventory searches solely for investigative purposes. Whenever there is probable cause to believe an inventory search would also yield items of evidence or contraband, agents must obtain a search warrant when feasible. Searches conducted pursuant to a warrant are presumptively valid. Obtaining a search warrant eliminates any later argument that the inventory search was conducted solely for investigative purposes and thus unjustified.

(U) See DIOG subsection 19.7 for guidance on search incident to arrest. See DIOG subsection 19.7.3 for guidance on inventory of personal property following arrest.