Page 1

1      UNITED STATES DISTRICT COURT
    FOR THE CENTRAL DISTRICT CALIFORNIA
2           WESTERN DIVISION
3    PAUL SNITKO, JENNIFER SNITKO,
    JOSEPH RUIZ, TYLER GOTHIER, JENI
4    VERDON-PEARSONS, MICHAELS STORC,
    and TRAVIS MAY,
5
             Plaintiffs,
6
    vs.
7
    UNITED STATES OF AMERICA, TRACY L.
8    WILKISON, in her official capacity as
    Acting United States Attorney for the
9    Central District of California, and KRISTI
    KOONS JOHNSON, in her capacity as an
10   Assistant Director of the Federal Bureau
    of Investigation,
11
             Defendants.
12
       ****************************************
13    ZOOM VIDEOTAPED DEPOSITION OF JUSTIN CARLSON
            July 6, 2022
14           10:00 a.m. PST
       ****************************************
15
16
17   TAKEN BY:
18      MICHAEL GREENBERG, ESQ.
        ATTORNEY FOR PLAINTIFFS
19
20   REPORTED BY:
21      BELLE VIVIENNE, RPR, CRR, NJ-CRR,
        WA/CO/NM-CCR
22      NATIONALLY CERTIFIED REALTIME
        COURT REPORTER
23      VERITEXT LEGAL SOLUTIONS
        JOB NO. 5311223
24      866 299-5127
25

**EXHIBIT JJ**
**573**

Page 2

```
 1                    A P P E A R A N C E S
 2
      FOR THE PLAINTIFFS:
 3
          MICHAEL GREENBERG
 4        ROBERT FROMMER
          ROB JOHNSON
 5        THE INSTITUTE FOR JUSTICE
          901 North Glebe Road, Suite 900
 6        Arlington, Virginia 22203
          703.682.9320
 7        rfrommer@ij.org
 8    FOR THE DEFENDANTS:
 9        MAXWELL COLL
          VICTOR RODGERS
10        ANDREW BROWN
          Assistant United States Attorney
11        Asset Forfeiture Section
          312 North Spring Street, 14th Floor
12        Los Angeles, California 90012
          maxwell.coll@usdoj.gov
13        victor.rodgers@usdoj.gov
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

1                          -   -   -

2                       I N D E X

3                          -   -   -

4

5     Testimony of:

6        JUSTIN CARLSON

7       MR. GREENBERG.........................5

8

9                          -   -   -

10                     E X H I B I T S

11                         -   -   -

12

13      NO.          DESCRIPTION                PAGE

14    Exhibit 15    Agent Observations and

15                  Notes Bates numbered

16                  FBI0000301.............. 84

17    Exhibit 16    FBI 302 document........ 99

18

19

20

21

22

23

24

25

**EXHIBIT JJ**
**575**

Page 68

1

2

3

4

5

6

7

8

9

10

11

12

13

14     Q.    What steps were taken next once

15    the focus from individuals to the business

16    took hold?

17          MR. COLL:  Okay.  So I'll allow

18       you to answer but not with respect to

19       what was discussed in that meeting,

20       but -- or outside of that meeting now,

21       you can respond to the question if you

22       understand.

23     A.    My understanding is you're

24    asking what did the individual

25    investigators do next; is that correct?

**EXHIBIT JJ**

**576**

Page 69

1    BY MR. GREENBERG:

2         Q.    That's -- that's great, yeah.

3         A.    So based on the intelligence

4    that we were getting from undercovers and

5    confidential sources and what we knew

6    about this new owner recruiting other

7    criminals that he had connections with to

8    the business, we began mainly

9    investigating that owner and making steps

10   like we would any other drug trafficker.

11   We're going to try to infiltrate that

12   organization whether it's with, you know,

13   the exploitation of bank records, the

14   exploitation of phones, insertion of

15   cooperating -- or sorry -- confidential

16   informants and undercovers.

17        Q.    And just so I'm clear, I want to

18   go back to some of that.  I thought I

19   heard you mention, you mentioned that this

20   was a new owner?

21        A.    Right, our understanding was

22   then at one point this owner bought out

23   half of the business and then it became,

24   you know, the -- just the two owners at

25   the time.

**EXHIBIT JJ**
**577**

Page 70

```
 1        Q.    Okay.  And so it was when that
 2   new owner came into the business that the
 3   decision to shift the focus of the
 4   investigation from individuals to the
 5   business itself took hold?
 6        A.    I don't know that the decision
 7   was made before or after that because,
 8   again, the investigation was leading up to
 9   this business catering towards the
10   criminal element, but it was once this
11   owner came into place, then -- then I know
12   that the shift was -- from my perspective,
13   more directly focused at not just the
14   individuals as a drug trafficker, but the
15   individual drug trafficker as it pertained
16   to their role at U.S. Private Vaults.
17   Does that make sense?
18        Q.    Yeah.  Yeah, thanks for that.
19             So it was the new owner and the
20   new owner's kind of relationship to box
21   holders or to -- let's scratch that
22   question.
23             It was the new owner's
24   relationship to customers at U.S. Private
25   Vaults that played a role in shifting
```

Page 71

1    the -- the focus of the investigation to

2    the company itself?

3              MR. COLL:  Object to form.

4         A.    I would say that it played a

5    role in that it was one of, you know, a

6    few different factors that we determined

7    to utilize the -- or to direct the

8    investigation as an investigation of a

9    business.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT JJ**
**579**

Page 82



19        Were there any other particular

20   roles or tasks that you were assigned in

21   the lead-up to the execution of the

22   seizure warrant?

23        A.    Based on, you know, my previous

24   statements of, you know, informants,

25   undercovers and proffered statements of

Page 83

1    cooperating defendants suggesting that

2    there -- that the business had been and

3    previous -- right, that the business had

4    previously been utilized to store drugs

5    and other drug-related contraband.  DEA

6    was present to process anything like that.

Page 119

1                    CERTIFICATION

2

3        I, BELLE VIVIENNE, a Nationally

4    Certified Realtime Reporter, do hereby

5    certify:

6        That the witness whose testimony as

7    herein set forth, was duly sworn by me;

8    and that the within transcript is a true

9    record of the testimony given by said

10   witness.

11       I further certify that I am not

12   related to any of the parties to this

13   action by blood or marriage, and that I am

14   in no way interested in the outcome of

15   this matter.

16       IN WITNESS WHEREOF, I have hereunto

17   set my hand this 10th day of July 2022.

18           *Belle Vivienne*

19   _____

20       BELLE VIVIENNE, CRR, CCR, RPR

21

22                *       *       *

23

24

25

**EXHIBIT JJ**

**582**