Page 1

```
 1              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
 2
                Case No. 2:21-cv-04405-RGK-MAR
 3

 4       PAUL SNITKO, et al.,
 5                    Plaintiffs,
 6       vs.
 7       UNITED STATES OF AMERICA; TRACY
         L. WILKISON, in her official
 8       capacity as Acting United States
         Attorney for the Central
 9       District of California; and
         KRISTI KOONS JOHNSON, in her
10       official capacity as an
         Assistant Director of the
11       Federal Bureau of Investigation,
12                    Defendants.
         _____/
13

14
                       REMOTE DEPOSITION OF
15
           SUPERVISORY SPECIAL AGENT JESSIE MURRAY, AS A
16         30(B)(6) REPRESENTATIVE OF THE UNITED STATES OF
               AMERICA FEDERAL BUREAU OF INVESTIGATION
17
18                    Monday, July 11, 2022
                   10:00 a.m. - 3:04 p.m. (PDT)
19
20
21
22
23              Stenographically Reported By:
24                Kimberly Fontalvo, RPR,CLR
25             Realtime Systems Administrator
```

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

**EXHIBIT KK**

**583**

```
 1     APPEARANCES:
 2
 3     On behalf of Plaintiff:
 4     THE INSTITUTE FOR JUSTICE
       By:  ROBERT FROMMER, ESQ.
 5     By:  ROBERT E. JOHNSON, ESQ.
       By:  Michael Greenberg, ESQ>
 6     901 N. Glebe Road, Suite 900
       Arlington, VA 22203
 7
 8     On behalf of the Defendants:
 9     ASSISTANT UNITED STATES ATTORNEY
       ASSET FORFEITURE SECTION
10     By:  VICTOR RODGERS, ESQ.
       312 North Spring Street, 14th Floor
11     Los Angeles, California 90012
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

I N D E X

| Examination | Page |
|---|---|
| SUPERVISORY SPECIAL AGENT JESSIE MURRAY | |
| Direct                By Mr. Frommer | 3 |
| Instruction not to answer | 73 |
| Instruction not to answer | 74 |
| Instruction not to answer | 113 |
| Instruction not to answer | 114 |
| Certificate of Oath | 131 |
| Certificate of Reporter | 132 |
| Read and Sign Letter to Witness | 133 |
| Errata Sheet (forwarded upon execution) | 134 |

EXHIBITS

| No. | | Page |
|---|---|---|
| Exhibit 7 | Supplemental Memorandum on Box Inventory | 91 |
| Exhibit 10 | Agent Observations and Notes form | 85 |
| Exhibit 12 | Plaintiffs' Amended Notice of 30(b)(6) Deposition | 9 |
| Exhibit 15 | USPV Notice of Forfeiture | 120 |

Page 66



25      Let me just start with this:  When did you

```
 1    first hear about U.S. Private Vaults?
 2         A.   I don't remember what month and I believe
 3    that it was 2020.
 4         Q.   So you -- could it have been, perhaps, in,
 5    like, the summer of 2020, sometime around then?
 6         A.   The summer sounds about right.
 7         Q.   Can you tell me what you heard about
 8    U.S. Private Vaults back in summer of 2020?
 9         A.   The first time I heard about
10    Private Vaults was on a phone call with my SAC.  And
11    he told me a summary of the facts in the
12    investigation.
13         Q.   Who was your -- SAC is special agent in
14    charge?
15         A.   Yes.
16         Q.   And who is your SAC?
17         A.   At that time the SAC that spoke to me
18    about it wasn't my SAC.  It was the criminal SAC.
19    Matt Moon, M-O-O-N.
20    [REDACTED]
21    [REDACTED]
22    [REDACTED]
23    [REDACTED]
24    [REDACTED]
25    [REDACTED]
```

Page 70



22         Did you help investigate
23    U.S. Private Vaults at all prior to the securing of
24    the indictment in March 2021?
25         A.   No.

Page 71

