STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture Sections
    1100/1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0102/2569/1785
    Facsimile: (213) 894-6269/0142
    E-mail: Andrew.Brown@usdoj.gov
           Victor.Rodgers@usdoj.gov
           Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA, and
TRACY L. WILKISON and KRISTI KOONS JOHNSON
IN THEIR OFFICIAL CAPACITY ONLY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PAUL SNITKO, JENNIFER SNITKO, JOSEPH RUIZ, TYLER GOTHIER, JENI VERDON-PEARSONS, MICHAEL STORC and TRAVIS MAY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, <u>ET AL.</u>,<br><br>Defendants. | Case No. 2:21-cv-04405-RGK-MAR<br><br>**DEFENDANTS' OBJECTIONS TO EVIDENCE OFFERED BY PLAINTIFFS IN THEIR SECTION OF THE PARTIES' JOINT SEPARATE STATEMENT OF CONTESTED AND UNCONTESTED FACTS; SUPPLEMENTAL DECLARATION OF VICTOR A. RODGERS** |

Defendants United States of America, and Tracy L. Wilkison and Kristi Koons Johnson in their official capacity only (collectively, "the government") hereby submit their objections to evidence offered by Plaintiffs in support of the Facts that Plaintiffs have submitted as part of the parties' Joint Separate Statement of Contested and Uncontested Facts filed August 9, 2022 (the "Joint Statement").  ECF No. 124.

## GENERAL OBJECTIONS

The government objects to Plaintiffs' Facts in their entirety.  Parties are limited to 20 page briefs.  In accordance therewith, the government filed a 20-page brief including each of the 60 facts contained in the government's section of the Joint Statement.  ECF 123 (government's opposition brief) at 2:21-11:1 and ECF 124 (Joint Statement) at pages 49-74.  By contrast, Plaintiffs have submitted a total of 178 Facts, most of which are not even mentioned in Plaintiffs' 20-page opening brief [ECF 124 (Joint Statement) at pages 1-48],[1] resulting in Plaintiffs' submission of a brief far exceeding the 20 page limitation.  As a result, Plaintiffs' 178 Facts should not be considered.

The government further objects to Plaintiffs' responses to the government's 60 facts.  In responding, Plaintiffs have not limited to statements that a given Fact is "contested" or "uncontested."  Instead, Plaintiffs add extensive arguments, even as to those facts they agree are uncontested, and thus add to their failure to follow the 20-page restriction.  Plaintiffs have improperly added argument to 33 out of the government's 60 Facts.[2]

/ / /

/ / /

/ / /

---

[1]. The following Fact Numbers in the Joint Statement, and the deposition testimony cited in support thereof, are not cited or referenced in Plaintiffs' opening brief: Fact Nos. 1, 3, 4, 6, 7, 11, 13, 14, 20, 26, 36, 69, 71-74, 76. 102, 111, 120, 122, 123, 144, 146, 149, 151, 152, 154-157, 169, 171, 172,  176 and 177.  In addition, a large quantity of Plaintiffs' Facts are based on declarations that are arguments, not facts.

[2] See Plaintiffs' Response and Supporting Evidence to Government Fact Nos. 2-4, 7-10, 12-19, 22, 23, 25, 26, 28, 32-34, 41, 43, 44, 49, 51 and 53-60.

## SPECIFIC OBJECTIONS TO EVIDENCE

The government's Specific Objections to the evidence offered to support Plaintiffs' individual 178 facts are set forth below.

1.      <u>Plaintiffs' Fact No. 11</u>, which provides "Inspector Versoza testified that the FBI was put in charge of the USPV investigation."

<u>Plaintiffs' Supporting Evidence Cited For Fact</u>: Versoza Dep., ECF 112-20, Frommer Decl. Ex. L at 1120:3-9, which provides as follows:

> Q.      Oh, okay. So you're saying the initial -- the
> initial affidavit by Lynne Zellhart, essentially
> accusing U.S. Private Vaults, the company, of multiple
> criminal acts, that that was because she was the one who
> was writing it, that she functionally was -- or the FBI
> was functionally running the investigation.
>
> A.      Correct.

<u>Government's Objections</u>:   Plaintiffs' Fact mischaracterizes the testimony. Inspector Versoza did not testify that "the FBI was put in charge of the USPV investigation" as this Fact states.  The government further objects that the testimony lacks foundation and is without personal knowledge.  Fed. R. Evid. 602.

2.      <u>Plaintiffs' Fact No. 13</u>, which provides "The decision to place the FBI in charge was made in consultation with the U.S. Attorney's Office, FBI management, and DEA management.

<u>Plaintiffs' Supporting Evidence Cited For Fact</u>: Versoza Dep., ECF 112-20, Ex. L at 1118:5–8, 1119:8–1120:1, which provides as follows:

> Q.      And do you know who decided to shift who was
> spearheading the investigation from DEA to the FBI?
>
> A.      This is where conversations with the U.S.
> Attorney's Office took place..

2

1          MR. FROMMER: I am not asking about any

2      specific conversation. I don't need to know the content

3       of any specific conversation. I'm asking about an

4       operative decision, which is: Before the DEA was

5       running the Vaults' investigation, and afterwards it was

6       FBI, and I'm just asking who made that call.

7          THE WITNESS: There were multiple

8       conversations, many I was not privy to, that happened

9       with management between the FBI, the DEA, and the U.S.

10      Attorney's Office. I don't know how it proceeded, but

11       at some point it was determined FBI would be better

12       suited to spearhead the investigation.

13      <u>Government's Objections</u>:  The evidence lacks foundation and is without personal

14   knowledge to support this Fact.  Fed. R. Evid. 602.  The witness specifically stated there

15   were conversations to which he "was not privy to[,]" that he did not "know how it [<u>i.e.</u>,

16   the FBI being placed in charge] proceeded," but that at some point "it was determined

17   FBI would be better suited to spearhead the investigation."   In addition, the evidence is

18   not relevant, as the testimony has no tendency in reason to prove or disprove any

19   disputed fact of consequence in this case, because who made the decision that FBI would

20   spearhead the criminal investigation of USPV has no bearing on any issue in this case.

21   Fed. R. Evid. 401 and 402.

22          3.    Plaintiffs' Fact No. 15, which provides that "Supervisory Special Agent

23   Jessie Murray, testified that FBI Special Agent in Charge Matthew Moon asked Murray

24   in the summer of 2020 whether her asset forfeiture unit could handle the seizure and

25   administrative forfeiture of hundreds of box renters' property."

26      <u>Plaintiffs' Supporting Evidence Cited For Fact</u>: Murray 30(b)(6) Dep., ECF 112-

27   23, Ex. O at 1525:15-1526:5, 1526:9–1527:3, 1527:10–18.  Plaintiffs' citation to

28   transcript pages omits pertinent testimony occurring prior to the cited pages concerning

the date of her discussion with FBI Special Agent in Charge Matthew Moon.  Agent

Murray first testified as follows:

> When did you first hear about U.S. Private Vaults?
>
>    A.    I don't remember what month and I believe
>
> that it was 2020.
>
>    Q.    So you -- could it have been, perhaps, in,
>
> like, the summer of 2020, sometime around then?
>
>    A.    The summer <u>sounds about right</u>.