```
1       Q.   I figured not.  Just wanted to clear that
2    up.
3              Were you involved in discussions about
4    applying for a seizure warrant -- for the seizure
5    warrant for the U.S. Private Vaults nest of boxes?
6       A.   No.
7       Q.   Okay.  So you didn't have any
8    conversations about getting a seizure warrant?
9       A.   I was not involved in conversations
10   regarding the substance of the affidavit which would
11   lead to the seizure warrant.  But I have discussed
12   and have had discussions regarding the seizure
13   warrant.
14   ███████████████████████████████████████████████████
15   ███████████████████████████████████████████████████
16   ███████████████████████████████████████████████████
17   ███████████████████████████████████████████████████
18   ███████████████████████████████████████████████████
19      Q.   Okay.  So you -- you weren't involved in
20   the discussions about applying for a seizure
21   warrant.
22             So after your initial discussion with
23   Special Agent in Charge Matt Moon, when was the next
24   time you recall discussing the potential use of
25   civil forfeiture with respect to the nest of
```

1	safe-deposit boxes at U.S. Private Vaults?
2	    A.   There was a conference call and I don't
3	remember what the date was.  Obviously prior to the
4	execution of the search and seizure warrants.  But a
5	conference call where we were discussing the
6	logistics of effecting the warrants.
7	    Q.   So was that call, was that close in time
8	to the actual execution of the warrant in
9	March 2021?
10	    A.   Yes.
11	    Q.   So do you recall between the time you
12	spoke with Special Agent in Charge Matt Moon
13	regarding U.S. Private Vaults in summer of 2020 and
14	this conference call that was -- sounds like it was
15	occurring in the run-up to the execution of the
16	warrant, so probably in, like, March of 2021, do you
17	remember any other conversations about the potential
18	use of civil forfeiture with regards to box renters'
19	property at U.S. Private Vaults?
20	    A.   I recall that there was one other
21	conference call and that occurred prior to the phone
22	call/conference call that you referenced right
23	before the takedown, so I would guess that that
24	occurred late in 2020.
25	    Q.   I'm assuming that these different calls

1    had slightly different purposes and conversations.
2    Like the one that happened right before the
3    execution obviously is probably really focused in
4    on, like, how are we going to execute this.
5              This call that we're talking about in fall
6    of 2020, sometime in fall, late fall of 2020, what
7    was the focus of that conversation?
8              MR. RODGERS:  I want to -- I'm sorry.  Go
9         ahead.
10      BY MR. FROMMER:
11        Q.   Well, let me ask first:  Who -- with
12   whom -- who was on that -- in that conversation with
13   you?
14        A.   Asset forfeiture, the criminal side, the
15   other partnering agencies, some locals, some
16   federals.  Did I mention the United States
17   Attorney's Office?  Maybe even our legal forfeiture
18   unit at headquarters in D.C. and some of my squad as
19   well and maybe some FBI evidence personnel.
20        Q.   Oh, wow.  This is a big call.  It seems
21   like a lot -- do you usually have calls of that
22   size?
23        A.   When we have a large-scale investigation,
24   we have a large conference call with lots of
25   parties.

Page 75



19    Q.    After that fall 2020 call, was it your
20 understanding that you were going to pursue -- not
21 you personally -- but that the FBI was going to
22 pursue civil forfeiture against some or all of the
23 contents of the safe-deposit boxes?
24         MR. RODGERS:  Would you repeat that
25     question, please?

Page 76

```
 1              (Requested portion read back.)
 2       A.   Generally speaking, that was an option,
 3   but in the fall of 2020, that wasn't determined
 4   because I needed to see the final draft of the
 5   affidavit before I would make a determination as to
 6   whether or not there was probable cause.
 7     BY MR. FROMMER:
 8       Q.   Okay.  And so you needed to evaluate the
 9   affidavit that was submitted in support of the
10   seizure warrant in order to determine whether you
11   felt that there was probable cause to move forward
12   with potential forfeiture actions?  Is that
13   accurate?
14       A.   Yes.
15   ■
16   ■
17   ■
18   ■
19   ■
20   ■
21   ■
22   ■
23   ■
24   ■
25   ■
```

Page 77