(Emphasis added).  ECF 112-23, Frommer Decl. Ex. O at 1523:25-1524:6; Supplemental

Rodgers Decl. Ex. C (Murray 30(b)(6) Depo) at 56:25-57:6.  Then, in Plaintiffs' cited

portion of the transcript, Agent Murray testified as follows:  The cited testimony for

Plaintiffs' Fact then provides at 1525:15-1526:5 and 1526:9-1227:3 as follows:

>    Q.    So what exactly was he advising you of on
>
> that call?
>
>    A.    He wasn't advising me of anything. He was
>
> telling me the facts of the investigation and asking
>
> me if the Los Angeles asset forfeiture unit was
>
> capable of handling a possible large-scale seizure.
>
>    Q.    Oh, okay. So in summer of 2020, Matt Moon
>
> called you, talked to you about the
>
> U.S. Private Vaults investigation, and asked whether
>
> the FBI LA field office had the capacity to handle
>
> civil forfeiture regarding U.S. Private Vaults; is
>
> that accurate?
>
> MR. RODGERS: Objection. Slight
>
> mischaracterization with respect to the date.
>
>    A.    During that phone call, that's what we
>
> discussed.

1          *                    *                    *

2          Q.     So he asked, like, does the LA field

3    office have capacity to handle civil forfeiture <u>with</u>

4    <u>regards to the nest of safe-deposit boxes</u>? Is that

5    accurate?

6          A.     <u>Yes</u>.

7          Q.     <u>And what did you tell him</u>?

8          A.     <u>I told him yes</u>.

9          Q.     And why did you think that the LA field

10   office had capacity to handle processing civil

11   forfeiture proceedings <u>for the hundreds of safe-</u>

12   <u>deposit boxes at U.S. Private Vaults</u>?

13         MR. RODGERS: Objection, slight

14   mischaracterization of her testimony.

15   Go ahead and answer.

16         A.     We were capable of handling a large-scale

17   seizure because we have an established asset

18   forfeiture unit, and have had that unit for many,

19   many years, and we have a large complement of asset

20   forfeiture employees capable of handling and

21   processing this type of large-scale seizure.

22   Murray 30(b)(6) Dep., ECF 112-23, Ex. O at 1525:15-1526:5, 1526:9–1527:3.

23         <u>Government's Objections</u>:  Plaintiffs' Fact mischaracterizes the testimony.  First,

24   Agent Murray testified, as to when she spoke with Special Agent in Charge Moon, that

25   the summer of 2020 "sounds about right[.]"  She did not definitively say the

26   conversation occurred in the summer of 2020.  Second, Agent Murray did not state that

27   the FBI Asset Forfeiture unit had the capacity to handle "the hundreds of safe-deposit

28   boxes at U.S. Private Vaults."  That statement is part of the question; it is not part of

Agent Murray's answer to the question, nor did Agent Murray adopt the accuracy of the question in her answer.

4.     Plaintiffs' Fact No. 18, which provides that "[t]he government also began to discuss the potential use of civil forfeiture against safe-deposit box renters' property in the summer of 2020."

Plaintiffs' Supporting Evidence Cited For Fact: Zellhart Dep., ECF 112-19, Ex. K at 985:14-16; see also Zellhart 30(b)(6) Dep., ECF 112-21, Ex. M at 1239:15-18.  As to the see also citation, the transcript provides as follows:

> Q.     So I believe right before the break you testified
>
> that the United States had been considering -- began
>
> considering a potential use of civil forfeiture as to
>
> some or all of the safe deposit boxes in -- sometime in
>
> the late summer of 2020. Is that accurate?
>
> A.     I think I -- I think I said that we discussed,
>
> you know, seizing the nest of the boxes and doing an
>
> inventory on them in summer of 2020. And then
>
> discussions about asset forfeiture took place a little
>
> bit later in the summer or fall.
>
> Q.     Okay. Yeah, that's -- sorry. I should have been
>
> more specific.
>
> In the late summer or fall of 2020 is when the
>
> United States began considering the potential use of
>
> civil forfeiture as to the nest of safe deposit boxes.
>
> A.     I think that's right, yes.

In response to the very next question, which Plaintiffs' omit from their citation, Agent Zellhart testified that the discussions about asset forfeiture occurred in September or October:

/ / /

1    Q.    Okay.  And can you describe what steps, once that decision

2    had been made in late fall - - or late summer, fall of 2020, to potentially use

3    civil forfeiture . . . [c]an you describe what steps the United States took . . .?

4    [objection and colloquy between counsel omitted]

5    A.    So at that point in the - - better recollection, I do think it was

6    fall.  It might even have been September, October.  I'm kind of vaguely

7    thinking October.

8    Zellhart 30(b)(6) Dep., ECF 112-21. Frommer Decl. Ex. M. at 1239:19-1240:8;

9    Supplemental Rodgers Decl. Ex. B (Zellhart 30(b)(6)) at 50:15-51:8.

10   <u>Government's Objections</u>:  Plaintiffs' Fact mischaracterizes the testimony.  Agent

11   Zellhart first testified agents began considering the use of asset forfeiture a little bit later

12   "in the late summer or fall of 2020" and then in response to the very next question posed

13   to her stated "I do think it was fall.  It might have been September, October."  She never

14   stated, as this Fact states, that these discussions occurred "in the summer of 2020."  <u>See</u>

15   <u>also</u> Murray 30(b)(6) Dep. ECF 112-23, Frommer Decl. Ex. O at 1533:22-1534:9.

16   5.    Plaintiffs' Fact No. 19, which provides that "[t]he FBI's lead agent for the

17   USPV investigation, Special Agent Zellhart, understood that FBI policy requires special

18   agents to use the least intrusive investigative technique that is capable of achieving the

19   FBI's objective."

20   <u>Plaintiffs' Supporting Evidence Cited For Fact</u>:  Zellhart Dep., ECF 112-19, Ex. K

21   at 868:7–14, 870:2–871:2.  Again, Plaintiffs' omit testimony that easily disproves their

22   Fact.  First, Agent Zellhart's testimony was about Exhibit 5 to her deposition, which was

23   a 700 page document:

24   BY MR. FROMMER:

25   Q.    Okay. I have just introduced Exhibit 5.

26   Zellhart Exhibit 5. So -- tell me when you have a

27   minute to look.

28   MR. RODGERS: All right.

BY MR. FROMMER:

Q.     Now, I will purport that this is a copy, part one
of two, of the 2013 version of the DIOG that I acquired
from the FBI Vault website. If you could take a minute
or two to go through, and let me know whether you agree
that that's what I -- that what I purport it to be it
is.

MR. RODGERS: Well, this is a two hundred --
this document appears to be two -- hundreds and hundreds
and hundreds of pages. So -- it's 700 pages. It's not
possible for us to be able to say that it was downloaded
from the website. I mean, you can represent whatever
you want to represent about it, but we can't answer that
question.

Zellhart Dep., ECF 112-19, Frommer Decl. Ex. K at 867:1-20;  Suppl. Rodgers
Decl. (Zellhart Depo.) Ex A at 39:1-20.  Plaintiffs then cite two parts of the
transcript, consisting of the first part:

All right. Let me turn to page -- well, before I
ask, are you aware of any FBI policy that requires --
requires agents, special agents, to use the least
intrusive investigative technique that is capable of
achieving the FBI's objective?

MR. RODGERS: Objection, overbroad, lacks
foundation. If there's -- lacks foundation, calls for
speculation.

THE WITNESS: Yes.

Zellhart Dep., ECF 112-19, Frommer Decl. Ex. K at 868:7–14; Suppl. Rodgers
Decl. (Zellhart Depo.) Ex  A at 40:6-14.  The second part of the citation, with the

1   government adding the italicized items below for context which Plaintiffs' omit,

2   provides as follows:

3   MR. FROMMER:

4   Q.   *Okay. If you could look at 4.1.1, sub E). So*

5   *that's the -- about two-thirds of the way down the page,*

6   and it reads: Employ the least intrusive. Could you

7   read that -- that subpart E) to us, please?