```
 1  [REDACTED]
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14           So you ultimately ended up reviewing the
15     seizure warrant affidavit; is that correct?
16           A.    Yes.
17           Q.    And do you remember when that was,
18     approximately?
19           A.    I would estimate early 2021, maybe
20     February.
21           Q.    Okay.  So this would have been, like, a
22     draft version of the affidavit, because it hadn't
23     yet been submitted, right?
24           A.    Right.
25           Q.    Okay.  And you said you reviewed that
```

Page 78

1 affidavit to determine whether there was probable
2 cause to proceed with potential civil forfeiture as
3 against the nest of safe-deposit boxes, right?
4     A.   Yes.
5     Q.   And what was your conclusion having
6 evaluated that seizure warrant affidavit?
7     A.   Having evaluated the seizure warrant
8 affidavit, the finalized version that was going to
9 be presented to the magistrate, I made a
10 determination that there was probable cause to
11 proceed on assets seized in the investigation from
12 U.S. Private Vaults.

[Lines 13–25 redacted]

Page 80

1 ███████████████████████████████
2 ███████████████████████████████
3 ███████████████████████████████
4 ███████████████████████████████
5 ███████████████████████████████
6 ███████████████████████████████
7     Q.   But prior to the takedown, you had
8 determined -- or at least -- you had determined that
9 there was probable cause to potentially pursue
10 forfeiture against some of the property contained
11 within the nest of safe-deposit boxes. Is that
12 accurate?
13           MR. RODGERS: Same objections.
14     A.   I determined that there was probable cause
15 to seize the assets of U.S. Private Vaults and the
16 contents of the boxes at that location.
17 ███████████████████████████████
18 ███████████████████████████████
19 ███████████████████████████████
20 ███████████████████████████████
21 ███████████████████████████████
22 ███████████████████████████████
23 ███████████████████████████████
24 ███████████████████████████████
25 ███████████████████████████████

Page 82



9  Q. When was the first time you recall talking
10  with Lynne Zellhart about the U.S. Private Vaults
11  investigation?
12  A. Sometime after that first phone call with
13  SAC Moon, so I would estimate it could be to be fall
14  of 2020.

```
                                                   Page 132

 1                    CERTIFICATE OF OATH
 2
 3
 4
 5
 6          I, the undersigned authority, certify
 7
 8    that SUPERVISORY SPECIAL AGENT JESSIE MURRAY
 9
10    appeared remotely before me and was sworn on the
11
12    11th day of July, 2022.
13
14              Signed this 13th day of July, 2022.
15
16
17
18
19
20              _____
21
22              KIMBERLY FONTALVO, RPR
23              Notary Public, State of Colorado
24              My Commission No. 20214007135
25              Expires: 2/23/2025
```

Page 133

1          CERTIFICATE OF REPORTER

2

3    STATE OF COLORADO

4

5              I, KIMBERLY FONTALVO, Registered

6    Professional Reporter, do hereby certify that I

7    was authorized to and did stenographically report

8    the foregoing remote deposition of SUPERVISORY

9    SPECIAL AGENT JESSIE MURRAY; that a review of the

10   transcript was requested; and that the transcript

11   is a true record of my stenographic notes.

12             I FURTHER CERTIFY that I am not a

13   relative, employee, attorney, or counsel of any

14   of the parties, nor am I a relative or employee

15   of any of the parties' attorneys or counsel

16

17   connected with the action, nor am I financially

18

19   interested in the action.

20

21             Dated this 13th day of July, 2022.

22

23

24

25            KIMBERLY FONTALVO, RPR, CLR