8   A.   Sure.

9   Assuming a lawful intelligence or evidence

10   collection objective, i.e., an authorized purpose,

11   strongly consider the method, technique, employed to

12   achieve that objective that is the least intrusive

13   available, particularly if there's a potential to

14   interfere with protected speech and association, damage

15   someone's reputation, intrude on privacy, or interfere

16   with the sovereignty of foreign government, while still

17   being operationally sound and effective.

18   Q.   Okay. So is it fair to say that the FBI policy

19   is that to the extent an investigative technique could

20   intrude on privacy, that FBI special agents should

21   consider a technique, the least -- the -- should strive

22   to employ the least intrusive technique available that

23   would meet the FBI's goals?

24   MR. RODGERS: Objection, calls for

25   speculation, lacks foundation, calls for a legal

26   conclusion, assumes facts not in evidence.

27   THE WITNESS: And to answer that, I would

28   just re-read that paragraph. So your question was what

1   is FBI policy, and unless this has been superseded, FBI

2   policy in regards to that is sitting there in sub

3   paragraph E).

4   Zellhart Dep., ECF 112-19, Frommer Decl. Ex. K at 869:24–871:2; Supplemental

5   Rodgers Decl. (Zellhart Depo.) Ex. A at 41:24-43:2.  In response to the next question,

6   which Plaintiffs' omit, Agent Zellhart testified as follows:

7   BY MR. FROMMER:

8       Q.      Okay.

9       A.      That is my understanding of the policy, and I've

10  been trained on it.

11      Q.      Okay. And you -- and -- so you've been trained

12  that when conducting -- the use of any technique should

13  be minimally invasive when there are speech or privacy

14   concerns; is -- is that fair to say?

15   [Objection omitted]

16  THE WITNESS: Right. And, again, I would

17   just -- I would just point to paragraph E). What --

18   what it says in paragraph E) is the FBI's policy. And

19   I'm familiar with the policy, I've been trained on the

20   19 policy, and -- and as it's written in sub paragraph E),

21   I totally agree with.

22  MR. FROMMER: Okay. All right. Okay.

23  Zellhart Dep., ECF 112-19, Frommer Decl. Ex. K at 871:3-20. Supplemental Rodgers

24  Decl. (Zellhart Depo.) Ex. A at 43:3-20.

25  <u>Government's Objections</u>:  Plaintiffs' Fact mischaracterizes the testimony.  Agent

26  Zellhart repeatedly testified that her understanding of the policy was as reflected in the

27  lengthy document itself.  ECF 122-10 [Rodgers Decl. Ex. I at 309-327, an 18 page

28  document].  She did not state, as this Fact provides, that she understood that FBI policy

10

requires special agents to use the least intrusive investigative technique that is capable of achieving the FBI's objective.

In addition, the government objects that the written DIOG provides the best evidence of the terms of the policy.  Fed. R. Evid. 1001 and 1002.

6.     Plaintiffs' Fact No. 42, which provides that "[w]hen Magistrate Kim signed the USPV seizure warrant in March 2021, he was unaware that the government had already determined that it would initiate forfeiture proceedings against the contents of the boxes."

Plaintiffs' Supporting Evidence Cited For Fact: Warrant Application and Supporting Affidavit, ECF 112-14, Ex. F at 501:15–502:7 & n.40; Murray 30(b)(6) Dep., ECF 112-23, Ex. O at 1525:15-1526:5, 1526:9–1527:3, 1527:10–18, 1533:8–14, 1534:21–1535:12, 1537:14–16, 1560:2–15, 1562:1–17, 1563:16–1564:12; Zellhart 30(b)(6) Dep., ECF 112-21, Ex. M 1239: 3–18; Zellhart Dep., ECF 112-19, Ex. K at 985: 9–16.

Government's Objections:  Plaintiffs' Fact (1) mischaracterizes the testimony, none of which pertains to the state of knowledge of a federal magistrate judge; (2) lacks foundation and lack of personal knowledge as to the knowledge of a federal magistrate judge [Fed. R. Evid. 602]; (3) calls for speculation relative to the knowledge of a federal magistrate judge; and (4) is irrelevant:  the government went beyond its obligations to ensure that the magistrate understood the warrants would result in an inventory, but that in no way imposes on the government the further obligation to announce how later actions, such as criminal investigations against boxholders or forfeiture of box contents, would play out   [Fed. R. Evid. 401 and 402].   The assignment of CATS ID numbers to seized assets is meaningless, as this always occurs at the time of seizure.  ECF 112-23, Murray 30(b)(6) Dep., Frommer Decl. Ex. O at 1501:15-1502:6.

7.     Plaintiffs' Fact No. 43, which provides that "[n]othing in the warrant application or supporting affidavit advised Magistrate Kim that the government planned to initiate forfeiture proceedings against any cash seized from the USPV boxes meeting

the minimum monetary threshold of $5,000 and for any valuables that looked like their value would meet the minimum monetary threshold."

Plaintiffs' Supporting Evidence Cited For Fact: Warrant Application and Supporting Affidavit, ECF 112-14, Ex. F at 501:15–502:7 & n.40.

Government's Objections:  Plaintiffs' Fact is irrelevant as it lacks a tendency to prove any facts of consequence in this action:  the government went beyond its obligations to ensure that the magistrate understood the warrants would result in an inventory, but that in no way imposes on the government the further obligation to announce how later actions, such as criminal investigations against boxholders or forfeiture of box contents, would play out [Fed. R. Evid. 401 and 402].

8.     Plaintiffs' Fact No. 44, which provides "The FBI's Domestic Investigative and Operations Guide states: 'Whenever there is probable cause to believe an inventory search would also yield items of evidence or contraband, agents must obtain a search warrant when feasible.' "

Plaintiffs' Supporting Evidence Cited For Fact:  Frommer Decl., ECF 112-15, Ex. G ("FBI DIOG") at 527.

Government's Objections:  This Fact mischaracterizes the document, as it only sets forth one sentence in the DIOG.  The government has cited as its Fact No. 42 Section 18.6.12.1 of the DIOG in full.

9.     Plaintiffs' Fact No. 46, which provides "[t]he government agreed that the 'Supplemental Instructions on Box Inventory' served as the 'operative policy' that the government used to guide agents' behavior in executing the warrant, including inventorying the contents of renters' safe-deposit boxes."

Plaintiffs' Supporting Evidence Cited For Fact: Zellhart 30(b)(6) Dep., ECF 112-21, Ex. M at 1215:3–9.

Government's Objections:  This Fact mischaracterizes the testimony and is vague and ambiguous as to what the words "operative" policy means.  Agent Zellhart responded "correct" to a question which asked, "it sounds like the supplemental

instructions were <u>sort of</u> the operative policy, the policy that was in place on the ground that the agents who were doing the inventorying, they were supposed to follow that." (Emphasis added).  She also testified that she understood the policy as reflected in the DIOG, the supplemental inventory instructions comported with the DIOG and agents would search and inventory all boxes according to FBI policies and procedures.  <u>See</u> Government Fact No. 32, citing Rodgers Decl. Ex. II at 559:7-560:17.

10.     Plaintiffs' Fact No. 47, which provides "Zellhart stated that, prior to her May 2022 deposition, the last time she had looked at the portion of the FBI's Domestic Investigations and Operations Guide concerning inventory searches was 'in the late summer of 2020.' "

<u>Plaintiffs' Supporting Evidence Cited For Fact</u>: Zellhart Dep., ECF 112-19, Ex. K at 847:13–17

<u>Government's Objections</u>:  Plaintiffs' Fact is irrelevant as it lacks a tendency to prove any facts of consequence in this action.  Fed. R. Evid. 491 and 402.  She also testified that she understood the policy as reflected in the DIOG, the supplemental inventory instructions comported with the DIOG and agents would search and inventory all boxes according to FBI policies and procedures.  <u>See</u> Government Fact No. 32, citing Rodgers Decl. Ex. II at 559:7-560:17.

11.     Plaintiffs' Fact No. 50, which provides "Zellhart testified she could not recall ever having conducted an inventory apart from the one at USPV."

<u>Plaintiffs' Supporting Evidence Cited For Fact</u>: Zellhart Dep., ECF 112-19, Ex. K at 827:10–19; Zellhart 30(b)(6) Dep., ECF 112-21, Ex. M at 1220:7-12.

<u>Government's Objections</u>: Plaintiffs' Fact is irrelevant as it lacks a tendency to prove any fact of consequence in this action.  Fed. R. Evid. 401 and 402.  As Zellhart has stated, it does not matter whether she ever conducted an inventory search prior to USPV, because the procedures are no different from when inventorying is conducted pursuant to a search warrant or a consent search.  The "bag and tag" procedures are identical.  Agent Zellhart's extensive background, training and experience, as an employee of the FBI

since 2004, are set forth in the common affidavit submitted for the search warrant and the seizure warrant.  ECF 122-40 at 601 [Zellhart Decl. ¶ 4].

12.  Plaintiffs' Fact No. 59, which provides "[t]he government testified that multiple local police departments who assisted with execution of the seizure warrant have submitted DAG-71 forms, which allow the federal government to 'equitably share' forfeiture proceeds with local partners who assisted with the raid."

Plaintiffs' Supporting Evidence Cited For Fact: Murray 30(b)(6) Dep., ECF 112-23, Ex. O at 1573:20–1574:2.

Government's Objections: Plaintiffs' Fact is irrelevant as it lacks a tendency to prove any fact of consequence in this action.  Fed. R. Evid. 401 and 402.  Plaintiff has offered no evidence that the local police departments' activities were influenced in any manner by the fact that they could submit the forms that, if assets were forfeited and equitable sharing approved, the local police departments could equitably share in forfeited assets.

13.  Plaintiffs' Fact No. 64, which provides "FBI Special Agent Justin Palmerton, who helped inventory safe-deposit boxes at USPV, could not recall ever receiving any training on how to conduct an inventory that was not incident to arrest."

Plaintiffs' Supporting Evidence Cited For Fact:  Frommer Decl., ECF 112-18, Ex. J ("Palmerton Dep.") at 584:14-18, which testimony provides as follows:

> So is it that you do not recall or
>
> that -- is your answer that you haven't received
>
> any continuing training on executing a warrant or
>
> doing an inventory search?
>
> A.    No, yeah, I just don't recall.

Government's Objections:  Plaintiffs' Fact mischaracterizes the testimony.  The deponent stated that he could not recall receiving any continuing training on doing an inventory search, and the testimony says nothing about inventorying incident to an arrest as the Fact provides.  Further, the fact that the deponent did not specifically recall any

14

training, does not mean the agent had no training.  In addition, even if the agent had no training, that fact is irrelevant for the same reasons set forth above - - the "bag and tag" procedures for the inventorying here is the same as the procedures for inventorying items while executing a search warrant or doing a consent search.  Fed. R. Evid. 401 and 402.

14.    Plaintiffs' Fact No. 71, which provides "Inspector Versoza testified that he viewed 'the seizure warrant is just -- it's not the end of it, it's just another tool in our gathering of -- of evidence.' "

<u>Plaintiffs' Supporting Evidence Cited For Fact</u>: Versoza Dep., ECF 112-20, Ex. L at 1128:16-19.  Plaintiffs have cited only three lines of testimony.  The full testimony is as  follows:

I'm just trying to figure out, like, did you and

DEA and FBI ever sit down just to discuss the seizure

warrant and, like, what you wanted to have in the

seizure warrant?

A.    We sat down and discussed during the phase of the

investigation the progress of the investigation.

And you keep saying "seizure warrant," but really

we were seeking search warrants. But I guess it is

seizure and search warrant, to your point.

So we have had discussions over, again, what was

sufficient, or what was needed in an investigation

generally, but I don't know how better to answer your

question. So we did have conversations, we had

discussions, and -- about the investigation. Most of

our conversation was about the investigation, and the

seizure warrant is just -- it's not the end of it, it's

just another tool in our gathering of -- of evidence.

/ / /

Versoza Dep., ECF 112-20, Ex. L at 1128:3-19.  Supplemental Rodgers Decl. (Versoza Depo.) Ex. D at 65:3-19.

Government's Objections:  Plaintiffs' Fact mischaracterizes the testimony by suggesting the seizure warrant was to be used as a tool to gather evidence against boxholders.  The full testimony shows Inspector Versoza is discussing the criminal investigation against USPV, the company.  There was both a search warrant and a seizure warrant and executing those warrants would gather additional evidence in the USPV investigation.  In addition, the Fact leaves off the beginning of the question, i.e., "Most of our conversation was about the investigation" to make it appear the answer pertains to something else entirely.

15.    Plaintiffs' Fact No. 93, which provides "[i]n creating the inventory record for one box, the government took dozens of close-up photographs of various personal documents, including receipts and personal ledgers containing handwritten notes, pay stubs, immigration paperwork, a marriage license, and bank statements."

Plaintiffs' Supporting Evidence Cited For Fact: Inventory Records, ECF 112-9, Ex. A at 48-130.

Government's Objections:  Plaintiffs' Fact is not a single fact but an accumulation of multiple facts based on 182 pages of documents in Ex. A.  While the Fact provides the government took "dozens of close up photographs of various personal documents," Plaintiffs have not specifying where the documents at issue are situated, and many of the documents are unrelated to the Fact.  See, e.g., Ex. A 48-56.  Still, other documents within Exhibit A are untranslated documents, and are therefore not evidence.

16.    Plaintiffs' Fact No. 120, which provides "[a]gents closely involved with the investigation of US Private Vaults and seizure warrant execution testified that one of the primary purposes for an inventory search is to protect agents from claims of theft or lost property."

/ / /

/ / /

<u>Plaintiffs' Supporting Evidence Cited For Fact</u>: Palmerton Dep., ECF 112-18, Ex. J at 581:22-582:5; Zellhart 30(b)(6) Dep., ECF 112-21, Ex. M at 1215:19-1216:4; Frommer Decl., ECF 112-22, Ex. N, ECF 112-22 ("Carlson Dep."), at 1343:25-1344:21.

<u>Government's Objections</u>:  Plaintiffs' Fact mischaracterizes the testimony. Agents testified that one of the purposes, not one of the primary purposes, of an inventory is to protect against claims of theft or loss.  As agents testified, in the testimony immediately following Plaintiffs' cited passages, inventorying has multiple purposes.  Zellhart 30(b)(6) Dep., ECF 112-21, Frommer Decl. Ex. M at 1215:19-1216:8; Supplemental Rodgers Decl. (Zellhart 30(b)(6) Depo.) Ex. B at 48:19-49:8  ("A. So the -- when you're doing the inventory, it's for several reasons. One, you're protecting the property for the other person, keeping it safe, you're protecting the agents from accusations of theft or damage, *and you're protecting the agents, and whoever else, from the possibility that you might run into hazardous materials, such as -- such as weapons or, you know, unexploded hand grenades or Fentanyl or anthrax or whatever. So you're -- so it's a protective prong*") (italicized portion omitted from plaintiffs' cite) (Carlson, Dep. ECF 112-22 Ex N at 1344:22-1345:5; Supplemental Rodgers Decl. Ex. F at 78:22-79:5 ("Q.  Okay. So I have the three purposes then behind the inventory searches. It's officer safety, to determine ownership, and to itemize the property to protect the government or officers from claims of lost or stolen property; is that correct?  A.  Yes, to the best of my recollection, yes").  Similarly, the cited Palmerton deposition testimony does not support the Fact.

17.    Plaintiffs' Fact No. 123, which provides "[a]fter completing its execution of the seizure warrant, the government created a flyer directing box renters who wanted to be reunited with their property to fill out a form with their contact information to the FBI."

<u>Plaintiffs' Supporting Evidence Cited For Fact</u>: Zellhart Dep., ECF 112-19, Ex. K at 969:16-23); Frommer Decl. ECF 112-16, Ex. H ("FBI Claim Form").

/ / /

Government's Objections:  The Fact mischaracterizes the testimony.  The testimony does not provide that the government created the form, sometime after the execution of the seizure warrant was completed.  The testimony is silent on the timing of the creation of the claim form.

18.    Plaintiffs' Fact No. 144, which provides "USPV, the business, filed a judicial claim to all the box contents in its capacity as a bailee."

Plaintiffs' Supporting Evidence Cited For Fact:   See USPV Claim at https://usprivatevaults.com/ 210610_Forfeiture_Claim.pdf (last visited Aug 3, 2022).

Government's Objections:  This Fact  (1) mischaracterizes the documents, as judicial claims are filed in judicial forfeiture actions; USPV's claim is an administrative, not a judicial claim; and (2) this fact is irrelevant and is of no legal consequence in this action and, among other things, the claim is invalid because it was signed by an attorney, not an officer of USPV [Fed. R. Evid. 401 and 402].  See 28 C.F.R. § 8.10(b)(3) (administrative claim must be signed by claimant under oath, not claimant's counsel).

19.    Plaintiffs' Fact No. 146, which provides "USPV agreed to withdraw that claim on behalf of its customers' property as a condition of its criminal plea agreement."

Plaintiffs' Supporting Evidence Cited For Fact: United States v. U.S. Private Vaults, Inc., No. 2:21-cr-00106-MCS, ECF No. 85, at 4-5 (Mar. 3, 2022) (plea agreement).

Government's Objections:  This Fact (i) mischaracterizes the plea agreement; (2) lacks foundation and is not based on personal knowledge [Fed. R. Evid. 602]: (3) constitutes inadmissible hearsay [Fed. R. Evid. 801 and 802]; and (4) is irrelevant to any fact of consequence in this lawsuit [Fed. R. Evid. 402] because, among other things (i) the claim is invalid because it was signed by an attorney, not an officer of USPV [see 28 C.F.R. § 8.10(b)(3) (administrative claim must be signed by claimant under oath, not claimant's counsel)]; and (ii) USPV withdrew its claim on June 23, 2021, or long before the plea agreement was entered (ECF 122-39 [Rodgers Decl. Ex. LL]) at 600.

/ / /

20.     Plaintiffs' Fact No. 146, which provides "[o]n June 22, 2021, this Court held that the government's forfeiture notices did not provide sufficient notice to property owners, and enjoined the government from forfeiting Travis's, Joseph's, or Jeni and Michael's property based upon those notices."

Plaintiffs' Supporting Evidence Cited For Fact:  ECF 52 (TRO Order).

Government's Objections:  This Fact is irrelevant to any fact of consequence in this lawsuit.  Fed. R. Evid. 402.  The only remaining claims in this lawsuit are Count I, the class claim alleging that the government's March 22-26 inventory at USPV violated the Fourth Amendment and Count VII, the individual claim under Fed. R. Crim. P. Rule 41(g) for return of property for the seven individual plaintiffs.  This fact has no bearing on those claims.

21.     Plaintiffs' Fact No. 150, which provides "[t]he government has since returned Jeni and Michael's silver and personal documents, but failed to return $2,000 cash Jeni and Michael maintain was stored inside their box at the time of the seizure.

Plaintiffs' Supporting Evidence Cited For Fact:  Storc Decl., ECF 112-6 at ¶¶ 16-17.

Government's Objections:  Part of this Fact, namely these Plaintiffs' contention that the government failed to return $2,000, is irrelevant to any fact of consequence in this lawsuit.  Fed. R. Evid. 402.  The government has declared under oath that it does not have those funds.  ECF 122-40 at 601 (Zellhart Decl. ¶ 2).  Accordingly, these Plaintiffs' individual claim under Fed. R. Crim. P. 41(g) cannot be maintained.

22.     Plaintiffs' Fact No. 151, which provides "[o]n July 23, 2021, this Court issued a preliminary injunction ordering the government to either return the contents of the box Joseph rented from USPV or show cause 'as to why the Government continues to seize' those contents."

Plaintiffs' Supporting Evidence Cited For Fact:  ECF 60 (Order Granting Preliminary Injunction) at 8.

/ / /

Government's Objections:  This Fact is irrelevant to any fact of consequence in this lawsuit.  Fed. R. Evid. 402.  The only remaining claims in this lawsuit are Count I, the class claim alleging that the government's March 22-26 inventory at USPV violated the Fourth Amendment and Count VII, the individual claim under Fed. R. Crim. P. Rule 41(g) for return of property for the seven individual plaintiffs.  This fact has no bearing on those claims.

23.    Plaintiffs' Fact No. 156, which provides "DEA Special Agent Justin Carlson likewise testified to his 'understanding' that "boxes that arose to the suspicion of any criminal activity would be investigated before being returned."

Plaintiffs' Supporting Evidence Cited For Fact: Carlson Dep., ECF 112-22, Ex. N at 1425:12-25, which provides as follows:

> Q.     That's totally fair. I get that
> you don't want to return contraband.
> Let's put contraband to the side. When it
> was cash, would the government conduct an
> investigation into whether that cash was
> drug proceeds before deciding that it was
> necessary to turn that property back to
> the person who was claiming it?
>
>     MR. COLL: Objection, vague,
> lacks foundation.
>
> A.     My understanding is that boxes
> that arose to the suspicion of any
> criminal activity would be investigated
> before being returned.

Government's Objections: Lack of Foundation and Personal Knowledge (Fed. R. Evid. 602) – the deponent lacks personal knowledge of the matter, and a proper foundation as to deponent's personal knowledge has not been made.  There is no

evidence that DEA Special Agent Carlson conducted any investigation himself, let alone that he has any knowledge of what type of investigation other agents or agencies performed.

24.    Plaintiffs' Fact No. 159, which provides "[p]er a government interrogatory response dated April 19, 2022, the government identified 389 unique USPV rented boxes (1) from which the government had seized property in March 2021, (2) <u>for which the government knew the identity of the owner</u>, and (3) for which the government had returned the seized contents.  Several of these boxes had multiple listed owners." (Emphasis added).

<u>Plaintiffs' Supporting Evidence Cited For Fact</u>:  Govt's Supp. Response to Pls.' Rog #9 at pp. 2-16).

<u>Government's Objections</u>:  The underscored portion of this Fact mischaracterizes the interrogatory response and is irrelevant to any of the remaining claims in this lawsuit. Interrogatory Number 9, and the government's response thereto provide as follows:

<u>INTERROGATORY NO. 9</u>:

Identify all individuals who had property seized from the U.S. Private Vaults facility in March 2021, whose identity is known to the FBI, and whose property was subsequently returned.  For each individual, state the individual's name and U.S. Private Vaults box number.

<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9</u>:

. . .  In addition, the government notes that the identity of these individuals is not necessarily "known" to the government (as requested by this interrogatory and is therefore overbroad because the class is limited to persons who have "identified themselves" to the government) as the government can only provide its best estimate of the identity of these persons based upon the information available to it from information contained in their U.S. Private Vaults box or other communication with the

1      government, and U.S. Private Vaults had a business model that allowed

2      boxholders to open boxes at the facility anonymously.

3  The government has already advised in public filings that the instant lawsuit involves

4  hundreds of boxes at USPV and, accordingly, Plaintiffs' Fact, which falsely states that

5  the government knows the identity of these owners as a fact, mischaracterizes the

6  document and, in any event, is unnecessary to prove any fact of consequence as to the

7  remaining claims in this action.  Fed. R. Evid. 402.

8      25.   Plaintiffs' Fact No. 172, which provides "[a]gents have testified that, absent

9  an order from this Court, the government will retain Plaintiffs' and the broader class'

10 information on an FBI database called Sentinel, a computerized system that 'provides

11 capabilities for search and intelligence analysis' and that 'can be used to identify

12 connections between cases and patterns of activity.' "

13     <u>Plaintiffs' Supporting Evidence Cited For Fact</u>:  FBI, <u>Privacy Impact Assessment</u>

14 <u>for the SENTINEL System</u> (2014), <u>https://perma.cc/8D9W-YFC5</u>

15     <u>Government's Objections</u>:  Plaintiffs' Fact mischaracterizes the document at the

16 referenced website.  No agents' testimony in the instant case is reflected in the

17 document.  In addition, the document is offered without any foundation or personal

18 knowledge, and the contents of the document are inadmissible hearsay.   Fed. R. Evid.

19 602, 801 and 802.  In addition, this testimony is irrelevant for the reasons set forth in the

20 objections below, namely, that the remaining claims in this case, as reflected in

21 Plaintiffs' First Amended Complaint ("FAC"), do not provide for a remedy for which

22 this Fact would have any relevance.  Fed. R. Evid. 402.

23 <u>Facts Regarding Records Generated By Or As A Result Of The Inventory, Plaintiffs</u>

24 <u>Offer As A Prelude For Their Request That Records Be Segregated Or Destroyed</u>

25     26.   Plaintiffs offer the following Fact Numbers regarding the records generated

26 by the government during the March 22-26, 2021 inventory and thereafter, to support

27 Plaintiffs' claim that inventory records should be segregated or destroyed:

28 / / /

Fact Nos. 162 (photographs of class members property), relying upon "<u>See generally</u> Inventory Records, ECF 112-9, Ex. A (broader class); <u>see also id.</u> at 32-43, 145-152, 240-246, 247-256 (named plaintiffs)"; 163 (records regarding condition of class members' property and drug dog sniffs), relying upon "<u>See generally</u> Inventory Records, ECF 112-9, Ex. A (broader class); <u>see also id.</u> at 148-149, 250, 254-56 (named plaintiffs)"; 164 (video recordings), relying on "<u>See generally</u> Inventory Videos, ECF 112-10, Ex. B (broader class)"; and 165 (records regarding administrative claim to contest FBI's administrative forfeiture proceedings submitted by plaintiffs Verdon-Pearsons and Storc), relying upon "Pearsons Decl., ECF 112-6, at ¶ 11; Storc Decl., ECF 112-5 at ¶ 10".

<u>Government's Objections</u>:  The issue of the records generated by the government or situated within the government's computer systems is irrelevant to any fact of consequence in this lawsuit.  Fed. R. Evid. 402.  Plaintiffs' segregation/destruction of document remedy is available only for Rule 41(g) claims and their FAC shows their class claim is not, and plaintiffs' Rule 41(g) individual claim does not seek the remedy. ECF 78 (class certification order at 5:7-12, citing <u>CDT</u>) and ECF 33 (FAC ¶¶ 1, 2, 153 and 232 and ¶ L at 52:4-8).  Also, plaintiffs seek the remedy for some universe of all documents created "as a result of" the inventory, but their FAC only requests an injunction as to "records created through the inventory documents," meaning the inventory documents alone. ECF 33 (FAC ¶ I at 51:1-3).  Paragraphs 1 and 2 of Plaintiffs' FAC provide:

> 1.     Plaintiffs bring their class-action Fourth and Fifth Amendment claims under the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, as well as directly under the U.S. Constitution.  Plaintiffs seek declaratory and injunctive relief against the government's unconstitutional search, retention, and use of their property.

2.      Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May bring their individual claims for return of seized property under Federal Rule of Criminal Procedure 41(g) and the Court's inherent equitable power.  They are entitled to the immediate return of their property as they are not targets of any criminal investigation and the government's continued detention of their property both violates the Fourth Amendment and works a hardship on Plaintiffs.

Paragraphs 153 and 232 of the FAC, together with the headings for Count I and Count VII, provide as follows:

**CLASS CLAIMS**

**COUNT I: On Behalf Of The Proposed Class**

**Defendants' Criminal Search of USPV Customers' Personal Property Violates the Fourth Amendment**

\*                    \*                    \*

153.   This Count seeks to vindicate the Fourth Amendment right of every member of the Proposed Class to be free from unconstitutional searches and seizures under the Fourth Amendment.

**INDIVIDUAL CLAIM**

**COUNT VII: Claim for Return of Property Currently Held in Violation of the Fourth and Fifth Amendments**

\*                    \*                    \*

232.   Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May bring this claim for return of seized property against Defendants under Federal Rule of Criminal Procedure 41(g).

Plaintiffs' prayer for relief on their Fed. R. Crim. P. 41(g) claim provides:

L.      Order Defendants to immediately return the seized property of Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May—without any conditions, delay, or investigation—under Federal Rule of Criminal Procedure 41(g) and the Court's inherent equitable authority;

Facts Regarding The Government's Maintenance Of Documents In Its Computer System That Plaintiffs Request Be Segregated Or Destroyed

27.      Plaintiffs offer the following Fact Numbers regarding the maintenance of documents in the government's computer systems:  Facts Nos. 172 (retention of documents in Sentinel), relying upon "FBI, *Privacy Impact Assessment for the SENTINEL System* (2014), https://perma.cc/8D9W-YFC5"; 173 (records in Sentinel), relying upon "Palmerton Decl., ECF 112-18, Ex. J at 715:3-21, 717:23-718:22"; 174 (records in Sentinel), relying upon "Zellhart 30(b)(6) Dep., ECF 112-21, Ex. M at 1279:23-1280:3"; 175 (access by agents to Sentinel records), relying upon "Zellhart 30(b)(6) Dep., ECF 112-21, Ex. M at 1281:15-22; 1282:4-1283:17"; 176 (maintenance of videos at DEA), relying upon "Carlson Dep. ECF 112-22, Ex. N at 1415:7-13"; 177 (maintenance of videos at DEA), relying upon "Carlson Dep. ECF 112-22, Ex. N at 1417:13-22"; and 178 (plaintiffs' desire that documents be segregated or destroyed), relying upon "P. Snitko Decl. ¶ 20; J. Snitko Decl. ¶ 19; Ruiz Decl. ¶ 22; Gothier Decl. ¶ 13; May Decl. ¶ 21; Pearsons Decl. ¶ 23; Storc Decl. ¶ 21".

Government's Objections:  The issue of the records generated by the government or situated within the government's computer systems is irrelevant to any fact of consequence in this lawsuit. Fed. R. Evid. 402.  Plaintiffs' segregation/destruction of document remedy is available only for Rule 41(g) claims and their FAC shows their class claim is not, and plaintiffs' Rule 41(g) individual claim does not seek the remedy. ECF 78 (class certification order at 5:7-12, citing CDT) and ECF 33 (FAC ¶¶ 1, 2, 153 and 232 and ¶ L at 52:4-8).  Also, plaintiffs seek the remedy for some universe of all documents created "as a result of" the inventory (PB 12:15-18 at n.2), but their FAC

25

only requests an injunction as to "records created through the inventory documents," meaning the inventory documents alone. ECF 33 (FAC ¶ I at 51:1-3).  Paragraphs 1 and 2 of Plaintiffs' FAC provide:

> 1.     Plaintiffs bring their class-action Fourth and Fifth Amendment claims under the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, as well as directly under the U.S. Constitution.  Plaintiffs seek declaratory and injunctive relief against the government's unconstitutional search, retention, and use of their property.

> 2.     Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May bring their individual claims for return of seized property under Federal Rule of Criminal Procedure 41(g) and the Court's inherent equitable power.  They are entitled to the immediate return of their property as they are not targets of any criminal investigation and the government's continued detention of their property both violates the Fourth Amendment and works a hardship on Plaintiffs.

Paragraphs 153 and 232, together with the headings for Count I and Count VII, provide as follows:

**CLASS CLAIMS**

**COUNT I: On Behalf Of The Proposed Class**

**Defendants' Criminal Search of USPV Customers' Personal Property Violates the Fourth Amendment**

\*                    \*                    \*

> 153.   This Count seeks to vindicate the Fourth Amendment right of every member of the Proposed Class to be free from unconstitutional searches and seizures under the Fourth Amendment.

**INDIVIDUAL CLAIM**

**COUNT VII: Claim for Return of Property Currently Held in Violation of the Fourth and Fifth Amendments**

\*                    \*                    \*

232.    Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May bring this claim for return of seized property against Defendants under Federal Rule of Criminal Procedure 41(g).

Plaintiffs' prayer for relief on their Fed. R. Crim. P. 41(g) claim provides:

L.    Order Defendants to immediately return the seized property of Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May—without any conditions, delay, or investigation—under Federal Rule of Criminal Procedure 41(g) and the Court's inherent equitable authority;

Facts Regarding Videos and Records Situated In Government's Files

28.    Plaintiffs have offered the following Facts regarding videos and photographs of items situated in the government's files that were created during the inventory:  Fact Nos. 81-95 (photographs) and 96-101 and 164 (videos).

Government's Objections:  See preceding Objection.  Plaintiffs' FAC does not seek the remedy upon which the relevance of these items are based.

Facts Regarding Plaintiffs' Fear That The Government May Or Has Allegedly Used Information To Investigate Them

29.    The individual Plaintiffs offer the following Fact Numbers regarding their alleged fear that the government either has or may use information it obtained to investigate them:  Fact Nos. 167 (government may use information in databases to investigate named plaintiffs, relying upon "See P. Snitko Decl. ¶¶ 19-20; J. Snitko Decl. ¶¶ 18-19; Ruiz Decl. ¶¶ 21-22, Gothier Decl. ¶¶ 12-13; May Decl. ¶¶ 20-21; Pearsons Decl. ¶¶ 21-23; Storc. Decl. ¶¶ 20-21"; 168 (fear of a cyberbreach), relying upon "See P.

Snitko Decl. ¶¶ 19-20; J. Snitko Decl. ¶¶ 18-19; Ruiz Decl. ¶¶ 21-22, Gothier Decl. ¶¶ 12-13; May Decl. ¶¶ 20-21; Pearsons Decl. ¶ 21-23; Storc. Decl. ¶¶ 20-21"; 169 (alleged prior investigation of plaintiff Ruiz), relying upon "See Zellhart Decl., ECF 64-1; see also Ruiz Decl. ¶¶ 15-17"; and 170 (named plaintiffs allege unwarranted invasion of privacy causes emotional distress), relying upon "P. Snitko Decl. ¶ 17, 19; J. Snitko Decl. ¶ 16, 18; Ruiz Decl. ¶ 21; Gothier Decl. ¶ 12; May Decl. ¶ 20; Pearsons Decl. ¶ 21-22; Storc Decl. ¶ 20".

Government's Objections:  The issue of individual Plaintiffs' fear of future investigations or cyberbreaches is irrelevant to any fact of consequence in this lawsuit. Fed. R. Evid. 402.  Individual Plaintiffs' Fed. R. Crim. P. 41(g) individual claim in Count VII does not seek any remedy, other than the return of property.  The property has been returned, as individual Plaintiffs admit (and is a prerequisite for class membership). Thus, their Facts are irrelevant.  Paragraphs 1 and 2 of Plaintiffs' FAC provide:

1.     Plaintiffs bring their class-action Fourth and Fifth Amendment claims under the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, as well as directly under the U.S. Constitution.  Plaintiffs seek declaratory and injunctive relief against the government's unconstitutional search, retention, and use of their property.

2.     Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May bring their individual claims for return of seized property under Federal Rule of Criminal Procedure 41(g) and the Court's inherent equitable power.  They are entitled to the immediate return of their property as they are not targets of any criminal investigation and the government's continued detention of their property both violates the Fourth Amendment and works a hardship on Plaintiffs.

Paragraphs 153 and 232, together with the headings for Count I and Count VII, provide as follows:

**CLASS CLAIMS**

**COUNT I: On Behalf Of The Proposed Class**

**Defendants' Criminal Search of USPV Customers' Personal Property Violates the Fourth Amendment**

\*                     \*                     \*

153.   This Count seeks to vindicate the Fourth Amendment right of every member of the Proposed Class to be free from unconstitutional searches and seizures under the Fourth Amendment.

**INDIVIDUAL CLAIM**

**COUNT VII: Claim for Return of Property Currently Held in Violation of the Fourth and Fifth Amendments**

\*                     \*                     \*

232.   Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May bring this claim for return of seized property against Defendants under Federal Rule of Criminal Procedure 41(g).

Plaintiffs' prayer for relief on their Fed. R. Crim. P. 41(g) claim provides:

L.   Order Defendants to immediately return the seized property of Plaintiffs Paul and Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May—without any conditions, delay, or investigation—under Federal Rule of Criminal Procedure 41(g) and the Court's inherent equitable authority;

Facts Regarding Plaintiffs' Submissions Of Requests For Return Of Property Through The FBI Website Portal

30.   Plaintiffs offer the following Fact Numbers regarding their submission of requests for the return of property, after the inventorying had concluded on March 26,

29

2022, through the FBI website portal:  Fact Nos. 126 (Paul and Jennifer Snitko, relying upon ECF 112-2 at ¶ 9); 129 (Gothier, relying upon ECF 112-3 at ¶ 7); 135 (Ruiz, relying upon ECF 112-4 at ¶¶ 8-9); 137 (May, relying upon ECF 112-7 at ¶ 6); and 139 (Verdon-Pearsons and Storc, relying upon ECF 112-6 at ¶ 4).

Government's Objections:  The Facts and the supporting paragraphs of the declarations are irrelevant as they do not prove a fact of consequence in this case.   Fed. R. Evid. 402.  Whether persons submitted a request for return of property through the FBI portal has nothing to do with whether agents' execution of the warrants constituted a violation of the Fourth Amendment, plaintiffs only remaining class claim (Count I), nor does it have to do with Plaintiffs' individual claim (Count VII) in this case as their property has already been returned.

Facts Regarding The Return Of Property To Plaintiffs And Other Boxholders

31.    Plaintiffs offer the following Fact Numbers and supporting evidence regarding offers to return property to the named plaintiffs, the return of property to the named plaintiffs, and the return of property to other boxholders, including anonymous boxholders who are not even members of the class:  Fact Nos. 127 (J. Snitko, ECF 112-2 at ¶ 12); 130 (Gothier, ECF 112-3 at ¶ 8); 147 (May, ECF 112-7 at ¶ 12); 149 (Verdon-Pearsons and Storc, ECF 68-1 at ¶ 3); 152 and 157 (Ruiz, ECF 64 [osc re preliminary injunction] and ECF 64-1 [Zellhart Decl.]); 161 (all box returns, including those for anonymous non-class member boxholders, ECF 112-21 at 1268:4-13, 1271:9-13),

Government's Objections:  These Facts and Plaintiffs' supporting evidence are not relevant as they do not prove a matter of consequence in this case.  Fed. R. Evid. 402. There is no personal knowledge or foundation laid as to the reasons for the return of the property, other than speculation and innuendo.  Fed. R. Evid. 602.  First, these Facts have nothing to do with the remaining claims in this lawsuit.  In addition, no evidence is offered as to the reasons for the returns.  Upon receipt of a claim, the administrative agency must suspend the administrative forfeiture proceedings and refer the matter to the USAO, so the USAO can decide whether to file a judicial action against the assets.  28

C.F.R. § 8.10(e).  If the USAO fails to do so within 90 days after the agency receives the claim, the government must "promptly release" the property. 18 U.S.C. § 983(a)(3)(A) & (B).  While probable cause is the standard for initiating administrative forfeiture proceedings, in any judicial action filed the government must show that the property is subject to forfeiture by a preponderance of the evidence (i.e., a higher standard).  18 U.S.C. § 983(c)(1).  Thus, the mere fact that property was returned does not establish the reason property was returned.  Second, while plaintiffs cite earlier preliminary injunction rulings, those rulings are not germane to establishing whether the government's inventorying between March 22 and 26, 2021 violated the Fourth Amendment, based on the sole remaining class claim (Count I) in this case, nor does it have any bearing on their individual claim (Count VII).

Facts Regarding Plaintiffs Discussions With Law Enforcement At USPV

32.   Plaintiffs offer the following Fact Numbers regarding their discussions with law enforcement officers during the inventory and their receipt of communications from law enforcement officers:  Fact Nos. 131 (Gothier, relying upon ECF 112-3 at ¶ 8); and 133 and 134 (Ruiz, relying upon ECF 112-3 at ¶ 8).

Government Objections: These facts are not relevant as they do not prove a matter of consequence in this case.  Fed. R. Evid. 402.  The remaining claims do not have anything to do with this matter.  Individual plaintiff Gothier's discussions with law enforcement during the inventory have nothing to do with Plaintiffs' remaining two claims.

Facts Regarding Executor Notification Letters

33.   Plaintiffs offer the following Fact Numbers regarding agents continuing to inventory the contents of boxes after finding executor notification letters:  Fact Nos. 78 and 79.

Government's Objections:  These Facts are not relevant as they do not prove a matter of consequence in this case.  Fed. R. Evid. 402.  Agency policy required agents to

/ / /

31

inventory all contents of a box, regardless of whether they found an executor notification letter in a box.

Fact Plaintiffs Improperly Offer In Response To The Government's Facts

34.   As set forth on page 1 above, Plaintiffs have improperly offered argument and new facts in response to the government's 60 facts.  As to two of those facts, the government asserts objections to Plaintiffs' response.  The Facts are Government Fact No. 43 and 44, and Plaintiffs' response deals with the use of a key by the government to verify ownership of a box.   In the response, Plaintiffs provide as follows: "Indeed, agents noted that, in returning property, they have typically used the renter's key to verify ownership, thereby showing there was no need to continue further.  (Palmerton Dep., ECF 112-18, Ex. J at 723:24-24:2 (agreeing that 'having the key was an important part of getting property back')".

Government's Objections:  This testimony is irrelevant as it does not prove a matter of consequence in this action.  Fed. R. Evid. 402.  Plaintiffs are apparently offering this testimony to show or compare agents actions during the March 22-26, 2021 inventorying, with actions agents took, sometimes over one year later, to return property, including property of anonymous box holders for whom there was no other manner to identify them.  In addition, unlike the inventory where there was no legal obligation to return property, if an administrative claim to contest the administrative forfeiture of the property was submitted, the government is required by law to promptly release the property claimed if a judicial forfeiture action is not filed within 90 days after the administrative claim is received by the administrative agency.   18 U.S.C. § 983(a)(3)(A) & (B).  Thus, returning property has nothing to do with the requirements and procedures for inventorying property.

Furthermore, Plaintiffs' Fact is a complete misrepresentation of the testimony, as the agent did not testify that he (or any other officers) "typically" used the renter's key to verify ownership which, according to plaintiffs, purportedly showed there was no need to inventory further.  The testimony, with the italicized section below reflecting what

Plaintiffs have omitted, reflects the misrepresentation, as the agent testified that he only returned "a couple of boxes" and that he used a key coupled with other identifying information (such as matching a driver's license found in the box with the identity of the person claiming to own the box) before box contents were returned:

> Now, I'm hoping -- were you involved in the returning property to these folks?
>
> A.   I did return a couple of boxes.
>
> Q.   Okay. You returned a couple of boxes?
>
> A.   Yes.
>
> *                    *                    *
>
> Q.   Can you tell me, how did you verify that the -- that you were giving the box to somebody who was entitled to have the contents of the box?
>
> A.   I want to say for my boxes, I looked at the FD-302, if there was, like, any identifying info in there, you would note it. And then the attorney -- in the instances I returned it, there was an attorney representing the box holder. The attorney was bringing a key as well as copies of the -- some type of identification, usually a driver's license that matched identifying information we had in the box. And then we tested the key to make sure it worked, and then we returned the items back -- in my case, back to the attorney.
>
> Q.   So in both of your instances, was it an attorney who was identifying his or her client?
>
> A.   Yes.

1   *Q.   Were there instances where there might be*

2   *an attorney but they didn't want to reveal the*

3   *name of their client who came to pick up property?*

4   *A.   Not that I recall.*

5   Q.   So it sounds like the key, having the key

6   was an important part of getting property back; is

7   that right?

8   A.   Yes.

9   Palmerton Dep., ECF 112-18, Ex. J at 722:6-724:2; Suppl. Rodgers Dec. (Palmerton

10   Dep.), Ex. E at 71:6-73:2.

11   Dated: August 16, 2022                     Respectfully submitted,

12                                               STEPHANIE S. CHRISTENSEN
                                                  Acting United States Attorney
13                                               SCOTT M. GARRINGER
                                                  Assistant United States Attorney
14                                               Chief, Criminal Division

15                                               _____/s/_____

16                                               ANDREW BROWN
                                                  VICTOR A. RODGERS
17                                               MAXWELL COLL
                                                  Assistant United States Attorneys

18                                               Attorneys for Defendants
19                                               UNITED STATES OF AMERICA and
                                                  TRACY L. WILKISON and KRISTI
20                                               KOONS JOHNSON IN THEIR OFFICIAL
                                                  CAPACITY ONLY

21

22

23

24

25

26

27

28

34